Steve W. Berman (*Pro Hac Vice*)
Sean R. Matt
George W. Sampson (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com
george@hbsslaw.com

Jeff D. Friedman (173886)
Shana E. Scarlett (217895)
Meghan R. Lang (221156)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com
meganl@hbsslaw.com

*Attorneys for Plaintiffs in Young, et al.*
*v. LG Chem Ltd., et al.*, No. 12-cv-05129-YGR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE LITHIUM ION BATTERIES ANTITRUST LITIGATION | No. 4:13-md-02420-YGR |
| | MDL No. 2420 |
| | **APPLICATION OF HAGENS BERMAN TO BE APPOINTED INTERIM CLASS COUNSEL AND FOR THE APPOINTMENT OF A PLAINTIFFS' STEERING COMMITTEE FOR THE INDIRECT-PURCHASER CLASSES PURSUANT TO FED. R. CIV. P. 23** |
| This Document Relates to: | Date:     April 3, 2013 |
| ALL INDIRECT-PURCHASER ACTIONS | Time:     2:00 p.m. |
| | Judge:    Hon. Yvonne Gonzalez Rogers |
| | Crtm:     5, 2nd Floor |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     HAGENS BERMAN'S ANTITRUST EXPERIENCE AND INNOVATION IN INVESTIGATING AND FILING THIS CASE MAKE IT A COMPELLING CHOICE FOR INTERIM CLASS COUNSEL .........................................................4

        A.      Hagens Berman's Work Identifying and Investigating Potential Claims:  Hagens Berman Initiated this Litigation after Extensive Industry and Economic Pricing Analysis ....................................................................................................4

        B.      Hagens Berman Has Extensive Experience Handling Class Actions, Other Complex Litigation, and the Types of Claims Asserted in the Action.......................9

        C.      Hagens Berman's Extensive Knowledge of the Applicable Law ...........................12

        D.      Hagens Berman Will Commit Sufficient Resources to Represent the Class ...........15

III.    THE COUNSEL STRUCTURE PROPOSED BY HAGENS BERMAN WILL ENSURE THE MOST ZEALOUS AND EFFICENT PROSECUTION OF THE PROPOSED CLASS'S INTERESTS ...................................................................................................15

        A.      Hagens Berman's Proposed Counsel Structure .......................................................15

        B.      The Court Should Accept Hagens Berman's Proposed Structure ...........................18

        C.      Hagens Berman Proposes an Innovative, Fair and Reasonable Fee Structure .........23

        D.      Appointing Hagens Berman as Class Counsel Furthers Important Public Policy Interests in the Antitrust Arena...............................................................................23

IV.     CONCLUSION ...................................................................................................25

APPL. OF HAGENS BERMAN TO BE
APPOINTED INTERIM CLASS COUNSEL
& FOR APPOINT. OF PLTFS' STEERING
COMMITTEE
010330-11  588083 V1

- i -

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re Amino Acid Lysine Antitrust Litig.*,
  918 F. Supp. 1190 (N.D. Ill. 1996)..........................................................................................23

*In re California Micro Devices Sec. Litig.*,
  1995 U.S. Dist. LEXIS 11587 (N.D. Cal. Aug. 4, 1995) ........................................................9

*Friedman v. Rayovac Corp.*,
  219 F.R.D. 603 (W.D. Wis. 2002)..........................................................................................20

*Hawaii v. Standard Oil Co.*,
  405 U.S. 251 (1972) ................................................................................................................24

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*,
  616 F. Supp. 2d 461 (S.D.N.Y. 2009) ....................................................................................20

*In re Jones Soda Co. Secs. Litig.*,
  2008 U.S. Dist. LEXIS 14884 (W.D. Wash. Feb. 12, 2008)..................................................19

*In re Landry's Seafood Restaurant, Inc. Sec. Litig.*,
  2000 U.S. Dist. LEXIS 7005 (S.D. Tex. Mar. 30, 2000) .......................................................20

*Malasky v. IAC/InteractiveCorp*,
  2004 U.S. Dist. LEXIS 25832 (S.D.N.Y. Dec. 21, 2004) ......................................................20

*In re Milestone Sci. Sec. Litig.*,
  187 F.R.D. 165 (D.N.J. 1999) ................................................................................................20

*Schriver v. Impac Mortg. Holdings, Inc.*,
  2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 1, 2006) ........................................................20

*In re Synthroid Mktg. Litig.*,
  264 F.3d 712 (7th Cir. 2001) ..................................................................................................23

*Vincelli v. National Home Health Care Corp.*,
  112 F. Supp. 2d 1309 (M.D. Fla. 2000) .................................................................................21

*In re Wells Fargo Sec. Litig.*,
  156 F.R.D. 223 (N.D. Cal. 1994) ...........................................................................................23

*Wenderhold v. Cylink Corp.*,
  188 F.R.D. 577 (N.D. Cal. 1999) ...........................................................................................23

*Yousefi v. Lockheed Martin Corp.*,
   70 F. Supp. 2d 1061 (C.D. Cal. 1999).................................................................................21

### OTHER AUTHORITIES

MANUAL FOR COMPLEX LITIGATION, FOURTH § 10.23 (2012)  ....................................3, 18, 19, 22

MANUAL FOR COMPLEX LITIGATION, FOURTH § 14.212 (2012)  ..................................................19

MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.271 (2012)  ....................................................4

MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.272 (2012)  ..................................................25

APPL. OF HAGENS BERMAN TO BE
APPOINTED INTERIM CLASS COUNSEL
& FOR APPOINT. OF PLTFS' STEERING
COMMITTEE
010330-11  588083 V1

- iii -

## APPLICATION

Plaintiffs in three ***indirect-purchaser*** actions[1] respectfully apply for an order appointing the law firm of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as Interim Class Counsel for the putative class of indirect-purchasers of lithium-ion rechargeable batteries and related products. Plaintiffs also request that the Court appoint a three firm Plaintiffs' Steering Committee to be managed by Hagens Berman and including Cohen, Milstein, Sellers & Toll, PLLC, Robbins Geller Rudman & Dowd LLP, and Goldman Scarlato Karon & Penny, P.C.

## SUPPORTING MEMORANDUM

## I.    INTRODUCTION

Federal Rule of Civil Procedure 23(g)(3) permits the Court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Rule 23(g)(2) requires that when there is more than one interim class counsel applicant, as is the case here, the Court must appoint the firm "best able to represent the interests of the class."  The firms who seek to be appointed class counsel are all qualified to serve in that capacity.  However, Hagens Berman stands apart, is "best able to represent the interests of the class," and should be appointed Interim Class Counsel.

Hagens Berman is one of the most recognized plaintiff litigation firms in the United States and regularly litigates antitrust and other complex class actions in this District, many of which have resulted in substantial recoveries for the represented classes.  We have been appointed as lead or co-lead counsel in some of the largest antitrust class actions in history, including several technology-related price-fixing actions.  For example, Hagens Berman was co-lead counsel in what resulted in the largest settlement in the history of the antitrust laws at the time.[2]  As another example of experience that will directly benefit the proposed class, Hagens Berman also currently

---

[1] "Plaintiffs" refers to Plaintiffs in *Young, et al. v. LG Chem Ltd., et al.*, No. 12-cv-05129-YGR; *Hanlon v. LG Chem, Ltd., et al.*, No. 12-cv-05159-YGR (N.D. Cal.); *Cohen, et al. v. LG Chem America, Inc., et al.*, No. 2:12-cv-07793 (D.N.J.); *Powers v. LG Chem America, Inc., et al.*, No. 3:12-cv-06118-YGR (N.D. Cal.).

