Steve W. Berman (*Pro Hac Vice*)
Sean R. Matt
George W. Sampson (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com
george@hbsslaw.com

Jeff D. Friedman (173886)
Shana E. Scarlett (217895)
Meghan R. Lang (221156)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com
meganl@hbsslaw.com

*Attorneys for Plaintiffs in Young, et al.
v. LG Chem Ltd., et al.*, No. 12-cv-05129-YGR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE LITHIUM ION BATTERIES ANTITRUST LITIGATION | No. 4:13-md-02420-YGR<br><br>MDL No. 2420<br><br>**DECLARATION OF STEVE W. BERMAN IN SUPPORT OF APPLICATION TO APPOINT HAGENS BERMAN AS INTERIM CLASS COUNSEL**<br><br>**[PORTIONS SUBMITTED *IN CAMERA*]** |
| This Document Relates to:<br><br>ALL INDIRECT-PURCHASER ACTIONS | Date:     April 3, 2013<br>Time:     2:00 p.m.<br>Judge:    Hon. Yvonne Gonzalez Rogers<br>Crtm:     5, 2nd Floor |

010330-11 597061 V1

1      I, STEVE W. BERMAN, declare as follows:

2      1.      I am the managing partner of Hagens Berman Sobol Shapiro LLP ("Hagens

3 Berman"), counsel of record for Plaintiffs in *Young, et al. v. LG Chem Ltd., et al.*, No.

4 12-CV-05129-YGR (N.D. Cal.) ("*Young*"). I have personal knowledge of the matters stated herein

5 and, if called upon, I could and would competently testify thereto.

**Proposal of Hagens Berman**

7      2.      I make this declaration in support of my firm's application to be appointed as

8 Interim Class Counsel for the putative class of indirect purchasers of lithium-ion rechargeable

9 batteries and related products. In addition, Hagens Berman proposes a three-firm Plaintiffs'

10 Steering Committee ("PSC") which would include the law firms of Cohen, Milstein, Sellers &

11 Toll, PLLC, Robbins Geller Rudman & Dowd LLP, and Goldman Scarlato Karon & Penny, P.C.,

12 and which would be chaired by Hagens Berman.

**History of Hagens Berman's Extensive Efforts in This Litigation**

14      3.      Federal Rule of Civil Procedure Rule 23 allows this Court to consider "the work

15 counsel has done in identifying or investigating potential claims in the action."[1] As detailed below,

16 my law firm spent significant time and resources investigating the potential claims in this action,

17 far more than any other firm.

18      4.      In the summer of 2012, months before the filing of the first complaint, Hagens

19 Berman became aware of potential anticompetitive activities in the market for lithium-ion batteries.

20      5.      We then began an extensive investigation into the lithium-ion batteries market.

21 Hagens Berman retained two experienced economists with specific expertise in high-technology

22 markets. These experts have served as economic experts in several high-technology antitrust

23 litigations, including several that have been litigated in this District. Hagens Berman has worked

24 extensively with these experts in other cases, and we are confident these experts possess a deep

25 knowledge of high-technology industries and the behavior of high-technology markets.

26

27

---

[1] Fed. R. Civ. P. 23(g)(1)(A)(i).

28

DECL. OF STEVE W. BERMAN IN SUPPORT OF
APPL. TO APPOINT HAGENS BERMAN – No. 12-md-
2420-YGR                - 1 -
010330-11 597061 V1

1     6.     Over the course of the next several months, Hagens Berman and its experts

2 collected worldwide economic data on the lithium-ion batteries market, including data from the

3 Bank of Korea and the Bank of Japan, as well as various worldwide battery-related trade

4 associations.  Hagens Berman also collected data on lithium-ion battery raw material costs,

5 including the pricing for such materials.  Hagens Berman and its experts collected numerous Asian

6 language documents discussing the market for lithium-ion batteries.  These documents had to be

7 translated and were then reviewed by Hagens Berman and its experts.

