Joseph R. Saveri, (130064)
JOSEPH SAVERI LAW FIRM
505 Montgomery St., Suite 625
San Francisco, CA 94111
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
jsaveri@saverilawfirm.com

Daniel R. Shulman (MN 100651)
GRAY, PLANT, MOOTY, MOOTY & BENNETT
500 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone:  (612) 632-3335
Facsimile:  (612) 632-4335
daniel.shulman@gpmlaw.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| David Gibbons and Alexander C. Eide,<br><br>Plaintiffs,<br>v.<br><br>LG Chem, Ltd.;  LG Chem America; Panasonic Corporation; Sanyo Electric Co., Ltd.; Panasonic Corporation of North America; Sanyo North America Corporation; Sony Corporation; Sony Energy Devices Corporation; Sony Electronics, Inc.; Samsung SDI Co., Ltd.; Samsung SDI America, Inc.; Hitachi Maxell, Ltd.;  Hitachi, Ltd.; and Maxell Corporation of America,<br><br>Defendants. | Case No. 13-1397-NC<br><br>MDL No. 4:13-md-02420-YGR<br><br>**APPLICATION OF DANIEL R. SHULMAN AND GRAY, PLANT, MOOTY, MOOTY & BENNETT FOR APPOINTMENT TO PLAINTIFFS' STEERING COMMITTEE**<br><br>Date:  April 4, 2013<br>Time:  2:00 p.m.<br>Courtroom:  5<br>Judge:  Yvonne Gonzalez Rogers |

# I.  **INTRODUCTION**

Pursuant to the March 4, 2013, Order Setting Initial Conference, Daniel R. Shulman, Esq., and Gray, Plant, Mooty, Mooty & Bennett, P.A. (collectively "Gray Plant") hereby apply to the Court to be appointed to the Plaintiffs' Steering Committee for direct purchaser plaintiffs in MDL 2420, as provided in ¶ 6(b) of the March 4 Order.[1]  This application is made in conjunction with and in support of the application of Joseph Saveri and the Joseph Saveri Law Firm for appointment to the Plaintiffs' Steering Committee.  Mr. Shulman and Mr. Saveri have conferred and agreed that they would like to be appointed and serve together on the Plaintiffs' Steering Committee.

Hereafter, this application will address the specific matters referred to in ¶ 6(b) of the March 4 Order.

## II.  **APPLICATION**

### (a) **Willingness and Availability to Commit to a Time-Consuming Project**

Obviously, in making this application, Gray Plant represents that it has both the willingness and availability to commit whatever time and resources are required for this project.  Perhaps the best evidence of this is the commitment Gray Plant has made in 3:07-md-01827-SI, *In Re TFT-LCD (Flat Panel) Antitrust Litigation*, before Judge Susan Illston of this Court, which is now drawing to a close for Gray Plant's clients, the indirect purchaser plaintiff class ("IPPs").[2]  Gray Plant began representing the IPPs in mid-2007 and through

---

[1] The Complaint in this case was filed on March 28, 2013.  The case was assigned to Magistrate Judge Nathanael Cousins.  The claims alleged in the Complaint are identical to the claims of the complaints in the actions consolidated in this MDL—a price-fixing conspiracy by manufacturers of Lithium Ion Batteries in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.  On April 1, 2013, plaintiffs filed a motion with this Court to relate this case to this MDL proceeding and the cases consolidated hereunder.  On March 29, 2013, prior to being able to make ECF filings, plaintiffs provided this Court with an advance copy of this Application, so that the Court would be aware of plaintiffs' intention to seek appointment to the Plaintiffs' Steering Committee. Plaintiffs also electronically provided copies of their Application to those counsel, who plaintiffs knew to be interested in the appointment of the Plaintiffs' Steering Committee, including:  Francis O. Scarpulla; Rick Saveri; Joseph J. Tabacco, Jr.; Simon, Bruce L.; Retana, Robert G.; Fastiff, Eric B; Steve Williams; Jason Zweig; Craig C. Corbitt; Christopher T. Micheletti; Judith Zahid; and Patrick Clayton.

[2] On March 29, 2013, Judge Illston entered her Order Granting Final Approval of Combined Class, Parens Patriae and Governmental Entity Settlements with AUO, LG Display, and Toshiba Defendants: Final Judgment of Dismissal with Prejudice; Award of Attorneys' Fees, Expenses, and Incentive Awards ("Flat Panel Final Judgment"), Document 7685 in MDL No. 1827.  She entered an Amended Order Granting Final Approval of Combined Class, etc. on April 1, not materially different for purposes of this Application.  Document 7688.

1     April of 2012 invested 8,447.90 billable hours resulting in a lodestar of $3,349,892.  Gray

2     Plant also advanced costs in excess of $750,000.  These costs included $500,000 in

3     assessments, all that Gray Plant was asked to pay.  Gray Plant paid each assessment at the

4     time it was requested.  In addition, Gray Plant incurred over $250,000 in other expenses, for

5     which it did not seek reimbursement from the settlements achieved in the case.  These costs

6     included expenses for 10 trips to Asia for Mr. Shulman to take depositions of key witnesses

7     and other trips in the United States for depositions and other matters.

