UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA          *ORIGINAL*

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

IN RE: LITHIUM ION BATTERIES)          NO. C 13-MD-2420 YGR
ANTITRUST LITIGATION        )
                            )          MDL NO. 2420
_____)          PAGES 1 - 115

                                       OAKLAND, CALIFORNIA
                                       WEDNESDAY, APRIL 3, 2013

**TRANSCRIPT OF PROCEEDINGS**

APPEARANCES:

FOR DIRECT PURCHASER      BERMAN DEVALERIO
PLAINTIFFS:               ONE CALIFORNIA STREET, SUITE 900
                          SAN FRANCISCO, CALIFORNIA  94111
                    BY:   JOSEPH J. TABACCO, JR.,
                          TODD A SEAVER, ATTORNEYS AT LAW

                          GRAY PLANT MOOTY MOOTY & BENNETT, PA
                          500 IDS CENTER
                          80 SOUTH EIGHTH STREET
                          MINNEAPOLIS, MINNESOTA  55402
                    BY:   DANIEL R. SHULMAN, ATTORNEY AT LAW

                          JOSEPH SAVERI LAW FIRM
                          505 MONTGOMERY STREET, SUITE 625
                          SAN FRANCISCO, CALIFORNIA  94111
                    BY:   JOSEPH R. SAVERI, ATTORNEY AT LAW

                          PEARSON SIMON WARSHAW & PENNY LLP
                          44 MONTGOMERY STREET, SUITE 2450
                          SAN FRANCISCO, CALIFORNIA  94104
                    BY:   ROBERT G. RETANA,
                          BRUCE L. SIMON, ATTORNEY AT LAW

                    (APPEARANCES CONTINUED NEXT PAGE)


REPORTED BY:              RAYNEE H. MERCADO, CSR NO. 8258

     PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

```
 1                 A P P E A R A N C E S  (CONT'D.)

 2

 3   FOR DIRECT PURCHASER      SAVERI & SAVERI, INC
     PLAINTIFFS:               706 SANSOME STREET
 4                             SAN FRANCISCO, CALIFORNIA  94111
                         BY:  CARL HAMMARSKJOLD,
 5                             GUIDO SAVERI,
                               R. ALEXANDER SAVERI, ATTORNEYS AT LAW
 6
                               STEYER LOWENTHAL BOODROOKAS ALVAREZ &
 7                                 SMITH LLP
                               ONE CALIFORNIA STREET, THIRD FLOOR
 8                             SAN FRANCISCO, CALIFORNIA  94111
                         BY:  ALLAN STEYER, ATTORNEY AT LAW
 9
                               WEINSTEIN KITCHENOFF & ASHER LLC
10                             1845 WALNUT STREET, SUITE 1100
                               PHILADELPHIA, PENNSYLVANIA
11                       BY:  STEVEN A. ASHER, ATTORNEY AT LAW

12                             ZELLE HOFFMAN
                               44 MONTGOMERY STREET, SUITE 3400
13                             SAN FRANCISCO, CALIFORNIA  94104
                         BY:  FRANCIS O. SCARPULLA,
14                             JUDITH A. ZAHID, ATTORNEYS AT LAW

15                             BONSIGNORE & BREWER
                               193 PLUMMER HILL ROAD
16                             BELMONT, NEW HAMPSHIRE 03220
                         BY:  ROBERT J. BONSIGNORE, ATTORNEY AT LAW
17
                               GLANCY BINKOW & GOLDBERG LLP
18                             ONE EMBARCADERO CENTER, SUITE 760
                               SAN FRANCISCO, CALIFORNIA  94111
19                       BY:  SUSAN G. KUPFER, ATTORNEY AT LAW

20                             GROSS BELSKY ALONSO LLP
                               ONE SANSOME STREET, SUITE 3670
21                             SAN FRANCISCO, CALIFORNIA  94104
                         BY:  TERRY GROSS, ATTORNEY AT LAW
22

23

24

25
```

```
 1                    A P P E A R A N C E S (CONT'D.)

 2


 3    FOR DIRECT PURCHASER      PRITZKER LAW
      PLAINTIFFS                633 BATTERY STREET, SUITE 110
 4                              SAN FRANCISCO, CALIFORNIA  94111
                           BY: ELIZABETH C. PRITZKER, ATTORNEY AT LAW
 5
                                STUEVE SIEGEL HANSON LLP
 6                              550 WEST C STREET, SUITE 1750
                                SAN DIEGO, CALIFORNIA  92101
 7                         BY:  JASON S. HARTLEY, ATTORNEY AT LAW

 8    FOR INDIRECT PURCHASER    ALTSHULER, BERZON LLP
      PLAINTIFFS                177 POST STREET – SUITE 300
 9                              SAN FRANCISCO, CALIFORNIA  94108
                           BY:  DANIELLE E. LEONARD, ATTORNEY AT LAW
10

11                              ANDRUS ANDERSON LLP
                                155 MONTGOMERY STREET, SUITE 900
12                              SAN FRANCISCO, CALIFORNIA  94104
                           BY:  JENNIE LEE ANDERSON, ATTORNEY AT LAW
13
                                BECNEL LAW FIRM LLC
14                              106 WEST SEVENTH STREET
                                PO DRAWER H
15                              RESERVE, LOUISIANA  70084-2095
                           BY:  DANIEL E. BECNEL, JR., ATTORNEY AT LAW
16
                                BRAMSON PLUTZIK MAHLER & BIRKHAEUSER
17                              2125 OAK GROVE ROAD, SUITE 120
                                WALNUT CREEK, CALIFORNIA  94596
18                         BY:  DANIEL E. BIRKHAEUSER, ATTORNEY AT LAW

19                              BRANSTETTER STRANCH & JENNINGS PLLC
                                227 SECOND AVENUE NORTH, FOURTH FLOOR
20                              NASHVILLE, TENNESSEE  37201-1631
                           BY:  J. GERARD STRANCH, ATTORNEY AT LAW
21
                                BREALL & BREALL LLP
22                              1550 BRYANT STREET, SUITE 575
                                SAN FRANCISCO, CALIFORNIA  94103
23                         BY:  JOSEPH M. BREALL,
                                JILL L. DIAMOND, ATTORNEYS AT LAW
24

25
```

## A P P E A R A N C E S (CONT'D.)

```
1

2

3    FOR INDIRECT PURCHASER  LAW OFFICE OF THOMAS H. BRILL
     PLAINTIFFS             8012 STATE LINE ROAD SUITE 102
4                           LEAWOOD, KANSAS  66201
                       BY:  THOMAS J. H. BRILL, ATTORNEY AT LAW
5

6                           CAFFERTY CLOBES MERIWETHER & SPRENGEL
                            1101 MARKET STREET, SUITE 2650
7                           PHILADELPHIA, PENNSYLVANIA  19107
                       BY:  BRYAN L. CLOBES, ATTORNEY AT LAW
8

9                           COHEN MILSTEIN SELLERS & TOLL, PLLC
                            1100 NEW YORK AVENUE NW
                            SUITE 500 WEST TOWER
10                          WASHINGTON, D.C.  20005
                       BY:  KIT A. PIERSON, ATTORNEY AT LAW
11

12                          COTCHETT, PITRE & MCCARTHY
                            SAN FRANCISCO AIRPORT OFFICE CENTER
                            840 MALCOLM ROAD, STE. 200
13                          BURLINGAME, CALIFORNIA  94010
                       BY:  JOSEPH W. COTCHETT,
14                          JOANA LICALSI,
                            STEVEN N. WILLIAMS, ATTORNEYS AT LAW
15

16                          CUNEO GILBERT & LADUCA LLP
                            330 S. BURLINGAME AVENUE #109
17                          LOS ANGELES, CALIFORNIA  90049
                       BY:  SANDRA CUNEO, ATTORNEY AT LAW
18

19                          GOLDMAN SCARLATO & KARON PC
                            700 W ST. CLAIR AVENUE, SUITE 204
20                          CLEVELAND, OHIO  44113
                       BY:  DANIEL R. KARON, ATTORNEY AT LAW
21

22                          GREEN & NOBLIN PC
                            700 LARKSPUR LANDING CIRCLE, SUITE 275
23                          LARKSPUR, CALIFORNIA  94939
                       BY:  ROBERT S. GREEN,
24                          LESLEY E. WEAVER, ATTORNEY AT LAW

25
```

```
1              A P P E A R A N C E S  (CONT'D.)

2


3    FOR INDIRECT PURCHASER   HAGENS BERMAN SOBOL SHAPIRO LLP
     PLAINTIFFS               715 HEARST AVENUE, SUITE 202
4                             BERKELEY, CALIFORNIA  94710
                         BY:  STEVE W. BERMAN,
5                             JEFF D. FRIEDMAN,
                              SHANA E. SCARLETT, ATTORNEYS AT LAW
6
                              KELLER GROVER LLP
7                             1965 MARKET STREET
                              SAN FRANCISCO, CALIFORNIA  94103
8                        BY:  JEFFREY F. KELLER, ATTORNEY AT LAW

9                             KRAUSE KALFAYAN BENINK & SLAVENS LLP
                              550 W. C STREET, SUITE 530
10                            SAN DIEGO, CALIFORNIA  92101
                         BY:  RALPH B. KALFAYAN, ATTORNEY AT LAW
11

12                            LEXINGTON LAW GROUP
                              503 DIVISADERO STREET
13                            SAN FRANCISCO, CALIFORNIA  94117-2212
                         BY:  ERIC S. SOMERS, ATTORNEY AT LAW
14
                              LAW OFFICE OF MICHAEL D. LIBERTY
15                            1290 HOWARD AVENUE, SUITE 303
                              BURLINGAME, CALIFORNIA  94010
16                       BY:  MICHAEL D. LIBERTY, ATTORNEY AT LAW

17                            LIEFF, CABRASER, HEIMANN &
                              BERNSTEIN
18                            275 BATTERY STREET, 30TH FL.
                              SAN FRANCISCO, CALIFORNIA  94111
19                       BY:  ELIZABETH J. CABRASER,
                              RICHARD HEIMANN,
20                            ERIC B. FASTIFF,
                              JOY A. KRUSE, ATTORNEYS AT LAW
21
                              MILBERG, LLP
22                            ONE PENNINSULA PLAZA
                              NEW YORK, NY  10119
23                       BY:  PAUL F. NOVAK, ATTORNEY AT LAW

24

25
```

1          **A P P E A R A N C E S (CONT'D.)**

2

3   FOR INDIRECT PURCHASER     RENNE SLOAN HOLTZMAN SAKAI
    PLAINTIFFS                350 SANSOME STREET, SUITE 300
4                             SAN FRANCISCO, CALIFORNIA  94104
                        BY:  LOUISE H. RENNE,
5                             STEVE CIKES, ATTORNEYS AT LAW

6                             ROBBINS GELLER RUDMAN & DOWD LLP
                              655 WEST BROADWAY, SUITE 1900
7                             SAN DIEGO, CALIFORNIA  92101-3301
                        BY:  BONNY E. SWEENEY, ATTORNEY AT LAW
8
                              SCHNEIDER WALLACE COTTRELL KONECKY LLP
9                             180 MONTGOMERY STREET, SUITE 2000
                              SAN FRANCISO, CALIFORNIA  94104
10                       BY:  TODD M. SCHNEIDER, ATTORNEY AT LAW

11                            SCOTT + SCOTT LLP
                              707 BROADWAY, SUITE 1000
12                            SAN DIEGO, CALIFORNIA  92101
                        BY:  CHRISTOPHER M. BURKE,
13                            WALTER N. NOSS, ATTORNEYS AT LAW

14                            SHAFFER LOMBARDO SHURIN
                              911 MAIN STREET, SUITE 2000
15                            KANSAS CITY, MISSOURI 64105
                        BY:  GREGORY P. FORNEY, ATTORNEY AT LAW
16
                              STRAUS & BOIES LLP
17                            4041 UNIVERSITY DRIVE, FIFTH FLOOR
                              FAIRFAX, VIRGINIA  22030
18                       BY:  TIMOTHY BATTIN, ATTORNEY AT LAW

19                            SUSMAN GODFREY LLP
                              1901 AVENUE OF THE STARS, SUITE 950
20                            LOS ANGELES, CALIFORNIA  90067
                        BY:  STEVEN G. SKLAVER, ATTORNEY AT LAW
21

22                            TRUMP ALIOTO TRUMP & PRESCOTT
                              2280 UNION STREET
23                            SAN FRANCISCO, CALIFORNIA  94123
                        BY:  MARIO N. ALIOTO, ATTORNEY AT LAW
24

25

```
 1                  A P P E A R A N C E S  (CONT'D.)

 2


 3   FOR HITACHI/MAXELL       VINSON & ELKINS LLP
     DEFENDANTS:              525 MARKET STREET, SUITE 2750
 4                            SAN FRANCISCO, CALIFORNIA  94105-2763
                         BY:  MATTHEW J. JACOBS,
 5                            ELLIOTT J. JOH, ATTORNEYS AT LAW

 6   FOR SAMSUNG DEFENDANTS:  SHEPPARD, MULLIN, RICHTER & HAMPTON
                              FOUR EMBARCADERO CENTER, 17TH FLOOR
 7                            SAN FRANCISCO, CALIFORNIA  94111
                         BY:  JAMES L. MCGINNIS, ATTORNEY AT LAW
 8
     FOR PANASONIC            WINSTON & STRAWN LLP
 9   DEFENDANTS:              200 PARK AVENUE
                              NEW YORK, NEW YORK
10                       BY:  JEFFREY J. AMATO,
                              JEFFREY L. KESSLER, ATTORNEY AT LAW
11
                              WINSTON & STRAWN
12                            101 CALIFORNIA STREET
                              SAN FRANCISCO, CALIFORNIA  94111
13                       BY:  IAN L. PANPENDICK, ATTORNEY AT LAW

14                            MORRISON & FOERSTER
                              2000 PENNSYLVANIA AVENUE, NW, STE 6000
15                            WASHINGTON, DC  2006-1888
                         BY:  ROXANN E. HENRY, ATTORNEY AT LAW
16
     FOR SONY DEFENDANTS:     COOLEY GODWARD KRONISH, LLP
17                            3175 HANOVER STREET
                              PALO ALTO CALIFORNIA 94304-1130
18                       BY:  JOHN C. DWYER, ATTORNEY AT LAW

19   FOR LG CHEM DEFENDANTS:  STEPTOE & JOHNSON LLP
                              1330 CONNECTICUT AVENUE NW
20                            WASHINGTON, DC  20036-1795
                         BY:  KENNETH P. EWING,
21                            ANDREW J. SLONIEWSKY, ATTORNEYS AT LAW

22
     FOR SAMSUNG DEFENDANTS:  O'MELVENY & MYERS
23                            1999 AVENUE OF THE STARS, 7TH FLOOR
                              LOS ANGELES, CALIFORNIA  90067
24                            275 BATTERY STREET
                              SAN FRANCISCO, CALIFORNIA  94111
25                       BY:  JAMES M. PEARL, ATTORNEY WAITING
```

```
 1   WEDNESDAY, APRIL 3, 2013                              2:01 P.M.

 2                     P R O C E E D I N G S

 3          THE CLERK:  CALLING ACTION IN RE: LITHIUM ION

 4   BATTERIES ANTITRUST LITIGATION, MDL2420.

 5          THE COURT:  WELL, AS MANY OF YOU KNOW, THIS IS MY

 6   FIRST MDL.  I UNDERSTAND IT WAS THE SUBJECT OF MUCH DEBATE AT

 7   THE MDL CONFERENCE.  AS A CONSEQUENCE, I HAVE A NUMBER OF

 8   QUESTIONS.  I HAVE SEATED YOU IN A PARTICULAR WAY SO THAT I

 9   WOULD GENERALLY KNOW WHO WAS AFFILIATED WITH WHICH GROUPS.

10       THIS IS WHAT WE'RE GOING TO DO.  IN GENERAL, I'M GOING TO

11   ADDRESS THE FOLLOWING ISSUES TODAY:  ONE, THE APPOINTMENT OF

12   INTERIM COUNSEL, BOTH THE DIRECT PURCHASER PLAINTIFFS AND THE

13   INDIRECT PURCHASER PLAINTIFFS.  THAT WILL TAKE, I THINK,

14   PROBABLY THE LION'S SHARE OF THE PROCEEDINGS.

15       THEN I'LL HAVE SOME DISCUSSION ABOUT SOME BASIC CASE

16   MANAGEMENT ISSUES, THE DISCOVERY ISSUES THAT WERE RAISED, AND

17   STANDARDS OF CONDUCT AND PROFESSIONALISM BEFORE ME.

18       EVERYONE, I BELIEVE, SHOULD HAVE SIGNED UP ALREADY

19   OUTSIDE.  WE WILL HAVE APPEARANCES TAKEN BUT NOT AT THE

20   OUTSET.  I'M GOING TO DO IT IN AN INTEGRATED FORMAT BECAUSE I

21   WANT TO HEAR FROM PEOPLE.  IF I PROBABLY TABLED UP -- TABLED

22   UP THE ATTORNEYS' FEES IN THIS LAW FIRM -- OR IN THIS

23   COURTROOM, RIGHT, PROBABLY, WHAT, 60-, 70,000?  AFTER 3 HOURS,

24   WE HAVE MY ENTIRE ANNUAL SALARY.  BUT IF YOU'RE HERE, I'M

25   GOING TO WANT TO HEAR FROM YOU, ONE PER SIDE BRIEFLY, AND I'LL
```

1    TELL YOU WHAT I WANT TO HEAR ABOUT.

2        IT AFFORDS ME THE OPPORTUNITY TO PLACE SOME FACES WITH

3    NAMES.  I'M GOING TO BE HERE FOR A LONG TIME, SO I MIGHT AS

4    WELL KNOW WHO YOU ARE.  MANY OF YOU I DO ALREADY, AND IT'S

5    GREAT TO SEE YOU AGAIN.

6        LET'S START WITH THE INTERIM COUNSEL FOR THE DIRECT

7    PURCHASER PLAINTIFFS.  SEEMS TO BE LESS CONTROVERSIAL BECAUSE

8    THERE IS A REQUEST.  YOU CAN STAY THERE.  WE'VE GOT A MIC.

9    THERE IS A -- MS. CABRASER, YEP, THAT'S FINE.  IF YOU CAN HAND

10   HIM THE MIC.

11       HERE'S MY QUESTION.  MY UNDERSTANDING OF THE PROPOSAL IS

12   THAT YOU WOULD LIKE TO HAVE A TEAM OF THREE BE THE INTERIM

13   LEAD COUNSEL BRUCE SIMON OF PEARSON, SIMON & WARSHAW;

14   ALEXANDER --

15       AND WHO'S THAT?

16           **MR. SIMON:**  I'M RIGHT HERE, YOUR HONOR.

17           **THE COURT:**  JUST SIT DOWN.  SIT DOWN.  NOT READY FOR

18   YOU.

19       ALEXANDER SAVERI OF SAVERI & SAVERI.  JUST RAISE YOUR

20   HAND.

21       WHO'S BRUCE SIMON?

22           **MR. SIMON:**  I'M BRUCE SIMON.

23           **THE COURT:**  OKAY.

24       AND THEN JOE TABACCO.

25       ALL RIGHT.  JUDITH ZAHID.  THANK YOU VERY MUCH FOR GETTING

```
 1    THE LIST OF ATTORNEYS TO ME.

 2            MS. ZAHID:  YOU'RE WELCOME, YOUR HONOR.

 3            THE COURT:  HERE'S THE ISSUE, GENTLEMEN:  AS YOU

 4    KNOW, THIS IS MY FIRST.  MY PRIMARY AND LEGAL RESPONSIBILITY

 5    IS TO THE CLASS.  THERE ARE TWO WAYS OF MAKING DECISIONS, ONE

 6    BY COMMITTEE AND ONE BY A SINGLE INDIVIDUAL.

 7        IN THE DISTRICT COURT, WE ALL LIKE THE SINGLE INDIVIDUAL

 8    APPROACH.  THAT'S WHY WE'RE IN THE DISTRICT COURT.  IF WE

 9    WANTED THE COMMITTEE APPROACH, WE'D BE ON THE COURT OF APPEAL.

10    BUT MANY OF US DON'T PARTICULARLY CARE FOR THAT APPROACH.

11    WE'D RATHER JUST DECIDE.

12        HOW DOES IT HELP THE CLASS TO HAVE SO MANY OF YOU MAKING

13    DECISIONS AND THEN RECOMMENDING TO ME TO HAVE YET ANOTHER

14    COMMITTEE UNDERNEATH YOU TO MAKE DECISIONS.  IT HAS BEEN

15    SUGGESTED BY SOME IN THE TABLE HERE WITH RESPECT TO THE

16    INDIRECT PURCHASER PLAINTIFFS THAT A COMMITTEE OF THREE IS NOT

17    VERY EFFICIENT, THAT I SHOULD JUST BE APPOINTING ONE PERSON,

18    ONE LEAD COUNSEL.

19        AS I UNDERSTAND IT, I HAVE THE LEADING LAWYERS IN THE

20    COUNTRY IN THIS COURTROOM.  SO WHY ISN'T ONE LEADING LAWYER

21    SUFFICIENT AT THE VERY TOP?  HOW DOES IT HELP THE CLASS?  WHAT

22    IS THE PLAN FOR EFFICIENCY?  WHAT IS THE PLAN FOR DIVISION OF

23    RESPONSIBILITY?  WHY DO YOU NEED THAT STRUCTURE IN THIS

24    PARTICULAR CASE?

25        THOSE ARE THE QUESTIONS I HAVE AND WOULD LIKE TO YOU
```

1    ADDRESS.

2         SO WE'LL START, THEN, WITH YOU, MR. SIMON.

3         **MR. SIMON:**   THANK YOU, YOUR HONOR.

4    AND WE COMPLETELY APPRECIATE THE NEED TO BE EFFICIENT AND

5    COST-EFFECTIVE IN THIS CASE.  I JUST LIVED A CASE FOR FIVE

6    YEARS WHERE THIS ALL PLAYED OUT, THE LCD CASE IN FRONT OF

7    JUDGE ILLSTON, SO I THINK I TALK TO YOU FROM EXPERIENCE,

8    RECENT EXPERIENCE, ABOUT HOW A CASE OF THIS MAGNITUDE DOES

9    PLAY OUT AND HOW YOU ACCOMPLISH THOSE EFFICIENCIES.

10        I WOULD START BY SAYING, IS THAT WE HAVE A PRETTY

11   EXTRAORDINARY SITUATION ON THE DIRECT PURCHASER SIDE WHERE

12   WE'VE GOT 23 OUT OF THE 26 CASES WHO HAVE AGREED TO THIS

13   STRUCTURE.  YOU'RE THE FINAL DECISION-MAKER, OBVIOUSLY, AND

14   YOUR QUESTIONS ARE OBVIOUSLY IMPORTANT AND WILL BE ANSWERED.

15        I KNOW THAT YOU WANT US TO BE EFFICIENT AND YOU WANT TO

16   TALK TO ONE PERSON.  ALMOST IN EVERY COURT SITUATION THAT WE

17   HAD IN THE LCD MATTER FOR AS AN EXAMPLE, THAT WAS THE CASE.

18   BUT YOU CAN'T DO EVERYTHING, JUST ONE FIRM OR ONE PERSON.

19        ALMOST EVERY ANTITRUST CASE I BEEN IN, AND DOING THIS FOR

20   33 YEARS, HAS REQUIRED MORE THAN ONE FIRM.  CERTAIN CASES, ONE

21   FIRM CAN DO IT.  BUT EVEN WITH SOME OF THE BIG FIRMS, THERE

22   ARE CASES OF SUCH A MAGNITUDE, LIKE AN LCD WITH 40 MILLION

23   DOCUMENTS AND SUCH, MOST OF THEM IN FOREIGN LANGUAGES, THAT

24   YOU CAN'T POSSIBLY DO IT ON YOUR OWN, AND YOU NEED TO LOOK TO

25   OUR COLLEAGUES OF THE ANTITRUST BAR, THE EXPERIENCED

1    ATTORNEYS, TO PUT YOUR HEADS TOGETHER TO DO IT RIGHT.

2         ONE THING YOU WILL GET FROM A COLLABORATION AS OPPOSED TO

3    JUST ONE PERSON IS YOU'LL GET THE DIFFERENT EXPERIENCES OF

4    VARIOUS FIRMS THAT HAVE DIFFERENT IDEAS, AND SOMETIMES TWO

5    HEADS OR THREE HEADS ARE BETTER THAN ONE.  AND PEOPLE WHO HAVE

6    IDEAS ABOUT HOW THEY'LL DO SOMETHING, IF THEY'RE THE SOLE

7    LEAD, COULD BE CONVINCED BY OTHERS THAT MAYBE THERE'S A MORE

8    EFFICIENT OR COST-EFFECTIVE WAY TO DO IT.

9         I FOUND THAT TO BE THE CASE IN THE LCD CASE --

10            **THE COURT:**  DID THE LCD CASE HAVE A COMMITTEE?

11         **MR. SIMON:**  WE HAD AN INFORMAL COMMITTEE OF EIGHT

12    UNDER THE TWO CO-LEADS WHO OPERATED ON A SUBSTANTIVE BASIS,

13    AND THAT'S HOW WE TYPICALLY DO THINGS AND HOW WE WOULD

14    RECOMMEND TO YOUR HONOR, IS RATHER THAN DO A STEERING

15    COMMITTEE THAT JUST DOES EVERYTHING, WHERE YOU DO GET INTO

16    THAT HOW DO WE DECIDE BY COMMITTEE APPROACH, YOU HAVE CO-LEADS

17    WHO THEN HAVE SUBSTANTIVE COMMITTEES THAT WORK ON BRIEFING OR

18    CLASS CERTIFICATION OR EXPERTS AND THINGS LIKE THAT THAT GIVE

19    YOU MORE CONTROL OVER HOW TO MANAGE THE CASE.

20         I WILL SAY AT THE FRONT END -- AND WE PROPOSED THIS TO

21    YOU, AND WE GAVE YOU AN EXAMPLE -- AN ORDER THAT JUST -- JUDGE

22    CHEN JUST ENTERED IN THE CARRIER IQ CASE THAT WE'RE CO-LEAD IN

23    WITH HAGENS BERMAN A GUIDELINES (SIC) YOU CAN PUT IN ON TIME

24    AND REPORTING AND SUCH SO THAT YOU CAN KEEP AN EYE ON AND WE

25    CERTAINLY AS CO-LEADS CAN KEEP AN EYE ON THE TIME THAT GOES

1    INTO THE CASE.  AND WE WOULD EXAMINE AS WE DID IN, YOU KNOW,

2    THE LCD CASE, THE TIME AS IT COMES IN, TRY TO KEEP CONTROL OF

3    IT, AND THAT'S A REAL BACKSTOP FOR NOT HAVING INEFFICIENCIES.

4         THE BOTTOM LINE IS, IS THAT YOU HAVE EXPERIENCED PEOPLE

5    KNOWING, YOU KNOW, WHAT HILLS TO RUN UP AND WHAT HILLS NOT TO

6    RUN UP.

7         I WOULD BE COMMITTED TO THE CASE, AT CERTAIN TIMES,

8    FULL-TIME ALL THE TIME, TRYING TO BRING MY EXPERIENCE TO IT,

9    AS WELL AS OUR OTHER PROPOSED CO-LEADS AND LIAISON COUNSEL, TO

10   MAKE SURE THAT THIS CASE IS AS EASY FOR THE COURT AS POSSIBLE

11   AND THAT THE CLASS IS PROTECTED AND SO THAT THEY DO NOT

12   UNNECESSARILY HAVE TO SPEND ANY -- ANY TIME OR FEES OR

13   RESOURCES THAT YOU -- SHOULDN'T BE SPENT.

14            **THE COURT:**  ARE YOU CURRENTLY --

15            **MR. SIMON:**  -- COMES BACK TO YOU AT THE END OF THE

16   CASE FOR DECISION IN ANY CASE.

17            **THE COURT:**  ARE YOU CURRENTLY LEADING ANOTHER MDL?

18            **MR. SIMON:**  I'M LEADING THE CARRIER IQ CASE, WHICH

19   WAS AN MDL THAT'S IN FRONT OF JUDGE CHEN.

20            **THE COURT:**  HOW CAN YOU DO BOTH?

