1   Steve W. Berman (*Pro Hac Vice*)
    Jeff D. Friedman (173886)
2   Shana Scarlett (217895)
    HAGENS BERMAN SOBOL SHAPIRO LLP
3   715 Hearst Avenue, Suite 202
    Berkeley, CA 94710
4   Telephone: (510) 725-3000
    Facsimile: (510) 725-3001
5   steve@hbsslaw.com

6   Elizabeth J. Cabraser (083151)
    Richard M. Heimann (63607)
7   Eric B. Fastiff (182260)
    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
8   275 Battery Street, 29th Floor
    San Francisco, CA 94111-3339
9   Telephone: (415) 956-1000
    Facsimile: (415) 956-1008
10  ecabraser@lchb.com

11  Joseph W. Cotchett (36324)
    Steven N. Williams (175489)
12  Nancy L. Fineman (124870)
    COTCHETT, PITRE & McCARTHY, LLP
13  840 Malcolm Road
    Burlingame, CA 94010
14  Telephone: (650) 697-6000
    Facsimile: (650) 697-0577
15  jcotchett@cpmlegal.com

16  *Indirect Purchaser Plaintiffs*
    *Interim Co-Lead Class Counsel*
17
    [Additional Counsel Listed on Signature Page]
18
                    UNITED STATES DISTRICT COURT
19
                  NORTHERN DISTRICT OF CALIFORNIA
20
                          OAKLAND DIVISION
21
    IN RE LITHIUM ION BATTERIES          Case No. 13-MD-02420 YGR (DMR)
22  ANTITRUST LITIGATION
                                         CLASS ACTION
23
                                         FIRST CONSOLIDATED AMENDED
24                                       CLASS ACTION COMPLAINT
25
    This Documents Relates to:          DEMAND FOR JURY TRIAL
26
    ALL INDIRECT PURCHASER ACTIONS
27
                *   *   *   **REDACTED COPY**   *   *   *
28

010330-11 622968 V1

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................1

II.    DESCRIPTION OF LITHIUM ION BATTERIES ........................................6

       A.    Background of Batteries ..................................................................6

       B.    Lithium Ion Batteries......................................................................8

             1.    Properties and Types of LIBs ..............................................8

             2.    LIBs Are Commodity Products ...........................................12

III.   DEFENDANTS CONSPIRED TO RAISE AND STABILIZE LITHIUM ION BATTERY PRICES...........................................................................................15

       A.    Summary and Examples of Defendants' Overt Acts in Furtherance of Their Conspiracy ...................................................15

             1.    Defendants' Collusive Activities Began at Least as Early as 2000 and Continued Throughout the Class Period....................16

             2.    Examples of Defendants' Continued Conspiratorial Meetings and Communications in 2005......................................................29

             3.    Examples of Defendants' Continued Conspiratorial Meetings and Communications in 2006......................................................33

             4.    Examples of Defendants' Continued Conspiratorial Meetings and Communications in 2007......................................................34

             5.    Examples of Defendants' Continued Conspiratorial Meetings and Communications in 2008......................................................39

             6.    Examples of Defendants' Continued Conspiratorial Meetings and Communications in 2009......................................................46

             7.    Examples of Defendants' Continued Conspiratorial Meetings and Communications in 2010......................................................48

             8.    Examples of Defendants' Continued Conspiratorial Meetings and Communications in 2011......................................................50

       B.    Economic Evidence Shows Defendants' Conspiracy Succeeded ............................51

             1.    Defendants' Conspiracy to Raise LIB Prices Broke Apart Soon After They Received DOJ Subpoenas.........................................51

             2.    Prices for Lithium Ion Batteries During the Class Period Defied Industry Expectations ........................................................54

             3.    The Defendants' Pricing and Production Levels in Response to the Global Economic Crisis in 2008 Further Supports the Existence of the Conspiracy60

C.   The Structure and Characteristics of the Lithium Ion Battery Market Plausibly Support the Alleged Conspiracy ........................................................................61

      1.   The Lithium Ion Batteries Market Has High Barriers to Entry ...................61

      2.   The Demand For Lithium Ion Batteries Is Inelastic ......................................66

      3.   The Market For Lithium Ion Batteries Is Highly Concentrated ...................66

      4.   Trade Associations, Industry Conferences and Other Common Forums Available to Facilitate Collusion ....................................................................68

            a.   Battery Association of Japan .............................................................69

            b.   Korean Battery Trade Associations ...................................................70

            c.   Other Trade Associations ..................................................................72

D.   Government Investigations into a Lithium Ion Batteries Cartel ...............................73

E.   Defendants Have a History of Conspiring to Fix Prices for Critical Components of Consumer Electronics ................................................................................................76

      1.   The Role of the Packer Companies in the Industry. ......................................79

            a.   Simplo Technology Co., Ltd. ............................................................79

            b.   Celxpert .............................................................................................81

            c.   Dynapack ...........................................................................................82

IV.   MANNER AND MEANS OF THE CONSPIRACY .........................................................83

V.   THE INFLATED PRICES OF LITHIUM ION BATTERIES WERE PASSED THROUGH TO CONSUMERS ..............................................................................................................84

VI.   ANTITRUST INJURY ......................................................................................................87

VII.   PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.87

A.   The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not and Could Not Discover Their Claims ..............................................................................87

B.   Fraudulent Concealment Tolled the Statute of Limitations .....................................94

VIII.   TRADE AND COMMERCE AFFECTED BY DEFENDANTS' CONSPIRACY .............95

A.   Defendants' Conduct Involved Import Trade or Import Commerce .........................95

B.   Defendants' Conduct Had a Direct, Substantial, and Reasonably Foreseeable Effect on U.S. Domestic and Import Trade or Commerce That Gave Rise to Plaintiffs' Antitrust Claims ........................................................................................................97

IX.   JURISDICTION AND VENUE .......................................................................................103

1

X.      PARTIES ................................................................................................................105

        A.      Plaintiffs ....................................................................................................105

        B.      Governmental Plaintiffs .............................................................................113

        C.      Defendants ..................................................................................................114

        D.      Agents and Co-Conspirators ......................................................................120

XI.     CLASS ACTION ALLEGATIONS ....................................................................121

XII.    VIOLATIONS ALLEGED ...................................................................................129

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    The indirect purchaser plaintiffs listed in paragraphs 312-361 below ("Plaintiffs") bring this

2    action on their own behalf and as a putative class action on behalf of all others similarly situated in

3    the United States. Plaintiffs, by and through their attorneys, based on their individual experiences,

4    the independent investigation of counsel and consultants, and information and belief, allege as

5    follows based upon information known to date:

6                                    **I.    INTRODUCTION**

7            1.      Defendants are the world's largest manufacturers of Lithium Ion Batteries (defined

8    below), and include multinational corporations Samsung, LG, Sanyo, Sony, Panasonic, NEC,

9    Toshiba and Hitachi. "Lithium Ion Batteries," or "LIBs," are battery cells which are rechargeable

10   and which utilize lithium ion technology. Lithium Ion Batteries are sometimes also referred to as

11   secondary batteries. Lithium Ion Batteries power virtually every laptop computer, cellphone,

12   smartphone, digital music player (e.g., iPods), tablet device (e.g., iPads), digital camera and

13   camcorder, and cordless power tool used today. Defendants control a substantial majority of the $16

14   billion annual market for Lithium Ion Batteries, dominating sales to original equipment

15   manufacturers ("OEMs") such as Dell, HP, Apple and virtually every other household name

16   manufacturer of consumer electronics.

17          2.      Defendants engaged in a long-running conspiracy over more than a decade, the object

18   of which was to unlawfully fix, raise and stabilize prices for Lithium Ion Batteries in violation of

19   federal and state antitrust laws. Defendants' cartelization of the worldwide market is revealed in

20   Defendants' secret internal materials and records, some of which were recently produced to

21   Plaintiffs. Moreover, the United States Department of Justice ("DOJ") is conducting a criminal

22   investigation into anticompetitive conduct in the market for Lithium Ion Batteries.

23          3.      Plaintiffs and the proposed Classes consist of persons and entities who (1) indirectly

24   purchased a stand-alone Lithium Ion Battery manufactured by a Defendant, or (2) a Lithium Ion

25   Battery Product containing a Lithium Ion Battery manufactured by a Defendant, during the period

26   from and including January 1, 2000 through May 31, 2011 (the "Class Period"). The products

27   containing Lithium Ion Batteries and for which Plaintiffs and the Classes seek damages are laptop,

28

INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED        - 1 -
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR

010330-11 622968 V1

1    notebook, netbook, and tablet computers (such as iPads), mobile telephones, smartphones, digital

2    audio players (such as iPods), power tools, digital cameras and camcorders/digital video cameras, as

3    well as replacement batteries for each of the aforementioned products (collectively "Lithium Ion

4    Battery Products"). Due to Defendants' collusion, Plaintiffs and Class members were damaged by

5    paying artificially inflated prices for Lithium Ion Battery Products.

6        4.    As *The Economist* reported in 2002, "Lithium-ion batteries are the foot-soldiers of the

7    digital revolution. They power telephones, music players, digital cameras and laptops. They are

8    amazingly small and light, and can store more energy in less space than any other type of

9    rechargeable battery."[1] The report continued that "[w]ithout the lithium-ion battery, introduced a

10   decade ago, portable gadgets – from mobile phones and video cameras to laptops and palmtops –

11   would have remained brick-like objects best left on the desk or at home."

12       5.    Defendants' unlawful conduct is a textbook price-fixing cartel. That is, a small,

13   concentrated group of Lithium Ion Battery manufacturers, producing commoditized products, sought

14   to artificially increase prices by agreeing to restrain competition among themselves. Defendants'

15   agreement to fix and stabilize Lithium Ion Battery prices was accomplished through several

16   means. The means included restricting output and supply, agreeing on prices or price targets

17   (including price increases, and limiting price reductions), using common formulas tied to material

18   costs to set industry prices, and price-floors, below which Defendants would not agree to sell LIBs.

19   While the manner, means, and impact varied over time, the cartel's common goal during the

20   conspiracy was to artificially raise the prices of Lithium Ion Batteries above the competitive level.

21   And indeed, Defendants were successful, to the detriment of Plaintiffs and Class members.

22       6.    No later than 2000, Defendants were engaging in collusive discussions – including

23   face-to-face meetings and telephone conversations – for the purpose of providing confidential,

24   highly-sensitive information to each other concerning their manufacture and sale of Lithium Ion

25   Batteries. The collusive discussions and in-person meetings occurred among Defendants sometimes

26   on a monthly basis, and even more frequently at times during the conspiracy. Meetings between

27   ────────────

28   [1]   *Hooked on Lithium*, The Economist, http://www.economist.com/node/1176209 (last visited
     June 10, 2013).

INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR      - 2 -

010330-11 622968 V1

these competitors occurred at locations such as restaurants, airports, office buildings, and hotel meeting rooms. During these collusive meetings and discussions, it was understood that Defendants shared a common goal to restrain price competition. Defendants believed cooperation was important to limit price competition.  And so in furtherance of their common goal to limit price competition, Defendants  communicated to each other highly detailed information about pricing, capacity, utilization, demand, marketing and product development plans.

7.     The reason that Defendants held these collusive discussions over numerous years to restrain competition was because the market for Lithium Ion Batteries was experiencing pricing pressure based on the increasing commodity nature of Lithium Ion Batteries and new entrants who were willing to lower prices to increase their market share. The competitors quickly concluded that they did not want to wage a price war – and so they colluded instead of competed.

8.     By engaging in these collusive meetings, and systematically sharing highly-sensitive, competitive information, Defendants sought to, and did, achieve their joint goal of elevating Lithium Ion Battery prices. The Samsung and LG Defendants have produced confidential documents detailing some of Defendants' secret meetings in furtherance of the conspiracy. The documents reflect dozens of face-to-face conspiratorial meetings between Defendants, in which high-level executives with pricing authority discussed and agreed to cooperate to avoid price competition.  To achieve their common goal, these senior executives shared confidential pricing, capacity, utilization, demand, marketing, and product development future plans and strategies. Internal emails and other records document Defendants' conscious commitment to collectively stabilize and raise Lithium Ion Battery prices.

---

[2]     All emphasis in these documents have been added by Plaintiffs, unless otherwise indicated.





16.     Frequently, Defendants' collusive meetings occurred between two Defendants at one time. The same Defendants would then hold collusive meetings with other Defendants as well within days of each other. Or, the Defendants would simply pass along the meeting notes to their co-conspirators. It was understood based on the substance of the discussions in these meetings that Defendants had been having collusive discussions with other Defendants for the same purpose of collectively raising Lithium Ion Battery prices.

18.     Economic facts further support the existence of Defendants' conspiracy to raise Lithium Ion Battery prices. For example, very soon after the DOJ served subpoenas on some of the Defendants in mid-2011 relating to potential criminal antitrust violations in the market for Lithium

1    Ion Batteries, Defendants' prices rapidly dropped at a rate only seen during the prior decade in the

2    global recession.

3         19.    Defendants' conspiracy mirrors in many respects their conduct in other price-fixing

4    cases previously brought against them, their parents, or affiliates. These Defendants, their parents,

5    subsidiaries, and/or affiliates have orchestrated some of the largest global price-fixing conspiracies

6    witnessed in the past decade – fixing the prices of key components for consumer electronic goods, in

7    particular computers, televisions, and cellular phones. These entities, and many of their executives,

8    have pleaded guilty to price-fixing dynamic random access memory ("DRAM") chips, liquid crystal

9    display ("LCD") screens, optical disk drives ("ODD"), and cathode ray tube ("CRT") screens. These

10   component part conspiracies – like the conspiracy to fix Lithium Ion Battery prices – all have very

11   similar features, including: (a) a highly concentrated market, controlled by Asian corporations;

12   (b) pricing pressure exerted on the conspirators by large original equipment manufacturers ("OEMs")

13   seeking to price their products in a competitive consumer electronics market; (c) rapid

14   commoditization of new technology; and (d) pricing behavior inconsistent with a competitive

15   market.

16        20.    Just like these other criminal conspiracies, Defendants' conspiracy here successfully

17   targeted yet again another key component of consumer electronic goods by collusively setting

18   inflated prices for Lithium Ion Batteries. As a direct result, the prices of Lithium Ion Battery

19   Products, such as those purchased by the Plaintiffs and Class Members, were inflated by the illegal

20   overcharges being passed-on through the distribution channel to the end consumers.

21        21.    As further described below, competition authorities in at least the United States and

22   the European Union have been investigating a conspiracy in the market for Lithium Ion Batteries

23   since at least the first half of 2011. The DOJ is conducting a criminal investigation into

24   anticompetitive conduct in the market for Lithium Ion Batteries.

25                 **II.    DESCRIPTION OF LITHIUM ION BATTERIES**

26   **A.    Background of Batteries**

27        22.    Batteries are one of the primary sources of energy which power many different

28   machines and devices used every day. There are three different categories of batteries: 1) chemical;

INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR    - 6 -

010330-11 622968 V1

2) physical; and 3) biological. Chemical batteries generate electricity through a chemical reaction that occurs inside the battery. The batteries at issue in this case – Lithium Ion Batteries – are within the chemical family of batteries.

23.     Chemical batteries are generally classified as either "primary" or "secondary." Primary batteries are disposable batteries that one uses until they are expended, and then they are not reused and are discarded. Secondary batteries are rechargeable. Rechargeable batteries account for roughly 80% of all chemical batteries produced worldwide.

24.     There are four types of secondary batteries that account for the vast majority of secondary batteries: (1) Lithium Ion Batteries; (2) lead-acid; (3) nickel cadmium; and (4) nickel-metal hydride. Lithium Ion Batteries are by far the most popular type of rechargeable battery.

25.     Both Lithium Ion Batteries as well as nickel-metal hydride rechargeable batteries were introduced in or around 1991. Since that time, however, Lithium Ion Batteries have quickly become the most popular type of secondary battery, easily outpacing nickel-metal hydride and nickel cadmium rechargeable batteries. Figure 1 below compares the growth rates of Lithium Ion Batteries to nickel-metal hydride and nickel cadmium batteries from 1991-2010:

**Figure 1: Major Rechargeable Battery Production**



26. The European Commission ("EC"), in examining Panasonic's 2009 acquisition of

Sanyo, detailed the distinctiveness of Lithium Ion Batteries. The EC stated the following in its

"Article 6(s) Non-Opposition" dated September 29, 2009: "Portable rechargeable batteries come

mainly in three principle different chemistries, nickel-cadmium ("NiCd"), nickel-metal hydride

("NiMH") and Lithium-ion ("Li-ion"), which all have different physical and performance

characteristics."[3] The EC report rejected Panasonic's suggestion that nickel-metal hydride and

Lithium Ion batteries were a part of the same market:

> The market investigation does not support the Parties' submission. It
> has shown that both battery types belong to distinct product markets.
> The production facilities for NiMH batteries and Li-Ion batteries are
> completely different so that there is no supply-side substitutability. As
> the Parties themselves point out, each of these batteries chemistries
> gives the respective rechargeable battery distinctive physical and
> performance characteristics. These characteristics also necessitate a
> different product design for the end-application so that during the life
> time of a certain model, the two types of batteries are not substitutable.
> However, even in the case of new models, most market participants
> have indicated that they would not switch chemistry in response to a
> permanent price increase of 5-10%.

And the EC report concluded that after obtaining pricing data from the parties to further investigate

battery types, "the pricing analysis points towards a separate market for NiMH batteries and a

separate market for Li-ion batteries."

**B.      Lithium Ion Batteries**

      **1.      Properties and Types of LIBs**

27. A Lithium Ion Battery generally contains three primary components: (1) the negative

electrode (cathode); (2) positive electrode (anode); and (3) the electrolyte. The negative electrode of

a conventional Lithium Ion Battery is made from carbon, typically graphite. The positive electrode is

a metal oxide (usually a layered oxide (such as lithium cobalt oxide), a polyanion (such as lithium

iron phosphate), or a spinel (such as lithium manganese oxide)). The electrolyte is typically a

mixture of organic carbonates such as ethylene carbonate or diethyl carbonate containing complexes

---

[3]      Case No. COMP/M.5421-PANASONIC/ SANYO, Regulation (EC) No. 139/2004 Merger
Procedure, 2009 EUR-Lex CELEX LEXIS 5421 (September 29, 2009), *available at*
http://ec.europa.eu/competition/mergers/cases/decisions/m5421_20090929_20212_en.pdf.

of lithium ions (usually lithium salts such as lithium hexafluorophosphate, lithium hexafluoroarsenate monohydrate, lithium percolate, lithium tetrafluoroborate, and lithium triflate).

28.     Internally, the battery has a separator between the cathode and anode and is filled with the organic electrolyte solution. The separator prevents short-circuits that would occur if there were contact between the anode and cathode. At the same time, the separator protects the electrolyte solution and preserves the battery's conductivity. In the recharging process, lithium ions are released from the cathode into the electrolyte solution where they accumulate between the anode layers. During the discharge process, the ions return to the cathode. The movement of lithium ions between the cathode and the anode during the discharge process creates the electric current from the battery which powers the specific device it is used in. The following diagram illustrates the different parts of a Lithium Ion Battery as well as the discharge/recharge process.

**Figure 2: Lithium Ion Batteries**



**CHARGING**



**DISCHARGING**

29.     There are generally two primary steps in the manufacture of the batteries described herein. In the first step, the "cell" of the battery is manufactured which includes the cathode, anode, and electrolyte. The cell, and in some cases, multiple cells, are then assembled inside an enclosure.

1    In some cases, certain protection circuitry is also added inside the enclosure. The assembled product

2    is referred to as the "battery" or "module" and is the product that is placed inside a device to supply

3    power to the device. All of the Defendants named herein manufacture both raw lithium ion battery

4    cells as well as modules. The following is a depiction of multiple lithium ion battery cells placed

5    inside an enclosure with added protection circuitry.

**Figure 3: Lithium Ion Battery Cells Inside Enclosure**



13   30.    In addition to the manufacture and sale of raw lithium ion battery cells and modules,

14   the Defendants also sell raw cells to other entities commonly referred to in the industry as

15   "assemblers" or "packers." In these cases, the raw lithium ion battery cells made by Defendants are

16   incorporated into a module by assemblers who assemble the cells (and if necessary, circuitry) and

17   then sell the module under their own brand name. Whether a module is manufactured by a Defendant

18   or a packer, the raw cells in a finished battery or module make up the overwhelming cost of a

19   finished lithium ion battery module.

20   31.    Lithium Ion Batteries are generally divided into four different types: (1) small

21   cylindrical (solid body without terminals); (2) large cylindrical (solid body with large threaded

22   terminals); (3) prismatic, sometimes known as "square" (semi-hard plastic case with large threaded

23   terminals); and (4) lithium ion polymer, sometimes known as "pouch" (soft, flat body such as those

24   used in cell phones). Each Defendant manufactures and markets at least one type of Lithium Ion

25   Battery. Lithium ion cylindrical or prismatic batteries are used primarily in notebook computers,

26   camcorders, mobile phones, and other electronic devices. The following is a picture from Hitachi's

27   website of cylindrical and prismatic lithium ion batteries:

**Figure 4: Cylindrical and Prismatic Lithium Ion Batteries**



32.     Lithium ion polymer batteries have more freedom in battery shape which enables the battery to be easily and perfectly tailored to fit the device. The exterior of the lithium ion polymer battery is generally made of a laminate film which allows it to be more flexible in terms of its shape.

33.     One of the primary distinguishing features of lithium ion polymer batteries is that the lithium salt electrolyte is not held in an organic solvent, but rather in a solid polymer composite such as polyethylene oxide or polyacrylonitrile. The dry polymer design offers advantages over the traditional lithium ion battery in terms of fabrication and ruggedness since the electrolyte is a solid polymer as opposed to a gel or liquid electrolyte.

34.     Lithium Ion Batteries, as defined herein, include cylindrical, prismatic, and polymer Lithium Ion Batteries.

35.     Lithium Ion Batteries possess certain unique performance qualities which make them the most popular form of rechargeable battery. In addition, because of these characteristics, Lithium Ion Batteries are not interchangeable (not economic substitutes) with other types of secondary or rechargeable batteries such as nickel cadmium or nickel-metal hydride.

36.     Unlike other forms of rechargeable batteries (such as nickel-cadmium or nickel-metal hydride), Lithium Ion Batteries are the only rechargeable battery which do not suffer from any "memory effect." For example, if a nickel-cadmium battery is charged repeatedly to 70 percent capacity, the discharge voltage will begin to fall sharply from the 70 percent even after a full charge and eventually, the battery will be incapable of holding a charge. The battery essentially remembers 70 percent as the full capacity. Lithium Ion Batteries, on the other hand, do not suffer from the memory effect, and there is no risk to reducing the capacity of the battery when only partially charging the battery.

37.     A second feature which makes Lithium Ion Batteries unique is that they are more powerful than all other types of rechargeable batteries. For example, the nominal voltage of a nickel-metal hydride rechargeable battery is 1.2 volts. The nominal voltage of a Lithium Ion Battery, on the other hand, is 3.7 volts, nearly three times more powerful.

38.     Lithium Ion Batteries also possess a higher "energy density" than other types of rechargeable batteries. "Capacity" refers to the volume of electricity that a battery can hold. The energy volume in a battery is the voltage times the capacity. Lithium Ion Batteries possess high energy density, both per weight and per volume, as compared to other types of rechargeable batteries. Essentially, a lighter and smaller Lithium Ion Battery can generate the same amount of electricity as a heavier and larger battery of a different type. For example, Lithium Ion Batteries can be as much as 70 percent lighter and 60 percent smaller in volume than nickel hydride batteries but deliver the same amount of power.

39.     Lithium Ion Batteries also retain their charge better than other types of rechargeable batteries. For example, Lithium Ion Batteries lose only about 5 percent of their charge per month when idle. Other types of rechargeable batteries, like nickel-metal hydride batteries, lose nearly 20 percent of their charge per month when idle.

**2.     LIBs Are Commodity Products**

40.     Because of their superior performance characteristics, and their small size, Lithium Ion Batteries have become the standard battery used in consumer electronic products. It is estimated that about 40 to 50 percent of all Lithium Ion Batteries used today are used in small consumer electronic products such as cell phones and notebook computers. Much of the remaining market for Lithium Ion Batteries is for use in digital cameras, power tools, and other devices. Figure 5 shows the different products by volume in which Lithium Ion Batteries are used between 2002-2010.

**Figure 5: Shipments of Lithium Ion Batteries by Application**



41.     Lithium Ion Batteries are also highly standardized products, and interchangeable among the same type and across manufacturers. International standard-setting organizations, such as the International Electrotechnical Commission or the Institute of Electrical and Electronics Engineers develop standards to be followed by the manufacturers of Lithium Ion Batteries so that products which utilize Lithium Ion Batteries can be developed to accommodate a specific Lithium Ion Battery. For example, a Lithium Ion Battery "18650," refers to a cylindrical shaped battery measuring 18.6 millimeters in diameter by 65.2 millimeters in height with a nominal voltage of 3.6 volts and a capacity of 2250mAh.

42.     The Institute of Electrical and Electronics Engineers reported in 2008 that the "world increasingly runs on lithium-ion batteries." It continued that "[t]his is an industry ready for change but not necessarily expecting it, let alone striving for it. The big companies that dominate lithium-ion production – Sony, Panasonic, Sanyo, Samsung, and LG – are all selling batteries not much different from the ones they sold five years ago. Only the initial capacity of batteries has been increasing, at about 5 percent a year. Today they are ***commodity products***, manufactured in huge quantities and

1    sold at vanishingly slim profit margins."[4]

2        43.    In May of 2003, *EE Times* reported:

3            Practical economics more than ever dictate product paths, and thus
            there's also a *consolidation of form factors* for both cylindrical and
4            prismatic (rectangular) shapes ... "The industry seems to be focusing
            *on two standard polymer footprints*: 50 x 34 and 30 x 48 mm. Two
5            years ago, there were more than 20 different battery flavors." ... To
            keep their edge, [Japanese manufacturers] kept close tabs on the basic
6            consumer areas, by boosting the capacity of the *standard* 18650 Li-ion
            cell, long viewed as a primary building block for notebooks.
7
                            *       *       *
8
            "Lithium-ion batteries are still most widely used; the polymers are
9            picking up a bit, though," he said, noting the leap in materials research
            with various intermetallic compounds. "*Standardization* and cost are
10            the driving issues. *The number of package footprints is down to a
            very few, because a lot of different products make design engineers
11            nervous*. All of this is driving costs lower." Ultralife says it will boost
            the capacity for the industry-standard 18650 Li-ion cell, viewed as a
12            *primary building block for notebooks*, to 2.4 A-h by the end of the
            year."[5]
13
        44.    In a detailed July 20, 2012 investor report titled "*Lithium-ion batteries – A Japanese
14
    *tech growth story?*" Citi Research, a division of Citigroup Global Markets, Inc. told its investor
15
    clients that, with respect to notebook PC batteries, "a lack of progress in boosting battery output has
16
    resulted in *increasing commoditization*," and that "[t]he *commoditization* of cylindrical batteries
17
    used in notebook PCs continues."
18
        45.    Apple Inc., a major purchaser of Defendants' Lithium Ion Batteries during the Class
19
    period, presently states on its website: "Lithium-ion Batteries. Rechargeable lithium-based
20
    technology currently provides the best performance for your Apple notebook computer, iPod, iPhone
21
    or iPad. You can also find this *standard battery technology* in many other devices. Apple batteries
22
    share the characteristics common to lithium-based technology in other devices."[6]
23

24    _____

25        [4]    Tekla S. Perry, *The Lady and the Li-ion*, IEEE Spectrum (1 Mar 2008 5:00 GMT),
    http://spectrum.ieee.org/energy/renewables/the-lady-and-the-liion#. (Emphasis added.)

26        [5]    Vincent Biancomano, *Lithium Batteries Eye PCs, Autos*, EE Times (May 8, 2003 2:51 PM
    EDT), http://eetimes.com/electronics-news/4124557/Lithium-Batteries-Eye-PCs-Autos. (Emphasis
27    added.)

28        [6]    *Lithium-ion Batteries*, Apple, http://www.apple.com/batteries/ (last visited June 13, 2013).

46.     Samsung presently states on its website that "Both prismatic and cylindrical type batteries *have same [sic] operating mechanism basically*. Prismatic type is usually used for mobile devices and its general capacity is 500~1200mAh; whereas cylindrical type is mostly used for Notebook PC and camcorders and has 1600~2400mAh capacity which is higher than prismatic type."[7]

## III.     DEFENDANTS CONSPIRED TO RAISE AND STABILIZE LITHIUM ION BATTERY PRICES

### A.     Summary and Examples of Defendants' Overt Acts in Furtherance of Their Conspiracy

47.     Defendants' high-level executives engaged in a series of collusive meetings and communications starting in or around 2000, and continuing into 2011, all in conscious furtherance of their goal of inflating Lithium Ion Battery prices. Defendants varied the frequency of their collusive meetings and communications according to market conditions, sometimes meeting twice a year, sometimes quarterly, and sometimes within weeks or days of the last meeting or discussion.

48.     The Samsung and LG Defendants have produced documents in this case which show Defendants' acts in furtherance of their conspiracy.  These documents reflect at least dozens of collusive meetings among Defendants.  During these meetings, high-level executives with pricing authority discussed confidential future plans and strategies concerning pricing, capacity, utilization, demand, marketing and product development in furtherance and reinforcement of Defendants' conspiracy.

49.     In secret, Defendants shared past, present, and future production and capacity figures and forecasts to facilitate the object of their conspiracy, that is, raising Lithium Ion Battery prices to supra-competitive levels. Defendants' collusive discussions concerning price, output, and capacity provided necessary information to cartel members to reach agreement on what price levels should be offered to customers, and whether to indeed increase or decrease supply in order to restrict price competition. Defendants' collusive discussions were also used to police, enforce, and verify that each

---

[7]    *FAQ: Rechargeable Battery*, Samsung SDI, http://samsungsdi.com/f_faq_list.sdi?post=E&category=SA> (last visited June 13, 2013) (emphasis added).

member of the cartel was adhering to Defendants' plan to artificially raise Lithium Ion Battery prices.

50.     When memorializing their conspiratorial discussions, Defendants marked these internal documents as "Confidential." Samsung and LG prior to production in this case again marked these discussions "Confidential," emphasizing the secret, non-public nature of the collusive communications between top-level executives of competing companies.

51.     In these conspiratorial meetings, Defendants agreed to provide – and indeed did provide – *company-specific*, highly detailed data and information, not merely aggregated or industry-wide data.  The information was *non-public* and was not shared with non-participating companies or anyone else.

**1.     Defendants' Collusive Activities Began at Least as Early as 2000 and Continued Throughout the Class Period**

52.     By 2000, the Japanese Defendants produced 95 percent of the world's secondary batteries. In 1999 to 2000, however, the South Korean companies Samsung and LG entered the business. Samsung and LG began mass production in 2000.  That same year, Samsung began its secret and collusive communications with the Japanese Defendants. In at least as early as 2001, LG also began collusive efforts with the Japanese Defendants. These meetings involved commercially sensitive market information and not yet publicly available information, in addition to pricing information.  Defendants have produced documents memorializing many conspiratorial meetings.

53.     For example, documents demonstrate that between March 12, 2002 and March 16, 2002, Samsung met in Japan with Sanyo, SONY, Panasonic, Maxell and GMST.



INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR   - 17 -

010330-11 622968 V1



INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR          - 18 -

010330-11 622968 V1





INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR     - 20 -

010330-11 622968 V1





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR    – 25 –

010330-11 622968 V1





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



















1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR   - 42 -

010330-11 622968 V1



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR       - 45 -

010330-11 612906 V1



INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR

010330-11 622968 V1









1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**B.      Economic Evidence Shows Defendants' Conspiracy Succeeded**

      **1.      Defendants' Conspiracy to Raise LIB Prices Broke Apart Soon After They Received DOJ Subpoenas**

      161.    Defendants' illegal behavior, alleged herein, artificially stabilized and raised the prices of Lithium Ion Batteries during the Class Period. Lithium Ion Battery prices were higher than they would have been absent the conspiracy. Figure 6 is an index which shows the average selling prices for Lithium Ion Batteries during the Class Period.

