Christopher M. Curran (*pro hac vice*)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355
Email: ccurran@whitecase.com

*Attorneys for Toshiba Corporation and
Toshiba America Electronic Components, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: LITHIUM ION BATTERIES ANTITRUST LITIGATION | Master File No. 4:13-MD-02420 (YGR) <br><br> MDL No. 2420 <br><br> **TOSHIBA ENTITIES' MOTION TO DISMISS (1) THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT AND (2) THE INDIRECT PURCHASER PLAINTIFFS' FIRST CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** <br><br> The Honorable Yvonne Gonzalez Rogers <br><br> **ORAL ARGUMENT REQUESTED** <br><br> Date: December 6, 2013 <br> Time: 10:00 a.m. <br> Judge: Hon. Yvonne Gonzalez Rogers <br> Location: Courtroom 5 |
| This document relates to: <br><br> DIRECT PURCHASER and INDIRECT PURCHASER CLASS ACTIONS | |

# **TABLE OF CONTENTS**

Table Of Authorities ............................................................................................................. ii

Notice Of Motion And Motion ............................................................................................iii

Statement Of The Issue To Be Decided............................................................................... iv

Memorandum Of Points And Authorities............................................................................. 1

      I.      DPPs and IPPs Have Not Alleged Facts That Plausibly Support A Claim That The Toshiba Entities Participated In The Alleged Conspiracy........................ 1

      II.     The Government Investigations Cited By Plaintiffs Do Not Plausibly Support A Claim That The Toshiba Entities Participated In The Alleged Conspiracy ............................................................................................................ 6

      III.    The Allegations Against Unidentified "Japanese Defendants" Do Not Plausibly Support A Claim That The Toshiba Entities Participated In The Alleged Conspiracy ..................................................................................................... 6

Conclusion ............................................................................................................................ 7

# **TABLE OF AUTHORITIES**

CASES                                                                              PAGE(S)

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................... 1

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 1,4

*In re Baby Food Antitrust Litig.*,
    166 F.3d 112 (3d Cir. 1999) ...................................................................................... 5

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007) ........................................................................................ 4

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) .................................................................... 5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ................................................................. 1,7

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) .................................................................................. 6

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................................... 4,5

*Rutledge v. Electric Hose and Rubber Co.*,
    327 F. Supp. 1267 (C.D. Cal. 1971) ......................................................................... 5

| | |
|---|---|
| 1 | **NOTICE OF MOTION AND MOTION** |
| 2 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: |
| 3 | PLEASE TAKE NOTICE THAT at 10:00 a.m. on December 6, 2013, or as soon |
| 4 | thereafter as the matter may be heard, in Courtroom 5, Oakland, California, before the Honorable |
| 5 | Yvonne Gonzalez Rogers, Toshiba Corporation and Toshiba America Electronic Components, |
| 6 | Inc. (collectively, the "Toshiba Entities") shall move this Court for an order dismissing the Direct |
| 7 | Purchaser Plaintiffs' Consolidated Amended Complaint, dated July 2, 2013 (the "DPP-CAC") |
| 8 | and the Indirect Purchaser Plaintiffs' First Consolidated Amended Class Action Complaint, dated |
| 9 | July 2, 2013 (the "IPP-CAC") (collectively, the "Complaints") for failure to state a claim upon |
| 10 | which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. |
| 11 | This motion is based upon this Notice of Motion; the accompanying Memorandum of |
| 12 | Points and Authorities in support thereof; the pleadings and correspondence on file with the |
| 13 | Court, including the concurrently filed Certain Defendants' Motion to Dismiss the Direct |
| 14 | Purchaser Plaintiffs' Consolidated Amended Complaint and Certain Defendants' Joint Motion to |
| 15 | Dismiss the Indirect Purchaser Plaintiffs' Consolidated Amended Complaint; oral argument of |
| 16 | counsel; and such arguments and authorities as may be presented at or before the hearing. |

**STATEMENT OF THE ISSUE TO BE DECIDED**

Whether the DPP-CAC and the IPP-CAC fail to state a claim against the Toshiba Entities under the pleading standard set forth in *Bell Atlantic v. Twombly*, given that both complaints fail to allege sufficient facts to plausibly suggest that the Toshiba Entities were involved in the conspiracy alleged.

