COOLEY LLP
Stephen C. Neal (170085) (nealsc@cooley.com)
John C. Dwyer (136533) (dwyerjc@cooley.com)
Bennett S. Miller (254368) (millerbs@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 843-5000
Facsimile: (650) 857-0663

Beatriz Mejia (190948) (mejiab@cooley.com)
Scott D. Joiner (223313) (sjoiner@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

Counsel for Defendants
Sony Corporation, Sony Energy Devices Corporation and
Sony Electronics Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: LITHIUM ION BATTERIES ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 4:13-MD-2420 YGR<br><br>MDL NO. 2420<br><br>**NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS DIRECT AND INDIRECT PURCHASER COMPLAINTS AS TO SONY CORPORATION, SONY ENERGY DEVICES CORPORATION, AND SONY ELECTRONICS INC.**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date: December 6, 2013<br>Time: 10:00 a.m.<br>Judge: Hon. Yvonne Gonzalez Rogers<br>Location: Courtroom 5 |

COOLEY LLP
ATTORNEYS AT LAW

SONY DEFS.' MOT. TO DISMISS DIRECT & INDIRECT PURCHASER COMPLS.
Case No. 4:13-md-2420 YGR

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on December 6, 2013, at 10:00 a.m., or as soon thereafter as this motion may be heard, in Courtroom 5, 1301 Clay Street, Oakland, California, before the Honorable Yvonne Gonzalez Rogers, Sony Corporation ("Sony Corp."), Sony Energy Devices Corp. ("SEND") and Sony Electronics Inc. ("SEL") will and hereby do move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an Order dismissing the Direct Purchaser Plaintiffs' Consolidated Amended Complaint ("DPC") and Indirect Purchaser Plaintiffs' Consolidated Amended Complaint ("IPC") for failure to state a claim that satisfies the pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In addition, Sony Corp., SEND and SEL incorporate herein the arguments made in Certain Defendants' Motion to Dismiss the DPC and Certain Defendants' Motion to Dismiss the IPC (collectively, "Joint Motions"). Pursuant to the Court's Order Setting Briefing Limits and Schedule, ECF No. 276, Sony Corp., SEND and SEL submit this separate motion to address issues that are specific to them. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings on file, oral argument of counsel, and such other material or argument as this Court may consider.

**ISSUES TO BE DECIDED**

Whether the DPC and IPC should be dismissed as to Sony Corp., SEND and SEL for failure to allege plausible conspiracy claims against them pursuant to Federal Rule of Civil Procedure 8(a) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

/ / /

/ / /

/ / /

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

As set forth in Defendants' Joint Motions, the DPC and IPC suffer from numerous pleading deficiencies. Those deficiencies are even more pronounced when the complaints are evaluated from the perspective of the three Sony defendants.

The three Sony entities are completely absent from long stretches of plaintiffs' conspiracy narrative. Indeed, the DPC fails to make a single allegation as to any of the three Sony companies in six of the eleven years during which the conspiracy allegedly ran, and the IPC fails to make such allegations in three of the eleven years. Moreover, during those periods in which the complaints do attempt to allege conduct attributable to the Sony entities, both complaints engage in impermissible group pleading and fail to differentiate among: (1) the three Sony entities (referred to simply as "Sony"), (2) eleven other Defendants with some connection to Japan and the three Sony entities (referred to collectively as "Japanese Defendants"), or (3) the Sony entities and any of the other 15 Defendants (grouped together as "Defendants"). It is thus impossible to ascertain the conduct Plaintiffs allege each specific Sony entity engaged in. Indeed, there are no well-pled factual allegations in either complaint directed at SEND or SEL.

Further, the allegations in the complaints that are directed at Sony Corp. or "Sony" fall short of supporting, with necessary well-pled factual allegations, any participation in the expansive and continuing conspiracy that they attempt to present. As noted above, the DPC fails to allege any participation of any Sony entity for roughly half of the 11-year conspiracy period. As to the remainder of the Class Period, neither complaint connects any Sony entity to any agreement that comes close to the massive scope of the conspiracy Plaintiffs have alleged.