[2] *See In re Visa Check/MasterCard Antitrust Litig.*, No. 96-5238 (E.D.N.Y.) (settlement of over $3 billion).

serves as sole Interim Class Counsel for indirect-purchaser plaintiffs in *In re Optical Disk Drive Products Antitrust Litigation*,[3] which involves many of the same defendants named here.  While other firms are qualified to litigate this case, Hagens Berman has a proven track record of innovative and demonstrated leadership in some of the largest antitrust cases in the United States, both inside and outside of this District.

Moreover, Hagens Berman pioneered this case and has demonstrated an unyielding commitment to the proposed class of indirect purchasers.  After spending significant amounts of time and money extensively investigating the facts and law, including retaining economists who performed detailed economic analyses, on October 3, 2012 Hagens Berman and its clients filed in this District the **first** case in the country alleging anti-competitive practices in the lithium-ion battery industry.  The dozens of "copy-cat" complaints that followed – including those filed by other firms who seek to be appointed class counsel here – largely reproduce Hagens Berman's work product and add no substance to Hagens Berman's extensive factual and economic allegations.  In some cases, the complaints are nearly identical cut-and-paste jobs largely incorporating the same graphs and charts prepared by Hagens Berman and included in our firm's initial complaint.[4]

No other firm has done the magnitude of work and preparation that Hagens Berman has done here.  All subsequent cases, both direct and indirect, simply followed Hagens Berman's lead with little or no additional factual development.  These firms, which now demand to lead this case at the expense of Hagens Berman and its clients, are attempting the legal counsel equivalent of gerrymandering by simply cobbling together the support of firms who filed numerous duplicative cases, in many cases substantially after Hagens Berman's complaint was filed.  The Court should

---

[3] No. 3:10-md-2143 (N.D. Cal.) (J. Seeborg).

[4] *See, e.g.*, pages 12, 14, 21 and 23 in the complaint in *Katz-Lacabe v. Hitachi, Ltd., et al.*, No. 12-cv-05681 (N.D. Cal.), filed by class counsel applicant Lieff Cabraser, which copies the same graphs used in the Hagens Berman complaint in *Young*.

not reward their maneuvering,[5] which was calculated to benefit the law firms and not their clients and the classes they seek to represent.

Hagens Berman's commitment to zealously representing the proposed class is also demonstrated by the lean and efficient counsel structure that we propose.  Mindful that a large, inefficient structure staffed by followers who simply filed duplicative complaints can lead to significant duplication and waste and impair cohesion and continuity in the day-to-day prosecution of the litigation, Hagens Berman proposes that counsel be organized as follows:

1.   The Court appoint Hagens Berman as Interim Class Counsel with overall responsibility for the prosecution of the case on behalf of all indirect-purchaser plaintiffs.

2.   The Court appoint an indirect-purchaser Plaintiffs' Steering Committee ("PSC") which would be directed by Hagens Berman and consist of the following indirect-purchaser counsel firms:  Cohen, Milstein, Sellers & Toll, PLLC; Robbins Geller Rudman & Dowd LLP; and Goldman Scarlato Karon & Penny, P.C.

Each of the proposed PSC firms has extensive experience in antitrust class action litigation and is qualified to act as class counsel in their own right.  However, these firms have recognized Hagens Berman's leadership in initiating this litigation, and have agreed to work under the direction of Hagens Berman.

In addition to an efficient counsel structure, Hagens Berman also proposes a fee structure that provides for fair compensation while minimizing the impact on the proposed class.[6]  As further described below, this holistic focus on the proposed class's best interests is why other courts have recently appointed Hagens Berman as class counsel in other significant antitrust class actions throughout the country, including in this District.

Hagens Berman satisfies the Rule 23(g) criteria more strongly than any other firm, and should be appointed as Interim Class Counsel for the indirect-purchaser class.  Indeed, although

---

[5] MANUAL FOR COMPLEX LITIG. (FOURTH) § 10.23 (2012), at 52 (reporting on court impatience with "game playing and jockeying for position to be 'lead' counsel").

[6] Hagens Berman's confidential fee proposal is set forth in the accompanying Declaration of Steve W. Berman in Support of Application to Appoint Hagens Berman Sobol Shapiro LLP as Interim Class Counsel (the "Berman Declaration").

lead counsel structuring decisions can sometimes be difficult as the Court weighs competing

proposals from well-qualified counsel, to quote former Chief Judge Walker, "*a clear choice*

*emerges.  That choice is Hagens Berman.*"[7]

## II.    HAGENS BERMAN'S ANTITRUST EXPERIENCE AND INNOVATION IN INVESTIGATING AND FILING THIS CASE MAKE IT A COMPELLING CHOICE FOR INTERIM CLASS COUNSEL

Federal Rule of Civil Procedure 23(g)(3) provides the Court authority to appoint interim

counsel to act on behalf of a putative class before deciding class certification.[8]  Where, as here,

multiple class actions are pending, appointment of class counsel is necessary to protect the class's

interests.  In selecting Interim Class Counsel, the Court is required to consider the following

factors:  (i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims

asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that

counsel will commit to representing the class.[9]

No other firm or group of firms meets these Rule 23(g)(1)(A) criteria as strongly as does

Hagens Berman.

### A.    Hagens Berman's Work Identifying and Investigating Potential Claims:  Hagens Berman Initiated this Litigation after Extensive Industry and Economic Pricing Analysis

On October 3, 2012, following many months of factual investigation and economic

analysis, Hagens Berman initiated this antitrust litigation by filing *Young, et al. v. LG Chem Ltd., et*

*al.* in this District ("*Young*").[10]  This was the *first* civil litigation filed that is part of this multi-

district litigation.  Following the filing of the *Young* action, dozens of actions were filed in at least

---

[7] *See In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143 (N.D. Cal. June 4, 2010) (Dkt. No. 96) (decision appointing HBSS as sole interim class counsel for indirect-purchaser plaintiffs) (emphasis added).

[8] Fed R. Civ. P. 23(g)(3).

[9] Fed. R. Civ. P. 23(g)(1)(A); *see also* Manual for Complex Litigation, Fourth (2012) ("Manual"), at § 21.271.

[10] No. 4:12-cv-05129-YGR (N.D. Cal.).

APPL. OF HAGENS BERMAN TO BE
APPOINTED INTERIM CLASS COUNSEL                    - 4 -
& FOR APPOINT. OF PLTFS' STEERING
COMMITTEE
010330-11  588083 V1

1    six different districts.  Many of the complaints are identical or substantially similar to Hagens

2    Berman's complaint in *Young*.

3      The *Young* complaint does not simply rely on readily-available public information.  Hagens

4    Berman retained economists with extensive experience in technology markets to obtain and

5    analyze historical pricing data, including data from the Bank of Korea and Bank of Japan, in order

6    to show price changes and the impact of defendants' conduct over time – before and after

7    defendants engaged in the alleged conspiracy.  We also collected data on lithium-ion battery raw

8    material costs and numerous Asian language documents discussing the market for lithium-ion

9    batteries.  These documents had to be translated and were then reviewed by Hagens Berman and its

10   experts.[11]

11     The substance and presentation of the *Young* allegations highlights this extensive factual

12   investigation and analysis.  Examples of this work product, as taken from the *Young* complaint,

13   include the following economic charts:



**Bank of Korea Li-Ion Battery Price Index**

---

[11] Berman Declaration, ¶¶ 4-9.