8     7.     As a result of Hagens Berman's extensive analysis and the work of its economists,

9 Hagens Berman was able to determine that the pricing for lithium-ion batteries during the relevant

10 period of time covered by this litigation behaved in a way that was not consistent with either a

11 high-technology product market or changes in raw material costs.  For example, based on lithium-

12 ion battery data obtained from the Bank of Korea, Hagens Berman's economists were able to create

13 the following pricing analysis, among others:



**Bank of Korea Li-Ion Battery Price Index**

DECL. OF STEVE W. BERMAN IN SUPPORT OF
APPL. TO APPOINT HAGENS BERMAN – No. 12-md-
2420-YGR
010330-11  597061 V1

- 2 -

1      8.      Following Hagens Berman's extensive investigatory efforts, on October 3, 2012, it

2    filed a class action complaint in this district on behalf of its indirect-purchaser clients and

3    captioned *Young, et al. v. LG Chem, Ltd., et al.*, No. 12-CV-5129-YGR (N.D. Cal.).  In drafting

4    this complaint, Hagens Berman expended significant time and resources developing the allegations

5    of this conspiracy.  While the complaint does make reference to the existence of an ongoing

6    criminal investigation being conducted by the United States Department of Justice, such references

7    account for only 6 paragraphs in a 189 paragraph complaint.  Thus, the allegations in the *Young*

8    complaint are not simply the result of cutting and pasting from various articles discussing a

9    criminal investigation.  Rather, the allegations in the *Young* complaint are proprietary and the result

10   of hard work and original analysis conducted by Hagens Berman.

11     9.      Hagens Berman's efforts in thoroughly investigating this matter, and being the firm

12   which initiated this litigation, is typical of its approach and is a source of pride within the firm.  We

13   believe it is something that sets our firm apart from other firms.  We do not believe in copying

14   others' work product, as many counsel did here.  In fact, not only do we believe this approach sets

15   us apart from other firms, but Courts do as well.  In two recent cases, *In re Electronic Books*

16   *Antitrust Litigation* (S.D.N.Y.) (Judge Cote) and *Online Travel Company (OTC) Hotels Booking*

17   *Antitrust Litigation* (N.D. Tex.) (Judge Boyle), Hagens Berman invested significant resources into

18   developing and initiating these cases.  In both, throngs of firms filed copy-cat complaints and

19   sought to minimize Hagens Berman's efforts in initiating the case. Yet the Courts recognized that

20   Hagens Berman had developed these cases, and appointed Hagens Berman as class counsel.  These

21   are but two examples.

22     10.     Approximately a week after Hagens Berman's filing of the *Young* complaint, on

23   October 11, 2012, Cotchett, Pitre & McCarthy ("Cotchett"), along with its co-counsel, Saveri and

24   Saveri, filed a complaint on behalf of its client, Nicole Gray, in *Gray v. Samsung SDI, Co., Ltd.*,

25   No. 12-CV-5274-YGR (N.D. Cal.). Unlike the plaintiffs in Hagens Berman's complaint, Ms. Gray

26   was a ***direct***-purchaser of lithium-ion batteries.

27     11.     On November 5, 2012, over a month following the filing of Hagens Berman's

28

DECL. OF STEVE W. BERMAN IN SUPPORT OF
APPL. TO APPOINT HAGENS BERMAN – No. 12-md-
2420-YGR                                                      - 3 -
010330-11  597061 V1

1    complaint in *Young*, Lieff, Cabraser, Heimann & Bernstein, LLP ("Lieff") filed a complaint on

2    behalf of its client in *Katz-Lacabe v. Hitachi, Ltd., et al.*, No. 12-CV-5681-YGR (N.D. Cal.). By

3    this time, there had already been *18* additional cases filed throughout the country alleging anti-

4    competitive practices in the lithium-ion battery industry. Following the filing of the *Katz-Lacabe*

5    complaint, dozens of additional complaints were filed throughout the country.