8        Gray Plant is prepared, willing, and available to make at least a similar commitment to

9     the prosecution of this case on behalf of the direct purchaser plaintiff class ("DPPs").  Gray

10    Plant consists of approximately 165 attorneys with its main office in Minneapolis, Minnesota,

11    and other offices in St. Cloud, Minnesota, and Washington, D.C.  Attached hereto as Exhibit

12    A is descriptive material regarding Gray Plant.  Attached hereto as Exhibit B is the current

13    curriculum vitae of Mr. Shulman.

14                    **(b)  Ability to Work Cooperatively with Others**

15        Again, the best evidence of Gray Plant's ability to work cooperatively with others

16    comes from In Re TFT-LCD (Flat Panel) Antitrust Litigation, where for more than five years

17    Gray Plant in fact worked cooperatively not only with other counsel representing the IPPs, but

18    also with counsel representing the DPPs, including specifically Mr. Saveri and Bruce Simon,

19    who Gray Plant understands is also seeking appointment to the Plaintiffs' Steering Committee

20    in this case.[3]

21

22

23    _____

[3]  Gray Plant understands that Mr. Simon's firm and two other firms have urged the appointment of themselves
to a three-member Plaintiffs' Steering Committee, and represented that their application resulted from a
consensus of counsel in 23 of 25 direct purchaser cases, many of which have been brought by these same firms.
As the applications of Joseph Saveri and Gray Plant demonstrate, however, there is obviously not agreement on
who should be appointed to the Plaintiffs' Steering Committee, nor is there a justification in a case of this size
for limiting the committee to only three firms.  Certainly the scope of this litigation permits a Plaintiffs' Steering
Committee of five or more firms. Significantly, in the Flat Panel case, Judge Illston was presented with and
rejected a similar joint application for appointment of a plaintiffs' steering committee, which purported to be on
behalf of a "consensus" group of counsel in 107 of 109 filed cases.  (Documents 13-16; 92; 114;215; 221; 224 in
3:07-md-01827-SI.)  Finally, Gray Plant does not presume to tell the Court that any firm the Court deems
qualified should be excluded from the Plaintiffs' Steering Committee.

In this regard, Gray Plant respectfully directs the attention of the Court to the comments of Special Master Martin Quinn in the December 18, 2012, Supplemental Report and Recommendation of Special Master re Allocation of Attorneys' Fees in the Indirect-Purchaser Class Action ("Dec. 18 Report"), Document 7375 in 3:07-md-01827-SI, *In Re TFT-LCD (Flat Panel) Antitrust Litigation*.  A copy is attached hereto as Exhibit C.  In his report at page 7, Special Master Quinn notes "substantial cooperation between…Daniel Shulman of Gray, Plant Moody [sic]…and the Zelle firm," one of the co-lead counsel for the IPPs.  At pages 23-24, Special Master states concerning the work of Mr. Shulman and Gray Plant:

> By all accounts, Dan Shulman of this firm did a ***superb job in many important aspects of the case.***  He took the lead in many important depositions; he was intimately involved in discovery and pre-trial strategy; he personally prepared much of the input to pre-trial documents such as witness examinations, exhibit lists and the like.  ***His rates and hours were strikingly economical….I have reversed the 20% discount for his firm in view of his obvious efficiency***, and applied a multiplier of 3.73, for a revised award of $12,500,000.  This multiplier is the third highest of any firm, lower only than that for the Alioto and Zelle firms.  It is fully justified…  [*Id.*, pp. 23-24; emphasis added.][4]

The Special Master awarded Gray Plant a 3.73 multiplier of its lodestar, which fell within the highest tier of "five ranges of multipliers" established by the Special Master.  He placed firms in particular tiers based on "the recommendation of lead and liaison counsel" and "the input I received, if any, about the firm's ***efficiency, skill, contribution to the litigation fund, and accuracy of billing records.***"  *Id.*, p. 4; emphasis added.  The fifth and highest range of multipliers, 3.24 to 4.24, was reserved for "lead and liaison counsel, and ***selected***

---

[4]  As the Court will see from the Dec. 18 Report, Special Master Quinn originally allocated a fee of $14 million to Gray, Plant in a November 9, 2012, Report and Recommendation on the allocation of fees in the IPP case. Fifteen firms objected to his November 9 allocation.  Gray Plant did not.  In reviewing the 15 objections, the Special Master found merit to 11 of them and recommended that their fee allocations be increased.  Because the Special Master had allocated the entire fee award in the November 9 Report, however, he "was obliged to rob Peter to pay Paul in order to find the funds" for these successful objectors.  December 18 Report, p. 2.  Gray Plant was a Peter robbed to pay Paul, as the Special Master reduced its fee to $12.5 million.  Gray Plant subsequently objected to the reduction.  In the March 29 Flat Panel Final Judgment, Judge Illston sustained Gray Plant's objection and restored its fee to $14 million.  The Court commented, "***The Court is aware of the significant contribution Gray Plant has made to this litigation and notes that its contributions were all substantive.***"  (*Id.*, p. 21; emphasis added.)  The same language appears at page 21 of the Amended Order of April 1.