21            **MR. SIMON:**  WELL, I -- I DO BOTH MY ENTIRE CAREER.  I

22   CAN DO BOTH.  I -- YOU KNOW, THERE ARE TIMES IN THE LCD CASE

23   WHERE I -- FULL-TIME OCCUPIED, AND THAT'S WHERE I RELY ON

24   PEOPLE FROM MY OFFICE LIKE ROBERT RETANA, WHO WOULD BE WORKING

25   WITH ME CLOSELY AND WOULD KNOW EVERYTHING ABOUT THE CASE.  BUT

```
1    I THINK EVERY ATTORNEY IN THE ROOM HERE IS A LEAD IN ONE OR

2    MORE CASES --

3          THE COURT:  SHOULD I LIMIT IT TO ONE?

4       HOW ABOUT -- HOW ABOUT YOU, MR. SAVERI?  ARE YOU CURRENTLY

5    A CO-LEAD IN ANOTHER CASE?

6          MR. R. SAVERI:  MY -- YOUR HONOR, MAY I PLEASE THE

7    COURT, RICK SAVERI FROM SAVERI & SAVERI.  MY OFFICE IS -- WE

8    ARE LEAD IN THE CRT MDL.  WE ARE ALSO CHAIRMAN OF THE

9    EXECUTIVE COMMITTEE IN THE OPTICAL DISK DRIVE CASE BEFORE

10   JUDGE SEEBORG.  SO YES, BUT -- ALSO IN THE INTEL MDL

11   LITIGATION IN DELAWARE.

12         THE COURT:  SO THREE.  WHY SHOULD I PUT YOU ON A

13   FOURTH?  WHY SHOULDN'T --

14               (SIMULTANEOUS COLLOQUY.)

15         MR. SIMON:  I'M SORRY.  GO AHEAD.

16         THE COURT:  WHY SHOULDN'T I LEAVE IT TO SIMON AND

17   TABACCO?  I HAVEN'T GOTTEN TO TABACCO YET.  I DON'T KNOW HOW

18   MANY HE'S LEADING.

19         MR. R. SAVERI:  WELL, ONE, YOUR HONOR, THE CRT

20   LITIGATION IS WRAPPING UP.  THAT SHOULD BE OVER VERY QUICKLY.

21   THE OPTICAL DISK DRIVE LITIGATION IS BEING HANDLED BY

22   MR. GUIDO SAVERI AND MR. CADIO ZIRPOLI OF MY OFFICE.  AND THE

23   INTEL LITIGATION, THE CLASS WAS DENIED, SO THAT CASE IS

24   BASICALLY -- JUST GOT TO BE AN APPEAL.  WE'RE APPEALING IT.

25   SO MY TIME ACTUALLY IS FREED UP.  SO I AM --
```

```
1            THE COURT:  OKAY.

2            MR. R. SAVERI:  -- AVAILABLE.

3       I WOULD LIKE TO JUST MAKE ONE OTHER COMMENT ABOUT THE

4   THREE AND WHY THE THREE WE FEEL IS APPROPRIATE AND WHY ALSO

5   JUDGES IN THIS DISTRICT HAVE FELT IT TO BE APPROPRIATE,

6   PARTICULARLY --

7            THE COURT:  WELL, THAT'S -- THAT'S INTERESTING

8   BECAUSE I'VE (SIC) TALKING TO THE JUDGES IN THIS DISTRICT, AND

9   EVERYBODY IS SUGGESTING TO ME THAT PERHAPS THIS ISN'T THE BEST

10  APPROACH.

11           MR. R. SAVERI:  WELL, LET ME GIVE YOU A COUPLE OF

12  EXAMPLES.  MAYBE THAT WOULD HELP YOU OUT, YOUR HONOR.

13           THE COURT:  OKAY.

14           MR. R. SAVERI:  ONE OF THEM WAS JUDGE SMITH IN THE

15  CITRIC ACID LITIGATION.  IN THAT LITIGATION WHICH WAS AN MDL

16  AND AN ANTITRUST CASE, SHE APPOINTED A THREE CO-LEAD COUNSEL.

17  OUR OFFICE, THE COTCHETT OFFICE, AND -- WHERE'S STEVE?

18  RIGHT -- MR. ASHER BACK FROM PHILADELPHIA, AND THAT GROUP RAN

19  IT AND RAN IT VERY EFFICIENTLY.

20      AND WHAT'S GOOD ABOUT THAT, THAT THERE WAS A -- A GROUP OF

21  LAWYERS WHO COULD HANDLE AS THE SITUATIONS COME UP AND ALSO

22  OVER A LONG PERIOD OF TIME.  I MEAN, THIS IS A CASE THAT'S NOT

23  GOING TO BE A COUPLE YEARS, YOUR HONOR.  UNFORTUNATELY, I WISH

24  IT WAS, BUT I THINK THE DEFENDANTS MIGHT HAVE OTHER IDEAS

25  HERE.
```

1    SO USUALLY, THESE CASES GO A LONG PERIOD OF TIME SO IT'S

2    VERY GOOD TO HAVE A GROUP OF LAWYERS AT THE TOP.  ONE OTHER

3    POINT, TOO, YOUR HONOR, IS AT THE END OF THE CASE, OBVIOUSLY

4    WE WOULD BE APPLYING TO YOUR HONOR FOR FEES, AND SO YOU WOULD

5    SEE WHETHER THERE WAS EFFICIENCY OR NOT EFFICIENCY.  BUT THE

6    THREE IS -- WAS -- JUDGE SMITH DID HANDLE THAT, AND THAT WAS

7    THE BEST WAY TO GO.

8    ANOTHER LITIGATION, YOUR HONOR, WAS THE METHIONINE

9    LITIGATION.  THERE AGAIN JUDGE BREYER APPOINTED THREE CO-LEAD

10   COUNSEL.  THAT WAS AN MDL.  THAT WAS AN ANTITRUST CASE.  THAT

11   WAS ALSO -- OUR OFFICE WAS CO-LEAD COUNSEL WITH THE COTCHETT

12   OFFICE ON THE DIRECT SIDE, YOUR HONOR.  I JUST WANT TO

13   MAKE SURE -- THIS WAS ALL ON THE DIRECT PURCHASER SIDE.  ALONG

14   WITH GOLD BENNETT, SO THERE WERE THREE CO-LEAD COUNSEL, AND

15   THAT WAS EFFICIENTLY RUN, YOUR HONOR, OVER A PERIOD OF TIME.

16   SO THERE ARE TWO MDL'S, ANTITRUST CASES, DIRECT PURCHASER

17   IN THE NORTHERN DISTRICT THAT WERE THREE CO-LEAD.

18   OKAY.  OH, EXCUSE ME.  MR. SAVERI REMINDED ME THAT IN THE

19   DRAM LITIGATION BEFORE JUDGE HAMILTON, THERE WAS A THREE

20   CO-LEAD LEAD COUNSEL FOR THE DIRECT PURCHASER AGAIN.  OUR

21   OFFICE, THE HAGENS BERMAN OFFICE, AND MR. ASQUITH FROM WOLF

22   HALDENSTEIN OUT OF NEW YORK.  SO JUDGE HAMILTON APPOINTED A

23   THREE CO-LEAD AND, AND THAT WAS EFFICIENTLY RUN AND DONE VERY

24   WELL, YOUR HONOR.

25   OKAY.

```
 1              THE COURT:  OKAY.  MR. TABACCO.

 2              MR. TABACCO:  YES.  GOOD AFTERNOON, YOUR HONOR.

 3              THE COURT:  GOOD AFTERNOON.

 4              MR. TABACCO:  THIS CASE ACTUALLY COMES AT A GOOD TIME

 5    FOR THE BERMAN DEVALERIO FIRM BECAUSE WE HAVE RECENTLY

 6    CONCLUDED A COUPLE OF LARGE ANTITRUST CASES.  BUT HAVING SAID

 7    THAT -- AND AT THE PRESENT TIME, I DON'T BELIEVE, OTHER THAN

 8    OUR SECURITIES PRACTICE -- YOU KNOW, WE HAVE A OFFICE IN THE

 9    EAST COAST AND WEST COAST -- THAT WE HAVE AN ANTITRUST CASE

10    WHERE WE CURRENTLY HAVE LEAD RESPONSIBILITIES.

11         BUT I WOULD JUST ECHO WHAT MR. SAVERI AND MR. SIMON SAID

12    ABOUT SOMETIMES IN CASES OF THIS COMPLEXITY WITH THIS NUMBER

13    OF DEFENDANTS, WHERE THE ISSUES CAN GO ALL OVER THE BOARD, WE

14    HAVE INTERNATIONAL DISCOVERY, WE HAVE COMPLICATED ISSUES WITH

15    REGARD TO THE APPLICATION OF LAWS, IT HELPS TO ACTUALLY HAVE A

16    TEAM OF EXPERIENCED LAWYERS.

17         SO WHILE I UNDERSTAND AND AM VERY SENSITIVE TO THE FACT

18    THAT YOU'D LIKE TO HAVE ONE PERSON STAND UP AND TAKE CHARGE,

19    YOU -- YOU WILL GET THAT AT -- AT ALL THE HEARINGS BECAUSE --

20              THE COURT:  WELL, I'M NOT NECESSARILY SAYING THAT.  I

21    AM QUESTIONING THE BASIS FOR IT.

22              MR. TABACCO:  SURE.  AND ACTUALLY TO ANSWER YOUR

23    QUESTION ABOUT WHY THE CLASS BENEFITS -- I DON'T KNOW HOW YOU

24    MEASURE THAT.  OBVIOUSLY, THESE CASES ARE HIGH STAKES.

25    THEY'RE HIGH RISK.  AND THEY'RE TAKEN ON A CONTINGENT FEE
```

1    BASIS BY THE LAWYERS WHO PARTICIPATE IN THEM.  SO I -- THE

2    CLASS, I THINK, DOES GET THE BENEFIT OF EVERYTHING, A DEEPER

3    BENCH AND DEEPER RESOURCES SO THAT WE CAN CALL UPON THOSE

4    RESOURCES WHEN NECESSARY TO HIRE THE EXPERTS, TO HIRE THE --

5    THE -- TO GET THE MANPOWER, TO GET THE BRAIN POWER TO GET

6    THROUGH THESE CASES.

7        I MEAN, WE TALK ABOUT THE PLAINTIFFS' LAWYERS, BUT THE

8    DEFENSE -- YOU KNOW, YOU HAVE, AS YOU PROBABLY HAVEN'T HEARD

9    BECAUSE THEY'RE MUCH MORE MODEST THAN WE ARE, YOU KNOW, SOME

10   OF THE BEST AND THE BRIGHTEST IN THE COUNTRY ON THE OTHER

11   SIDE.  AND THEY'RE GOING TO -- WE ANTICIPATE THEY'RE GOING TO

12   FIGHT US, AND THEY ALWAYS DO.

13       AND FOR THE CLASS TO GET THE BENEFIT, IT'S IMPORTANT TO

14   FEEL THE -- ENOUGH HORSES TO BE ABLE TO GET THE JOB DONE.  AND

15   WHILE I THINK EACH OF THE FIRMS THAT ARE HERE COULD, YOU KNOW,

16   TAKE IT -- TAKE IT UP AND RUN WITH IT, I DON'T KNOW WHY THE

17   CLASS WOULD BENEFIT NECESSARILY FROM THAT, WHERE IN THE

18   CIRCUMSTANCES OF A CASE LIKE THIS, BALANCING WHAT MAKES SENSE,

19   WE'VE SPENT A LOT OF TIME COMING TO THE CONCLUSION THAT IN

20   THIS CASE, WE THINK A THREE-LEAD STRUCTURE WITH THESE FIRMS,

21   WHERE THE CHEMISTRY IS RIGHT, WORKS.

22        **THE COURT:**  WELL, LET ME ASK, HOW WOULD YOU THEN --

23   YOU'RE TALKING ABOUT THREE CO-LEADS, EACH WITH THEIR OWN

24   SUBSTANTIVE COMMITTEE; IS THAT RIGHT?

25        **MR. SIMON:**  THE SUBSTANTIVE COMMITTEES WORK UNDER THE

1    THREE CO-LEADS, SO THEY WOULD BE IN CHARGE OF THOSE --

2    WHATEVER GROUP WORKS ON BRIEFING OR CLASS CERTIFICATION OR

3    EXPERTS.

4         **THE COURT:**  BUT EACH CO-LEAD WOULD HAVE ITS OWN

5    SUBSTANTIVE COMMITTEE?

6         **MR. SIMON:**  NO, WE WOULD BE JOINT -- CO- --

7    SUPERVISING THE COMMITTEES UNDER US, SO NOBODY WOULD DO --

8         **THE COURT:**  LET'S HAND HIM THE MIC SO THE COURT

9    REPORTER CAN HEAR YOU, MR. SIMON.

10        **MR. SIMON:**  NO.  THE WAY IT'S -- WAS -- BEEN

11   STRUCTURED IN MY EXPERIENCE -- AND IT'S NOT THE ONLY

12   STRUCTURE, OF COURSE -- IS THAT THE CO-LEADS WOULD BE AT THE

13   TOP OF THE ORGANIZATIONAL SCHEME, AND THEY WOULD -- THEY WOULD

14   BE THE EXECUTIVE DECISION-MAKING BODY.  AND THEN THE

15   COMMITTEES WOULD BE ASSIGNED WORK AS NECESSARY -- AND I STRESS

16   "AS NECESSARY" -- TO WORK ON PROJECTS AS THEY COME ALONG IN

17   THE CASE.

18      THAT'S WHAT WE DID IN LCD, AND THAT'S WHAT A STEERING

19   COMMITTEE TYPICALLY DOES.  AS YOUR HONOR HAD IN YOUR ORDER

20   ABOUT STEERING COMMITTEE THAT WOULD WORK ON DISCOVERY,

21   ASSIGNMENTS WOULD BE MADE.  THEY CAN BE MADE ON

22   DEFENDANT-BY-DEFENDANT BASIS.  THEY CAN BE MADE ON A

23   SUBJECT-MATTER BASIS.

24      BUT IN MY EXPERIENCE, AT LEAST, YOU DEAL WITH THOSE ISSUES

25   THAT ARE BEFORE THE COURT MOST IMMEDIATELY AND WORK ON THOSE

```
1    EFFICIENTLY, AS OPPOSED TO ASSIGNING OUT A BUNCH OF THINGS

2    THAT DON'T HAVE TO BE WORKED ON RIGHT AWAY.  AND THE

3    CO-LEADS -- THE INTERIM CO-LEADS UNDER 23(G)), AS APPOINTED,

4    ARE THE PEOPLE RESPONSIBLE FOR MANAGING THAT SHIP OR STEERING

5    THE SHIP IN THE RIGHT DIRECT DIRECTION AND FOR KEEPING IT

6    EFFICIENT.

7         I WOULD POINT OUT ONE THING, YOUR HONOR -- AND I MAKE THIS

8    COMMITMENT TO THE COURT, AND I SAID THE SAME THING TO JUDGE

9    ILLSTON AND ANY COURT I BEEN APPOINTED LEAD IN -- I BEEN LUCKY

10   ENOUGH TO BE LEAD QUITE A LOT.  YOU HAVE MY COMMITMENT TO YOU

11   THAT YOU'LL HAVE ME.  AND IF THERE'S A PROBLEM IN THE CASE OR

12   THERE'S A (SIC) INEFFICIENCY OR SOMETHING YOU DON'T LIKE, I'LL

13   BE IN THIS COURTROOM TALKING TO YOU.  I'M NOT GOING TO BE

14   SENDING SOMEBODY ELSE.

15        THERE'LL BE OTHER PEOPLE WORKING ON THE CASE, BUT I THINK

16   THESE CASES ARE LEAD BY PEOPLE.  I MEAN, IT'S THE BOTTOM LINE

17   OF THE WAY LIFE WORKS.  AND YOU HAVE TO HAVE CONFIDENCE IN THE

18   PEOPLE AND HAVE TO HAVE THE COMMITMENT FROM THE PEOPLE.  AND

19   I -- I WOULD COMMIT TO YOU, AND I'M SURE MR. SAVERI AND

20   MR. TABACCO AND JUDITH ZAHID, WHO WOULD SERVE AS LIAISON

21   COUNSEL, THAT WE'RE COMMITTED TO YOU TO DO THIS IN THE WAY YOU

22   WANT US TO DO IT TO MAKE IT AS EASY AS POSSIBLE.

23        IT'S NOT ALWAYS GOING TO BE EASY 'CAUSE WE'RE GOING TO

24   HAVE DISPUTES WITH DEFENDANTS, AND YOU'LL SEE THERE'LL BE SOME

25   SUBSTANTIAL DISPUTES.  BUT THAT WOULD BE MY COMMITMENT TO YOUR
```

1    HONOR. I MEAN, THAT'S WHAT WAS MY COMMITMENT IN THE LCD FROM

2    THE VERY BEGINNING. FROM THE COMPLAINT BEING FILED, ALL WAY

3    THROUGH THE END OF TRIAL, I WAS THERE. I WOULD BE HERE FOR

4    THIS CASE AS WELL.

5         THE COURT: HAS THERE BEEN DISCUSSION -- BECAUSE IT'S

6    STILL NOT CLEAR TO ME, AND PERHAPS IT -- IT'S AMORPHOUS AND

7    THAT'S WHY IT'S NOT CLEAR TO ME -- WHAT THE RESPONSIBILITIES

8    WOULD BE OF EACH OF THE LEADS. OR IS IT JUST WE DECIDE ON AN

9    ONGOING BASIS WHO'S GOING TO TAKE LEAD ON A PARTICULAR ISSUE

10   BASED UPON TIME, RESOURCES, ET CETERA?

11        MR. SIMON: IT'S -- IT'S ON AN ON GOING BASIS BASED

12   ON THE LEADS' EXPERIENCE IN A PARTICULAR ISSUE. FOR EXAMPLE,

13   I JUST RECENTLY GOT DONE WITH A BIG ANTITRUST CASE CALLED

14   POTASH IN CHICAGO WHERE I WAS CO-LEAD. AND ONE OF THE BIG

15   ISSUES WAS THE FTAIA. I ARGUED THE CASE ALL THE WAY TO THE

16   SEVENTH CIRCUIT EN BANC. SO IF THERE WAS AN FTAIA ISSUE,

17   FOREIGN TRADE PRACTICES ISSUE, I MIGHT BE ASSIGNED THE PROJECT

18   OF DOING THAT PARTICULAR BRIEF 'CAUSE I COULD DO IT MORE

19   EFFICIENTLY 'CAUSE I HAVE THE WORK PRODUCT FROM PRIOR CASES.

20        I MEAN, THAT'S ANOTHER THING ABOUT -- THAT GIVES US

21   EFFICIENCY. ALL THESE FIRMS -- MOST OF THESE FIRMS EVEN --

22   FIRMS AT THE INDIRECT TABLE AND SUCH, HAVE ALL THE WORK FROM

23   THE OTHER CASES. WE'VE GONE DOWN THE DRY HOLES. WE KNOW WHAT

24   WORKS AND WHAT DOESN'T WORK. AND WE BRING THAT BENEFIT TO

25   YOU.

1    AND I THINK THAT WHEN WE PUT OUR HEADS TOGETHER AND WE

2    TALK TO EACH OTHER, WE MAKE IT EVEN MORE EFFICIENT.  WE LEARN

3    EVERY -- SOMETHING NEW IN EVERY CASE.

4        AND, YOU KNOW, IF YOU ARE JUST DOING IT BY YOURSELF, IT'S

5    LIKE BEING A SOLE PRACTITIONER VERSUS HAVING A LAW FIRM YOU

6    CAN WALK DOWN THE HALL AND TALK TO PEOPLE AND GET THEIR

7    ADVICE.  AND IT'S VERY HELPFUL IN RUNNING A CASE.  NONE OF US

8    HAVE BIG ENOUGH EGOS OR -- THINKING THAT, YOU KNOW, WE'RE SO

9    IMPORTANT THAT WE DON'T NEED ADVICE FROM OTHERS.  AND I

10   WELCOME THE ADVICE OF THE COLLEAGUES THAT WE'VE PROPOSED TO

11   THE COURT.

12       **THE COURT:**  TRUE.  I GUESS MY ONLY CONCERN WITH THE

13   LAST STATEMENT IS THAT IF I'M WALKING DOWN THE HALL AND

14   GETTING ADVICE FROM A COLLEAGUE, I'M NOT NECESSARILY CHARGING

15   THE CLIENT FOR IT.  BUT IF I'M SITTING IN A COMMITTEE MEETING,

16   THAT MIGHT BE SOMETHING THAT YOU'RE BILLING.  AND THAT'S THE

17   CONCERN WHEN YOU'VE GOT TOO MANY EXTRA COMMITTEE MEETINGS

18   GOING ON, THAT IT'S JUST NOT VERY EFFICIENT.

19       **MR. SIMON:**  THAT'S -- THAT'S TRUE.  AND THE CARRIER

20   IQ GUIDELINES, WHICH WE SUBMITTED WITH OUR APPLICATION THAT

21   MR. BERMAN'S FIRM AND OUR FIRM ARE CO-LEAD IN THAT CASE,

22   ADDRESSES THOSE THINGS AND ACTUALLY LIMITS THE NUMBER OF

23   PEOPLE THAT CAN BE ON CALLS, LIMITS THE PEOPLE THAT CAN GO TO

24   THE DEPOSITIONS.  AND WE ARE TOTALLY AMENABLE TO DOING THAT

25   BECAUSE, REALLY, AT THE END OF THE DAY, ONLY ONE PERSON CAN

1    TALK IN COURT, ONLY ONE PERSON CAN ASK THE QUESTION IN THE

2    DEPOSITION. AND WE'RE AWARE OF THAT. AND -- AND THAT'S WHAT

3    ENDS UP HAPPENING. AND SO YOU REALLY DON'T GET MULTIPLE

4    PEOPLE DOING THAT.

5        THERE DOES HAVE TO BE PHONE CALLS. THERE -- EMAILS ARE A

6    WONDERFUL THING. I MEAN, IT'S VERY EFFICIENT. WE DON'T HAVE

7    TO HAVE PEOPLE TRAVEL. THERE'S VIDEO CONFERENCING.

8    TECHNOLOGY REALLY HELPS US BE EFFICIENT. AND ALL THESE FIRMS

9    ARE SET UP TECHNOLOGICALLY TO RUN IT IN THE MOST EFFICIENT

10   WAY.

11       SO I -- WE HAVE DONE IT. WE LEARN IN EVERY CASE. WE'LL

12   LEARN SOMETHING NEW IN THIS CASE FROM YOUR HONOR, AND -- BUT

13   THAT HISTORY OF LEARNING EVERYTHING AND DOING IT, I THINK,

14   REALLY HELPS US WITH THE EFFICIENCY POINT.

15            **THE COURT:** OKAY.

16       WHAT I'LL DO NOW IS I WILL GO AHEAD AND ASK FOR -- ONE, TO

17   STATE YOUR APPEARANCE. WE'LL START WITH THE COUNSEL FOR --

18   AND IT'S ONLY COUNSEL FOR DIRECT PURCHASER PLAINTIFFS. YOU'LL

19   SEE ON YOUR SCREENS I HAVE THE -- THE LIST FROM THE SIGN-UP.

20   AND YOU ARE WELCOME TO STAND, INTRODUCE -- THE SENIOR PERSON

21   CAN STAND INTRODUCE WHOEVER YOU HAVE FROM YOUR FIRM SO THAT I

22   CAN SEE YOU. AND IF YOU WANT TO MAKE A BRIEF, AND I MEAN

23   BRIEF BECAUSE THERE ARE A LOT OF US HERE, STATEMENT ABOUT THE

24   PROPOSAL THAT IS BEING SUGGESTED, I WILL TAKE YOUR COMMENTS

25   NOW.

```
 1        SO WE'LL JUST WAIT AND LET -- COURTROOM DEPUTY WILL LIST

 2    YOU.  YOU CAN SEE ON THE SCREEN SHE'S JUST GOING TO GO FROM

 3    THE TOP TO THE BOTTOM SO YOU'LL KNOW WHEN YOU'RE COMING UP.

 4        AND LET'S SEE.  DO WE HAVE A MIC?

 5        IF YOU'RE SOMEWHERE WHERE THERE'S NOT A MIC, THEN --

 6                    (SIMULTANEOUS COLLOQUY.)

 7            THE CLERK:  SO CASE 12-5274, COUNSEL FOR NICHOLE M.

 8    GRAY.

 9            MR. BONSIGNORE:  GOOD AFTERNOON AGAIN.  ROBERT

10    BONSIGNORE.  I SUPPORT THE LEADERSHIP STRUCTURE RECOMMENDED

11    FOR THE STATED REASONS.  THERE'S NOTHING REALLY TO ADD.  I

12    THINK THAT THE POINT ON THE DEEP BENCH AND THE COOPERATION IS

13    VERY IMPORTANT.  I ALSO THINK THAT TO GET ALL THE LAWYERS IN

14    THIS CASE TOGETHER AND TO AGREE ON A LEADERSHIP STRUCTURE

15    CANNOT BE BRUSHED ASIDE.  IT'S A MIRACLE.  AND --

16            THE COURT:  GOOD ENOUGH.

17            MR. BONSIGNORE:  -- SOMETIMES MIRACLES SHOULD BE

18    REWARDED.

19            THE COURT:  AMEN, AS THEY SAY.

20        OKAY.  NEXT?

21            THE CLERK:  COUNSEL FOR -- OH, I'M SORRY.

22                    (SIMULTANEOUS COLLOQUY.)

23            THE CLERK:  COUNSEL FOR CHARLES CARTE, 12-5268.

24            MS. KUPFER:  AND GOOD AFTERNOON, YOUR HONOR.  I'M

25    SUSAN KUPFER, GLANCY, BINKOW, GOLDBERG IN SAN FRANCISCO.  AND
```

1    I JUST WANT TO UNDERSCORE AGAIN THE IMPORTANCE OF CONSENSUS IN

2    THE PROPOSAL THAT WE BROUGHT TO YOU.

3        WE HAVE BEEN IN MANY CASES.  WE'RE ALL VETERANS OF THE

4    LEAD COUNSEL DISCUSSIONS, AS WE WOULD SAY.  AND THE FACT -- I

5    AGREE WITH EVERYTHING THAT'S BEEN SAID.  THE FACT THAT WE NOT

6    ONLY HAVE THE DEEP BENCH, BUT WE HAVE A SERIOUS CONSENSUS

7    AMONG COMPETING FIRMS TO GO WITH THIS GROUP.  AND SO I ASK

8    THAT YOU HONOR THAT CONSENSUS.

9            **THE COURT:**  OKAY.  THANK YOU.

10           **THE CLERK:**  COUNSEL FOR DAVID GIBBONS AND ALEXANDER

11   EIDE, 13-1397.

12           **MR. SHULMAN:**  GOOD AFTERNOON, YOUR HONOR.  DAN

13   SHULMAN FROM MINNEAPOLIS, MINNESOTA.

14       I -- I DON'T HAVE ANY OTHER PENDING CLASS ACTIONS THAT I'M

15   INVOLVED IN.  I JUST FINISHED LOT OF WORK IN THE FLAT PANEL

16   ANTITRUST CASE, LCD, IN FRONT OF JUDGE ILLSTON.

17       WHEN YOUR HONOR ISSUED HER ORDER, YOU SAID -- YOU ASKED

18   FOR APPLICATIONS FOR THE PLAINTIFFS' STEERING COMMITTEE, WHICH

19   IS WHAT -- I, IN FACT, SUBMITTED AN APPLICATION TO BE ON THAT

20   COMMITTEE.

21       I SHOULD SAY I AM NOT HERE TO SAY THAT ANY OF THESE FINE

22   LAWYERS WHO WANT TO BE LEAD SHOULDN'T BE LEAD OR THAT THEY

23   SHOULDN'T HAVE PROMINENT ROLES IN THIS CASE.  MY APPLICATION

24   WAS TO BE ALLOWED TO PARTICIPATE AS PART OF THAT.

25       AND I WOULD SAY THAT IN THE FLAT PANEL CASE, I WAS -- OUR

 1   FIRM WAS SPECIFICALLY COMMENDED BY BOTH THE SPECIAL MASTER AND

 2   JUDGE ILLSTON FOR THE ROLE WE PLAYED.  AND I SUBMITTED THE

 3   ORDER OF SPECIAL MASTER MARTIN QUINN WHERE HE SAID THAT WE DID

 4   A SUPERB JOB IN MANY IMPORTANT ASPECTS OF THE CASE.

 5       I DID TAKE THE LEAD IN MANY DEPOSITIONS, WORKED ON ALL

 6   ASPECTS OF IT TO GET IT READY FOR TRIAL.  THAT'S IN MY

 7   APPLICATION.  HE ALSO COMMENTED THAT OUR RATES AND HOURS WERE

 8   STRIKINGLY ECONOMICAL.  AND HE ALSO MADE REFERENCE TO OUR

 9   OBVIOUS EFFICIENCY.

10       NOW, I WOULD -- BASED ON WHAT YOUR HONOR SAID -- AND I

11   WOULD THINK THOSE ARE DESIRABLE QUALITIES TO HAVE IN

12   PARTICIPATING IN THE MANAGEMENT OF THIS CASE.  AND I WOULD

13   REALLY WELCOME THE OPPORTUNITY TO WORK WITH THESE LAWYERS

14   AGAIN.  I'VE WORKED WITH -- I WORKED WITH MANY OF THEM IN FLAT

15   PANEL, VERY COOPERATIVELY.  OF COURSE THE RESULT WE GOT WAS

16   SPECTACULAR IN THAT CASE.

17       AND I WELCOME THE OPPORTUNITY TO WORK WITH MANY OF THEM

18   AGAIN.  THANK YOU, YOUR HONOR.

19           THE COURT:  THANK YOU, MR. SHULMAN.

20       NEXT.

21           THE CLERK:  COUNSEL FOR MICHAEL S. WILSON, 12-6210?

22           MR. GROSS:  TERRY GROSS FROM GROSS, BELSKY, ALONSO,

23   YOUR HONOR.

24       OUR FIRM IS IN SUPPORT OF THE CONSENSUS PROPOSAL THAT --

25   THAT YOU'VE BEEN DISCUSSING.

1    I THINK ONE POINT THAT PERHAPS IS CONFUSING IS THE ISSUE

2    OF WHAT'S BEEN CALLED THE PLAINTIFFS' STEERING COMMITTEE.  I

3    KNOW THAT IN YOUR INITIAL ORDER FOR THIS, YOU MENTIONED BOTH

4    CO-LEAD COUNSEL AND PLAINTIFFS' STEERING COMMITTEE.  AND THAT

5    YOU ALSO -- WHEN YOU ASKED MR. SIMON ABOUT THAT, HE TALKED

6    ABOUT AN INFORMAL COMMITTEE.

7    I BELIEVE THAT THE CONSENSUS PROPOSAL DOESN'T HAVE A

8    FORMAL PLAINTIFFS' STEERING COMMITTEE THAT WOULD BE APPOINTED

9    BY THE COURT BUT THAT THE COMMITTEES THAT MR. SIMON WAS

10   TALKING TO (SIC) WAS INFORMAL COMMITTEES THAT THE CO-LEAD

11   WOULD, YOU KNOW, SELECT AMONG THE -- THE OTHER FIRMS IN THE

12   CASE THAT WOULD DEAL WITH PARTICULAR ISSUES, WHETHER IT'S

13   SUBJECT MATTER OR BY DEFENDANT OR WHATEVER.

14   BUT THAT THE CONSENSUS PROPOSAL DOES NOT ASK THE COURT TO

15   APPOINT ANY UNDERLYING PLAINTIFFS' STEERING COMMITTEE.  IT'S

16   JUST ASKING FOR THE APPOINTMENT OF THE FOUR CO-LEAD AND

17   LIAISON COUNSEL.

18            **THE COURT:**  AND ARE YOU SUPPORTIVE OF THAT?

19            **MR. GROSS:**  YES, I'M IN SUPPORT OF THAT PROPOSAL.

20            **THE COURT:**  OKAY.  THANK YOU.

21            **THE CLERK:**  COUNSEL FOR -- OH, I'M SORRY.

22            **THE COURT:**  NO, WE HAVE -- WE HEARD FROM MR. SIMON.

23   MR. RETANA IS WITH HIM.  THEN THE ONE AFTER THAT.

24            **THE CLERK:**  OKAY.  COUNSEL FOR LLOYD RANOLA, 12-6422.