**Figure 6: Bank of Korea Lithium Ion Battery Price Index**



162.    Coinciding with the worldwide economic crisis beginning in or around 2007, and the market shock to the demand for Lithium Ion Batteries and electronic devices, the prices for Lithium Ion Batteries declined. Beginning in or around January 2008, the prices for Lithium Ion Batteries began to decline.  This decline ended in or around January 2009; the price decline during this period was approximately 40 percent.

163.    During this period of declining prices during 2008, Defendants cut production in response to change in demand and to help stem the decline in prices. Beginning around 2008, Defendants cut worldwide production for Lithium Ion Batteries by almost 66 percent. This dramatic cut in production achieved its desired result – the prices for Lithium Ion Batteries stabilized by the end of 2009.

164.    Lithium Ion Battery prices remained stable until Defendants received notice in mid-2011 that they were being investigated for price-fixing Lithium Ion Batteries by the DOJ and the European Union. Both the Japanese and Korean producer price indexes for Lithium Ion Batteries fell after Defendants disclosed they were being investigated. In fact, within three (3) months following disclosure of the investigation in 2011, prices began an approximate 10 percent decline in a mere three (3) months. Such a price decline would be predicted with the end of a cartel which had artificially raised prices, and further supports the conspiracy's existence before this time.

165.    On May 3, 2011, Sony received a subpoena from the DOJ for information on competition in rechargeable batteries, and disclosed this information in late June. The chart below shows the Bank of Japan's export price index for Lithium Ion Batteries prior to this announcement and prices following the announcement. Comparing the average from January 2010 to June 2011 with the average from July 2011 to January 2012, prices fell by nearly 7 percent between June and July 2011. From July 2011 to January 2012, prices were 9 percent lower.  Figure 7 shows the steep drop in Lithium Ion Battery prices that occurred after the DOJ served subpoenas on Defendants.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

**Figure 7: Prices of Lithium Ion Batteries Surrounding Announcement of DOJ Investigation**



*Source: Bank of Japan.*

17    166.    Using an additional Lithium Ion Battery price index maintained by the Bank of Korea

18  which spans the Class Period, it is apparent that the drop in mid-2011 is indeed significant. Similar to

    the Bank of Japan index, the Korean price index also shows a one-month drop of more than 6 percent

19  from August to September 2011 (the drop in the Japanese index occurs from June to July 2011). This

20  6 percent drop was part of three successive months of price drops that totaled almost 16 percent

21  between July and October. The only other time during the Class Period where similar price declines

22  can be observed is between August 2008 and February 2009, when the industry was experiencing a

23  demand shock due to the effects of the global recession. Figure 8 therefore is a different price index

24  (from the Bank of Korea) which shows Lithium Ion Battery prices from January 2002 to January

25  2012.  Again, this economic data depicts a large and unusual historical price reduction following

26  close in time to the DOJ's investigation.

27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Figure 8: Bank of Korea Lithium Ion Battery Price Index and Large Three-Month Price Declines**



Source: Bank of Korea (converted to USD using exchange rates in Bloomberg).

## 2. Prices for Lithium Ion Batteries During the Class Period Defied Industry Expectations

167.    Many analysts predicted that given the economics of the marketplace, prices of Lithium Ion Batteries would go down during the Class Period. But prices not only failed to decline throughout most of the Class Period – prices actually rose, defying industry expectations.

168.    Lithium Ion Batteries underwent continuous technological change that rapidly improved the energy density of the batteries (watt-hours delivered per weight or volume) and reduced costs. Energy density, measured in watt-hours per kilogram or watt-hours per liter, more than doubled for Lithium Ion Batteries over the decade from 1991 to 2001. Such technological

progress continued unabated over the past decade – today, energy density is as high as 250 wh/kg, or 620 wh/l, for Lithium Ion Batteries.[8]

**Figure 9: Performance Improvement and Price Decline in Li-Ion Batteries, 1991-2002**



Source: Institute of Information Technology, Ltd. Japan. 2002.

Reproduced from R. Brodd, "Factors Affecting U.S. Production Decisions: Why are There No Volume Lithium-Ion Battery Manufacturers in the United States?" ATP Working Paper 05-01, National Institute of Standards and Technology, U.S. Department of Commerce, June 2005, p. 62.

169.   Scientists, engineers, and industry analysts expected to see the declining prices for Lithium Ion Batteries shown in Figure 9 to continue their steep descent during the period following 2002. Numerous technical studies undertaken in the early to mid-2000s predicted that scale economies and learning curves would act to sharply lower cost as production volumes expanded. Figure 10 below is typical of such predictions.

---

[8]   *Panasonic Develops New Higher-Capacity 18650 Li-Ion Cells; Application of Silicon-based Alloy in Anode*, Green Car Congress (Dec. 25, 2009), http://www.greencarcongress.com/2009/12/panasonic-20091225.html.

**Figure 10: Reduction in Li-ion Battery Manufacturing Cost with
Scale of Production**

NiMH vs Li-Ion HEV Cell Cost/Volume Curve (50k-3M HEV/year)



Source: Internal Studies at Ford, taken from presentation by T. Miller, "Hybrid Battery Technology and Challenges," MIT Technology
Review's Emerging Technology Conference, (September 28, 2006), reproduced in M.A. Kromer and J.B. Heywood, "Electric
Powertrains: Opportunities and Challenges in the U.S. Light-Duty Vehicle Fleet," Publication LFEE 2007-03 RP, Laboratory for
Energy and the Environment, MIT, May 2007, p. 36 (hereafter "Kromer and Heywood").

170. The study cited in Figure 10 also notes the rapid pace of continuing technological

improvement: "while the NiMH [nickel metal hydride] battery is nearing fundamental practical

limits . . . lithium ion batteries are still improving. With continued improvements in charge storage

capability, lithium-ion's advantage will become more pronounced with the passage of time...Though

this trend has slowed somewhat in recent years with the maturation of cobalt- and nickel metal-oxide

based lithium-ion batteries, other materials have the potential to allow for continued growth ...."[9]

171. The authors of this 2006 study go on to observe that:

> In addition to this fundamental advantage with respect to specific
> energy and power, lithium-ion batteries also offer the potential for
> lower cost as the technology matures and production volumes increase.
> Although more expensive than NiMH batteries today, lithium-ion
> batteries scale more readily to high volume production hence have
> greater potential for cost reduction. . . . Perhaps more importantly,
> while the most expensive constituent materials of NiMH battery are
> intrinsically tied to the commodity price of nickel (relatively

---

[9]   M.A. Kromer and J.B. Heywood, *Electric Powertrains: Opportunities and Challenges in the
U.S. Light-Duty Vehicle Fleet*, Publication LFEE 2007-03 RP, Laboratory for Energy and the
Environment, MIT, May 2007, p. 36.

expensive), lithium ion batteries may be made from a number of different fungible materials. . . . Over the longer-term, there is strong potential to transition to even lower cost materials."[10]

172.    As seen in Figure 11 below, which represents production figures for Lithium Ion Batteries manufactured by Japanese manufacturers (responsible for the lion's share of global production throughout this decade), the predicted expansion in the production volume of Lithium Ion Batteries did indeed materialize. Batteries produced in Japan more than tripled from just below 34 million units in January 2001, to almost 118 million units in July 2011. The power provided by these technologically improved batteries increased twice as fast, by a factor of almost six over the same period, from just over 34 million Ah (amp-hours), to over 200 million Ah in July 2011.

**Figure 11: Increase in Production Volumes for Li-Ion Batteries in Japan 1000's of Units and Ah**



Source: Japan, Research and Statistics Department, Ministry of Economy, Trade and Industry (METI), *Yearbook of Machinery Statistics*, *Monthly Report of Machinery Statistics*, various years.

173.    Thus, analysts were confident in predicting continuing price declines in Lithium Ion Batteries at the beginning of this decade. Basic economics supports the notion that these rapidly increasing volumes of production should have been associated with continuing price declines for

---

[10]    *Id.*

1   Lithium Ion Batteries in a competitive market. After price declines prior to 2002, and flat prices in

2   2003, industry analysts continued to predict continued annual 7 percent declines in Lithium Ion

3   Battery prices after 2003. However, these continuing price declines predicted by both technologists

4   and market analysts did not materialize because of the formation of the price-fixing cartel alleged in

5   this Complaint. The interruption of this trend in 2003 was viewed merely as a temporary deviation

6   from the expected trend, rather than the beginning of a collusive effort by producers to prevent

7   further declines in prices.  Figure 12 shows analysts' predictions that prices would continue to

8   decline as they had done in previous years – but they did not.

9   ### Figure 12: Historical and Forecast Prices for Batteries, April 2004



23  Source: International Association for Advanced Rechargeable Batteries,
    www.rechargebatteries.org/MarketDataRechargeableBatteries.pdf.

24      174.    These trends in pricing that defied industry expectations are evident in the official

25  government producer price index for Lithium Ion Batteries constructed by the Bank of Korea, Korea

26  being the second most important location for Lithium Ion Batteries production (after Japan, which

27  did not start producing a Lithium Ion Batteries price index until 2010). A price index, unlike an

CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR      - 58 -
010330-11 622968 V1

average unit value for batteries, controls for changes in mix of size and qualities of batteries being produced.

**Figure 13: Lithium Ion Battery Price Indexes, 2000-2012**



Source: Bank of Korea, Bank of Japan. Price indexes have been converted to dollar equivalents using Federal Reserve exchange rate data.

175.     Figure 13 shows that after the decline in prices beginning in early 2000 (triggered by entry of Korean producers into the market), the cartel members managed to arrest any continuing decline in Lithium Ion Battery prices, and, defying industry expectations, even increased prices, over a five year period, from early 2002 through early 2008. This effort was highly successful in not only reducing the rate of decline, but actually elevating Lithium Ion Battery prices until the Great Recession struck in 2008. At that point, as markets for the mobile consumer electronics and information technology products reliant on the use of Lithium Ion Batteries were impacted by the recession, prices started to reduce once again, at an even steeper rate than had been triggered by Korean entry back in early 2000.

3.    **The Defendants' Pricing and Production Levels in Response to the Global Economic Crisis in 2008 Further Supports the Existence of the Conspiracy**

176.    As the global recession reduced demand for the devices which use Lithium Ion Batteries, prices for these batteries also dropped. In fact, prices for Lithium Ion Batteries would fall roughly 34 percent from August 2008 through January 2009. Faced with rapidly decreasing prices during this time, cartel members sharply cut back production of Lithium Ion Batteries. Japanese cartel members dramatically cut production from 125 million units a month in September of 2008, to 52 million units per month in January of 2009, engineering a reduction in output of 58 percent over a period of just four months. (Alternatively, if measured by the power capacity – Ah – of the batteries, the same 58 percent reduction occurred). Then, just five months later, Japanese production shot back up near pre-economic crisis levels to approximately 103 million units per month.

177.    Defendants' near 60 percent reduction in output successfully arrested further decline in prices, while the continuing restraint in not resuming production growth after 2008 successfully stabilized prices at a roughly constant level, and stemmed further price declines.

178.    Economic principles teach that when producers are behaving competitively, they expand output to where price just covers the incremental or marginal cost of the last unit produced. Defendants' reduction in production by 58 percent – only to increase output five months later to nearly the same production levels (while holding prices the same) – is not plausibly explained by competitive forces.

179.    This production and pricing behavior is better (more plausibly) explained by the existence of an anticompetitive agreement, because when Defendants raised production a mere five months later, they maintained prices at the same level as before the reduction in output. In other words, Defendants' production and pricing behavior would only be consistent with competition if incremental production costs had somehow been cut by a huge amount – 34 percent – over the intervening five months. This could then possibly support an inference of competitive prices remaining at the same levels when production returned to nearly the same levels. But as shown below, input costs for Lithium Ion Batteries do not explain Defendants' pricing and production behavior.

**C.   The Structure and Characteristics of the Lithium Ion Battery Market Plausibly Support the Alleged Conspiracy**

180.    The structure and other characteristics of the Lithium Ion Battery market are conducive to cartel behavior, and have made collusion particularly attractive in this market. Specifically, the Lithium Ion Batteries market: (1) has high barriers to entry; (2) has inelasticity of demand; (3) is highly concentrated; (4) features a high-level of contact among Defendants via trade associations and industry conferences; and (5) is characterized by other features supportive of collusion.

**1.   The Lithium Ion Batteries Market Has High Barriers to Entry**

181.    A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supra-competitive pricing. Where, however, there are significant barriers to entry, new entrants are less likely. Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

182.    There are substantial barriers that preclude, reduce or make more difficult entry into the Lithium Ion Batteries market. A new entrant into the business would face costly and lengthy start-up costs, including multi-million dollar costs associated with research and development, manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor and long-standing customer relationships. As F.H. Sung, chairman and CEO of Simplo Technology Co., Ltd., the Taiwanese battery pack manufacturer that is a major customer of Defendants and discussed herein, aptly stated in December 2009, "No amateurs can make good batteries, especially overnight, as the business calls for major investments and cutting-edge technologies."[11]

183.    It has been estimated that the cost to build a plant to manufacture Lithium Ion Batteries that is capable of producing 3 million cells per month is approximately $3 to $4 per cell. Thus, a plant making 3 million cells per month would cost approximately $108 to $144 million. This estimate does not include the cost of research, development, and engineering that produced the technology and equipment designs for the plant.

---

[11]   *Simplo Technology CEO Self-promotes with Analysis of Li-ion Cell Biz*, Articlesbase (Dec. 30, 2009), http://www.articlesbase.com/electronics-articles/simplo-technology-ceo-selfpromotes-with-analysis-of-liion-cell-biz-1642348.html.

184.   In addition to the large costs of building a plant, given the nature of the materials used in Lithium Ion Batteries, any new entrant will be required to comply with various environmental regulations in whatever jurisdiction such plant is built. Compliance with such regulations will require extensive testing and the receipt of government approvals, all of which will take many years.

185.   Moreover, significant patent and/or licensing expenditures are a prerequisite to competing in the industry. For example, Samsung stated the following in March 2000:

> Samsung SDI plans to construct a cooperative relationship with its affiliated companies and, together with the Samsung Advanced Institute of Technology, to obtain the basic core technology and process technology which are necessary for the commercialization of the battery.

> Samsung SDI has secured a firm position in the battery industry by obtaining access to the basic patents and technology for the lithium-sulfur battery as well as the lithium-ion battery and the lithium-polymer battery. This means that SDI has surpassed the replication phase of other advanced products and has stepped into a new phase: Samsung has secured, for the first time among Korean companies, competitive and highly qualified technology and products to compete with Japanese companies *that today hold hegemony in the worldwide batteries market.*[12]

186.   In April 2011, GoldSea Inc. reported that "Japan remains the undisputed leader in battery technology, with 2,206 lithium-ion battery patents registered in the U.S., and two-thirds of all patents in the field last year. The U.S. was second with 679 and Korea third with 463."[13]

187.   Other factors further limit new entrants. For example, in April 2012, Korea IT Times reported that "China has yet to increase its market share because it has not attained a trusted brand name, which is essential for success in the industry."[14] The U.S. Government's Advanced Technology Program ("ATP") (part of the U.S. Department of Commerce's National Institute of Standards and Technology) stated the following in December 2006 report titled "Factors Affecting

---

[12]   *Samsung SDI to Take an Equity Share in PolyPlus*, Samsung SDI (March 15, 2000), https://www.samsung.com/us/news/455.

[13]   *Japan, S. Korea in Tight Lithium-Ion Battery Race*, GoldSea Asian American Business, http://goldsea.com/Text/index.php?id=10735 (last visited June 30, 2013).

[14]   Kim Sung-Mi, *Korean Secondary Battery Leaping 10 years, Overtaking Japan*, Korea IT Times Global News Network (Apr. 27, 2012), http://www.koreaittimes.com/story/21199/korean-secondary-battery-leaping-10-years-overtaking-japan.

1    U.S. Production Decisions: Why are There No Volume Lithium-ion Battery Manufacturers in the

2    United States?":

3
> Because of safety and performance considerations, Li-ion
> manufacturers (except those in China) do not sell individual cells.

4
> Japanese cell manufacturers sell only battery packs with safety devices
> included. A battery pack can consist of a single cell, or multiple cells

5
> connected in series or in parallel, to give the required voltage and
> capacity. Individual cells from major Japanese manufacturers are

6
> available only to outside pack assemblers on approval of their
> electronic control circuitry in the pack.

7

8
> Individual cells are available from Chinese manufacturers, but are
> often of inferior quality. They often lack the usual safety features in
> cell design and electronic controls and thus constitute some danger to

9
> the public. This is not true for responsible manufacturers who try to
> match the world standard of performance. The replacement market for

10
> Li-ion cells is minimal. Of the purchasers of a new piece of equipment
> such as a cell phone or a notebook computer, about 30 percent will buy

11
> a second battery pack from the OEM. After that, replacement sales
> account for less than 2 percent of total battery sales. People typically

12
> buy a new, higher performance notebook computer about the time that
> their old battery would need replacement.[15]

13

14       188.     In a detailed July 20, 2012 investor report titled *"Lithium-ion batteries – A Japanese*

15    *tech growth story?"* Citi Research, a division of Citigroup Global Markets, Inc., informed its investor

16    clients that "We think that the local Chinese battery makers operate in a market that is basically

17    independent of the global lithium-ion battery market, as it is a low-end field which Japanese and

18    South Korean firms do not target and the major sources of demand, such as makers of 'white box'

19    goods, are in the gray zone." The report continued that "The big Chinese firms of BYD, BAK, and

20    Tianjin Lishen Battery have entered the consumer electronics battery market but they have quality

21    and technology issues. . . ."

22       189.     In a 2008 presentation, Tesla Motors noted in a slide titled "Profitability of Li-ion

23    manufacturing" that "U.S. companies have difficulty justifying this commodity business (GE for

24

25

26

---

27
> [15]   Ralph J. Brodd, *Factors Affecting U.S. Production Decisions: Why are There No Volume Lithium-Ion Battery Manufacturers in the United States?* at 29-30 (Nat'l Inst. of Standards and Tech. ATP Working Paper Series, Working Paper 05–01, June 2005), *available at* http://www.atp.nist.gov/eao/wp05-01/wp05-01.pdf.

28

1   example) and that "[l]arge Asian manufacturers can justify this business by supporting related

2   electronics divisions (cell phones, laptops, cameras, etc.) and through government support."[16]

3       190.   The U.S. Government's ATP report further stated the following in December 2006:

4   "Success in the rechargeable market requires knowledge of the electrical requirements for emerging

5   products that use batteries as well as the ability to generate rapid product improvements to meet the

6   demand and then to assemble the unit cells into battery packs for use in the device. Most U.S.

7   producers have lacked this marketing and design/production infrastructure. Large Japanese vertically

8   integrated, consumer electronics companies have this infrastructure in place. These companies are

9   major players in both [the] primary and rechargeable battery industries."[17] The report continued:

> Japanese companies are geographically closer to other Asian markets for selling their products, sourcing production, and working with other makers of portable devices. The Japanese battery supplier is most often part of a vertically integrated Japanese electronics company. Proximity to the device designer gives them a significant advantage in developing new products for the market. In the United States, major battery producers are "on the outside looking in," with limited access to or understanding of the needs of portable electronic device manufacturers. Device manufacturers such as Motorola and HP do not share new product concepts and developments with U.S. battery manufacturers.

> It is even more difficult for U.S. manufacturers to identify new battery requirements for devices that are being developed in Japan, the heartland of portable device developments. The Japanese market is not readily accessible to non-Japanese companies, making it very difficult for U.S. battery manufacturers to act as suppliers of the batteries for new products developed in Japan. As a result, the U.S. battery manufacturers were unable to take advantage of the introduction of the Li-ion battery to the portable device market in 1991.

> *   *   *

> The relationship of battery suppliers/manufacturers to the OEM manufacturers of portable electronic devices follows two patterns. In the vertically-integrated Japanese electronic companies, device designers and battery groups are equal partners in developing leading edge new products. The intensity of market competition in Japan has resulted in the recognition by both groups that having batteries of the highest capacity is critical to device sales. Designers of battery components have advanced notice of the needs of the device designers.

---

[16]   JB Straubel, *Mobile Battery Market Overview*, Tesla Motors (Sept. 16, 2008), http://www.whitehouse.gov/files/documents/ostp/PCAST/PCAST%20Sep.%202008%20Straubel%20slides.pdf.

[17]   *See* Brodd, *supra* note 15 (at 23).

They thus have time to develop a battery with special characteristics or offer an improved version of their present battery for incorporation into the device.

This coordination between device designer and battery manufacturer does not exist in the United States. Since new device designs constitute very sensitive business information, the device designer will not share detailed information on the battery needs with outside battery suppliers until the device is almost ready for production. Once new device designs are complete, OEMs specify battery requirements. They then use their specification to purchase from suppliers worldwide, based on price.

The relationship of U.S. battery manufacturers to device designers, including U.S. cellular phone, notebook computer, and other wireless manufacturers, is distant. The device designer imposes new product requirements. The device manufacturers develop relatively detailed battery performance specifications and buy against their specifications on price. They also want at least two suppliers of each component to have an assured supply to meet their needs. The battery manufacturers have relatively little advance warning when a new cell size is required for a new device. U.S. and European device manufacturers would buy a battery product from U.S. suppliers if it were available and the cost and performance were competitive.

All interviewees from U.S. battery manufacturers felt strongly that device designers place the battery last in their designs. The cavity provided for the battery is often an afterthought and undersized for the expected performance. It often does not fit particular battery sizes and shapes that are currently being manufactured.[18]

191.   The ATP report continued as follows:

Since Japanese battery manufacturers are invariably part of large, vertically integrated electronics corporations, their device designers and battery developers readily share new product information. Early in the product development cycle, the battery group has inside information on the new requirements, sizes, and performance specifications. Conversely, the device designer is aware of attainable capabilities for battery performance. Each has time to respond to the evolving needs of the other.[19]

192.   The ATP report continued as follows:

In markets for rechargeable batteries, customers are large, high-technology-based electronics companies, typically having Li-ion production within the same company. Developing a product requires close contact with portable electronic device designers.

---

[18]   *Id.* at 25-26.

[19]   *Id.* at 29.

Huge investments have been made in Japan, Taiwan, South Korea, and Southeast Asia in a global effort to capture the market for rechargeable batteries for telecommunications, wireless, and computer products.[20]

193.   The ATP report continued as follows:

Sony, Matsushita, and Sanyo all had significant R&D programs in the area, and each invested about $150 million in production facilities in quick succession. Starting in 1991, they invested heavily in production capability; this investment continued throughout the decade and, in some cases, amounted to as much as $1 to $2 billion or more.[21]

**2.      The Demand For Lithium Ion Batteries Is Inelastic**

194.   "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other. For example, demand is said to be "elastic" if an increase in the price of a product results in diminished revenues, with declines in the quantity sold of that product outweighing the effects of higher prices on the value of sales. For products with a highly elastic demand, a price increase results in a large drop in the value of sales. In other words, customers have many feasible alternatives for cheaper products of similar quality, and so cut purchases sharply in the face of even a small price increase.

195.   For a cartel to profit from raising prices above competitive levels, market demand must be relatively less elastic at competitive prices. That is, an increase in prices should not cause a huge decline in demand. Otherwise, increased prices would result in sharply declining sales, as some customers purchased substitute products or declined to buy altogether. A less elastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and sufficient lost sales revenues as to offset the beneficial effect of higher prices on profits for products they still continue to sell.

196.   Demand for Lithium Ion Batteries is not very elastic because there are no close substitutes for these products.

**3.      The Market For Lithium Ion Batteries Is Highly Concentrated**

197.   Market concentration facilitates collusion. If an industry is divided into a large number of small firms, the current gain from cheating on a cartel (profits from sales captured from

---

[20]   *Id.* at 47.

[21]   *Id.* at 71.

other cartel members through undercutting of the cartel-fixed price in the current time period, which risks causing the cartel to fall apart in the future) is large relative to the firm's possible gains from the cartel's continuing future success (the firm's future share of the total cartel profits if collusion were to continue successfully). Conversely, with a more concentrated industry, a greater share for a colluding firm in future cartel profits tips the balance in favor of continued collusion, and away from any short-term, transitory bump in profits that could be achieved by undercutting the cartel price and gaining a transitory increase in market share.

198.   Empirical scholarship on cartels has primarily focused on a concentration measure called the CR4 – the four-firm concentration ratio, the share of product sales accounted for by the four largest firms – as a diagnostic in analyzing what levels of concentration facilitate multi-firm collusion.[22]

199.   A seminal published study of the DOJ's price-fixing investigations found that 76 percent of these cartels occurred in sectors with CR4s of 50 percent or greater, which was about double the average CR4 for manufacturing. Fully a quarter of these cartels therefore were still organized in markets with a less than 50 percent share held by the four largest firms.[23]

200.   Figure 14 below shows that the CR4 exceeded 60 percent in the market for Lithium Ion Batteries for all of the proposed class period, topping 80 percent in some years. The market share of the alleged cartel members never fell below 70 percent, and reached to almost 90 percent in some years.

---

[22]   The advantage of the $CR_4$ in predicting the relationship between concentration and the likelihood of collusion is that it does not vary with the degree of asymmetry in an industry (unlike the Herfindahl-Hirschman index (HHI), which as Motta notes, "confounds two factors – higher average market share and asymmetry"). Motta observes that if "the measure of concentration does not vary with asymmetry – as for the concentration ratios, $C_k$, that sum the market shares of the $k$ largest firms in the industry – then an increase in measured concentration should correspond to a higher likelihood of collusion." Massimo Motta, Competition Policy, Theory and Practice 143 (Cambridge University Press 2004).

[23]   See G.A. Hay & D. Kelley, *An Empirical Survey of Price-Fixing Conspiracies*, 17 Journal of Law and Economics (1974).

**Figure 14: Four-firm Concentration Ratios and Cartel Member Shares in the Lithium Ion Battery Industry**

Global Li-Ion Battery Market Share Percentages

| | 2000[1] | 2005[1] | 2008[2] | 2008[3] | 2010 Q3[2] | 2011[3] |
|---|---|---|---|---|---|---|
| Sanyo | 33.0 | 28.0 | 22.0 | 23.0 | 20.0 | |
| Panasonic | 19.0 | 10.0 | 6.0 | 7.0 | 6.0 | 24.0 |
| Samsung SDI | 0.4 | 11.0 | 15.0 | 15.0 | 20.0 | 24.0 |
| LG Chemical | 1.3 | 6.5 | 7.0 | 7.0 | 14.0 | 16.0 |
| Sony | 21.0 | 13.0 | 15.0 | 14.0 | 11.0 | 8.0 |
| BYD | 2.9 | 7.5 | 8.0 | 9.0 | 5.0 | 5.0 |
| BAK | | | 7.0 | 6.0 | 6.0 | 4.0 |
| TDK | | | | 4.0 | | 4.0 |
| Hitachi Maxell | 3.4 | 3.3 | 5.0 | 4.0 | | 3.0 |
| Toshiba | 11.0 | | | | | |
| NEC TOKIN | 6.4 | 3.6 | | | | |
| All Others | 1.6 | 17.1 | 15.0 | 11.0 | 18.0 | 12.0 |
| CR₄ | 84.0% | 62.0% | 60.0% | 61.0% | 65.0% | 72.0% |
| alleged cartel members | 89.1% | 71.8% | 70.0% | 70.0% | 71.0% | 75.0% |

Sources and Notes:
[1]Market shares by value from METI (http://www.meti.go.jp/english/information/downloadfiles/PressRelease/060828VehicleBatteries.pdf).
[2]Market shares by value from January 26, 2011 Deutsche Bank Group report on LiB Materials Industry (citing METI and Nikkei Business Daily).
[3]Market shares by volume from July 20, 2012 Citi Research report on Lithium-Ion Technology and Equities (citing TSR and Citi Research). Panasonic's 2011 market share contains Sanyo's (whom it merged with in 12/2009).

201.    In a detailed July 20, 2012 investor report titled "*Lithium-ion batteries – A Japanese tech growth story?*" Citi Research, a division of Citigroup Global Markets, Inc., informed its investor clients that "The Big 3 of Panasonic, Samsung SDI, and LG Chem have a combined market share of over 60% and *the market is increasingly becoming an oligopoly.*" In a September 2011, 2008 article in the *Taipei Times*, Jackie Ding, the CFO of major Taiwanese packer Simplo Technology Co., one of Defendants' primary customers, was quoted as stating "*All those cell players, what they do is control the market.* . . . If it's in oversupply status, then the oversupply will hurt them, while for us it will be an advantage."[24]

**4.    Trade Associations, Industry Conferences and Other Common Forums Available to Facilitate Collusion**

202.    Defendants are members of numerous trade associations, and participate in numerous major industry trade shows, conferences, and seminars, providing Defendants with ample opportunities to further implement, facilitate, reinforce and monitor collusive activity under the guise of legitimate business undertakings, including travel and information exchanges.

---

[24]    *Simplo Expects Cell Shortage to Last*, Taipei Times (Sep 11, 2008), http://www.taipeitimes.com/News/biz/archives/2008/09/11/2003422889.

1

### a.   Battery Association of Japan

2       203.   As noted herein, Japanese companies pioneered and initially dominated the world

3   market for Lithium Ion Batteries, and they formed trade associations to facilitate their activities. GS

4   Yuasa International Ltd., Hitachi Maxell, Ltd., NEC Energy Devices, Ltd., Panasonic Corporation,

5   Sony Corporation and Toshiba Corporation are listed as "Regular Members" of the "Battery

6   Association of Japan" (the "BAJ").[25] The "Samsung Yokohama Research Institute" is listed as an

7   "Associate Member."[26] The BAJ was formed in 1997 with the merger of the Japan Dry Batteries

8   Industries Association and the Japan Storage Battery Industries Association.[27] The BAJ states that

9   the "Main Products of the Regular Member Companies" include Lithium Ion Batteries.[28]

10       204.   The BAJ lists its current Chairman as Mitsuru Homma[29], an Executive Director &

11   Executive Vice-President of Defendant Sanyo Electric Co., Ltd. and a member of the Board of

12   Directors of Defendant Panasonic Corporation.[30]

13       205.   The BAJ has a myriad of committees and subcommittees, such as the "Secondary

14   Battery Division," the "Secondary Battery Division 2," the "Standardization Committee," the

15   "International Battery Standardization Committee," the "Material Procurement Committee," the

16   "Next Generation Storage Battery Committee," the "Marketing Committee," and the "Technology

17   Committee."[31]

18       206.   The BAJ lists its "Main Tasks" as including the "standardization activities of battery

19   specifications," which includes participating "in the TC21, the SC21A and the TC35 meetings as a

20

21   [25]   *BAJ Organization*, Battery Association of Japan,
     http://www.baj.or.jp/e/about/membership01.html (last visited June 13, 2013).

22   [26]   *Associate Members of Battery Association of Japan*, Battery Association of Japan
     http://www.baj.or.jp/e/about/membership02.html (last visited June 13, 2013).

23
     [27]   *History of Batteries and BAJ*, Battery Association of Japan
24   http://www.baj.or.jp/e/about/history.html (last visited June 13, 2013).

25   [28]   *Objective of the Battery Association of Japan (BAJ)*, Battery Association of Japan
     http://www.baj.or.jp/e/about/overview.html (last visited June 13, 2013).

26   [29]   *Id.*

     [30]   *Members of the Board & Corporate Auditors*, Panasonic Corporation,
27   http://panasonic.net/sanyo/corporate/profile/management.html (last visited June 13, 2013).

28   [31]   *See BAJ Organization, supra* note 25.

member of the International Electrotechnical Commission (IEC), an international standards council, and works to promote IEC standards." The BAJ further acts as "Secretary of the Commission, supervises the SC21A and TC35 meetings, and acts as the chair of the working group."[32]

207.    The BAJ lists another of its "Main Tasks" as conducting "Statistical surveys on the activities of battery industries" and that "surveys are conducted to track battery and appliance production and distribution as well as battery consumption, and the information is published in the BAJ newsletter and distributed to all types of publications and groups."[33]

208.    The BAJ lists another of its "Main Tasks" as the "promotion of interchange activities with relevant domestic and international organizations" and states that it "promotes the exchange of information between domestic related industries as well as with the European and American battery industries and the China battery association."[34] The BAJ also lists, among it "Operations," that it "engages in the following activities to achieve its objective: . . . Association and cooperation with external organizations involved with batteries and battery applied products."[35]

209.    The BAJ further lists a catchall "Main Task" category of "Others," which includes "to actively promote all activities necessary for the development of the industry."[36] The BAJ also states that its operations include "[a] range of additional [activities] required to achieve the Association's objective other than those stated above."[37]

**b.    Korean Battery Trade Associations**

210.    Korea IT Times reported in April 2012 that Japan's Institute of Information Technology issued a report that "analyzed Samsung SDI's success and how Korea overtook the secondary batteries market" and that "gave Samsung SDI and LG Chem high marks for placing

---

[32]    *Overview of the Main Tasks of the Battery Association of Japan (BAJ)*, Battery Association of Japan, http://www.baj.or.jp/e/about/maintasks.html (last visited June 13, 2013).