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs' exceedingly spare allegations against the Toshiba Entities fall far short of satisfying *Twombly* and *Iqbal*'s requirement that antitrust plaintiffs plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). Shorn of their conclusory allegations, the Complaints do not state a plausible claim that the Toshiba Entities participated in *any* conspiracy, let alone the nearly twelve-year, overarching conspiracy that is alleged. Indeed, the meager facts that reference the Toshiba Entities are as consistent with independent, legitimate business activity as they are with any conspiratorial conduct and therefore cannot be the basis for a plausible conspiracy claim. *Twombly*, 550 U.S. at 556. The Complaints' deficient factual allegations against the Toshiba Entities are not saved by the Complaints' general allegations that indiscriminately lump numerous Defendants together — *e.g.*, allegations that "Japanese Defendants" conspired — as those allegations must be disregarded on the twin grounds that they are conclusory and that they lack the requisite specificity as to what any particular Defendant is alleged to have done. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) ("general allegations as . . . to 'Japanese defendants' . . . [are] insufficient to put specific defendants on notice of the claims against them.").

## I. DPPs and IPPs Have Not Alleged Facts That Plausibly Support A Claim That The Toshiba Entities Participated In The Alleged Conspiracy

The allegations of the DPP-CAC and the IPP-CAC against the Toshiba Entities can be set forth succinctly. Both complaints allege as follows:

- Toshiba Corporation, including through its subsidiaries A&T Battery Corporation and Toshiba America Electronic Components, Inc., participated in the conspiracy alleged in this Complaint and manufactured, marketed, and/or sold Lithium Ion Batteries throughout the United States, including this District, during the Class Period. DPP-CAC ¶ 50, IPP-CAC ¶ 390.

- TAEC is an indirect, wholly-owned subsidiary of Toshiba Corporation that participated in the conspiracy alleged in this Complaint and manufactured, marketed and/or sold Lithium Ion Batteries throughout the United States, including in this District, during the Class Period. DPP-CAC ¶ 51, IPP-CAC ¶ 391.

- Toshiba maintained a sales and marketing arm in the United States to conduct business with major customers. DPP-CAC ¶ 64, IPP-CAC ¶ 432.

- In July 2002, LG Executive Vice President Hong met with "Division Leaders" from Toshiba, MBI (Panasonic), Sony and Sanyo to secure cooperation from these Defendants in the Lithium Ion Batteries market. DPP-CAC ¶ 101. (Also referring to July 2002, the IPP-CAC alleges that Mr. Hong "asked [Sony] for cooperation (on the business trip where he met MBI/SONY/SANYO/Toshiba/MCC division leaders)." IPP-CAC ¶ 65.)

- In March 2002, the Samsung Team met with certain competitors – not including any Toshiba entity – to discuss, among other issues, supply and demand, production capacity and the notebook battery market. In October 2002, the "Samsung team" met with Toshiba to discuss "substantially the same subjects that were raised in the March 2002 meeting." DPP-CAC ¶ 102. Apparently referring to the same meeting, the IPP-CAC states that the companies communicated that the price "of 2.2Ah to Motorola-ESG is almost the marginal cost level" and that "it is expected that the demand for discount will be approximately under 10%." IPP-CAC ¶¶ 57. The meeting participants also agreed to hold a future conference or conferences. *Id*.

- In mid-July 2003, Toshiba met with Samsung at the Tokyo ANA Hotel, and the companies discussed capacity and operating rate information. DPP-CAC ¶ 104, IPP-CAC ¶ 62. The IPP-CAC alleges that this information (along with terms of sale) was discussed in the context of a possible sale of Toshiba's battery business. IPP-CAC ¶ 62. Toshiba was also alleged to have discussed the sale with other Korean and Japanese companies. *Id*.

The IPP-CAC further alleges:

- Toshiba Corporation is a regular member of the Battery Association of Japan. IPP-CAC ¶ 203.

- Toshiba Corporation's Annual Report contained a Standards of Conduct section. IPP-CAC ¶ 273.

The DPP-CAC further alleges:

- Toshiba sold Lithium Ion Batteries and Lithium Ion Battery products directly to end users through www.toshibadirect.com. DPP-CAC ¶ 62.

- Toshiba employees Hirayama Kazunari and Ozaki Hidemechi represented "Toshiba" at one or more of the meetings and communications referenced in the complaint. DPP-CAC ¶ 57.

After stripping away the conclusory allegation that the Toshiba Entities "participated in the conspiracy," all that remains are sparse allegations of three meetings between "Toshiba" and other manufacturers of lithium ion batteries between 2002 and 2003. Critically, there are no factual allegations suggesting that any price or capacity agreements were reached at these

1  meetings or that any Toshiba entity joined any conspiracy.