In addition, Plaintiffs' massive conspiracy is also inherently implausible. They claim that 18 Defendants engaged in an 11-year conspiracy to fix the prices of all lithium ion battery cells for batteries used in virtually all consumer electronics products. However, the indirect plaintiffs acknowledge that the "Sony" share of the "Global Li-ion Market" dropped from 21% to 8% during the alleged conspiracy. IPC ¶ 200. Further, the Sony share was lost to alleged co-conspirators LG Chemical and Samsung SDI ("SDI"), as well as other market entrants. *Id.*

1  Sony's involvement in an 11-year conspiracy given these market dynamics is just not plausible.

2  Finally, Plaintiffs attempt to bolster the plausibility of their claims against the Sony entities by suggesting guilt by association. Plaintiffs allege that many of the Defendants "have a long history of criminal collusion" and then identify five unrelated antitrust proceedings to support the nefarious inference they hope the Court will draw. DPC ¶ 185; IPC ¶ 228. Yet, of those five alleged cartels, Sony had no alleged involvement in three and was actually a victim of the fourth. In the only other proceeding in which any Sony entity has been named as a defendant (ODD), it is many of the same plaintiffs' firms in this case that named Sony as a defendant in that case. Further, there has been no finding of liability as to any Sony entity in ODD. Plaintiffs' counsel essentially cite to their prior unfounded claims to support their new unfounded claims.

For each of these reasons, as well as the reasons set forth below and in the Joint Motions, the claims against the Sony entities should be dismissed.

## II. STATEMENT OF FACTS

Sony Corp. and its wholly-owned subsidiary, SEND, are Japanese corporations headquartered in Tokyo and Fukushima, Japan, respectively. DPC ¶¶ 38-39; IPC ¶¶ 379-80. SEL is a Delaware corporation headquartered in San Diego, California and an indirect subsidiary of Sony Corp. DPC ¶ 40; IPC ¶ 381. Both complaints refer to these three separate entities as "Sony" and allege that they "manufactured, marketed, and/or sold Lithium Ion Batteries." DPC ¶¶ 38-41; IPC ¶¶ 379-82. Plaintiffs also use the term "Japanese Defendants" to refer to a group of 14 named defendants that includes "Sony." DPC ¶¶ 32-53, 92, 94, 96; IPC ¶¶ 52, 372-92.

Despite alleging a conspiracy of more than 11 years, the complaints are notable for the absence of allegations about the Sony defendants, especially as compared with other Defendants. For example, the DPC contains no such allegations for 2000, 2001, 2003, 2009, 2010 or 2011, and the IPC makes no such allegations for 2000, 2003 or 2011. In those years where at least one factual allegation involves "Sony," the allegations range from disparate bilateral meetings to cursory mention of "Sony" in an email.

More specifically, in 2001 and 2002, Plaintiffs collectively allege five bilateral contacts involving "Sony." Most of these allegations describe general information exchanges between

"Sony" and LG that do not claim an agreement was reached. DPC ¶ 101; IPC ¶ 65.

The complaints are devoid of allegations concerning the Sony entities in 2003. For 2004 and 2005, Plaintiffs allege several bilateral meetings between "Sony" and primarily LG or SDI. *E.g.*, DPC ¶ 111; IPC ¶ 92. From 2006 through January 2008, Plaintiffs allege six instances of direct contact between "Sony" and others, all of which are bilateral and do not evidence any agreements approaching the scope of the claimed conspiracy. DPC ¶¶ 118, 128, 129, 131, 132; IPC ¶¶ 105, 119. Rather, most of these contacts are information exchanges. Plaintiffs' other allegations from this time also show that certain Defendants may have sought or obtained information *about* "Sony" from others, not from a Sony entity directly. DPC ¶ 125 ("Other company trend [¶¶] –Sony: about 10% …."); IPC ¶¶ 109-10 (same); *id.* ¶ 97 (SDI-Sanyo meeting at which "Sony" was mentioned); *id.* ¶ 114 (LG email with price information on "Sony or Sanyo"). Notably, both complaints collectively allege just one meeting, in June 2007, purportedly involving more than two competitors. DPC ¶ 130 (June 2007 meeting among three Defendants); IPC ¶ 113 (same). No Sony entity is alleged to have participated.

From February 2008 until the end of the alleged conspiracy in May 2011, Plaintiffs do not allege a single instance of direct contact between Sony and a competitor, let alone a conspiratorial act or agreement. *E.g.*, DPC ¶ 218 ("Sanyo also confirmed to LG that 'Sony does not open [its] pricing formula to customers.'"); IPC ¶ 125 (LG and Sanyo "discuss[ed]… the need to check on competitors' production plans…."); *id.* ¶ 146 (LG's Huh reported information "on… Sony" and others.).

### III. ARGUMENT

#### A. Plaintiffs Fail to Plausibly Allege that Sony Corp., SEND or SEL Joined and Participated in the "Massive" and "Long-Running" Conspiracy Described.

##### 1. The Sony Entities Are Often Missing from the Conspiracy Narrative.

Both complaints are notable for the extensive date gaps during which they allege no contact between any of the three Sony entities and any of their alleged co-conspirators, as set forth above. Plaintiffs cannot pursue a continuing agreement for time periods during which their complaints are absolutely silent. *See In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1076-

77 (D. Kan. 2009) (dismissing claims for time periods with no alleged contacts).