APPL. OF HAGENS BERMAN TO BE
APPOINTED INTERIM CLASS COUNSEL
& FOR APPOINT. OF PLTFS' STEERING
COMMITTEE
010330-11  588083 V1

      - 5 -



The *Young* complaint describes the pricing for the two most important raw materials used to manufacture lithium-ion batteries, and how prices for these raw materials ***could not*** account for the price changes in lithium-ion batteries.[12]  Hagens Berman also researched, and described in great detail in the complaint, the structure and characteristics of the battery market which rendered the conspiracy more plausible, including the barriers to entry, the inelastic demand for lithium-ion batteries, and market concentration.[13]  In sum, Hagens Berman spent months analyzing this data and other factual information prior to making the decision that there was enough evidence to suggest that defendants had conspired to fix prices.

No other complaint filed by other plaintiffs' counsel presents anywhere near this degree of ***original*** analysis.  They simply have not done the same amount of investigation as has Hagens Berman.  And as to those who would claim that they were investigating and *Young* simply beat

------------------------------------------------------------

[12] *Young* Compl., ¶¶ 80-83.

[13] *Id.*, ¶¶ 84-95.

APPL. OF HAGENS BERMAN TO BE APPOINTED INTERIM CLASS COUNSEL & FOR APPOINT. OF PLTFS' STEERING COMMITTEE
010330-11  588083 V1

- 6 -

1    them to the courthouse, the claim must be viewed skeptically given that no other so-called

2    "investigations" by other firms unearthed a single substantive fact not already included in the

3    *Young* complaint.

4           In addition to the extensive factual and economic analyses performed by Hagens Berman

5    and its economists, Hagens Berman lawyers carefully chose the appropriate venue in which to file

6    *Young*.  Given that every major technology-related price-fixing action over the past decade has

7    been venued in the Northern District of California, and because this District is also the home of

8    major domestic defendant Samsung, we concluded that the Northern District of California was the

9    most appropriate venue.  The Judicial Panel on Multidistrict Litigation ("MDL Panel") agreed and

10   transferred all related litigation to this Court.

11          In contrast to this careful and cogent approach, other plaintiffs' counsel filed in other

12   venues, and in some cases, multiple venues.  For example, counsel for indirect-purchaser plaintiffs

13   in *Batey v. LG Chem America, Inc., et al.,*[14] *Miller, et al. v. LG Chem Ltd., et al.,*[15] *Shawn et al. v.*

14   *LG Chem America, Inc., et al.,*[16] *Turner et al. v. LG Chem, Ltd., et al.,*[17] *Doyle v. LG Chem*

15   *America, Inc., et al.*[18] (collectively the "Batey Plaintiffs"), who will also seek appointment as class

16   counsel, filed cases in the Southern District of California and the District of New Jersey.  While

17   there may be a valid statutory basis for venue in those jurisdictions, the decision to file in multiple

18   jurisdictions suggests a strategy to increase the likelihood that the MDL Panel would choose one of

19   these jurisdictions instead of the district with the closest connection to the alleged conspiracy and

20   the one with most experience and developed law in these cases – to wit, this District.  The venue

21   choices made by the Batey Plaintiffs cannot have been done with the best interests of the class in

22   mind.

23

24

---

25      [14] No. 2:12-cv-6555 (D.N.J.).

        [15] No. 3:12-cv-2531 (S.D. Cal.).

26      [16] No. 2:12-cv-6753 (D.N.J.).

27      [17] No. 3:12-cv-2658 (S.D. Cal.).

        [18] No. 2:12-cv-7653 (D.N.J.).

28
     APPL. OF HAGENS BERMAN TO BE
     APPOINTED INTERIM CLASS COUNSEL                          - 7 -
     & FOR APPOINT. OF PLTFS' STEERING
     COMMITTEE
     010330-11  588083 V1

1     Competing class counsel applicants who filed copy-cat complaints may attempt to belittle

2   Hagens Berman's work product by claiming that the *Young* complaint is not proprietary, but rather,

3   based primarily on the public disclosure that the United States Department of Justice is conducting

4   a criminal investigation into the lithium-ion batteries industry.[19]  Yet the *Young* complaint is

5   comprised of 189 numbered paragraphs (with dozens of other subparagraphs), of which only six

6   paragraphs (or about 3% of the complaint) concern the ongoing criminal investigation.  The

7   remainder of the *Young* complaint comprises Hagens Berman's original analysis and work product.

8     Hagens Berman's original work here reflects the innovative approach and dedication that

9   the firm brings to every matter, and which Courts have recognized in appointing Hagens Berman to

10   lead class counsel positions in some of the current largest antitrust class actions.  For example, in

11   the *Electronic Books Antitrust Litigation*,[20] Hagens Berman developed and filed the first case in the

12   country alleging that Apple conspired with five of the six largest book publishers to drive up prices

13   for eBooks.  Following the filing of Hagens Berman's complaint, dozens of copy-cat complaints

14   were filed throughout the United States.  Similarly, in the *Online Travel Company Hotel Booking*

15   *Antitrust Litigation*,[21] Hagens Berman developed and filed the first case alleging a conspiracy

16   among certain online travel companies and hotel chains to drive up prices for hotel rooms.  And

17   again, following the filing of Hagens Berman's complaint, dozens of copy-cats followed

18   throughout the country.  In both cases, the Courts recognized Hagens Berman's leadership,

19   experience, and efforts in developing the litigation, and appointed Hagens Berman as class counsel

20   over the competing applications of copy-cat counsel.[22]  Like here, in those cases competing counsel

21   claimed to have been working on the matter and that Hagens Berman simply filed first.  And also

22   like here, the contentions were not plausible given the complete absence of any information not

23   already contained in the complaints filed by Hagens Berman on behalf of our clients.

24

---

25       [19] Such an argument would also be ironic given that competing counsel base virtually their
       entire complaints on the complaint prepared by Hagens Berman in *Young*.

26       [20] No. 11-md-2293 (S.D.N.Y.).

27       [21] No. 3:12-cv-3515 (N.D. Tex.).

28       [22] These orders are attached at Exhibits C and D to the Berman Declaration.

APPL. OF HAGENS BERMAN TO BE
APPOINTED INTERIM CLASS COUNSEL                    - 8 -
& FOR APPOINT. OF PLTFS' STEERING
COMMITTEE
010330-11  588083 V1

B.       **Hagens Berman Has Extensive Experience Handling Class Actions, Other Complex Litigation, and the Types of Claims Asserted in the Action**

Hagens Berman is a 55-lawyer firm, with offices in Berkeley, Los Angeles, Seattle, New York, Washington D.C., Boston, Phoenix, Chicago, Minnesota, and Colorado.  Since its founding in 1993, Hagens Berman has represented plaintiffs in a broad spectrum of complex, multi-party antitrust cases.  The firm has been recognized by courts throughout the United States for its ability and experience in handling major complex litigation.[23]  We have aggressively prosecuted antitrust claims, have extensive trial experience, and have held leadership roles in hundreds of complex civil class actions, including the following cases in which Hagens Berman was appointed to act as class counsel:[24]

| Case Title | Court & Docket | Firm Position | Results |
|---|---|---|---|
| *In re Visa Check/ MasterCard Antitrust Litig.* | E.D.N.Y. 96-cv-05238 | Co-lead counsel. | Settled for over $3 billion in cash and over $20 billion in injunctive relief, making it the largest antitrust settlement in history at the time. |
| *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.* | N.D. Cal. 02-cv-486 PJH | Co-lead counsel for direct-purchasers. | Over $325 million in settlement funds. |
| *In re Intel Corp. Microprocessor Antitrust Litig.* | D. Del. MDL 1717 | Co-lead Counsel. | Litigation pending. |
| *In re Static Random Access Memory (SRAM) Antitrust Litig.* | N.D. Cal. 07-cv-01819-CW | Executive Committee Member for direct-purchasers. | Over $75 million in settlement funds to date. |
| *In re TFT-LCD Antitrust Litig.* | N.D. Cal. M 07-1827 | One of eight "Tier 1" firms representing direct-purchasers. | Settled for over $500 million. |

[23] The firm's resume, along with short biographies of the firm's lawyers, are attached as Exhibit A to the Berman Declaration.