6            12.     On January 31, 2013, the Judicial Panel on Multidistrict Litigation (the "MDL

7    Panel") heard argument on various motions to centralize these litigations in a single judicial

8    district. On February 6, 2013, the MDL Panel issued an order transferring all related cases to this

9    Court. On February 15, 2013, nearly five months following the filing of the *Young* action, Cotchett

10   filed a complaint captioned *Yee v. LG Chem, LTD., et al.*, No. 13-CV-703 (N.D. Cal.). At the time,

11   Cotchett was still counsel for direct-purchaser plaintiff Gray in *Gray v. Samsung SDI, Co., Ltd.*,

12   No. 12-CV-5274-YGR (N.D. Cal.). On February, 22, 2013, Cotchett formally withdrew from the

13   *Gray* matter.

14                        **Discussions Regarding Class Counsel**

15           13.     Shortly following Lieff Cabraser's filing of the *Katz-Lacabe* complaint, Lieff

16   partner Eric Fastiff called Hagens Berman partner Jeff Friedman and asked whether Hagens

17   Berman would support Lieff's bid to be co-lead class counsel. Mr. Friedman explained to Mr.

18   Fastiff that Hagens Berman had invested significant resources into the development of this case,

19   had filed the first case, and was not prepared to agree to place Lieff into a leadership position over

20   counsel in the 19 other cases filed before the Lieff case. Mr. Friedman asked Mr. Fastiff to support

21   Hagens Berman given our leadership role in developing the case. Mr. Fastiff responded by saying,

22   absent our firm agreeing to Leiff being a co-lead in the case, there would be a contested leadership

23   fight.

24           14.     Following the MDL Panel's transfer of this litigation, discussions among plaintiffs'

25   counsel concerning the organization of plaintiffs' counsel ensued. At virtually every turn, the Lieff

26   and Cotchett firms engaged in organized effort to diminish Hagens Berman's efforts in this case.

27   For example, following the MDL Panel's transfer order, on March 6, 2013, Hagens Berman invited

28

DECL. OF STEVE W. BERMAN IN SUPPORT OF
APPL. TO APPOINT HAGENS BERMAN – No. 12-md-
2420-YGR                              - 4 -
010330-11  597061 V1

1   all indirect-purchaser plaintiffs' counsel (including the Lieff and Cotchett firms) to a meeting at its

2   offices in Berkeley, California to address, among other things, the organization of counsel. Two

3   days later, the Cotchett firm then sent a letter to all indirect-purchaser plaintiffs' counsel, without

4   even mentioning Hagens Berman's March 6th invitation, inviting all counsel to a meeting at Lieff's

5   San Francisco offices for the same day and same time as the meeting that Hagens Berman

6   scheduled at its offices. This created a great deal of confusion amongst indirect-purchaser

7   plaintiffs' counsel, as there had now been two meetings scheduled to occur simultaneously.

8   Ultimately, we decided to rise above such petty actions, and counsel conducted a meeting at Lieff's

9   offices on March 18 to discuss, among other things, organizational issues.

10          15.     At no time leading up to the meeting, or during the meeting, did the Lieff and

11  Cotchett firms include Hagens Berman in a leadership position. Instead, they proposed an

12  unwieldy PSC which would include essentially any firm that wished to participate. This may be a

13  way to garner votes, but it is not in the best interests of the class to have an unwieldy, inefficient

14  structure and the bloated lodestar that usually follows.