*outstanding contributors.*" *Id.*, p. 5; emphasis added.  Only one firm, Gray, Plant, fell into the category of "selected outstanding contributors."

Being a "contributor" carries with it the implication of being able to work well with others.  Being an outstanding contributor implies an outstanding ability to work well with others.  Gray Plant does not believe that any firm in the Flat Panel case would disagree with Gray Plant's cooperation and contribution in that litigation, particularly in view of the result, total settlements of approximately $1.1 billion, the largest settlement ever in an indirect purchaser antitrust class action, more than double the settlement realized by the direct purchaser class, for a geographic area roughly half the size of that in the DPP case.

### (c)  Professional Experience in this Type of Litigation

Gray Plant was founded in 1866 and is a large general practice firm.  Mr. Shulman is a senior partner with 43 years of experience in antitrust, commercial, and civil rights litigation, as his curriculum vitae sets out.  He has been lead or co-lead counsel in more than 100 trials and arbitrations, including numerous antitrust trials.  He has also been lead or co-lead counsel in several hundred antitrust cases.  His list of publications on antitrust and litigation issues is lengthy.

Here again, Gray Plant's recent experience in the Flat Panel case is particularly relevant.  Attached hereto as Exhibit D is Docket No. 6635, Exhibit 12: Declaration of Daniel R. Shulman in Support of Plaintiffs' Application for Attorneys' Fees and Incentive Awards ("Shulman Decl."), which sets forth in detail the experience of Gray Plant and Mr. Shulman in that litigation.  It shows that Mr. Shulman (1) was primarily responsible for final selection and pre-marking of exhibits used by the IPPs in discovery; (2) took the lead for the IPPs in numerous key depositions;[5] (3) obtained stipulations establishing trial admissibility for hundreds of documents; (4) worked with the IPPs' experts; (4) obtained admissions from defendants Hitachi and Sharp of the facts underlying their guilty pleas; (5) successfully argued against  the defendants' summary judgment motion premised on the Foreign Trade

---

[5]  These included depositions of 12 of the 16 defense witnesses the IPPs intended to call at trial.

APPLICATION OF DANIEL R. SHULMAN AND GRAY, PLANT, MOOTY,
MOOTY & BENNETT FOR APPOINTMENT TO PLAINTIFFS' STEERING COMMITTEE

Antitrust Improvements Act, 15 U.S.C. § 6a ("FTAIA"), the principal defense in the case; (6) took the lead in successfully opposing defense motions for summary judgment on restricting production and defendant Toshiba's participation in the conspiracy; and (7) presented the IPPs' case in two mock jury/research projects.

These activities are especially significant and pertinent to this litigation involving lithium-ion rechargeable batteries because (1) this case includes many of the same defendants, with which Gray Plant is already familiar; (2) a major defense will again be the FTAIA, where Gray Plant has demonstrated expertise and experience; (3) much of the discovery is likely to take place in Asia, where Mr. Shulman made ten trips to depose witnesses from a number of these companies in Flat Panel; (4) Gray Plant has demonstrated its ability to organize thousands of documents, many not originally in English, and prepare for and take depositions in a complex, multinational antitrust conspiracy case; and (5) Gray Plant has proven its ability to prepare and organize such a case for trial, and to present it cogently to a lay jury.

As Special Master Quinn found, Mr. Shulman of Gray Plant "did a superb job in many important aspects of the case. He took the lead in many important depositions; he was intimately involved in discovery and pre-trial strategy; he personally prepared much of the input to pre-trial documents such as witness examinations, exhibit lists and the like." Dec. 18 Report, p. 23. Moreover, this work was done at "rates and hours [that] were strikingly economical," and demonstrated "obvious efficiency." *Id*.

### III. CONCLUSION

Gray Plant respectfully submits that "strikingly economical" rates and hours, "obvious efficiency," and extensive prior experience with the legal and factual issues, parties, and counsel involved in the present litigation are highly desirable qualities and qualifications for the Plaintiffs' Steering Committee in this case. Accordingly, Gray Plant respectfully requests that Mr. Shulman and Gray Plant be appointed with Mr. Saveri to the Plaintiffs' Steering Committee.

Respectfully submitted,

Dated: April 1, 2013.

GRAY, PLANT, MOOTY, MOOTY & BENNETT

By: _s/Daniel R. Shulman_____
Daniel R. Shulman (MN 100651)
GRAY, PLANT, MOOTY, MOOTY & BENNETT
500 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone:  (612) 632-3335
Facsimile:  (612) 632-4335
daniel.shulman@gpmlaw.com

JOSEPH SAVERI LAW FIRM
  Joseph R. Saveri, (130064)
505 Montgomery St., Suite 625
San Francisco, CA 94111
Telephone:  (415) 500-6800
Facsimile:  (415) 395-9940
jsaveri@saverilawfirm.com

*Attorneys for Plaintiffs*

GP:3385835 v1

APPLICATION OF DANIEL R. SHULMAN AND GRAY, PLANT, MOOTY,
MOOTY & BENNETT FOR APPOINTMENT TO PLAINTIFFS' STEERING COMMITTEE