25            **MS. PRITZKER:**  GOOD AFTERNOON, YOUR HONOR.  ELIZABETH

```
 1   PRITZKER.  I AM ONE OF THE THREE FIRMS OR -- I -- I AM ONE OF
 2   THE THREE FIRMS THAT DOES SUPPORT -- ONE OF THE THREE -- ONE
 3   OF THE 23 FIRMS THAT SUPPORTS THE CONSENSUS COMMITTEE THAT'S
 4   BEING PROPOSED HERE.
 5       AND I THINK THAT MR. SIMON AND MR. SAVERI AND MR. TABACCO
 6   TRIED TO GIVE YOU A FLAVOR OF HOW HARD IT WAS TO ACTUALLY COME
 7   TO THAT CONSENSUS.  THERE WERE A LOT OF REALLY WELL-QUALIFIED
 8   ATTORNEYS WHO WANTED TO STEP UP AND TAKE A LEADERSHIP POSITION
 9   EVEN AS SOLE LEAD BUT STEPPED BACK IN LIGHT OF WHAT WE VIEWED
10   WERE THE TYPES OF EFFICIENCIES -- COST EFFICIENCIES AND WORK
11   EFFICIENCIES THAT YOUR HONOR WAS DESCRIBING AT THE OUTSET OF
12   TODAY'S HEARING.
13       I'VE WORKED COOPERATIVELY WITH ALL OF THE FIRMS WHO ARE
14   BEING PROPOSED IN THE CONSENSUS COMMITTEE.  I DO SUPPORT IT,
15   AND I THINK WITH THE TYPES OF CONTROLS THAT WE CAN PUT ON
16   EXPENDITURE OF TIME, AND EXPENDITURE OF EXPENSE FOR THE
17   BENEFIT OF THE CLASS.
18       I SERVED AS LIAISON COUNSEL IN THE LCD CASE, SO I SAW
19   THOSE BILLS COME IN EVERY DAY AND WAS -- HAD TO ACT WITH A
20   FIRM HAND QUITE A BIT TO MAKE SURE THAT WE WERE DOING THINGS
21   EFFICIENTLY BECAUSE THAT'S WHAT JUDGE ILLSTON DEMANDED OF US,
22   AND THAT'S WHAT WE PROMISED THAT WE WOULD DO FOR HER.
23       AND I KNOW THAT THIS COMMITTEE WILL DO THE SAME, AND I
24   SUPPORT THE CONSENSUS.  THANK YOU.
25           THE COURT:  THANK YOU, MS. PRITZKER.
```

```
 1          ALL RIGHT.  WE'VE HEARD FROM SAVERI.  AND WHO DO YOU HAVE

 2    WITH YOU, MR. SAVERI?

 3          MR. R. SAVERI:  WHO I HAVE IS MR. CARL

 4    HAMMARSKJOLD --

 5          THE COURT:  OKAY.

 6          MR. R. SAVERI:  -- WITH ME AND ALSO MR. GUIDO SAVERI

 7    FROM MY OFFICE.

 8          THE COURT:  OKAY.  THANK YOU.

 9       NEXT, MR. -- THE OTHER SAVERI.

10          MR. J. SAVERI:  I DON'T KNOW IF I'D PUT IT THAT WAY

11    EXACTLY.

12       YOUR HONOR, JOSEPH SAVERI, JOSEPH SAVERI LAW FIRM.  AND

13    I --

14       A COUPLE THINGS.  I GUESS I SHOULD START TO TRY TO MAKE

15    THIS AS CLEAR AS POSSIBLE.  I READ YOUR -- YOUR ORDER TO ASK

16    FOR APPLICATIONS TO THE STEERING COMMITTEE.  AND I SUBMITTED

17    AN APPLICATION TO THE PLAINTIFFS' STEERING COMMITTEE.  SO I DO

18    NOT SUPPORT THE ORDER LIMITING THE LEADERSHIP TO SOLELY THREE

19    LAWYERS.  AND I THINK THAT IF YOU LOOK AROUND THE ROOM, YOU'LL

20    SEE FROM THE ROOM HOW COMPLEX THIS CASE REALLY IS.  THERE

21    ARE -- THIS CASE CAN SUPPORT A LARGER STRUCTURE.  AND IT

22    CAN -- AND IT'S IMPORTANT TO DO THAT FOR A COUPLE REASONS.

23       ONE, THERE ARE FIVE GROUPS OF DEFENDANTS.  THERE ARE A

24    NUMBER -- THERE -- THERE SHOULD BE AND THERE CAN BE FIVE

25    GROUPS OF LAWYERS WHO CAN SERVE TO REPRESENT THE PLAINTIFFS.
```

```
 1         THE -- THAT IS WHY IN A COMPLEX ANTITRUST CASE LIKE THIS,

 2   PARTICULARLY A MULTI-DISTRICT CASE, THAT THERE ARE COMMITTEES

 3   THAT ARE CHARGED WITH RUNNING THESE TYPES OF CASES WHICH ARE

 4   FAR LARGER AND FAR MORE NUMEROUS THAN WHAT IS BEING PROPOSED

 5   HERE.  SO CLEARLY, THIS CASE CAN SUPPORT A LARGER STRUCTURE.

 6         NOW, I THINK IN TERMS OF MY QUALIFICATIONS AND MY FIRM'S

 7   QUALIFICATIONS, I THINK IT'S SAFE TO SAY THAT UNDER THE

 8   CRITERIA THAT YOU HAVE ASKED US TO ADDRESS, MY FIRM AND ME IN

 9   PARTICULAR DO NOT COME IN SECOND TO ANY OF THESE FIRMS.  AND

10   THAT'S BASED ON MY TRACK RECORD AND THE MATERIALS THAT I'VE

11   SUBMITTED TO THE COURT, AND I'M NOT GOING TO BELABOR THAT.

12         I POINT TO TWO -- I POINT TO THREE CASES, FRANKLY, YOUR

13   HONOR, THE TFT/LCD CASE IN WHICH I WORKED CLOSELY WITH

14   MR. SIMON AT MY FORMER FIRM LIEFF, CABRASER, HEIMANN &

15   BERSTEIN.  I'M HAPPY TO SEE THAT SOME OF MY PARTNERS ARE HERE

16   WORKING ON THE INDIRECT CASE.

17         I WAS INVOLVED IN VIRTUALLY EVERY SINGLE IMPORTANT

18   SIGNIFICANT ACTIVITY IN THAT CASE SHORT OF THE TRIAL.  SINCE

19   I'VE LEFT AND OPENED MY OWN FIRM, I'VE BEEN APPOINTED LEAD

20   COUNSEL IN TWO ADDITIONAL CASES, THE HIGH TECH EMPLOYEE CASE,

21   WHICH IS PENDING IN FRONT OF JUDGE KOH; AND THE TITANIUM

22   DIOXIDE CASE IN FRONT OF JUDGE BENNETT IN BALTIMORE.

23         AND IN CONNECTION WITH BOTH OF THOSE CASES, I AND MY FIRM

24   HAVE BEEN INVOLVED IN EVERY SUBSTANTIVE IMPORTANT PART OF THAT

25   LITIGATION.  AND I THINK WHAT'S MOST SIGNIFICANT ABOUT THOSE
```

1   CASES AND WHAT I WOULD POINT TO WHICH IS IMPORTANT FOR THIS

2   ROOM, IS THAT IN EACH OF THOSE CASES, DISCOVERY WAS COMPLETED

3   IN LESS THAN A YEAR AFTER THE PLEADINGS WERE RESOLVED.  THE

4   CASES ARE SET FOR TRIAL.  THE CASES ARE GOING TO BE RESOLVED

5   SOMEWHERE BETWEEN THREE AND FOUR YEARS OF FILING.  AND -- AND

6   THAT'S VERY, VERY FAST.

7       SO I HAVE THE TRACK RECORD, AND I KNOW HOW TO MOVE THESE

8   CASES ALONG.

9       I -- I'D SAY THE OTHER POINT THAT I THINK -- THAT'S

10  IMPORTANT TO KNOW IS THAT THERE'S BEEN A LOT OF TALK ABOUT A

11  CONSENSUS.  THERE'S -- I AM STANDING HERE -- AND I THINK

12  MR. SHULMAN IS ALSO EVIDENCE OF THAT, THAT THERE'S NOT A

13  COMPLETE CONSENSUS.  IT'S -- THAT'S A LITTLE BIT OF A STRETCH.

14  THERE'S CERTAINLY AN AGREEMENT AMONG CERTAIN PLAINTIFFS'

15  COUNSEL TO DO CERTAIN THINGS IN THE CASE.

16      AND WHAT I WOULD SUGGEST TO YOUR HONOR IS THAT EVEN IF

17  THERE WERE AN -- A CONSENSUS, THAT UNDER THE MANUAL FOR

18  COMPLEX LITIGATION AND OTHER -- AND OTHER AUTHORITY, YOU

19  SHOULD SATISFY YOURSELF THAT THE -- THAT RULE 23 AND THE

20  PRINCIPLES ENUNCIATED BY THE MANUAL OF COMPLEX -- FOR

21  LITIGATION ARE MET.

22      BUT THERE IS NO COMPLETE CONSENSUS.  THERE CERTAINLY MAY

23  BE AN AGREEMENT, AND I'M NOT PRIVY TO WHAT THE AGREEMENT IS OR

24  WHAT IT SAYS.  BUT I THINK IT'S IMPORTANT IN THOSE SITUATIONS

25  FOR THE COURT TO REALIZE THAT AT THIS POINT, YOU REALLY DON'T

```
1    KNOW WHAT THAT AGREEMENT IS.
2        WHAT YOU SEE IS THE TIP OF AN ICEBERG, AND IT'S NOT -- MY
3    EXPERIENCE, FRANKLY, IS NOT THE -- WHEN YOU'RE THINKING ABOUT
4    EFFICIENCY AND -- AND EFFICIENCY IS WHAT THE MANUAL FOR
5    COMPLEX LITIGATION REQUIRES AND DIRECTS AND SUGGESTS AS ONE OF
6    THE DRIVING PRINCIPLES.  AND I'M SURE YOU'RE GOING TO HEAR
7    MORE ABOUT THAT TODAY.
8        THAT -- GIVEN THAT, THE EFFICIENCY -- THE INEFFICIENCY
9    THAT'S CREATED BY SUCH A -- WHAT'S UNDER THE WATER LINE
10   ISN'T -- IT ISN'T SO MUCH ABOUT THE LAWYERS AT THE TOP OF THE
11   CASE, BECAUSE I'VE WORKED WITH ALL OF THESE LAWYERS, AND I
12   KNOW THAT THE PEOPLE THAT YOU WILL SEE AND -- ON A REGULAR
13   BASIS ARE GOING TO WORK HARD AND BE EFFICIENT -- I THINK
14   THE -- WHERE THE REAL INEFFICIENCY LIES, AND THIS IS BASED ON
15   MY EXPERIENCE, IS REALLY BELOW THE WATER LINE.
16       AND THAT IS THE LAWYERS WHO YOU DO NOT SEE WHO WILL WORK
17   KIND OF IN THE DARK, AND THAT'S WHERE THE INEFFICIENCY CAN
18   COME UP -- CAN BE CREATED.  AND YOU AT THE END OF THE CASE ARE
19   GOING TO BE ASKED TO LOOK AT THAT IF WE'RE SUCCESSFUL AND TO
20   GENERATE FEES AND COSTS, AND IT'S A LITTLE BIT LATE IN THE
21   PROCESS TO -- TO ADDRESS THAT.  IT'S A LITTLE BIT LIKE
22   UNSCRAMBLING AN EGG.
23       AND, FRANKLY, YOUR HONOR, I THINK THE BEST WAY TO ADDRESS
24   THAT -- THAT CONCERN IS TO HAVE SOME PROCEDURES AND STRUCTURE
25   IN PLACE THAT PREVENTS IT AT THE OUTSET.  AND PARTICULARLY IN
```

1    A CASE WHERE THERE'S SOME AGREEMENT, I -- I BELIEVE THAT IT

2    MAKES SENSE TO HAVE SOMEONE WHO IS NOT PART OF THAT AGREEMENT

3    TO BE PART OF THE PROCESS TO BE -- TO BE A -- TO BE A CHECK TO

4    THAT AND TO MAKE SURE THAT THE WORK THAT'S BEING DONE IS BEING

5    DONE IN AN EFFICIENT WAY AND IT'S NOT -- NOT BEING DONE BASED

6    ON ANY KIND OF UNDERSTANDING OR CONSIDERATION FOR AN AGREEMENT

7    BUT BASED ON THE MERITS OF THE CASE.

8        AND I THINK THAT'S A VERY IMPORTANT THING FOR -- AN

9    OPERATING PRINCIPLE FOR THIS TYPE OF CASE, NOT ONLY BECAUSE

10   IT'S A COMPLEX ANTITRUST CASE WITH A ROOMFUL OF LAWYERS, BUT

11   ALSO BECAUSE IT'S A -- IT'S A MULTI-DISTRICT CASE.

12       AND SO JUST -- JUST TO BE CLEAR, YOUR HONOR, I'VE WORKED

13   WITH ALL THE LAWYERS HERE, AND I'VE WORKED SUCCESSFULLY AND --

14   AND NONE OF THEM BASED ON THEIR EXPERIENCE WITH ME WOULD --

15   WOULD SAY ANYTHING BUT -- GIVE ME HIGHEST PRAISE FOR THE WORK

16   I CAN DO.  SO I THINK THAT GIVEN THE PARTICULAR POSTURE IN

17   THIS CASE AND HOW WE COME TO WHERE WE ARE TODAY, THAT THE

18   LEADERSHIP OF THE CASE SHOULD NOT BE LIMITED TO THREE FIRMS

19   THAT ARE THE PRODUCT OF THE AGREEMENT BUT SHOULD INCLUDE ME,

20   WHO'S NOT PART OF THAT AGREEMENT BECAUSE DOING THAT IS GOING

21   TO ALLOW THE CASE TO RUN EFFICIENTLY AND CONSISTENT WITH

22   THE -- YOUR ORDER AND CONSISTENT WITH THE PRINCIPLES

23   ENUNCIATED BY THE MANUAL FOR COMPLEX LITIGATION.

24       AND SO THIS CASE IS -- IS BIG ENOUGH -- IT'S BIG ENOUGH

25   TO -- TO HAVE ANOTHER COMPETENT EXCELLENT LAWYER AT THE TOP OF

```
 1    THE STRUCTURE, AND -- AND I'M -- AND I'M THAT PERSON, AND MY

 2    FIRM CAN DO THAT WORK.  AND IT WOULD BE AN HONOR AND A

 3    PRIVILEGE TO SERVE.  I'M READY, WILLING, AND ABLE TO DO IT.

 4    I'VE DONE IT BEFORE.  AND SO THAT'S MY SUGGESTION.

 5            THE COURT:  ALL RIGHT, MR. SAVERI.  THANK YOU.

 6       NEXT.

 7            THE CLERK:  COUNSEL FOR AUTOMATION ENGINEERING AND

 8    EDWARD KLUGMAN, 13-0426.

 9            MR. STEYER:  THANK YOU.  GOOD AFTERNOON, YOUR HONOR.

10    ALAN STEYER, STEYER, LOWENTHAL SAN FRANCISCO.

11       MR. SAVERI'S A TOUGH ACT TO FOLLOW.  THOUGHT I WAS GOING

12    TO BE UP FOR TEN SECONDS.  I'M GOING TO BE A LITTLE LONGER.

13       FIRST, I CONCUR WITH THE COMMENTS OF MS. PRITZKER AND

14    MS. KUPFER.  MY RECOLLECTION IS YOU DIRECTED COUNSEL TO TRY TO

15    WORK THINGS OUT.  WELL, THAT'S EXACTLY WHAT OCCURRED THROUGH

16    MANY, MANY PHONE CALLS, EMAILS, MEETINGS -- THERE WAS A LARGE

17    IMPERSONAL (SIC) MEETING AT RICK SAVERI'S OFFICE LAST MONTH.

18    AND WHAT DEVELOPED, AS MS. PRITZKER AND MS. KUPFER POINT OUT

19    TO YOUR HONOR, WAS A CONSENSUS.  AND THERE IS A CONSENSUS OF

20    23 OUT OF 25 FIRMS.  IF MY MATH SERVES ME CORRECTLY, THAT'S 92

21    PERCENT.  IN THE PRESIDENTIAL ELECTION, IF YOU GET 53 PERCENT,

22    THEY SAY IT'S A LANDSLIDE.

23       THE POINT BEING IT'S VERY CLEAR THAT THROUGH THE EFFORTS

24    OF MANY OF THE COUNSEL WHO CAME HERE TODAY, SOME FROM OUT OF

25    STATE, ADULT, MATURE LAWYERS, MANY OF WHOM HAVE LOTS OF
```

```
 1   EXPERIENCE IN COMPLEX JURIS- -- LITIGATION IN JURISDICTIONS

 2   THROUGHOUT THE COUNTRY CAME TO A CONSENSUS AND SAID,

 3   MR. SIMON'S FIRM, MR. SAVERI'S FIRM, AND MR. TABACCO'S FIRM

 4   SHOULD BE THE LEADERSHIP TO RUN THIS LARGE, COMPLICATED CASE.

 5        NO ONE IS DENIGRATING JOE SAVERI OR ANYONE ELSE.  HE'S A

 6   VERY GOOD LAWYER.  BUT SO IS MR. ASHER, WHO FLEW IN FROM

 7   PHILADELPHIA, SO IS MS. ZAHID AND MR. SCARPULLA WHO RAN THE

 8   LCD LITIGATION THAT I WORKED ON WITH THEM FOR FIVE YEARS AND

 9   ACHIEVED THE LARGEST SETTLEMENT IN THE HISTORY OF THE COUNTRY,

10   AN INDIRECT PURCHASER CASE.

11        LITERALLY EVERY LAWYER HERE -- GUIDO SAVERI,

12   MR. BONSIGNORE -- CAN STAND UP AND TELL YOU THEIR ACCOLADES

13   AND HOW EXPERIENCED THEY ARE.  I DON'T THINK THERE'S ANY

14   QUESTION ABOUT THAT.  THE POINT, THOUGH, IS THAT YOU DIRECTED

15   US TO TRY TO CONSENSUALLY WORK IT OUT, AND ON THE DIRECT

16   PURCHASER SIDE, WE ACHIEVED THAT THROUGH A LOT OF HARD WORK.

17        AND I THINK THE LAST POINT BEFORE I SIT TO UNDERSTAND IS

18   THAT SOMEONE LIKE JOE SAVERI WON'T BE EXCLUDED FROM WORKING ON

19   THE CASE.  IF HE WANTS TO WORK ON THE EXPERT COMMITTEE WITH

20   MR. SIMON OR MR. SAVERI, PERHAPS THAT'S WHAT HE'LL DO.  IF HE

21   WANTS TO ASSIST IN BRIEFING, ET CETERA, THE SAME AS MY FIRM

22   WILL, THE SAME AS MR. ASHER'S FIRM AND OTHER COMPETENT FIRMS.

23        I THINK IT'S CRITICAL THAT THE COURT, AFTER DIRECTING US

24   TO SIT DOWN AND TALK TO EACH OTHER AND RESOLVE IT, HONOR THE

25   FACT THAT WE WERE ABLE TO BRING TO YOU AN AGREEMENT.  FRANKLY,
```

```
1    IT MAKES YOUR LIFE A LOT EASIER THAN CHOOSING AMONG COMPETING,

2    SQUABBLING FIRMS.

3        AND IN TERMS OF EFFICIENCY, I'D LIKE TO SAY ONE LAST

4    THING.  ON THE PLAINTIFF SIDE, THERE REALLY IS A BUILT-IN NEED

5    AND DESIRE TO BE EFFICIENT.  WE'RE NOT BILLING ANYONE MONTHLY.

6    AT THE END OF THE CASE, WE MAKE A FEE PETITION, AND THE FEE

7    PETITION IS USUALLY A NINTH CIRCUIT -- A PERCENTAGE-BASED

8    PETITION WITH A LODESTAR CROSS-CHECK.  WE WANT TO BE

9    EFFICIENT.

10       ON THE PLAINTIFFS' SIDE, WE'D LIKE NOTHING MORE THAN TO BE

11   HERE TWO YEARS FROM NOW WITH A FABULOUS SETTLEMENT TO PRESENT

12   TO YOU.  WE DON'T WANT TO SEE THE CASE GO ON FOR YEARS.  AND

13   EVERYONE IN THE LEADERSHIP HAS BEEN THROUGH THIS, AS HAS

14   MR. SCARPULLA, MR. SAVERI, MR. ASHER, MS. KUPFER,

15   MS. PRITZKER.  EVERYONE GETS THAT.

16       WE WANT TO GET FROM POINT A TO POINT B AS QUICKLY AS

17   POSSIBLE AND GET THE CASE RESOLVED EITHER THROUGH TRIAL OR AN

18   EXCELLENT SETTLEMENT THAT WILL PASS MUSTER WITH YOU AND PASS

19   MUSTER WITH THE NINTH CIRCUIT IF THERE WAS APPELLATE REVIEW.

20       THANK YOU.

21           THE COURT:  THANK YOU, MR. STEYER.

22       NEXT.

23           THE CLERK:  COUNSEL FOR BARBAT 12-2793 AND BROWNLEE,

24   12-2896.

25           MR. HARTLEY:  GOOD AFTERNOON, YOUR HONOR.  JASON
```

```
1    HARTLEY FROM STUEVE, SIEGEL, HANSEN.  I AM ONE OF THE THREE

2    FIRMS THAT -- OR THREE CASES THAT ARE NOT IN SUPPORT OF THE

3    CONSENSUS GROUP ALONE.  WE FEEL THAT MR. JOE SAVERI WOULD ADD

4    A TREMENDOUS VALUE TO THE LEADERSHIP HERE.  AND I'VE HEARD

5    NOTHING TODAY NOR READ ANYTHING IN THE PAPERS THAT WOULD

6    SUGGEST SUBSTANTIVELY THAT MR. JOE SAVERI WOULDN'T ADD A

7    CONSIDERABLE BENEFIT TO THE LEADERSHIP HERE.

8        WE'VE ALL -- JUDGING JUST BY THE NUMBER OF PEOPLE IN THE

9    ROOM, WE CAN TELL THIS CASE IS CERTAINLY LARGE ENOUGH AND

10   COMPLEX ENOUGH TO SATISFY A FOUR-MEMBER CO-LEAD STRUCTURE THAT

11   WOULD INCLUDE JOE SAVERI.

12       I KNOW THAT THIS COURT HAS APPOINTED LEADERSHIP STRUCTURES

13   EVEN LARGER THAN THAT IN PRIOR CASES AND, I'M SURE, HAD A VERY

14   SUCCESSFUL AND EFFICIENT RESULT.

15           THE COURT:  WELL, YOU'RE WRONG THERE, MR. HARTLEY.

16           MR. HARTLEY:  PARDON ME?

17           THE COURT:  I SAID YOU'RE WRONG THERE, BUT GO AHEAD.

18           MR. HARTLEY:  IRONICALLY, HOWEVER, IF THE COURT WAS

19   INCLINED TO PURSUE A SMALL LEADERSHIP GROUP OF A SINGLE LEAD

20   COUNSEL THEN, JOE SAVERI WOULD FIT THAT BILL VERY EASILY.

21   HE'S UNBURDENED BY ANY COMMITMENTS TO THE OTHER FIRMS ABOUT

22   WHAT WORK TO DO IN CERTAIN CASES.  HE CAN ASSIGN THAT OUT AS

23   HE DEEMS FIT IN A SHORT ORDER AND IN AN EFFICIENT WAY,

24   MONITORING EASILY ALL WORK THAT GOES THROUGH THERE.

25       NOW, THAT'S NOT OUR FIRST PROPOSAL.  WE BOTH AGREE THAT
```

```
 1    THIS -- THIS CASE CAN CERTAINLY AFFORD A FOUR-MEMBER CO-LEAD

 2    STRUCTURE.  ALL THESE FIRMS AND ATTORNEYS HAVE WORKED TOGETHER

 3    COOPERATIVELY IN THE PAST AND SIMPLY HAVEN'T HEARD ANY REASON

 4    WHY THE LEADERSHIP WOULDN'T BE BENEFITED BY HAVING JOE SAVERI

 5    ON AS WELL.

 6              THE COURT:  OKAY.  I'M GOING TO ASK THAT THE

 7    REMAIN -- THAT PEOPLE SAY LESS UNLESS YOU'RE SAYING SOMETHING

 8    NEW.  THIS IS THE -- THIS IS THE GROUP THAT -- WHERE THERE WAS

 9    CONSENSUS.  I STILL HAVE TO GET TO THE OTHER GROUP.  WE HAVE A

10    LOT TO DO.  SO IF YOU ARE IN AGREEMENT, LET ME KNOW.  IF

11    THERE'S SOMETHING NEW, LET ME KNOW, BUT LET'S BE BRIEF.  OKAY?

12       NEXT.

13              THE CLERK:  COUNSEL FOR KEITH THROWER, 13-366.

14              THE COURT:  NO?

15       ALL RIGHT.  NEXT.

16              THE CLERK:  OKAY.  COUNSEL FOR DANIEL MEIR, 12-6708.

17              MR. ASHER:  GOOD AFTERNOON, YOUR HONOR.  MY NAME IS

18    STEVE ASHER.  I'M FROM WEINSTEIN, KITCHENOFF & ASHER IN

19    PHILADELPHIA.

20       I'D LIKE TO MAKE THREE VERY QUICK POINTS.  NUMBER ONE, I

21    HAVE WORKED WITH EACH OF THE PROPOSED LEADS AS A CO-LEAD WITH

22    THEM IN SERIOUS LITIGATION IN THIS DISTRICT OVER THE YEARS,

23    AND I CAN REPRESENT THAT EACH ONE OF THEM, MR. SIMON,

24    MR. SAVERI, MR. TABACCO, ARE OUTSTANDING IN THEIR OWN RIGHT,

25    AND I THINK IT WOULD BE WONDERFUL FOR THE CLASS TO BE
```

1   REPRESENTED BY THEM.   THAT'S NUMBER ONE.

2        POINT NUMBER TWO, EFFICIENCY IS VERY IMPORTANT, AND I KNOW

3   THAT THEY'RE ALL COMMITTED TO EFFICIENCY.   BUT JUST AS

4   IMPORTANT IS THE OBLIGATION OF THIS COURT TO MAKE SURE THAT

5   WHEN -- THAT THE CLASS IS REPRESENTED BY OUTSTANDING COUNSEL

6   WHO ARE PREPARED TO GO UP AGAINST THE VERY SUBSTANTIAL FIRMS

7   AND THE RESOURCES OF THE DEFENDANTS.

8        I'VE BEEN LEAD COUNSEL OVER THE LAST 25 YEARS IN AT LEAST

9   20 ANTITRUST FIRMS (SIC), AND I KNOW THAT THERE IS A REAL

10  VALUE IN HAVING A GROUP OF 3 AND NOT DOING IT BY YOURSELF WHEN

11  YOU HAVE TO FACE THE LIKES OF FIRMS LIKE THAT.

12        DO -- DOES ONE PERSON HAVE THE ABILITY TO DO IT?   EACH OF

13  THEM WOULD HAVE THE ABILITY TO RUN THIS CASE, BUT THEY WILL

14  GAIN POWER AND EMPOWER THE CLASS AND GIVE THE CLASS BETTER

15  REPRESENTATION IF THEY HAVE THE COMBINED EXPERIENCE AND

16  JUDGMENT OF ALL THREE.

17        THE LAST POINT I'D LIKE TO MAKE, YOUR HONOR, IS THAT

18  MR. JOE SAVERI, WHO IS ALSO AN EXCELLENT LAWYER, SAYS WHAT'S

19  THE PROBLEM WITH JUST ADDING ONE MORE?   AND THE PROBLEM IS

20  THAT, AS MR. STEYER POINTED OUT, AMONG THIS GROUP OF 23 FIRMS

21  THAT SUPPORT THIS STRUCTURE, ARE A LOT OF ATTORNEYS, ANY ONE

22  OF WHICH COULD COME FORWARD AND SAY, "I WANT TO BE A LEAD

23  COUNSEL.   I'VE BEEN LEAD COUNSEL IN 5, 10, 15 SUCCESSFUL

24  CASES," BUT THEY HAVE NOT.

25        THEY HAVE SAID, "WE'RE GOING TO DO WHAT'S BEST FOR THE

```
 1    CLASS.  WE'RE GOING TO PUT FORWARD THE ATTORNEYS FOR THIS CASE
 2    IN THIS DISTRICT AT THIS TIME WHO WE THINK ARE BEST, AND WE'LL
 3    TAKE A STEP BACK.  WE'LL AGREE TO WORK ON OTHER PROJECTS AND
 4    TO HELP THEM IN ANY WAY WE CAN."
 5         BUT IT'S OUR BELIEF THAT THIS GROUP IS THE RIGHT GROUP FOR
 6    THIS CASE AND THAT IT WOULD NOT BE HELPFUL TO ADD ANOTHER FIRM
 7    AT THIS TIME.
 8              THE COURT:  THANK YOU, MR. ASHER.
 9         AND LAST IN THE GROUP.
10              THE CLERK:  COUNSEL FOR THE STEREO SHOP 13-028.
11              MR. SCARPULLA:  GOOD AFTERNOON, YOUR HONOR.  FRANCIS
12    SCARPULLA APPEARING ON BEHALF OF THE STEREO SHOP.
13         I'LL BE VERY BRIEF, YOUR HONOR.  THE POINT WHY WE AS
14    LIAISON COUNSEL, MY FIRM, WHY WE -- AND I'M HERE WITH MY
15    PARTNER --
16              THE COURT:  GREAT.
17              MR. SCARPULLA:  -- JUDITH ZAHID -- THE REASON WE
18    SUPPORTED THE GROUP IN ADDITION TO EVERYTHING THAT'S BEEN TOLD
19    TO YOUR HONOR IS BECAUSE THIS GROUP WORKS COLLEGIALLY AND
20    COOPERATIVELY WITH EVERY SINGLE PERSON SITTING AT THAT DEFENSE
21    TABLE.  I'VE KNOWN SOME OF THEM FOR 45 YEARS, AS LONG AS I
22    BEEN PRACTICING.  AND I'VE PROBABLY BEEN LEAD COUNSEL IN MORE
23    CASES THAN ANYBODY IN THIS COURTROOM EXCEPT GUIDO SAVERI, AND
24    THAT'S ONLY BECAUSE HE'S A FEW YEARS OLDER THAN I AM.
25              MR. G. SAVERI:  NOT THAT MANY, YOUR HONOR.
```

```
1              THE COURT:  WELL, THAT'S --

2              MR. SCARPULLA:  NOT THAT MANY.

3              MR. G. SAVERI:  AND YOU NOTICE WHO HAS THE WHITE

4   BEARD --

5              MR. SCARPULLA:  GUIDO AND I COLLECTIVELY HAVE

6   PROBABLY OVER A HUNDRED YEARS OF EXPERIENCE.

7              MR. G. SAVERI:  EXCUSE ME FOR NOT GETTING UP.

8              THE COURT:  NO WORRIES, SIR.

9              MR. SCARPULLA:  BUT IT'S THE -- IT'S THE -- IT'S THE

10  COOPERATIVE GROUP WORKING WITH THOSE DEFENDANTS AND -- AND

11  WORKING WITH EACH OTHER AND WORKING WITH THE INDIRECTS.  I'VE

12  KNOWN MR. COTCHETT FOR DECADES, AS WELL AS THE GROUP FROM

13  LIEFF CABRASER.  I'VE WORKED WITH THEM IN VIRTUALLY EVERY

14  CASE, SO HAS EVERYBODY --

15             THE COURT:  I'M GOING TO CUT YOU OFF 'CAUSE THAT'S A

16  GREAT SEGUE TO MY NEXT --

17             MR. SCARPULLA:  OKAY.  THANK YOU, YOUR HONOR.

18             THE COURT:  AND THAT IS I MENTIONED IT AT THE OUTSET,

19  I HAVE SPENT THE LAST FIVE WEEKS STRUGGLING WITH A LAWYER WHO

20  HAD A COMBINATION OF INCREDIBLE ARROGANCE AND INCOMPETENCE,

21  NOT VERY GOOD FOR A JUDGE.  IT WAS HORRIBLE.

22      PART OF THE PROBLEM IN MY VIEW WAS A COMPLETE DISRESPECT

23  FOR STANDARDS OF CONDUCT AND PROFESSIONALISM.  THE SANTA CLARA

24  BAR ASSOCIATION HAS ESTABLISHED A SET OF STANDARDS FOR

25  PROFESSIONALISM WHICH ARE THERE TO ASSIST ATTORNEYS IN
```

1    TEMPERING TERRIFIC ADVOCACY.  EVERYONE EXPECTS YOU TO ALL BE

2    ADVOCATES FOR YOUR CLIENTS.

3        HOWEVER, THAT DOES NOT MEAN THAT YOU HAVE TO ATTACK EACH

4    OTHER PERSONALLY.  IT DOES NOT MEAN THAT WE HAVE TO BE

5    DISRESPECTFUL OF PERSONAL SCHEDULES, ET CETERA.

6        I AM GOING TO ASK THAT ANYONE INVOLVED IN THIS MDL SIGN AN

7    AGREEMENT WITH RESPECT TO THIS MDL TO ABIDE BY A FORM OF THOSE

8    STANDARDS OF PROFESSIONALISM.  AND THAT'S --

9        AT THIS POINT, I'M GOING TO HAVE THE MIC PASSED OVER TO

10   THE DEFENDANTS.  I HAVE THE DEFENDANTS -- WE'RE GOING TO GO IN

11   THE SAME LIST AND HAVE THE DEFENDANTS STATE THEIR APPEARANCE,

12   AND I WOULD LIKE TO KNOW FROM THE DEFENDANTS WHETHER THEY HAVE

13   HAD ANY TERRIBLE EXPERIENCES WITH ANY OF THE ATTORNEYS WHO ARE

14   SEEKING TO BE LEAD COUNSEL.  I'M TALKING ABOUT REAL

15   UNPROFESSIONAL CONDUCT.  I'M NOT TALKING ABOUT THE LITTLE

16   STUFF THAT HAPPENS THAT IS TYPICAL -- I MEAN -- I TELL

17   PEOPLE --

18       YOU KNOW, I WAS -- I WAS A HARD-NOSED LITIGATOR, AND I

19   WOULD NOT HAVE BEEN A GOOD JUDGE 'CAUSE I WAS -- WE PLAYED

20   HARDBALL, SO I'M NOT SAYING THAT YOU SHOULDN'T PLAY HARDBALL,

21   BUT YOU SHOULD ALWAYS DO IT WITH RESPECT.  REASONABLE PEOPLE

22   CAN DISAGREE.  AND THAT'S OKAY.

23       BUT IT -- WE'RE GOING TO TALK ABOUT THIS AT OUR NORTHERN

24   DISTRICT CONFERENCE IN A COUPLE OF WEEKS.  AND THE

25   REPRESENTATIVES TO THE NORTHERN DISTRICT ARE GOING TO ASK THE

1    DISTRICT TO HAVE ITS OWN STANDARDS OF PROFESSIONALISM FOR THE

2    DISTRICT.

3        WHEN WE WERE ON OUR CONFERENCE CALL TALKING ABOUT THIS, I

4    SAID WHAT'S A JUDGE TO DO?  YOU COME UP HERE, YOU WANT

5    SANCTIONS, AND YOU GIVE US A SNAPSHOT.  WELL, GUESS WHAT?

6    WE'RE NOT NAIVE ENOUGH TO KNOW (SIC) THAT THE SNAPSHOT DOESN'T

7    TELL THE WHOLE PICTURE.  WE UNDERSTAND THAT EMAILS GO BACK AND

8    FORTH.  THAT'S WHY IN MY COURTROOM WITH A NORMAL CASE, IF I

9    HAVE THAT KIND OF ISSUE RAISED, I ASK THE LAWYERS ON BOTH

10   SIDES TO SEND ME SUFFICIENT EMAILS TO SHOW THE CONDUCT OF THE

11   RELATIONSHIP BETWEEN THE PARTIES.  THAT ORDER IS USUALLY --

12   HAS A RESPONSE OF, "DEAR JUDGE, WE NO LONGER HAVE TO COME IN.

13   WE'VE RESOLVED THE ISSUE."  AND THAT'S BECAUSE IT HAPPENS ON

14   BOTH SIDES.  I UNDERSTAND THAT.

15       BUT HOW ARE WE AS JUDGES TO KNOW WHO'S REALLY MISBEHAVING

16   BEYOND NORMAL ADVOCACY IF THE LAWYERS DON'T LET US KNOW?  I

17   WOULD LIKE TO MAKE THE BEST DECISION ON BEHALF OF THE CLASS,

18   AND THAT INCLUDES ISSUES OF PROFESSIONALISM.  I DO NOT WANT TO

19   REWARD PEOPLE WHO ARE BEING UNPROFESSIONAL, NOR DO I LIKE

20   INEFFICIENCIES.  THAT'S WHY I HAD YOU ALL SIGN UP BEFORE YOU

21   ENTERED THE COURTROOM SO WE CAN GET DOWN TO BUSINESS.

22       SO I WOULD LIKE TO HEAR FROM THE DEFENDANTS.  AND AS THEY

23   SAY, SPEAK NOW OR FOREVER HOLD YOUR PEACE.

24           **MR. McGINNIS:**  YOUR HONOR, I'M --

25           **THE COURT:**  WAIT.

```
 1              MR. McGINNIS:  OKAY.  MAYBE I'M OUT OF TURN ALREADY.

 2              THE COURT:  I DON'T KNOW.  IF YOU'RE COUNSEL FOR

 3    HITACHI, SHE'LL CALL YOU FIRST.

 4              THE CLERK:  COUNSEL FOR HITACHI, MAXELL, MAXELL

 5    CORPORATION, HITACHI LTD.

 6              MR. JACOBS:  GOOD AFTERNOON, YOUR HONOR.  MATT JACOBS

 7    HERE WITH MY COLLEAGUE ELLIOTT JOH FROM VINSON & ELKINS ON

 8    BEHALF OF MAXELL CORPORATION OF AMERICA, HITACHI LIMITED, AND

 9    HITACHI MAXELL LIMITED.

10       AND I HAVE NOT HAD -- SEEN ANY UNPROFESSIONAL CONDUCT FROM

11    THE LAW FIRMS THAT WE'RE TALKING ABOUT.

12              THE COURT:  ANY CONCERNS ABOUT THE STRUCTURE THAT'S

13    BEING RECOMMENDED?

14              MR. JACOBS:  NOT FOR MY CLIENTS, YOUR HONOR.

15              THE COURT:  OKAY.

16              THE CLERK:  COUNSEL FOR SAMSUNG SDI, AND SAMSUNG SDI

17    AMERICA, INC.

18              MR. McGINNIS:  YOUR HONOR, I'M JIM MCGINNIS OF

19    SHEPPARD MULLIN.  YOU HAVE A NUMBER OF OLDER PEOPLE HERE,

20    WHICH I'M ONE.  I BEEN PRACTICING HERE FOR ALMOST 34 YEARS,

21    HAVE KNOWN ALL OF THE PEOPLE ON THAT SIDE OF THE COURTROOM FOR

22    MOST OF THOSE YEARS, AND I CAN TELL YOU WITH THE UTMOST

23    CONFIDENCE THAT I'VE NEVER HAD A PROBLEM WITH ANY ONE OF THEM.

24       I HAVE RECEIVED SHARP BLOWS TO THE JAW, NEVER UNDER THE

25    BELT FROM ANY OF THEM.  IN FACT, ONE OF THE REASONS WHY I
```

1    PRACTICE IN THIS GROUP IS BECAUSE I THINK WE HAVE THE HIGHEST

2    STANDARDS OF PROFESSIONALISM OF ANY GROUP THAT PRACTICES IN

3    THIS COURT, YOUR HONOR.  SO I HAVE NO CONCERNS ABOUT

4    PROFESSIONALISM WHATSOEVER, NOR --

5        FRANKLY, THE STRUCTURE, HONESTLY, I THINK IS BETWEEN THEM

6    AND THE COURT.  ALL WE CARE ABOUT IS THAT THE PERSON ON THE

7    PHONE THAT WE'RE TALKING TO HAS AUTHORITY TO SPEAK TO US.

8    I'VE NEVER HAD A PROBLEM WITH THAT.

9            **THE COURT:**  THANK YOU, MR. MCGINNIS.