[33]    *Id.*

[34]    *Id.*

[35]    *See Objective of the Battery Association of Japan (BAJ), supra* note 28.

[36]    *See Overview of the Main Tasks of the Battery Association of Japan (BAJ), supra* note 32.

[37]    *Id.*

1    Korea at the forefront of this industry by cooperating within the small rechargeable lithium-ion

2    batteries market."[38]

3           211.    In or about March 1997, the "Korea Battery Research Association" was formed,

4    including Samsung and LG. An offshoot formed in 2011 and discussed below, the "Korea Battery

5    Industry Association," disseminated a slide presentation dated August 28th 2012, titled "Battery

6    Technology Commercialization Strategies in Korea" for the "Germany-Korea Electric-auto Battery

7    Technology Workshop." The presentation analyzed the close ties formed as a result of the 1997

8    association formation, noting under heading titled "Factors that Made Korea's Rechargeable battery

9    Industry the Global Leader" that there was "Cooperative R&D between materials, batters and

10   demand companies – link between development and commercialization" and that there was

11   "Continuous growth by ensuring stable demand from Samsung Electronics and LG Electronics." The

12   presentation further notes that there was the "Formation of consortiums among research institutions,

13   materials, batteries, and demand companies." The presentation further notes there was

14   "Reinforcement of cooperative systems between accessories, materials and battery companies for

15   maximization of investment synergy" and there was the "Expansion of exchanges through

16   technology exchanges [sic] seminars, promotion of custom cooperative R&D."

17          212.    The 2012 presentation continues, under a section titled "Stable Demand" that the

18   Korea "Possesses global mobile IT device companies such as SEC [Samsung] and [LGE] as captive

19   markets."

20          213.    In a report titled *Next Generation Batteries: The Case of Korea*," issued in

21   approximately 2003, Invest Korea, an investment arm of the Korea Trade-Investment Promotion

22   Agency, established in compliance with the Foreign Investment Promotion Act of 1998, stated that

23   "For the secondary industry to grow on a continuing basis, the government plans to establish a

24   Battery Industry Supporting Center, thereby forming a unified "window" for organic collaboration

25   among the industry, universities and research organizations and initiating efforts to develop

26

27          [38]  Kim Sung-Mi, *Korean Secondary Battery Leaping 10 years, Overtaking Japan*, Korean IT
         Times Global News Network (April 27, 2012), http://www.koreaittimes.com/story/21199/korean-
28       secondary-battery-leaping-10-years-overtaking-japan.

1    fundamental business such as technical evaluation and certification, development of parts, materials,

2    and equipment industries, human resource development, international cooperation, and provision of

3    information." The report further noted the Korea Government's "plan to implement various

4    supportive measures for the industry, including the development of a medium-term industrial plan by

5    2008, to advance and create sustainable conditions for the battery and related industries."

6         214.   The "Korea Battery Industry Association" ("KBIA") was formed in November 2011,

7    and Defendant Samsung SDI Co. Ltd. states the following regarding it:

8              Samsung SDI's CEO, Park Sangjin, was elected as the first chairman
               of the Korea Battery Industry Association, which was newly launched
9              in November 2011. The Association has a membership of over 50
               companies both large and small, including Samsung SDI, LG Chem,
10             SK innovation, GS Caltex, and L&F Materials.

11             At its inaugural meeting held on November 1st 2011, a "Mutual
               Development Council" was installed, and the members agreed to
12             pursue mutual development through "3 Main Strategies and 7 Joint
               Projects", which can be summarized as: patent-related cooperation;
13             eschewing vertical integration; and collaborative R&D.

14             As the chair company of the Korea Battery Industry Association,
               Samsung SDI will take a leadership role and, with the support of the
15             government, mediate between large companies and SMEs, thus
               contributing to a healthy environment for mutual growth.[39]
16
        215.   The KBIA's 2012 presentation, referenced above, continues that the "Main Projects in
17
     2012" include the "strengthening of global networks" and "Establishing MOUs with BAJ (Japan)
18
     and CIBA (China)."
19
              c.    **Other Trade Associations**
20
        216.   The "PRBA – Rechargeable Battery Association" ("PBRA") was originally
21
     established in 1991 as the "Portable Rechargeable Battery Association" to develop battery recycling
22
     programs. Panasonic and Sanyo were among its founding members.[40] Officer of Panasonic, Sanyo
23
     and Sony sit on the organization's board of directors[41], and it counts Maxell, Panasonic Battery, and
24

25       [39]   *Official Institutes & Public Associations: Public Policy Response and Participation*,
     Samsung SDI, http://www.samsungsdi.com/sustain/s2_7.jsp (last visited June 14, 2013).
26       [40]   *About PRBA*, Portable Rechargeable Battery Association, http://www.prba.org/about-prba/
     (last visited June 30, 2013).
27       [41]   *Board of Directors at PRBA*, Portable Rechargeable Battery Association,
28   http://www.prba.org/about-prba/>board-of-directors/ (last visited June 14, 2013).

Samsung SDI among its members.[42] It now acts as the "voice of the Rechargeable Power Industry, representing its members on legislative, regulatory and standards issues at the state, federal and international level."[43] It states that it "provides reports, newsletters and other information to keep its members informed of the latest activities and issues affecting the rechargeable power industries."[44] The PRBA further states that it "has a long-standing and successful working relationship with the Battery Association of Japan (BAJ)" and that it "works closely with its counterparts in Europe and coordinates its efforts with several European battery trade associations including, RECHARGE, Eurobat, European Portable Battery Association and European Battery Recycling Association."[45]

217.    "Battery Power" is an annual conference in existence for more than a decade, to be held in Colorado this year, and it bills itself as "an international conference highlighting the latest developments and technologies in the battery industry."[46] The conference "is designed for OEM design engineers and system engineers involved in battery powered products and systems and power management technology, as well as battery pack and cell manufacturers."[47] This year's attendees are listed as including Samsung and Panasonic.

218.    "Battery Japan" bills itself as the "world's largest trade show for rechargeable batteries," and is a concurrent exhibition and technical conferences. Representatives of Sanyo, Sony and Panasonic all participated as Committee Members for the 2011 Conference, and Samsung was listed as among the 2013 exhibitors.

**D.      Government Investigations into a Lithinm Ion Batteries Cartel**

219.    A globally coordinated antitrust investigation is taking place in at least the United States and Europe, aimed at manufacturers of Lithium Ion Batteries.

---

[42]   *Membership*, Portable Rechargeable Battery Association http://www.prba.org/membership/membership-directory/(last visited June 14, 2013).

[43]   *Powering the Future*, Portable Rechargeable Battery Association, http://www.prba.org/ (last visited June 14, 2013).

[44]   *See About PRBA, supra* note 40.

[45]   *Benefits of Membership of PRBA*, Portable Rechargeable Battery Association http://www.prba.org/inembership/benefits-of-membership (last visited June 14, 2013).

[46]   Battery Power 2013, http://www.batterypoweronline.com/conferences/ (last visited June 14, 2013).

[47]   *Id.*

220.     In or around June 2011, defendant Sony Corporation disclosed that it's wholly owned

U.S. subsidiary -- Sony Electronics, Inc. -- received a subpoena from the DOJ concerning its

"secondary batteries" business. Specifically, Sony disclosed that:

> In May 2011, Sony Corporation's U.S. subsidiary, Sony Electronics
> Inc., received a subpoena from the U.S. Department of Justice ("DOJ")
> Antitrust Division seeking information about its secondary batteries
> business.
>
> Sony understands that the DOJ is investigating competition in the
> secondary batteries market. Based on the stage of the proceeding, it
> is not possible to estimate the amount of loss or range of possible
> loss, if any, that might result from adverse judgments, settlements or
> other resolution of this matter.[48]

221.     On or about June 27, 2012, Sony issued its SEC Form 20-F for its fiscal year ended

March 31, 2012, disclosing an apparent expansion of the investigation and stating that "DOJ and

agencies outside the United States are investigating competition in the secondary batteries market."

222.     Around the same time as its initial disclosure of the governmental investigation,

according to a Korean news article, a source from the DOJ confirmed that it was conducting a

criminal investigation into potential price fixing with respect to the sale of secondary batteries in the

United States and has been since the first half of 2011. The same article quoted the source as stating

that criminal charges are likely to be filed.

223.     On or about August 20, 2012, LG Chem confirmed that it also was the target of the

investigation being conducted by the DOJ.

224.     Other news articles have confirmed that in addition to defendants Sony and LG Chem,

Samsung SDI and Panasonic are also under investigation by the DOJ for price fixing with respect to

the sale of rechargeable batteries.

225.     On April 17, 2013, defense counsel for Hitachi in the present case wrote to counsel

for plaintiffs and confirmed that MCA [Maxell Corporation of America] received a subpoena on

April 29, 2011 from the Antitrust Division of the DOJ. Hitachi's letter also referenced "two state

---

[48]   Sony Corporation SEC Form 20-F for fiscal year ending March 31, 2011, filed June 28, 2011.

1    Attorneys General investigating the LIB [lithium ion battery] business" and further referenced

2    Hitachi's receipt of "Civil Investigative Demands issued by [the Attorneys General] offices."

3         226.    On November 7, 2012, Defendants confirmed in writing to the Judicial Panel on

4    Multidistrict Litigation that they "are informed and believe that a grand jury of the Northern District

5    of California is conducting an antitrust investigation into the pricing of lithium ion batteries, and the

6    San Francisco field office of the Antitrust Division of the DOJ is leading that effort."[49]

7         227.    It is significant that Defendants' anticompetitive behavior is the subject of a criminal

8    grand jury investigation being conducted by the DOJ. In order for the DOJ to institute a grand jury

9    investigation, a DOJ Antitrust Division attorney must believe that a crime has been committed and

10   prepare a detailed memorandum to that effect.[50] Following a review of that memorandum, the

11   request for a grand jury must be approved by the Assistant Attorney General for the Antitrust

12   Division, based on the standard that a criminal violation may have occurred. In addition, the fact that

13   the DOJ Antitrust Division investigation is criminal, as opposed to civil, is significant as well. The

14   Antitrust Division's "Standards for Determining Whether to Proceed by Civil or Criminal

15   Investigation" state: "[i]n general, current Division policy is to proceed by criminal investigation and

16   prosecution in cases involving horizontal, per se unlawful agreements such as price fixing, bid

17   rigging and horizontal customer and territorial allocations."[51] Accordingly, the existence of a

18   criminal investigation into the market for Lithium Ion Batteries supports the existence of the

19   conspiracy alleged in this complaint.

---

22   [49]  *In re: Lithium Ion Batteries Antitrust Litigation*, Responses of Certain Defendants to Motion
      of Plaintiff Woodrow Clark II for the Transfer of Related Actions to the District of New Jersey for
23   Coordinated or Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407, at 7 MDL No. 2420
      (J.P.M.L. 2012), ECF No. 33, Nov. 7, 2012 (filed by Samsung SDI America, Inc., LG Chem
24   America, Inc., Sony Electronics Inc., Panasonic Corporation of North America, Sanyo North
      American Corporation, Samsung Electronics America, Inc., and Maxell Corporation of America).

25   [50]  *See* Antitrust Grand Jury Practice Manual, Vol. 1, Ch. I.B.1 (1991), *available at*
      http://www.justice.gov/atr/public/guidelines/206542.htm ("[i]f a Division attorney believes that a
26   criminal violation of the antitrust laws has occurred, he should prepare a memorandum requesting
      authority to conduct a grand jury investigation").

27   [51]  *See* Antitrust Division Manual, Chapter III.C.1 (2012), *available at*
      http://www.justice.gov/atr/public/divisionmanual/chapter3.pdf.

28

**E.    Defendants Have a History of Conspiring to Fix Prices for Critical Components of Consumer Electronics**

228.    Many of the Defendants have a long history of criminal collusion and are either currently involved in worldwide investigations into other technology-related products or have been convicted of participating in price fixing cartels involving technology-related products. Further, much of the illegal conduct to which the Defendants or their affiliates have admitted to, took place during the Class Period identified in this complaint.

229.    Notably, the Lithium Investing News, which identifies itself as a "source for unbiased, independent news and information on the lithium market," evaluated the allegations in the initial complaint in this matter, wrote that the "*allegations aren't far fetched*" and noted that "[e]lectronics companies have been the subject of several price-fixing investigations conducted by the United States and the European Union in recent years." (emphasis added).[52]

230.    A notebook computer contains four key pieces of hardware: a dynamic random access memory (DRAM) chip, a liquid crystal display (LCD) screen, an optical disk drive (ODD), and a rechargeable lithium-ion battery. Defendants here have pled guilty to fixing the prices of the first three of these components, and the DOJ is investigating whether to bring criminal price-fixing charges for the fourth component - Lithium Ion Batteries.

231.    In a detailed July 20, 2012 investor report titled "*Lithium-ion batteries – A Japanese tech growth story?*" Citi Research, a division of Citigroup Global Markets, Inc., wrote to investor clients that "We think that behind the advance of South Korean firms lie many of the same ingredients that led to their success in semiconductor memory and LCD panels."

232.    That success in fact came about by illegal means, as in the present case. For example, In or around October 2005, Samsung Electronics Company, Ltd. and Samsung Semiconductor, Inc. agreed to plead guilty and pay a $300 million fine for "participating in an international conspiracy to fix prices in the [Dynamic Random Access Memory] market . . . ." Samsung Electronics Company, Ltd. and Samsung Semiconductor, Inc. admitted that they participated in the conspiracy from

---

[52]    Melissa Pistilli, *Lithium Battery Manufacturers Accused of Price Fixing*, Lithium Investing News (Nov. 12, 2012), http://lithiuminvestingnews.com/6599/lithium-ion-battery-manufacturers-accused-price-fixing-electric-vehicles-lawsuit/.

approximately April 1, 1999 through June 15, 2002. In addition, seven Samsung executives (Il Ung Kim, Sun Woo Lee, Yeongho Kang, Yonng Woo Lee, Thomas Quinn, Young Hwan Park, Young Bae Rha) agreed to plead guilty to participating in the conspiracy with respect to DRAM. Each agreed to pay a $250,000 criminal fine and serve a prison sentence in the United States ranging from seven to fourteen months.

233.    Although it has not been publicly acknowledged, it is widely believed that Samsung is in the DOJ leniency program with respect to the DOJ's investigation into the market for LCDs, meaning that it has admitted its participation in the cartel.

234.    In November 2008, LG Display Co., Ltd., a wholly owned Korean subsidiary of LG Electronics, agreed to plead guilty and pay a $400 million fine to the United States, in connection with its participation in a worldwide conspiracy to fix the prices of LCDs during the period from September 2001 through June 2006. At the time, the fine paid by LG was the second highest fine ever imposed by the Antitrust Division of the DOJ. In addition, in April 2009, an executive of LG Display, Bock Kwon, agreed to plead guilty to participating in the global LCD conspiracy from September 2001 through June 2006. Kwon, a Korean national, agreed to serve 12 months in a U.S. prison and pay a $30,000 criminal fine. Further, in February 2009, another LG Display executive, Duk Mo Koo, agreed to plead guilty to participating in the global conspiracy with respect to LCDs from September 2001 through December 2006.

235.    In March 2009, Hitachi Displays, Ltd., a wholly owned Japanese subsidiary of Hitachi, Ltd., agreed to plead guilty and pay a $31 million fine for participating in a worldwide conspiracy to fix the prices of LCDs during the period April 1, 2011 through March 31, 2004.

236.    In September 2011, an entity which is a joint venture between Hitachi, Ltd. and LG Electronics, Inc. - Hitachi-LG Data Storage, Inc. - agreed to plead guilty and pay a $21.1 million fine for participating in various conspiracies to rig bids and fix prices for ODDs during the period from June 2004 through September 2009. In addition, three Hitachi-LG Data Storage executives also agreed to plead guilty for participating in the same conspiracy. In December 2011, Yong Kuen Park, Sang Hun Kim, and Sik Hur agreed to plead guilty for participating in the conspiracy with respect to

1   ODDs during the period November 2005 through September 2009. All three agreed to serve prison

2   time in the United States and pay criminal fines.

3          237.   Defendants have also entered guilty pleas for fixing prices for other high-tech

4   products.

5          238.   In or around March 2011, Defendant Samsung SDI, Company, Ltd. agreed to plead

6   guilty and pay a $32 million fine for participating in a "global conspiracy to fix prices, reduce output,

7   and allocate market share of color display tubes, a type of cathode ray tube used in computer

8   monitors and other specialized applications . . . ." Samsung SDI Company Ltd. admitted it

9   participated in the conspiracy from approximately January 1997 through at least March 2006.

10         239.   In September 2010, Defendant Panasonic Corporation agreed to plead guilty and pay

11  a $49.1 million fine for participating in a conspiracy to "suppress and eliminate competition by

12  fixing prices to customers of household compressors . . . ." during the period October 14, 2004

13  through December 31, 2007.

14         240.   Certain defendants in the present litigation are also defendants in other civil

15  consolidated antitrust litigations pending in this district and related to the above criminal matters.

16  Plaintiffs in these actions allege that defendants, as in the present action, colluded to illegally fix the

17  prices of certain products including computer components. For example, Defendants in two of the

18  actions have produced documents relevant to the present case and that evidence Defendants'

19  collusive conduct with respect to Lithium Ion Batteries. These actions are captioned: (1) In re Optical

20  Disk Drive Products Antitrust Litig., Case No. 3:10-md-2143 RS ("ODD Litigation"), and (2) In re

21  Cathode Ray Tube (CRT) Antitrust Litig., Case No. C 07-5944 SC, MDL No. I917 ("CRT

22  Litigation").

23         241.   The following is a chart detailing the overlapping and related defendants among the

24  present case, the ODD Litigation, and the CRT Litigation:

| PRESENT CASE RE: LITHIUM ION BATTERIES | ODD ANTITRUST LITIGATION | CRT ANTITRUST LITIGATION |
|---|---|---|
| LG Chem, Ltd. | LG Electronics, Inc. | LG Electronics, Inc. |

| PRESENT CASE RE: LITHIUM ION BATTERIES | ODD ANTITRUST LITIGATION | CRT ANTITRUST LITIGATION |
|---|---|---|
| LG Chem America, Inc. | Hitachi-LG Data Storage, Inc.<br><br>Hitachi-LG Data Storage Korea, Inc. | LG Electronics Taiwan Taipei Co., Ltd.<br><br>LG Electronics USA, Inc. |
| Panasonic Corporation<br><br>Panasonic Corporation of North America | Panasonic Corporation<br><br>Panasonic Corporation of North America | Panasonic Corporation<br><br>Panasonic Corporation of North America |
| Sony Corporation<br><br>Sony Energy Devices Corporation<br><br>Sony Electronics, Inc. | Sony Corporation | -- |
| Samsung SDI Co., Ltd.<br><br>Samsung SDI America, Inc. | Samsung Electronics Co., Ltd. | Samsung SDI Co., Ltd.<br><br>Samsung SDI America, Inc. |
| Hitachi, Ltd.<br><br>Hitachi Maxell, Ltd. | Hitachi, Ltd. | Hitachi, Ltd. |

1.      **The Role of the Packer Companies in the Industry.**

242.    Three Taiwanese companies, known as "packers," acquire battery cells from Defendants, assemble them into battery "packs" and then supply the packs to manufacturers of laptop computers, cell phones, and the other consumer electronics devices discussed herein.

a.      **Simplo Technology Co., Ltd.**

243.    Simplo is a publicly-traded company based in Taiwan. In 2010, a news report stated that "Simplo is the world's large notebook PC battery pack maker now. Last year, some 160 million notebook PCs were sold worldwide, with one out of every five adopting the firm's battery packs on average … the firm scored banner sales revenue of US $1.07 billion."[53] Another 2010 news report stated that "Simplo has commanded a 22-23% share of the global market for notebook PC battery packs, only next to Sanyo's 24%. However, institutional investors indicated that Simplo, with orders

---

[53]    *Simplo to Keep Dominating Global Battery Modules This Year*, Cens.com, http://cens.com/cens/html/en/news/news_inner_31685.html (last visited June 13, 2013).

from new customers serving as a growth drive [sic], is very likely to boost its market share to over 30% to outpace the Japanese competitor in 2011."[54]

244.    Simplo's website indicates that it was founded in April of 1992 and that at the time its "Main operating items were Ni-mh Battery Pack and Li-ion Pack for Notebooks."[55] Simplo further states that in October 2003 it was "Certified by DELL."[56] It references its products as including the following: "Battery Pack of Notebook," "Battery Pack of Tablet PC," "Battery Pack of Cell Phone/Smart Phone," "Battery Pack of GPS," "Battery Pack of Cable Modem," "Battery Pack of E-Bike/ E-Scooter/ Power Wheelchair," "Other specialized battery pack," and "Trade of battery pack."[57] Simplo further lists its "Customers" as including Apple, Dell, HP, Acer, Compal, FIC, Inventec, Quanta, Uniwill, Arima, MSI, Clevo, LGE, Twinhead, and Wistron.[58] A March 2012 article in the Taipei Times stated that "Simplo supplies battery packs to 30 clients in laptop and tablet-related areas, covering all the major firms, except for Samsung Electronics Co., [Simplo Chairman and CEO Raymond] Sung said."[59]

245.    Simplo's chairman and CEO F.H. Sung was quoted in December 2009 as stating that Simplo had "delivered hundreds of millions of battery packs for different industrial applications."[60] Reports from earlier in the Class Period further reinforce the massive volume of relevant commerce flowing through Simplo. In April 2005, a news report stated that "Simplo and DynaPack, Taiwan's two leading manufacturers of notebook computer battery modules, see their combined share of the global market run close to 30%. Simplo is very likely to unseat Sanyo of Japan as the world's largest

---

[54]   *Simplo Aims to Unseat Sanyo as World's Largest Battery Pack Supplier in 2011*, Cens.com, http://cens.com/cens/html/en/news/news_inner_34553.html (last visited June 13, 2013).

[55]   *Company Profile*, Simplo Technology Co., Ltd., http://www.simplo.com.tw/company.htm (last visited June 13, 2013).

[56]   *Id.*

[57]   *Id.*

[58]   *Id.*

[59]   Lisa Wang, *Simplo Posts Its Strongest Profits in Six Quarters*, Taipei Times (March 10, 2012), http://www.taipeitimes.com/News/biz/archives/2012/03/10/2003527393.

[60]   *Simplo Technology CEO Self-promotes with Analysis of Li-ion Cell Biz*, Articlesbase (Dec. 30, 2009), http://www.articlesbase.com/electronics-articles/simplo-technology-ceo-selfpromotes-with-analysis-of-liion-cell-biz-1642348.html.

1   producer in the line this year."[61] The 2005 report continued that "Simplo said it would see shipments

2   reach 11 million battery modules for a 20% global market share this year, compared with last year's

3   17%" and that "Simplo president Sung Fu-hsiang said his company shipped 7.5 million lithium

4   battery modules for a 17% global market share last year, only behind Sanyo of Japan."[62]

5       246.   In December 2003, a news report regarding Simplo stated that "[t]he company

6   estimated it would ship 2.4 million NB batteries to Hewlett Packard this year, accounting for 44% of

7   its total shipments of 5.25 million units. The company anticipated it would see shipment grow to 8.6

8   million NB batteries next year" and that "[w]ith the orders from Dell and Hewlett Packard, Simplo

9   vows to become the world's second largest manufacturer of NB batteries next year, with its global

10  market share to expand to between 18% and 20% from the existing 13.8%."[63]

11          **b.     Celxpert**

12      247.   Celxpert states on its website that "Since its founding in 1997, [it] has experienced

13  incredible growth" and that "its customers base [sic] on the rapidly evolving notebook computer,

14  cellular phone and handheld device markets. . . ."[64] and that it is "a dedicated developer and

15  manufacturer of battery packs for portable and handheld devices."[65] Celxpert's website further states

16  that in January of 1999, it "[b]egan technical Notebook Battery Pack Development with NEC

17  (Japan)" and that in 2010 it "[e]nter[ed] Tablet PC market," that in 2011 it "[e]nter[ed] Ultrabook

18  market," and that in 2012 it "[e]nter Power Tool, ESS market."[66]

19      248.   Celxpert's website states that its "Competence & Strength" includes "[s]igning

20  cooperate contract with major cell vendors. Keep the supply steady. Signing supply contract with our

21  chiefly NB [notebook] and Cellular phone customers and signed long term contract with major cell

22      [61]   *Taiwan's Notebook Battery Makers Enjoying Rising Global Market Shares*, Cens.com

23  (April 11, 2005), http://cens.com/cens/html/en/news/news_inner_10191.html.

        [62]   *Id.*

24      [63]   *Simplo Obtains Dell Orders for NB Battery*, Cens.com (Dec. 22, 2003),

25  http://cens.com/cens/html/en/news/news_inner_11540.html.

        [64]   *About Us/ Management for Growth*, Celxpert Energy Corporation,

26  http://www.celxpert.com.tw/eng/p1-1.asp (last visited June 13, 2013).

        [65]   *About Us/ Company History*, Celxpert Energy Corporation,

27  http://www.celxpert.com.tw/eng/p1-2.asp> (last visited June 13, 2013).

28      [66]   *Id.*

vendors to assure the supply."[67] It further notes its competence and strength as including

"[s]tandardization of manufactory [sic] procedure and production."[68] Celxpert's website lists its

"Vendors" as including Panasonic, Samsung SDI, Maxell, NEC / Tokin, Sony and LG Chem.[69]

Celxpert's website lists its "Customer[s]" as including Asus, Blackberry, Lenovo, Hitachi, Pegatron,

Unihan, Samsung, LG, Quanta, Compal, and Clevo.[70]

249.   On its website, Celxpert presently makes available what appears to be a translated

news article dated December 29, 2003, that quotes Celxpert's President as stating "Now the lithium

cells, direct material of battery packs mainly in flowed by Japan and Korea suppliers. Due to mutual

understanding between these parties, we have got the firmly committed support based on long-term

cooperation."[71]

c.   **Dynapack**

250.   Dynapack states on its website that it was founded in 1998 and at that time it's

"[m]ain operating items include Ni-MH BatteryPack, Li-ION BatteryPack for Notebook and

CellPhone."[72] It further states that in March 2001 "BatteryPack for Notebook accumulated

production volume has been broken through one million sets" and that in March 2002 "BatteryPack

for Notebook accumulated production volume has been broken through two million sets."[73]

Dynapack provides on its website information appearing to indicate the identity of at least some of

its customers and/or suppliers. For the time period "2001-2008" it states it "Passed Apple

Qualification," "Passed HP Qualification," "Passed Dell Qualification," "Passed MPE

Qualification," "Passed SONY Green Partners management system Audit," "Passed ASUS, LG,

[67]   *About Us/ Competence and Strength*, Celxpert Energy Corporation,
http://www.celxpert.com.tw/eng/p1-3.asp (last visited June 13, 2013).

[68]   *Id.*

[69]   *Customer*, Celxpert Energy Corporation, http://www.celxpert.com.tw/eng/p5-1.asp (last visited June 13, 2013).

[70]   *Id.*

[71]   *New Release*, Celxpert Energy Corporation, http://www.celxpert.com.tw/eng/news-1a.asp?num=36 (last visited June 13, 2013).

[72]   *About DynaPack/ Milestone*, DynaPack, http://www.dynapack.com.tw/englisg/ (last visited June 13, 2013).

[73]   *Id.*

1    HTC Qualification," "Passed ODM, OEM Customers Qualification eg: Quanta, Compal,

2    Inventec ..." (ellipsis in original).[74] For 2009, Dynapack makes similar representations about

3    qualification and audits for some of the same companies, as well as "Passed Wistron Annual Audit,"

4    "Passed SEC Qualification Audit" [presumably Samsung]." For 2010, Dynapack again made similar

5    representations, as well as "Passed Pegatron Qualification Audit," and "Passed Delta Qualification

6    Audit." Similar representations were made for 2011.

7          251.    A February 2010 news report indicated that Dynapack "is expected to ship over 6

8    million battery packs to Apple for the entire year."[75] An April 2005 news report stated that

9    "Dynapack will aim to ship 4.53 million battery modules to raise market share to 8.24% this year

10   from last year's 5.8%."[76]

11                       IV.    MANNER AND MEANS OF THE CONSPIRACY

12         252.    For purposes of forming and carrying out the charged combination and conspiracy,

13   Defendants did those things that they combined and conspired to do, including, among other things:

14                a.    participating in meetings, conversations and communications in the United

15   States, Japan, Korea and elsewhere to discuss the prices of Lithium Ion Batteries in the United States

16   and elsewhere;

17                b.    agreeing, during those meetings, conversations and communications, on prices

18   for Lithium Ion Batteries sold in the United States and elsewhere;

19                c.    agreeing, during those meetings, conversations and communications, to

20   depress the supply of Lithium Ion Batteries;

21                d.    agreeing, during those meetings, conversations and communications, to

22   coordinate prices for Lithium Ion Batteries sold in the United States and elsewhere;

23                e.    selling Lithium Ion Batteries in the United States and elsewhere at collusive

24   and noncompetitive prices;

---

[74]   *Id.*

[75]   *Simplo, Dynapack to See Auspicious Year in 2010*, Cens.com (Feb. 3, 2010),
http://cens.com/cens/html/en/news/news_inner_31131.html.

[76]   *Simplo Obtains Dell Orders for NB Battery*, Cens.com (Dec. 22, 2003),
http://cens.com/cens/html/en/news/news_inner_11540.html.

1              f.      accepting payment for Lithium Ion Batteries at collusive and noncompetitive

2  prices;

3              g.      engaging in meetings, conversations and communications in the United States

4  and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon price-fixing

5  scheme; and

6              h.      employing measures to keep their conduct secret.

7  **V.     THE INFLATED PRICES OF LITHIUM ION BATTERIES WERE PASSED**
            **THROUGH TO CONSUMERS**

8

9       253.    Defendants' conspiracy to raise, fix, or maintain the price of Lithium Ion Batteries at

10  artificial levels resulted in harm to Plaintiffs and the Classes because it resulted in them paying

11  higher prices for Lithium Ion Battery Products than they would have in the absence of Defendants'

12  conspiracy.

13       254.    Lithium Ion Batteries are commodity-like products with functionally equivalent

14  products available from Defendants. Defendants manufacture Lithium Ion Batteries pursuant to

15  standard specifications.

16       255.    A Lithium Ion Battery is purchased by a consumer as a stand-alone product, or as a

17  substantial part of a Lithium Ion Battery Product. When a Lithium Ion Battery is purchased by

18  consumers as a stand-alone product, the battery or the cell inside the battery itself is directly

19  traceable to the specific manufacturing defendant. When a Lithium Ion Battery is purchased as part

20  of a Lithium Ion Battery Product, it is a distinct, physically discrete element of the end-use product

21  and is identifiable by a specific, discrete part or model number that permits tracing. Lithium Ion

22  Batteries are traceable and identifiable throughout the chain of distribution to the end user. They do

23  not undergo any physical alterations as they move through the chain of distribution.

24       256.    The purchaser buys a Lithium Ion Battery either from the direct purchaser OEM or

25  through a reseller such as a retailer. Thus, a Lithium Ion Battery follows a traceable physical chain

26  from the Defendants to the OEMs, to the purchaser of the Lithium Ion Battery Product. Tracing can

27  help show that changes in the prices paid by direct purchasers of Lithium Ion Batteries affect prices

28  paid by indirect purchasers of the Lithium Ion Batteries themselves, or Lithium Ion Battery Products.