2  As to the first alleged meeting, the Complaints allege merely that some unspecified
3  "Division Leaders" from some unspecified "Toshiba" entity met with LG Executive Vice
4  President Hong.  IPP-CAC ¶ 65(b)(i); DPP-CAC ¶ 101.  The DPP-CAC alleges that Mr. Hong's
5  purpose in meeting with Toshiba, MBI (Panasonic), Sony and Sanyo was "to secure cooperation
6  from these Defendants in the Lithium Ion Batteries market." DPP-CAC ¶ 101.  The DPP-CAC
7  does not, however, allege what type of "cooperation" LG's Mr. Hong was seeking, and — most
8  critically — the DPP-CAC does not allege what, if anything, the unspecified "Toshiba"
9  attendee(s) said in response the request.  The IPP-CAC, for its part, fails to even allege that Mr.
10 Hong sought cooperation from Toshiba.  The IPP-CAC alleges only that Mr. Hong asked for
11 cooperation from Sony on the business trip where he also happened to meet with Toshiba and
12 others.  IPP-CAC ¶ 65(b)(i).  Neither complaint suggests that anyone from Toshiba agreed with
13 LG to cooperate on anything.

14 As to the second alleged meeting, the Complaints allege that in October 2002 some
15 "Toshiba" entity met with the "Samsung team." DPP-CAC ¶ 102, IPP-CAC ¶ 57.  The DPP-
16 CAC alleges that at the October 2002 meeting, Toshiba and the Samsung team "discuss[ed]
17 substantially the same subjects that were raised in the March 2002 meeting." DPP-CAC ¶ 102.
18 As to the referenced March 2002 meeting, the DPP-CAC does not allege that Toshiba
19 participated.  While the DPP-CAC alleges that Samsung, Sony and Sanyo reached an agreement
20 at the March 2002 meeting, there is no allegation that Toshiba ever entered any agreement with
21 the Samsung team or anyone else.  The IPP-CAC also does not allege that at the October 2002
22 meeting Toshiba entered into an agreement regarding price, customers, supply or capacity.  The
23 two Toshiba employees alleged to have attended this meeting, Mr. Kazunari and Mr. Hidemechi,
24 are not alleged to have reached any agreements regarding the prices or supply of lithium ion
25 batteries.  Instead, the IPP-CAC alleges that at this second meeting, it was "communicated" that
26 "the price of 2.2Ah to Motorola-ESG is almost the marginal cost level," and that the "2003 price
27 of mobile phone use" was also "communicated." IPP-CAC ¶ 57.  The IPP-CAC further states
28 that Samsung and Toshiba agreed to hold a regular "staffer-centric conference (around end of

1  November).” *Id.* The Complaints do not allege that such a meeting ever took place. Again, there
2  is no factual allegation suggesting that Toshiba agreed to fix prices or restrict the supply of
3  lithium ion batteries. While it is alleged that at the meeting it was communicated that the price of
4  a certain battery was at "almost the marginal cost level," such a discussion of past or current
5  prices does not evidence an agreement to fix or restrain prices.

6  As to the third and final alleged meeting, the Complaints allege that on July 15 or 16,
7  2003 one or more employees from "Samsung" met with employees of "Toshiba" and that the
8  companies discussed capacity and operating rate information. IPP-CAC ¶ 62; DPP-CAC ¶ 104.
9  There is again no factual allegation suggesting that any agreement to fix prices or restrict capacity
10 was reached at this meeting. The IPP-CAC places these discussions in the context of a potential
11 *sale* of Toshiba's battery business. IPP-CAC ¶ 62. Discussion of capacity, operating rate or
12 terms of sale is not surprising given the acknowledgment that the purpose of the meeting was to
13 discuss a sale of the business. Nowhere in these paragraphs are there factual allegations
14 suggesting any impropriety; indeed this appears to be a perfectly legitimate meeting regarding the
15 sale of a business. Conduct that is "as consistent with permissible competition as with illegal
16 conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Matsushita*
17 *Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

18  The Complaints do not contain any factual allegations suggesting how these 2002 and
19 2003 meetings are connected to the alleged conspiracy of nearly twelve years. Nor do the
20 Complaints' allegations suggest any link between these meetings and the April 2007-September
21 2008 period of the LG Chem and Sanyo guilty pleas. Indeed, the Complaints' factual allegations
22 show that Toshiba did not manufacture lithium ion batteries or cells during the plea period and
23 throughout most of the Class Period. *See* IPP-CAC, Fig. 14 (showing no market share for
24 Toshiba after 2004). Simply put, the Complaints do not allege sufficient facts to support the
25 conclusory allegation that the Toshiba Entities participated in the alleged conspiracy. *See*
26 *Twombly*, 564 n.10 (allegation of agreement without "specific time, place, or person involved in
27 the alleged conspiracy" is insufficient); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50-51 (2d Cir.
28 2007) (allegations of agreement "without any specification of any particular activities by any

1    particular defendant" fail to satisfy *Twombly*) (internal quotation omitted).