### 2. Plaintiffs' Group Allegations Are Legally Insufficient.

Similarly, Plaintiffs cannot state a viable conspiracy claim as to Sony Corp., SEND or SEL absent allegations indicating that each entity joined or participated in the alleged conspiracy. As Judge Illston explained in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, "general allegations as to all defendants, to 'Japanese defendants,' or to a single corporate entity [are] insufficient to put specific defendants on notice of the claims against them." 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 682-83 (2009) (requiring factual allegations as to each defendant); *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136 (N.D. Cal. 2005) (plaintiff must "specifically connect[]" each defendant to the alleged conspiracy). Here, both complaints use the same flawed pleading devices rejected by these and other courts. Plaintiffs repeatedly refer to Sony Corp., SEND and SEL simply as "Sony" or, more broadly, together with eleven other defendants as "Japanese Defendants." *See, e.g.*, DPC ¶¶ 41, 53 (defining "Sony" and "Japanese Defendants"); IPC ¶¶ 372, 382 (same). Consequently, it is impossible to know what conduct plaintiffs allege any specific Sony entity engaged in.

Further, there is no well-pled factual allegation in either complaint directed at SEND or SEL. The sparse allegations that do address these two entities do not evidence a single competitor contact, much less an agreement or conspiratorial act by either entity. *See* DPC ¶ 1 n.1 & IPC ¶¶ 226 n.49, 241 (listing both with other Defendants); DPC ¶¶ 39-41 & IPC ¶¶ 380-82, 431 (describing both); DPC ¶ 180 & IPC ¶¶ 220 (reporting SEL's receipt of DOJ subpoena).[1]

Plaintiffs' allegations regarding "Sony" or Sony Corp. cannot salvage their absent claims as to SEL and SEND. A subsidiary or affiliate relationship, without more, has long been held an insufficient basis to impose liability on such subsidiary or affiliate. *U.S. v. Bestfoods*, 524 U.S. 51, 61-64 (1998) ("'[T]he mere fact that there exists a parent-subsidiary relationship between two corporations [does not] make the one liable for the torts of its affiliate.'"); *In re Ins. Brokerage Antitrust Litig.*, 618 F. 3d 300, 341 n.44 (3d Cir. 2010) (subsidiary entity not liable for antitrust

---

[1] A DOJ subpoena or investigation carries "no weight in pleading an antitrust conspiracy claim." *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007).

agreement to which parent is party because it is "not liable for the actions of its parent or sister corporations simply by dint of the corporate relationship"); *In re Cal. Title Ins. Antitrust Litig.*, No. 08-cv-1341, 2009 WL 1458025, at *7 (N.D. Cal. May 21, 2009) (must allege corporate affiliates' direct participation or facts sufficient to support alternate theory of liability, such as vicarious or alter ego liability).[2] Indeed, Plaintiffs have not pled any evidentiary facts suggesting that SEND or SEL were the alter egos or agents of Sony Corp. Instead, both complaints rely on conclusory "agency" allegations concerning all "Defendants," DPC ¶ 56; IPC ¶ 395, which cannot support liability. *See, e.g.*, *Hockey v. Medhekar*, 30 F. Supp. 2d 1209, 1211 n.1 (N.D. Cal. 1998) (conclusory alter ego and agency allegations are insufficient to state grounds for liability).[3]

### 3. Plaintiffs Fail to Plausibly Allege That "Sony" Joined Any Conspiracy of the Duration and Scope Described in the Complaints.

Further, neither complaint plausibly alleges that "Sony" joined and participated in the massive conspiracy claimed. Even where the allegations refer to "Sony," the claims suffer from five fatal flaws. ***First***, of the three cell types at issue – cylindrical, prismatic and polymer – there are no "Sony" allegations as to prismatic or polymer batteries prior to 2002 or after 2005 (*i.e.*, for over seven years of the alleged conspiracy). ECF Nos. 259, 259-1, 259-2. ***Second***, many of the "Sony" allegations, and the vast majority after 2005, indicate only that certain Defendants sought or had obtained information about "Sony," *not* that "Sony" provided such information to them. *See, e.g.*, DPC ¶ 125 (March 2007 email listing Sony's "trend" at "about 10%"); IPC ¶ 125 (February 2008 meeting where competitors were concerned about obtaining information on Sony's production plans). ***Third***, many of the allegations claiming direct contact between "Sony" and a competitor indicate only that "Sony" met or exchanged information with them. *See, e.g.*, DPC ¶¶ 101, 115, 118 (meetings with SDI or LG describing, at most, a desire to exchange

---

[2] *See also U.S. v. Bennett*, 621 F.3d 1131, 1137-38 (9th Cir. 2010) ("no reason to set aside fundamental principles of corporate law" and "a century's worth of corporate jurisprudence" by disregarding the separate corporate identities of parent and wholly-owned subsidiary).