[24] *See In re California Micro Devices Sec. Litig.*, 1995 U.S. Dist. LEXIS 11587, at *8 (N.D. Cal. Aug. 4, 1995) (directing applicants to identify relevant recent case experience and results).

| Case Title | Court & Docket | Firm Position | Results |
|---|---|---|---|
| *Pecover v. Electronic Arts, Inc.* | N.D. Cal. 08-cv-2820-CW | Co-lead counsel for indirect-purchasers. | Nationwide class certified, settled for $27 million. |
| *In re Optical Disk Drive Prods. Antitrust Litig.* | N.D. Cal. 10-cv-2143-RS | Sole lead counsel for indirect-purchasers. | Litigation pending. |
| *In re Electronic Books Antitrust Litig.* | S.D.N.Y. 11-md-2293 | Co-interim class counsel. | Litigation pending. |
| *In Re: Online Travel Company (OTC) Hotel Booking Antitrust Litig.* | N.D. Tex. 3:12-cv-03515-B | Sole interim class counsel. | Litigation pending. |
| *In re Charles Schwab Corp. Secs. Litig.* | N.D. Cal. 08-cv-01510 | Sole lead class counsel. | Settled for $235 million after certification of national class. |

Hagens Berman's experience in cases involving Asian company defendants also supports the firm's selection here. For example, in *Cathode Ray Tubes Antitrust Litigation* (Conti, J.), Hagens Berman, working under the direction of class counsel, is responsible for discovery of Samsung, which is also a defendant here, and we have taken the depositions of numerous Samsung representatives. In addition, in *In re Optical Disk Drive Prods. Antitrust Litigation* (Seeborg, J.), where Hagens Berman serves as sole lead counsel, the firm led the negotiation with over 25 defendants regarding search terms, transactional data, and document productions. In both *Cathode Ray Tubes* and *Optical Disk Drive*, Hagens Berman acquired significant experience in managing the process of translating Asian language documents, and it is highly likely that there will be a significant quantity of Asian-language documents that will need to be translated in this case. Also, there is a large overlap between the products at issue, the defendants, and the personnel involved in *Cathode Ray Tubes* and *Optical Disk Drive* and the current case. Hagens Berman's familiarity with these issues will serve to streamline and simplify the issues in this case.

APPL. OF HAGENS BERMAN TO BE APPOINTED INTERIM CLASS COUNSEL & FOR APPOINT. OF PLTFS' STEERING COMMITTEE
010330-11 588083 V1

- 10 -

Further, a federal grand jury is currently investigating the defendants for anti-competitive practices in the lithium-ion batteries market.  Hagens Berman has extensive, and we submit highly unique, experience working with governmental authorities and coordinating among parallel criminal investigation and civil proceedings, which may prove useful here in light of the parallel criminal proceedings.  For example, in the *Electronic Books Antitrust Litigation,* Hagens Berman is presently working in concert with the Antitrust Division of the Department of Justice, as well as 33 State Attorneys General, to prosecute price-fixing claims against Apple and five of the six largest eBook publishers.  This is one of the largest collaborative public-private antitrust efforts in recent times.

The Court should also consider the performance of proposed lead counsel applicants measured by the percentage of recovery they achieve for class members and the efforts that the firms undertook in past cases to directly distribute recoveries to the class.  Hagens Berman proffers two examples of the vigor with which the firm garners large recoveries measured as a percentage of alleged damage.  In the *In re Pharmaceutical Industry Average Wholesale Price Litigation,*[25] Hagens Berman was instrumental in obtaining over $340 million in recoveries for the class, after successfully winning a "test-class" trial against three of the defendants.  In settlements with AstraZeneca, and with several defendants included in the "Track Two" tranche of the litigation, consumer members of the classes received ***three times*** the actual damages incurred during the heart of the liability period.  In the settlement with defendant Bristol-Myers Squibb, consumer members of the classes received ***double*** their actual damages during that same period.  In addition, by making substantial efforts to obtain relevant data from the Centers for Medicare and Medicaid Services, we ensured that most members of the consumer classes received their recovery with little inconvenience.  The Medicare consumer classes were required to do nothing more than sign and return a simple claim card attesting to the fact that they made a percentage co-pay not covered by insurance for the drugs at issue, after which a check was sent for payment amounts automatically calculated by the claims administrator.

---

[25] MDL No. 1456 (D. Mass.).

*In re Charles Schwab Corp. Securities Litigation* (Alsup, J.),[26] a securities class action, provides another example of the zealousness with which Hagens Berman pursues recovery. Hagens Berman served as sole lead counsel, and the Federal Class recovered approximately ***forty-two percent*** of its recognized losses, while the California Class recovered approximately ***eighty-two percent***. And we instituted a payment system so that checks were sent directly to most class members without the need to complete a claim form of any kind. As a result, 97 percent of the fund was dispersed during the initial distribution, a nearly unheard-of statistic in the annals of large class action settlement administrations.

## C. Hagens Berman's Extensive Knowledge of the Applicable Law

Hagens Berman has experienced antitrust litigators who collectively have hundreds-of-years of experience litigating antitrust class actions. Those lawyers include the firm's managing partner, Steve Berman, who has successfully tried several class action antitrust litigations, as well as George Sampson, a former Assistant Attorney General for the State of New York and Chief of the Attorney General's Antitrust Bureau. The following lawyers are expected to staff this case on behalf of the firm.

***Steve Berman***. Mr. Berman helped start Hagens Berman in 1993, and is the managing partner. The NATIONAL LAW JOURNAL just selected Mr. Berman to its prestigious list of the Top 100 Most Influential Lawyers in the country, a list that is compiled every five years.[27] Mr. Berman has served as lead or co-lead counsel in antitrust, securities, consumer, products liability, and employment class actions, and complex litigations throughout the country, including in MDL actions too numerous to count. For example, Mr. Berman was the lead trial lawyer in *In re Pharmaceutical Industry Average Wholesale Price Litigation.*[28] He tried the class case against four manufacturers and successfully argued the appeal from the trial before the First Circuit. Mr.

---

[26] No. 08-cv-01510 (N.D. Cal.).

[27] Mr. Berman was selected based on the NATIONAL LAW JOURNAL's assessment of the large recoveries delivered to clients of the firm.

[28] MDL No. 1456 (D. Mass.).

APPL. OF HAGENS BERMAN TO BE
APPOINTED INTERIM CLASS COUNSEL
& FOR APPOINT. OF PLTFS' STEERING
COMMITTEE
010330-11 588083 V1

- 12 -

Berman was also the lead counsel in *New England Carpenters v. First DataBank*[29] on behalf of a nationwide class of private payors that purchased prescription brand name drugs. Hagens Berman achieved a $350 million settlement eleven days before trial was scheduled to start. Mr. Berman was also lead counsel to the class in the aforementioned *In re Charles Schwab Corp. Securities Litigation*[30] before the Honorable William Alsup.