15          16.     It was not until March 20, 2013, that the Lieff and Cotchett firms offered Hagens

16  Berman a leadership role in the organizational structure. These firms proposed that there be three

17  class counsel – Cotchett, Lieff and Hagens Berman – as well as a PSC to be determined. Hagens

18  Berman did not believe that having three co-lead counsel, as well as a PSC, was in the best

19  interests of the class. Such a structure was simply too large and would lead to inefficiency,

20  duplication, and waste. In addition, we did not feel it appropriate that two late filers who were

21  following our initiative should have an equal leadership role and be elevated above firms who filed

22  before them and who were not insisting on a lead role. Hagens Berman instead proposed that there

23  be two lead counsel firms, and a PSC, with one of the lead counsel firms being Hagens Berman.

24  We never received a response to this offer, and therefore, assumed it had been rejected.

### Hagens Berman's Confidential Fee Proposal

26          17.     Pursuant to Rule 23(g)(1)(C), the Court "may order potential class counsel . . . to

27  propose terms for attorneys' fees and nontaxable costs." We propose the following percentage-

28

DECL. OF STEVE W. BERMAN IN SUPPORT OF
APPL. TO APPOINT HAGENS BERMAN – No. 12-md-
2420-YGR                                          - 5 -
010330-11 597061 V1

1    based attorneys' fees (including costs) based on recovery from each defendant at various stages of

2    the case and over various recoveries for the class.  We have filed the remainder of this paragraph

3    under seal and not served it on any other party because (i) doing so is consistent with a

4    competitive, sealed bidding process, and (ii) if made part of the public record, defendants could try

5    and use this information to gain tactical advantage in the timing or structuring of settlement offers.

6         a.

7

8

9         b.

10

11



12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27       18.       We believe that the foregoing fee structure provides for fair compensation while

28

1    minimizing the impact on the proposed class.  We also believe that the Court will find our fee

2    proposal to be very competitive, if not compelling and in the best interests of the proposed class.

3                                            **Attaching Documents**

4            19.     Attached hereto as Exhibit A is a true and correct copy of the firm resume of

5    Hagens Berman, as well as a description of each of the attorneys currently employed by the firm.

6            20.     Attached hereto as Exhibit B is a true and correct copy of a Reporter's Transcript of

7    Proceedings taken in *Nicolow, et al. v. Hewlett-Packard Co., et al.*, No. 12-CV-5980-CRB (N.D.

8    Cal. Mar. 1, 2013).

9            21.     Attached hereto as Exhibit C is a true and correct copy of the December 21, 2011

10   Case Management Order in *Electronic Books Antitrust Litig.*, No. 11-md-2293 (DLC) (S.D.N.Y.).

11           22.     Attached hereto as Exhibit D is a true and correct copy of the March 1, 2013 Order

12   Appointing Plaintiffs' Interim Lead and Liaison Counsel in *Online Travel Company (OTC) Hotel*

13   *Booking Antitrust Litig.*, No. 12-cv-03535-B (N.D. Tex.).

14           23.     Attached hereto as Exhibit E is a true and correct copy of the December 18, 2012

15   Supplemental Report And Recommendation of Special Master re Allocation of Attorneys' Fees in

16   the Indirect-Purchaser Class Action in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-

17   01827-SI (N.D. Cal.).

18

19           I declare under penalty of perjury under the laws of the United States that the foregoing is

20   true and correct.

21           Executed this 28th day of March 28, 2013 at Seattle, Washington.

22

23                                                          _____/s/ Steve W. Berman_____
                                                                    STEVE W. BERMAN
24

25

26

27

28

DECL. OF STEVE W. BERMAN IN SUPPORT OF
APPL. TO APPOINT HAGENS BERMAN – No. 12-md-
2420-YGR                                        - 7 -
010330-11  597061 V1

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on March 28, 2013, I electronically filed the foregoing with the Clerk

3    of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4    addresses registered, as denoted on the Electronic Mail Notice List generated by the CM/ECF

5    system, and I hereby certify that I have mailed the foregoing document or paper via the United

6    States Postal Service to the non-CM/ECF participants indicated on the list generated by the

7    CM/ECF system.

8

9                                                              /s/ Steve W. Berman
                                                               STEVE W. BERMAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28