10    NEXT?

11            **THE CLERK:**  COUNSEL FOR PANASONIC CORPORATION,

12    PANASONIC NORTH AMERICA, SANYO ELECTRIC, SANYO NORTH AMERICA.

13        **MR. KESSLER:**  GOOD AFTERNOON, YOUR HONOR.  JEFFREY

14    KESSLER FROM WINSTON & STRAWN.  I'M HERE WITH MY COLLEAGUES

15    JEFF AMATO AND IAN PAPENDICK.  WE ALSO HAVE OUR CO-COUNSEL

16    ROXANN HENRY FROM MORRISON & FOERSTER, WHO'S AT THE TABLE AS

17    WELL.  WE'RE REPRESENTING THE PANASONIC AND SANYO ENTITIES.

18        I WOULD JOIN IN THE COMMENTS OF MY COLLEAGUE MR. MCGINNIS.

19    I'VE HAD NOTHING BUT A POSITIVE EXPERIENCE AND RELATIONSHIP

20    WITH THE COUNSEL WHO ARE BEING PRESENTED TO YOU TO BE THE LEAD

21    COUNSEL IN THIS CASE.  PARTICULARLY IN THE CATHODE RAY TUBE

22    CASE, MANY OF THESE SAME COUNSEL ARE INVOLVED, AS WELL AS IN

23    THE ODD MDL, MANY HAVE THESE SAME COUNSEL'S INVOLVED, AND SOME

24    HAVE BEEN INVOLVED IN THE POTASH MDL AS WELL.

25        SO I'VE HAD EXPERIENCE IN SEVERAL DIFFERENT CASES, ALWAYS

```
1   BEEN QUITE PROFESSIONAL, ALWAYS BEEN QUITE VIGOROUS, AS THEY

2   SHOULD BE FOR THEIR SIDE, AND AS WE ARE FOR OUR CLIENTS, YOUR

3   HONOR.

4       AND THEN, AGAIN, I -- THE STRUCTURE I BELIEVE IS ENTIRELY

5   BETWEEN THEM AND YOUR HONOR, AS MR. MCGINNIS SAID.

6       I WOULD HAVE NO FURTHER COMMENT.

7           THE COURT:  THANK YOU.

8           MR. KESSLER:  THANK YOU.

9           THE COURT:  SO WE'LL MOVE TO THE NEXT PAGE, TOP OF

10  PAGE 5.

11          THE CLERK:  OKAY.  COUNSEL FOR SONY CORPORATION, SONY

12  ELECTRONICS, SONY ENERGY DEVICES CORPORATION, AND SONY

13  CORPORATION OF AMERICA.

14          MR. DWYER:  GOOD MORNING, YOUR HONOR.  JOHN DWYER OF

15  COOLEY ON BEHALF OF THE SONY ENTITIES.  WITH ME IS MY PARTNER

16  BEATRICE MEJIA.

17      THIS IS A UNIQUE OPPORTUNITY TO HAVE ALL THE DEFENSE FIRMS

18  FROM AROUND THE COUNTRY, YOU KNOW, COMPLIMENT AND LOUD THE

19  PLAINTIFFS' BAR.  SO --

20          THE COURT:  WE LIKE TO START A CASE, MR. DWYER.

21          MR. DWYER:  IT'S ACTUALLY FANTASTIC.

22          THE COURT:  AT THE BEGINNING AND THE END, I

23  UNDERSTAND.  EVERYTHING IN BETWEEN IS UP FOR GRABS.

24          MR. DWYER:  IT'S A FEEL-GOOD MOMENT.  MR. MCGINNIS

25  ACTUALLY STATED OUR VIEWS PERFECTLY.  WE HAVE NO ISSUES WITH
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

```
 1    ANYONE AND ACTUALLY DON'T THINK THE STRUCTURE IS OF OUR

 2    CONCERN, OTHER THAN WE HAVE SOMEBODY WHO WE CAN TALK TO AND

 3    HAVE DECISIONS MADE.

 4        THANK YOU, YOUR HONOR.

 5            THE COURT:  THANK YOU, MR. DWYER.

 6            THE CLERK:  COUNSEL FOR LG CHEM AND LG CHEM AMERICA.

 7            MR. EWING:  YOUR HONOR, KENNETH EWING FROM STEPTOE &

 8    JOHNSON WITH ANDREW SLONIEWSKY.  WE'RE HERE FOR THE LG CHEM

 9    ENTITIES.

10        I WILL SAY EVEN LESS.  AGREE WITH EVERYTHING THAT THE

11    DEFENSE COUNSEL YOU'VE HEARD FROM BEFORE HAVE SAID.  NO

12    PROBLEMS.  AND STRUCTURE IS REALLY FOR YOU AND THEM TO WORK

13    OUT.

14            THE COURT:  OKAY.  THANK YOU.

15            THE CLERK:  COUNSEL FOR SAMSUNG ELECTRONICS AND

16    SAMSUNG ELECTRONICS AMERICA.

17            MR. PEARL:  GOOD AFTERNOON, YOUR HONOR.  I'VE WORKED

18    WITH MANY OF THESE COUNSEL AS CO-COUNSEL AND ON THE OTHER

19    SIDE, AND I ECHO THE THOUGHTS OF THE DEFENSE GROUP.

20            THE CLERK:  AND YOUR NAME?

21            MR. PEARL:  JAMES PEARL.

22            THE COURT:  OKAY.  WELL, THAT'S THE LEAST AMOUNT THAT

23    YOU'LL EVER HEAR FROM THE DEFENSE SIDE.

24            MR. SIMON:  I'M ORDERING AN EXPEDITED TRANSCRIPT.

25            THE COURT:  OKAY.
```

```
 1        SO I GUESS I HAVE ONE QUESTION LEFT FOR THE -- FOR THE

 2   GROUP.  SIMON, SAVERI, TABACCO CAN ANSWER.

 3        AND THAT IS I AM TRYING TO GET MY ARMS AROUND ALL OF THESE

 4   VARIOUS STRUCTURES WHICH IF YOU JUST READ THE BOOKS, WHICH

 5   I'VE DONE, DO NOT DO A GREAT JOB EXPLAINING ALL OF THE VARIOUS

 6   STRUCTURES.

 7        SO LET ME ASK JUST THIS QUESTION, AND THEN WE'LL MOVE ON.

 8        WHY THE INFORMAL STRUCTURE UNDERNEATH THE THREE-LEAD

 9   COUNSEL?  WHY NOT A FORMAL STRUCTURE?

10        MR. SIMON:  EITHER -- EITHER COULD WORK, YOUR HONOR.

11   THE REASON WE DID IT INFORMALLY IN LCD IS THE COURT GAVE US

12   DISCRETION, AND IT MADE IT MORE FLEXIBLE AND WAS MORE

13   EFFICIENT.

14        WE REPORTED TO THE COURT IN CASE MANAGEMENT STATEMENTS

15   WHAT WE WERE DOING AND, IN FACT, TOLD THEM WHAT FIRMS WOULD BE

16   WORKING ON THE COMMITTEES.  AND WE WOULD BE HAPPY TO DO THAT

17   WITH YOUR HONOR IN CASE YOU HAD ANY PROBLEM WITH IT.

18        IF YOU PUT THE STRUCTURE IN PLACE, SOMETIMES, YOU KNOW,

19   IT'S LIKE A SPONGE, AND IT SOAKS UP ALL THE WATER AND YOU

20   MIGHT NOT NEED IT.  SO THERE'S NOTHING WRONG WITH A FORMAL

21   STRUCTURE.  I KNOW PEOPLE HAVE APPLIED FOR IT, BUT I THINK IT

22   GIVES US MORE FLEXIBILITY AND --

23        THE COURT:  OKAY.

24        MR. SIMON:  -- IT'S EASIER TO MANAGE.

25        I WILL SAY, TOO, THERE'S A BUNCH OF FIRMS, SHOWING OUR
```

```
1    EFFICIENCY, THAT WE TOLD NOT TO COME AND FLY OUT HERE THAT

2    DIDN'T SPEAK, BUT THERE ARE 23 OF THE 26 CASES THAT SUPPORT

3    THE CONSENSUS, AND WE CERTAINLY WOULDN'T EXCLUDE MR. SHULMAN

4    OR MR. SAVERI IF THEY'RE NOT APPOINTED.  THEY WILL WORK WITH

5    US, LIKE EVERYBODY ELSE.

6              THE COURT:  OKAY.

7         MR. J. SAVERI:  YOUR HONOR, JUST BRIEFLY.

8         THE COURT:  MR. SAVERI, SURE.

9         MR. J. SAVERI:  I GUESS MY SENSE IS --

10             THE COURT:  LET'S PASS HIM THE MIC.  I WANT TO MAKE

11   SURE THE COURT REPORTER HAS THIS.

12        MR. J. SAVERI:  JOSEPH SAVERI, YOUR HONOR.

13        MY SENSE, FRANKLY, IS THAT TO THE EXTENT THERE IS GOING TO

14   BE A -- A STRUCTURE AND THAT INCLUDES A TOP, A MIDDLE, A

15   BOTTOM, I THINK IT'S IMPORTANT TO BE CLEAR ABOUT WHAT THAT

16   STRUCTURE IS, AND COMPOSITION.  AND I THINK THAT -- FOR TWO

17   REASONS.

18        ONE, I THINK IT MAY -- IT ACTUALLY MAKES IT MORE

19   TRANSPARENT AND MORE CLEAR.  I THINK IT MAKES IT MORE

20   TRANSPARENT AND CLEAR TO THE COURT BECAUSE THE COURT KNOWS

21   WHAT IT'S DONE AND WHO'S SERVING AND DOING WHAT JOB.  IT SETS

22   SOME PARAMETERS FROM THE BEGINNING.

23        I ALSO THINK IT MAKES IT CLEAR AT THE SAME TIME TO THE ALL

24   THE OTHER LAWYERS IN THE CASE, AND SO I THINK FOR BOTH OF

25   THOSE REASONS, YOUR HONOR, IT MAKES SENSE TO -- TO BE AS CLEAR
```

 1    AND EXPLICIT AS POSSIBLE AS EARLY AS POSSIBLE SO EVERYBODY

 2    KNOWS WHAT THE PARAMETERS ARE.

 3         **THE COURT:**  THANK YOU, MR. SAVERI.

 4         OKAY.  WE ARE GOING TO MOVE ON TO THE INDIRECT PURCHASER

 5    PLAINTIFFS.  NOW, HERE, THE TASK FOR THE COURT'S A LITTLE

 6    DIFFERENT.  THERE ARE THREE POTENTIAL STRUCTURES, SOLO, TWO,

 7    OR THREE, AND A COMBINATION -- OR VARIETY OF COMBINATION --

 8    HAGENS HAS ASKED TO BE -- TO BE ALONE, OR HAGENS PERHAPS WITH

 9    EITHER COTCHETT OR LIEFF, CABRASER, NOT BOTH.  LIEFF, CABRASER

10    AND COTCHETT HAVE ASKED TO BE TOGETHER, BUT IT SOUNDED TO ME

11    FROM THE FILINGS THAT THEY WOULDN'T TOTALLY OBJECT TO A -- A

12    THREE STRUCTURE.

13         WITH RESPECT TO THESE, I'M NOT GOING TO HEAR FROM THOSE

14    ATTORNEYS FIRST.  I'M GOING TO HEAR FROM THE OTHER FIRMS, THE

15    INDIRECT PURCHASER PLAINTIFFS FIRST, AND THIS IS WHAT I'D LIKE

16    TO HEAR FROM YOU.  PRIMARILY START OFF BY TELLING ME IF YOU

17    HAVE A STRONG OPINION ONE WAY OR THE OTHER AS TO THE

18    STRUCTURE; AND, TWO, IF THERE'S A PARTICULAR STRENGTH THAT YOU

19    THINK I SHOULD CONSIDER IN MAKING MY DECISION WITH RESPECT TO

20    THESE THREE FIRMS.

21         **MR. BECNEL:**  MAY IT PLEASE THE COURT, I HATE TO

22    INTERRUPT THE COURT DURING THESE PROCEEDINGS, BUT I HAVE SEVEN

23    CITIES TO GO TAKE DEPOSITIONS, ONLY ONE FLIGHT I CAN GET OUT

24    TONIGHT.  I HAVE TO LEAVE HERE BY 3:30 --

25         **THE COURT:**  WHO ARE YOU?

1          **MR. BECNEL:**  DANIEL BECNEL FROM LOUISIANA, ONLY

2     PERSON FROM A SMALL TOWN.

3          **THE COURT:**  ALL RIGHT.  LET'S PASS IT TO MR. BECNEL.

4       AND YOU CAN RESPOND.

5          **MR. BECNEL:**  JUDGE, IN CONNECTION WITH THAT, I'VE

6     WORKED WITH THE CABRASER FIRM ON TOBACCO WHEN WE HAD TO ASK 20

7     PEOPLE TO JOIN THE TOBACCO GROUP 'CAUSE NOBODY THOUGHT WE

8     WOULD WIN.  I'VE WORKED WITH JOE COTCHETT IN THE SWINE FLU,

9     WHICH WAS THE FIRST BIG CIVIL --

10         **THE COURT:**  OKAY.  MR. BECNEL, I HAVE TOO MANY

11    LAWYERS.  I'M GOING TO ASK YOU AGAIN, FIRST -- NOPE.  DO YOU

12    HAVE A PERSPECTIVE, ONE, TWO OR THREE?

13         **MR. BECNEL:**  I SUGGESTED THREE.  THEY COULD NOT COME

14    TO A CONSENSUS, SO THEREFORE, I SUGGEST CABRASER'S FIRM AND

15    COTCHETT'S FIRM.

16         **THE COURT:**  OKAY.

17         **MR. BECNEL:**  I TRIED TO -- WHEN WE CAME DOWN HERE

18    TO -- TO HAVE THREE, MAKE A DEAL, AND -- AND MR. BERMAN

19    DECIDED NOT TO.  SO THE BULK OF US THINK MR. COTCHETT AND THE

20    CABRASER FIRM ARE EXCELLENT.  I MADE AN APPLICATION TO BE ON

21    THE STEERING COMMITTEE.  I JUST WANTED THE COURT TO KNOW THAT.

22    AND I -- I BEEN DOING THIS 44 YEARS.

23         **THE COURT:**  ALL RIGHT.  THANKS, MR. BECNEL.

24       TOP OF THE LIST.

25         **THE CLERK:**  COUNSEL FOR BRIAN BATEY, 13-787.

1      **THE COURT:** AND IT DOES NOT ESCAPE ME, BY THE WAY,

2  THAT THERE ARE GOING TO BE -- THAT THERE ARE MORE PEOPLE WHO

3  WERE SUGGESTING THE DUAL COTCHETT/LIEFF, CABRASER

4  RECOMMENDATION. I AM LOOKING FOR, THOUGH, YOUR GUIDANCE AND

5  YOUR INSIGHTS INTO THE PARTICULAR STRENGTHS OF THESE FIRMS.

6      AND -- AND I GUESS THE OTHER THING I WOULD SAY, HAVING

7  HEARD FROM THE DIRECT PURCHASER PLAINTIFFS, IS WHETHER YOU IN

8  YOUR COLLECTIVE WISDOM, BEFORE I ACTUALLY GET TO THESE

9  LAWYERS, CAN TELL ME WHETHER THERE'S TOO MUCH ACRIMONY AT THIS

10 POINT TO APPOINT ALL THREE.

11     GO AHEAD.

12     **MS. LEONARD:** GOOD AFTERNOON, YOUR HONOR. DANIELLE

13 LEONARD FROM ALTSHULER BERZON.

14     WE ARE PART OF THE NATIONWIDE GROUP THAT IS SUPPORTING

15 LIEFF AND THE -- THE LIEFF AND COTCHETT PROPOSAL. AND I THINK

16 AT THIS POINT, I, LIKE YOU, AM A LITTLE NEW TO THIS PARTY.

17 OUR FIRM HAS JUST BEEN BROUGHT IN. WE'RE SUPPORTING THIS

18 PROPOSAL FOR ALL THE REASONS SET FORTH IN THE PROPOSAL, AND,

19 IN PARTICULAR, THE DEPTH OF EXPERIENCE AND THE BREADTH OF

20 COVERAGE OF THE CASES AND PLAINTIFFS REPRESENTED BY THESE

21 FIRMS.

22     AND ON THE SPECIFIC STRENGTHS OF THE PROPOSAL, I'M GOING

23 TO DEFER TO MY CO-COUNSEL WHO HAVE MORE EXPERIENCE THUS FAR IN

24 THE CASE. AND ALSO I DON'T HAVE ANY REAL INSIGHT INTO THE

25 LEVEL OF DISPUTE AND ACRIMONY --

```
 1              THE COURT:  THAT'S FINE.

 2              MS. LEONARD:  -- TO ANSWER THAT QUESTION.

 3              THE COURT:  YOU DON'T EVEN HAVE TO GO THERE IF YOU

 4     DON'T HAVE ANY INSIGHTS.

 5         OKAY.  NEXT.

 6         THANK YOU.

 7              THE CLERK:  COUNSEL FOR DAVID PETREE, 13-976.

 8              THE COURT:  WE'LL PASS -- WE'LL PASS ON ANDERSON,

 9     SINCE YOU'RE RECOMMENDED AS LIAISON COUNSEL.

10              THE CLERK:  OKAY.

11         COUNSEL FOR TOM PHAM, CALKINS, TAWNEY, 12-5938, CABRAL,

12     BEALL, WOLFENDALE, AND BESSETTE, 13-686.

13              MR. BIRKHAEUSER:  YOUR HONOR, DAN BIRKHAEUSER,

14     BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER.

15         I'M GOING TO DEFER TO MY CO-COUNSEL, TOO.  BUT I WOULD

16     LIKE TO ORDER AN EXPEDITED TRANSCRIPT OF THE COMMENTS OF THE

17     DEFENSE COUNSEL ONLY.

18              MR. McGINNIS:  THEY WILL CHANGE.

19              THE COURT:  NEXT.

20              THE CLERK:  COUNSEL FOR BRIAN BATEY AND DAVID SHAWN

21     AND MICHAEL DOYLE.

22              THE COURT:  NOW YOU KNOW HOW JURORS FEEL.

23              MR. STRANCH:  YOUR HONOR, GERARD STRANCH OF

24     BRANSTETTER, STRANCH & JENNINGS, NASHVILLE, TENNESSEE.

25         I THINK ONE DISTINCTION WE NEED TO DRAW BETWEEN THE DIRECT
```

```
 1    CASES AND INDIRECT CASES THAT BEARS IN THIS DECISION HERE IS
 2    THAT IN THE INDIRECT CASES, YOU HAVE TO HAVE CLIENTS IN THE
 3    VARIOUS STATES.  I AM PART OF THE NATIONWIDE GROUP THAT HAS
 4    CLIENTS IN 21 OF THE STATES.  AND WE SUPPORT THE LIEFF AND THE
 5    COTCHETT GROUPS.  AND THAT'S BASED UPON THEIR ABILITY TO WORK
 6    TOGETHER IN THE PAST, THEIR ABILITY TO GENERATE EXCELLENT
 7    RESULTS FOR THEIR CLIENTS, AND THEIR ABILITY TO WORK
 8    COOPERATIVELY WITH OTHER -- WITH OTHER PLAINTIFFS' COUNSEL AND
 9    TO SEE THAT THE BEST INTERESTS OF THE CLASS ARE TAKEN CARE OF
10    AT ALL TIMES.
11             THE COURT:  HAVE YOU EVER HAD ANY INTERACTION WITH
12    HAGENS?
13             MR. STRANCH:  YES, YOUR HONOR.  I'M ACTUALLY CO-LEAD
14    COUNSEL WITH MR. SOBEL FROM THE HAGENS FIRM IN A NUMBER OF
15    INDIRECT CASES AS WELL.
16             THE COURT:  OKAY.  THANK YOU.
17        NEXT?
18             THE CLERK:  COUNSEL FOR ROJANASATHIT.
19             MR. BREALL:  GOOD AFTERNOON, YOUR HONOR.  JOSEPH
20    BREALL FROM BREALL & BREALL.  I'M HERE WITH MY ASSOCIATE JILL
21    DIAMOND.
22        AND WE ARE SUPPORTING THE LIEFF AND COTCHETT CO-COUNSEL.
23    I DON'T THINK I HAVE MUCH TO ADD TO THAT.
24             THE COURT:  HAVE YOU HAD ANY EXPERIENCE WITH THE
25    HAGENS FIRM?
```

1            **MR. BREALL:**  YOU KNOW, YOUR HONOR, I HAVE NOT.  THERE

2    HAVE -- WE'VE SEEN A LOT OF EMAILS, AND THERE HAVE (SIC) BEEN

3    SOME DISHARMONY, BUT OTHER THAN THAT, I DON'T HAVE ANY

4    COMMENT.

5            **THE COURT:**  OKAY.  THANK YOU.

6            **THE CLERK:**  COUNSEL FOR JOSEPH O'DANIEL.

7            **MR. BRILL:**  GOOD AFTERNOON, YOUR HONOR.  TOM BRILL

8    AND MY COLLEAGUE GREG FORNEY.  MY SUPPORT WOULD BE CO-LEAD

9    STRUCTURE.  I WOULD GO HAGENS AND WHOEVER YOU PREFER, COTCHETT

10   OR LIEFF.  I DON'T HAVE EXPERIENCE WITH EITHER LIEFF OR

11   COTCHETT.

12           **THE COURT:**  THANK YOU, SIR.

13           **THE CLERK:**  COUNSEL FOR KRISTA LEPORE.

14           **MR. CLOBES:**  SHOULD I GO WITHOUT THE MIC, OR SHOULD I

15   WAIT?

16           **THE COURT:**  YES.  IF YOU TALK LOUD.

17           **MR. CLOBES:**  I CAN DO THAT.

18               (OFF-THE-RECORD DISCUSSION.)

19           **MR. CLOBES:**  I'LL START AGAIN.  BRYAN CLOBES FROM

20   CAFFERTY CLOBES IN PHILADELPHIA.  WE ALSO HAVE OFFICE IN

21   CHICAGO AND DETROIT.  HERE ON BEHALF OF PLAINTIFF KRISTA

22   LEPORE.

23       WE'VE WORKED BOTH IN LEADERSHIP CAPACITY AS WELL AS

24   UNDERNEATH THE THREE LEAD APPLICANTS.  AND WE THINK THAT

25   FOR -- I THINK THAT FOR ALL THE REASONS ARTICULATED BY THE

```
1    LEAD APPLICANTS ON THE DIRECT SIDE, THAT A STRUCTURE WITH

2    THREE CO-LEAD COUNSEL ON THE INDIRECT SIDE, A MIRRORING

3    STRUCTURE, IF YOUR HONOR IS INCLINED TO APPROVE THE OTHER

4    SIDE'S PROPOSAL, MAKES SENSE.  BIG CASE -- FOR ALL THE REASONS

5    THAT THEY SAID, NATIONAL, LOTS OF WORK, ALL THOSE THINGS.

6        IF YOUR HONOR'S INCLINED TO APPOINT TWO HOWEVER, I THINK

7    THAT THE COTCHETT FIRM AND LIEFF FIRM HAVE SHOWN IN THIS CASE

8    AN ABILITY TO WORK WELL WITH THE VAST MAJORITY OF THE OTHER

9    FIRMS, TO BE INCLUSIVE.  AND FOR THAT REASON, I WOULD SAY IF

10   YOUR HONOR'S INCLINED TO APPOINT JUST TWO, I WOULD APPOINT

11   THOSE TWO.  BUT, AGAIN, WE'VE WORKED WITH ALL THREE AND WORKED

12   WELL.

13       BY THE WAY, JUST A FEW OTHER POINTS.  WE ARE ALSO A

14   STEERING COMMITTEE APPLICANT.  I HAVE PREPARED A GLORIOUS

15   ARGUMENT THAT I'LL RESERVE AND JUST STAY ON THE PAPERS.

16       ALSO WE'RE JUST FINISHING UP OUR LEAD COUNSEL ROLE IN A

17   LARGE MDL -- ANTITRUST MDL IN THE DISTRICT OF NEW JERSEY

18   BEFORE JUDGE CLAIRE CECCHI.  WE HAVE A FINAL SETTLEMENT THAT'S

19   BEFORE THE COURT.  ONCE THAT'S FINALLY APPROVED -- HOPEFULLY,

20   IT WILL BE -- WE'LL BE FREE AND CLEAR OF MDL RESPONSIBILITY

21   AND READY TO ROLL.

22              THE COURT:  OKAY.  THANK YOU.

23              THE CLERK:  COUNSEL FOR BRIAN HANLON.

24          MR. PIERSON:  YOUR HONOR, KIT PIERSON OF --

25   MILSTEIN --
```

```
 1              (OFF-THE-RECORD DISCUSSION.)