257.    The OEM and the retail markets of Lithium Ion Batteries and Lithium Ion Battery Products are subject to vigorous price competition. The direct purchaser OEMs and retailers have very thin net margins. They are therefore at the mercy of their component costs, such that increases in the price of Lithium Ion Batteries lead to quick, corresponding price increases at the OEM and retail levels for Lithium Ion Batteries and Lithium Ion Battery Products.

258.    As a result, the inflated prices of Lithium Ion Batteries resulting from Defendants' price fixing conspiracy have been passed on to Plaintiffs and the Classes by direct purchasers, manufacturers, distributors and retailers.

259.    Lithium Ion Batteries make up a substantial component cost of Lithium Ion Battery Products. The retail price of a Lithium Ion Battery Product is determined in substantial part by the cost of the Lithium Ion Battery it contains.

260.    Thus, Plaintiffs and members of the Classes have been forced to pay supra-competitive prices for Lithium Ion Batteries and Lithium Ion Battery Products. These inflated prices have been passed on to them by direct purchaser manufacturers, distributors and retailers.

261.    Lithium Ion Batteries are identifiable, discrete physical products that remain essentially unchanged when incorporated into a Lithium Ion Battery Product. As a result, Lithium Ion Batteries follow a traceable physical chain of distribution from the Defendants to Plaintiffs and the members of the Classes, and any costs attributable to Lithium Ion Batteries can be traced through the chain of distribution to Plaintiffs and the members of the Classes.

262.    Just as Lithium Ion Batteries can be physically traced through the supply chain, so can their price be traced to show that changes in the prices paid by direct purchasers of Lithium Ion Batteries affect prices paid by indirect purchasers of Lithium Ion Battery Products and Lithium Ion Batteries.

263.    While even a monopolist would increase its prices when the cost of its inputs increased, the economic necessity of passing through cost changes increases with the degree of competition a firm faces. The markets for Lithium Ion Battery Products are subject to vigorous price competition. The direct purchasers of Lithium Ion Batteries have thin net margins, and are therefore at the mercy of their component costs, such that increases in the price of components such as Lithium

1   Ion Batteries lead to corresponding increases in prices for Lithium Ion Battery Products at the

2   consumer level. When downstream distribution markets are highly competitive, as they are in the

3   case of Lithium Ion Battery Products, overcharges are passed through to ultimate consumers, such as

4   the indirect-purchaser Plaintiffs and class members.

5       264.    Hence the inflated prices of Lithium Ion Batteries have been passed on to Plaintiffs

6   and other class members.

7       265.    The economic and legal literature has recognized that unlawful overcharges in a

8   component normally result in higher prices for products containing that price-fixed component. Two

9   antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business

10  and Public Policy Group at the Haas School of Business at the University of California at Berkeley)

11  and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law School and

12  author of the Handbook of the Law of Antitrust) – have observed that "in a multiple- level chain of

13  distribution, passing on monopoly overcharges is not the exception: it is the rule.

14      266.    As Professor Jeffrey K. MacKie-Mason (Arthur W. Burks Professor for Information

15  and Computer Science and Professor of Economics and Public Certification), an economist who

16  presented evidence in a number of indirect purchaser cases involving Microsoft Corporation, said (in

17  a passage quoted in the judicial decision in that case granting class certification):

18          As is well known in economic theory and practice, at least some of the
            overcharge will be passed on by distributors to end consumers. When
19          the distribution markets are highly competitive, as they are here, all or
            nearly the entire overcharge will be passed on through to ultimate
20          consumers...Both of Microsoft's experts also agree upon the economic
            phenomenon of cost pass through, and how it works in competitive
21          markets. This general phenomenon of cost pass through is well
            established in antitrust laws and economics as well.
22
23      267.    The purpose of the conspiratorial conduct of the Defendants and their co- conspirators

24  was to raise, fix, rig or stabilize the price of Lithium Ion Batteries and as a direct and foreseeable

25  result, the price of Lithium Ion Battery Products. Economists have developed techniques to isolate

26  and understand the relationship between one "explanatory" variable and a "dependent" variable in

27  those cases when changes in the dependent variable are explained by changes in a multitude of

28  variables, even when all such variables may be changing simultaneously. That analysis - called

1    regression analysis - is commonly used in the real world and in litigation to determine the impact of a

2    price increase on one cost in a product (or service) that is an assemblage of costs. Thus, it is possible

3    to isolate and identify only the impact of an increase in the price of Lithium Ion Battery prices for

4    Lithium Ion Battery Products even though such products contain a number of other components

5    whose prices may be changing over time. A regression model can explain how variation in the price

6    of Lithium Ion Batteries affects changes in the price of Lithium Ion Battery Product. In such models,

7    the price of Lithium Ion Batteries would be treated as an independent or explanatory variable. The

8    model can isolate how changes in the price of Lithium Ion Batteries impact the price of Lithium Ion

9    Battery Products while controlling for the impact of other price-determining factors.

10           268.   The precise amount of the overcharge impacting the prices of Lithium Ion Batteries

11   and Lithium Ion Battery Products can be measured and quantified. Commonly used and well-

12   accepted economic models can be used to measure both the extent and the amount of the

13   supracompetitive charge passed-through the chain of distribution. Thus, the economic harm to

14   Plaintiffs and class members can be quantified.

15                         VI.     ANTITRUST INJURY

16           269.   The effect of Defendants' conduct as described herein has been to artificially inflate

17   the prices paid by Plaintiffs and members of the Classes for Lithium Ion Batteries and Lithium Ion

18   Battery Products.

19   VII.   PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

20   A.     The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not and Could
            Not Discover Their Claims

21

22           270.   Plaintiffs and Class Members had no knowledge of the combination or conspiracy

23   alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein,

24   until (at the earliest) June 2011, when reports of the investigations into anticompetitive conduct

25   concerning Lithium-Ion Batteries were first publicly disseminated.  Even then, these reports lacked

26   detail and were not widely disseminated.  For example, Sony in June 2011 disclosed only that it

27   "received a subpoena from the U.S. Department of Justice ("DOJ") Antitrust Division seeking

28   information about its secondary batteries business" and that it "understands that the DOJ is

investigating competition in the secondary batteries market." This cryptic statement lacked any specifics as to the "who, what, where, when, why and how" of any potential unlawful activity.

271.   Plaintiffs and Class Members are purchasers who indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant. They had no direct contact or interaction with any of the Defendants in this case and had no means from which they could have discovered the combination and conspiracy described in this Complaint before June 2011, when reports of the investigations into anticompetitive conduct concerning Lithium-Ion Batteries were first publicly disseminated.

272.   No information in the public domain was available to Plaintiffs and the Class Members prior to the public announcements of the government investigations beginning in May 2011 that revealed sufficient information to suggest that any one of the Defendants was involved in a criminal conspiracy to fix prices for Lithium Ion Batteries.

273.   Publicly, Defendants repeatedly and expressly stated throughout the Class Period, including on their public Internet websites, that they maintained antitrust / fair competition policies which prohibited the type of collusion seen in this litigation. For example:

**Samsung**: • In its "Global Code of Conduct," dated January 2006 ("Code of Conduct") Samsung publicly stated that "This Global Code of Conduct will be the guiding standard for everyone in Samsung Electronics, outlining standards of conduct in all business activities"[77]

• Samsung publicly stated that it "will not enter into price fixing, bid collusion, market collusion or reduced production agreements with competitors, and will not discuss with competitors prices, bids, customers, sales territories and conditions including price confirmation."[78]

• Samsung further publicly stated that it "will compete freely and fairly at all its business sites around the world, abiding by relevant international standards

---

[77]  *Global Code of Conduct* at 2, 2006.1, Samsung Electronics Co., Ltd., http://www.samsung.com/us/aboutsamsung_bkup_20110627/ir/corporategovernance/globalcodeofconduct/IR_GlobalPrinciple0.html (last visited June 30, 2013).

[78]  *Id.* at 6.

and national, state and local laws, with the laws of the host jurisdiction prevailing."[79]

- Samsung further publicly stated in its Code of Conduct that one of the five "Samsung Values" was "Integrity," and one of the "7 Factors of a World Leading Company" was "Trust & Credibility."[80]

**Sony:**
- Sony publicly stated on its website that "In May 2003, Sony adopted the Sony Group Code of Conduct, which sets the basic internal standards to be observed by all directors, officers and employees of the Sony Group . . . The Code of Conduct has been adopted and implemented by each Sony Group company globally and is the subject of frequent 'tone from the top' messaging and other training."[81]
- Sony in its "Sony Group Code of Conduct" ("Code of Conduct") stated:

### 3.3 Fair Competition

It is the policy of Sony Group to comply with all applicable antitrust, competition and fair trade laws and regulations of each country and region where Sony Group conducts business. These laws and regulations are designed to prohibit agreements or undertakings *vis-à-vis* third parties that fix prices, divide markets, limit production or otherwise impede or destroy market forces. Some countries or regions have antitrust or competition laws that assert extraterritorial jurisdictions over certain activities taking place outside the jurisdictions if they affect the markets of those jurisdictions. All Personnel must know and comply with those laws and regulations applicable to their jobs.

**Sanyo:**
- Sanyo Electric Co., Ltd., in its "Code of Conduct and Ethics," listed with an establishment date of April 1, 2006, publicly stated: "Free Competition and Fair Commercial Transactions – We will conduct our business activities lawfully and with fairness and transparency.

We will not unfairly limit free competition which would include not making arrangements with others in the same trade about product prices, volumes, manufacturing facilities, and market share.

We will not involve ourselves in bid-rigging to decide the winning bidder and contract price in bidding."

---

[79] *Id.*

[80] *Id.* at 2.

[81] *Sony Group Code of Conduct*, Sony, http://www.sony.net/SonyInfo/csr_report/compliance/index2.html (last visited June 30, 2013).

- Sanyo further publicly stated that "We will carry on our business activities in compliance with the laws regulations and rules of each country and region in which we operate and those prescribed specifically for respective business categories."

**LG:**
- LG, in its "LG Electronics Code of Conduct,"[82] issued in 2009, publicly stated that "Our Standard" was to "not accept competitor information directly from a competitor. Not only would this be an illegitimate way to gather competitive information, information-sharing with a competitor also could suggest that an improper agreement exists between competitors."

- LG further stated in a section titled "Fair Competition: Dealing with Competitors," that "We want to be respectful of our competitors and avoid situations that suggest improper interactions. In general, relationships among competitors can cause problems with fair competition. Our first duty is to serve our customers. We serve them by supporting the rules that encourage our continued innovation and success in a strong, competitive market."

- LG further publicly stated that "Our Standard" is "Do not enter into any contract, agreement or formal, informal or implied understanding with a competitor without legal staff approval. Seek proper guidance before encouraging the Company to follow a competitor's activities."

- LG further publicly stated that "Our relationships ultimately should focus on serving our customers and working effectively with our business partners, not unfairly restricting fair trade."

- LG publicly stated that "In 1994, LG Electronics took the initiative in practicing fair and transparent management when it became the first private company in Korea to publish an ethical code (LG Electronics Code of Ethics). In the following year, the company announced its Management by Principle which elaborates on its ethical code. In 2004, the 'LG Code of Ethics' and 'LG Code of Ethics Guidelines for Practice' were established to clearly define the company's high standards of ethical behavior and practices to employees."

- In its "LG Code of Ethics," LG publicly stated "It is our intention to uphold the principle [sic] of free market economy, which embodies the spirit of fair competition . . . we regard our customers as the primary standard for our decisions and conducts [sic] . . . We are always truthful to our customers, and are bound to keep our promises . . . Chapter 2. Fair Competition . . . 1. Pursuit of Free Competition. We uphold the principle of the free market economic system. Therefore we pursue free competition, and earn our customers' trust . . . We compete fairly and capably with our competitors . . . We conduct our

[82] *Creating Value for Our Stakeholders, The LG Electronics Code of Conduct*, LG Electronics (2009).

1    domestic and overseas business activities in strict accordance with local laws
2    and regulations . . . ."

Hitachi:   • Hitachi in its "Code of Conduct," dated April 5, 2010, publicly stated that
3           "[t]he Hitachi Group Codes of Conduct have been established as specific
4           codes of conduct that apply to all companies of the Hitachi Group."[83]

5          • Hitachi further publicly stated that "We will observe domestic and overseas
6           competition laws and regulations as a matter of course and act appropriately as
7           a member of society under the basic principles of conduct according to the
            rule of law and ethical corporate integrity and fair, transparent and free
8           competition."[84]

9          • In 2006, Hitachi-Maxell publicly issued its "Corporate Social Responsibility
10          Report," stated that its "Code of Conduct" was issued in June 1983 and
            included as its first statement that "We will comply with the laws and
11          regulations of the countries in which we operate and observe corporate ethics."

12         • Hitachi-Maxell further publicly stated in its 2006 report that one of the items
13          in its "Hitachi Maxell Group Ethical Guidelines" was that "We will engage in
            fair, transparent and free competition, and will maintain sound and ethical
14          relations with government and administrative bodies" and that "We will reject
15          all contact with organizations involved in activities in violation of the law or
            in violation of accepted standards of responsible social behavior."

16         • Hitachi further publicly stated in its 2006 Report: "[Ensuring Fair and Free
17          Competition] In the interest of proactively preventing any violation of the
            Antimonopoly Law, in January 2006 a revised edition of the Antimonopoly
18          Law Handbook (Hitachi Group) was distributed to employees, who are urged
19          to adhere rigorously to its content."

Panasonic:  • Panasonic, in its "Panasonic Code of Conduct," in place through the Class
20          Period, publicly stated that "No matter how severe the competition may be, we
21          will pursue fair and ethical marketing activities in compliance with all
            applicable laws and regulations. In other words, we will never violate any
22          laws, regulations or social norms in pursuit of greater sales or profit.

23          We will not engage in bribery, collusion on bids, price fixing or other cartel
24          activities."

25

26

---

27   [83]   *Code of Conduct*, Hitachi, http://www.hitachi.com/about/corporate/conduct/index.html (last
     visited June 30, 2013).

28   [84]   *Id.*

1

2

3

4
- Panasonic further publicly stated that "we will respect free and fair competition, and abide by all applicable antitrust (competition law) and other laws and regulations" and that "We will fulfill our tasks by always observing not only applicable laws and regulations, but also the highest standards of business ethics" and "We will conduct business with integrity, a law-abiding spirit, and the highest ethical standards."

5

6

7
**NEC:**
- NEC, in its "Code of Conduct,"[85] publicly stated throughout the Class Period, including to this day on its website, the following:
- "3.2 Free Competition and Fair Commercial Transactions

8

9

10
- (1) WE will conduct fair commercial transactions with all business partners based on the principle of free competition and in compliance with anti-trust, competition and fair trade laws and all other applicable laws, rules and regulations

11

12
- (2) WE will not undertake any action that inhibits free and fair competition, including collusion and cartel formation, nor will we participate in meetings or in exchanges of information that may limit free competition or engage in any activity that may be construed as doing so.

13

14

15
- (3) WE will always keep relations with customers, business partners and competitors, open and fair. In addition, we will carry out all commercial transactions with integrity by adhering to social ethics."

16

17

18
**Toshiba:**
- Toshiba publicly stated in its 2008 Annual Report that "Compliance programs covering Antitrust Law and code of conduct covering sales to government and public offices have been introduced, and all sales personnel get dedicated training in these areas."[86] Toshiba presently and publicly states on its website the following, and has done so since at least as early as August 2010:

19
- "Directors and Employees shall:

20
1. follow sound and fair business practices in all dealings with customers;

21

22
2. promote marketing and sales that comply with all applicable laws and regulations, observe sound business practices and respect socially accepted ideas;

23

24
3. observe the SOC on "Competition Law" and endeavor to practice and promote free and fair competition;

25

26

27

28
---

[85]   *NEC Group Code of Conduct*, NEC,
http://www.nec.com/en/global/csr/management/code.html#sec3 (last visited July 2, 2013).

[86]   Toshiba Corporation Annual Report 2008 at 43 (2008), *available at*
http://www.toshiba.co.jp/about/ir/en/finance/ar/ar2008.htm

\*     \*     \*

- **7. Competition Law**

  **1. Toshiba Group Corporate Policy**

  Toshiba Group Companies shall:

  1. comply with any and all laws and regulations enacted for the purpose of maintaining free and fair competition (hereinafter called "Competition Laws"); and

  \*     \*     \*

- **2. SOC for Toshiba Group Directors and Employees**

  Directors and Employees shall:

  1. observe the Competition Laws compliance programs as well as the company rules on marketing activities toward governmental agencies and promote free and fair business activities;

  2. avoid agreements or understandings with competitors relating to pricing (including quotations and bids), the volume of production and sales, allocation of markets, customers or territories, or restrictions on production capacities or technology. The prohibition of such agreements is not limited to those actually recorded in writing by way of memoranda or minutes, but also extends to oral agreements;

  \*     \*     \*

  4. not engage in activities or organize or participate in meetings, make pledges or arrangements, or exchange information which may be a cause of concern in respect of paragraphs 2 and 3 above, or engage in any related activities or activities which may result in suspicion of engaging in such activities"[87]

274.   It was reasonable for Class members who may have been exposed to these public policies to believe that the Defendants were enforcing the policies.

275.   For these reasons, the statute of limitations as to Plaintiffs and the Classes' claims did not begin to run, and has been tolled with respect to the claims that Plaintiffs and Class Members have alleged in this Complaint.

---

[87]   *Toshiba Group Standards of Conduct*, Wayback Machine http://web.archive.org/web/20100815060506/http://www.toshiba.co.jp/csr/en/policy/soc.htm (last visited July 2, 2013).

INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR    - 93 -

010330-11 622968 V1

**B.    Fraudulent Concealment Tolled the Statute of Limitations**

276.    In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Classes. Plaintiffs and Class Members did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until June 2011, when reports of the investigations into anticompetitive conduct concerning Lithium-Ion Batteries were first publicly disseminated.

277.    Before that time, Plaintiffs and Class Members were unaware of Defendants' unlawful conduct, and did not know before then that they were paying supracompetitive prices for Lithium Ion Batteries throughout the United States during the Class Period. No information, actual or constructive, was ever made available to Plaintiffs that even hinted to Plaintiffs that they were being injured by Defendants' unlawful conduct.

278.    The affirmative acts of Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

279.    Plaintiffs have detailed herein the Defendants' use of mechanisms designed to conceal their collusion, such as covert meetings, use of code words or terms to refer to competitors and/or customers, use of pretexts to mask the true purpose of collusive communications, use of non-company phones, and instructions to destroy emails evidencing collusive activities.

280.    By its very nature, Defendants' anticompetitive conspiracy was inherently self-concealing. Lithium Ion Batteries are not exempt from antitrust regulation, and thus, before May 2011, Plaintiffs reasonably considered it to be a competitive industry. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' Lithium Ion Battery prices before May 2011.

281.    Plaintiffs and Class Members could not have discovered the alleged contract, conspiracy or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

282.    Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and Class Members had no knowledge of the

1    alleged conspiracy, or of any facts or information that would have caused a reasonably diligent

2    person to investigate whether a conspiracy existed, until June 2011, when reports of the

3    investigations into anticompetitive conduct concerning Lithium Ion Batteries were first publicly

4    disseminated.

5         283.   For these reasons, the statute of limitations applicable to Plaintiffs' and Class

6    Members' claims was tolled and did not begin to run until, at the earliest, June 2011.

7    **VIII.   TRADE AND COMMERCE AFFECTED BY DEFENDANTS' CONSPIRACY**

8         284.   During the Class Period, Defendants collectively controlled the vast majority of the

9    market for Lithium Ion Batteries, both globally and in the United States.

10        285.   Defendants sold Lithium Ion Batteries and Lithium Ion Battery Products to

11   manufacturers and consumers, located in numerous states in the United States other than states in

12   which Defendants are located, substantial quantities of Lithium Ion Batteries and Lithium Ion

13   Battery Products shipped from outside the United States and from other states in a continuous and

14   uninterrupted flow of interstate and foreign trade and commerce.

15        286.   In addition, substantial quantities of equipment and supplies necessary to the

16   production and distribution of Lithium Ion Batteries and Lithium Ion Battery Products, as well as

17   payments for Lithium Ion Batteries and Lithium Ion Battery Products and related products sold by

18   Defendants, traveled in interstate and foreign trade and commerce. The business activities of

19   Defendants in connection with the production and sale of Lithium Ion Batteries and Lithium Ion

20   Battery Products that were the subject of the charged conspiracy were within the flow of, and

21   substantially affected, interstate and foreign trade and commerce.

22   **A.    Defendants' Conduct Involved Import Trade or Import Commerce**

23        287.   Defendants' illegal conduct involved U.S. import trade or import commerce.

24   Defendants knowingly and intentionally sent price-fixed Lithium Ion Batteries into a stream of

25   commerce that they knew led directly into the United States, one of their most important markets and

26   a major source of their revenues. In this respect, they directed their anticompetitive conduct at

27   imports into the United States with the intent of causing price-fixed Lithium Ion Batteries to enter the

28   United States market and inflating the prices of Lithium Ion Battery Products destined for the United

States. Such conduct was meant to produce and did in fact produce a substantial effect in the United States in the form of higher prices.

288.   The U.S. Lithium Ion Battery market is enormous and was a major focus of and very important to the conspiracy. Defendants and others shipped millions of Lithium-Ion Batteries, including those incorporated into finished products, into the United States during the Class Period for ultimate resale to U.S. consumers. As a result, a substantial portion of Defendants' revenues were derived from the U.S. market. Defendants spent hundreds of millions of dollars on advertising their products in the United States.

289.   Because of the importance of the U.S. market to Defendants and their co-conspirators, Lithium Ion Batteries and products containing Lithium Ion Batteries intended for importation into and ultimate consumption in the United States were a focus of Defendants' illegal conduct. Defendants knowingly and intentionally sent price-fixed Lithium Ion Batteries and products containing Lithium Ion Batteries into a stream of commerce that lead directly into the United States. Many Lithium Ion Batteries were intended for incorporation into finished products specifically destined for sale and use in the United States. This conduct by Defendants was meant to produce and did in fact produce a substantial effect in the United States in the form of artificially-inflated prices for Lithium Ion Batteries and products containing Lithium Ion Batteries.

290.   During the Class Period, every Defendant shipped Lithium Ion Batteries directly into the United States.

291.   When high-level executives based at Defendants' Asian headquarters agreed on prices, they knew that their price-fixed Lithium Ion Batteries would be incorporated into products containing Lithium Ion Batteries sold in the United States. Moreover, because Lithium Ion Batteries are – and were throughout the Class Period – a significant component of products containing Lithium Ion Batteries, Defendants knew that price increases for Lithium Ion Batteries would necessarily result in increased prices for products containing Lithium Ion Batteries sold in the United States. Many Defendants manufactured products containing Lithium Ion Batteries and sold them in the United States.

292.    For the reasons set forth above, Defendants' illegal conduct involved import trade or import commerce into the United States.

**B.    Defendants' Conduct Had a Direct, Substantial, and Reasonably Foreseeable Effect on U.S. Domestic and Import Trade or Commerce That Gave Rise to Plaintiffs' Antitrust Claims**

293.    Plaintiffs and Class Members are located all across the United States, including Arizona, Arkansas, California, the District of Columbia, Florida, Illinois, Kansas, Maine, Massachusetts, Michigan, Minnesota, Missouri, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia and Wisconsin.

294.    Defendants' illegal conduct had a direct, substantial, and reasonably foreseeable effect on U.S. domestic and import trade or commerce in the form of higher prices for Lithium Ion Batteries and products containing Lithium Ion Batteries (prices that were the product of collusion) that Plaintiffs and Class Members paid. These prices, tainted by collusion, directly and immediately impacted Plaintiffs and Class Members in the United States. In this respect, the U.S. effects of Defendants' illegal conduct gave rise to Plaintiffs' and Class Members' antitrust claims and were the proximate cause of the injury that Plaintiffs and Class Members suffered.

295.    A number of facts demonstrate that Defendants' price-fixing conspiracy had a direct, substantial and reasonably foreseeable effect on domestic commerce. For example, Samsung presently has posted on its website a news article titled "Samsung SDI to Supply Batteries to Dell, HP," dated April 29, 2008, stating that "Samsung SDI, the world' [sic] No. 3 maker of secondary cells, plans to supply its latest lithium-ion batteries to U.S.-based computer makers including Dell and Hewlett-Packard (HP) from July this year. 'Recently, we finalized a deal with some U.S.-based leading computer makers to supply our lithium-ion batteries," Samsung SDI said Tuesday."[88]

296.    The Taiwanese packer Simplo is one of Defendants' major customers. It states on its website that its major customers for battery packs include U.S.-based laptop computer and consumer

---

[88]    *See* Kim Yoo-chul, *Samsung SDI to Supply Batteries to Dell, HP*, The Korea Times (April 29, 2008, available at http://www.samsungsdi.com/f_news_view.sdi?post=E&seqno=1476 (last visited June 30, 2013).

electronics manufacturers Apple, Dell, and HP. In December 2003, a news report regarding Simplo stated that "[t]he company estimated it would ship 2.4 million NB batteries to Hewlett Packard this year, accounting for 44% of its total shipments of 5.25 million units. The company anticipated it would see shipment grow to 8.6 million NB batteries next year" and that "[w]ith the orders from Dell and Hewlett Packard, Simplo vows to become the world's second largest manufacturer of NB batteries next year, with its global market share to expand to between 18% and 20% from the existing 13.8%."[89]

297.    The Taiwanese packer Dynapack is one of Defendants' major customers. A February 2010 news report indicated that Dynapack "is expected to ship over 6 million battery packs to Apple for the entire year."[90]

298.    Defendants are the dominant suppliers of Lithium Ion Batteries to the major U.S.-based computer manufacturers, such as HP, Dell, and Apple, as well as other massive computer manufacturers whose products are leading brands in the U.S. The following chart from a leading battery industry research and consulting company, Avicenne Energy, details many Defendants' shares of the leading computer manufacturers' Lithium Ion Battery needs for portable computers in 2011.

299.    The leading portable computer manufacturers, many of whom are listed above, dominate the United States market. The following chart illustrates their market shares of Laptop sales as well as estimates the percentage of sales of portable computers within each company's market share:

---

[89]    *Simplo Obtains Dell Orders for NB Battery*, Cens.com (Dec. 22, 2003), http://cens.com/cens/html/en/news/news_inner_11540.html.

[90]    *Simplo, Dynapack to See Auspicious Year in 2010*, Cens.com (Feb. 3, 2010), http://cens.com/cens/html/en/news/news_inner_31131.html.

Laptop PC US Market Share Estimate, 2010

| Company | Total PCs (IDC) | Est. Portable PCs | Value of Shipments | Share |
|---------|-----------------|-------------------|--------------------|-------|
| HP | 19,488,000 | 12,878,178 | $8,464,182,308 | 26.0% |
| Dell | 17,352,000 | 11,466,653 | $7,536,457,892 | 23.1% |
| Acer | 8,012,000 | 5,294,538 | $3,479,835,214 | 10.7% |
| Apple | 6,571,000 | 4,342,288 | $2,853,968,696 | 8.8% |
| Toshiba | 6,623,000 | 4,376,651 | $2,876,553,747 | 8.8% |
| Others | 16,964,000 | 11,210,253 | $7,367,938,663 | 22.6% |
| Total | 75,010,000 | 49,568,561 | $32,578,936,521 | |

| | |
|---|---|
| 2010 Portable PCs as Percent of US PC Sales | 66.1% |
| 2010 Average Notebook Price: | $657.25 |

Notes:
Portable PCs estimated as 66.1% of total PC shipments as per IDC forecast.
Value of Shipments based on NPD's average notebook price for 2010.

Sources:
http://blog.laptopmag.com/average-windows-laptop-costs-456-down-14-percent-in-24-months
http://www.idc.com/getdoc.jsp?containerId=prUS23261412
http://techcrunch.com/2010/06/15/idc-sees-pc-market-grow-by-19-8-in-2010/

300.    Massive amounts of portable computers, containing Defendants' Lithium Ion Batteries, have been sold each year in every state in the United States. According to the U.S. Census Bureau's Current Population Survey in October 2010 (released in July 2012), nearly 76% of the population (those individuals that are three (3) years and older) had access to the Internet from their household (which would itself require access to a computer, such as a laptop or tablet computer, or a smartphone). The following chart[91] provides the numbers of households and percentage of population by state:

| State | Total | Individual lives in household with Internet access | |
|-------|-------|----------------------------------------------------|--------|
| | | Number (in thousands) | Percent |
| United States | 292,065 | 221,767 | 75.9 |
| | | | |
| Alabama | 4,503 | 3,016 | 67.0 |
| Alaska | 660 | 542 | 82.1 |

---

[91]    Table 3-A, available at *Computer and Internet Use in the United States: 2010*, United States Census Bureau, http://www.census.gov/hhes/computer/publications/2010.html (last visited June 30, 2013).

| State | Total | Individual lives in household with Internet access | |
| | | Number (in thousands) | Percent |
|---|---|---|---|
| Arizona | 6,340 | 5,017 | 79.1 |
| Arkansas | 2,743 | 1,767 | 64.4 |
| California | 35,181 | 27,524 | 78.2 |
| Colorado | 4,836 | 3,769 | 77.9 |
| Connecticut | 3,364 | 2,792 | 83.0 |
| Delaware | 842 | 646 | 76.8 |
| District of Columbia | 581 | 446 | 76.9 |
| Florida | 17,688 | 13,552 | 76.6 |
| Georgia | 9,296 | 7,027 | 75.6 |
| Hawaii | 1,210 | 952 | 78.7 |
| Idaho | 1,468 | 1,174 | 80.0 |
| Illinois | 12,248 | 9,236 | 75.4 |
| Indiana | 6,139 | 4,101 | 66.8 |
| Iowa | 2,843 | 2,170 | 76.3 |
| Kansas | 2,649 | 2,156 | 81.4 |
| Kentucky | 4,067 | 2,727 | 67.0 |
| Louisiana | 4,272 | 2,940 | 68.8 |
| Maine | 1,254 | 1,005 | 80.2 |
| Maryland | 5,431 | 4,406 | 81.1 |
| Massachusetts | 6,389 | 5,331 | 83.4 |
| Michigan | 9,473 | 7,172 | 75.7 |
| Minnesota | 5,001 | 3,959 | 79.2 |
| Mississippi | 2,789 | 1,793 | 64.3 |
| Missouri | 5,625 | 4,161 | 74.0 |
| Montana | 920 | 688 | 74.8 |
| Nebraska | 1,695 | 1,304 | 76.9 |
| Nevada | 2,528 | 2,036 | 80.5 |
| New Hampshire | 1,270 | 1,094 | 86.2 |
| New Jersey | 8,269 | 6,661 | 80.6 |
| New Mexico | 1,899 | 1,218 | 64.1 |
| New York | 18,549 | 14,388 | 77.6 |
| North Carolina | 8,901 | 6,671 | 74.9 |
| North Dakota | 608 | 486 | 79.9 |
| Ohio | 11,000 | 7,969 | 72.4 |
| Oklahoma | 3,505 | 2,503 | 71.4 |
| Oregon | 3,695 | 3,005 | 81.3 |

| State | Total | Individual lives in household with Internet access | |
| | | Number (in thousands) | Percent |
| --- | --- | --- | --- |
| Pennsylvania | 11,981 | 9,296 | 77.6 |
| Rhode Island | 994 | 781 | 78.6 |
| South Carolina | 4,310 | 2,906 | 67.4 |
| South Dakota | 763 | 561 | 73.6 |
| Tennessee | 6,068 | 4,209 | 69.4 |
| Texas | 23,481 | 16,802 | 71.6 |
| Utah | 2,681 | 2,293 | 85.5 |
| Virginia | 7,418 | 5,691 | 76.7 |
| Vermont | 592 | 468 | 79.1 |
| Washington | 6,373 | 5,328 | 83.6 |
| West Virginia | 1,753 | 1,264 | 72.1 |
| Wisconsin | 5,401 | 4,349 | 80.5 |
| Wyoming | 521 | 413 | 79.3 |
| | | | |

Source: U.S. Census Bureau, Current Population Survey, October 2010. Internet Release date: July 2012

301.    With respect to cell phones and smart phones, in 2011, CTIA, an international trade association that represents the wireless communications industry, reported that wireless device penetration in the U.S. was 102.2%, meaning the "# of active units divided by the total U.S. and territorial population (Puerto Rico, Guam and the U.S. Virgin Islands)."[92] It calculated the number of wireless devices in the United States to be approximately *316,000,000*. It defined wireless devices as including "smartphones, feature phones, tablets, hotspots, etc."