2    While the DPP-CAC and the IPP-CAC allege three meetings between Toshiba and a
3    competitor, the Complaints do not allege facts plausibly suggesting any agreement between
4    Toshiba and any competitors.  *See, e.g., In re Baby Food Antitrust Litig.*, 166 F.3d 112, 126 (3d
5    Cir. 1999) ("communications between competitors [will] not permit an inference of an agreement
6    to fix prices unless those communications rise to the level of an agreement, tacit or otherwise")
7    (quoting *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1013 (3d Cir. 1994)); *In re
8    Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007)
9    ("Missing . . . is any specific allegation that defendants' representatives actually met to fix
10   prices."); *Rutledge v. Electric Hose and Rubber Co.*, 327 F. Supp. 1267, 1272 (C.D. Cal. 1971)
11   ("Absent an agreement to fix prices, there is nothing unlawful about competitors meeting and
12   exchanging price information or discussing problems common in their industry, or even
13   exchanging information as to the cost of their product.").  The allegation that Toshiba met with its
14   competitors in the context of selling its batteries business, in particular, is pure makeweight.  It is
15   black-letter law that "conduct as consistent with permissible competition as with illegal
16   conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Matsushita*,
17   475 U.S. at 588 (quoting *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 764 (1984)).

18   The lack of any allegations regarding the Toshiba Entities from the periods 2000-2001 and
19   2004-2011 simply underscores that the Plaintiffs are overreaching in their attempt to tie the
20   Toshiba Entities to the alleged conspiracy.  In fact, the only two references to "Toshiba" in this
21   later period are in 2008 when:  (1) LG and Panasonic are discussing Toshiba apparently as a
22   *customer* (IPP-CAC ¶ 127, referring to a "Toshiba Supplier Meeting") and (2) a bare reference to
23   Toshiba's "status" in an LG email with no further explanation (IPP-CAC ¶ 133).  None of the
24   allegations — taken individually or collectively — point to the Toshiba Entities' participation in
25   the alleged conspiracy.

## II. The Government Investigations Cited By Plaintiffs Do Not Plausibly Support A Claim That The Toshiba Entities Participated In The Alleged Conspiracy

The Complaints' allegations regarding the Department of Justice's investigation of *other companies* in the lithium ion battery industry do not suggest that the Toshiba Entities entered into an agreement to fix prices. DPP-CAC ¶¶ 180-184, IPP-CAC ¶¶ 219-227. Sony, LG, Samsung, Hitachi, and Panasonic are each alleged to be under investigation by the DOJ, but there is no allegation that the Toshiba Entities are also under investigation. The only inference to be drawn from these references is that — unlike other Defendants — the Toshiba Entities are *not* under criminal investigation by the DOJ. If the DOJ investigation of other companies is in any way suggestive of complicity on the part of those companies (as the DPPs and IPPs seem to contend), the absence of any investigation of the Toshiba companies by DOJ would seem to be suggestive that the Toshiba Entities were *not* complicit.

The Complaints also contain allegations about government investigations in other industries, specifically DRAM, LCD, and ODD. DPP-CAC ¶¶ 185-193, IPP-CAC ¶¶ 19, 228-241. Again, and with good reason, there is no allegation that any of the Toshiba Entities, or any of their employees, ever pleaded guilty, were convicted, or even charged in connection with these investigations. The indictments and convictions of *other* defendants and their employees in *other* industries do not suffice to plausibly allege that the Toshiba Entities participated in a conspiracy to fix prices for lithium ion batteries.

## III. The Allegations Against Unidentified "Japanese Defendants" Do Not Plausibly Support A Claim That The Toshiba Entities Participated In The Alleged Conspiracy

The Complaints use the catch-all term "Japanese Defendants" to refer to any defendant other than the "Korean Defendants" (IPP-CAC ¶ 372) or, alternatively, to refer to some or all of the Defendants with a connection to Japan, including Toshiba Corporation and Toshiba America Electronic Components (DPP-CAC ¶ 53). The use of the phrase "Japanese Defendants" as a substitute for specific Defendants fails to inform Defendants which — if any — of these allegations are directed to them. These allegations fail the basic pleading-stage test of identifying "who, did what, to whom (or with whom) where, and when?" *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008). And this "group pleading" approach plainly does not satisfy

*Twombly*'s requirements as applied by this Court. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d at 1117 ("[G]eneral allegations as to all defendants, to 'Japanese defendants,' or to a single corporate entity such as 'Hitachi' is insufficient to put specific defendants on notice of the claims against them.").

## CONCLUSION

For these reasons, the Court should dismiss the DPP-CAC and the IPP-CAC with respect to Toshiba Corporation and Toshiba America Electronic Components, Inc.

Respectfully submitted,

**WHITE & CASE** LLP

Dated:   September 16, 2013             By:  */s/ Christopher M. Curran*
                                             Christopher M. Curran

Christopher M. Curran (*pro hac vice*)
**WHITE & CASE** LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile:  (202) 639-9355
Email: ccurran@whitecase.com

*Attorneys for Toshiba Corporation and
Toshiba America Electronic Components, Inc.*