[3] *See also Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1067 (C.D. Cal. 2002) (failure to adequately allege alter ego liability); *Stanford Hosps. & Clinics v. Archstone Cmtys., LLC*, No. 11-cv-0620, 2011 WL 3740591, at *1-3 (N.D. Cal. Aug. 23, 2011) (corporate parent's ownership of subsidiary insufficient to establish agency).

1 information); IPC ¶ 70 (exchanging historical production information), *id.* ¶ 87 (identifying meeting with no additional facts). Such allegations are unavailing. *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1319 (11th Cir. 2003) (mere "opportunity to fix prices without any showing that [defendants] actually conspired" is insufficient).

*Fourth*, even where certain "Sony" allegations might suggest an agreement of some kind, those allegations are random, extremely limited in time, scope and participants, and do not remotely support the larger conspiracy alleged. For example, in March 2002, "Sony" allegedly agreed to "refrain from extending their existing capacity" with SDI. DPC ¶ 100; *see also* IPC ¶ 54. And in November 2002, LG allegedly met with "Sony" to negotiate LG's acquisition of "Sony's" prismatic manufacturing line, at which meeting LG allegedly offered to follow "Sony" if it led a "reasonable" price increase in polymer cells. DPC ¶ 103; IPC ¶ 65(b)(ii). These allegations, as well as the other allegations in the complaints claiming other "agreements" involving "Sony" (*e.g.*, DPC ¶ 107), reflect, at best, potential agreements much narrower – both in time and scope – than the massive, 11-year conspiracy claimed by Plaintiffs. *See In re Optical Disk Drive Antitrust Litig.*, No. 10-md-2143, 2011 WL 3894376, at *9 (N.D. Cal. Aug. 3, 2011) (bid-rigging by some defendants a "far cry from establishing plausibility" for 6-year conspiracy among all defendants).

*Fifth*, Plaintiffs' allegations directed at "Sony," almost all of which describe meetings with either SDI or LG, conveniently ignore the fact that the Sony entities actually lost market share to SDI and LG, as well as other market entrants, during the Class Period. IPC ¶ 200. Indeed, LG Chemical's alleged share of the "Lithium Ion Battery Industry" increased from 1.3% to 16.0% during the Class Period, while SDI's share grew from 0.4% to 24.0%. *Id.* At the same time, Sony saw its share erode from 21.0% to 8.0%. *Id.* This is not surprising given that Samsung and LG "'agreed to cooperate to stand up against the Japanese business[es] . . . .'" *Id.* ¶ 77. It is implausible to suggest that Sony participated in a conspiracy that decimated its market share. Indeed, dramatically shifting market shares are a hallmark of vigorous competition, not conspiracy. *See Williamson Oil Co.*, 346 F.3d at 1318 ("significant market share shifts" "strongly undermines appellants' conspiracy allegations").

**4.     Allegations Regarding Other Antitrust Matters Are Unavailing.**

Plaintiffs also ask the Court to infer that Sony Corp., SEND and SEL joined and participated in the claimed conspiracy based on the alleged anticompetitive conduct of *certain other Defendants or their affiliates* in unrelated markets.  *See* DPC ¶¶ 185-93; IPC ¶¶ 228-41 (identifying unrelated DRAM, LCD, ODD, CRT, and refrigerant compressor matters).  Indeed, of the five antitrust investigations and related civil matters upon which Plaintiffs rely, there is no proof of anticompetitive conduct – judgments, settlements or pleas – by *any* Sony entity.  In fact, Sony Corp. and SEL were actually victims and subsequent plaintiffs in the LCD matter.  And in the lone matter that involves any Sony entity as a defendant (ODD), there is no overlap with lithium ion batteries.  *See In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 647 F. Supp. 2d 1250, 1258 (W.D. Wash. 2009) (absent "overlapping involvement in different markets," other conspiracies do not render claimed conspiracy more plausible).  Indeed, many of the same plaintiffs' firms that have named Sony in this case are responsible for naming Sony in the ODD case.  Plaintiffs cannot sustain their pleading burden by identifying Sony Corp. and SEL's ongoing defense of antitrust claims in unrelated litigation, and they certainly cannot do so by pointing to an action where Sony Corp. and SEL are alleged victims of price-fixing.

## IV.     CONCLUSION

For the foregoing reasons, and those set forth in the Joint Motions, the DPC and IPC should be dismissed as to Sony Corp., SEND and SEL.

Dated: September 16, 2013         Respectfully submitted,

By:  /s/ John C. Dwyer
John C. Dwyer
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306
Telephone:     (650) 843-5000
Facsimile:       (650) 857-0663

*Counsel for Defendants Sony Corp., Sony Energy Devices Corporation, and Sony Electronics Inc.*