In *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*,[31] Judge James V. Selna *sua sponte* identified Mr. Berman as a presumptive co-lead counsel when Judge Selna was assigned the Toyota MDL. A settlement valued at over $1.4 billion was preliminarily approved in December 2012; if approved, it will be the largest class settlement in the history of automobile litigation in this country. Perhaps most notable is Mr. Berman's role as a special assistant attorney general for the states of Washington, Arizona, Illinois, Indiana, New York, Alaska, Idaho, Ohio, Oregon, Nevada, Montana, Vermont, and Rhode Island in the landmark Tobacco Litigation. That case resulted in the largest settlement in history, a settlement that occurred while Mr. Berman was in trial in *State of Washington v. Philip Morris, et al.*

**Jeff D. Friedman**. Mr. Friedman is a member of Hagens Berman and helps run the firm's Berkeley office. Mr. Friedman is a former Assistant United States Attorney, Criminal Division, for the United States Attorney's Office, Central District of California. As an AUSA, Mr. Friedman tried numerous jury trials and prosecuted complex white-collar fraud cases and large narcotics organizations. Mr. Friedman's antitrust experience as lead or co-lead counsel in antitrust cases in the media and technology sector includes *In re Optical Disk Drive Products Antitrust Litigation*,[32] *Pecover v. Electronic Arts, Inc.*,[33] *In re eBay Sellers Antitrust Litigation*,[34] and *In re Electronic Books Antitrust Litigation.*[35]

---

[29] No. 05-11148-PBS (D. Mass.).

[30] No. 08-cv-01510 (N.D. Cal.).

[31] No. 8:10ML2151 JVS (FMOx) (C.D. Cal.).

[32] No. 3:10-md-2143-RS (N.D. Cal.).

[33] No. 08-cv-2820-RS (N.D. Cal.).

**George Sampson**.  George Sampson has practiced antitrust litigation for the past 27 years, first at the New York State Attorney General's office, and then at Hagens Berman.  From 1984 to 1994, he served as an Assistant Attorney General in the Antitrust Bureau, rising to the position of Bureau Chief in 1992.  In 1994, Mr. Sampson joined Hagens Berman in Seattle as a senior antitrust partner specializing in antitrust class actions, particularly in the economics of high-tech industries.  His notable cases include *In re Visa Check/MasterMoney Antitrust Litigation*,[36] in which George served as co-lead counsel.  Class certification in that case was affirmed by the Second Circuit and the case settled on the eve of trial for over $3 billion.  Mr. Sampson was also a lead attorney in the *In re Disposable Contact Lens Antitrust Litigation*,[37] which settled for $78 million after six weeks of trial.

**Shana Scarlett**.  Ms. Scarlett is a Hagens Berman partner in its Berkeley office.  Ms. Scarlett has extensive experience representing plaintiffs in antitrust class actions.  She is part of the team of litigators representing indirect-purchaser plaintiffs in the *In re Optical Disk Drive Antitrust Litigation*, alleging a price-fixing conspiracy to fix the prices of optical disk drives throughout the United States.  Ms. Scarlett is also a key member of the *Pecover v. Electronic Arts, Inc*. litigation team, where Hagens Berman represents indirect purchasers against the video game company.  Ms. Scarlett was instrumental in the certification of a nationwide class of indirect purchasers under California law.  Ms. Scarlett received the *Super Lawyers* Rising Star Award in Northern California for 2009, 2010, and 2011.

**Jason Zweig**.  Mr. Zweig is a Hagens Berman partner in the firm's New York office.  He has over ten years of antitrust experience.  Mr. Zweig was a member of the trial team in *High Fructose Corn Syrup Antitrust Litigation*,[38] which resulted in a $531 million settlement on the eve of trial.  Mr. Zweig also played significant roles in the following antitrust litigations: *Hydrogen*

---

[34] No. 07-cv-1882-JF (N.D. Cal.).

[35] No. 11-md-2293 (S.D.N.Y.).

[36] No. 96-cv-05238 (E.D.N.Y.).

[37] MDL No. 1030 (M.D. Fla. 1996).

[38] MDL No. 1087 (C.D. Ill.).

APPL. OF HAGENS BERMAN TO BE
APPOINTED INTERIM CLASS COUNSEL                    - 14 -
& FOR APPOINT. OF PLTFS' STEERING
COMMITTEE
010330-11  588083 V1

*Peroxide Antitrust Litigation* (nearly $100 million recovered);[39] *Plastics Additives Antitrust Litigation* ($46.8 million recovered);[40] *NBR Antitrust Litigation* (recovered $34.3 million);[41] and *Linens Antitrust Litigation* (recovered approximately $11 million).[42]

**D.  Hagens Berman Will Commit Sufficient Resources to Represent the Class**

Hagens Berman will devote the resources necessary to aggressively prepare this case for trial.  To do so, we will rely on several of the firm's most experienced antitrust litigators and trial lawyers, including those profiled above.  Hagens Berman's deep antitrust experience, coupled with the extensive, original work that the firm has done to date in this case, demonstrate our unyielding commitment to representing the proposed class.

**III.  THE COUNSEL STRUCTURE PROPOSED BY HAGENS BERMAN WILL ENSURE THE MOST ZEALOUS AND EFFICENT PROSECUTION OF THE PROPOSED CLASS'S INTERESTS**

In addition to the Rule 23(g)(1)(A) factors, the Court may also consider any other matter pertinent to counsel's ability to fairly represent the putative class[43] and may order potential class counsel to provide information on any subject pertinent to the appointment of class counsel and to propose terms for attorneys' fees and expenses.[44]  We respectfully suggest that the Court should consider the efficiencies advanced by Hagens Berman's streamlined counsel structure, the very reasonable contingent financial terms under which we are willing to represent the proposed class, and the importance of rewarding counsel for innovative work and, thereby, furthering the purposes of the antitrust laws.

**A.  Hagens Berman's Proposed Counsel Structure**

We are proposing a lean and efficient counsel structure.  Under the Hagens Berman proposal, Hagens Berman would serve as sole Interim Class Counsel and would be assisted by a

---

[39] MDL No. 1682 (E.D. Pa.).

[40] No. 03-cv-2038 (E.D. Pa.).

[41] No. 03-cv-1898 (W.D. Pa.).

[42] No. 03-cv-7823 (S.D.N.Y.).

[43] Fed. R. Civ. P. 23(g)(1)(B).

[44] Fed. R. Civ. P. 23(g)(1)(C).

APPL. OF HAGENS BERMAN TO BE
APPOINTED INTERIM CLASS COUNSEL
& FOR APPOINT. OF PLTFS' STEERING
COMMITTEE                                                                       - 15 -
010330-11  588083 V1

1    Plaintiffs' Steering Committee comprised of the following three firms and directed by Hagens

2    Berman:  Cohen Milstein, Robbins Geller, and Goldman Scarlato.  All four of the proposed firms

3    meet this Court's "main criteria for membership in the PSC," to wit, "(a) willingness and

4    availability to commit to a time-consuming project; (b) ability to work cooperatively with others;

5    and (c) professional experience in this type of litigation."[45]  This brief has already profiled Hagens

6    Berman.  Below are short profiles of the remaining three firms.  Each of these firms has extensive

7    experience in antitrust class action litigation and is qualified to act as class counsel in their own

8    right, notwithstanding their recognition that Hagens Berman should lead this case.

9        *Cohen Milstein*.  Cohen Milstein is one of the leading class action firms in the United

10   States and has both the resources and experience required to litigate this matter successfully.

11   Cohen Milstein has more than sixty lawyers, including twenty that focus primarily on antitrust

12   matters.  In October 2012, the NATIONAL LAW JOURNAL named Cohen Milstein (as well as Hagens

13   Berman) one of the top plaintiffs' firms in the country.  Cohen Milstein has been lead or co-lead

14   counsel in many antitrust class action cases over the past four decades.  Most recently, the firm was

15   co-lead counsel in *In re Urethane Antitrust Litigation*,[46] a price-fixing matter in which settlements

16   were secured against four defendants for a total of $139 million.  The case proceeded to trial

17   against the remaining defendant, Dow Chemical, and, in February 2013, a jury awarded more than

18   $400 million in damages, which will result in a judgment of more than $1.1 billion after trebling

19   (and offsets).  As reflected in the firm's resume, Cohen Milstein has also served as lead or co-lead

20   counsel in many other successful antitrust class actions.  The firm also has a proven track record of

21   working effectively and efficiently with Hagens Berman in other matters (such as the ongoing

22   *Electronic Books Antitrust Litigation*).