 2         MR. PIERSON:  LET ME MAKE THREE COMMENTS, YOUR HONOR.

 3   AND WE SUPPORT THE STRUCTURE THAT THE HAGENS FIRM HAS

 4   PROPOSED.  I BRING A SOMEWHAT DIFFERENT PERSPECTIVE, I

 5   SUPPOSE.  AND SOME OF MY REMARKS MAY EVEN SEEM BLASPHEMOUS IN

 6   TERMS OF WHAT WAS SAID EARLIER.  I SPENT 20 YEARS ON THE

 7   DEFENSE SIDE OF THE BAR, THE LAST 11 YEARS AS A PARTNER AT

 8   HELLER, EHRMAN.  AND IN THAT CAPACITY, ACTUALLY SPENT SIX OR

 9   SEVEN YEARS DEFENDING MICROSOFT IN PROBABLY MANY ANTI- -- MANY

10   INDIRECT PURCHASER ANTITRUST CASES AROUND THE COUNTRY, TWO

11   OF -- TWO OF WHICH INVOLVED LENGTHY TRIALS.

12         SO I BRING THAT PERSPECTIVE.  AND I BRING THE PERSPECTIVE

13   OF THE LAST FOUR YEARS BEING THE HEAD OF THE ANTITRUST

14   GROUP -- CO-HEAD OF THE ANTITRUST GROUP ON THE PLAINTIFFS'

15   SIDE AT COHEN MILSTEIN.

16         THERE -- THERE ARE A COUPLE OF CONCLUSIONS OR

17   RECOMMENDATIONS THAT I WOULD OFFER TO YOUR HONOR.  ONE

18   CONCLUSION THAT I REACHED RELATIVELY EARLY IN MY CAREER, YOUR

19   HONOR, IS THAT FEWER ACTUALLY TENDS TO BE BETTER.  SO THAT ONE

20   OF THE PRINCIPLES I DEVELOPED IN LITIGATING CASES ON THE

21   DEFENSE SIDE WAS THAT THE MOST EFFECTIVE WAY TO LITIGATE A

22   CASE IS WITH THE FEWEST NUMBER OF PEOPLE THAT ARE CONSISTENT

23   WITH GETTING THE WORK DONE.  I THINK IT IS CLEARLY MORE

24   EFFICIENT.  BUT I ALSO THINK IT'S MORE EFFECTIVE, YOUR HONOR,

25   TO CONCENTRATE KNOWLEDGE RATHER THAN DIFFUSING KNOWLEDGE.
```

1      I UNDERSTAND THAT THIS IS A BIG CASE AND THAT HAS TO BE

2    BALANCED AGAINST OTHER CONSIDERATIONS, BUT IT CERTAINLY

3    INCLINES US TO SUPPORT A STRUCTURE THAT IS LEANER AND IS BEING

4    DRIVEN BY A FIRM WITH SORT OF A DEMONSTRATED RECORD OF

5    EFFICIENCY.

6      THE SECOND CONSIDERATION I WOULD POINT OUT, YOUR HONOR,

7    IS -- IS THE PRIVATE ATTORNEY GENERAL POINT, WHICH WE MADE IN

8    OUR BRIEFS.  AND I DON'T WANT -- I WON'T BELABOR IT HERE, BUT

9    I THINK IT'S AN IMPORTANT POINT.

10      OUR FIRM IS ONE OF THE LARGEST CLASS ACTION FIRMS IN THE

11    COUNTRY, AND MAYBE THE LARGEST FIRM THAT -- WITH 20 LAWYERS

12    THAT ARE DEDICATED TO ANTITRUST WORK.  WE INVEST A LOT OF

13    MONEY IN INVESTIGATING AND DEVELOPING CASES.  AND IT IS

14    PROBLEMATIC FOR THE PRIVATE ATTORNEY GENERAL FUNCTION OF THE

15    PLAINTIFFS' BAR IF A FIRM INVESTS THOSE KIND OF RESOURCES IN

16    DEVELOPING A CASE AND IS THEN DISPLACED BY OTHER FIRMS THAT

17    ESSENTIALLY FOLLOW ON THEIR ACTION.

18      SO THIS IS NOT SIMPLY AN ARGUMENT THAT HAGENS FILED FIRST

19    IN THIS CASE.  IT'S AN ARGUMENT THAT THEY REALLY DEVELOPED THE

20    CASE.  IF YOU LOOK AT THEIR COMPLAINT AND WHAT WAS ADDED BY

21    SUBSEQUENT COMPLAINTS, THERE'S REALLY NOTHING THAT WAS ADDED.

22    SO I THINK -- I THINK IT WOULD BE PROBLEMATIC IN TERMS OF

23    PLAINTIFFS -- THE ROLE OF PLAINTIFF AS A PRIVATE

24    ATTORNEY GENERAL TO DISPLACE THAT.

25      THE LAST POINT I WOULD MAKE, YOUR HONOR, IN TERMS OF THE

1    RELATIONSHIP WITH HAGENS -- DEVELOPING THE RELATIONSHIP WITH

2    HAGENS, I'VE WORKED WITH THE HAGENS FIRM FOR 13 YEARS ON AND

3    OFF.  I WORKED WITH THEM WHEN I WAS DEFENDING MICROSOFT WHERE

4    THEY WERE ACTUALLY DOING SOME WORK ON BEHALF OF MICROSOFT.

5    AND I'VE WORKED WITH THEM AS CO-LEAD COUNSEL IN THE EBOOKS

6    CASE, WHICH IS ACTIVE RIGHT NOW.

7         I WILL TELL YOU, YOUR HONOR, THAT THAT HAS BEEN ONE OF THE

8    BEST PROFESSIONAL RELATIONSHIPS AND EXPERIENCES THAT I HAVE.

9    I CONSIDER THE ATTORNEYS FRIENDS NOW, IN ADDITION TO BEING

10   EXCELLENT ATTORNEYS, AND WE SUPPORT THE STRUCTURE THAT THEY'VE

11   PROPOSED, YOUR HONOR.

12        THANK YOU.

13           **THE COURT:**  THANK YOU.

14   WE'LL PASS ON THE COTCHETT FIRM.  ONE AFTER THAT.

15           **THE CLERK:**  COUNSEL FOR MATT BRYANT, GRANAHAN

16   (PHONETIC), MCGUINNESS, GALLARDO, LE, HATHAWAY.

17           **MS. CUNEO:**  GOOD AFTERNOON, YOUR HONOR.  MY NAME IS

18   SANDRA CUNEO, AND I AM REPRESENTING THOSE CLIENTS.

19        AND WE HAVE FILED A MOTION TO BE CONSIDERED AS -- IN THE

20   PLAINTIFFS' STEERING COMMITTEE.  AND WE ARE ALSO SUPPORTING

21   THE COTCHETT, LIEFF MOTION, BUT WE ARE GLAD TO WORK WITH ALL

22   THREE FIRMS.

23        I HAVE -- YOUR FIRST QUESTION TO ADDRESS IS THE STRONG

24   OPINION AS TO STRUCTURE.  I THINK THAT WE MIGHT HAVE SOME

25   CONCERNS ABOUT JUST ONE LEAD COUNSEL BECAUSE THIS IS AN

1   ENORMOUS CASE.  I MEAN, I THINK PRIOR COUNSEL HAS SAID THAT.

2   BUT THERE ARE SEVEN DEFENDANTS.  IT -- AS FAR AS I CAN TELL,

3   THAT IN THE CLASS PERIOD, THERE HAS BEEN ENORMOUS AMOUNT OF

4   LITHIUM ION BATTERIES PURCHASED THROUGH -- I BELIEVE WE ARE

5   REPRESENTING HERE 27 STATES.  SO I'M NOT CONVINCED THAT ONE

6   COUNSEL COULD EFFECTIVELY STEER THE ENTIRE CASE.

7       WITH RESPECT TO YOUR SECOND QUESTION, PARTICULAR STRENGTHS

8   WHEN CONSIDERING THE THREE FIRMS.  AS I MENTIONED, WE ARE -- I

9   HAVE WORKED WITH BOTH THE COTCHETT AND LIEFF FIRMS AND FOUND

10  THEM ALL -- BOTH TO BE INCREDIBLY COLLEGIAL, EFFECTIVE, AND

11  ZEALOUS IN THEIR PURSUIT OF JUSTICE FOR THEIR CLIENTS.

12      I WOULD ALSO ADD THAT I WORKED WITH THE LIEFF FIRM IN A

13  VERY, VERY DIFFERENT CAPACITY HELPING 911 VICTIMS, AND THEY

14  DEVOTED A TREMENDOUS AMOUNT OF THEIR TIME TO HELPING MANY,

15  MANY VICTIMS' FAMILIES.

16          **THE COURT:**  HAVE YOU WORKED WITH THE HAGENS FIRM?

17          **MS. CUNEO:**  I HAVE NOT WORKED PERSONALLY WITH THE

18  HAGENS FIRM.  I BELIEVE THAT MY FIRM HAS.

19      I -- AS YOU WILL SEE FROM THE PAPERS THAT WERE FILED, WE

20  HAVE -- OUR FIRM HAS SOME CONCERN ABOUT THAT HAGENS BERMAN HAS

21  FILED A -- A REQUEST TO FILE THEIR FEE AND EXPENSE STRUCTURE

22  UNDER SEAL.  AND I DO KNOW THAT WE HAVE -- YOU'LL SEE IN OUR

23  PAPERS -- AND I DON'T WANT TO REPEAT THEM -- THAT WE DO HAVE

24  SOME CONCERNS ABOUT THAT.  THE COURT DIDN'T ASK FOR IT

25  THEREFORE -- SO FAR YOU HAVE NOT DECIDED TO HAVE HAD A BIDDING

```
 1    CONTEST.

 2         AND THE THIRD THING IS WE BELIEVE THAT OUR PLAINTIFFS AND

 3    THE OTHER PLAINTIFFS HAVE A RIGHT TO KNOW WHAT THE FEE

 4    STRUCTURE IS FOR THOSE WHO WOULD REPRESENT THEM.

 5         AND I THINK THAT IS THE END OF MY COMMENTS.

 6              THE COURT:  THANK YOU, MS. CUNEO.

 7              THE CLERK:  COUNSEL FOR COHEN, WEHKING, WILEY,

 8    GREENSPAN, SHIRE, MESSINA, NEALON, SHARP, POTVIN, AND PORTER.

 9              MR. KARON:  GOOD MORNING -- OR GOOD AFTERNOON, YOUR

10    HONOR, BY NOW.  DAN KARON FROM GOLDMAN, SCARLATO, KARON &

11    PENNY IN CLEVELAND.

12         JUST IN LOOKING AROUND THE ROOM -- I MEAN, OBVIOUSLY TODAY

13    REPRESENTS ONE OF THE MOST UNCOMFORTABLE PARTS OF THE

14    PLAINTIFFS' PRACTICE, BUT IT'S SOMETHING WE HAVE TO GO THROUGH

15    BECAUSE THERE ARE JUST SO MANY FOLKS INVOLVED IN WANTING TO

16    HELP THE VICTIMS THEY REPRESENT, BUT THAT DOESN'T MEAN COMING

17    INTO THE PROCESS, WE'RE NOT ALL PROFESSIONALS, WE'RE NOT ALL

18    FRIENDS.  A LOT OF US INDEED ARE FRIENDS, WHICH MEANS, I

19    THINK, WHERE IT COMES TO THE POTENTIAL FOR SOLE LEADERSHIP,

20    THAT DOESN'T MEAN OTHER FOLKS WON'T BE INVOLVED IN THE CASE.

21         I MEAN, AFTER ALL, WHO RUNNING A CASE BY HIS OR HERSELF

22    WOULD WANT TO TAKE ON FULL RESPONSIBILITY, SAY, FOR ALL THE

23    WORK, ALL THE EXPENSES?  THAT'S SOMETHING TO BE, OF COURSE,

24    MINDFUL OF.  AND FOR THAT REASON, I SIGNED ON TO THE

25    POSSIBILITY OF HAGENS BERMAN ACTING AS SOLE LEAD, NOT SOLELY
```

1   RUNNING THE CASE, BUT SOLELY STEERING THE CASE FOR THE PURPOSE

2   OF EVERYONE'S INVOLVEMENT WITH THAT IN MIND AND SO THAT ALL

3   THE VICTIMS OF THIS ALLEGED PRICE-FIXING SCHEME DO AS WELL AS

4   THEY CAN AS A CLASS.

5       INDEED, I THINK THERE MIGHT BE ONE OR TWO COUNTRIES OUT

6   THERE WHERE THEY'RE CO-HEADS OF STATE, RIGHT, WHICH, TO ME,

7   SEEMS KIND OF GOOFY.

8       HERE, WHAT WE KNOW IS THEY HAVE A PRESIDENT WITH A CABINET

9   BECAUSE ONE PERSON'S GOT TO RUN THE SHOW.  AND I'M CO-LEAD

10  COUNSEL IN THE AFTERMARKET SHEET METAL CASE UP IN WISCONSIN,

11  AND THERE ARE FOUR OF US.  DESPITE MY BEST EFFORTS, THERE ARE

12  FOUR OF US, AND IT'S REALLY TOUGH TO GET ALONG.  HALF THE

13  DAYS, I WANT TO QUIT THE PRACTICE.

14      BUT IF IT'S SOMETHING THAT WE CAN AVOID IN THE BEST

15  INTEREST OF THE CLASS, WHY NOT?

16      IN ANSWER TO YOUR LAST QUESTION, THOUGH, IF COMING INTO

17  THIS PROCESS, DO I THINK THERE'S SO MUCH ACRIMONY THAT ALL

18  THREE FOLKS CAN'T GET ALONG?  OF COURSE, I DON'T.  THEY'RE ALL

19  GREAT LAWYERS, GOOD COWORKERS, AND THEY CAN ALL GET IT DONE

20  TOGETHER, IF INDEED THAT'S THE WAY YOU WANT TO GO.  SO IF THAT

21  WERE (SIC) YOUR FOLLOW-UP QUESTION, I DON'T SEE A PROBLEM

22  THERE, BUT IT'S NOT WHAT I PUT FORTH AS WHAT I THINK'S BEST

23  FOR THE CLASS.

24          **THE COURT:**  OKAY.

25      I'LL REMIND THE PLAINTIFFS' LAWYERS TO KEEP IT BRIEF.

1        **MR. KARON:** SORRY ABOUT THAT. SURE.

2        **THE COURT:** NEXT.

3        **THE CLERK:** COUNSEL FOR MARTINEZ, D'ORAZIO, MARCUS,

4   LITWIN, LAWSON, AND SAN FRANCISCO COMMUNITY COLLEGE DISTRICT.

5        **MR. GREEN:** GOOD AFTERNOON, YOUR HONOR. ROBERT GREEN

6   OF GREEN & NOBLIN. WITH ME TODAY IS MY PARTNER LESLEY WEAVER.

7   AND ALSO LISTED ON OUR LINE IS STEVE CIKES, ALTHOUGH HE'S

8   WORKS WITH LOUISE RENNE RATHER THAN WITH MY FIRM.

9        OUR FIRM HAS APPLIED FOR A STEERING COMMITTEE POSITION ON

10  THE INDIRECT PURCHASERS' SIDE OF THE LEDGER. AND WE'RE, WITH

11  MS. RENNE, THE ONLY TWO FIRMS THAT REPRESENT BOTH PRIVATE AND

12  PUBLIC ENTITIES IN THE CASE. AND WE THINK WE BRING THAT

13  ADDITIONAL PERSPECTIVE OF THOSE CLIENTS TO THE TABLE IN THIS

14  CASE.

15       WE CAN WORK WITH ANY OF THE THREE FIRMS THAT HAVE

16  SUGGESTED THAT THEY BE LEAD COUNSEL. WE HAVE WORKED WITH EACH

17  OF THOSE THREE FIRMS BEFORE SUCCESSFULLY.

18       IN TERMS OF HOW MANY PEOPLE, YOUR INITIAL QUESTION, SHOULD

19  IT BE, ONE, TWO, OR THREE, OUR PREFERENCE IS THAT IT BE THREE.

20  WE THINK THAT THAT'S WHAT THE DIRECTS HAVE SUGGESTED. THAT'S

21  WHAT WOULD WORK HERE. THAT'S -- YOU HAVE THE ADVANTAGE OF

22  HAVING AN ODD NUMBER THAT ALLOWS ANY DISPUTES TO BE RESOLVED

23  MORE EASILY. AND WE THINK THAT IN THIS CASE, THAT THAT WOULD

24  BE A GOOD STRUCTURE. ALL THREE OF THEM HAVE APPLIED, AND ALL

25  THREE OF THEM HAVE THE ABILITY TO RUN THE CASE.

```
 1          MY EXPERIENCE IN THAT IS THAT -- WE JUST FINISHED A CASE

 2     IN 2012 IN WHICH THERE WAS A SIX-FIRM EXECUTIVE COMMITTEE

 3     APPOINTED BY JUDGE CHESNEY.  ON THAT COMMITTEE, ELIZABETH

 4     CABRASER WAS LIAISON COUNSEL, BUT THE CASE WAS RUN BY SIX

 5     FIRMS.  IT WENT ABOUT FOUR YEARS UP TILL A FEW WEEKS BEFORE

 6     TRIAL.  THE CASE SETTLED LAST YEAR FOR A HUNDRED MILLION

 7     DOLLARS, AND THE COMMITTEE WORKED.  SO THAT WAS SIX.  IT WAS

 8     AN EVEN NUMBER, AND IT WAS MORE FIRMS.

 9          I HAVE NO DOUBT THAT A COMMITTEE OF THREE WITH A STEERING

10     COMMITTEE UNDER IT IN A CASE LIKE THIS THAT HAS THE NUMBER OF

11     DEFENDANTS AND THE ISSUES INVOLVED WOULD WORK.

12          THAT BEING SAID, WHETHER THE COURT WERE TO SELECT THREE,

13     TWO, OR ONE, ANY OF THOSE WOULD BE ACCEPTABLE TO US, BUT WE

14     HAVE A FAVOR -- WE FAVOR THREE.

15          A COUPLE OF FINAL POINTS.  I WORKED CLOSELY WITH JEFF

16     FRIEDMAN OF THE HAGENS BERMAN FIRM IN A CASE AGAINST SONY A

17     FEW YEARS AGO THAT WAS HIGHLY EFFECTIVE, AND THE CASE WAS

18     SETTLED, RESOLVED ON A -- A NATIONAL MDL IN NEW YORK IN LESS

19     THAN A YEAR.

20          WE JUST FINISHED THE CHASE CASE WITH LIEFF, CABRASER, AND

21     HAVE WORKED ON A NUMBER OF CASES, INCLUDING CASES THAT HAVE

22     GONE TO TRIAL.  AND ELIZABETH CABRASER IS EXTREMELY WELL

23     POSITIONED TO BE ON A COMMITTEE IN -- IN ANY RESPECT IN THIS

24     CASE.

25          AND WE WORKED WITH THE COTCHETT FIRM IN THE SRAM CASE.
```

```
1    AND IN THAT CASE, HAGENS BERMAN -- MR. COTCHETT WAS THE SOLE

2    LEAD COUNSEL, AND HAGENS BERMAN WAS ON THE TEAM ON THE DIRECT

3    SIDE OF THE CASE, AND THAT WORKED WELL.  THE CASE RESOLVED

4    VERY SUCCESSFULLY.  HAGENS BERMAN AND COTCHETT WORKED WELL

5    TOGETHER IN THAT CASE.

6        AND TO ANSWER YOUR LAST QUESTION, IS THERE TOO MUCH

7    ACRIMONY HERE FOR PROFESSIONAL LAWYERS WHO ARE REPRESENTING

8    THE CLASS TRYING TO ACHIEVE THE BEST RESULTS THEY CAN TO GET

9    OVER IT AT THE END OF THE DAY?  NO, THERE'S NOT TOO MUCH

10   ACRIMONY.  THERE'S SERIOUS LAWYERS HERE THAT ARE APPLYING TO

11   REPRESENT THE CLASS.  THEY WILL ACCEPT THE JUDGE'S RULING,

12   WHATEVER IT IS, AND GET ON WITH THE BUSINESS ONCE IT'S

13   RENDERED.

14           THE COURT:  OKAY.  THANK YOU, MR. GREEN.

15       WE'LL PASS ON BERMAN.  MOVE DOWN TO KELLER.

16           THE CLERK:  OKAY.  COUNSEL FOR RICHARD JOHNS.

17       MR. KELLER:  GOOD AFTERNOON, YOUR HONOR.  IT'S

18   JEFFREY KELLER ON BEHALF OF KELLER GROVER WITH MY ASSOCIATE

19   KATE SCANLAN.

20       WE'VE ALSO WORKED WITH MANY OF THE LAWYERS IN THE GROUP,

21   AND -- AND WE DO SUPPORT THE LIEFF/COTCHETT GROUP, BUT WE'RE

22   ALSO HAPPY TO WORK WITH HAGENS AS WELL.  WE'VE WORKED

23   COOPERATIVELY WITH ALL THREE FIRMS.  AND I THINK THIS CASE IS

24   LARGE.  THERE'S GOING TO BE LOTS OF WORK FOR EVERYBODY TO HAVE

25   A -- A ROLE IN THE CASE, SO I SEE NO IMPEDIMENT TO HAVING A
```

```
1    THREE-LEAD COUNSEL TEAM PUT TOGETHER HERE; THOUGH IF THE COURT
2    WAS GOING TO GO WITH TWO, WE WOULD PROPOSE LIEFF CABRASER AND
3    THE COTCHETT FIRM.
4             THE COURT:  OKAY.  NEXT?
5             THE CLERK:  COUNSEL FOR STEVEN -- IS IT BUG
6    (PHONETIC)?  B-U-G-G-E.
7             MR. KALFAYAN:  GOOD AFTERNOON, YOUR HONOR.  RALPH
8    KALFAYAN ON BEHALF OF STEVEN BUGGE.  WE SUPPORT THE TWO- OR
9    THREE-LEAD-FIRM STRUCTURE.  WE THINK THIS CASE IS COMPLEX
10   ENOUGH, AND GIVEN THE NUMBER OF DEFENDANTS THAT ARE INVOLVED
11   IN THIS CASE, THERE SHOULD BE MORE THAN ONE LEAD COUNSEL.
12      AND WE'VE WORKED CLOSELY WITH THE LIEFF, CABRASER FIRM ON
13   OTHER CASES.  AND I THINK THAT FIRM HAS DONE A WONDERFUL JOB
14   ON CASES THAT I'VE BEEN INVOLVED WITH.
15      I CAN'T GIVE YOU ANY INFORMATION ON THE COTCHETT FIRM OR
16   THE HAGENS BERMAN FIRM OTHER THAN I KNOW OF THEM, AND I HAVE
17   NOT -- I DON'T HAVE PERSONAL EXPERIENCE WITH WORKING WITH
18   EITHER ONE OF THOSE TWO FIRMS.
19             THE COURT:  OKAY.  THANK YOU.
20      NEXT?
21             THE CLERK:  COUNSEL FOR CONOVER, HILLER, HYAMS,
22   WEINER, AMES, AND FRANKLIN.
23             MR. SOMERS:  GOOD AFTERNOON, YOUR HONOR.  ERIC SOMERS
24   OF THE LEXINGTON LAW GROUP.  I'M PART OF THE NATIONWIDE GROUP.
25   AND WE ALSO SUBMITTED AN APPLICATION FOR THE PLAINTIFFS'
```

```
 1   STEERING COMMITTEE.

 2       WE SUPPORT, YOUR HONOR, THE LIEFF AND COTCHETT GROUP.  WE

 3   HONESTLY THINK THAT ALL THREE FIRMS APPLYING FOR CO-LEAD ARE

 4   MORE THAN ADEQUATE.  YOU REALLY HAVE TOP ATTORNEYS IN THE

 5   FIELD HERE.  WE DON'T THINK A THREE -- IF A THREE WAS GOING TO

 6   WORK, IT WOULD HAVE WORKED ALREADY.  AND YOU ASKED US TO ALL

 7   WORK ON A CONSENSUS, AND I THINK THE PARTICULAR STRENGTH THAT

 8   MR. COTCHETT'S FIRM BRINGS IS BRINGING A CONSENSUS AND

 9   BRINGING A GROUP TOGETHER.

10       WE'VE BEEN WORKING WITH THEIR FIRM FOR A NUMBER OF YEARS.

11   WE HAVE A LOT OF EXPERIENCE WITH THE LIEFF FIRM.  MY PARTNER

12   USED TO WORK AT THE LIEFF FIRM.  AND WHILE WE BELIEVE THAT

13   THREE COULD WORK, WE THINK THAT CLEARLY A TWO IS YOUR BEST

14   BET.  WE DON'T THINK A ONE WORKS, AND A THREE WOULD HAVE

15   ALREADY WORKED ITSELF OUT IF THAT WAS GOING TO BE YOUR BEST

16   SOLUTION.

17           THE COURT:  THANK YOU MR. SOMERS.

18           MR. SOMERS:  THANK YOU, YOUR HONOR.

19           THE COURT:  NEXT.

20           THE CLERK:  COUNSEL FOR DAVID TOLCHIN.

21           THE COURT:  MIC.  THANK YOU.

22           MR. LIBERTY:  YOUR HONOR, GOOD AFTERNOON.  MY NAME IS

23   MIKE LIBERTY.

24       I WOULD STAY ON TASK AND ADDRESS YOUR THREE POINTS.  DO I

25   HAVE STRONG OPINIONS ABOUT THE STRUCTURE?  YES, I DO.  THERE
```

1    SHOULD BE TWO FIRMS RUNNING THIS SHOW, AND THAT'S THE COTCHETT

2    FIRM AND LIEFF AND CABRASER FIRM, AND I'LL TELL YOU WHY.

3        YOU ASKED IF THERE WERE PARTICULAR STRENGTHS OF EACH FIRM.

4    I KNOW THEM BOTH VERY WELL, SINCE THE LATE '80S, EARLY '90S.

5    WE TRIED THE LINCOLN SAVINGS CASE TOGETHER IN TUCSON, ARIZONA;

6    RECEIVED A $3.3 BILLION JUDGMENT.  THAT'S NOT THE REAL POINT.

7    THE REAL POINT WAS THAT I WAS IN MANY MEETINGS WITH ELIZABETH

8    CABRASER, RICHARD HEIMANN, JOE COTCHETT, SUSAN ILLSTON AT THE

9    TIME.

10        I WILL TELL YOU YOUR HONOR THAT THERE IS NO ACRIMONY AND

11    NO DISHARMONY AMONG THOSE TWO FIRMS.  THE NAME OF THE GAME IN

12    THIS GAME IS ORGANIZATION, ORGANIZATION, ORGANIZATION, AND

13    THESE FOLKS ARE THE MASTERS.

14        THERE IS, TO GO TO YOUR POINT NUMBER THREE, SOME

15    DISHARMONY WHEN YOU BRING IN THE THIRD FIRM.  AND AS MY

16    COLLEAGUE VERY WELL SAID, IF THERE WAS GOING TO BE HARMONY

17    AMONG THE THREE, WE WOULD ALREADY HAVE REACHED IT.

18            **THE COURT:**  ALL RIGHT.  WELL, LET ME ASK YOU THIS:

19    SO SHOULD I JUST DISREGARD ALL OF THE WORKUP THAT THE HAGENS

20    FIRM HAS DONE TO GET THIS -- ALL OF THEIR INVESTIGATION?  IS

21    THAT SOMETHING THAT I SHOULD JUST NOT PAY ANY ATTENTION TO?

22            **MR. LIBERTY:**  YOUR HONOR, YOU SHOULD TAKE IT IN THE

23    GRAND MIX OF THINGS, BUT IT'S NOT THE FIRST ONE WHO DRAFTS THE

24    COMPLAINT.  IT'S NOT THE FIRST ONE WHO WORKS IT UP.  IT'S THE

25    ONE WHO CAN PROTECT THE CLASS AND GET THE BEST RESULT AT THE

```
1    END OF THE GAME.

2        SO YOU SHOULD CONSIDER EVERYBODY, BUT YOU SHOULD ALSO TAKE

3    INTO ACCOUNT ALL OF OUR TOPICS THAT WE BEEN RAISING TO YOU,

4    INCLUDING AND MOST IMPORTANTLY, OUR EXPERIENCE WITH EACH OF

5    THESE FINE PLAINTIFFS' LAWYERS FIRMS.

6            THE COURT:  ALL RIGHT.  THANK YOU.

7        TOP OF THE NEXT PAGE, WE'LL PASS ON CABRASER.

8        SECOND DOWN.

9            THE CLERK:  COUNSEL FOR STEVEN BUGGE AND JUNCAJ AND

10   SELCA.

11           MR. NOVAK:  PAUL NOVAK OF THE MILBERG FIRM.  OUR FIRM

12   HAS WORKED IN THE PAST I THINK COLLEGIALLY WITH EACH OF THE

13   OTHER THREE FIRMS THAT ARE APPLYING FOR LEAD OR CO-LEAD

14   POSITIONS AND HAVE NO CONCERNS ABOUT THEIR PROFESSIONALISM OR

15   THEIR CAPABILITY OF WORKING TOGETHER.

16       IN OUR PAPERS, WE SUBMITTED THAT A SMALLER STRUCTURE OF

17   TWO CO-LEADS AND A SMALLER STEERING COMMITTEE WOULD BE

18   APPROPRIATE FOR EFFICIENCY PURPOSES.  AND PARTIALLY, FRANKLY,

19   IN THE HOPES THAT SUCH A SUGGESTION MAY STILL FACILITATE A

20   PRIVATE ORDERING SOLUTION THAT WE HAD HOPED WOULD HAVE WORKED

21   OUT OVER THE WEEKEND.

22       THAT ISN'T THE CASE, OBVIOUSLY.  AND AT THIS POINT, EITHER

23   TWO OR THREE FIRMS, I THINK, WOULD BE APPROPRIATE.  AND -- AND

24   WE LEAVE TO THE COURT'S DISCRETION AMONG THE THREE VERY

25   QUALIFIED FIRMS WHICH -- WHICH ONES TO SELECT.
```

```
 1              THE COURT:  OKAY.  NEXT?

 2       THANK YOU.

 3              THE CLERK:  COUNSEL FOR MARTINEZ D'ORAZIO, MARCUS,

 4       LITWIN, LAWSON, COHEN, SAN FRANCISCO COMMUNITY COLLEGE

 5       DISTRICT.

 6              THE COURT:  MS. RENNE, WELCOME.

 7              MS. RENNE:  YES.  GOOD AFTERNOON, YOUR HONOR.  LOUISE

 8       RENNE FROM RENNE SLOAN.

 9       YOUR HONOR, WITH REGARD TO THE THREE FIRMS, FIRST OF ALL,

10       I REGARD MR. COTCHETT AS A PERSONAL FRIEND, BUT MORE THAN

11       THAT, WHEN I WAS CITY ATTORNEY AND LATER GENERAL COUNSEL FOR

12       THE SAN FRANCISCO UNIFIED SCHOOL DISTRICT, THE COTCHETT FIRM

13       WERE (SIC) THE FIRM THAT I HIRED TO DO SOME EXCELLENT WORK.

14       WE WORKED COLLABORATIVELY.  THEY DID AN EXCELLENT JOB.

15       EVEN NOW OUR FIRM IS WORKING TOGETHER WITH THE COTCHETT

16       FIRM IN SOME CASES IN STATE COURT.

17       WITH REGARD TO LIEFF, CABRASER, WHEN I WAS CITY ATTORNEY,

18       THE LIEFF FIRM WAS ONE OF TWO THAT I HIRED TO REPRESENT NOT

19       ONLY SAN FRANCISCO BUT HALF OF THE CITIES IN THE STATE IN THE

20       TOBACCO CASES, AND THAT RESULT WAS THAT CALIFORNIA CITIES AND

21       COUNTIES NOW ARE STILL RECEIVING TOBACCO MONEY.

22       I HAVE THE GREATEST RESPECT FOR ELIZABETH CABRASER, AND

23       RICHARD HEIMANN I KNOW TO BE AN EXCELLENT LAWYER.

24       WITH REGARD TO THE HAGENS BERMAN FIRM, I HAVE WORKED MOST

25       PARTICULARLY WITH JEFF FRIEDMAN.  I KNOW HIS FAMILY.  THEY ARE
```

1    PERSONAL FRIENDS OF OUR FAMILY.  I KNOW JEFF'S WORK TO BE

2    EXCELLENT.  AS A MATTER OF FACT, WHEN I FIRST WENT INTO

3    PRIVATE PRACTICE WITH ONE OTHER PERSON, JEFF WAS OUR

4    ASSOCIATE.

5        SO I KNOW -- I THINK YOU WERE ASSOCIATE, WEREN'T YOU,

6    JEFF?  I THINK SO.

7            **MR. FRIEDMAN:**  CLOSE ENOUGH.

8            **MS. RENNE:**  IN SHORT, YOUR HONOR, I KNOW ALL THREE OF

9    THESE LAWYERS' FIRMS.  THEY -- I KNOW THEM PERSONALLY,

10   PROFESSIONALLY.  THEY ARE ALL TERRIFIC LAWYERS AND I THINK

11   WOULD SERVE THE CLASS WELL.

12       I AM HERE PARTICULARLY, NOT ONLY BECAUSE OF SOME PRIVATE

13   CLIENTS BUT BECAUSE WE HAVE THE COMMUNITY COLLEGES, WHICH YOU

14   KNOW ARE IN DIRE STRAITS, BUT MANY OTHER PUBLIC AGENCIES THAT

15   HAVE PURCHASED PRODUCTS AND I THINK WILL BE PARTIES TO THIS

16   LAWSUIT YET AS THE VARIOUS PROCESSES WIND THROUGH.

17       THAT SAID, IF YOUR HONOR WERE TO APPOINT ALL THREE OF

18   THESE LAW FIRMS, I HAVE NO DOUBT THAT THEY WOULD WORK

19   HARMONIOUSLY.  AND I THINK IF THEY DIDN'T, THERE ARE OTHERS OF

20   US WHO WOULD SPEAK UP AND SAY FOR THE GOOD OF THE CLASS, LET'S

21   ALL GET ALONG.

22       BUT THEY ARE ALL PROFESSIONAL.  AND, YOUR HONOR, I KNOW

23   THAT THEY WOULD DO THE BEST POSSIBLE JOB.  I -- I WORKED WITH

24   ALL OF THESE FOLKS OVER THE YEARS, AND THEY'RE THE BEST.

25           **THE COURT:**  THANK YOU, MS. RENNE.

1          **THE CLERK:**  COUNSEL FOR GENE POWERS.

2          **MS. SWEENEY:**  GOOD AFTERNOON, YOUR HONOR.  BONNY

3     SWEENEY FROM ROBBINS, GELLER, RUDMAN & DOWD.

4          AND I SUPPORT THE HAGENS BERMAN STRUCTURE THAT'S BEEN

5     PROPOSED.  THE HAGENS BERMAN FIRM DID ALL OF THE RESEARCH AND

6     INVESTIGATION THAT LED TO THE FILING OF THE FIRST COMPLAINT.

7     IT'S NOT JUST A MATTER OF DRAFTING THE COMPLAINT.  BUT THE

8     FIRM HAS SHOWN ALREADY A COMMITMENT TO THE CASE AND TO THE

9     CLASS BY DOING ALL OF THE WORK THAT THE OTHER FIRMS HAVE USED

10    IN THEIR OWN COMPLAINTS.

11         THE STRUCTURE THAT'S PROPOSED IS A VERY EFFICIENT ONE.  I

12    THINK THERE ARE A NUMBER OF FINE LAWYERS, FINE FIRMS,

13    THROUGHOUT THIS COURTROOM, BUT IF -- IF YOU HAVE TOO MANY

14    FIRMS, IT WILL NOT BE EFFICIENT, SO I RECOMMEND ADOPTING THE

15    EFFICIENT STRUCTURE PROPOSED BY MR. BERMAN.

16         AND, LASTLY, YOUR HONOR, I HAVEN'T SEEN ANY EVIDENCE OF

17    ANY ACRIMONY AMONG ANY OF THE FIRMS.

18         **THE COURT:**  THANK YOU.

19         OKAY.  FOUR MORE, I THINK.  LET'S MOVE THROUGH THEM.  THE

20    NEXT ONE, THERE'S SO MANY.  LET'S JUST SAY, MR. -- IS

21    MR. BURKE HERE OF SCOTT & SCOTT?

22         **THE CLERK:**  WE SKIPPED ONE.

23         **THE COURT:**  AH.

24         **THE CLERK:**  OKAY.  COUNSEL FOR KCN -- COUNSEL FOR KCN

25    SERVICES.