302.    Figure 15 is from an industry report and details the share of total purchases by many cell and smartphone OEMs from each supplier (*e.g.*, Defendants).

---

[92]    *50 Wireless Quick Facts*, CTIA, http://www.ctia.org/advocacy/research/index.cfm/aid/10323 (last visited June 30, 2013).

1

**Figure 15: Cellular Phones/Lithium Ion Battery Supplier Relationships 2011**

2



M cells

▦ Sanyo  ▦ Sony  ▦ PANASONIC  ■ SDI  ▦ LGC  ▦ Lishen  ▦ BYD  ▦ MAXELL  ▦ ATL

303.    The following chart estimates the U.S. market shares of the leading cell and smart phone manufacturers:

**Mobile Phone US Market Share Estimate, 2010**

|          | Jan - Mar | Mar - May | July - Sep | Oct - Dec | Average Share |
|----------|-----------|-----------|------------|-----------|---------------|
| Samsung  | 21.9%     | 22.4%     | 23.5%      | 24.8%     | 23.2%         |
| Mot      | 21.9%     | 21.2%     | 18.4%      | 16.7%     | 19.6%         |
| LG       | 21.8%     | 21.5%     | 21.1%      | 20.9%     | 21.3%         |
| RIM      | 8.3%      | 8.7%      | 9.3%       | 8.5%      | 8.7%          |
| Nokia    | 8.3%      | 8.1%      | 7.4%       | 7.0%      | 7.7%          |
| Other    | 17.8%     | 18.1%     | 20.3%      | 22.1%     | 19.6%         |

| Total US Revenue | $10,700,000,000 |
|------------------|-----------------|

Notes:
Shares are based on subscribers. Three month average for Apr - Jun was not available, so Mar - May average was used instead.

Sources:
http://www.comscore.com/Insights/Press_Releases/2010/5/comScore_Reports_March_2010_U.S._Mobile_Subscriber_Market_Share
http://www.comscore.com/Insights/Press_Releases/2010/7/comScore_Reports_May_2010_U.S._Mobile_Subscriber_Market_Share
http://www.comscore.com/Insights/Press_Releases/2010/11/comScore_Reports_September_2010_U.S._Mobile_Subscriber_Market_Share
http://www.comscore.com/Insights/Press_Releases/2011/2/comScore_Reports_December_2010_U.S._Mobile_Subscriber_Market_Share
http://www.reuters.com/article/2012/01/06/idUS33079+06-Jan-2012+BW20120106

Smartphone Market US Market Share Estimate, 2010

| | Market Share | Sales |
|---|---|---|
| HTC | 19.0% | $1,597,596,000 |
| Motorola | 11.0% | $924,924,000 |
| Samsung | 7.0% | $588,588,000 |
| Apple | 27.0% | $2,270,268,000 |
| RIM BlackBerry | 27.0% | $2,270,268,000 |
| HP | 1.0% | $84,084,000 |
| Nokia | 2.0% | $168,168,000 |
| Other | 6.0% | $504,504,000 |
| Total | 100.0% | $8,408,400,000 |

| | |
|---|---|
| Estimate of Total Smartphone Units sold in U.S.:[1] | 58.8 million |
| Estimate of Average Selling Price (ASP): | $143 |
| Estimate of Total U.S. Smartphone Market Value: | $8,408,400,000 |

Notes:
[1] Canalys reported that the U.S. smartphone market consisted of 14.7m units in Q2-2010. Yearly estimate is calculated by multiplying by 4.

Sources:
Market Share: Ziegler, Chris. "Visualized: US smartphone market share, by manufacturer and platform, made pretty."
Engadget. 3-Mar-11. Accessed 21-Jun-13. http://www.engadget.com/2011/03/03/visualized-us-smartphone-market-share-by-manufacturer-and-plat/.
Units Sold: "Android smart phone shipments grow 886% year-on-year in Q2 2010." Canalys. 2-Aug-2010. Accessed 21-Jun-13.
http://www.canalys.com/newsroom/android-smart-phone-shipments-grow-886-year-year-q2-2010.
ASP: Gonsalves, Antone. "Android Takes Lead In U.S. Smartphone Market." InformationWeek. 4-Aug-2010. Accessed 21-Jun-13.
http://www.informationweek.com/software/operating-systems/android-takes-lead-in-us-smartphone-mark/226500293.

## IX.    JURISDICTION AND VENUE

304.    This Court has jurisdiction over the instant matter pursuant to 28 U.S.C. § 1332(d)

and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, which vest original

jurisdiction in the district courts of the United States for any multi-state class action where the

aggregate amount in controversy exceeds $5 million and where the citizenship of any member of the

class of plaintiffs is different from that of any defendant. The $5 million amount-in-controversy and

diverse citizenship requirements of CAFA are satisfied in this case.

305.    Venue is appropriate in this district under 28 U.S.C. § 1391(b) and (c). During the

Class Period many of the Defendants transacted business, were found, or had agents in this district

and because a substantial portion of the affected interstate trade and commerce described below has

been carried out in this district.

306.    This Court has personal jurisdiction over each Defendant because, *inter alia*, each

Defendant: (a) transacted business throughout the United States, including in this district;

(b) participated in the sale and distribution of Lithium Ion Batteries throughout the United States,

including in this district; (c) had substantial contacts with the United States, including in this district;

and/or (d) was engaged in an illegal conspiracy that was directed at and had the intended effect of

1    causing injury to persons residing in, located in, or doing business throughout the United States,

2    including in this district.

3        307.    Defendants engaged in conduct both inside and outside the U.S. that caused direct,

4    substantial and reasonably foreseeable and intended anti-competitive effects upon interstate

5    commerce within the United States.

6        308.    The activities of the Defendants and their co-conspirators were within the flow of,

7    were intended to, and did have, a substantial effect on interstate commerce of the United States.

8    Defendants' products are sold in the flow of interstate commerce.

9        309.    As described above in the previous section in more detail, Lithium Ion Batteries

10   manufactured abroad by Defendants and sold for use in Lithium Ion Battery Products either

11   manufactured in the United States or manufactured abroad and sold in the United States, are goods

12   brought into the United States for sale, and therefore constitute import commerce. To the extent any

13   Lithium Ion Batteries are not purchased in the U.S., and such Lithium Ion Batteries do not constitute

14   import commerce, Defendants' unlawful activities with respect thereto, as more fully alleged herein

15   during the Class period, had, and continue to have, a direct, substantial and reasonably foreseeable

16   effect on United States commerce. The anti-competitive conduct, and its effects on United States

17   commerce described herein, proximately caused antitrust injury to the Plaintiffs and members of the

18   Classes in the U.S.

19       310.    By reason of the unlawful activities alleged herein, Defendants substantially affected

20   commerce throughout the U.S., causing injury to the Plaintiffs and members of the Classes.

21   Defendants, directly and through their agents, engaged in a conspiracy affecting all states to fix or

22   inflate prices of Lithium Ion Batteries, which unreasonably restrained trade and adversely affected

23   the market for Lithium Ion Batteries.

24       311.    Defendants' conspiracy and wrongdoing described herein adversely affected persons

25   in the United States who purchased Lithium Ion Batteries or Lithium Ion Battery Products for

26   personal use and not for resale, including Plaintiffs and members of the Classes.

27

28

1

X.     PARTIES

2    A.    Plaintiffs

3        312.   Plaintiff Thomas Tuohy is a resident of Scottsdale, Arizona.  During the Class Period,

4    Plaintiff purchased a Blackberry Curve cell phone and a Toshiba laptop containing a Lithium Ion

5    Rechargeable Battery manufactured by a Defendant.  As a result of the antitrust violations alleged in

6    this complaint, the Plaintiff has suffered injury.  Plaintiff Tuhoy is referred to herein as an "Arizona

7    Plaintiff."

8        313.   Plaintiff Christopher Hunt is a resident of Phoenix, Arizona.  During the Class Period,

9    Plaintiff purchased a Sony GRZ660 Laptop and 2 COMPAQ laptops containing a Lithium Ion

10   Battery containing a cell manufactured by a Defendant.  As a result of the antitrust violations alleged

11   in this complaint, the Plaintiff has suffered injury. .  Plaintiff Hunt is referred to herein as an

12   "Arizona Plaintiff."

13       314.   Plaintiff Shawn Sellers is a resident of Phoenix, Arizona. During the Class Period,

14   Plaintiff purchased an Apple MacBook Prop laptop containing a Lithium Ion Battery containing a

15   cell manufactured by a Defendant. As a result of the antitrust violations alleged in this complaint, the

16   Plaintiff has suffered injury. Plaintiff Sellers is referred to herein as an "Arizona Plaintiff."

17       315.   Plaintiff A-1 Computers is a business in Jacksonville, Arkansas.  During the Class

18   Period, Plaintiff purchased a Gateway laptop containing a Lithium Ion Battery manufactured by a

19   Defendant.  As a result of the antitrust violations alleged in this complaint, the Plaintiff has suffered

20   injury.  Plaintiff A-1 Computers is referred to herein as the "Arkansas Plaintiff."

21       316.   Plaintiff Brian Hanlon is a resident of San Francisco, California.  During the Class

22   Period, Plaintiff purchased a Sony Vaio Laptop containing a Lithium Ion Battery containing a cell

23   manufactured by a Defendant.  As a result of the antitrust violations alleged in this complaint, the

24   Plaintiff has suffered injury.  Plaintiff Hanlon is referred to herein as a "California Plaintiff."

25       317.   Plaintiff Kevin Young is a resident of Albany, California.  During the Class Period,

26   Plaintiff purchased a Dell Notebook laptop computer containing a Lithium Ion Battery manufactured

27   by a Defendant.  As a result of the antitrust violations alleged in this complaint, the Plaintiff has

28   suffered injury.  Plaintiff Young is referred to herein as a "California Plaintiff."

INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR      - 105 -

010330-11 622968 V1

1     318.   Plaintiff Kristina Yee is a resident of San Francisco, California.  During the Class

2   Period, Plaintiff purchased an Apple laptop containing a Lithium Ion Battery containing a cell

3   manufactured by a Defendant.  As a result of the antitrust violations alleged in this complaint, the

4   Plaintiff has suffered injury.  Plaintiff Yee is referred to herein as a "California Plaintiff."

5     319.   Plaintiff Matt Miller is a resident of Carlsbad, California.  During the Class Period,

6   Plaintiff purchased an HP Touchpad tablet containing a Lithium Ion Battery containing a cell

7   manufactured by a Defendant.  As a result of the antitrust violations alleged in this complaint, the

8   Plaintiff has suffered injury.  Plaintiff Miller is referred to herein as a "California Plaintiff."

9     320.   Plaintiff Matthew Saba is a resident of San Jose, California.  During the Class Period,

10   Plaintiff purchased a Dell Latitude d620 laptop containing a Lithium Ion Battery containing a cell

11   manufactured by a Defendant.  As a result of the antitrust violations alleged in this complaint, the

12   Plaintiff has suffered injury.  Plaintiff Saba is referred to herein as a "California Plaintiff."

13     321.   Plaintiff Michael Katz-Lacabe is a resident of San Leandro, California.  During the

14   Class Period, Plaintiff purchased an Apple laptop, two Dell laptops, an Apple iPhone, and an HP

15   Touchpad tablet containing a Lithium Ion Battery containing a cell manufactured by a Defendant.

16   As a result of the antitrust violations alleged in this complaint, the Plaintiff has suffered injury.

17   Plaintiff Katz-Lacabe is referred to herein as a "California Plaintiff."

18     322.   Plaintiff Piya Robert Rojanasathit is a resident of San Carlos, California.  During the

19   Class Period, Plaintiff purchased lithium ion batteries, as well as, a Sony Cybershot DSC-TX10

20   Digital Camera, a Canon Powershot SX260 Digital Camera, a Sony DSC-TX5 Digital Camera, a

21   Canon Powershot SP1100IS Digital Camera, a Canon SD950IS Digital Camera, a Canon SD800IS

22   Digital Camera, a Lenovo T420 laptop, HTC cell phone, and several Dell laptop computers

23   containing a Lithium Ion Battery containing a cell manufactured by a Defendant.  As a result of the

24   antitrust violations alleged in this complaint, the Plaintiff has suffered injury.  Plaintiff Rojanasathit

25   is referred to herein as a "California Plaintiff."

26     323.   Plaintiff Ricahard E. Johns is a resident of San Francisco, California.  During the

27   Class Period, Plaintiff purchased an Apple iPhone containing a Lithium Ion Battery containing a cell

28

INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR     - 106 -

010330-11 622968 V1

1    manufactured by a Defendant. As a result of the antitrust violations alleged in this complaint, the

2    Plaintiff has suffered injury. Plaintiff Johns is referred to herein as a "California Plaintiff."

3        324.   Plaintiff Steve Bugee is a resident of San Diego, California. During the Class Period,

4    Plaintiff purchased two Toshiba laptops containing a Lithium Ion Battery containing a cell

5    manufactured by a Defendant. As a result of the antitrust violations alleged in this complaint, the

6    Plaintiff has suffered injury. Plaintiff Bugee is referred to herein as a "California Plaintiff."

7        325.   Plaintiff Tom Pham is a resident of Aliso Viejo, California. During the Class Period,

8    Plaintiff purchased a Lithinm Ion Battery containing a cell manufactured by a Defendant. As a result

9    of the antitrust violations alleged in this complaint, the Plaintiff has suffered injury. Plaintiff Pham is

10   referred to herein as a "California Plaintiff."

11       326.   Plaintiff Spencer Hathaway is a resident of Washington, DC. During the Class

12   Period, Plaintiff purchased an Apple MacBook Pro laptop containing a Lithium Ion Battery

13   manufactured by a Defendant. As a result of the antitrust violations alleged in this complaint, the

14   Plaintiff has suffered injury. Plaintiff Hathaway is referred to herein as the "District of Columbia

15   Plaintiff."

16       327.   Plaintiff Bradley Seldin is a resident of Miami Beach, Florida. During the Class

17   Period, Plaintiff purchased an Acer notebook computer containing a Lithium Ion Battery

18   manufactured by a Defendant. As a result of the antitrust violations alleged in this complaint, the

19   Plaintiff has suffered injury. Plaintiff Seldin is referred to herein as a "Florida Plaintiff."

20       328.   Plaintiff Gerasimos Molfetas is a resident of Weston, Florida. During the Class

21   Period, Plaintiff purchased an Apple iPad and a LG Sensium cell phone containing a Lithium Ion

22   Battery containing a cell manufactured by a Defendant. As a result of the antitrust violations alleged

23   in this complaint, the Plaintiff has suffered injury. Plaintiff Molfetas is referred to herein as a

24   "Florida Plaintiff."

25       329.   Plaintiff Patrick McGuinness is a resident of Jacksonville, Florida. During the Class

26   Period, Plaintiff purchased an Apple MacBook laptop containing a Lithium Ion Battery containing a

27   cell manufactured by a Defendant. As a result of the antitrust violations alleged in this complaint,

28   the Plaintiff has suffered injury. Plaintiff McGuiness is referred to herein as a "Florida Plaintiff."

330.    Plaintiff Theodore Wolfendale is a resident of Florida. During the Class Period, Plaintiff purchased a Lithium Ion Battery. As a result of the antitrust violations alleged in this complaint, the Plaintiff has suffered injury. Plaintiff Wolfendale is referred to herein as a "Florida Plaintiff."

331.    Plaintiff Kathryn Knowles is a resident of Hoffman Estates, Illinois. During the Class Period, Plaintiff purchased two LG cell phones containing a Lithium Ion Battery manufactured by a Defendant. As a result of the antitrust violations alleged in this complaint, the Plaintiff has suffered injury. Plaintiff Knowles is referred to herein as the "Illinois Plaintiff."

332.    Plaintiff Kirsten Luenz is a resident of Overland Park, Kansas. During the Class Period, Plaintiff purchased several Apple iPhones, an Apple MacBook Pro laptop and an Apple iPod Touch each containing a Lithium Ion Battery manufactured by a Defendant. Plaintiff Luenz is referred to herein as the "Kansas Plaintiff."

333.    Plaintiff Jason Ames is a resident of Cape Elizabeth, Maine. During the Class Period, Plaintiff purchased a Nokia cell phone, 3 Apple iPhones, a Makita Cordless Drill and an Apple iBook G4 containing a Lithium Ion Battery manufactured by a Defendant. As a result of the antitrust violations alleged in this complaint, the Plaintiff has suffered injury. Plaintiff Ames is referred to herein as the "Maine Plaintiff."

334.    Plaintiff Matthew Weiner is a resident of Hopkinton, Massachusetts. During the Class Period, Plaintiff purchased a Hewlett-Packard laptop and an Apple MacBook Air laptop containing a Lithium Ion Battery manufactured by a Defendant. As a result of the antitrust violations alleged in this complaint, the Plaintiff has suffered injury. Plaintiff Weiner is referred to herein as a "Massachusetts Plaintiff."

335.    Plaintiff William Cabral is a resident of East Freetown, Massachusetts. During the Class Period, Plaintiff purchased a Hewlett-Packard laptop containing a Lithium Ion Battery containing a cell manufactured by a Defendant. As a result of the antitrust violations alleged in this complaint, the Plaintiff has suffered injury. Plaintiff Cabral is referred to herein as a "Massachusetts Plaintiff."

1        336.    Plaintiff David Shawn is a resident of Rochester Hills, Michigan.  During the Class

2  Period, Plaintiff purchased a Dell laptop, a Canon Power Shot Digital Camera and two LG cell

3  phones containing a Lithium Ion Battery manufactured by a Defendant.  As a result of the antitrust

4  violations alleged in this complaint, the Plaintiff has suffered injury.  Plaintiff Shawn is referred to

5  herein as a "Michigan Plaintiff."

6        337.    Plaintiff Michael D'Orazio is a resident of Farmington Hills, Michigan.  During the

7  Class Period, Plaintiff purchased an Apple iPad, a Nikon Digital Camera, a Sony Digital Camera and

8  a Toshiba laptop containing a Lithium Ion Battery containing a cell manufactured by a Defendant.

9  As a result of the antitrust violations alleged in this complaint, the Plaintiff has suffered injury.

10  Plaintiff D'Orazio is referred to herein as a "Michigan Plaintiff."

11        338.    Plaintiff Robert L. McGranahan is a resident of Ann Arbor, Michigan.  During the

12  Class Period, Plaintiff purchased an Apple MacBook Pro laptop containing a Lithium Ion Battery

13  containing a cell manufactured by a Defendant.  As a result of the antitrust violations alleged in this

14  complaint, the Plaintiff has suffered injury.  Plaintiff McGranaham is referred to herein as a

15  "Michigan Plaintiff."

16        339.    Plaintiffs Diane and David Beson are residents of Minnesota.  During the Class

17  Period, plaintiffs purchased a Samsung laptop, multiple Apple iPhones, Nokia cellphones, a Canon

18  digital camera, an Apple iPod and an Apple iPad containing a Lithium Ion Battery containing a cell

19  manufactured by a Defendant.  As a result of the antitrust violations alleged in this complaint, the

20  Plaintiffs have suffered injury.

21        340.    Plaintiff Joseph O'Daniel is a resident of Lee's Summit, Missouri.  During the Class

22  Period, Plaintiff purchased a Hewlett-Packard laptop containing a Lithium Ion Battery manufactured

23  by a Defendant.  As a result of the antitrust violations alleged in this complaint, the Plaintiff has

24  suffered injury.  Plaintiff O'Daniel is referred to herein as the "Missouri Plaintiff."

25        341.    Plaintiff Maury "Kim" Billingsley is a resident of Booneville, Mississippi.  During the

26  Class Period, Plaintiff purchased an Android cell phone and a laptop computer containing a Lithium

27  Ion Battery manufactured by a Defendant.  As a result of the antitrust violations alleged in this

28

1   complaint, the Plaintiff has suffered injury.  Plaintiff Billingsley is referred to herein as the

2   "Mississippi Plaintiff."

3          342.    Plaintiff Benjamin Kramer is a resident of Lincoln, Nebraska.  During the Class

4   Period, Plaintiff purchased an Apple iPhone containing a Lithium Ion Battery manufactured by a

5   Defendant.  As a result of the antitrust violations alleged in this complaint, the Plaintiff has suffered

6   injury.  Plaintiff Kramer is referred to herein as the "Nebraska Plaintiff."

7          343.    Plaintiff Angela Turner is a resident of North Las Vegas, Nevada.  During the Class

8   Period, Plaintiff purchased a Nikon Cool Pix Digital Camera and an LG Remarq cell phone

9   containing a Lithium Ion Battery manufactured by a Defendant.  As a result of the antitrust violations

10  alleged in this complaint, the Plaintiff has suffered injury.  Plaintiff Turner is referred to herein as the

11  "Nevada Plaintiff."

12         344.    Plaintiff Wilbur Franklin is a resident of Londonderry, New Hampshire.  During the

13  Class Period, Plaintiff purchased two Samsung 4GLTE cell phones and an LG Enlighten cell phone

14  containing a Lithium Ion Battery manufactured by a Defendant.  As a result of the antitrust

15  violations alleged in this complaint, the Plaintiff has suffered injury.  Plaintiff Franklin is referred to herein as

16  the "New Hampshire Plaintiff."

17         345.    Plaintiff Michael Reilly is a resident of Albuquerque, New Mexico.  During the Class

18  Period, Plaintiff purchased a Compaq laptop computer, a Gateway personal computer and a HP

19  laptop computer containing a Lithium Ion Battery manufactured by a Defendant.  As a result of the

20  antitrust violations alleged in this complaint, the Plaintiff has suffered injury.  Plaintiff Reilly is

21  referred to herein as the "New Mexico Plaintiff."

22         346.    Plaintiff David Tolchin is a resident of New York, New York.  During the Class

23  Period, Plaintiff purchased lithium ion batteries and a Dell laptop containing a Lithium Ion Battery

24  containing a cell manufactured by a Defendant.  As a result of the antitrust violations alleged in this

25  complaint, the Plaintiff has suffered injury.  Plaintiff Tolchin is referred to herein as a "New York

26  Plaintiff."

27         347.    Plaintiff Matt Bryant is a resident of West Henrietta, New York.  During the Class

28  Period, Plaintiff purchased a Hewlett-Packard laptop containing a Lithium Ion Battery containing a

1  cell manufactured by a Defendant. As a result of the antitrust violations alleged in this complaint,

2  the Plaintiff has suffered injury. Plaintiff Bryant is referred to herein as a "New York Plaintiff."

3      348.    Plaintiff Meghan Dowling is a resident of Forest Hills, New York. During the Class

4  Period, Plaintiff purchased a Dell laptop and an Apple iPhone containing a Lithium Ion Battery

5  containing a cell manufactured by a Defendant. As a result of the antitrust violations alleged in this

6  complaint, the Plaintiff has suffered injury. Plaintiff Dowling is referred to herein as a "New York

7  Plaintiff."

8      349.    Plaintiff Valentina Juncai is a resident of Mahopac, New York. During the Class

9  Period, Plaintiff purchased a Samsung Motorola FoTone4 cell phone and an Apple MacBook laptop

10  containing a Lithium Ion Battery containing a cell manufactured by a Defendant. As a result of the

11  antitrust violations alleged in this complaint, the Plaintiff has suffered injury. Plaintiff Juncai is

12  referred to herein as a "New York Plaintiff."

13      350.    Plaintiff Kathleen Alice Tawney is a resident of Charlotte, North Carolina. During

14  the Class Period, Plaintiff purchased two Apple MacBook Pro laptops, a Nikon D50 Digital Camera

15  and an Apple iPad2 containing a Lithium Ion Battery manufactured by a Defendant. As a result of

16  the antitrust violations alleged in this complaint, the Plaintiff has suffered injury. Plaintiff Tawney is

17  referred to herein as the "North Carolina Plaintiff."

18      351.    Plaintiff Joseph Aronson is a former resident of Bismarck, North Dakota. During

19  the Class Period, Plaintiff purchased an Apple iPhone 4 cell phone containing a Lithium Ion Battery

20  manufactured by a Defendant. As a result of the antitrust violations alleged in this complaint, the

21  Plaintiff has suffered injury. Plaintiff Aronson is referred to herein as the "North Dakota Plaintiff."

22      352.    Plaintiff Sheri Harmon is a resident of Mulino, Oregon. During the Class Period,

23  Plaintiff purchased a Canon Powershot SD 790is Digital Camera containing a Lithium Ion Battery

24  manufactured by a Defendant. As a result of the antitrust violations alleged in this complaint, the

25  Plaintiff has suffered injury. Plaintiff Harmon is referred to herein as an "Oregon Plaintiff."

26      353.    Plaintiff Marilyn Sharp is a resident of Kaizer, Oregon. During the Class Period,

27  Plaintiff purchased a Sony Cyber Shot Digital Camera and Nikon Cool Pix Digital Camera

28  containing a Lithium Ion Battery containing a cell manufactured by a Defendant. As a result of the

INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR    - 111 -

1   antitrust violations alleged in this complaint, the Plaintiff has suffered injury. Plaintiff Sharp is

2   referred to herein as an "Oregon Plaintiff."

3       354.   Plaintiff Beatriz Hernandez is a resident of Ocean Park, San Juan, Puerto Rico.

4   During the Class Period, Plaintiff purchased a Hewlett-Packard laptop containing a Lithium Ion

5   Battery manufactured by a Defendant. As a result of the antitrust violations alleged in this

6   complaint, the Plaintiff has suffered injury. Plaintiff Hernandez is referred to herein as the "Puerto

7   Rico Plaintiff."

8       355.   Plaintiff Jenny Dieter is a resident of Lexington, South Carolina. During the Class

9   Period, Plaintiff purchased a Sony video camera containing a Lithium Ion Battery manufactured by a

10  Defendant. As a result of the antitrust violations alleged in this complaint, the Plaintiff has suffered

11  injury. Plaintiff Dieter is referred to herein as the "South Carolina Plaintiff."

12      356.   Plaintiff Christopher Bessette is a resident of Rapid City, South Dakota. During the

13  Class Period, Plaintiff purchased a Toshiba laptop containing a Lithium Ion Battery manufactured by

14  a Defendant. As a result of the antitrust violations alleged in this complaint, the Plaintiff has

15  suffered injury. Plaintiff Bessette is referred to herein as the "South Dakota Plaintiff."

16      357.   Plaintiff Dawn Hall is a resident of Brentwood, Tennessee. During the Class Period,

17  Plaintiff purchased a LG-Sprint cell phone containing a Lithium Ion Battery manufactured by a

18  Defendant. As a result of the antitrust violations alleged in this complaint, the Plaintiff has suffered

19  injury. Plaintiff Hall is referred to herein as the "Tennessee Plaintiff."

20      358.   Plaintiff Sue Hiller is a former resident of Salt Lake City, Utah . During the Class

21  Period, Plaintiff purchased a Pantech cell phone containing a Lithium Ion Battery manufactured by a

22  Defendant. As a result of the antitrust violations alleged in this complaint, the Plaintiff has suffered

23  injury. Plaintiff Hiller is referred to herein as the "Utah Plaintiff."

24      359.   Plaintiff Robert Hyams is a resident of Charlotte, Vermont. During the Class Period,

25  Plaintiff purchased a Canon EOS Digital Camera containing a Lithium Ion Battery manufactured by

26  a Defendant. As a result of the antitrust violations alleged in this complaint, the Plaintiff has

27  suffered injury. Plaintiff Hyams is referred to herein as the "Vermont Plaintiff."

28

1    360.   Plaintiff Linda Lincoln is a resident of Hurricane, West Virginia. During the Class

2    Period, Plaintiff purchased a Dell laptop containing a Lithium Ion Battery manufactured by a

3    Defendant. As a result of the antitrust violations alleged in this complaint, the Plaintiff has suffered

4    injury. Plaintiff Lincoln is referred to herein as the "West Virginia Plaintiff."

5    361.   Plaintiff Bradley Van Patten is a resident of Wisconsin. During the Class Period,

6    Plaintiff purchased a Lithium Ion Battery manufactured by a Defendant. As a result of the antitrust

7    violations alleged in this complaint, the Plaintiff has suffered injury. Plaintiff Van Patten is referred

8    to herein as the "Wisconsin Plaintiff."

9    **B.    Governmental Plaintiffs**

10    362.   Plaintiff San Francisco Community College District is an urban community college

11    serving roughly 85,000 students annually at nine campuses throughout San Francisco. San Francisco

12    Community College District offers students an affordable opportunity to earn associate degrees and

13    pursue career and technical education. Founded in 1935, San Francisco Community College District

14    has grown to become one of the nation's largest public colleges, and the largest in California. San

15    Francisco Community College District reaches out to and serves all populations, especially

16    communities that encounter barriers to education, and seeks to build partnerships with public,

17    private, and community-based agencies to better respond to educational, economic, environmental

18    and societal needs. Central to San Francisco Community College District's mission is providing

19    students access to learning opportunities, including making available computer labs and other

20    electronic equipment as necessary to allow student development. During the Class Period, San

21    Francisco Community College District purchased numerous products containing Lithium Ion

22    Batteries made by the Defendants, as well as purchasing Lithium Ion Batteries themselves. These

23    products include camcorders, cameras and laptops containing Lithium Ion Batteries made by the

24    Defendants. As a result of the misconduct alleged herein, San Francisco Community College District

25    has suffered injury in that it paid more for those products than it would have been charged in the

26    absence of the misconduct.

27    363.   Plaintiff City of Palo Alto ("Palo Alto") is a political subdivision of the State of

28    California and a "Charter City" duly organized under Article XI, Section 3 of the California

INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR      - 113 -

Constitution. Incorporated in 1894, Palo Alto is situated in the heart of California's "Silicon Valley" and currently has a population of approximately 61,200 residents. During the Class Period, Palo Alto purchased numerous products containing Lithium Ion Batteries made by the Defendants, as well as purchasing Lithium Ion Batteries themselves. These products include camcorders, cameras and laptops containing batteries made by the Defendants. As a result of the misconduct alleged herein, Palo Alto has suffered injury in that it paid more for those products than it would have been charged in the absence of the misconduct.

364.    Plaintiff City of Richmond ("Richmond") is a political subdivision of the State of California and a "Charter City" duly organized under Article XI, Section 3 of the California Constitution. Incorporated in 1905, Richmond is the second largest city in Contra Costa County and currently has a population of approximately 103,701 residents. During the relevant time period, Richmond purchased numerous products containing batteries made by the Defendants, as well as purchasing Lithium Ion Batteries themselves. These products include camcorders, cameras and laptops containing Lithium Ion Batteries made by the Defendants. As a result of the misconduct alleged herein, Richmond has suffered injury in that it paid more for those products than it would have been charged in the absence of the misconduct.

365.    Plaintiffs San Francisco Community College District, City of Palo Alto, and City of Richmond are referred to herein as the "Governmental Plaintiffs."

**C.    Defendants**

366.    Defendant LG Chem, Ltd. ("LG Chem") is a Korean corporation with its principal executive offices at 20 Yeouido-dong, Yeongdeungpo-gu, Seoul, South Korea. Defendant LG Chem is an affiliate of Seoul-based conglomerate LG Electronics. LG Chem is one of the world's leading manufacturers of Lithium Ion Batteries. Defendant LG Chem, either directly or through a wholly owned subsidiary, participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold Lithium Ion Batteries that were purchased throughout the United States, including in this district, during the Class Period.

367.    Defendant LG Chem America, Inc. ("LG Chem America") is a New Jersey corporation with its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New

1    Jersey, 07632. Defendant LG Chem America is a wholly owned subsidiary of Defendant LG Chem,

2    Ltd. Defendant LG Chem America, either directly or through a wholly owned subsidiary,

3    participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold

4    Lithium Ion Batteries that were purchased throughout the United States, including in this district,

5    during the Class Period.

6         368.    Defendants LG Chem and LG Chem America are collectively referred to herein as

7    "LG" or "LG Chem."

8         369.    Defendant Samsung SDI Co., Ltd. ("Samsung SDI") is a Korean corporation with its

9    principal executive offices at 575 Shin-Dong, Youngtong-Gu, Suwon, Gyeonggi South Korea.