23       *Robbins Geller*.  Robbins Geller is also one of the nation's premiere class action litigation

24   firms.  With 180 attorneys and nine offices nationwide, including in San Francisco, Robbins Geller

25   has the experience and resources to contribute to the successful prosecution of this litigation.  The

26

27       [45] March 4 Order at 5.

28       [46] No. 2:04-md-01616 (D. Kan.).

APPL. OF HAGENS BERMAN TO BE
APPOINTED INTERIM CLASS COUNSEL          - 16 -
& FOR APPOINT. OF PLTFS' STEERING
COMMITTEE
010330-11  588083 V1

1     firm has extensive antitrust experience, serving as lead and co-lead counsel in numerous large

2     cases including *In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litigation*,[47]

3     where as co-lead counsel it negotiated the largest antitrust settlement in history, valued at $7.25

4     billion.  Robbins Geller has also worked successfully with Hagens Berman in prosecuting other

5     large class cases.  Robbins Geller would be a valuable addition to the PSC.

6          ***Goldman Scarlato***.  Goldman Scarlato has been lead or co-lead counsel in countless

7     indirect-purchaser price-fixing cases, like this one.  (For additional detail, please see Goldman

8     Scarlato's separate filing concerning leadership.)  On account of this history and commitment, its

9     lawyers have become well-versed in litigating the multiple state-law issues that indirect-purchaser

10    litigation naturally engenders.  In addition to leading or co-leading many indirect-purchaser cases,

11    Goldman Scarlato was also deeply involved in other important price-fixing cases – some against

12    these same defendants – such as the *TFT-LCD Indirect-purchaser Antitrust Litigation* (nationwide

13    indirect-purchaser price-fixing class action that settled for $1.1 billion), *Vitamins Antitrust

14    Litigation* (nationwide price-fixing class action that resolved for $2 billion), *NASDAQ Market-

15    Makers Antitrust Litigation* (nationwide price-fixing class action that settled for $1.027 billion),

16    *Monosodium Glutamate Antitrust Litigation* (nationwide price-fixing class action that settled for

17    $130 million), *Methionine Antitrust Litigation* (nationwide price-fixing class action that settled for

18    $101 million), and *Sorbates Antitrust Litigation* (nationwide price-fixing class action that settled

19    for $94.5 million). GSKP continues to litigate the *CRT Indirect-purchaser Antitrust Litigation*

20    against many of these same defendants and is co-lead counsel in the *Aftermarket Sheet Metal

21    Indirect-purchaser Antitrust Litigation.*

22          While the Court has expressed a preference to appoint a plaintiffs' steering committee, we

23    do not know whether the Court envisions a single plaintiff's steering committee comprised of

24    counsel for both the direct- and indirect-purchaser plaintiffs, or two distinct steering committees

25    representing the separate interests of these plaintiff groups.  We suggest that there be two separate

26    PSCs – one for the direct-purchaser plaintiffs and one for the indirect-purchaser plaintiffs.  While

27    _____

28         [47] MDL No. 1720 (E.D.N.Y.).

APPL. OF HAGENS BERMAN TO BE
APPOINTED INTERIM CLASS COUNSEL                    - 17 -
& FOR APPOINT. OF PLTFS' STEERING
COMMITTEE
010330-11  588083 V1

1   there will be some overlap between the two sets of claims in terms of discovery and other issues,

2   there are significant differences between the claims that could create conflicts within the PSC if

3   counsel for both groups were combined.  Further, in cases where separate steering committees

4   represent the interest of direct- and indirect-purchasers, there typically is a significant amount of

5   informal coordination between the groups in order to prevent duplication and minimize the burden

6   on defendants.  We anticipate that such coordination will occur here.

7          The Court's March 4 Order also invokes the prospect of a separate liaison counsel.[48]

8   Liaison counsel is generally appointed only when there is a need for an additional level of

9   coordination.[49]  We respectfully suggest that separate liaison counsel for the indirect-purchaser

10   plaintiffs is unnecessary.  Hagens Berman has a well-regarded office in Berkeley that is more

11   proximately located to the courthouse than the office of any other firm in this case.

12   **B.     The Court Should Accept Hagens Berman's Proposed Structure**

13          Hagens Berman worked to develop consensus among all indirect-purchaser plaintiffs'

14   counsel for a consensual organization of counsel.  Ultimately, and for a variety of reasons, we were

15   unable to do so.  The structure proposed by Hagens Berman is lean and efficient, will eliminate

16   duplication and wasted effort, and will benefit the class.  Included in our structure are firms highly

17   experienced in the type of litigation at issue here, and who have agreed to work cooperatively

18   under the supervision of Hagens Berman.

19          It is likely, even highly probable, that competing groups of counsel will urge the Court to

20   appoint a counsel structure with a much larger – even sprawling – number of firms.  Leading

21   authorities counsel against doing so.  Large counsel groups tend to prosecute cases inefficiently

22   and reward firms for simply accruing time to the file instead of doing the targeted work necessary

23   to best represent the interests of the class; significant duplication and waste impair cohesion and

24   continuity in the day-to-day prosecution of the litigation.[50]  As the MANUAL explains, "[s]ome

25

26   ———————————
       [48] March 4 Order at 4-5.

27       [49] MANUAL, § 10.23 at 52 (citing *In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206 (D.N.J. 1999)).

28       [50] *See, e.g., Nicolow, et al. v. Hewlett-Packard Co., et al.*, No. 3:12-cv-05980-CRB, Hearing Transcript at 37 (N.D. Cal. Mar. 1, 2013) (attached as Ex. B to the Berman Declaration) (In

APPL. OF HAGENS BERMAN TO BE APPOINTED INTERIM CLASS COUNSEL & FOR APPOINT. OF PLTFS' STEERING COMMITTEE
010330-11  588083 V1

- 18 -

judges find that that appointing a single law firm, not a committee, to represent the class helps
keeps fees reasonable."[51]  The MANUAL also reports on court impatience with counsel
maneuvering:

> Courts are increasingly impatient with game playing and jockeying
> for position to be "lead" counsel.  The courts are more aggressive
> about assessing what will serve the interests of the parties and the
> efficient administration of justice, and not what will advance the
> professional or personal interests of the lawyers.  Similarly, if one
> firm can fulfill the lead counsel role, adding more firms adds nothing
> to the process and may only make it more cumbersome or
> expensive.[[52]]

In cases involving multiple lawyers, duplicate and unnecessary work often results, even
under the most scrupulous supervision.  Chief Judge Vaughn Walker recognized this when he
appointed Hagens Berman as sole class counsel in *In re Optical Disk Drive Products Antitrust
Litigation*.  The Special Master in *In re TFT-LCD (Flat Panel) Antitrust Litigation*,[53] also
recognized this, albeit after-the-fact, where Judge Illston joined competing applicants for lead
counsel into a single structure.  While counsel ultimately achieved a significant result for the class,
the relationship between the competing camps was often characterized by infighting, there were
divergent views concerning how best to run the litigation, and inefficiencies resulted.[54]

Numerous courts instruct that appointing a single lead counsel typically better advances the
class's interests in economy and efficiency.  In *Jones Soda*,[55] the court noted the expense,
inefficiencies and even discord that can arise from multiple co-lead counsel:

> The potential for duplicative services, leadership discord, and
> increased attorney's fees militate against the appointment of multiple
> law firms, however, especially in cases where one law firm has the
> proven ability to adequately manage and litigate securities class

---

discussing large numbers of counsel proposed by Cotchett firm, Judge Breyer notes, "[c]ommittees
are ways of vast sums of money waltzing out the door, which is unchecked . . . .").