```
 1              THE COURT:  SCHNEIDER?

 2              MR. SCHNEIDER:  I'M SORRY.  THAT'S MR. SCHNEIDER,

 3    YOUR HONOR.  GOOD AFTERNOON.

 4         SO, YOUR HONOR, WE IN OUR PAPERS HAVE SUPPORTED THE LIEFF

 5    FIRM AND THE COTCHETT FIRM, AND I'VE DONE WORK WITH THE

 6    COTCHETT FIRM AND THE LIEFF FIRM THROUGHOUT THE YEARS, AND

 7    THEY'RE EXCELLENT LAWYERS.  WE'VE ALSO WORKED IN THE PAST WITH

 8    THE BERMAN FIRM, AND MR. BERMAN'S FIRM IS ALSO EXCELLENT

 9    LAWYERS.

10         I HAVE BEEN AND AM CURRENTLY LEAD COUNSEL IN AN ANTITRUST

11    MDL OUT OF OKLAHOMA, THE CABLE SET-TOP BOX MDL.  JUDGE

12    CAUTHRON THERE APPOINTED A THREE CO-LEAD STRUCTURE, AND IT HAS

13    WORKED WELL.

14         I THINK THERE IS SOME EFFICIENCY IN HAVING LOCAL FIRMS IN

15    THE LEAD.  AND THAT'S WHY WE HAVE SUPPORTED THE COTCHETT AND

16    THE LIEFF FIRMS, BUT THE COURT CAN'T GO WRONG WITH --

17    REGARDLESS OF THE DECISION IT MAKES IN THIS CASE.

18              THE COURT:  THANKS MR. SCHNEIDER.

19         OKAY.  NOW MR. BURKE.

20              MR. BURKE:  CERTAINLY.  CHRIS BURKE OF SCOTT & SCOTT,

21    AND I'M HERE WITH MY PARTNER WALTER NOSS.  WE PUT TOGETHER A

22    GROUP OF 11 FIRMS REPRESENTING 27 PLAINTIFFS FROM 21 DIFFERENT

23    STATES IN PUERTO RICO, AND WE SUPPORTED LIEFF AND COTCHETT

24    BECAUSE THEY BEEN INCLUSIVE.  AND, FRANKLY, IN TRYING TO PUT

25    TOGETHER PRIVATE ORDERING, MY FIRM IN PARTICULAR STEPPED BACK
```

```
1    FROM LIEFF IN DEFENSE TO MR. COTCHETT AND THE LIEFF FIRM.

2        WE DID PUT FORTH AN APPLICATION FOR THE PSC.  OUR

3    PREFERENCE IS A TWO-FIRM LEADERSHIP AND A PSC UNDERNEATH THAT.

4        WE ALSO HAVE GREAT RESPECT FOR THE BERMAN FIRM, AND IF THE

5    COURT WAS TO APPOINT THREE, WE WOULDN'T HAVE A GREAT OBJECTION

6    TO THAT, THOUGH WE DO BELIEVE LIEFF AND COTCHETT IS THE BETTER

7    CHOICE.  THANK YOU.

8            THE COURT:  THANK YOU.

9            THE CLERK:  COUNSEL FOR JOSEPH O'DANIEL.

10           THE COURT:  NEXT?

11           THE CLERK:  GREGORY FORNEY?  NO.

12                (OFF-THE-RECORD DISCUSSION.)

13           MR. FORNEY:  GREG FORNEY.  WE SPOKE ON THE ISSUE

14   EARLIER FOR BOTH OF US.

15           THE COURT:  YOU'RE LISTED AGAIN.

16           MR. FORNEY:  OH, SORRY.

17           THE COURT:  NEXT.  THANK YOU, MR. FORNEY.

18           MR. FORNEY:  SURE.

19           THE CLERK:  OKAY.  COUNSEL FOR PHAM, CALKINS, ET AL.

20           MR. BATTIN:  GOOD AFTERNOON, YOUR HONOR.  TIM BATTIN

21   OF STRAUSS & BOIES.

22       AND, YOUR HONOR, WE ARE ALSO PETITIONER FOR THE

23   PLAINTIFFS' STEERING COMMITTEE, AND I'D LOVE TO SPEND MY TIME

24   ADVANCING MY FIRM'S CANDIDACY --

25           THE COURT:  I'M NOT REALLY ACCEPTING ARGUMENT ON THE
```

1    ISSUE RIGHT NOW.

2         YOU HAVE ANYTHING TO ADD ON THE LEAD INTERIM?

3              **MR. BATTIN:**  YES.  I WAS GOING TO DEFER THAT ANYWAY,

4    YOUR HONOR.

5              **THE COURT:**  OKAY.

6              **MR. BATTIN:**  IN TERMS OF THE STRUCTURE, YOUR HONOR,

7    WE HAD PROPOSED A TWO CO-LEAD STRUCTURE.  WE SPECIFICALLY

8    THOUGHT THAT THE BERMAN FIRM FOR ALL THE WORK THEY HAD DONE IN

9    DEVELOPING THE CASE DESERVED TO BE ON THAT STRUCTURE, BUT AT

10   THE SAME TIME, YOUR HONOR, I THINK WHAT THE COURT HAS BEFORE

11   IT IS AN EMBARRASSMENT OF RICHES.  THEY'RE VERY FINE FIRMS.

12        THE LIEFF FIRM HAS RECENTLY TRIED TO SUCCESSFUL VERDICT A

13   CASE IN A RELATED TECHNOLOGY, PRODUCT AREA.  AND SO I THINK

14   THAT THE COTCHETT FIRM IS A MAGNIFICENT FIRM.  WE'VE DONE WORK

15   WITH ALL OF THESE FIRMS, YOUR HONOR.

16        AND YOUR HONOR HAD ASKED EARLIER IF -- THE VARIOUS

17   RELATIONSHIPS WITH THE FIRMS, WE'VE HAD A -- VERY SUCCESSFUL

18   CO-COUNSEL RELATIONSHIPS WITH ALL THE FIRMS.  AND WE DON'T

19   THINK THE COURT CAN GO WRONG.

20        SO WITH THAT IN MIND, GIVEN THE -- THESE CIRCUMSTANCES,

21   AND DEALING WITH THIS -- THIS SUGGESTION OF ANIMUS BETWEEN THE

22   FIRMS, WE WOULD SAY THAT THAT IS EASILY SURMOUNTABLE.  AND SO

23   EITHER TWO OR THREE WITH THE HAGENS FIRM AS PART OF THAT

24   STRUCTURE AND CERTAINLY THE LIEFF FIRM AS WELL, YOUR HONOR.

25              **THE COURT:**  OKAY.  THANK YOU.

 1          **THE CLERK:**  COUNSEL FOR ANNA JAWOR.  J-A-W-O-R.

 2          **MR. SKLAVER:**  GOOD AFTERNOON, YOUR HONOR.  STEVEN

 3     SKLAVER OF SUSMAN GODFREY.  WITH ME IS -- ALSO OF SUSMAN

 4     GODFREY.  I COME TO COURT WITH A BLACK EYE AND BRUISED NOSE

 5     AND NOT BECAUSE OF UNCIVILITY AMONGST COUNSEL SO I APOLOGIZE.

 6     A BASKETBALL GAME GONE AWRY.

 7          WE SUPPORT A THREE-STRUCTURE -- A THREE-LEAD STRUCTURE.

 8     SUSMAN GODFREY HAS APPLIED JUST TO BE ON THE PLAINTIFFS'

 9     STEERING COMMITTEE.  AND ALL THREE FIRMS WHO HAVE APPLIED WHO

10     ARE IN THE RUNNING FOR LEAD, WE STRONGLY SUPPORT.

11          YOU ASKED IF THERE'S A STRENGTH TO CONSIDER.  WE DO ASK

12     THE COURT TO CONSIDER AS WELL AS THE PLAINTIFFS' STEERING

13     COMMITTEE THE ABILITY TO TRY A CASE AT THE END OF THE DAY, NOT

14     JUST ORGANIZE AND RUN A CASE, SINCE THAT ULTIMATELY IS THE END

15     GAME THAT CAN MAXIMIZE VALUE TO THE CLASS.

16          AND THERE'S A QUESTION ABOUT WHETHER THERE'S TOO MUCH

17     ACRIMONY.  WE DON'T BELIEVE SO.  WE HAVE WORKED WITH ALL THREE

18     FIRMS -- IN FACT, ALL THREE FIRMS IN THE TOYOTA CASE, THE

19     SUDDEN UNINTENDED ACCELERATION CASE BY JUDGE SELNA.  JUDGE

20     SELNA IN CENTRAL DISTRICT SUA SPONTE APPOINTED HAGENS BERMAN

21     AND LIEFF, CABRASER AS INTERIM CO-LEAD COUNSEL BEFORE

22     APPLICATIONS CAME IN.  THEN THE COTCHETT FIRM WAS APPOINTED

23     ALSO A CO-LEAD.  AND WE'VE ALL WORKED TOGETHER, I THINK,

24     WONDERFULLY IN THAT CASE.  AND I THINK THE CLASS WILL BENEFIT

25     WITH A THREE-LEAD STRUCTURE WITH THOSE THREE FIRMS.

1      **THE COURT:**  OKAY.  THANK YOU, MR. SKLAVER.

2      AND LAST WE HAD A SIGN-IN.

3      **THE CLERK:**  FOR TOZER.

4      **MR. ALIOTO:**  YES.  THANK YOU, YOUR HONOR.  MARIO

5   ALIOTO ON BEHALF OF TOZER.

6      I'VE FILED ON BEHALF OF MY FIRM ALSO A MOTION TO BE

7   APPOINTED TO A STEERING COMMITTEE, BUT TO ADDRESS YOUR HONOR'S

8   QUESTION, WE HAVE WORKED CLOSELY WITH THE LIEFF FIRM AND THE

9   COTCHETT FIRM IN THE PAST.  THEY HAVE PROVEN TRACK RECORDS.

10  THEY'RE PROVEN LEADERS.  WE WOULD SUPPORT THEM TO BE IN LEAD

11  POSITIONS.

12     MOST RECENTLY, WE WORKED WITH THE HAGENS BERMAN OFFICE.

13  AND TO BE QUITE CANDID WITH YOU, YOUR HONOR, BASED ON MY

14  EXPERIENCE IN LEADING ONE OF THESE CASES, I COULD SAY THAT A

15  THREE-WAY STRUCTURE WOULD ALSO WORK.  I'M SURE THAT ONCE YOUR

16  HONOR MAKES A SELECTION, EVERYONE WILL PUT THEIR HEADS DOWN,

17  PROSECUTE THE CASE, AND WORK TOGETHER, SO --

18     THANK YOU, YOUR HONOR.

19     **THE COURT:**  THANK YOU, MR. ALIOTO.

20     OKAY.  WITH RESPECT TO THE APPLICANTS, I'VE NOW HEARD LOTS

21  OF ACCOLADES.  SO YOU DON'T HAVE TO RECITE FOR ME YOUR

22  ACCOLADES.

23     I WAS ADVISED WHEN JUDGE BREYER TOLD ME THAT I HAD TO TAKE

24  THIS CASE BECAUSE IT WOULD EXPOSE ME TO THE BEST LAWYERS IN

25  THE COUNTRY, I BELIEVE HIM.  SO -- AND I'VE CALLED MY

```
 1    COLLEAGUES.  I KNOW MS. CABRASER FROM OUR WORK WITH THE

 2    AMERICAN LAW INSTITUTE.  I HAVE HEARD OF -- OF YOUR WORK IN

 3    THE OTHER COURT ROOMS.

 4         SO WHAT I WOULD LIKE EACH OF YOU TO DO, THEN, IS GIVE ME

 5    YOUR OPINION ON THE TWO VERSUS THREE STRUCTURE OR PERHAPS ONE

 6    IN LIGHT OF EVERYTHING THAT YOU'VE HEARD FROM ALL OF YOUR

 7    COLLEAGUES AROUND THE COUNTRY, WE'LL START WITH HAGENS.

 8              MR. BERMAN:  THANK YOU, YOUR HONOR.  STEVE BERMAN,

 9    HAGENS BERMAN.

10              THE COURT:  HAGENS.  I'M SORRY.  I'VE HEARD IT

11    MULTIPLE DIFFERENT WAYS NOW.

12              MR. BERMAN:  SO HAVE I OVER THE YEARS.

13         YOU KNOW, WHAT I'VE HEARD HAS NOT GONE ON DEAF EARS, AND I

14    THINK WHAT I'M HEARING IS MY COLLEAGUES BY AND LARGE ARE

15    ASKING ME TO RECONSIDER MY POSITION AND TO JOIN A THREE-PERSON

16    COMMITTEE.  AND I'VE HEARD IT FROM THE DIRECTS, ALL THE

17    REASONS WHY THAT MAKES SENSE, AND I THINK PERHAPS THERE SHOULD

18    BE SOME PARITY IN THE SAME STRUCTURE AT OUR SIDE, SO WE HAVE

19    THREE AND THREE.  I SEE THAT THERE ARE BENEFITS TO THAT.

20         WE CAN GET ALONG.  AS I THINK -- I'VE SWAYED SOMEWHAT BY

21    THE SUSMAN GODFREY LAWYER REMINDING US THAT MS. CABRASER AND

22    MR. COTCHETT AND I -- WE ALL DID A GREAT JOB IN TOYOTA.  WE

23    WORKED TOGETHER, WAS A VERY TOUGH CASE.  WE WERE EFFICIENT.

24         WE ADOPTED THE GUIDELINES THAT MR. SIMON AND I PUT IN

25    PLACE IN THE INDIRECT -- CASE TO PREVENT ABUSE.  SO IT'S A
```

```
1    TOUGH THING BECAUSE I THINK IN MY HEART OF HEARTS, I DO AGREE
2    WITH MY ORIGINAL PROPOSAL.  I DO THINK IT'S MORE EFFICIENT TO
3    HAVE ONE PERSON STEERING AND HAVE PEOPLE WORKING WITH THEM
4    THAN TO HAVE THREE.  BUT I ALSO THINK IT'S IMPORTANT IN A CASE
5    TO GO WITH CONSENSUS, SO I WOULD -- I KNOW THE BRANCH CAME OUT
6    TO ME.  I DIDN'T TAKE IT.  I PROBABLY SHOULD HAVE.
7         AND PART OF IT WAS STUBBORNNESS.  I ADMIT IT.  I STARTED
8    THE CASE.  AND IT WAS DIFFICULT FOR ME HAVING HIRED THE
9    ECONOMIST, STEPPED OUT -- OFF THE DIVING BOARD TO SAY TO THE
10   COTCHETT AND CABRASER FIRM, WELL, WHY YOU AND WHY NOT ALL
11   THESE OTHER FIRMS?  I MEAN, 'CAUSE THEY -- ALL THE OTHER
12   FIRMS, THE COHEN FIRM, THE ROBBINS GELLER FIRM, MANY OF THE
13   FIRMS, THEY DID THE EXACT THINGS THESE -- THEY FILED A CASE.
14   I COULDN'T FIND A PRINCIPLED WAY TO SAY, OKAY, I CAN ACCEPT
15   YOU GUYS BUT NO ONE ELSE.
16        BUT NOW I'VE HEARD A LOT TODAY, AND IT SEEMS TO BE THE
17   CONSENSUS -- NOT EVERYONE.  AND IF THE COURT IS WILLING TO GO
18   TO THREE, WE'RE WILLING TO DO IT AND WORK LIKE WE DID IN
19   TOYOTA.  IF THE COURT GOES TO TWO, WHICH I DON'T THINK YOU
20   SHOULD DO BECAUSE THESE ARE BOTH FINE FIRMS, AND I DON'T KNOW
21   HOW YOU CHOOSE BETWEEN THESE TWO --
22            THE COURT:  KEEP YOUR MIC CLOSE TO YOUR MOUTH.
23            MR. BERMAN:  I DON'T KNOW HOW YOU CHOOSE BETWEEN THE
24   TWO, BUT IF THE COURT DID GO TO TWO, I THINK IT SHOULD BE MY
25   FIRM AND ONE OTHER FIRM.  AND THE REASON IT SHOULD BE MY FIRM
```

1    IS THE FACT WE DID START THE CASE.  AND EVERY LAWYER ON THIS

2    SIDE OF THE "V" OWES THEIR PRESENCE HERE TODAY TO US.  THAT'S

3    A HARD THING TO DO, TO START AN ANTITRUST CASE.  YOU HAVE TO

4    HIRE AN ECONOMIST.  YOU HAVE TO ANALYZE DATA.  WE SPENT A

5    HUNDRED THOUSAND DOLLARS, AND YOU HAVE NO IDEA IF YOU'RE EVEN

6    GOING TO FILE A CASE.

7         AND FOR THAT REASON, IF YOU EXCLUDED US IN (SIC) YOUR

8    STRUCTURE, I THINK THAT WOULD BE DOING A DISSERVICE FOR FUTURE

9    CASES.

10         AND FOR THAT REASON IN BOTH THE EBOOKS CASE AND THE HOTEL

11    CASE, WHICH WE DID THE SAME THING, SAME ARGUMENT, THE COURT

12    WOUND UP APPOINTING US.  SO, AGAIN, I'M BACKING OFF MY

13    POSITION -- MY ORIGINAL POSITION.  I WOULD SUPPORT A THREE

14    WAY --

15              THE COURT:  THANK YOU.

16         MS. CABRASER.

17              MS. CABRASER:  THANK YOU, YOUR HONOR.  ELIZABETH

18    CABRASER FOR LIEFF, CABRASER, HEIMANN & BERNSTEIN.  AND I'M

19    HERE TODAY WITH MY PARTNERS, RICHARD HEIMANN; ERIC FASTIFF,

20    WHO HEADS OUR ANTITRUST DEPARTMENT; JOY KRUSE, BRENDAN

21    GLACKIN.  IT'S AN HONOR TO BE HERE.

22         I LISTENED VERY CAREFULLY TO WHAT MY COLLEAGUE STEVE

23    BERMAN HAS HAD TO SAY, AND WHAT HE SAYS MAKES A TREMENDOUS

24    AMOUNT OF SENSE.  AND WHAT THE DIRECT PURCHASERS SAID THIS

25    AFTERNOON MAKES A TREMENDOUS AMOUNT OF SENSE GIVEN THE

1   REALITIES OF THIS CASE.

2       WE HAVE 27 STATES TO REPRESENT ON THE INDIRECT PURCHASER

3   SIDE.  THERE ARE, DEPENDING ON HOW YOU COUNT THEM FIVE, SIX OR

4   SEVEN GROUPS OF DEFENDANTS.  THESE ARE THE BEST DEFENSE FIRMS

5   IN THE ANTITRUST FIELD IN THE COUNTRY.  AND WE NEED THE

6   RESOURCES THAT A MULTIPLE-LEAD STRUCTURE BRINGS TO BEAR.

7       WE DID ALMOST REACH CONSENSUS.  I KNOW THE THREE FIRMS CAN

8   AND WILL WORK TOGETHER BECAUSE WE HAVE DONE IT, WE ARE DOING

9   IT RIGHT NOW IN OTHER CASES, AND MOST OF ALL, BECAUSE LOUISE

10  RENNE SAYS WE WILL.  AND I COULD NEVER APPEAR IN A COURTROOM

11  IN THIS DISTRICT AGAIN.

12       **THE COURT:**  SHE'S ONE OF THE FEW PEOPLE I CAN NEVER

13  SAY NO TO, I TELL YOU.

14       **MS. CABRASER:**  NOR CAN WE.

15      WITH RESPECT TO THE INVESTMENT OF TIME AND EFFORT THAT

16  HAGENS BERMAN MADE IN PREPARING THIS CASE, WE HAVE THE

17  GREATEST RESPECT FOR THAT.  WE RESPECT THAT BECAUSE WE RESPECT

18  OUR INVESTIGATION AS WELL, HAVE PAID THE BILLS FOR OUR

19  ACCOUNTANT, AND I'VE LOOKED AT THE COMPLAINTS.  AND THAT'S

20  SHOWN ME SOMETHING VERY IMPORTANT.

21      A TREMENDOUS AMOUNT OF THOUGHT AND WORK AND ANALYSIS AND

22  RESEARCH WENT INTO THE FILING OF HAGENS BERMAN COMPLAINT.

23  IT'S NOT A CLONE COMPLAINT.  OUR COMPLAINT HAS A DIFFERENT

24  PERSPECTIVE.  WE DID SOMEWHAT DIFFERENT RESEARCH.  MULTIPLE

25  HEADS ARE BETTER THAN ONE, AND THROUGH OUR -- THROUGH OUR

1  CONVERSATIONS, WHICH WILL REMAIN PRIVILEGED, WITH THE COTCHETT

2  FIRM, WE KNOW THAT THERE ARE INSIGHTS INTO THIS CASE, THE

3  PROSECUTION OF THE CASE FOR A NATIONWIDE INJUNCTIVE CLASS AS

4  WELL AS STATE-WIDE CLASS THAT WOULD BENEFIT GREATLY AND WOULD

5  BE THE POORER IF WE DID NOT HAVE THE COTCHETT FIRM INVOLVED,

6  IF WE DID NOT HAVE MY FIRM, IF I CAN BE SO BOLD TO SAY SO, AND

7  IF WE DID NOT HAVE THE HAGENS BERMAN FIRM AS WELL.

8      WE LOOK FORWARD TO A TRIAL OF THIS CASE IF IT CANNOT BE

9  SETTLED FOR A FAIR, REASONABLE AND ADEQUATE AMOUNT.  FOR THAT

10  REASON, WE THINK THAT OUR SECRET WEAPON, RICHARD HEIMANN, THE

11  BEST BUSINESS AND FINANCIAL TRIAL LAWYER I'VE EVER SEEN IN

12  ACTION BRINGS SOMETHING POSITIVE TO THE LITIGATION.

13      THE HAGENS BERMAN FIRM WORKS EFFICIENTLY.  I'VE SEEN THAT

14  IN ACTION.  I THINK THEY CAN BRING THAT MINDSET TO A MULTIPLE

15  CO-LEAD STRUCTURE.  AND I THINK WE CAN BE AS EFFICIENT AS

16  NECESSARY, WHILE HAVING SUFFICIENT RESOURCES TO PROSECUTE AND

17  PROTECT THE INTERESTS OF THE INDIRECT PURCHASER CLASS, GIVEN

18  THE FORMIDABLE ARRAY OF COUNSEL WE FACE ON THE OTHER SIDE.

19      THANK YOU.

20          **THE COURT:**  THANK YOU, MS. CABRASER.

21          **MR. WILLIAMS:**  YOUR HONOR, STEVE WILLIAMS, COTCHETT,

22  PITRE & MCCARTHY WITH JOSEPH COTCHETT, JOANA LICALSI, AND

23  NANCY FINEMAN, WHO WOULD BE HERE.  SHE WAS ORDERED TO BE IN

24  SANTA CLARA TODAY, BUT IS PART OF OUR TEAM ON THIS CASE AS

25  WELL.

1       AND I WANT TO COMPLIMENT MR. BERMAN FOR REACHING OUT TO

2    THE OLIVE BRANCH.  WE DID OFFER IT.  AND WE STILL THINK THAT

3    THE THREE-FIRM PROPOSAL MAKES THE MOST SENSE.  WE'VE DONE IT

4    AS ONE-FIRM LEAD AND A TWO AND A THREE.  AND THIS CASE, THREE

5    MAKES THE MOST SENSE GIVEN THE SIZE OF THE CASE, THE NUMBER OF

6    DEFENSE COUNSEL, AND PARTICULARLY IN AN INDIRECT PURCHASER

7    CASE, THE FACT THAT WE HAVE CLAIMS AND PLAINTIFFS FROM AROUND

8    THE COUNTRY AND ISSUES OF PROOF THAT WILL BE DIFFERENT THAN

9    THE DIRECT PURCHASERS WILL DEAL WITH.

10      I WANT TO RESPOND TO THE QUESTION ABOUT ACRIMONY.  AND

11   THERE'S NOT.  WE'VE WORKED WITH THE HAGENS BERMAN FIRM FOR

12   YEARS.  WE WILL TOMORROW, NEXT WEEK, AND NEXT YEAR.  I HAVE NO

13   DOUBT OF THAT.  AND THEY HAVE VERY GOOD LAWYERS.  THREE MAKES

14   THE MOST SENSE HERE.

15      I DON'T WANT TO RESPOND AT LENGTH AS TO ONE OR TWO BECAUSE

16   I THINK THE CONSENSUS IN THE GROUP IS THREE, AND I THINK THAT

17   THAT MAKES THE MOST SENSE.

18      A FEW THINGS I'LL SAY AND THEN I'LL CLOSE 'CAUSE IT'S BEEN

19   A LONG DAY IN TERMS OF THIS CASE.  THIS CASE REALLY GREW FROM

20   DRAM AND SRAM AND OPTICAL DISK DRIVES AND LCD AND CRT, AND WE

21   ALL WORKED ON THOSE CASES, AND WE'RE FAMILIAR WITH THEM, AND

22   THAT'S WHY THIS GROUP IS THE BEST TO GO FORWARD IN THESE

23   CASES.

24      WHAT THE LIEFF FIRM AND OUR FIRM, I THINK, OFFER, WHICH IS

25   UNIQUE, IS TRYING CASES AND TRYING CLASS CASES.  MR. HEIMANN

```
1    TRIED THE LCD CASE ACROSS THE BAY LAST YEAR.  OUR FIRM

2    SUCCESSFULLY TRIED TWO CLASS ACTION CASES IN THE LAST TWO

3    YEARS, INCLUDING MS. FINEMAN IN THE PSLRA CASE IN LOS ANGELES.

4    SO WE THINK IT'S CLEAR FROM THOSE IN THE COURTROOM WHAT THEY

5    SAID TO YOU THAT THE THREE-WAY STRUCTURE IS THE BEST STRUCTURE

6    FOR THE LEADERSHIP OF THE CASE.

7         THANK YOU.

8              THE COURT:  THANK YOU.

9                   (OFF-THE-RECORD DISCUSSION.)

10             THE COURT:  I ALWAYS TELL MY JURORS THAT PERIODICALLY

11   I DO HAVE TO TAKE A BREAK BECAUSE THE ONLY PERSON WHO WORKS

12   NON-STOP IN THIS COURTROOM IS THAT COURT REPORTER.  AND I AM

13   COGNIZANT THAT SHE IS GOING WHEN ALL OF US ARE SITTING AROUND

14   LISTENING TO EVERYBODY ELSE.

15        WELL, I'VE LISTENED TENTATIVELY BECAUSE EXCEPT FOR ONE

16   ATTORNEY IN THE COURTROOM, EVERYONE ELSE KNEW I'VE NEVER HAD

17   TO APPOINT SUCH A BIG GROUP IN A BIG ANTITRUST MDL CASE.  BUT

18   I DO THINK IT IS IMPORTANT TO ME AND TO THE CLASS TO HAVE

19   CONSENSUS.  AND AS I SAID WHEN I STARTED TALKING PRIMARILY TO

20   THE PLAINTIFFS' LAWYERS IN THE COURTROOM, I'M GOING TO BE HERE

21   FOR A LONG TIME.  I'M NOT GOING ANYWHERE.  SO IF THIS DOESN'T

22   WORK, YOU WILL ALL ANSWER TO ME THE NEXT TIME AROUND.  AND I

23   WILL KNOW BETTER.

24        I TELL DEFENDANTS THAT, TOO, WHEN THEY COME OUT OF

25   CUSTODY.  THEY GET TO SEE ME IN TERMS OF THEIR PROBATION, AND
```

1    IF THEY DON'T STAY ON THE STRAIGHT AND NARROW, THEY GET TO GO

2    RIGHT BACK IN.

3        NOW, OBVIOUSLY, THAT DOESN'T APPLY, BUT WE'RE GOING TO BE

4    WORKING TOGETHER FOR A LONG TIME.  SO I DO DEMAND AND EXPECT

5    PROFESSIONALISM AND EFFICIENCY AND COOPERATION.

6        ACCORDINGLY, PURSUANT TO RULE 23(G)(1), I WILL APPOINT

7    INTERIM LEAD COUNSEL FOR THE DIRECT PURCHASERS, THE THREE

8    FIRMS THAT WERE RECOMMENDED, BRUCE SIMON OF PEARSON SIMON;

9    RICK SAVERI OF SAVERI & SAVERI; AND JOSEPH TABACCO OF BERMAN

10   DEVALERIO.

11       NOT HAVING HEARD ANY OBJECTION AND NOT GOING TO ASK FOR

12   IT, JUDITH ZAHID OF ZELLE HOFFMAN TO BE LIAISON COUNSEL.

13       SIMILARLY, I WILL APPOINT INTERIM LEAD COUNSEL FOR THE

14   INDIRECT PURCHASER PLAINTIFFS THE THREE FIRMS, STEVE BERMAN OF

15   THE HAGENS FIRM; THE LIEFF, CABRASER FIRM; AND THE COTCHETT

16   FIRM.

17       NOW, WITH RESPECT TO THE -- OH, AND I DO WANT LIAISON

18   COUNSEL AS WELL.  AND THAT WAS RECOMMENDED TO BE --

19       **MS. ANDERSON:**  JENNIE ANDERSON OF ANDRUS ANDERSON.  I

20   BELIEVE MY APPLICATION IS UNOPPOSED.

21       **THE COURT:**  SO YOU ARE APPOINTED AS WELL.

22       **MS. ANDERSON:**  THANK YOU, YOUR HONOR.

23       **THE COURT:**  WITH RESPECT TO THE UNDERLYING STRUCTURE,

24   I UNDERSTAND THE DIRECT PURCHASERS ARE SUGGESTING NO FORMAL

25   UNDERLYING STRUCTURE.  WHAT IS THE POSITION OF THE INDIRECT

1    PURCHASER GROUPS, MS. CABRASER?

2              **MS. CABRASER:**  YOUR HONOR, ELIZABETH CABRASER.

3         OUR SUGGESTION HAD BEEN THAT THE APPOINTED INTERIM

4    CO-LEADS RECOMMEND TO THE COURT A FORMAL PLAINTIFFS' STEERING

5    COMMITTEE FOR ITS CONSIDERATION AND APPROVAL.  IF YOUR HONOR

6    WOULD PREFER AN INFORMAL STRUCTURE, I DON'T THINK ANY OF US

7    WOULD HAVE AN OBJECTION TO THAT.

8              **THE COURT:**  WHY DO YOU THINK THAT'S BETTER THAN

9    INFORMAL STRUCTURE THAT'S BEING RECOMMENDED BY THE DIRECT

10   PURCHASER GROUP?

11             **MS. CABRASER:**  YOUR HONOR, THIS MAY BE A PERSONAL

12   VIEW, AND IT MAY SIMPLY BE FORMALISM, BUT IT'S BEEN MY

13   EXPERIENCE THAT A FORMALLY APPOINTED PLAINTIFFS' STEERING

14   COMMITTEE HAS ACCOUNTABILITY.  THE COURT KNOWS WHO THEY ARE.

15   EVERYONE KNOWS WHO THEY ARE.  THEY'RE SUBJECT TO TIME-KEEPING

16   CONSTRAINTS.  IT -- IT CAN FREE THE FLOW OF INFORMATION AND

17   COMMUNICATION.

18        THAT SAID, WE KNOW THAT -- THAT COURTS IN ANTITRUST CASES

19   IN THIS DISTRICT HAVE -- HAVE GONE THE INFORMAL ROUTE.

20   IT'S -- IT'S A MILD PREFERENCE, BUT I -- I'VE NEVER SEEN IT

21   NOT WORK WELL, AND WE WOULD CERTAINLY CONSIDER A SIZE LARGE

22   ENOUGH TO BE FUNCTIONAL AND EFFICIENT BUT NO TOO LARGE TO BE

23   CUMBERSOME OR DUPLICATIVE.  I DON'T HAVE A MAGIC NUMBER IN

24   MIND.

25             **THE CLERK:**  CAN I ASK WHERE THE MICROPHONE IS?

```
1              (OFF-THE-RECORD DISCUSSION.)