10   Defendant Samsung SDI Co., Ltd. is 20 percent owned by the Korean conglomerate Samsung

11   Electronics, Inc. Defendant Samsung SDI is the world's largest manufacturer of Lithium Ion

12   Batteries. Defendant Samsung SDI, either directly or through a wholly owned subsidiary,

13   participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold

14   Lithium Ion Batteries that were distributed throughout the United States, including in this district,

15   during the Class Period.

16        370.    Defendant Samsung SDI America, Inc. ("Samsung SDI America") is a California

17   corporation with its principal executive offices at 85 W. Tasman Drive, San Jose, California 95134-

18   1703. Samsung SDI America is a wholly owned subsidiary of Defendant Samsung SDI. Defendant

19   Samsung SDI America, either directly or through a wholly owned subsidiary, participated in the

20   conspiracy alleged in this complaint and manufactured, marketed and/or sold Lithium Ion Batteries

21   that were distributed throughout the United States, including in this district, during the Class Period.

22        371.    Defendants Samsung SDI and Samsung SDI America are collectively referred to

23   herein as "Samsung" or "SDI."

24        372.    Defendants LG and Samsung are referred to herein at times as the "Korean

25   Defendants," to distinguish them from the remaining defendants, referred to herein at times as the

26   "Japanese Defendants."

27        373.    Defendant Panasonic Corporation is a Japanese corporation with its principal

28   executive offices at 1006 Oaza Kadoma, Osaka 571-8501, Japan. On or about October 1, 2008,

1    Panasonic Corporation issued a press release stating that "[e]ffective today, October 1, 2008,

2    Matsushita Electric Industrial Co., Ltd. has become Panasonic Corporation" and also that

3    "Matsushita Battery Industrial Co., Ltd., which used to be a wholly-owned subsidiary of Matsushita

4    Electric Industrial Co., Ltd., has become an internal divisional company of Panasonic

5    Corporation...."[93] Defendant Panasonic manufactures and sells Lithium Ion Batteries under the

6    Panasonic name and also under the name of Defendant and wholly owned subsidiary Sanyo Electric

7    Co., Ltd. With respect to those batteries sold under the Panasonic name, they are produced under

8    Panasonic's internal division called "Energy Company." Defendant Panasonic Corporation is one of

9    the world's leading manufacturers of Lithium Ion Batteries. Defendant Panasonic Corporation, either

10   directly or through a wholly owned subsidiary, participated in the conspiracy alleged in this

11   complaint and manufactured, marketed and/or sold Lithium Ion Batteries that were distributed

12   throughout the United States, including in this district, during the Class Period.

13          374.    Defendant Panasonic Corporation of North America, formerly known as Matsushita

14   Electric Corporation of America, is a Delaware Corporation with its principal executive offices at 1

15   Panasonic Way, Secaucus, New Jersey 07094.  Panasonic Corporation of North America is a wholly

16   owned and controlled subsidiary of Defendant Panasonic Corporation. Defendant Panasonic

17   Corporation of North America, either directly or through a wholly owned subsidiary, participated in

18   the conspiracy alleged in this complaint and manufactured, marketed and/or sold Lithium Ion

19   Batteries that were distributed throughout the United States, including in this district, during the

20   Class Period.

21          375.    Defendants Panasonic Corporation and Panasonic Corporation of North America are

22   collectively referred to herein as "Panasonic."

23          376.    Defendant Sanyo Electric Co., Ltd. ("Sanyo") is a Japanese corporation with its

24   principal executive offices at 5-5 Keihan-Hondori, 2-chome, Moriguchi, Osaka 570-8677, Japan.

25   Defendant Sanyo is one of the largest manufacturers and suppliers of Lithium Ion Batteries in the

26   world.  As of December 9, 2009, Defendant Sanyo became a wholly owned subsidiary of Defendant

27   ────────────────────
     [93] *Matsushita Electric Becomes Panasonic Corporation*, Panasonic (Oct. 1, 2008),
28   http://panasonic.co.jp/corp/news/official.data/data.dir/en081001-4/en081001-4.html.

1    Panasonic Corporation. Defendant Sanyo, directly or through a wholly owned subsidiary, including

2    through its joint venture Sanyo GS Soft Energy Co., Ltd., formed and operated with defendant GS-

3    Yuasa Corp., participated in the conspiracy alleged in this complaint and manufactured, marketed

4    and/or sold Lithium Ion Batteries that were distributed throughout the United States, including in this

5    district, during the Class Period.

6          377.   Defendant Sanyo North America Corporation is a Delaware corporation with its

7    principal executive offices at 2055 Sanyo Avenue, San Diego, California 92154. Defendant Sanyo

8    North America Corporation is a wholly owned subsidiary of Defendant Sanyo Electric Co., Ltd.

9    Defendant Sanyo North America Corporation, either directly or through a wholly owned subsidiary,

10   participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold

11   Lithium Ion Batteries that were distributed throughout the United States, including in this district,

12   during the Class Period.

13         378.   Sanyo Electric, Co., Ltd., Sanyo North America Corporation, and Sanyo GS Soft

14   Energy Co. Ltd are collectively referred to herein as "Sanyo."

15         379.   Defendant Sony Corporation is a Japanese corporation with its principal executive

16   offices at 7-1 Konan 1-Chome, Minato-Ku, Tokyo, Japan. Defendant Sony Corporation invented the

17   Lithium Ion Battery in 1991 and since then, has been one of the world's leading suppliers of Lithium

18   Ion Batteries. Defendant Sony Corporation, either directly or through a wholly owned subsidiary,

19   participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold

20   Lithium Ion Batteries that were distributed throughout the United States, including in this district,

21   during the Class Period.

22         380.   Sony Energy Devices Corporation is a Japanese corporation with its principal

23   executive offices at 1-1 Shimosugishita, Takakura, Hiwada-machi, Koriyama-shi, Fukushima, Japan.

24   Defendant Sony Energy Devices Corporation is a wholly owned subsidiary of defendant Sony

25   Corporation. Sony Corporation manufactures its Lithium Ion Batteries though its Sony Energy

26   Devices Corporation subsidiary. Sony Energy Devices Corporation manufactures its Lithium Ion

27   Batteries at plants located in Japan, Singapore, and China. Defendant Sony Energy Devices

28   Corporation, either directly or through a wholly owned subsidiary, participated in the conspiracy

alleged in this complaint and manufactured, marketed and/or sold Lithium Ion Batteries that were distributed throughout the United States, including in this district, during the Class Period.

381.    Defendant Sony Electronics, Inc. is a Delaware corporation with its principal executive offices at 16530 Via Esprillo, San Diego, CA 92127. Defendant Sony Electronics, Inc. is a wholly owned subsidiary of defendant Sony Corporation. Defendant Sony Electronics, Inc., either directly or through a wholly owned subsidiary, participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold Lithium Ion Batteries that were distributed throughout the United States, including in this district, during the Class Period.

382.    Defendants Sony Corporation, Sony Energy Devices Corporation, and Sony Electronics, Inc. are collectively referred to herein as "Sony."

383.    Defendant Hitachi Maxell, Ltd. ("Hitachi Maxell") is a Japanese corporation with its principal executive office at 2-18-2 Iidabashi, Chiyoda-ku, Tokyo, 102-8521 Japan. Defendant Hitachi Maxell is a wholly owned subsidiary of Hitachi, Ltd.  Hitachi Maxell was founded in 1960 and manufactures and sells batteries through its batteries business unit. Defendant Hitachi Maxell, either directly, or through a wholly owned subsidiary, participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold Lithium Ion Batteries that were distributed throughout the United States, including in this district, during the Class Period.

384.    Defendant Maxell Corporation of America ("Maxell") is a New Jersey corporation with its principal executive office at 3 Garett Mountain Plaza, 3rd Floor, Suite 300, Woodland Park, New Jersey, 07424. Defendant Maxell, either directly, or through a wholly owned subsidiary, participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold Lithium Ion Batteries that were distributed throughout the United States, including in this district, during the Class Period.

385.    Defendants Hitachi Maxell, Ltd., and Maxell Corporation of America are collectively referred to herein as "Hitachi Maxell."

386.    Defendant GS Yuasa Corporation ("GS Yuasa") is a Japanese corporation with its principal executive office at 1, Inobanba-cho, Nishinosho, Kisshoin, Minami-ku, Kyoto, 601-8520

Japan.[94]  Defendant GS Yuasa Corporation and defendant Sanyo Electric Co., Ltd. were joint venture parents of Sanyo GS Soft Energy Co., Ltd. ("GS Soft Energy"), which was the successor-in-interest to GS-Melcotec Co. ("GSMT").  GS Yuasa Corporation, either directly or through a wholly owned subsidiary, including through its subsidiaries and/or affiliates GSMT and GS Soft Energy, participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold Lithium Ion Batteries that were distributed throughout the United States, including in this district, during the Class Period.

387.    Defendant NEC Corporation is a business entity organized under the laws of Japan, with its principal place of business at 7-1, Shiba 5-chome, Minato-ku, Tokyo 108-8001, Japan. Defendant NEC Corporation either directly, or through a wholly owned subsidiary, participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold Lithium Ion Batteries that were distributed throughout the United States, including in this district, during the Class Period.

388.    Defendant NEC Tokin Corporation is a Japanese corporation with its principal executive office at 7-1, Kohriyama 6-chome, Taihaku-ku, Sendai-shi, Miyagi 982-8510, Japan.[95] Its website presently states that the "Laminated lithium-ion rechargeable battery business was transferred to 'NEC Energy Devices, Ltd.,' on April 1, 2010."[96] The "NEC Technical Journal" in 2012 stated that "NEC Energy Device, Ltd. was established in 2010 for the development and manufacture of lithium-ion batteries" and that "the precursor businesses and technological developments have a history of over 20 years."[97] The article continues that "NEC has been pursuing battery business by focusing on compact batteries for mobile phones and digital still cameras for consumer use" and that "[a]lthough the company names and management structures have changed a

---

[94]    *Corporate Information*, GS Yuasa Corporation, http://www.gs-yuasa.com/us/corporate/profile.html (last visited June 10, 2013).

[95]    *Corporate Outline*, NEC Tokin Corporation, http://www.nec-tokin.com/english/info/gaiyo.html (last visited June 10, 2013).

[96]    *Product Support*, NEC Tokin Corporation, http://www.nec-tokin.com/english/contact/inquiry.php (last visited June 10, 2013).

[97]    *Expanding Applications from Electric Vehicles to Energy Storage Systems - Unique Technology Offering High Safety and High Power*, 7 NEC Technical Journal, 1, at 135 (2012), *available at* www.nec.com/en/global/techrep/journal/g12/n01/pdf/120128.pdf.

great deal since the establishment of the joint venture Moli Energy Limited in 1990."[98] Defendant NEC Tokin Corporation, either directly, or through a wholly owned subsidiary, participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold Lithium Ion Batteries that were distributed throughout the United States, including in this district, during the Class Period.

389.    Defendants NEC Corporation and NEC Tokin Corp. are referred to herein as "NEC."

390.    Defendant Toshiba Corporation ("Toshiba") is a Japanese company with its principal executive office at 1-1, Shibaura 1-chrome, Minato-ku, Tokyo 105-8001, Japan. Defendant Toshiba Corporation, including through its subsidiaries A&T Battery Corporation and Toshiba America Electronic Components Inc., either directly, or through a wholly owned subsidiary, participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold Lithium Ion Batteries that were distributed throughout the United States, including in this district, during the Class Period.

391.    Defendant Toshiba America Electronic Components, Inc. ("TAEC") is an indirect wholly-owned subsidiary of Toshiba Corporation established in 1989.  It is a business entity organized under the laws of the United States of America, with its principal place of business at 19900 MacArthur Boulevard, Suite 400 Irvine, CA 92612.  TAEC participated in the conspiracy alleged in this Complaint and manufactured, marketed, and/or sold Lithium Ion Batteries throughout the United States, including in this district, during the Class Period.

392.    Toshiba Corporation, A&T Battery Corporation, and TAEC are collectively referred to as "Toshiba."

**D. Agents and Co-Conspirators**

393.    Defendants' officers, directors, agents, employees, or representatives engaged in the conduct alleged in this Complaint in the usual management, direction, or control of Defendants' business or affairs.

394.    Defendants are also liable for acts done in furtherance of the alleged conspiracy by companies they acquired through mergers and acquisitions.

---

[98] *Id.*

395.    When Plaintiffs refer to a corporate family or companies by a single name in this Complaint, they are alleging that one or more employees or agents of entities within that corporate family engaged in conspiratorial acts on behalf of every company in that family. The individual participants in the conspiratorial acts did not always know the corporate affiliation of their counterparts, nor did they distinguish between the entities within a corporate family.  The individual participants entered into agreements on behalf of their respective corporate families.  As a result, those agents represented the entire corporate family with respect to such conduct, and the corporate family was party to the agreements that those agents reached.

396.    Each of the Defendants acted as the agent of, co-conspirator with, or joint venture partner of the other Defendants and co-conspirators with respect to the acts, violations and common course of conduct alleged in this Complaint.  Each Defendant or co-conspirator that is a subsidiary of a foreign parent acted as the United States agent for Lithium Ion Batteries and/or Lithium Ion Battery Products made by its parent company.

397.    Various persons, partnerships, sole proprietors, firms, corporations, and individuals not named as Defendants in this lawsuit, and individuals, both known and unknown, participated as co-conspirators with Defendants in the offenses alleged in this Complaint, and performed acts and made statements in furtherance of the conspiracy.  Plaintiffs reserve the right to name some or all of these persons and entities as Defendants at a later date.

## XI.    CLASS ACTION ALLEGATIONS

398.    Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Injunctive Class"):

> All persons and entities residing in the United States that, during the period from January 1, 2000 to the present, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant.

399.    Plaintiffs also bring this action on behalf of themselves and as a nationwide class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant

1    to California state antitrust, unfair competition, and consumer protection law on behalf of the

2    following class (the "Nationwide Damages Class"):

3            All persons and entities residing in the United States that, during the
             period from January 1, 2000 through May 31, 2011, indirectly
4            purchased for their own use and not for resale either a Lithium Ion
             Battery manufactured by a Defendant and/or a Lithium Ion Battery
5            Product containing a Lithium Ion Battery manufactured by a
6            Defendant or co-conspirator.

7        400.    With respect to the Nationwide Damages Class, Plaintiffs further assert the following

8    subclass, the "Nationwide Governmental Damages Subclass":

9            All non-federal and non-state governmental entities in the United
             States that, during the from period January 1, 2000 through May 31,
10           2011, indirectly purchased for their own use and not for resale either a
             Lithium Ion Battery manufactured by a Defendant and/or a Lithium
11           Ion Battery Product containing a Lithium Ion Battery manufactured by
12           a Defendant or co-conspirator.

13       401.    As an alternative to the Nationwide Damages Class, in the event that California law is

14   not applied to the claims of all class members for damages regardless of where they reside, or

15   California law is not applied to class members' claims residing in states that recognize a form of

16   indirect purchaser cause of action, Plaintiffs will seek certification of several classes asserting claims

17   of damages under the antitrust statutes and/or consumer protection statutes of the twenty-nine (29)

18   jurisdictions detailed forth below, i.e., Arizona, Arkansas, California, the District of Columbia,

19   Florida, Illinois, Kansas, Maine, Massachusetts, Michigan, Minnesota, Missouri, Mississippi,

20   Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota,

21   Oregon, Puerto Rico, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia and

22   Wisconsin (collectively, the "State Damages Classes.").

23       402.    For each of the State Damages Classes asserted below, Plaintiffs further assert the

24   following subclasses, the "State Governmental Damages Classes:"

25           All non-federal and non-state governmental entities in the States listed
             below that, during the period from January 1, 2000 through May 31,
26           2011, indirectly purchased for their own use and not for resale either a
             Lithium Ion Battery manufactured by a Defendant and/or a Lithium
27           Ion Battery Product containing a Lithium Ion Battery manufactured by
28           a Defendant or co-conspirator.

INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR    - 122 -

010330-11 622968 V1

1      403.    The Injunctive Class, the Nationwide Damages Class, the State Damages Classes, the

2    Nationwide Governmental Damages Subclass, and the State Governmental Damages Subclasses are

3    collectively referred to herein as the "Classes" unless otherwise indicated. Excluded from the

4    Classes are Defendants, their parent companies, subsidiaries and affiliates, Defendants' attorneys in

5    this matter, any co-conspirators, federal governmental entities and instrumentalities of the federal

6    government, states and their subdivisions, agencies and instrumentalities, all judges assigned to this

7    matter, all jurors in this matter, and all persons and entities who only purchased Lithium Ion Battery

8    Products directly or for resale.

9      404.    While Plaintiffs do not know the exact number of the members of the Classes,

10    Plaintiffs believe there are at least hundreds of thousands of members in each Class.

11      405.    Common questions of law and fact exist as to all members of the Classes. This is

12    particularly true given the nature of Defendants' conspiracy, which was applicable to all of the

13    members of the Classes, thereby making appropriate relief with respect to the Classes as a whole.

14    Such questions of law and fact common to the Classes include, but are not limited to:

15        (a)    Whether Defendants engaged in a combination and conspiracy among

16    themselves to fix, raise, maintain or stabilize the prices of Lithium Ion Batteries sold in the United

17    States;

18        (b)    The identity of the participants of the alleged conspiracy;

19        (c)    The duration of the alleged conspiracy and the acts carried out by Defendants

20    in furtherance of the conspiracy;

21        (d)    Whether the alleged conspiracy violated the Sherman Act, as alleged in the

22    First Claim for Relief;

23        (e)    Whether the alleged conspiracy violated California's Cartwright Act, as

24    alleged in the Second Claim for Relief;

25        (f)    Whether the alleged conspiracy violated California's Unfair Competition Law,

26    as alleged in the Third Claim for Relief;

27        (g)    Whether the alleged conspiracy violated various state antitrust and restraint of

28    trade laws, as alleged in the Fourth Claim for Relief;

1           (h)    Whether the alleged conspiracy violated various state consumer protection and

2    unfair competition laws, as alleged in the Fifth Claim for Relief;

3           (i)    Whether the conduct of Defendants, as alleged in this Complaint, caused

4    injury to the business or property of Plaintiffs and the members of the Classes;

5           (j)    The effect of the alleged conspiracy on the prices of Lithium Ion Batteries and

6    Lithium Ion Battery Products sold in the United States during the Class Period;

7           (k)    The appropriate injunctive and related equitable relief for the Injunctive Class;

8           (l)    The appropriate class-wide measure of damages for the Nationwide Damages

9    Class; and

10          (m)    The appropriate class-wide measure of damages for the State Damages

11   Classes.

12       406.    Plaintiffs' claims are typical of the claims of the members of the Classes, and

13   Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs and all members of

14   the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially

15   inflated prices for Lithium Ion Batteries or Lithium Ion Battery Products purchased indirectly from

16   Defendants.

17       407.    Plaintiffs' claims arise out of the same common course of conduct giving rise to the

18   claims of the other members of the Classes.  Plaintiffs' interests are coincident with, and not

19   antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who

20   are competent and experienced in the prosecution of antitrust, consumer protection and class action

21   litigation.

22       408.    The questions of law and fact common to the members of the Classes predominate

23   over any questions affecting only individual members, including legal and factual issues relating to

24   liability and damages.

25       409.    Class action treatment is a superior method for the fair and efficient adjudication of

26   the controversy, in that, among other things, such treatment will permit a large number of similarly

27   situated persons to prosecute their common claims in a single forum simultaneously, efficiently and

28   without the unnecessary duplication of evidence, effort and expense that numerous individual actions

1    would engender.  The benefits of proceeding through the class mechanism, including providing

2    injured persons or entities with a method for obtaining redress for claims that it might not be

3    practicable to pursue individually, substantially outweigh any difficulties that may arise in

4    management of this class action.

5        410.    The prosecution of separate actions by individual members of the Classes would

6    create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct

7    for Defendants.

8        411.    Plaintiffs bring the State Damages Classes on behalf of all persons similarly situated

9    pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all members of the

10   following classes (and, as stated above, assert a "State Governmental Damages Subclass" as a part of

11   each class):

      (a)  **Arizona**: All persons and entities that, as residents of Arizona, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "Arizona Damages Class").

      (b)  **Arkansas**: All persons and entities that, as residents of Arkansas, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "Arizona Damages Class").

      (c)  **California**: All persons and entities that, as residents of California, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "California Damages Class").

      (d)  **District of Columbia**: All persons and entities that, as residents of the District of Columbia, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "District of Columbia Damages Class").

(e) **Florida**:  All persons and entities that, as residents of Florida, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "Florida Damages Class").

(f) **Illinois**:  All persons and entities that, as residents of Illinois, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "Illinois Damages Class").

(g) **Kansas**:  All persons and entities that, as residents of Kansas, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "Kansas Damages Class").

(h) **Maine**:  All persons and entities that, as residents of Maine, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "Maine Damages Class").

(i) **Massachusetts**:  All persons and entities that, as residents of Massachusetts, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "Massachusetts Damages Class").

(j) **Michigan**:  All persons and entities that, as residents of Michigan, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "Michigan Damages Class").

(k) **Minnesota**:  All persons and entities that, as residents of Minnesota, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "Arizona Damages Class").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(l)   **Missouri**:  All persons and entities that, as residents of Missouri, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "Arizona Damages Class").

(m)   **Mississippi**: All persons and entities that, as residents of Mississippi, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery  manufactured by a Defendant or co-conspirator (the "Mississippi Damages Class").

(n)   **Nebraska**: All persons and entities that, as residents of Nebraska, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery  manufactured by a Defendant or co-conspirator (the "Nebraska Damages Class").

(o)   **Nevada**: All persons and entities that, as residents of Nevada, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery  manufactured by a Defendant or co-conspirator (the "Nevada Damages Class").

(p)   **New Hampshire**: All persons and entities that, as residents of New Hampshire, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery  manufactured by a Defendant or co-conspirator (the "New Hampshire Damages Class").

(q)   **New Mexico**: All persons and entities that, as residents of New Mexico, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery  manufactured by a Defendant or co-conspirator (the "New Mexico Damages Class").

(r)   **New York**: All persons and entities that, as residents of New York, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "New York Damages Class").

1

2

3

4

    (s)    **North Carolina**: All persons and entities that, as residents of North Carolina, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "North Carolina Damages Class").

5

6

7

8

    (t)    **North Dakota**: All persons and entities that, as residents of North Dakota, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "North Dakota Damages Class").

9

10

11

12

    (u)    **Oregon**: All persons and entities that, as residents of Oregon, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "Oregon Damages Class").

13

14

15

16

    (v)    **Puerto Rico**: All persons and entities that, as residents of Puerto Rico, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "Puerto Rico Damages Class")

17

18

19

20

    (w)    **South Carolina**: All persons and entities that, as residents of South Carolina, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "South Carolina Damages Class").

21

22

23

24

    (x)    **South Dakota**: All persons and entities that, as residents of South Dakota, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "South Dakota Damages Class).

25

26

27

28

    (y)    **Tennessee**: All persons and entities that, as residents of Tennessee, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "Tennessee Damages Class").

(z)  **Utah:** All persons and entities that, as residents of Utah, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "Vermont Damages Class").

(aa)  **Vermont**: All persons and entities that, as residents of Vermont, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "Vermont Damages Class").

(bb)  **West Virginia**: All persons and entities that, as residents of West Virginia, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "West Virginia Damages Class").

(cc)  **Wisconsin**: All persons and entities that, as residents of Wisconsin, during the period from January 1, 2000 through May 31, 2011, indirectly purchased for their own use and not for resale either a Lithium Ion Battery manufactured by a Defendant and/or a Lithium Ion Battery Product containing a Lithium Ion Battery manufactured by a Defendant or co-conspirator (the "Wisconsin Damage Class").

## XII.   VIOLATIONS ALLEGED

### FIRST CLAIM FOR RELIEF
### (Violations of Sherman Act, 15 U.S.C. § 1)
### (On Behalf of All Plaintiffs Against All Defendants)

412.   Plaintiffs incorporate and reallege, as though fully set forth herein, each of the paragraphs set forth above.

413.   Defendants and unnamed coconspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section One of the Sherman Act (15 U.S.C. § 1).

414.   Beginning as early as 2000 and continuing through May 31, 2011, the exact starting date being unknown to Plaintiffs and exclusively within the knowledge of Defendants, Defendants and their co-conspirators entered into a continuing contract, combination or conspiracy to

1    unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C.

2    § 1) by artificially reducing or eliminating competition in the United States.

3          415.    In particular, Defendants have combined and conspired to raise, fix, maintain or

4    stabilize the prices of Lithium Ion Batteries.

5          416.    As a result of Defendants' unlawful conduct, prices for Lithium Ion Batteries were

6    raised, fixed, maintained, and stabilized in the United States.

7          417.    The contract, combination or conspiracy among Defendants consisted of a continuing

8    agreement, understanding, and concerted action among Defendants and their co-conspirators.

9          418.    For purposes of formulating and effectuating their contract, combination, or

10   conspiracy, Defendants and their co-conspirators did those things they contracted, combined, or

11   conspired to do, including:

12                 (a)     exchanged information on prices charged for Lithium Ion Batteries;

13                 (b)     agreed to raise, fix, and maintain prices for Lithium Ion Batteries;

14                 (c)     raised, fixed, and maintained prices for Lithium Ion Batteries; and

15                 (d)     sold Lithium Ion Batteries into and throughout the U.S. at non-competitive

16   prices.

17         419.    As a result of Defendants' unlawful conduct, Plaintiffs and the other members of the

18   Class have been injured in their businesses and property in that they have paid more for Lithium Ion

19   Batteries and Lithium Ion Battery Products than they otherwise would have paid in the absence of

20   Defendants' unlawful conduct.

21         420.    The alleged contract, combination or conspiracy is a per se violation of the federal

22   antitrust laws.

23         421.    These violations are continuing and will continue unless enjoined by this Court.

24         422.    Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiffs and the Class

25   seek the issuance of an injunction against Defendants, preventing and restraining the violations

26   alleged herein.

27                            **SECOND CLAIM FOR RELIEF**
                             **(Violations of the Cartwright Act,**
28

**Cal. Bus. & Prof. Code §§ 16720, *et seq*.)**
**(On Behalf of All Plaintiffs Against All Defendants)**

423.    Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

424.    By reason of the foregoing, Defendants have violated California Business and Professions Code, §§ 16700, *et seq*. California Plaintiff on behalf of a nationwide class of Indirect Purchasers alleges as follows.

425.    Beginning at a time currently unknown to California Plaintiff, but at least as early as January 1, 2000, and continuing thereafter through May 31, 2011, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of section 16720, California Business and Professions Code. Defendants, and each of them, have acted in violation of section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for Lithium Ion Batteries at supra-competitive levels.

426.    In particular, Defendants have combined and conspired to raise, fix, maintain or stabilize the prices of Lithium Ion Batteries sold in the United States.

427.    As a result of Defendants' unlawful conduct, prices for Lithium Ion Batteries were raised, fixed, maintained, and stabilized in the United States.

428.    The contract, combination or conspiracy among Defendants consisted of a continuing agreement, understanding, and concerted action among Defendants and their co-conspirators.

429.    For purposes of formulating and effectuating their contract, combination, or conspiracy, Defendants and their co-conspirators did those things they contracted, combined, or conspired to do, including:

      a.    Participating in meetings and conversations to discuss the prices and supply of Lithium Ion Batteries.

      b.    Communicating in writing and orally to fix prices of Lithium Ion Batteries.

      c.    Agreeing to manipulate prices and supply of Lithium Ion Batteries sold in the United States in a manner that deprived direct and indirect purchasers of free and open competition.

      d.    Issuing price announcements and price quotations in accordance with the agreements reached.

1          e.          Selling Lithium Ion Batteries to customers in the United States at non-

2     competitive prices.

3          f.          Providing false statements to the public to explain increased prices for Lithium

4     Ion Batteries.

5          430.    As a direct and proximate result of Defendants' unlawful conduct, California

6     plaintiffs and the members of the California Indirect Purchaser Class have been injured in their

7     business and property in that they paid more for Lithium Ion Batteries and Lithium Ion Battery

8     Products than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a

9     result of Defendants' violation of Section 16720 of the California Business and Professions Code,

10    California Plaintiff and the California Indirect Purchaser Class seek treble damages and their cost of

11    suit, including a reasonable attorney's fee, pursuant to section 16750(a) of the California Business

12    and Professions Code.

13         431.    It is appropriate to apply California antitrust law to purchasers of Lithium Ion

14    Batteries and Lithium Ion Battery Products in all fifty states – that is, nationwide. Nationwide

15    application of California law is proper because four of seven U.S.-based defendants (Sony

16    Electronics, Inc., Samsung SDI America, Inc., Sanyo North America Corp., and Toshiba America

17    Electronic Components, Inc.), are headquartered in California, conspiratorial acts occurred in

18    California, and the conspirators targeted their price-fixing activities at large purchasers of Lithium

19    Ion Batteries and Lithium Ion Battery Products in California, such as HP and Apple.

20         432.    Seven of the nine Defendant groups – LG, Panasonic, Sanyo, Sony, Samsung, Hitachi

21    Maxell, and Toshiba – maintained sales and marketing arms in the United States to conduct business

22    with major customers.[99] These Defendants are incorporated, located, and headquartered in the United

23    States, and each does substantial business in domestic interstate commerce throughout the United

24    States.  For example, Defendant Samsung SDI America, Inc. maintained sales and marketing

25    personnel in Los Angeles, Chicago, Austin, and Houston to be responsible for Dell, Apple, Lab126,

26    Garmin, Palm, Black & Decker, Hewlett-Packard, Motorola, and other accounts.  Those United

27    _____

      [99]  The remaining Defendant groups also have United States-based subsidiaries that do
28    substantial business in domestic interstate commerce throughout the United States.

States-based personnel reported to Y.A. Oh, who served simultaneously as the President of Samsung SDI America, Inc. and as the Vice President for North America of Samsung SDI Co., Ltd. Sanyo similarly stationed sales and engineering personnel in Texas to support the Hewlett-Packard and Dell accounts, and in Chicago to support the Motorola and Black & Decker accounts. Sony also responded to its United States customers' demands for lower prices by dispatching business and engineering personnel to it offices in the United States.

433. Furthermore, LG produced documents directly implicating the San Jose, California office of LG Chem in price-fixing.



437.    The eleven foreign-based corporations have no reasonable expectation as to the application of different state laws. Indeed, Defendants even entered into contracts specifying that California law would govern disputes. For example, ███████████████████████████

438.    If the Court were to determine that California law should not apply nationwide, the Court should apply California law to the consumers in the twenty-nine states which provide standing to indirect purchasers. This is because the law of these twenty-nine states is harmonized so there is no true conflict of law here.

### THIRD CLAIM FOR RELIEF
### (Violations of California's Unfair Competition Law,
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*)
### (On Behalf of All Plaintiffs Against All Defendants)

439.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

440.    By reason of the foregoing, Defendants have violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

441.    Defendants committed acts of unfair competition, as defined by section 17200, *et seq.*, by engaging in a conspiracy to fix and stabilize the price of Lithium Ion Batteries as described above.

442.    The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as described above, constitute a common and continuing course of conduct of unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices with the meaning of Section 17200, *et seq.*, including, but not limited to (1) violations of Section 1 of the Sherman Act; and (2) violations of the Cartwright Act.

443.    Defendants' acts, omissions, misrepresentations, practices and nondisclosures are unfair, unconscionable, unlawful and/or fraudulent independently of whether they constitute a violation of the Sherman Act or the Cartwright Act.

1    444.  Defendants' acts or practices are fraudulent or deceptive within the meaning of

2    section 17200, *et seq.*

3    445.  Defendants' conduct was carried out, effectuated, and perfected within the state of

4    California. Defendants maintained offices in California where their employees engaged in

5    communications, meetings and other activities in furtherance of Defendants' conspiracy.

6    446.  By reason of the foregoing, the Class is entitled to application of California law to a

7    nationwide class and are entitled to full restitution and/or disgorgement of all revenues, earnings,

8    profits, compensation, and benefits that may have been obtained by Defendants as result of such

9    business acts and practices described above.

10                          **FOURTH CLAIM FOR RELIEF**
                **(Violation of State Antitrnst and Restraint of Trade Laws)**
11                **(On Behalf of All Plaintiffs Against All Defendants)**

12   447.  Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully

13   set forth herein.