[51] MANUAL, § 14.212 at 283.

[52] MANUAL, § 10.23 at 52.

[53] No. 3:07-cv-01827-SI (N.D. Cal.).

[54] *See* December 18, 2012 Supplemental Report And Recommendation of Special Master re
Allocation of Attorneys' Fees in the Indirect-Purchaser Class Action, Dkt. No. 7375 (attached as
Ex. E to the Berman Declaration).

[55] *In re Jones Soda Co. Secs. Litig.*, 2008 U.S. Dist. LEXIS 14884, at *9-10 (W.D. Wash. Feb.
12, 2008).

APPL. OF HAGENS BERMAN TO BE
APPOINTED INTERIM CLASS COUNSEL                          - 19 -
& FOR APPOINT. OF PLTFS' STEERING
COMMITTEE
010330-11  588083 V1

actions…. In addition, where more than one lead counsel is appointed, there is the potential that their coordinated handling of the litigation (assuming the best) or their fractious infighting (assuming the worst) could strip the lead plaintiff of control over the litigation[.]

The court in *In re Milestone Science Securities Litigation*[56] likewise rejected a proposed three-way co-lead counsel in favor of a single firm. Citing an SEC *amici* brief, the court highlighted the risk of duplicated efforts and costs from multiple counsel:

As the SEC observes, the approval of multiple lead counsel may engender inefficiency in class action litigation. . . . The potential for duplicative services and the concomitant increase in attorneys' fees works against the approval of multiple lead counsel. … As the SEC argues: "No rule's dictate can completely overcome the inefficiency, added cost, and delay inherent in an inappropriate multiple counsel arrangement."[57]

Echoing the *Jones Soda* ruling, the court in *Malasky v. IAC/Interactivecorp*[58] rejected appointing co-lead counsel because "there is some risk that three law firms may compromise the class through disagreement and/or duplicative or unnecessary legal fees." In *Friedman v. Rayovac Corp.*,[59] the court denied a joint motion to appoint multiple lead counsel where the lead plaintiff (i) "failed to present any evidence or argument that the benefits of multiple lead counsel outweigh the burdens," (ii) made only "conclusory assertions that the combined resources and expertise of three law firms will serve the best interests of the class," and (iii) failed to "explain how its members will be prejudiced if all three law firms are not appointed as lead counsel."[60]

---

[56] *In re Milestone Sci. Sec. Litig.*, 187 F.R.D. 165, 180-81 (D.N.J. 1999).

[57] *Id.* at 176, 177 (citations omitted).

[58] *Malasky v. IAC/InteractiveCorp*, 2004 U.S. Dist. LEXIS 25832, at *16 (S.D.N.Y. Dec. 21, 2004).

[59] *Friedman v. Rayovac Corp.*, 219 F.R.D. 603, 606 (W.D. Wis. 2002).

[60] *See also Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 467 (S.D.N.Y. 2009) (rejecting lead plaintiff's request to appoint two lead counsel, noting that the "Court sees no need for two firms to represent the lead plaintiff"); *Schriver v. Impac Mortg. Holdings, Inc.*, 2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 1, 2006) ("[I]t is not apparent why the Impac/IMH Group needs to retain two law firms to represent it, either of which would appear to be sufficient in itself. The Court is concerned that this multiplicity of counsel could impede the progress of the litigation, complicate discovery and communication among the parties, and increase the potential for conflict among the plaintiff class."); *In re Landry's Seafood Restaurant, Inc. Sec. Litig.*, 2000 U.S. Dist. LEXIS 7005, at *18 (S.D. Tex. Mar. 30, 2000) (Harmon, J.) (court willing to grant two firms' joint application for co-lead counsel, but only upon express condition that "there is no duplication of services or unnecessary increase in fees").

1   The court in *Vincelli v. National Home Health Care Corp.*[61] rejected a joint request to

2 appoint multiple lead counsel, voicing a different concern that multiple co-lead counsel risks

3 shifting the balance of control over the class action to the counsel group and away from the

4 plaintiff.  The court in *Yousefi v. Lockheed Martin Corp.*[62] shared the same concern and, to protect

5 the plaintiff, appointed a single lead counsel in place of three co-lead firms.

6   These concerns apply here.  Hagens Berman has the proven ability to adequately manage

7 and litigate this class action as sole lead counsel, as the firm's regular and successful prosecution of

8 multi-defendant class actions demonstrates.  Hagens Berman intends to ensure that duplication of

9 effort is reduced and efficiency achieved.

10   In addition to proposing what we believe is an efficient counsel structure, Hagens Berman

11 has also demonstrated its commitment to the best interests of the class by focusing only on

12 litigation activities that add value.  In contrast, other counsel have engaged in the "game playing

13 and jockeying for position" that courts and the MANUAL so lament.  As an example, prior to the

14 MDL Panel's transfer order, defendants sought to postpone the January 28, 2013 Case

15 Management Conference that the Court originally scheduled in *Young* given the understandable

16 uncertainty as to whether and where MDL consolidation would occur.[63]  Hagens Berman was the

17 only plaintiffs' counsel to agree to defendants' request.[64]  But several other firms who seek to be

18 appointed interim class counsel for the indirect-purchasers opposed defendants' motion and sought

19 to have the Case Management Conference proceed,[65] notwithstanding the fact that such a

20

21

22

23

---

24 [61] *Vincelli v. National Home Health Care Corp.*, 112 F. Supp. 2d 1309, 1316 (M.D. Fla. 2000).

 [62] *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1072 (C.D. Cal. 1999).

25
26 [63] *See* Dkt. No. 45 in the *Young* action (Defendants' Joint Administrative Motion to Continue Case Management Conference).

 [64] *See* Dkt. No. 46.

27
28 [65] *See* Dkt. No. 47 in *Young* (filed by Cotchett Pitre & McCarthy on behalf of plaintiff Gray); Dkt. No. 48 (filed by Lieff Cabraser Heimann & Bernstein on behalf of plaintiff Katz-Lacabe.

APPL. OF HAGENS BERMAN TO BE
APPOINTED INTERIM CLASS COUNSEL   - 21 -
& FOR APPOINT. OF PLTFS' STEERING
COMMITTEE
010330-11  588083 V1

conference might have been rendered completely useless in the event the MDL Panel transferred these cases elsewhere.[66]  The Court cogently continued the conference.[67]

Instead of engaging in litigation activities which would yield little or no benefit to the class, Hagens Berman was hard at work negotiating with defendants on issues intended to actually advance the litigation.  For example, following service of the complaint in *Young*, defendants requested an extension of time to respond to the complaint.  Hagens Berman sought and obtained defendants' agreement to engage in a Rule 26(f) conference within 21 days after the filing of a consolidated amended complaint.[68]  This provision ultimately made its way into many stipulations in the various related actions.

Other firms have engaged in other maneuvering calculated to benefit themselves and not their clients and the proposed class, the exact type of conduct condemned by the MANUAL.  For example, class counsel applicant Cotchett, Pitre & McCarthy appeared as counsel of record for direct-purchaser plaintiff in *Gray v. Samsung SDI, Co., Ltd., et al.*[69]  Then, on February 15, 2013, following the MDL Panel's consolidation order, Cotchett filed a case for an indirect-purchaser plaintiff in *Yee v. LG Chem, Ltd., et al.*[70]  It then took the Cotchett firm seven days after it filed its *Yee* complaint to file a notice of withdrawal from the *Gray* case.[71]  The conflict engendered by Cotchett's actions demonstrate that Cotchett is more concerned with its own position in the litigation than with zealously representing the interests of its clients and the classes they propose to represent.  Again, the Court should protect against such "game playing and jockeying for position."[72]

---

[66] These kinds of tactics are commonly employed when counsel are jockeying for a leadership position.  They will claim that it shows "vigorous representation," when all it does is create unnecessary "make-work" for the Court and churn lodestar.