2          THE CLERK:  YOU DON'T HAVE TO REPEAT.

3          THE COURT:  MR. BERMAN, DO YOU WANT TO WEIGH IN ON

4    THAT?

5          MR. BERMAN:  I KNOW WE'RE SUPPOSED TO REACH

6    CONSENSUS, BUT I HAVE A SLIGHTLY DIFFERENT VIEWPOINT.  YOU

7    COULD GO EITHER WAY AS MS. CABRASER POINTED OUT.  I THINK I

8    PREFER MR. SIMON'S INFORMAL APPROACH BECAUSE I'M FEARFUL THAT

9    IF WE GO AND SELECT A COMMITTEE, THERE ARE MANY FIRMS OUT

10   THERE.  WE MAY NOT REACH A CONSENSUS ON THAT.  AND THEN YOU'RE

11   GOING TO BE BACK WITH ANOTHER GROUP OF DISAPPOINTED LAW FIRMS

12   BRINGING ANOTHER MOTION TO GET ON THAT COMMITTEE.  SO I DON'T

13   THINK YOU WANT TO DO THIS AGAIN.  SO I WOULD PREFER INFORMAL.

14         THE COURT:  MR. WILLIAMS?

15         MR. WILLIAMS:  YES, YOUR HONOR.  WE AGREE WITH

16   MR. BERMAN.  WE THINK THAT THE THREE OF US PERHAPS TAKE A

17   WEEK, LOOK AT IT, AND THEN REPORT BACK TO THE COURT.  BUT I

18   THINK THAT IN THIS INSTANCE, IT MAKES SENSE, GIVEN THE NUMBER

19   OF FIRMS THAT ARE INVOLVED, TO GO WITH THE INFORMAL APPROACH

20   SIMILAR TO WHAT THE DIRECTS HAVE SUGGESTED.

21         THE COURT:  OKAY.  LET ME MULL ON THAT ONE.

22      THERE ARE A FEW THINGS THAT I DO WANT TO STILL DEAL WITH,

23   THOUGH.  THE SCHEDULE FROM DOCKET 102, THE COTCHETT/LIEFF,

24   CABRASER SCHEDULE, I'VE COMPARED TO DOCKET 95, THE DIRECT

25   PURCHASER SCHEDULE.  I THINK AT LEAST IN THE BEGINNING, I AM
```

1    GOING TO KEEP THESE CASES ALIGNED.  AT SOME POINT, IT MAY MAKE

2    MUCH MORE SENSE TO HAVE THEM ON THEIR OWN SEPARATE TRACKS.

3         THE APPOINTMENT AS TO LEAD COUNSEL IS NOW MADE.  SO BOTH

4    SIDES ARE OR -- AT LEAST BOTH PROFFERS, AND IT DOES LOOK LIKE

5    THIS WAS AGREED TO BY THE DEFENDANTS AT LEAST WITH RESPECT TO

6    THE DIRECT PURCHASERS.  I'M NOT GOING TO ASK FOR ARGUMENT.

7         SIXTY DAYS FOLLOWING -- SIXTY DAYS FROM TODAY, THE FILING

8    OF CONSOLIDATED AMENDED COMPLAINTS, ONE ON EACH SIDE.  SIXTY

9    DAYS THEREAFTER, THE RESPONSE BY THE DEFENDANTS.  SIXTY DAYS

10   AFTER THAT, THE OPPOSITION 'CAUSE I AM ASSUMING THAT THERE

11   WILL BE MOTIONS TO DISMISS.  AND THIRTY DAYS THEREAFTER, THE

12   REPLY.

13        NOW, HAVING SAID THAT, IN TERMS OF -- OF A SHORT SCHEDULE

14   AND UNDERSTANDING THAT THERE ARE DIFFERENT PERSPECTIVES WITH

15   RESPECT TO DISCOVERY, THAT IS, THE PLAINTIFFS WANT THERE TO BE

16   IMMEDIATE DISCOVERY, AND THE DEFENDANTS DISAGREE WITH THAT.

17        WHAT I WANT TO DO IS HAVE YOU ALL BACK SOMETIME AFTER THE

18   CONSOLIDATED AMENDED COMPLAINT IS FILED BUT BEFORE MOTIONS ARE

19   FILED FOR THIS REASON:  I UNDERSTAND THAT THERE IS A GRAND

20   JURY INVESTIGATION PENDING IN THIS DISTRICT AND THAT THOSE ARE

21   SOME OF THE DOCUMENTS THAT ARE AT ISSUE.

22        IT SEEMS TO ME THAT THIS CASE MAY BE APPROPRIATE FOR

23   SEQUENCING, AND -- IN TERMS OF THE 12(B)(6) MOTIONS.  AND BY

24   THAT, I MEAN, IT -- THERE ARE GOING TO BE A GROUP OF ISSUES

25   THAT ARE CRITICAL AND THE HEART OF THIS CASE.  ONCE I DECIDE

1    THAT SET OF CRITICAL ISSUES, WHATEVER FORM THE COMPLAINT IS IN

2    AT THAT POINT GIVEN THAT RULING, IF IT'S GOING TO GO FORWARD,

3    DISCOVERY CAN GO FORWARD.

4        THAT BEING SAID, THERE MAY BE OTHER ISSUES THAT WILL --

5    ARE NOT PRIMARY ISSUES.  BUT I WON'T KNOW UNTIL I HAVE AN

6    UNDERSTANDING OF WHERE THE DEFENDANTS ARE COMING FROM IN TERMS

7    OF THEIR 12(B)(6)'S.

8        SO WHAT I'M ENVISIONING IS A PREFILING CONFERENCE.  BEFORE

9    YOU FILE YOUR 12(B)(6) MOTIONS, I WANT TO HAVE AN OUTLINE OF

10   ALL OF THE VARIOUS ISSUES THAT YOU'RE GOING TO BRING YOUR

11   MOTIONS ON.  I WANT TO HAVE THAT OUTLINE IN A FORMAT THAT

12   SAYS -- THAT IDENTIFIES FOR ME WHERE YOU ALL AGREE, SO THERE

13   ARE GOING TO BE JOINT MOTIONS WHERE, FOR -- FOR INSTANCE, I

14   MAY BE GETTING INDIVIDUAL MOTIONS FOR INDIVIDUAL REASONS.  I

15   AM NOT GOING TO DECIDE THIS DISCOVERY ISSUE IN A VACUUM.  SO

16   I'M NOT GOING TO GO THERE TODAY.

17       BUT ONCE I HAVE THAT OUTLINE FROM YOU, THEN I CAN GET A

18   RESPONSE FROM THE PLAINTIFFS.  AGAIN, NOT FULL BRIEFING, BUT

19   JUST A SHORT OVERVIEW.  AND -- AND, FRANKLY, I THINK IT WILL

20   HELP ME.  I DO THIS IN SUMMARY JUDGMENT JUST IN REGULAR CASES

21   BECAUSE IT WILL GIVE ME AN OVERVIEW OF EVERYTHING BEFORE YOU

22   FILE ALL YOUR BOXES OF DOCUMENTS.  AND I'M ASSUMING THERE'LL

23   BE BOXES.  SO THAT'S WHAT I'M THINKING.

24       NOW, I CAN'T GIVE YOU MORE GUIDANCE THAN THAT BECAUSE I

25   DON'T KNOW WHAT THE COMPLAINT LOOKS LIKE.  I DON'T KNOW WHAT

```
1    THE RESPONSE IS GOING TO BE, BUT I DO KNOW THAT I WANT TO HAVE

2    SOME INFORMATION, SOME KIND OF OUTLINE, SOME DISCUSSION WITH

3    YOU ALL BEFORE THOSE MOTIONS GET FILED.  AND IF FOR SOME

4    REASON, YOU NEED MORE TIME BECAUSE OF A DELAY IN GETTING BACK

5    IN HERE, WHATEVER, THEN WE CAN -- WE CAN ADJUST.

6        COMMENTS?

7                 (SIMULTANEOUS COLLOQUY.)

8            THE COURT:  WE'LL START HERE.

9            MR. SIMON:  BRUCE SIMON --

10           THE COURT:  HE NEEDS THE MIC.

11                 (OFF-THE-RECORD DISCUSSION.)

12           THE COURT:  MR. FRIEDMAN, YOU CAN COME HERE TO THE

13   MIC.

14       COUNSEL, YOU CAN COME HERE TO THE MIC IF YOU WANT AS WELL,

15   IF YOU WANT TO.  THE BAR IS THE MIC.

16           MR. FRIEDMAN:  THANK YOU, YOUR HONOR.

17           MR. SIMON:  THE ONLY DATAPOINT -- WE MIGHT HAVE

18   EXHAUSTED THE MIC.  THERE WE GO (INDICATING).

19       THE ONLY DATAPOINT I WOULD GIVE YOU IS IN THIS CASE,

20   UNLIKE SOME OF THE OTHER CASES, WE UNDERSTAND THAT THE

21   DEPARTMENT OF JUSTICE IS NOT GOING TO SEEK A STAY OF THE CIVIL

22   CASES.  THEY'RE NOT HERE TODAY.  THEY CAN SPEAK FOR

23   THEMSELVES.  I CAN'T SPEAK FOR THEM, BUT THAT'S OUR

24   UNDERSTANDING.  THAT BEING THE CASE --

25           THE COURT:  HOLD ON.
```

```
 1              DO WE HAVE -- HIS MIC DOESN'T SOUND ON.

 2                      (OFF-THE-RECORD DISCUSSION.)

 3          MR. SIMON:  SO WE UNDERSTAND THAT THERE WILL NOT BE A

 4    REQUEST FOR A STAY IN THE CASE, UNLIKE MOST OF THE OTHER CASES

 5    THAT YOU'VE HEARD ABOUT TODAY.

 6          THAT BEING THE CASE, AND THERE BEING A FINITE GROUP OF

 7    DOCUMENTS THAT HAVE ALREADY BEEN PRODUCED TO THE DOJ AS PART

 8    OF THE GRAND JURY SUBPOENAS, WE THINK -- WE WOULD LIKE --

 9          THE COURT:  WHAT DO YOU MEAN BY "FINITE"?

10          MR. SIMON:  MEANING THAT THEY HAVE GATHERED THEIR

11    DOCUMENTS, PRODUCED THEM.  WE DON'T KNOW WHAT THE SUBPOENAS

12    ASKED FOR, SO WE DON'T KNOW WHAT THE NUMBER ARE, BUT THEY'VE

13    ALREADY BEEN ELECTRONICALLY BATES STAMPED.  THEY'RE PREPARED

14    AND READY TO GO OUT.  THEY JUST HAVE TO BE RE-BATES STAMPED.

15          BUT THAT GROUP OF DOCUMENTS WHICH WILL GIVE US THE CORE OF

16    THE CASE, ALLOW US TO UNDERSTAND EXACTLY WHAT YOUR HONOR'S

17    SAYING EVEN BEFORE THE COMPLAINT WAS FILED COULD BE PRODUCED

18    IN SHORT ORDER, HAS BEEN PRODUCED IN OTHER CASES.

19          SO WE WOULD ASK THE COURT TO CONSIDER DOING THAT, EVEN

20    BEFORE WE GET TO THE CONFERENCE YOU'RE SUGGESTING.

21          THE COURT:  "HAS BEEN PRODUCED IN OTHER CASES"?  OR

22    YOU MEAN THE CRIMINAL --

23          MR. SIMON:  IN THE CRIMINAL CASE AND HAS BEEN

24    PRODUCED BY DEFENDANTS IN THE OTHER ELECTRONICS CASES BECAUSE

25    IT WAS A FINITE SET OF DOCUMENTS THAT --
```

```
1          THE COURT:  I SEE.

2          MR. SIMON:  -- WAS EASILY PRODUCIBLE AS OPPOSED TO

3     GOING INTO FULL-FLEDGED DISCOVERY.

4          THE COURT:  I SEE.

5        ALL RIGHT.  I'LL HEAR FROM THE DEFENSE.

6          MR. McGINNIS:  YOUR HONOR, IT WON'T SURPRISE YOU TO

7     HEAR THAT WE'RE IN AGREEMENT WITH YOUR PROPOSAL.  ALSO THIS

8     WOULD BE THE END OF THE LOVE NOTES BETWEEN THE DEFENSE AND THE

9     PLAINTIFFS.

10         THE COURT:  I NEVER EXPECTED IT TO LAST BEYOND TODAY.

11         MR. McGINNIS:  RIGHT.  WELL, IT'S -- IT'S -- IT'S

12    OVER.

13        AND THE -- THEY DON'T HAVE ANY AUTHORITY AT ALL FOR SOME

14    SORT OF SHORTCUT PRODUCTION OF GRAND JURY MATERIALS.  THEY DID

15    CITE ONE ORDER FOR -- FOR YOU, YOUR HONOR, WHICH I HAVE HERE

16    TODAY, IF YOU'D LIKE TO LOOK AT IT.  BUT THE FACT IS THAT WAS

17    ENTERED AFTER THERE WAS A STAY, AFTER JUDGE ILLSTON REFUSED TO

18    PRODUCE GRAND JURY DOCUMENTS, AND IT WAS ENTERED BY

19    STIPULATION OF COUNSEL.  I WAS ONE OF THEM.

20        AND AS A MATTER OF FACT, THE GRAND JURY DOCUMENTS WERE

21    PRODUCED ROUGHLY TWO YEARS AFTER THE -- AFTER THE FIRST

22    COMPLAINTS WERE FILED, AND IT WAS DONE BY AN AGREEMENT OF

23    COUNSEL.  THE JUDGE -- THE JUDGE SIMPLY APPROVED A

24    RECOMMENDATION/STIPULATION.  AND IF THAT WERE NOT ENOUGH, THE

25    GRAND JURY DOCUMENTS PURSUANT TO THAT STIPULATION WERE
```

1    PRODUCED SIX MONTHS AFTER IT WAS ENTERED.  SO THIS WAS NOT A

2    DECISION -- A LITIGATED DECISION BY JUDGE ILLSTON AS TO WHAT

3    OUGHT TO HAPPEN.  THE PARTIES AGREED.

4        AND -- AND AS A MATTER OF FACT, I DO AGREE WITH ONE THING

5    MR. SIMON SAID, AND THAT IS THAT THERE -- AS FAR AS WE KNOW,

6    THE DEPARTMENT OF JUSTICE IS NOT GOING TO MAKE ANY SORT OF

7    APPEARANCE HERE.  THIS IS JUST LIKE ANY OTHER CASE BEFORE YOUR

8    HONOR.  THERE ARE -- OR CASE OF THIS NATURE.  THERE'S NO

9    REASON FOR SHORTCUTS, AND I THINK THE COURTS MEASURED APPROACH

10   MAKES EMINENT GOOD SENSE, AND THAT MAKES THE BEST PRACTICAL

11   SENSE TO US.  AND WE WILL OBLIGE THE COURT'S ORDER TO THE BEST

12   OF OUR ABILITY.

13        **MR. FRIEDMAN:**  YOUR HONOR, MAY I HAVE AN OPPORTUNITY

14   TO SPEAK BRIEFLY ON THIS?  JEFF FRIEDMAN FROM HAGENS BERMAN.

15        ONE OF THE CONSENSUSES WE DID HAVE, BOTH DIRECTS AND

16   INDIRECTS COMING INTO HERE, IS THAT I WOULD TAKE THE

17   OPPORTUNITY TO TRY AND ADDRESS THIS ISSUE.  SO IF I MAY,

18   FIRST, I'D SAY THE COURT'S INSTINCT I APPRECIATE IN TERMS OF

19   WHAT IT'S TRYING TO DO IN SETTING UP -- NOT BEING IN A VACUUM

20   IN GAUGING WHAT IS GOING TO BE CONTESTED.

21        AND I THINK FROM MY PERSPECTIVE, I VERY MUCH APPRECIATE

22   THE COURT'S ANTICIPATION OF THAT IN TRYING TO MAKE A MORE

23   INFORMED DECISION BECAUSE ONE THING THAT IS TRUE,

24   UNFORTUNATELY, IS THE COURT IS AT A DISADVANTAGE IT BEING ITS

25   FIRST MDL COMPARED TO ALL OF THESE LAWYERS IN HERE WHO HAVE

```
 1      LITIGATED THESE ISSUES OVER AND OVER AGAIN.

 2          LCD, DRAM, SRAM, CRT, ODD -- I MEAN, ALL OF THE JUDGES IN

 3      THE DISTRICT HAS (SIC) BASICALLY FACED THIS ISSUE ONE WAY OR

 4      ANOTHER, WHICH DOESN'T HELP YOU PER SE.  BUT HERE'S OUR

 5      PERSPECTIVE, AND I WANT TO SPEAK TO IT FROM WHAT I THINK THE

 6      COURT'S GETTING AT, WHICH IS CENTRAL, AND THAT IS SORT OF THE

 7      EFFICIENT WAY TO ADDRESS THE ANTICIPATED SLEW OF DOCUMENTS THE

 8      COURT'S GOING FACE.  AND IT'S GOING TO BE A SLEW,

 9      UNFORTUNATELY.

10          SO WE SHOULD BE MINDFUL BOTH IN TERMS OF ZEALOUSNESS OF

11      OUR POSITIONS BUT ALSO THE COURT'S POSITION.  AND THE COURT'S

12      POSITION IS GOING TO BE HAVING TO FACE MOTIONS TO DISMISS ON A

13      BUNCH OF ISSUES THAT WE'VE ALL LITIGATED BEFORE AND WE KNOW

14      WHAT THEY ARE.  AND THEY REALLY HAVE TO DO, YOUR HONOR -- AND

15      THIS ISN'T PRESCIENCE.  THIS IS HISTORY -- WITH THE SCOPE OF

16      THE CONSPIRACY, WHAT WAS THE OBJECT OF THE CONSPIRACY; WHAT

17      PRODUCTS ARE ALLEGED TO EITHER HAVE BEEN WITHIN THE SCOPE OR

18      AFFECTED BY THE CONSPIRACY, WHICH DEFENDANTS ARE IN AND OUT.

19          THOSE, YOU KNOW, THERE'S -- THERE'S SOME FTAIA ISSUES.

20      THERE ARE SOME STATE LAW ISSUES.  BUT AS THE COURT SAID, THE

21      MEAT -- THE CORE OF REALLY WHAT THE COURT'S GOING TO HAVE TO

22      WRESTLE WITH IN THIS FIRST ROUND OF PAPER, ARE THESE CORE

23      ISSUES UNDER TWOMBLY.  AND THAT'S WHAT THEY'RE GOING TO MAKE

24      THE RUN AT, AND THAT'S WHAT WE'RE GOING TO TRY AND CONTEST.

25          AND -- AND THIS IS WHAT I OFFER THE COURT.  THIS IS WHY WE
```

```
 1    ARE TRYING TO TAKE THE APPROACH WE ARE.  COUNSEL IS CITING TO

 2    JUDGE ILLSTON, BUT HE'S NOT -- WE ACTUALLY THINK WHAT JUDGE

 3    WILKEN DID IN SRAM AND WHAT MAGISTRATE JUDGE SPERO DID IN ODD,

 4    WHICH WAS FORCE THE PRODUCTION OF JUST THE GRAND JURY

 5    DOCUMENTS, YOUR HONOR, NOT OPEN THE DOORS AND BACK UP THE

 6    TRUCK OF WHOLESALE DISCOVERY BY ANY -- WE'VE SAID WE WON'T

 7    SEEK IT.  WE'VE SAID WE JUST WANT THOSE DOCUMENTS THAT ARE

 8    SITTING ON THE HARD DRIVES IN EACH OF THESE DEFENDANTS'

 9    OFFICES.  THEY'RE JUST SITTING THERE HAVING BEEN PRODUCED.

10        AND SO WE SAID, CONFIDENTIALITY, YOU DON'T HAVE TO GO BACK

11    AND REREVIEW.  WE WILL SHIFT THE BURDEN TO US.  WE WILL SAY IF

12    WE FIND DOCUMENTS THAT WE THINK ARE NOT CONFIDENTIAL, WE'LL

13    IDENTIFY IT FOR THEM TO SAVE THEM MONEY.  THEY DON'T TO HAVE

14    CHANGE, YOUR HONOR, AT ALL THE FORM OF PRODUCTION.  NOT A

15    DIME, AS FAR AS WE'RE CONCERNED, YOUR HONOR.

16        ALL OF THIS WE'RE SAYING WE DON'T WANT THEM -- WE WANT TO

17    BE MOST EFFICIENT -- RULE NUMBER ONE IN CIVIL PROCEDURE, THE

18    MOST EFFICIENT, INEXPENSIVE, JUST AND SPEEDY PROCESS.  AND

19    HERE'S WHY.

20        THEY'RE GOING TO SAY IT'S A FISHING EXPEDITION.  OKAY.

21    IT'S NOT.  WE'RE TRYING TO ACTUALLY ADVANCE THE LITIGATION

22    EFFICIENTLY, WHICH IS THE FOLLOWING:  YOU'RE GOING TO BE IN A

23    VACUUM ON SOME LEVEL.  THE COURT'S GOING TO BE IN A VACUUM.

24    AND PART OF THAT IS BECAUSE THE NATURE OF THE CONSPIRACY IS

25    ITSELF CONCEALING.  AND SO THE INTERNAL DOCUMENTS OF CONDUCT
```

```
 1      YOU WON'T HAVE ACCESS TO, WE WON'T HAVE ACCESS TO, ONLY THEY

 2      WILL HAVE ACCESS TO.

 3          WE WILL HAVE MARKET INFORMATION.  WE'LL HAVE ECONOMIC

 4      INFORMATION.  ALL OF THAT, YOU WILL HAVE TO BE MAKING JUDGMENT

 5      CALLS ON HOW TO SLICE AND DICE.  THEY WILL BE ASKING YOU THE

 6      SCOPE OF CONSPIRACY, THE POTENTIAL PLAUSIBILITY OF THE IMPACT

 7      OF THE CONSPIRACY, THE DISTRIBUTION CHANNELS.  ALL OF THESE

 8      THINGS ARE THINGS THAT THEY'RE GOING TO FORCE UPON YOU IN A

 9      MOTION TO DISMISS.

10          AND WHAT WE'RE SIMPLY SAYING, YOUR HONOR, IS, LOOK, THIS

11      ISN'T A PSLRA CASE.  CONGRESS HASN'T ACTED AND SAID, FULL

12      STOP, NO DISCOVERY.

13          THERE ARE ARGUMENTS ABOUT TWOMBLY AND IQBAL, THOSE AREN'T

14      STAY CASES.  THOSE ARE STANDARD CASES IN TERMS OF PLEADING.

15      SO THERE'S NO STAY, YOUR HONOR.  SO THE ISSUE IS, IS THE

16      EXPENSE THAT THEY WOULD UNDERTAKE ESSENTIALLY UNWARRANTED AT

17      THIS POINT IN TIME?

18          AND FROM OUR PERSPECTIVE, IT MAKES EMINENT SENSE TO ASSIST

19      THE COURT BECAUSE HERE'S WHAT HAPPENS.  IN THE VACUUM, JUDGE,

20      YOU'RE GOING TO HAVE TO MAKE THOSE DECISIONS, AND LET'S SAY

21      YOU THEN GO AND GIVE US LEAVE TO AMEND AND THEN WE FILE MORE

22      AFTERWARDS.  AND LET'S SAY, YOU KNOW, WE ALLEGE A NARROW

23      CONSPIRACY.  AND THEN WE GET THAT YOU UPHOLD THE NARROW

24      CONSPIRACY.  AND THEN WE GET THE DOJ DOCUMENTS, AND THERE'S

25      EVIDENCE OF A BROADER CONSPIRACY.  AND THEN WE COME BACK AND
```

```
1    WE REALLEGE A BROADER CONSPIRACY.

2        ALL OF THIS, YOUR HONOR, THEN PUTS MORE WORK ON THE COURT

3    BECAUSE THEN THEY'RE GOING TO MOVE TO DISMISS BASED ON THE

4    SCOPE OF THE CONSPIRACY.

5        SO OUR VIEW BOTH UNDER RULE 1 AND JUST ADVISABLE CASE

6    MANAGEMENT, WHICH WE THINK JUDGE SPERO CLEARLY RECOGNIZED,

7    JUDGE WILKEN CLEARLY RECOGNIZED, IS THESE DOCUMENTS ARE

8    SITTING THERE.  THERE'S LITTLE TO NO EXPENSE FOR US TO ANALYZE

9    THEM.  IT WILL INFORM NOT JUST US WHICH THEY WANT TO POINT THE

10   FISHING EXPEDITION ON, IT WILL INFORM THE COURT IN ITS

11   DECISION.  AND -- AND THAT, TO BE HONEST WITH YOU, IS MORE

12   IMPORTANT THAN YOU KNOW, OUR SKIRMISHES AND OUR ZEALOUS

13   LITIGATION.  IT'S REALLY TRYING TO HELP THE COURT GET THE

14   ANSWER TO THE QUESTIONS.

15       SO THAT'S WHY WE'RE ASKING FOR EXTRAORDINARILY NARROW

16   LIMITED PRODUCTION WITH COST CONTROLS BUILT INTO IT IN

17   ADVANCE.

18       THANK YOU, YOUR HONOR.

19          MR. McGINNIS:  YOUR HONOR, THE ISSUE ISN'T FISHING

20   EXPEDITION.  IT'S IS THERE ANY AUTHORITY FOR IT.  AND THE

21   ANSWER IS THERE ISN'T.  AND IF YOUR HONOR HAS THE SLIGHTEST

22   QUESTION ABOUT WHETHER WHAT JUDGE ILLSTON DID IS AUTHORITY FOR

23   THIS, I HAVE THE ORDER HERE, AND I'LL BE GLAD TO HAND IT UP TO

24   YOU.  IT WAS DONE BY AGREEMENT OF THE PARTIES AFTER A LENGTHY

25   STAY IN THE CASE.
```

```
1        IT'S SIMPLY NOT -- IT'S SIMPLY NOT AUTHORIZED BY THE

2   RULINGS, AND IF WE'RE GOING TO HAVE AN ORDERLY MDL PROCEEDING,

3   IT ISN'T THE TIME TO SIMPLY COME UP AND ASK THE COURT FOR

4   THINGS.  AND -- IT'S THE TIME TO HAVE -- IF THERE'S AUTHORITY,

5   TO CITE IT.  THERE ISN'T ANY.  WE'VE CITED AUTHORITY IN OUR

6   BRIEFS.  WHAT THEY CITED WAS JUDGE ILLSTON'S ORDER.  THAT

7   ISN'T AUTHORITY FOR THIS.  AND WE HAVE IT HERE.

8        SO WE THINK THE COURT'S MEASURED APPROACH THAT FITS WITH

9   WHAT THE RULES ALLOW IS THE WAY TO GO.

10                  (OFF-THE-RECORD DISCUSSION.)