14   448.  In the event that the Court does not apply California law on a nationwide basis,

15   Plaintiffs allege the following violations of state antitrust and restraint of trade laws in the

16   alternative.

17   449.  Arizona: By reason of the foregoing, Defendants have violated Arizona Revised

18   Statutes, §§ 44-1401, *et seq.* Arizona Plaintiff on behalf of the Arizona Damages Class alleges as

19   follows:

20          a.  Defendants' combination or conspiracy had the following effects: (1) price

21   competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout

22   Arizona; (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at

23   artificially high levels throughout Arizona; (3) Arizona Plaintiff and members of the Arizona

24   Damages Class were deprived of free and open competition; and (4) Arizona Plaintiff and members

25   of the Arizona Damages Class paid supra-competitive, artificially inflated prices for Lithium Ion

26   Battery Products;

27

28

1           b.     During the Class Period, Defendants' illegal conduct substantially affected

2   Arizona commerce.

3           c.     As a direct and proximate result of Defendants' unlawful conduct, Arizona

4   Plaintiff and members of the Arizona Damages Class have been injured in their business and

5   property and are threatened with further injury.

6           d.     By reason of the foregoing, Defendants entered into agreements in restraint of

7   trade in violation of Arizona Revised Statutes §§ 44-1401, *et seq.* Accordingly, Arizona Plaintiff and

8   the members of the Arizona Damages Class seek all forms of relief available under Arizona Revised

9   Statutes §§ 44-1401, *et seq.*

10      450.   <u>California</u>: By reason of the foregoing, Defendants have violated California Business

11  and Professions Code, §§ 16700, *et seq.* California Plaintiff on behalf of the California Damages

12  Class alleges as follows:

13          a.     Defendants' contract, combination, trust or conspiracy was entered in, carried

14  out, effectuated and perfected mainly within the State of California, and Defendants' conduct within

15  California injured all members of the class throughout the United States. Therefore, this claim for

16  relief under California law is brought on behalf of the California Damages Class.

17          b.     Beginning at a time currently unknown to California Plaintiff, but at least as

18  early as January 1, 2000, and continuing thereafter at least up to May 31, 2011, Defendants and their

19  co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and

20  commerce described above in violation of section 16720, California Business and Professions Code.

21  Defendants, and each of them, have acted in violation of section 16720 to fix, raise, stabilize, and

22  maintain prices of Lithium Ion Batteries at supra-competitive levels.

23          c.     The aforesaid violations of section 16720, California Business and Professions

24  Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the

25  defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and

26  stabilize the prices of Lithium Ion Batteries.

27          d.     For the purpose of forming and effectuating the unlawful trust, the Defendants

28  and their co-conspirators have done those things which they combined and conspired to do, including

1    but not in any way limited to the acts, practices and course of conduct set forth above and fixing,

2    raising, stabilizing, and pegging the price of Lithium Ion Batteries.

3               e.    The combination and conspiracy alleged herein has had, *inter alia*, the

4    following effects: (1) price competition in the sale of Lithium Ion Batteries has been restrained,

5    suppressed, and/or eliminated in the State of California; (2) prices for Lithium Ion Batteries have

6    been fixed, raised, stabilized, and pegged at artificially high, noncompetitive levels in the State of

7    California; and (3) those who purchased Lithium Ion Batteries and Lithium Ion Battery Products

8    directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of

9    free and open competition.

10              f.    As a direct and proximate result of Defendants' unlawful conduct, California

11   Plaintiff and the members of the California Damages Class have been injured in their business and

12   property in that they paid more for Lithium Ion Battery Products than they otherwise would have

13   paid in the absence of Defendants' unlawful conduct.  As a result of Defendants' violation of Section

14   16720 of the California Business and Professions Code, California Plaintiff and the California

15   Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee,

16   pursuant to section 16750(a) of the California Business and Professions Code.

17         451.   District of Columbia: By reason of the foregoing, Defendants have violated District of

18   Columbia Code Annotated §§ 28-4501, *et seq.*  District of Columbia Plaintiff on behalf of the

19   District of Columbia Damages Class alleges as follows:

20              a.    Defendants' combination or conspiracy had the following effects: (1)  price

21   competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout the

22   District of Columbia; (2) prices for Lithium Ion Batteries were raised, fixed, maintained and

23   stabilized at artificially high levels throughout the District of Columbia; (3) District of Columbia

24   Plaintiff and members of the District of Columbia Damages Class were deprived of free and open

25   competition; and (4) District of Columbia Plaintiff and members of the District of Columbia

26   Damages Class paid supra-competitive, artificially inflated prices for Lithium Ion Battery Products.

27              b.    During the Class Period, Defendants' illegal conduct substantially affected

28   District of Columbia commerce.

INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR     - 137 -

010330-11 622968 V1

1          c.     As a direct and proximate result of Defendants' unlawful conduct, District of

2 Columbia Plaintiff and the District of Columbia Damages Class have been injured in their business

3 and property and are threatened with further injury.

4          d.     By reason of the foregoing, Defendants have entered into agreements in

5 restraint of trade in violation of District of Columbia Code Annotated §§ 28-4502, *et seq.*

6 Accordingly, District of Columbia Plaintiff and the District of Columbia Damages Class seek all

7 forms of relief available under District of Columbia Code Annotated §§ 28-4503, *et seq.*

8      452.   Illinois: By reason of the foregoing, Defendants have violated the Illinois Antitrust

9 Act, Illinois Compiled Statutes, §§ 740 Ill. Comp. Stat. 10/1, *et seq.* Illinois Plaintiff on behalf of the

10 Illinois Damages Class alleges as follows:

11          a.     Defendants' combination or conspiracy had the following effects: (1) price

12 competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout Illinois;

13 (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at artificially high

14 levels throughout Illinois; (3) Illinois Plaintiff and members of the Illinois Damages Class were

15 deprived of free and open competition; and (4) Illinois Plaintiff and members of the Illinois Damages

16 Class paid supra-competitive, artificially inflated prices for Lithium Ion Battery Products.

17          b.     During the Class Period, Defendants' illegal conduct substantially affected

18 Illinois commerce.

19          c.     As a direct and proximate result of Defendants' unlawful conduct, Illinois

20 Plaintiff and members of the Illinois Damages Class have been injured in their business and property

21 and are threatened with further injury.

22          d.     By reason of the foregoing, Defendants entered into agreements in restraint of

23 trade in violation of Illinois Compiled Statutes, §§ 740 Ill. Comp. Stat. 10/1, *et seq* Accordingly,

24 Illinois Plaintiff and the members of the Illinois Damages Class seek all forms of relief available

25 under Illinois Compiled Statutes, §§ 740 Ill. Comp. Stat. 10/1, *et seq.*

26      453.   Kansas: By reason of the foregoing, Defendants have violated Kansas Statutes, §§ 50-

27 101, *et seq.* Kansas Plaintiff on behalf of the Kansas Damages Class alleges as follows:

28

1            a.     Defendants' combination or conspiracy had the following effects: (1) price

2  competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout Kansas;

3  (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at artificially high

4  levels throughout Kansas; (3) Kansas Plaintiff and the Kansas Damages Class were deprived of free

5  and open competition; and (4) Kansas Plaintiff and the Kansas Damages Class paid supra-

6  competitive, artificially inflated prices for Lithium Ion Battery Products.

7            b.     During the Class Period, Defendants' illegal conduct substantially affected

8  Kansas commerce.

9            c.     As a direct and proximate result of Defendants' unlawful conduct, Kansas

10  Plaintiff and the Kansas Damages Class have been injured in their business and property and are

11  threatened with further injury.

12           d.     By reason of the foregoing, Defendants have entered into agreements in

13  restraint of trade in violation of Kansas Statutes §§ 50-101, *et seq.* Accordingly, Kansas Plaintiff and

14  the Kansas Damages Class seek all forms of relief available under Kansas Statutes §§ 50-101, *et seq.*

15       454.   <u>Maine</u>: By reason of the foregoing, Defendants have violated the Maine Revised

16  Statutes, 10 M.R.S. §§ 1101, *et seq.* Maine Plaintiff on behalf of the Maine Damages Class alleges

17  as follows:

18           a.     Defendants' combination or conspiracy had the following effects: (1) price

19  competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout Maine;

20  (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at artificially high

21  levels throughout Maine; (3) Maine Plaintiff and the Maine Damages Class were deprived of free

22  and open competition; and (4) Maine Plaintiff and the Maine Damages Class paid supra-competitive,

23  artificially inflated prices for Lithium Ion Battery Products.

24           b.     During the Class Period, Defendants' illegal conduct substantially affected

25  Maine commerce.

26           c.     As a direct and proximate result of Defendants' unlawful conduct, Maine

27  Plaintiff and the Maine Damages Class have been injured in their business and property and are

28  threatened with further injury.

1         d.    By reason of the foregoing, Defendants have entered into agreements in

2    restraint of trade in violation of Maine Revised Statutes 10, §§ 1101, *et seq.* Accordingly, Maine

3    Plaintiff and the Maine Damages Class seek all relief available under Maine Revised Statutes 10, §§

4    1101, *et seq.*

5        455.   <u>Michigan</u>: By reason of the foregoing, Defendants have violated Michigan Compiled

6    Laws §§ 445.773, *et seq.* Michigan Plaintiff on behalf of the Michigan Damages Class alleges as

7    follows:

8         a.    Defendants' combination or conspiracy had the following effects: (1) price

9    competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout

10   Michigan; (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at

11   artificially high levels throughout Michigan; (3) Michigan Plaintiff and the Michigan Damages Class

12   were deprived of free and open competition; and (4) Michigan Plaintiff and the Michigan Damages

13   Class paid supra-competitive, artificially inflated prices for Lithium Ion Battery Products.

14        b.    During the Class Period, Defendants' illegal conduct substantially affected

15   Michigan commerce.

16        c.    As a direct and proximate result of Defendants' unlawful conduct, Michigan

17   Plaintiff and the Michigan Damages Class have been injured in their business and property and are

18   threatened with further injury.

19        d.    By reason of the foregoing, Defendants have entered into agreements in

20   restraint of trade in violation of Michigan Compiled Laws §§ 445.773, *et seq.* Accordingly,

21   Michigan Plaintiff and the Michigan Damages Class seek all relief available under Michigan

22   Compiled Laws §§ 445.73, *et seq.*

23       456.   <u>Minnesota</u>: By reason of the foregoing, Defendants have violated Minnesota Statutes

24   §§ 325D.49, *et seq.* Minnesota Plaintiff on behalf of the Minnesota Damages Class alleges as

25   follows:

26        a.    Defendants' combination or conspiracy had the following effects: (1) price

27   competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout

28   Minnesota; (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at

1  artificially high levels throughout Minnesota; (3) Minnesota Plaintiff and the Minnesota Damages

2  Class were deprived of free and open competition; and (4) Minnesota Plaintiff and the Minnesota

3  Damages Class paid supra-competitive, artificially inflated prices for Lithium Ion Battery Products.

4           b.     During the Class Period, Defendants' illegal conduct substantially affected

5  Minnesota commerce.

6           c.     As a direct and proximate result of Defendants' unlawful conduct, Minnesota

7  Plaintiff and the Minnesota Damages Class have been injured in their business and property and are

8  threatened with further injury.

9           d.     By reason of the foregoing, Defendants have entered into agreements in

10  restraint of trade in violation of Minnesota Statutes §§ 325D.49, *et seq.*  Accordingly, Minnesota

11  Plaintiff and the Minnesota Damages Class seek all relief available under Minnesota Statutes

12  §§ 325D.49, *et seq.*

13      457.   <u>Mississippi:</u> By reason of the foregoing, Defendants have violated Mississippi Code

14  §§ 75-21-1, et seq.  Mississippi Plaintiff on behalf of the Mississippi Damages Class alleges as

15  follows:

16           a.     Defendants' combination or conspiracy had the following effects: (1) price

17  competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout

18  Mississippi; (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at

19  artificially high levels throughout Mississippi; (3) Mississippi Plaintiff and the Mississippi Damages

20  Class were deprived of free and open competition; and (4) Mississippi Plaintiff and the Mississippi

21  Damages Class paid supra-competitive, artificially inflated prices for Lithium Ion Battery Products.

22           b.     During the Class Period, Defendants' illegal conduct substantially affected

23  Mississippi commerce.

24           c.     As a direct and proximate result of Defendants' unlawful conduct, Mississippi

25  Plaintiff and the Mississippi Damages Class have been injured in their business and property and are

26  threatened with further injury.

27           d.     By reason of the foregoing, Defendants have entered into agreements in

28  restraint of trade in violation of Mississippi Code §§ 75-21-1, *et seq.*

1        e.    Accordingly, Mississippi Plaintiff and the Mississippi Damages Class seek all

2    relief available under Mississippi Code § 75-21-1, *et seq.*

3        458.   Nebraska: By reason of the foregoing, Defendants have violated Nebraska Revised

4    Statutes §§ 59-801, *et seq.* Nebraska Plaintiff on behalf of the Nebraska Damages Class alleges as

5    follows:

6        a.    Defendants' combination or conspiracy had the following effects: (1) price

7    competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout

8    Nebraska; (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at

9    artificially high levels throughout Nebraska; (3) Nebraska Plaintiff and the Nebraska Damages Class

10   were deprived of free and open competition; and (4) Nebraska Plaintiff and the Nebraska Damages

11   Class paid supra-competitive, artificially inflated prices for Lithium Ion Battery Products.

12       b.    During the Class Period, Defendants' illegal conduct substantially affected

13   Nebraska commerce.

14       c.    As a direct and proximate result of Defendants' unlawful conduct, Nebraska

15   Plaintiff and the Nebraska Damages Class have been injured in their business and property and are

16   threatened with further injury.

17       d.    By reason of the foregoing, Defendants have entered into agreements in

18   restraint of trade in violation Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Nebraska

19   Plaintiff and the Nebraska Damages Class seek all relief available under Nebraska Revised Statutes

20   §§ 59-801, *et seq.*

21       459.   Nevada: By reason of the foregoing, Defendants have violated Nevada Revised

22   Statutes §§ 598A.010, et seq. Nevada Plaintiff on behalf of the Nevada Damages Class alleges as

23   follows:

24       a.    Defendants' combination or conspiracy had the following effects: (1) price

25   competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout Nevada;

26   (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at artificially high

27   levels throughout Nevada; (3) Nevada Plaintiff and the Nevada Damages Class were deprived of free

28

1   and open competition; and (4) Nevada Plaintiff and the Nevada Damages Class paid supra-

2   competitive, artificially inflated prices for Lithium Ion Battery Products.

3           b.     During the Class Period, Defendants' illegal conduct substantially affected

4   Nevada commerce.

5           c.     As a direct and proximate result of Defendants' unlawful conduct, Nevada

6   Plaintiff and the Nevada Damages Class have been injured in their business and property and are

7   threatened with further injury.

8           d.     By reason of the foregoing, Defendants have entered into agreements in

9   restraint of trade in violation of Nevada Revised Statutes §§ 598A.010, *et seq.* Accordingly, Nevada

10   Plaintiff and the Nevada Damages Class seek all relief available under Nevada Revised Statutes §§

11   598A.010, *et seq.*

12        460.   <u>New Hampshire:</u> By reason of the foregoing, Defendants have violated New

13   Hampshire Revised Statutes §§ 356:1, *et seq.* New Hampshire Plaintiff on behalf of the New

14   Hampshire Damages Class alleges as follows:

15           a.     Defendants' combination or conspiracy had the following effects: (1) price

16   competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout New

17   Hampshire; (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at

18   artificially high levels throughout New Hampshire; (3) New Hampshire Plaintiff and the New

19   Hampshire Damages Class were deprived of free and open competition; and (4) New Hampshire

20   Plaintiff and the New Hampshire Damages Class paid supra-competitive, artificially inflated prices

21   for Lithium Ion Battery Products.

22           b.     During the Class Period, Defendants' illegal conduct substantially affected

23   New Hampshire commerce.

24           c.     As a direct and proximate result of Defendants' unlawful conduct, New

25   Hampshire Plaintiff and the New Hampshire Damages Class have been injured in their business and

26   property and are threatened with further injury.

27           d.     By reason of the foregoing, Defendants have entered into agreements in

28   restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly,

1    New Hampshire Plaintiff and the New Hampshire Damages Class seek all relief available under New

2    Hampshire Revised Statutes §§ 356:1, *et seq.*

3           461.   New Mexico: By reason of the foregoing, Defendants have violated New Mexico

4    Statutes §§ 57-1-1, *et seq.* New Mexico Plaintiff on behalf of the New Mexico Damages Class

5    alleges as follows:

6                  a.     Defendants' combination or conspiracy had the following effects: (1) price

7    competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout New

8    Mexico; (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at

9    artificially high levels throughout New Mexico; (3) New Mexico Plaintiff and the New Mexico

10   Damages Class were deprived of free and open competition; and (4) New Mexico Plaintiff and the

11   New Mexico Damages Class paid supra-competitive, artificially inflated prices for Lithium Ion

12   Battery Products.

13                 b.     During the Class Period, Defendants' illegal conduct substantially affected

14   New Mexico commerce.

15                 c.     As a direct and proximate result of Defendants' unlawful conduct, New

16   Mexico Plaintiff and the New Mexico Damages Class have been injured in their business and

17   property and are threatened with further injury.

18                 d.     By reason of the foregoing, Defendants have entered into agreements in

19   restraint of trade in violation of New Mexico Statutes §§ 57-1-1, *et seq.* Accordingly, New Mexico

20   Plaintiff and the New Mexico Damages Class seek all relief available under New Mexico Statutes §§

21   57-1-1, *et seq.*

22          462.   New York: By reason of the foregoing, Defendants have violated New York General

23   Business Laws §§ 340, *et seq.* New York Plaintiff on behalf of the New York Damages Class

24   alleges as follows:

25                 a.     Defendants' combination or conspiracy had the following effects: (1) price

26   competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout New

27   York; (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at artificially

28   high levels throughout New York; (3) New York Plaintiff and the New York Damages Class were

INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR      - 144 -

1    deprived of free and open competition; and (4) New York Plaintiff and the New York Damages

2    Class paid supra-competitive, artificially inflated prices for Lithium Ion Battery Products.

3            b.      During the Class Period, Defendants' illegal conduct substantially affected

4    New York commerce.

5            c.      As a direct and proximate result of Defendants' unlawful conduct, New York

6    Plaintiff and the New York Damages Class have been injured in their business and property and are

7    threatened with further injury.

8            d.      By reason of the foregoing, Defendants have entered into agreements in

9    restraint of trade in violation of New York General Business Laws §§ 340, et seq.  Accordingly, New

10   York Plaintiff and the New York Damages Class seek all relief available under New York General

11   Business Laws §§ 340, et seq.

12       463.    North Carolina: By reason of the foregoing, Defendants have violated North Carolina

13   General Statutes §§ 75-1, et seq.  North Carolina Plaintiff on behalf of the North Carolina Damages

14   Class alleges as follows:

15           a.      Defendants' combination or conspiracy had the following effects: (1) price

16   competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout North

17   Carolina; (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at

18   artificially high levels throughout North Carolina; (3) North Carolina Plaintiff and the North

19   Carolina Damages Class were deprived of free and open competition; and (4) North Carolina

20   Plaintiff and the North Carolina Damages Class paid supra-competitive, artificially inflated prices for

21   Lithium Ion Battery Products.

22           b.      During the Class Period, Defendants' illegal conduct substantially affected

23   North Carolina commerce.

24           c.      As a direct and proximate result of Defendants' unlawful conduct, North

25   Carolina Plaintiff and the North Carolina Damages Class have been injured in their business and

26   property and are threatened with further injury.

27           d.      By reason of the foregoing, Defendants have entered into agreements in

28   restraint of trade in violation of North Carolina General Statutes §§ 75-1, et seq.  Accordingly, North

1   Carolina Plaintiff and the North Carolina Damages Class seek all relief available under North

2   Carolina General Statutes §§ 75-1, *et seq.*

3       464.   North Dakota: By reason of the foregoing, Defendants have violated North Dakota

4   Century Code §§ 51-08.1-01, *et seq.* North Dakota Plaintiff on behalf of the North Dakota Damages

5   Class alleges as follows:

6           a.      Defendants' combination or conspiracy had the following effects: (1) price

7   competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout North

8   Dakota; (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at

9   artificially high levels throughout North Dakota; (3) North Dakota Plaintiff and the North Dakota

10  Damages Class were deprived of free and open competition; and (4) North Dakota Plaintiff and the

11  North Dakota Damages Class paid supra-competitive, artificially inflated prices for Lithium Ion

12  Battery Products.

13          b.      During the Class Period, Defendants' illegal conduct had a substantial effect

14  on North Dakota commerce.

15          c.      As a direct and proximate result of Defendants' unlawful conduct, North

16  Dakota Plaintiff and the North Dakota Damages Class have been injured in their business and

17  property and are threatened with further injury.

18          d.      By reason of the foregoing, Defendants have entered into agreements in

19  restraint of trade in violation of North Dakota Century Code §§ 51-08.1-01, *et seq.* Accordingly,

20  North Dakota Plaintiff and the North Dakota Damages Class seek all relief available under North

21  Dakota Century Code §§ 51-08.1-01, *et seq.*

22      465.   Oregon: By reason of the foregoing, Defendants have violated Oregon Revised

23  Statutes §§ 646.705, *et seq.* Oregon Plaintiffs on behalf of the Oregon Damages Class allege as

24  follows:

25          a.      Defendants' combination or conspiracy had the following effects: (1) price

26  competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout Oregon;

27  (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at artificially high

28  levels throughout Oregon; (3) Oregon Plaintiffs and the Oregon Damages Class were deprived of

1    free and open competition; and (4) Oregon Plaintiffs and the Oregon Damages Class paid supra-

2    competitive, artificially inflated prices for Lithium Ion Battery Products.

3              b.      During the Class Period, Defendants' illegal conduct had a substantial effect

4    on Oregon commerce.

5              c.      As a direct and proximate result of Defendants' unlawful conduct, Oregon

6    Plaintiffs and the Oregon Damages Class have been injured in their business and property and are

7    threatened with further injury.

8              d.      By reason of the foregoing, Defendants have entered into agreements in

9    restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.*   Accordingly, Oregon

10   Plaintiffs and the Oregon Damages Class seek all relief available under Oregon Revised Statutes

11   §§ 646.705, *et seq.*

12        466.   Puerto Rico:   By reason of the foregoing, Defendants have violated Puerto Rico Code

13   10 LPRA §251, *et seq.* and 31 LPRA §5141.  Puerto Rico Plaintiff on behalf of the Puerto Rico

14   Damages Class alleges as follows:

15             a.      Defendants' combination or conspiracy had the following effects: (1) price

16   competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout

17   Tennessee; (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at

18   artificially high levels throughout Puerto Rico; (3) Puerto Rico Plaintiff and the Puerto Rico

19   Damages Class were deprived of free and open competition; and (4) Puerto Rico Plaintiff and the

20   Puerto Rico Damages Class paid supra-competitive, artificially inflated prices for Lithium Ion

21   Battery Products.

22             b.      During the Class Period, Defendants' illegal conduct had a substantial effect

23   on Puerto Rico commerce as products containing Lithium Ion Batteries were sold in Puerto Rico.

24             c.      As a direct and proximate result of Defendants' unlawful conduct, Puerto Rico

25   Plaintiff and the Puerto Rico Damages Class have been injured in their business and property and are

26   threatened with further injury.

27             d.      By reason of the foregoing, Defendants have entered into agreements in

28   restraint of trade in violation of 10 LPRA §251, *et seq.* and 31 LPRA §5141§§ 47-25-101, *et seq.*

1  Accordingly, Puerto Rico Plaintiff and the Puerto Rico Damages Class seek all relief available under

2  10 LPRA §251, *et seq.* and 31 LPRA §5141§§ 47-25-101, *et seq.*

3    467.  Tennessee: By reason of the foregoing, Defendants have violated Tennessee Code §§

4  47-25-101, *et seq.*  Tennessee Plaintiff on behalf of the Tennessee Damages Class alleges as follows:

5      e.    Defendants' combination or conspiracy had the following effects: (1) price

6  competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout

7  Tennessee; (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at

8  artificially high levels throughout Tennessee; (3) Tennessee Plaintiff and the Tennessee Damages

9  Class were deprived of free and open competition; and (4) Tennessee Plaintiff and the Tennessee

10  Damages Class paid supra-competitive, artificially inflated prices for Lithium Ion Battery Products.

11      f.    During the Class Period, Defendants' illegal conduct had a substantial effect

12  on Tennessee commerce as products containing Lithium Ion Batteries were sold in Tennessee.

13      g.    As a direct and proximate result of Defendants' unlawful conduct, Tennessee

14  Plaintiff and the Tennessee Damages Class have been injured in their business and property and are

15  threatened with further injury.

16      h.    By reason of the foregoing, Defendants have entered into agreements in

17  restraint of trade in violation of Tennessee Code §§ 47-25-101, *et seq.* Accordingly, Tennessee

18  Plaintiff and the Tennessee Damages Class seek all relief available under Tennessee Code §§ 47-25-

19  101, *et seq.*

20    468.  Vermont: By reason of the foregoing, Defendants have violated Vermont Stat. Ann. 9

21  §§ 2453, *et seq.*  Vermont Plaintiff on behalf of the Vermont Damages Class alleges as follows:

22      a.    Defendants' combination or conspiracy had the following effects: (1) price

23  competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout

24  Vermont; (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at

25  artificially high levels throughout Vermont; (3) Vermont Plaintiff and the Vermont Damages Class

26  were deprived of free and open competition; and (4) Vermont Plaintiff and the Vermont Damages

27  Class paid supra-competitive, artificially inflated prices for Lithium Ion Battery Products.

28

1          b.      During the Class Period, Defendants' illegal conduct had a substantial effect

2    on Vermont commerce.

3          c.      As a direct and proximate result of Defendants' unlawful conduct, Vermont

4    Plaintiff and the Vermont Damages Class have been injured in their business and property and are

5    threatened with further injury.

6          d.      By reason of the foregoing, Defendants have entered into agreements in

7    restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq.*  Accordingly, Vermont

8    Plaintiff and the Vermont Damages Class seek all relief available under Vermont Stat. Ann. 9

9    §§ 2453, *et seq.*

10         469.   West Virginia: By reason of the foregoing, Defendants have violated West Virginia

11   Code §§ 47-18-1, *et seq.*  West Virginia Plaintiff on behalf of the West Virginia Damages Class

12   alleges as follows:

13         a.      Defendants' combination or conspiracy had the following effects: (1) price

14   competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout West

15   Virginia; (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at

16   artificially high levels throughout West Virginia; (3) West Virginia Plaintiff and the West Virginia

17   Damages Class were deprived of free and open competition; and (4) West Virginia Plaintiff and the

18   West Virginia Damages Class paid supra-competitive, artificially inflated prices for Lithium Ion

19   Battery Products.

20         b.      During the Class Period, Defendants' illegal conduct had a substantial effect

21   on West Virginia commerce.

22         c.      As a direct and proximate result of Defendants' unlawful conduct, West

23   Virginia Plaintiff and the West Virginia Damages Class have been injured in their business and

24   property and are threatened with further injury.

25         d.      By reason of the foregoing, Defendants have entered into agreements in

26   restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq.*  Accordingly, West Virginia

27   Plaintiff and the West Virginia Damages Class seek all relief available under West Virginia Code §§

28   47-18-1, *et seq.*

470.   <u>Wisconsin:</u> By reason of the foregoing, Defendants have violated Wisconsin Statutes §§ 133.01, *et seq.* Wisconsin Plaintiff on behalf of the Wisconsin Damages Class alleges as follows:

a.   Defendants' combination or conspiracy had the following effects: (1) price competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout Wisconsin; (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Wisconsin Plaintiff and the Wisconsin Damages Class were deprived of free and open competition; and (4) Wisconsin Plaintiff and the Wisconsin Damages Class paid supra-competitive, artificially inflated prices for Lithium Ion Battery Products.

b.   During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

c.   As a direct and proximate result of Defendants' unlawful conduct, Wisconsin Plaintiff and the Wisconsin Damages Class have been injured in their business and property and are threatened with further injury.

d.   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Statutes §§ 133.01, *et seq.* Accordingly, Wisconsin Plaintiff and the Wisconsin Damages Class seek all relief available under Wisconsin Statutes §§ 133.01, *et seq.*

### FIFTH CLAIM FOR RELIEF
### (Violation of State Consumer Protection and Unfair Competition Laws)
### (On Behalf of All Plaintiffs Against All Defendants)

471.   Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

472.   In the event that the Court does not apply California law on a nationwide basis, Plaintiffs allege the following violations of state consumer protection and unfair competition laws in the alternative.

473.   Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

474. <u>Arkansas</u>: By reason of the foregoing, Defendants have violated Arkansas's laws by engaging in unfair competition or unconscionable, unfair or deceptive acts or practices in violation of AR ST §4-88-101 *et seq.*

475. <u>California</u>: By reason of the foregoing, Defendants have violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* California Plaintiff on behalf of the California Damages Class alleges as follows:

a. Defendants committed acts of unfair competition, as defined by section 17200, *et seq.*, by engaging in a conspiracy to fix and stabilize the price of Lithium Ion Batteries as described above.

b. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as described above, constitute a common and continuing course of conduct of unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices with the meaning of section 17200, *et seq.*, including, but not limited to (1) violation of Section 1 of the Sherman Act; (2) violation of the Cartwright Act.

c. Defendants' acts, omissions, misrepresentations, practices and nondisclosures are unfair, unconscionable, unlawful and/or fraudulent independently of whether they constitute a violation of the Sherman Act or the Cartwright Act.

d. Defendants' acts or practices are fraudulent or deceptive within the meaning of section 17200, *et seq.*

e. Defendants' conduct was carried out, effectuated, and perfected within the State of California. Defendants maintained offices in California where their employees engaged in communications, meetings and other activities in furtherance of Defendants' conspiracy.

f. By reason of the foregoing, California Plaintiff and the California Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as result of such business acts and practices described above.

476.   <u>Florida</u>: By reason of the foregoing, Defendants have violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*  Florida Plaintiff on behalf of the Florida Damages Class alleges as follows:

a.   Defendants' unlawful conduct had the following effects: (1) price competition for Lithium Ion Batteries and Lithium Ion Battery Products was restrained, suppressed, and eliminated throughout Florida; (2) prices for Lithium Ion Batteries and Lithium Ion Battery Products were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Florida Plaintiff and the Florida Damages Class were deprived of free and open competition; and (4) Florida Plaintiff and the Florida Damages Class paid supra-competitive, artificially inflated prices for Lithium Ion Batteries and Lithium Ion Battery Products.

b.   During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

c.   As a direct and proximate result of Defendants' unlawful conduct, Florida Plaintiff and the Florida Damages Class have been injured and are threatened with further injury.

d.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. §§ 501.201, *et seq.*, and, accordingly, Florida Plaintiff and the Florida Damages Class seek all relief available under that statute.

477.   <u>Massachusetts</u>: By reason of the foregoing, Defendants have violated the Massachusetts Consumer and Business Protection Act, M.G.L. c. 93A, § 1, *et seq.*  Massachusetts Plaintiff on behalf of the Massachusetts Damages Class alleges as follows:

a.   Defendants were engaged in trade or commerce as defined by M.G.L. c. 93A, § 1.

b.   Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial and noncompetitive levels, the prices at which Lithium Ion Batteries and Lithium Ion Battery Products were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from the Massachusetts Plaintiffs and members of the Massachusetts Damages Class.

1    c.    Defendants' unlawful conduct had the following effects: (1) price

2    competition for Lithium Ion Batteries and Lithium Ion Battery Products was restrained, suppressed,

3    and eliminated throughout Massachusetts; (2) the prices of Lithium Ion Batteries and Lithium Ion

4    Battery Products were raised, fixed, maintained, and stabilized at artificially high levels throughout

5    Massachusetts; (3) Massachusetts Plaintiffs and members of the Massachusetts Damages Class were

6    deprived of free and open competition; and (4) Massachusetts Plaintiffs and members of the

7    Massachusetts Damages Class paid supra-competitive, artificially inflated prices for Lithium Ion

8    Batteries and Lithium Ion Battery Products.

9    d.    As a direct and proximate result of Defendants' unlawful conduct,

10   Massachusetts Plaintiffs and members of the Massachusetts Damages Class were injured and are

11   threatened with further injury.