[67] *See* Dkt. No. 49.

[68] *See* Dkt. No. 18, ¶ 5.

[69] No. 4:12-cv-05274-YGR (N.D. Cal).

[70] No. 4:13-cv-00703-YGR (N.D. Cal.).

[71] *See* Dkt. No. 59 in the *Gray* action.

[72] MANUAL, § 10.23 at 52.

APPL. OF HAGENS BERMAN TO BE
APPOINTED INTERIM CLASS COUNSEL                    - 22 -
& FOR APPOINT. OF PLTFS' STEERING
COMMITTEE
010330-11  588083 V1

**C.    Hagens Berman Proposes an Innovative, Fair and Reasonable Fee Structure**

According to Rule 23(g)(1)(C), the Court "may order potential class counsel . . . to propose terms for attorneys' fees and nontaxable costs."  In the competitive bidding process, the Court's task is to "approximate as closely as possible the attorney selection and fee bargain that the class itself would strike if it were able to do so."[73]  The Court stands "in the position of an intermediary acting for the class members in establishing rates."[74]  In considering competitive bids from counsel, "[j]udges don't look for the lowest bid; they look for the best bid – just as any private individual would do in selecting a law firm, an advertising firm, or a construction company."[75]  The relationship between attorneys' fees and recovery to the class is a complex one, where courts often strive to align the interests of counsel and the class.  One court has previously expressed its belief "that a 'percentage of recovery fee' calculation holds the best promise of harmonizing the interests of the class and its future counsel."[76]

We do not know whether other applicants will address fees.  Hagens Berman proposes a fee structure that provides for fair compensation while minimizing the impact on the proposed class. By making this proposal, even though the Court has not ordered competitive bidding, Hagens Berman again shows that it is the firm best aligned with the interests of the class.  As is customary, Hagens Berman submits the fee proposal on a confidential basis in the Berman Declaration.  We believe that the Court will find our fee proposal to be very competitive, if not compelling, and in the best interests of the proposed class.

**D.    Appointing Hagens Berman as Class Counsel Furthers Important Public Policy Interests in the Antitrust Arena**

The Supreme Court and numerous lower courts have long endorsed the concept that "[e]very violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress . . . and . . . Congress chose to permit all persons to sue to recover three times their actual

---

[73] *In re Wells Fargo Sec. Litig.*, 156 F.R.D. 223, 225 (N.D. Cal. 1994) (internal citations and quotations omitted).

[74] *In re Amino Acid Lysine Antitrust Litig.*, 918 F. Supp. 1190, 1194 (N.D. Ill. 1996).

[75] *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 720 (7th Cir. 2001).

[76] *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 587 (N.D. Cal. 1999).

APPL. OF HAGENS BERMAN TO BE
APPOINTED INTERIM CLASS COUNSEL
& FOR APPOINT. OF PLTFS' STEERING
COMMITTEE
010330-11  588083 V1

- 23 -

1    damages every time they were injured in their business or property by an antitrust violation.  By

2    offering potential litigants the prospect of a recovery in three times the amount of their damages,

3    Congress encouraged these persons to serve as 'private attorneys general.'"[77]  The government has

4    limited resources and cannot possibly prosecute every antitrust violation that occurs.  Thus, those

5    who seek to act as "private attorneys general" perform an important function in the regulation of

6    competition in our economy.  But antitrust cases such as this one are rarely easy and require a

7    significant investment of time and money, often by a litigant's counsel, in order to develop and

8    prosecute an antitrust case.  Of course, because of the possibility of treble damages, and the

9    possibility of attorneys' fees, both litigant and their counsel are incentivized to develop and pursue

10    an antitrust action and perform the function of "private attorney general."

11        As set forth above, under Rule 23(g), the very first examined when selecting class counsel

12    is, "[t]he work counsel has done in identifying or investigating potential claims in the action."  For

13    years, it was an unwritten principle among the plaintiffs' bar that it was a breach of good faith and

14    collegiality to file a copy-cat case and seek appointment as lead counsel in a proprietary case where

15    another firm and client had the mettle and initiative to develop it.  Here, there is no question that

16    Hagens Berman, as the first filer, has done much more work in identifying and investigating the

17    claims at issue in this case than any other counsel.  To select a firm as class counsel that merely

18    files a copy-cat complaint, and that failed to perform much of their own original analysis,

19    undermines private antitrust enforcement.  It has the potential to discourage firms from making the

20    substantial investment required to investigate and prosecute antitrust cases, such as that made by

21    Hagens Berman here.  Firms will have little incentive to expend the resources required to develop

22    and pursue an antitrust case if they believe any firm can swoop in at any time and wrestle control

23    of the litigation.  Thus, the first Rule 23(g) factor is particularly important, and should carry

24    significant weight.

25        In addition to furthering the private enforcement of the antitrust laws, selecting Hagens

26    Berman as Interim Class Counsel also furthers another important consideration:  private ordering.

27

28

    [77] *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262 (1972).

Plaintiffs' counsel are encouraged to "private order," or, agree upon a counsel structure which they believe *serves the best interest of the class*.[78]   In order for private ordering to be successful, there must be predictability in the process.  Like the concept of *stare decisis*, which is the bedrock of our legal system providing predictability from case-to-case, plaintiffs' counsel must be able to objectively assess the landscape and understand what the likely outcome will be in organizing counsel.  They must be able to evaluate which counsel best meets the Rule 23(g) criteria and once they so determine, align with that counsel.

In this case, Hagens Berman satisfies the Rule 23(g) criteria more than any other firm.  To appoint another counsel, particularly the other applicants who merely copied Hagens Berman's work product and, in some cases, filed their complaints many months after *Young*, would severely undermine predictability, the force of the Rule 23(g) factors, and the private ordering process.

### IV.   CONCLUSION

Hagens Berman respectfully submits that it has the highest Rule 23(g) score of all firms that have filed an action.  We request that this Court appoint Hagens Berman as Interim Class Counsel for the indirect-purchaser plaintiffs and also appoint a three-firm PSC comprised of Cohen Milstein, Robbins Geller, and Goldman Scarlato.

DATED:  March 28, 2013                      HAGENS BERMAN SOBOL SHAPIRO LLP


By___/s/ Steve W. Berman_____
          Steve W. Berman
Sean R. Matt
George W. Sampson (*Pro Hac Vice*)
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com
george@hbsslaw.com

---

[78] MANUAL, § 21.272 at 405-06.  An additional word about private ordering is necessary.  It is likely that Hagens Berman will not have the majority of firms supporting Hagens Berman's selection as sole Interim Class Counsel.  However, the Court should be mindful that we did not encourage other firms to file cases shortly before the organizational meeting of counsel, so that those firms could then vote for us – as certain other applicants have done.  For this reason, the Court should carefully scrutinize whether such maneuvering was done to artificially manufacture consent.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jeff D. Friedman (173886)
Shana E. Scarlett (217895)
Meghan R. Lang (221156)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com
meghanl@hbsslaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the Electronic Mail Notice List generated by the CM/ECF system, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the list generated by the CM/ECF system.

/s/ Steve W. Berman
STEVE W. BERMAN

APPL. OF HAGENS BERMAN TO BE
APPOINTED INTERIM CLASS COUNSEL
& FOR APPOINT. OF PLTFS' STEERING
COMMITTEE
010330-11  588083 V1

- 27 -