11        THE COURT:  NO, STOP.  I'M GOING TO HEAR ARGUMENT

12   FROM ONE SIDE ONLY, SO YOU IF YOU WANT TO -- SO PASS HIM A

13   NOTE.  AND IF YOU WANT TO SAY SOMETHING, PASS HIM A NOTE.  BUT

14   JUST ONE.

15        ANYTHING ELSE?

16        MR. FRIEDMAN:  SO, YOUR HONOR, THEY'RE HITTING ON THE

17   AUTHORITY ISSUE.  LET'S BE CLEAR.  WE HAD OUR 26(F)

18   CONFERENCE, TO BE CLEAR.

19        RULE 1 ALLOWS YOU TO -- TO PUT IN ANY ORDER TO INCREASE

20   THE EFFICIENCY OF THE CASE.  NOW, JUDGE, WE CAN TODAY --

21   TONIGHT, WE CAN HIT THEM WITH A REQUEST FOR PRODUCTION LIMITED

22   TO THAT.  I MEAN -- AND THEY'LL HAVE 30 DAYS, AND THEY'LL PUT

23   THEIR OBJECTIONS IN.  YOU KNOW, THEY'VE ALREADY BRIEFED THIS

24   ISSUE.  I MEAN, SIX PAGES OF BRIEFING TO YOUR HONOR.

25        SO, YOU KNOW, THEY CAN THEN BRIEF THE ISSUE, AND WE CAN
```

1     ARGUE ABOUT IT, AND THEY CAN THEN CONTINUE TO DELAY THE VERY

2     CENTRAL ISSUE OF EFFICIENCY THAT I'M TALKING ABOUT.  IF THEY

3     CHOOSE TO DO THAT, THEY CAN DO THAT.  BUT WE CAN SERVE THE

4     REQUEST.  THEY CAN THEN FILE THEIR LAUNDRY LIST OF BOILER

5     PLATE OBJECTIONS.  WE CAN GO THROUGH THAT PROCESS, AND WE CAN

6     THEN MOVE TO COMPEL.  THEY WILL HAVE STRUNG IT OUT.

7          AND, AGAIN, HOW DOES THAT ADVANCE THE SPEEDY JUST

8     EFFICIENT PROSECUTION OF THE CASE?  BUT IF THE COURT PREFERS

9     IT, WE COULD, OF COURSE, DO IT.

10          **THE COURT:**  WHEN WAS THE RULE 26 CONFERENCE?  WAS

11    THAT MARCH 18TH?

12          **MR. McGINNIS:**  WE HAD A CONFERENCE, YOUR HONOR,

13    THAT -- I DON'T KNOW IF WE WOULD CONSIDER IT A RULE 26(F)

14    CONFERENCE.  WE HAD THE CONFERENCE THAT YOU ORDERED US TO

15    HAVE, AND WE DID HAVE IT.

16          WE'VE CITED -- COUNSEL'S QUITE CORRECT.  WE DID BRIEF

17    THIS.  THEY DIDN'T.  THEY DIDN'T CITE ANY AUTHORITY OTHER THAN

18    SOME SORT OF GENERAL LEGAL PRINCIPLES THAT THEY THINK MIGHT

19    APPLY.  WE CITED GPU AND FLASH MEMORY IN WHICH THIS VERY

20    ARGUMENT WAS REJECTED.  WE CITED THOSE CASES.  WE QUOTED THE

21    COURT'S OPINIONS.

22          **MR. FRIEDMAN:**  JUDGE --

23          **MR. McGINNIS:**  THIS IS SIMPLY NOT -- THIS IS NOT

24    FOLLOWING RULES HERE.  THERE'S NO AUTHORITY FOR WHAT THEY'RE

25    REQUESTING.  AND I DON'T NEED TO RE -- REARGUE WHAT'S IN OUR

1    PAPERS, WHAT THE SUPREME COURT HAS INDICATED IN TWOMBLY AND

2    IQBAL BUT IT'S SIMPLY -- SIMPLY IS AGAINST THE RULES, YOUR

3    HONOR.

4            THE COURT:  MR. FRIEDMAN?

5            MR. FRIEDMAN:  YOUR HONOR, IF YOU LOOK AT GPU BY

6    JUDGE ALSUP, IT SPECIFICALLY -- JUDGE ALSUP REJECTS THE

7    POSITION THAT TWOMBLY INJECTS A STAY FLAT OUT.

8            THE COURT:  WELL, TWOMBLY -- I MEAN, THE WHOLE POINT

9    OF THAT WAS -- THE NUANCE THAT I SEE HERE IS THAT THEY'RE

10   ASKING FOR NOT FULL -- FULL-BLOWN DISCOVERY.  THE WHOLE POINT

11   OF IQBAL AND TWOMBLY WAS THAT IN ANTITRUST CASES, WE DON'T

12   WANT TO AUTHORIZE DISCOVERY BECAUSE IT'S INCREDIBLY EXPENSIVE.

13   THAT WAS THE CORE PRINCIPLE, IS THAT IT IS EXPENSIVE, AND

14   DEFENDANTS SHOULDN'T HAVE TO BE -- AND I DON'T -- I HAVE A

15   NUMBER OF ANTITRUST CASES -- I DON'T ALLOW DISCOVERY TO HAPPEN

16   UNTIL I KNOW WHAT -- WHAT THE CASE IS.

17       THE MORE NUANCED POINT THAT I AM HEARING IS THAT HERE, THE

18   EXPENSE ARGUMENT DOESN'T EXIST BECAUSE ALL OF THE EXPENSE HAS

19   ALREADY BEEN INCURRED SO THERE ISN'T A SIGNIFICANT EXPENSE FOR

20   THE DEFENDANTS.  THAT'S THE NUANCE, AND YOU CAN ADDRESS THAT

21   ISSUE.

22           MR. McGINNIS:  WELL, YOUR -- YOUR HONOR, I DISAGREE

23   THAT THERE'S NO BURDEN ATTACHED.  FOR ONE THING, WE HAVE NO

24   PROTECTIVE ORDER WHATSOEVER.  WE WOULD HAVE TO --

25           THE COURT:  WELL, YOU'RE GOING TO HAVE TO DO THAT

1    ANYWAY.

2              **MR. McGINNIS:**  WELL, BUT THERE'S --

3              **THE COURT:**  OKAY.  SO YOU NEED A PROTECTIVE ORDER.

4              **MR. McGINNIS:**  NO PROTECTIVE ORDER, YOUR HONOR.

5        THERE HAS BEEN NO EVALUATION OF WHATEVER THESE DOCUMENTS

6    ARE FOR OTHER PRIVILEGE ISSUES, ATTORNEY-CLIENT PRIVACY

7    ISSUES -- ANY NUMBER OF ISSUES, YOUR HONOR.  IN FACT, THAT'S

8    WHY JUDGE ALSUP SAID THAT WITH RESPECT TO GRAND JURY

9    DOCUMENTS, SIMPLY BECAUSE A GRAND JURY'S REQUESTED THEM

10   DOESN'T GIVE SOMEBODY ELSE THE RIGHT TO RUMMAGE THROUGH THEM.

11       AND WHY -- YOUR HONOR HAS HEARD ALREADY THAT THESE

12   COMPLAINTS ARE DIFFERENT, DIFFERENT PERSPECTIVES FROM

13   DIFFERENT PEOPLE.  WE OUGHT TO HAVE -- AND WE'VE ALSO BEEN --

14   HEARD WHAT AN EXTENSIVE INVESTIGATION HAS HAPPENED BEFORE

15   THIS -- THE CASES WERE FILED.  WE OUGHT TO HAVE WHAT'S THE

16   REAL CASE BEFORE WE DECIDE WHETHER ANY DISCOVERY SHOULD

17   HAPPEN.  THAT'S -- AND CERTAINLY WE CAN HAVE THE CONFERENCE

18   THAT YOUR HONOR INDICATED TO -- TO MAKE SURE YOUR HONOR

19   UNDERSTANDS WHAT'S HAPPENING BUT WE OUGHT TO HAVE THE REAL

20   CASE.  WE DON'T HAVE THE REAL CASE.

21             **MR. FRIEDMAN:**  YOUR -- YOUR HONOR, COUNSEL, VERY

22   GIFTED, SLIPPED VERY QUICKLY OUT OF BURDEN AND INTO WE WANT TO

23   LOOK AT WHETHER WE HAVE A REAL CASE OR NOT.  AND THE COURT'S

24   POINTED QUESTION, DEAD ON, IN CAPTURING THE NUANCE WAS BURDEN.

25       AND SO WHAT WE DID -- AND WE CAN GET THEM A PROTECTIVE

 1   ORDER -- WE CAN GET HIM A PROTECTIVE ORDER FRIDAY.  I MEAN,

 2   WE'VE ALL NEGOTIATED HUNDREDS OF PROTECTIVE ORDERS.  IF THAT'S

 3   THE FIRST OUT OF THE BOX IN TERMS OF BURDEN, I THINK THE COURT

 4   CAN LOOK MEASURED AT THAT AS THEIR LEAD ARGUMENT ON BURDEN.

 5        SECOND, YOUR HONOR, ON ATTORNEY-CLIENT PRIVILEGE, THEY'VE

 6   REVIEWED THOSE DOCUMENTS FOR ATTORNEY-CLIENT PRIVILEGE.

 7   THEY'VE PRODUCED THEM.  MOREOVER, 502, FEDERAL RULES OF

 8   EVIDENCE IN TERMS OF CLAWBACK, THEY HAVE PROTECTIONS.  WE HAVE

 9   NO PROBLEM, YOU KNOW, PUTTING IN WRITING WHAT THE RULE SAYS,

10   WHICH THEY HAVE PROTECTIONS FOR INADVERTENT PRODUCTION.

11        WE ALSO HAVE NO PROBLEM WAIVING AN ARGUMENT THAT THE

12   PRODUCTION TO THE DOJ ISN'T -- IF THEY PRODUCED IT WAS AN ACT

13   OF WAIVER.  WE HAVE NO PROBLEM STIPULATING THAT THAT ACT IS

14   NOT A WAIVER.

15        SO THEY CAN COME UP WITH A LAUNDRY LIST OF HURDLES, YOUR

16   HONOR, BUT THE TRUTH THE COURT HAS NAILED IS THERE IS LITTLE

17   TO NO BURDEN.  THE BENEFIT IS TREMENDOUS, TO FOCUS ON THE CORE

18   OF WHAT'S GOING TO BE IN DISPUTE AND TO BENEFIT THE COURT

19   ULTIMATELY FROM HAVING TO GO AND MEASURE, MEASURE, MEASURE,

20   CUT, MEASURE, CUT.

21             **THE COURT:**  I UNDERSTAND THE TRADE-OFFS.

22        I HAVEN'T READ THE OPINIONS BY JUDGE ALSUP, JUDGE ILLSTON.

23   YOU CAN LEAVE THE ONE THAT YOU HAVE HERE.  I'LL TAKE IT UNDER

24   ADVISEMENT.

25        OKAY.

1    **MR. FRIEDMAN:**  THANK YOU, YOUR HONOR.

2    **MR. McGINNIS:**  I'M GOING TO HAND IT TO YOUR DEPUTY,

3    IF I MAY, YOUR HONOR.

4    **THE COURT:**  PLEASE.

5    THERE ARE OTHER -- A NUMBER OF OTHER JUST MISCELLANEOUS

6    CASE MANAGEMENT ISSUES TO DEAL WITH.  ONE, THERE ARE A NUMBER

7    OF MOTIONS THAT -- MOTIONS TO RELATE CASES.  THOSE ARE --

8    THOSE WILL BE GRANTED ONCE I GET A PROPOSED ORDER, AND I WILL

9    ASK FOR A PROPOSED ORDER FROM EACH OF THE LIAISON COUNSEL, AND

10   I'LL GO THROUGH THE ORDERS THAT I'M LOOKING FOR.

11   NEXT, THERE IS A MOTION TO APPOINT AN INTERNATIONAL SERVER

12   OF PROCESS.  MR. SEAVER, YOUR APPLICATION IS NOT ADEQUATE.

13   I'M NOT JUST GOING TO RUBBER-STAMP SOMETHING.  YOU NEED TO

14   MAKE A FULL SHOWING.  IT IS DENIED WITHOUT PREJUDICE.

15   WITH RESPECT TO DISCOVERY DISPUTES, MAGISTRATE JUDGE RYU

16   WILL BE APPOINTED TO CONDUCT ALL DISCOVERY DISPUTES IN THE

17   MDL.  SHE'S IN THIS BUILDING WITH ME.  I THINK SHE'S AN

18   EXCELLENT JUDGE.  AND SHE AND I WILL WORK CLOSELY TOGETHER.

19   OKAY.  LET'S SEE.  I WAS SERIOUS WHEN I STATED EARLIER

20   THAT I DO WANT EVERYONE TO SIGN UP ON STANDARDS FOR

21   PROFESSIONAL CONDUCT.

22   I'M GOING TO ASK THE DEFENSE FIRMS, HAVE ANY OF YOUR FIRMS

23   SIGNED ON TO THE SANTA CLARA BAR ASSOCIATION STANDARDS?

24   **MR. McGINNIS:**  MY FIRM HAS NOT SO FAR AS I KNOW, YOUR

25   HONOR.  I'LL CERTAINLY CHECK.  I'M GUESSING NOT.

```
1              MR. JACOBS:  NOT TO MY KNOWLEDGE, YOUR HONOR.

2                   (OFF-THE-RECORD DISCUSSION.)

3              MR. KESSLER:  JEFFREY KESSLER, WINSTON & STRAWN.

4    IT'S POSSIBLE, YOUR HONOR.  I JUST --

5              MS. HENRY:  ROXANN HENRY AND I'M WITH MORRISON &

6    FOERSTER, AND I JUST DON'T KNOW.

7              MR. EWING:  I'M KENNETH EWING, STEPTOE & JOHNSON.  I

8    ALSO DON'T KNOW.

9              THE COURT:  MR. DWYER?

10             MR. DWYER:  YOUR HONOR, I DON'T KNOW EITHER.

11             THE COURT:  OKAY.

12             MR. PEARL:  JAMES PEARL FROM O'MELVENY & MYERS.  I

13   DON'T KNOW EITHER.

14             THE COURT:  OKAY.

15        WELL, THE PLAINTIFFS HAVE WORK TO DO, SO I'M GOING TO ASK

16   THE DEFENDANTS TO TAKE THE LEAD ON THIS.  AND THIS IS WHAT I'D

17   LIKE YOU TO DO.  .PDF THOSE STANDARDS.  YOU CAN FIND THEM ON

18   THEIR WEBSITE.  IF YOU DON'T, I'LL SEND THEM TO YOU.  JUST LET

19   MY COURTROOM DEPUTY KNOW.  AND LOOK AT THEM.

20        THEY TALK ABOUT THINGS LIKE SCHEDULING DEPOSITIONS AND NOT

21   DOING THINGS AT THE LAST MINUTE AND BEING RESPECTFUL,

22   ET CETERA.  TAKE A LOOK AT THEM, AGREE TO A SET ON YOUR OWN,

23   AND THEN SEND THEM TO THE PLAINTIFFS.

24        AND IF THERE'S SOMETHING THAT NO ONE CAN LIVE WITH, THEN

25   LET ME KNOW.  BUT I WOULD LIKE YOU ALL TO DO IT, AND I WOULD
```

1    LIKE YOU ALL TO SIGN ON TO THEM.  AND MASSAGE THEM IF YOU NEED

2    TO.  I DON'T KNOW IF PERHAPS THEY'RE NOT -- YOU KNOW, IF

3    PORTIONS OF THEM DON'T -- MAY DEAL WITH FAMILY LAW, YOU

4    OBVIOUSLY DON'T HAVE TO -- FAMILY LAW IS THE WORST, I HEAR.

5        THEY ALWAYS SAY DEFENDANTS COME INTO COURT WITH THEIR --

6    YOU KNOW, THEIR -- NOT DEFENDANTS, NECESSARILY, BUT THEY COME

7    IN WITH THEIR BEST BEHAVIOR AND NOT NECESSARILY THE BEST

8    PEOPLE.  AND FAMILY LAW, YOU HAVE REALLY GOOD PEOPLE WHO COME

9    IN WITH THEIR WORST BEHAVIOR.

10       BUT IF I CAN GET AGREEMENT AMONG ALL OF YOU, THEN I'M

11   GOING TO TAKE THAT DOCUMENT, AND THAT'S THE DOCUMENT I'M GOING

12   TO GIVE TO THE NORTHERN DISTRICT AND SAY, LOOK, I HAVE THE

13   BEST LAWYERS ON THE PLAINTIFFS' AND DEFENSE BAR AND PER JUDGE

14   BREYER'S REPRESENTATION AND EVERYONE ELSE IN HERE DURING THE

15   LOVE FEST PORTION OF THIS MEETING, AND THEY'VE ALL AGREED, AND

16   THAT'S A GOOD THING FOR OUR DISTRICT.

17       AND PERHAPS THAT WILL BE THE STARTING POINT FOR THESE

18   STANDARDS TO BE USED THROUGHOUT THE NORTHERN DISTRICT HERE.

19       OKAY?  SO I'D LIKE TO SEE THAT AT OUR NEXT CONFERENCE.

20       THIS IS WHAT I NEED IN TERMS OF FORMS OF ORDER.  I NEED A

21   FORM OF ORDER FOR EACH SET OF -- OF CASES WITH RESPECT TO THE

22   INTERIM COUNSEL.

23       NOW, I WILL TELL YOU THAT I RECEIVED ALL SORTS OF ORDERS.

24   DOCUMENT 101-9, THAT WAS THE DIRECT PURCHASER ORDER.  DOCUMENT

25   104-6, THAT WAS THE COTCHETT/LIEFF, CABRASER ORDER.  DOCUMENT

1    108-7, THAT WAS THE HAGENS --

2        DID I SAY THAT RIGHT?

3            **MR. BERMAN:** YEAH.

4            **THE COURT:** -- ORDER.

5        AND DOCUMENT 76.2, THE RENNE SLOAN ORDER.

6        PERHAPS IT'S FOR CONSISTENCY; PERHAPS IT'S BECAUSE IT'S

7    THE FIRST TIME THAT I'VE DONE THIS, I WANT ONE FORM OF ORDER

8    FOR BOTH SIDES. I SHOULD -- I DON'T KNOW WHY I WOULD HAVE A

9    DIFFERENT STANDARD FOR DIRECT VERSUS INDIRECT. I WANT ONE

10   STANDARD, I WANT ONE FORM OF ORDER.

11       I WANT ACCOUNTABILITY. OKAY? SO TO THE EXTENT THAT YOU

12   SAID YOU HAD SOME PROCESS IN PLACE WHERE YOU WERE LETTING THE

13   JUDGE KNOW ON AN ONGOING BASIS, THAT'S WHAT I WANT. I WANT

14   ACCOUNTABILITY.

15       I AM GOING TO GO AHEAD AND SUGGEST -- OR NOT SUGGEST BUT

16   ORDER THAT YOU HAVE A SMALL FORMAL STRUCTURE. THAT'S WHAT I'M

17   GOING TO TRY. MAYBE PERHAPS THE NEXT MDL, I'LL DO IT A

18   DIFFERENT WAY. I THINK SMALL IS IMPORTANT BECAUSE IT

19   ADDRESSES ACCOUNTABILITY. AND IF IT'S SMALL ENOUGH,

20   MR. SIMON, THEN YOU WON'T -- YOU'LL HAVE THE FLEXIBILITY TO

21   EXPAND. RIGHT?

22       SO I WANT IT SMALL, BUT HERE'S WHAT -- HERE ARE THE THINGS

23   I WANT TO KNOW WHEN I GET YOUR RECOMMENDATIONS, AND YOU SHOULD

24   LOOK TO EVERYBODY WHO'S ALREADY SUBMITTED APPLICATIONS. AND I

25   DO WANT RECOMMENDATIONS FROM THE PLAINTIFFS ON BOTH SIDES.

```
 1         WHEN I WAS READING LOUISE RENNE'S ORDER, IT OCCURRED TO

 2    ME -- AND ACTUALLY THE NATIONWIDE APPLICATIONS AS WELL, THAT

 3    THERE ARE VERY GOOD REASONS TO HAVE DIFFERENT PEOPLE AROUND

 4    THE TABLE.  SO I WANT TO KNOW WHY YOU'RE SELECTING AND

 5    RECOMMENDING THE PEOPLE WHO YOU ARE.

 6         I KNOW EVERYBODY -- EVERYBODY'S GOOD LAWYERS.  I GET THAT.

 7    YOU DON'T HAVE TO TELL ME THAT YOU'RE RECOMMENDING SOMEONE

 8    BECAUSE THEY'RE A GOOD LAWYER.  I WANT TO KNOW WHAT THEY BRING

 9    TO THE TABLE.  IT IS HELPFUL TO ME TO HAVE SOMEONE WHO IS

10    OPPOSED, LIKE MR. SAVERI SAID, TO THE INITIAL STRUCTURE.

11    THAT'S GOOD.

12         I WANT TO -- THAT'S THE KIND OF INFORMATION I WANT TO SEE

13    IN THOSE RECOMMENDATIONS.  MS. RENNE TALKED ABOUT, YOU KNOW,

14    THE PUBLIC SIDE.  THAT BRINGS A DIFFERENT PERSPECTIVE, RIGHT?

15         SO GIVE ME REASONS WITH YOUR RECOMMENDATIONS.

16         THERE WAS A PROPOSED PRETRIAL ORDER NO. 1, DOCKET 95-4.  I

17    DIDN'T HAVE ANY OBJECTION TO THAT.  IT'S -- SOUNDS LIKE IT'S

18    AGAIN VERY STRAIGHTFORWARD JUST IN TERMS OF DOCKETING, MASTER

19    FILE DOCKET, ET CETERA.  THAT NEEDS TO BE CHANGED IN TERMS OF

20    MAGISTRATE JUDGE RYU BEING APPOINTED, BUT I NEED THAT PRETRIAL

21    ORDER AS WELL.

22         THAT PRETRIAL ORDER SHOULD INCLUDE A PROPOSED ORDER TO

23    RELATE, PERHAPS JUST BY EXHIBIT, IN TERMS OF ALL OF THE

24    VARIOUS CASES THAT ARE STILL OUT THERE.

25         SO THAT IS ALL OTHER THAN -- THESE PROPOSED ORDERS, LET'S
```

```
1    SAY APRIL 12TH.  CAN YOU GET THEM BACK TO ME BY APRIL 12TH?

2    NOT ON THE STANDARDS BUT JUST ON THESE INTERIM COUNSEL, THE

3    PRETRIAL ORDER, APRIL 12TH FOR THOSE TWO.

4        HOW MUCH TIME DO THE PLAINTIFFS WANT TO MAKE A

5    RECOMMENDATION TO THE COURT WITH RESPECT TO THE FORMAL

6    STRUCTURE?

7            MR. SIMON:  I THINK 30 DAYS WOULD GIVE US SUFFICIENT

8    TIME, YOUR HONOR.

9            THE COURT:  OKAY.

10       SO I LIKE FRIDAYS FOR THESE KINDS OF THINGS.  APRIL (SIC)

11   5TH, FIRST FRIDAY?

12                   (OFF-THE-RECORD DISCUSSION.)

13           THE COURT:  MAY 5TH?  SORRY.  IT'S BEEN A LONG MONTH.

14   MAY 3RD.

15           MR. SIMON:  YES, THAT'S FINE, YOUR HONOR.

16           THE COURT:  OKAY.  I WILL GO -- I WILL ISSUE A

17   SEPARATE ORDER WITH RESPECT TO THE DISCOVERY ISSUES.  UNTIL

18   YOU RECEIVE THAT ORDER, THERE'S A STAY ON DISCOVERY, RIGHT?

19   I'LL GET IT OUT SOON.  BUT UNTIL I LOOK AT THOSE CASES,

20   THERE'S A STAY.

21       GO AHEAD.  YES, MR. FRIEDMAN.

22           MR. FRIEDMAN:  ONE -- I'M SORRY, YOUR HONOR.  JEFF

23   FRIEDMAN ON BEHALF OF THE INDIRECT PURCHASER PLAINTIFFS.  I

24   BELIEVE THIS IS ALSO FOR THE DIRECTS AS WELL.  I JUST WANT TO

25   ADDRESS FOR -- GUIDANCE FROM THE COURT.
```

1    THERE'S ONE OTHER ISSUE, AND IT MAY HAVE GOT LOST IN SORT

2    OF THE JOINT DISCUSSION ABOUT DOCUMENTS.  THERE -- THERE ARE

3    DOCUMENTS THAT HAVE ALREADY BEEN PRODUCED IN THE OPTICAL DISK

4    DRIVE BY SOME OF THESE DEFENDANTS THAT ARE HERE AND THAT ARE

5    ALSO IN THE OPTICAL DISK DRIVE CASE, AS WELL AS POTENTIALLY

6    SOME CRT DOCUMENTS.  THESE ARE IN OUR POSSESSION.  SOME OF THE

7    FIRMS HERE ARE LITIGATING IT.

8    THE QUESTION -- THEY'RE UNDER A PROTECTIVE ORDER, YOUR

9    HONOR.  AND THE ISSUE WILL BECOME THE USE OF THOSE DOCUMENTS

10   BECAUSE THE VERBIAGE OF THE PROTECTIVE ORDER.  HERE'S THE

11   DIRECT QUESTION.  WOULD YOU LIKE US TO MAKE AN APPLICATION

12   EITHER TO YOU OR TO MAGISTRATE RYU OR TO JUDGE SEEBORG IN --

13   OR JUDGE SPERO IN THE FIRST INSTANCE TO BE ABLE TO USE THOSE

14   DOCUMENTS?

15   **MR. KESSLER:**  YOUR HONOR, I REPRESENT ONE OF THE

16   DEFENDANTS IN THE OPTICAL DISK DRIVES AND THE CRT CASE.  SINCE

17   THERE IS NOT AN IDENTITY OF DEFENDANTS BETWEEN THOSE CASES,

18   DESPITE -- I HAPPEN TO REPRESENT DEFENDANTS IN ALL THREE OF

19   THESE MATTERS, BUT THERE'S COMPLETELY DIFFERENT GROUPS OF

20   DEFENDANTS INVOLVED AND DIFFERENT COUNSEL IN MANY CASES.

21   AND SINCE THESE WERE PROTECTIVE ORDERS OF THOSE OTHER

22   JUDGES, I THINK THE ONLY APPROPRIATE PROCEDURE WOULD BE IF

23   THEY HAVE ANY ISSUE OF SEEKING RELIEF IN THOSE OTHER CASES,

24   WOULD BE TO DIRECT IT TO THOSE OTHER JUDGES.

25   I'D ALSO NOTE, TO MY KNOWLEDGE, THERE'S NOTHING PRODUCED

1   ABOUT RECHARGEABLE BATTERIES IN ANY OF THOSE CASES, SO I CAN'T

2   IMAGINE WHAT THE ISSUE'S GOING TO BE.  BUT WHATEVER IT IS, IT

3   SHOULD BE BEFORE THOSE COURTS, YOUR HONOR.

4           **THE COURT:**  THAT'S FINE.  SO MAKE IT BEFORE THE

5   COURTS.  JUST COPY ME ON IT SO THAT I'M NOT -- SO THAT I KNOW

6   IT'S OUT THERE.

7           **MR. FRIEDMAN:**  UNDERSTOOD.  THANK YOU, YOUR HONOR.

8           **THE COURT:**  PROTECTIVE ORDER, YOU NEED TO GET A

9   PROTECTIVE ORDER JUST GENERALLY.  I DON'T WANT TO BE WAITING

10  UNTIL THE LAST MINUTE FOR A PROTECTIVE ORDER.  I'LL GIVE YOU

11  30 DAYS, AGAIN, ON THE PROTECTIVE ORDER.

12     OKAY.  ANYTHING ELSE?  I'M OPENING IT UP.

13          **MR. KESSLER:**  YOUR HONOR, IF I MAY JUST IN TERMS

14  OF --

15          **THE COURT:**  COME TO THE MIC.

16          **MR. KESSLER:**  YES, YOUR HONOR.  JEFFREY KESSLER FROM

17  WINSTON & STRAWN.

18     JUST IN TERMS OF SETTING THE DATE IN WHICH YOU MAKE A

19  PRE-MOTION CONFERENCE, SINCE THERE ARE SO MANY PEOPLE

20  INVOLVED, IT MIGHT BE HELPFUL.  I WAS GOING TO SUGGEST, YOUR

21  HONOR, THE WEEK OF JUNE THE 12TH, SOMETIME THAT WEEK, IF IT

22  WAS CONVENIENT, WHICH WOULD BE PERHAPS THE FRIDAY, YOUR HONOR,

23  IF YOUR HONOR PREFERS A FRIDAY FOR THAT.

24     I BELIEVE THEIR -- THEIR COMPLAINTS WOULD BE DUE SOMETIME

25  EARLY THE PREVIOUS WEEK.  SO THAT WOULD GIVE THE DEFENDANTS

```
1   MORE THAN A WEEK TO SORT OUT WHAT TYPES OF ISSUES THEY WANTED

2   TO RAISE.

3           MR. SIMON:  JUNE 14TH IS THE FRIDAY, AND THAT WOULD

4   BE --

5           THE COURT:  HOLD ON.  HOLD ON.

6       SO WE HAVE --

7           MR. SIMON:  -- FINE.

8                   (OFF-THE-RECORD DISCUSSION.)

9           THE COURT:  SIXTY DAYS FROM TODAY FALLS ON A SUNDAY.

10  SO WE'LL HAVE THE -- THE CONSOLIDATED AMENDED COMPLAINTS DUE

11  JUNE 3RD, TO BE EXPLICIT.

12      AND YOU SAID THE DEFENDANTS ONLY NEED A WEEK?

13          MR. KESSLER:  WELL, YOUR HONOR, I WOULD SAY THE 14TH.

14          MR. SIMON:  WE CAN'T DO THE 14TH.

15          MR. KESSLER:  OR THE 13TH, YOUR HONOR?  IN OTHER

16  WORDS, TEN DAYS WILL GIVE US SUFFICIENT TIME IF ALL WE'RE

17  DOING IS IDENTIFYING THE ISSUES FOR YOUR HONOR.

18          THE COURT:  I CAN TELL YOU -- I CAN TELL YOU WHEN I'M

19  AVAILABLE, AND THEN EVERYBODY ELSE IS JUST GOING TO HAVE TO

20  MOVE THEIR CALENDARS AROUND, BECAUSE WITH THIS MANY LAWYERS, A

21  LITTLE BIT OF DICTATORSHIP WORKS.

22                  (PAUSE IN THE PROCEEDINGS.)

23          THE COURT:  ALL RIGHT.  I'LL GIVE YOU TWO OPTIONS.

24  OR MAYBE NOT.  WEDNESDAY MORNING THE 12TH OKAY?  NO MAJOR

25  OBJECTIONS?
```

1          **MR. SIMON:**  THAT'S FINE.

2          **MR. KESSLER:**  THAT'S FINE FOR THE DEFENDANT.

3          **THE COURT:**  WEDNESDAY MORNING THE 12TH.  WE'LL SAY

4     9:30.

5        WE'LL MAKE SURE NO ONE GETS OUT OF HAND.  MY CRIMINAL

6     CALENDAR'S IN THE AFTERNOON.  I'LL JUST HOLD YOU ON AND THE

7     MARSHALS WILL BE RIGHT THERE.

8          **THE WITNESS:**  OKAY.

9          **MR. SIMON:**  THERE IS ONE ITEM WHICH IS NOT IN

10    DISPUTE, I BELIEVE, THAT WE SHOULD PROBABLY ADD TO ONE OF THE

11    ORDERS.  AND THIS WAS A PROVISION ABOUT THE JOINDER OR

12    MISJOINDER OF SPECIFIC PARTIES --

13         **THE COURT:**  HOLD ON.

14              (OFF-THE-RECORD DISCUSSION.)

15         **MR. SIMON:**  IT MAKES IT VERY EFFICIENT FOR THE

16    CONSOLIDATED AMENDED COMPLAINT FOR THE DEFENDANTS TO

17    AFFIRMATIVELY IDENTIFY FOR US WHETHER WE'VE MISNAMED A

18    CORPORATE ENTITY.  THERE'S LOTS OF DIFFERENT CORPORATE

19    ENTITIES WITH, YOU KNOW, INC. AND LLP AND LLC AND ALL SORTS OF

20    THINGS ON THEM.  AND THERE WAS AGREEMENT THAT A CERTAIN AMOUNT

21    OF TIME FROM THE TIME THAT COUNSEL'S APPOINTED, IF WE -- IN

22    THE COMPLAINTS THEY HAVE SO FAR, IF ANY ENTITY SHOULDN'T BE IN

23    THE COMPLAINT, NOT ON THE MERITS, BUT ON JUST THIS COMPANY

24    DOESN'T EVEN MAKE THIS OR THIS COMPANY DOESN'T EXIST ANYMORE

25    OR THAT SORT OF THING, THAT THEY LET US KNOW THAT.

```
 1                THE COURT:  ANY OBJECTION?

 2                MR. McGINNIS:  NO, YOUR HONOR.

 3                THE COURT:  OKAY.  HOW MUCH TIME DO YOU NEED TO GET

 4       BACK TO THEM?

 5                MR. McGINNIS:  WE AGREED TO 20 DAYS FROM TODAY, I

 6       BELIEVE.

 7                THE COURT:  TWENTY DAYS?

 8                MR. SIMON:  THAT'S FINE, YOUR HONOR.

 9                THE COURT:  OKAY.  ADD THAT TO THE ORDER, 20 DAYS.

10          NEXT ISSUE.

11                MR. SIMON:  I THINK THAT'S IT.

12                MR. KESSLER:  JUST, YOUR HONOR, POINT OF INFORMATION.

13                THE COURT:  COME TO THE MIC.

14                MR. KESSLER:  IN TERMS OF THE AUTHORITIES ON THE

15       ISSUE WE LOOK AT DISCOVERY, WE JUST CALL YOUR ATTENTION --

16       THEY'RE ATTACHED AS EXHIBITS TO OUR STATEMENT.  SO IF YOU

17       SHOULD FIND BOTH GPU, FLASH MEMORY, AND ALSO SOME NINTH

18       CIRCUIT AUTHORITY AS WELL, YOU'LL FIND ATTACHED THERE, YOUR

19       HONOR.

20          THANK YOU.

21                THE COURT:  OKAY.

22                MR. SIMON:  I'M REMINDED THAT WE PROBABLY SHOULD

23       IDENTIFY AT THE SAME TIME AS THE MISJOINDER ANY PERSONAL

24       JURISDICTION ISSUES, WHICH I THINK WAS AGREED UPON AS WELL, IN

25       CASE THERE'S ANY DISCOVERY NEEDED ON PERSONAL JURISDICTION OR
```

```
 1    MOTIONS TO BE MADE.

 2            THE COURT:  OKAY.  I'M SEEING LOTS OF NODS.

 3            MR. McGINNIS:  THAT WAS AGREED, YOUR HONOR.

 4            THE COURT:  ALL RIGHT.  GOOD ENOUGH.  WE CAN ADD THAT

 5    TO THE ORDER.

 6         MR. FRIEDMAN?

 7            MR. FRIEDMAN:  JEFF FRIEDMAN FROM HAGENS BERMAN.

 8    LAST ISSUE, YOUR HONOR, JUST -- IS IT -- IF IT WOULD -- ONLY

 9    IF IT WOULD BE HELPFUL, YOUR HONOR, IF WE SUBMITTED SHORT

10    LETTER BRIEF WITH AUTHORITIES IN RESPONSE TO THE ISSUE OF

11    DISCOVERY.  IF IT'S NOT HELPFUL TO THE COURT -- HAS ENOUGH

12    INFORMATION, THAT'S FINE.  BUT THEY FILED FIVE PAGES.

13            THE COURT:  DO YOU THINK I DON'T UNDERSTAND YOUR

14    POINT?  OR DID I GET YOUR POINT?

15            MR. FRIEDMAN:  I THINK YOU ABSOLUTELY GOT THE POINT.

16            THE COURT:  ALL RIGHT.  THEN I DON'T NEED IT.

17            MR. FRIEDMAN:  THANK YOU, YOUR HONOR.

18            THE COURT:  OKAY.  ANYTHING ELSE?

19         LADIES AND GENTLEMEN, I KNOW YOU'VE BEEN THROUGH HUNDREDS

20    OF THESE.  THIS HAS BEEN MY FIRST.  IT'S BEEN A PLEASURE.

21         I WAS SERIOUS THAT I AM GLAD TO FINALLY PUT SOME FACES TO

22    MANY OF YOUR NAMES.  I AM LOOKING FORWARD WITH SOME HESITATION

23    BUT LOOKING FORWARD TO HOPEFULLY NOT SPENDING FOUR OR FIVE

24    YEARS TOGETHER.  I WOULD LIKE TO THINK THAT WE COULD GET IT --

25    THINGS DONE SOONER.
```

1  ON THE OTHER HAND, WE CONTINUE TO BE IN A JUDICIAL

2  EMERGENCY. I SEE -- YOU KNOW, WITH MISS RENNE AND MR. LE

3  HERE, WE'D LIKE TO GET SOME MORE JUDGES, PLEASE. I THINK WE

4  CAN ALL AGREE ON THAT ON BOTH SIDES OF THE AISLES, SO ANYTHING

5  YOU CAN DO TO GET US MORE JUDGES WOULD BE MOST APPRECIATED.

6  HOPE EVERYBODY HAS A GREAT AFTERNOON. DON'T ALL STORM OUT

7  AT ONCE. IF YOU DON'T -- BECAUSE THE ELEVATORS -- THERE ARE

8  ONLY A COUPLE, IF YOU KEEP GOING DOWN BEFORE YOU GET TO THE

9  HALL, THERE IS A SET OF STAIRS. AND EXERCISE YOUR LEGS AND

10  TAKE THE STAIRS.

11  HAVE A GREAT DAY. WE'RE ADJOURNED. THANK YOU.

12  (PROCEEDINGS WERE CONCLUDED AT 4:37 P.M.)

13  --OOO--

14  **CERTIFICATE OF REPORTER**

15

16  I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

17  FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

18  I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO,

19  NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS

20  HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR

21  OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

22

23  _Raynee H. Mercado_

24  RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR

25  FRIDAY, APRIL 12, 2013