12   e.    Each of the Defendants or their representatives have been served with a

13   demand letter in accordance with M.G.L. c. 93A, § 1, or such service of a demand letter was

14   unnecessary due to the defendant not maintaining a place of business within the Commonwealth of

15   Massachusetts or not keeping assets within the Commonwealth.  More than thirty days has passed

16   since such demand letters were served, and each Defendant served has failed to make a reasonable

17   settlement offer.

18   f.    By reason of the foregoing, Defendants engaged in unfair competition and

19   unfair or deceptive acts or practices, in violation of M.G.L. c. 93A, § 2. Defendants' and their co-

20   conspirators' violations of Chapter 93A were knowing or willful, entitling the Massachusetts

21   Plaintiff and the Massachusetts Damages Class to multiple damages.

22   478.   Missouri: By reason of the foregoing, Defendants have violated Missouri's

23   Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020.  Missouri Plaintiff on behalf of

24   the Missouri Damages Class alleges as follows:

25   a.    Missouri Plaintiff and members of the Missouri Damages Class purchased

26   Lithium Ion Batteries and/or Lithium Ion Battery Products for personal, family, or household

27   purposes.

28

1          b.      Defendants engaged in the conduct described herein in connection with the

2  sale of Lithium Ion Batteries and Lithium Ion Battery Products in trade or commerce in a market

3  that includes Missouri.

4          c.      Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at

5  artificial and non-competitive levels, the prices at which Lithium Ion Batteries and Lithium Ion

6  Battery Products were sold, distributed, or obtained in Missouri, which conduct constituted unfair

7  practices in that it was unlawful under federal and state law, violated public policy, was unethical,

8  oppressive and unscrupulous, and caused substantial injury to Missouri Plaintiff and the members of

9  the Missouri Damages Class.

10          d.      Defendants concealed, suppressed, and omitted to disclose material facts to

11  Missouri Plaintiff and the members of the Missouri Damages Class concerning Defendants'

12  unlawful activities and artificially inflated prices for Lithium Ion Batteries and Lithium Ion Battery

13  Products. The concealed, suppressed, and omitted facts would have been important to Missouri

14  Plaintiff and the members of the Missouri Damages Class as they related to the cost of Lithium Ion

15  Batteries and Lithium Ion Battery Products that they purchased.

16          e.      Defendants misrepresented the real cause of price increases and/or the

17  absence of price reductions in Lithium Ion Batteries and Lithium Ion Battery Products by making

18  public statements that were not in accord with the facts.

19          f.      Defendants' statements and conduct concerning the price of Lithium Ion

20  Batteries and Lithium Ion Battery Products were deceptive as they had the tendency or capacity to

21  mislead Missouri Plaintiff and the members of the Missouri Damages Class to believe that they

22  were purchasing Lithium Ion Batteries and Lithium Ion Battery Products at prices established by a

23  free and fair market. Defendants' unlawful conduct had the following effects: (1) Lithium Ion

24  Batteries and Lithium Ion Battery Products price competition was restrained, suppressed, and

25  eliminated throughout Missouri; (2) Lithium Ion Batteries and Lithium Ion Battery Products prices

26  were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3)

27  Missouri Plaintiff and members of the Missouri Damages Class were deprived of free and open

28

competition; and (4) Missouri Plaintiff and members of the Missouri Damages Class paid supra-competitive, artificially inflated prices for Lithium Ion Batteries and Lithium Ion Battery Products.

g.       The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

h.       As a direct and proximate result of the above-described unlawful practices, Missouri Plaintiff and members of the Missouri Damages Class suffered ascertainable loss of money or property.

i.       Accordingly, Missouri Plaintiff and members of the Missouri Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

479.   Montana: By reason of the foregoing, Defendants have violated Montana's Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code, §§ 30-14-103 *et seq.* Montana Plaintiff on behalf of the Montana Damages Class alleges as follows:

a.       Defendants' unlawful conduct had the following effects: (1) Lithium Ion Batteries and Lithium Ion Battery Products price competition was restrained, suppressed, and eliminated throughout Montana; (2) Lithium Ion Batteries and Lithium Ion Battery Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Montana Plaintiff and the Montana Damages Class were deprived of free and open competition; and (4) Montana Plaintiff and the Montana Damages Class paid supra-competitive, artificially inflated prices for Lithium Ion Batteries and Lithium Ion Battery Products.

b.       During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

c.      As a direct and proximate result of Defendants' unlawful conduct, Montana Plaintiff and the Montana Damages Class have been injured and are threatened with further injury.

d.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Montana's Unfair Trade Practices and Consumer Protection Act, Mont. Code, §§ 30-14-103 *et seq.* and, accordingly, Montana Plaintiff and the Montana Damages Class seek all relief available under that statute.

480.    Nebraska: By reason of the foregoing, Defendants have violated Nebraska's Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601, *et seq.* Nebraska Plaintiff on behalf of the Nebraska Damages Class alleges as follows:

a.      Defendants' unlawful conduct had the following effects: (1) Lithium Ion Batteries and Lithium Ion Battery Products price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Lithium Ion Batteries and Lithium Ion Battery Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) Nebraska Plaintiff and the Nebraska Damages Class were deprived of free and open competition; and (4) Nebraska Plaintiff and the Nebraska Damages Class paid supra-competitive, artificially inflated prices for Lithium Ion Batteries and Lithium Ion Battery Products.

b.      During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce and consumers.

c.      As a direct and proximate result of Defendants' unlawful conduct, Nebraska Plaintiff and the Nebraska Damages Class have been injured and are threatened with further injury.

d.      Defendants' actions and conspiracy have had a substantial impact on the public interests of Nebraska and its residents.

e.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601, *et seq.* and, accordingly, Nebraska Plaintiff and the Nebraska Damages Class seek all relief available under that statute.

481.   New Hampshire: By reason of the foregoing, Defendants have violated New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. §§ 358-A:2, *et seq.*  New Hampshire Plaintiff on behalf of the New Hampshire Damages Class alleges as follows:

a.   Defendants' unlawful conduct had the following effects: (1) Lithium Ion Batteries and Lithium Ion Battery Products price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Lithium Ion Batteries and Lithium Ion Battery Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) New Hampshire Plaintiff and the New Hampshire Damages Class were deprived of free and open competition; and (4) New Hampshire Plaintiff and the New Hampshire Damages Class paid supra-competitive, artificially inflated prices for Lithium Ion Batteries and Lithium Ion Battery Products.

b.   During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce and consumers.

c.   As a direct and proximate result of Defendants' unlawful conduct, New Hampshire Plaintiff and the New Hampshire Damages Class have been injured and are threatened with further injury.

d.   Defendants' actions and conspiracy have had a substantial impact on the public interests of New Hampshire and its residents.

e.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. §§ 358-A:2, *et seq.* and, accordingly, New Hampshire Plaintiff and the New Hampshire Damages Class seek all relief available under that statute.

482.   New York: By reason of the foregoing, Defendants have violated New York's General Business Law, N.Y. Gen. Bus. Law § 349, *et seq.* New York Plaintiff on behalf of the New York Damages Class alleges as follows:

a.   Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and noncompetitive levels, the prices at which Lithium Ion Batteries and Lithium Ion Battery Products were sold, distributed or obtained in

1    New York and took efforts to conceal their agreements from New York Plaintiff and the New York

2    Damages Class.

3            b.      The conduct of the Defendants described herein constitutes consumer-

4    oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which

5    resulted in consumer injury and broad adverse impact on the public at large, and harmed the public

6    interest of New York State in an honest marketplace in which economic activity is conducted in a

7    competitive manner.

8            c.      Defendants made certain statements about Lithium Ion Batteries and Lithium

9    Ion Battery Products that they knew would be seen by New York residents and these statements

10   either omitted material information that rendered the statements they made materially misleading or

11   affirmatively misrepresented the real cause of price increases for Lithium Ion Batteries and Lithium

12   Ion Battery Products.

13           d.      Defendants' unlawful conduct had the following effects: (1) Lithium Ion

14   Batteries and Lithium Ion Battery Products price competition was restrained, suppressed, and

15   eliminated throughout New York; (2) Lithium Ion Batteries and Lithium Ion Battery Products prices

16   were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3)

17   New York Plaintiff and the New York Damages Class were deprived of free and open competition;

18   and (4) New York Plaintiff and the New York Damages Class paid supra-competitive, artificially

19   inflated prices for Lithium Ion Batteries and Lithium Ion Battery Products.

20           e.      During the Class Period, Defendants' illegal conduct substantially affected

21   New York commerce and consumers.

22           f.      During the Class Period, each of the Defendants named herein, directly, or

23   indirectly and through affiliates they dominated and controlled, manufactured, sold and/or

24   distributed Lithium Ion Batteries and Lithium Ion Battery Products in New York.

25           g.      New York Plaintiff and the New York Damages Class seek actual damages

26   for their injuries caused by these violations in an amount to be determined at trial and are threatened

27   with further injury. Without prejudice to their contention that Defendants' unlawful conduct was

28

1   willful and knowing, New York Plaintiff and the New York Damages Class do not seek in this

2   action to have those damages trebled pursuant to N.Y. Gen. Bus. Law § 349(h).

3       483.   <u>South Carolina:</u> By reason of the foregoing, Defendants have violated South

4   Carolina's Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.* South Carolina Plaintiff

5   on behalf of the South Carolina Damages Class alleges as follows:

6          a.   Defendants' unlawful conduct had the following effects: (1) Lithium Ion

7   Batteries and Lithium Ion Battery Products price competition was restrained, suppressed, and

8   eliminated throughout South Carolina; (2) Lithium Ion Batteries and Lithium Ion Battery Products

9   prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South

10  Carolina; (3) South Carolina Plaintiff and the South Carolina Damages Class were deprived of free

11  and open competition; and (4) South Carolina Plaintiff and the South Carolina Damages Class paid

12  supra-competitive, artificially inflated prices for Lithium Ion Batteries and Lithium Ion Battery

13  Products.

14         b.   During the Class Period, Defendants' illegal conduct substantially affected

15  South Carolina commerce and consumers.

16         c.   As a direct and proximate result of Defendants' unlawful conduct, South

17  Carolina Plaintiff and the South Carolina Damages Class have been injured and are threatened with

18  further injury.

19         d.   Defendants have engaged in unfair competition or unfair or deceptive acts or

20  practices in violation of South Carolina Revised Statutes Annotated §§ 480-1, *et seq.*, and,

21  accordingly, South Carolina Plaintiff and the South Carolina Damages Class seek all relief available

22  under that statute.

23      484.   <u>Utah:</u> By reason of the foregoing, Defendants have violated Utah Code §§ 76-10-911,

24  et seq. Utah Plaintiff on behalf of the Utah Indirect Purchaser Class alleges as follows:

25         a.   Defendants' combinations or conspiracies had the following effects: (1) price

26  competition for Lithium Ion Batteries was restrained, suppressed, and eliminated throughout Utah;

27  (2) prices for Lithium Ion Batteries were raised, fixed, maintained and stabilized at artificially high

28  levels throughout Utah; (3) Utah Plaintiff and the Utah Indirect Purchaser Class were deprived of

1   free and open competition; and (4) Utah Plaintiff and the Utah Indirect Purchaser Class paid supra-

2   competitive, artificially inflated prices for Lithium Ion Batteries Products.

3           b.    During the Class Period, Defendants' illegal conduct had a substantial effect

4   on Utah commerce.

5           c.    As a direct and proximate result of Defendants' unlawful conduct, Utah

6   Plaintiff and the Utah Indirect Purchaser Class have been injured in their business and property and

7   are threatened with further injury.

8           d.    By reason of the foregoing, Defendants have entered into agreements in

9   restraint of trade in violation of violated Utah Code §§ 76-10-911, *et seq.* Accordingly, Utah

10  Plaintiff and the Utah Indirect Purchaser Class seek all relief available under violated Utah Code §§

11  76-10-911, *et seq.*

12      485.   Vermont: By reason of the foregoing, Defendants have violated Vermont's Consumer

13  Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.* Vermont Plaintiff on behalf of the Vermont Damages

14  Class alleges as follows:

15          a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce in

16  a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial

17  and noncompetitive levels, the prices at which Lithium Ion Batteries and Lithium Ion Battery

18  Products were sold, distributed, or obtained in Vermont.

19          b.    Defendants deliberately failed to disclose material facts to Vermont Plaintiff

20  and the Vermont Damages Class concerning Defendants' unlawful activities and artificially inflated

21  prices for Lithium Ion Batteries and Lithium Ion Battery Products. Defendants owed a duty to

22  disclose such facts, and considering the relative lack of sophistication of the average, non-business

23  consumer, Defendants breached that duty by their silence. Defendants misrepresented to all

24  consumers during the Class Period that Defendants' Lithium Ion Batteries and Lithium Ion Battery

25  Products prices were competitive and fair.

26          c.    Defendants' unlawful conduct had the following effects: (1) Lithium Ion

27  Batteries and Lithium Ion Battery Products price competition was restrained, suppressed, and

28  eliminated throughout Vermont; (2) Lithium Ion Batteries and Lithium Ion Battery Products prices

1    were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3)

2    Vermont Plaintiff and the Vermont Damages Class were deprived of free and open competition; and

3    (4) Vermont Plaintiff and the Vermont Damages Class paid supra-competitive, artificially inflated

4    prices for Lithium Ion Batteries and Lithium Ion Battery Products.

5            d.       As a direct and proximate result of the Defendants' violations of law,

6    Vermont Plaintiff and the Vermont Damages Class suffered an ascertainable loss of money or

7    property as a result of Defendants' use or employment of unconscionable and deceptive commercial

8    practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as

9    described herein.

10           e.       Defendants' deception, including their affirmative misrepresentations and

11   omissions concerning the price of Lithium Ion Batteries and Lithium Ion Battery Products, likely

12   misled all consumers acting reasonably under the circumstances to believe that they were

13   purchasing Lithium Ion Batteries and Lithium Ion Battery Products at prices born by a free and fair

14   market.  Defendants' misleading conduct and unconscionable activities constitutes unfair

15   competition or unfair or deceptive acts or practices in violation of 9 Vt. Stat. Ann. § 2451, *et seq.*,

16   and, accordingly, Vermont Plaintiff and the Vermont Damages Class seek all relief available under

17   that statute.

18                              **PRAYER FOR RELIEF**

19           WHEREFORE, Plaintiffs and Class members pray for relief as set forth below:

20           A.       Certification of the action as a class action pursuant to Federal Rule of Civil

21   Procedure 23, and appointment of Plaintiffs as Class Representatives and their counsel of record as

22   Class Counsel;

23           B.       A declaration that Defendants' conduct constituted an unlawful restraint of trade in

24   violation of the federal and state statutes alleged herein and that Defendants are liable for the conduct

25   or damage inflicted by any other co-conspirator.

26           C.       Restitution and/or damages to Class members for their purchases of Lithium Ion

27   Batteries and Lithium Ion Battery Products at inflated prices;

28

1         D.      Actual damages, statutory damages, punitive or treble damages, and such other relief

2 as provided by the statutes cited herein;

3         E.      Pre-judgment and post-judgment interest on such monetary relief;

4         F.      Equitable relief in the form of restitution and/or disgorgement of all unlawful or

5 illegal profits received by Defendants as a result of the anticompetitive conduct alleged herein;

6         G.      An injunction against Defendants, their affiliates, successors, transferees, assignees,

7 and other officers, directors, partners, agents and employees thereof, and all other persons acting or

8 claiming to act on their behalf or in concert with them from in any manner continuing, maintaining,

9 or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into

10 any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting

11 or following any practice, plan, program or device having a similar purpose or effect

12         H.      The costs of bringing this suit, including reasonable attorneys' fees; and

13         I.      All other relief to which Plaintiffs and Class members may be entitled at law or in

14 equity.

15 **DEMAND FOR JURY TRIAL**

16 Plaintiffs on behalf of themselves and all others similarly situated hereby request a jury trial

17 on any and all claims so triable.

18

19 DATED: July 2, 2013                HAGENS BERMAN SOBOL SHAPIRO LLP

20                             By:       /s/ Steve W. Berman

21                                   STEVE W. BERMAN

22                         Jeff D. Friedman (173886)
Shana Scarlett (217895)

23                         Jon T. King (205073)
715 Hearst Avenue, Suite 202

24                         Berkeley, CA 94710
Telephone: (510) 725-3000

25                         Facsimile: (510) 725-3001
steve@hbsslaw.com

26                         jefff@hbsslaw.com
shanas@hbsslaw.com

27                         jonk@hbsslaw.com

28

1                                    George W. Sampson (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP

2   1918 Eighth Avenue, Suite 3300
Seattle, WA 98101

3   Telephone: (206) 623-7292
Facsimile: (206) 623-0594

4   george@hbsslaw.com

5

6   DATED: July 2, 2013              COTCHETT, PITRE & McCARTHY, LLP

7   By: _____/s/ Steve Williams_____
                     STEVE WILLIAMS

8   Joseph W. Cotchett (36324)
Steven N. Williams (175489)

9   Nancy L. Fineman (124870)
Joanna W. LiCalsi (288771)

10  COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road

11  Burlingame, CA 94010
Telephone: (650) 697-6000

12  Facsimile: (650) 697-0577
jcotchett@cpmlegal.com

13  nfineman@cpmlegal.com
swilliams@cpmlegal.com

14

15  DATED: July 2, 2013              LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

16  By: ____/s/ Eric B. Fastiff_____
                 ERIC B. FASTIFF

17

18  Elizabeth J. Cabraser (083151)
Richard M. Heimann (63607)

19  Joy A. Kruse (142799)
Brendan P. Glackin (199643)

20  Marc A. Pilotin (266369)
Lin Y. Chan (255027)

21  275 Battery Street, 29th Floor
San Francisco, CA 94111-3339

22  Telephone: (415) 956-1000
Facsimile: (415) 956-1008

23  rheimann@lchb.com
efastiff@lchb.com

24

25  ***Indirect Purchaser Plaintiffs***
***Interim Co-Lead Class Counsel***

26

27

28

1

2    Jennie Anderson
     ANDRUS ANDERSON LLP
     155 Montgomery Street, 9th Floor
3    San Francisco, California 94104
     Phone: 415.986.1400
     Fax: 415.986.1474
4    jennie@andrusanderson.com

5    *Liaison Counsel for Indirect Purchaser Plaintiffs*

6    Kenneth L. Mann
     ADR OFFICE OF KEN MANN
7    6822 North 72nd Place
     Scottsdale, AZ 85250
8    Tel: 480-789-1025
     Fax: 866-890-6266
9    ken@reasonablemann.com

10   Eric J. Pickar
     BANGS MCCULLEN BUTLER FOYE &
11   SIMMONS
     333 West Boulevard, Suite 400
12   PO Box 2670
     Rapid City, SD 57709
13   Tel: 605-343-1040
     Fax: 605-343-1503
14   epickar@bangsmccullen.com

15   Manfred Muecke
     Van Bunch
16   BONNETT, FAIRBOURN, FRIEDMAN &
     BALINT, PC
17   57 Carriage Hill
     Signal Mountain, TN 37377
18   Tel: 423-580-5342
     vanb@earthlink.net
19   mmuecke@bffb.com

20   Daniel E. Birkhaeuser
     Alan R. Plutzik
21   BRAMSON, PLUTZIK, MAHLER
     & BIRKHAUSER LLP
22   2125 Oak Grove Road
     Walnut Creek, CA 94598
23   Tel: 925-945-0200
     Fax: 925-945-8792
24   dbirkhaeuser@bramsonplutzik.com
     aplutzik@bramsonplutzik.com
25

26

27

28

INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR          - 164 -

010330-11 622968 V1

James G. Stranch IV
BRANSTETTER, STRANCH & JENNINGS
227 Second Avenue North – 4th Floor
Nashville, TN 37201
Tel: 615-254-8801
Fax:615-250-3937
jjms@branstetterlaw.com

Joseph Breall
Jill L. Diamond
BREALL & BREALL LLP
1550 Bryant Street, Suite 575
San Francisco, CA 94103
Tel: 415-345-0545
Fax: 415-345-0538
jmbreall@breallaw.com
Jill@breallaw.com

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO
5 Becker Farm Road
Roseland, NJ 07068
Tel: 973-994-1700
Fax: 973-994-1744
jcecchi@carellabyrne.com
LTaylor@carellabyrne.com

Kit A. Pierson
Brent W. Johnson
Laura Alexander
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue N.W.
Suite 500, West Tower
Washington, DC 20005
Tel: 202-408-4600
Fax: 202-408-4699
kpierson@cohenmilstein.com
bjohnson@cohenmilstein.com
lalexander@cohenmilstein.com

Sandra Cuneo
CUNEO GILBERT & LADUCA, LLP
11620 Wilshire Boulevard
Suite 900
Los Angeles, CA 90025
Tel:    310.582.5939
Fax:   310.582.5943
Cell:  917.319.3777
scuneo@cuneolaw.com

INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR

- 165 -

010330-11 622968 V1

1    Jonathan W. Cuneo
     Joel Davidow
2    Katherine Van Dyck
     CUNEO GILBERT & LADUCA, LLP
3    507 C Street NE
     Washington, D.C. 20002
4    Telephone: (202) 789-3960
     Fax: (202) 789-1813
5    jonc@cuneolaw.com
     joel@cuneolaw.com
6    kvandyck@cuneolaw.com

7    Scott E. Poynter
     Christopher D. Jennings
8    William T. Crowder
     Corey D. McGaha
9    EMERSON POYNTER LLP
     500 President Clinton Ave., Suite 305
10   Little Rock, AR 72201
     Tel: 501-907-2555
11   Fax: 501-907-2556
     scott@emersonpoynter.com
12   cjennings@emersonpoynter.com
     wcrowder@emersonpoynter.com
13   cmcgaha@emersonpoynter.com

14   John G. Emerson
     EMERSON POYNTER LLP
15   830 Apollo Lane
     Houston, TX 77058
16   Tel: 281-488-8854
     Fax: 281-488-8867
17   jemerson@emersonpoynter.com

18   Luis E. Minaña
     ESPADA MIÑANA & PEDROSA LAW OFFICES
19   122 Calle Manuel Dómenech Altos Urb. Baldrich
     San Juan, PR 00918
20   Tel: 787-758-1999
     Fax: 787-773-0500
21   minanalaw@prtc.net
     minanalaw@yahoo.com
22
     Michael G. Simon
23   FRANKOVITCH, ANETAKISM COLANTONIO
     & SIMON
24   337 Penco Road
     Weirton, WV 26062
25   Tel: 304-723-4400
     Fax: 304-723-5892
26   msimon@facslaw.com

27

28

1

2
Daniel R. Karon
GOLDMAN SCARLATO KARON & PENNY
3
P.C.
700 W. St. Clair Ave., Suite 204
4
Cleveland, OH 44113-1998
Tel: 216-622-1851
karon@gskplaw.com

5

6
Brian D. Penny
GOLDMAN SCARLATO KARON & PENNY,
7
P.C.
101 E. Lancaster Ave., Suite 204
8
Wayne, PA 19087
Tel: 484-342-0700
penny@gskplaw.com

9

10
Robert S. Green
James Robert Noblin
11
Lesley E. Weaver
GREEN & NOBLIN, P.C.
12
700 Larkspur Landing Circle, Suite 275
Larkspur, CA 94939
13
Tel: 415-477-6700
Fax: 415-477-6710
14
rsg@classcounsel.com
lew@classcounsel.com

15
Judd B. Grossman
16
GROSSMAN LAW LLP
590 Madison Avenue. 18th Floor
17
New York, NY 10022
Tel: 646-770-7445
18
Fax: 212-521-4044
jgrossman@grossmanllp.com

19
Héctor Eduardo Pedrosa-Luna
20
P.O. Box 9023963
San Juan, PR 00902-3963
21
Tel: 787-920-7983
Fax: 787-764-7511
22
hectorpedrosa@gmail.com

23
Jeffrey F. Keller
Eric A. Grover
24
Kathleen R. Scanlan
KELLER GROVER LLP
25
1965 Market Street
San Francisco, CA 94103
26
Tel: 415-543-1305
Fax: 415-543-7861
27
jfkeller@kellergrover.com
eagrover@kellergrover.com
28
kscanlan@kellergrover.com

INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR          - 167 -

010330-11 622968 V1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ralph B. Kalfayan
Vic A. Merjanian
KRAUSE KALFAYAN BENINK & SLAVENS
LLP
550 W. C. Street, Suite 530
San Diego, CA 92101
Tel: 619-232-0331
Fax: 619-232-4019
rkalfayan@kkbs-law.com
vmerjanian@kkbs-law.com

Susan LaCava
LACAVA & LIEF S.C.
1237 Rutledge
Madison, WI 53703
Tel: 608-258-1335
Fax: 608-258-1669
lacava@2llaw.com

Casey L. Lott
LANGSTON & LOTT, PA
P.O. Box 382
100 South Main Street
Booneville, MS 38829
Tel: 662-728-9733

John E. Cowan, Esq.
LAW OFFICE OF JOHN COWAN
100 Pine Street, Suite 1250
San Francisco, CA  94111
Tel: (415) 729-4680
johncowanlaw@gmail.com

John D. Mills
LAW OFFICE OF JOHN D. MILLS
5237 Summerlin Commons Blvd., Suite 314
Ft. Myers, FL 33907
Tel: 239-337-3535
Fax: 239-337-3499
jdmlaw@att.net

Michael David Liberty
LAW OFFICE OF MICHAEL D. LIBERTY
1290 Howard Avenue
Burlingame. CA 94010
Tel: 650-685-8085
Fax: 650-685-8086
mdlaw@pacbell.net

Thomas J.H. Brill
LAW OFFICE OF THOMAS H. BRILL
8012 State Line Road, Suite 102
Leawood, KS 66208
Tel: 913-677-2004
brillkc@gmail.com

1

2     George Rikos
      LAW OFFICES OF GEORGE RIKOS
3     1307 Stratford Court
      Del Mar, CA 92014
      Tel: 858-259-9826
4     Fax: 858-724-1453
      george@gcorgerikoslaw.com,
5     rosa@georgerikoslaw.com

6     William Straus
      LAW OFFICES OF WILLIAM STRAUS
7     115 Orchard Road
      New Bedford, MA 02740
8     Tel: 508-992-1260
      Fax: 508-965-9189
9     rep.straus@verizon.net

10    Eric S. Somers
      Mark N. Todzo
11    Howard Hirsch
      Lisa Burger
12    LEXINGTON LAW GROUP
      503 Divisadero Street
13    San Francisco, CA 94117
      Tel: 415-913-7800
14    esomers@lexlawgroup.com
      mtodzo@lexlawgroup.com
15    hhirsch@lexlawgroup.com
      lburger@lexlawgroup.com
16
      Krishna Narine
17    MEREDITH & NARINE
      100 S. Broad St., Suite 905
18    Philadelphia, PA 19110
      Tel: 215-464-5182
19    knarine@m-partners.com

20    Gil D. Messina
      Timothy A.C. May
21    MESSINA LAW FIRM P.C.
      961 Holmdel Road
22    Holmdel, NJ 07733-2103
      Tel: 773-332-9300
23    gmessina@messinalawfirm.com

24

25

26

27

28

1

2

3

4

5

6

Paul F. Novak
Elizabeth McKenna
Peggy Wedgworth
MILBERG, LLP
One Pennsylvania Plaza
New York, NY 10119
Tel: 212-594-5300
Fax: 212-868-1229
pnovak@milberg.com
emckenna@milberg.com
pwedgworth@milberg.com

7

8

9

10

David Azar
Milberg, LLP
300 South Grand Avenue, Suite 3900
Los Angeles, CA 90071
Tel: 213-617-1200
Fax: 213-617-1975
dazar@milberg.com

11

12

13

14

15

Peter Safirstein
Domenico Minerva
MORGAN & MORGAN, P.C.
5 Pennsylvania Plaza
New York, NY 10001
Tel: 212-564-1637
Fax: 212-564-1807
psafirstein@forthepeople.com
dminerva@forthepeople.com

16

17

18

19

20

Jayne A. Goldstein
POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP
1792 Bell Tower Lane
Suite 203
Weston, FL 33326
954-315-3454 tel
954-315-3455 fax
Jagoldstein@pomlaw.com

21

22

23

24

Marc G. Reich
REICH RADCLIFFE, LLP
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660
Tel: 949-975-0512
mgr@reichradcliffe.com

25

26

27

28

Todd Schneider
SCHNEIDER WALLACE COTTRELL
KOENCKY LLP
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Tel: 415-421-7100
Fax: 415-421-7105
tschneider@schneiderwallace.com

INDIRECT PURCHASER PLS.' FIRST CONSOL. AMENDED
CLASS ACTION COMPLAINT – Case No. 4:13-md-02420-YGR

- 170 -

010330-11 622968 V1

William F. Jonckheer
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Tel: (415) 788-4220
Fax: (415) 788-0161
wjonckheer@schubertlawfirm.com

Christopher M. Burke
Walter W. Noss
John T. Jasnoch
SCOTT & SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Tel: 619-233-4565
Fax: 619-233-0508
cburke@scott-scott.com
wnoss@scott-scott.com
jjasnoch@scott-scott.com

Joseph P. Guglielmo
SCOTT & SCOTT LLP
The Chrysler Building
405 Lexington Ace., 40th Floor
New York, NY 10174
Tel: 212-223-6444
Fax: 212-223-6334
jguglielmo@scott-scott.com

Gregory P. Forney
SHAFFER LOMBARDO SHURIN
911 Main Street, Suite 2000
Kansas City, MO 64105
Tel: 816-931-0500
Fax: 816-931-5775
gforney@sls-law.com

Isacc L. Diel
SHARP MCQUEEN, P.A.
6900 College Blvd., Suite 285
Overland Park, KS 66221
Tel: 913-661-9931
idiel@sharpmcqueen.com

Timothy D. Battin
Christopher Le
STRAUS BOIES LLP
4041 University Drive, 5th Floor
Fairfax, VA 22030
Tel: 703-764-8700
Fax: 703-764-8704
tbattin@straus-boies.com
cle@straus-boies.com

1                            Lisa J. Rodriguez
                              TRUJILLO RODRIGUEZ & RICHARDS, LLC

2                            258 Kings Highway East
                            Haddonfield, NJ 08033

3                            Tel: 856-795-9002
                            Fax: 856-795-9887

4                            lisa@trrlaw.com

5                            Eric D. Barton
                            WAGSTAFF & CARTMELL, LLP

6                            4740 Grand Avenue
                            Suite 300

7                            Kansas City, MO 64112
                            Tel: 816.701.1100

8                            ebarton@wagstaffcartmell.com

9                            Kevin P. Roddy
                            WILENTZ, GOLDMAN & SPITZER, P.A.

10                          90 Woodbridge Center Drive
                          Suite 900, Box 10

11                          Woodbridge, NJ 07095-0958
                          Tel: 732-855-6402

12                          kroddy@wilentz.com

13                          E. Kirk Wood
                          WOOD LAW FIRM, LLC

14                          P.O. Box 382434
                          Birmingham, AL 35238-2434

15                          Tel: 205-612-0243

16                          James Wyatt
                          WYATT & BLAKE, LLP

17                          435 E. Morehead Street
                          Charlotte, NC 28202

18                          Tel: 704-331-0767
                          Fax: 704-331-0773

19                          jwyatt@wyattlaw.net

20                          John D. Zaremba
                          ZAREMBA BROWNELL & BROWN, PLLC

21                          40 Wall Street, 27th Floor
                          New York, NY 10005

22                          Tel: 212-380-6700
                          jzaremba@zbblaw.com

23

24                              **ATTESTATION**

25           Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence

26 in the filing of this document has been obtained from the other signatories above.

27  DATED:  July 2, 2013                    By    /s/ Steve W. Berman

28                                        STEVE W. BERMAN

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on July 2, 2013, I electronically filed the foregoing document using the

3    CM/ECF system which will send notification of such filing to the e-mail addresses registered in the

4    CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have

5    caused to be mailed a paper copy of the foregoing document via the United States Postal Service to

6    the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

7                                                          /s/ Steve W. Berman
                                                    STEVE W. BERMAN
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28