SHEPPARD MULLIN RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
GARY L. HALLING, Cal. Bar No. 66087
JAMES L. McGINNIS, Cal. Bar No. 95788
MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
DYLAN I. BALLARD, Cal. Bar No. 253929
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4106
Telephone:    415-434-9100
Facsimile:    415-434-3947
E-mail:      ghalling@sheppardmullin.com
             jmcginnis@sheppardmullin.com
             mscarborough@sheppardmullin.com
             dballard@sheppardmullin.com

Attorneys for Defendants
SAMSUNG SDI AMERICA, INC. and
SAMSUNG SDI CO., LTD.

***Additional Moving Defendants and Counsel Listed on Signature Pages***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re: LITHIUM ION BATTERIES ANTITRUST LITIGATION | Case No. 13-MD-02420 YGR |
| | MDL No. 2420 |
| This Document Relates to: | **DEFENDANTS' JOINT SUPPLEMENTAL MOTION TO DISMISS THE INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT (PHASE II)** |
| ALL INDIRECT PURCHASER ACTIONS | |
| | Date:      May 9, 2014 |
| | Time:      9:30 a.m. |
| | Judge:     Hon. Yvonne Gonzalez Rogers |
| | Location:  Courtroom 5 |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 9, 2014, at 9:30 a.m., or as soon thereafter as the matter may be heard, the undersigned Defendants will and hereby do move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing the Indirect Purchaser Plaintiffs' ("Plaintiffs") Consolidated Amended Complaint for failure to state a claim upon which relief can be granted.  This motion is based upon this Notice of Motion; the accompanying Memorandum of Points and Authorities; the concurrently filed Declaration of Dylan I. Ballard; the complete files and records in these consolidated actions; oral argument of counsel; and such other and further matters as the Court may consider.

## STATEMENT OF ISSUES TO BE DECIDED

1.    Whether Plaintiffs' claims under the laws of nineteen states should be dismissed for lack of antitrust standing under *Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519, 535 (1983).

2.    Whether Plaintiffs' class claims under Montana and Utah law and governmental subclass claims under the laws of all states other than California should be dismissed for lack of constitutional standing.

3.    Whether Plaintiffs' claims under Montana and Missouri law should be dismissed under *Illinois Brick v. Illinois*, 432 U.S. 720 (1977) for lack of standing to sue as indirect purchasers.

4.    Whether Plaintiffs' claims under the laws of Illinois, Montana, and South Carolina should be dismissed because they cannot be asserted as class actions.

5.    Whether Plaintiffs' claim under New Hampshire law should be dismissed for failure to allege required intrastate conduct.

6.    Whether Plaintiffs' claim under Arkansas law should be dismissed for failure to allege conduct covered by the Arkansas statute at issue when courts have repeatedly found that statute does not encompass alleged price-fixing.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 2

    A.    PLAINTIFFS LACK ANTITRUST STANDING IN *AGC* STATES BECAUSE THEY DID NOT PURCHASE PRODUCTS IN THE LITHIUM ION BATTERY CELLS COMPONENT MARKET. ........................... 2

        1.    The *AGC* Test Has Been Adopted By Most of The States At Issue Here. ........................................................................................... 4

        2.    Plaintiffs Lack Antitrust Injury Because They Were Not Participants in the Allegedly Restrained Component Market For Lithium Ion Battery Cells. ............................................................... 6

        3.    Plaintiffs' Allegations Also Fail to Satisfy the Other *AGC* Factors............. 9

        4.    The Cases Cited By Plaintiffs Are Distinguishable and Unavailing........... 11

    B.    PLAINTIFFS LACK CONSTITUTIONAL STANDING TO ASSERT CLAIMS ON BEHALF OF CLASSES OR SUBCLASSES OF WHICH NO NAMED PLAINTIFF IS A MEMBER............................................................. 13

    C.    PLAINTIFFS' CLAIMS UNDER MONTANA AND MISSOURI LAW MUST BE DISMISSED BECAUSE THOSE STATES APPLY THE *ILLINOIS BRICK* BAR ON INDIRECT PURCHASER ACTIONS...................... 20

        1.    Montana............................................................................................ 21

        2.    Missouri ........................................................................................... 22

    D.    MANY OF PLAINTIFFS' INDIVIDUAL STATE LAW CLAIMS HAVE ADDITIONAL DEFICIENCIES REQUIRING DISMISSAL. .............................. 23

        1.    Plaintiffs' Claims Under Illinois, Montana and South Carolina Law Cannot Be Brought As Class Actions. ....................................... 23

        2.    Plaintiffs Fail To Allege Required Conspiratorial Conduct In New Hampshire. ...................................................................................... 26

        3.    The Arkansas Deceptive Trade Practices Act Does Not Apply To Price-Fixing. ..................................................................................... 28

III.  CONCLUSION ................................................................................................. 30

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

<u>Federal Cases</u>

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*
   2009 WL 9502003 (C.D. Cal. July 6, 2009) ................................................... 5, 6, 8

*Amchem Products, Inc. v. Windsor*
   521 U.S. 591 (1997) ............................................................................................ 17

*In re Apple and AT&T Antitrust Litig.*
   596 F.Supp.2d 1288 (N.D. Cal. 2008) ........................................................... 15, 18

*Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*
   241 F.3d 696 (9th Cir. 2001)......................................................................... passim

*Associated General Contractors of California v. California State Council of Carpenters*
   459 U.S. 519 (1983) ...................................................................................... passim

*In re Automotive Parts Antitrust Litig.*
   2013 WL 2456612 (E.D. Mich. June 6, 2013) ............................................... 26, 29

*Barton & Pittinos, Inc. v. Smithkline Beecham Corp.*
   118 F.3d 178 (3rd Cir. 1997).................................................................................. 8

*In re Bayer Corp. Comb. Apsirin Prods. Mktg. & Sales Practices Litig.*
   701 F.Supp.2d 356 (E.D.N.Y. 2010)..................................................................... 18

*Bearden v. Honeywell Int'l Inc.*
   2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010) ................................................... 26

*Beck v. Prupis*
   529 U.S. 494 (2000) ............................................................................................. 30

*Bhan v. NME Hosps., Inc.*
   772 F.2d 1467 (9th Cir. 1985)................................................................................ 6

*Cargill, Inc. v. Monfort of Colorado, Inc.*
   479 U.S. 104 (1986) ............................................................................................... 6

*In re Cathode Ray Tube Antitrust Litig.*
   738 F. Supp. 2d 1011 (N.D. Cal. 2010) ............................................................... 11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
   No. 3:07-cv-05944-SC, MDL No. 1917 (N.D. Cal. Oct. 27, 2010).......... 14, 22, 29

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
   No. 3:07-cv-05944-SC, MDL No. 1917 (N.D. Cal. Sept. 30, 2010) ............. passim

-iii-

*In re Chocolate Confectionary Antitrust Litig.*
    602 F. Supp. 2d 538 (M.D. Pa. 2009) ............................................ 29

*In re Chocolate Confectionary Antitrust Litig.*
    749 F.Supp.2d 224 (M.D. Pa. 2010) ............................................ 27

*Datel Holdings Ltd. v. Microsoft Corp.*
    712 F. Supp. 2d 974 (N.D. Cal. 2010) ............................................ 8

*In re Digital Music Antitrust Litig.*
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) ............................................ 26

*In re Ditropan XL Antitrust Litig.*
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ............................... 3, 15, 16, 17

*Donovan v. Digital Equipment Corp.*
    883 F. Supp. 775 (D.N.H. 1994) ............................................ 5

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) ...................................... passim

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*
    536 F. Supp. 2d 1129 (N.D. Cal. 2008) ...................................... passim

*Easter v. Am. West*
    381 F.3d 948 (9th Cir. 2004) ............................................ 16, 17, 18

*Environamics Corp. v. Ferguson Enterprises, Inc.*
    2001 WL 1134727 (D.N.H. Sept. 24, 2001) ................................ 26

*Exhibitors' Serv., Inc. v. Am. Multi-Cinema, Inc.*
    788 F.2d 574 (9th Cir. 1986) ............................................ 3

*In re Flash Mem. Antitrust Litig.*
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) ...................................... passim

*Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enter. Co., Ltd.*
    2012 U.S. Dist. LEXIS 125677 (E.D. Wisc. Sept. 5, 2012) ................ 29

*Garman v. Campbell Cnty. Sch. Dist. No. 1*
    630 F.3d 977 (10th Cir. 2010) ............................................ 24

*In re Graphic Processing Units Antitrust Litig.*
    540 F. Supp. 2d 1085 (N.D. Cal. 2007) ................................ 5, 12, 13

*In re Graphics Processing Units Antitrust Litig.*
    527 F.Supp.2d 1011 (N.D. Cal. 2007) ................................ 14, 15, 17, 28

*Illinois Brick Co. v. Illinois*
    432 U.S. 720 (1977) ............................................ 20

-iv-

*In re Intel Corp. Microprocessor Antitrust Litig.*
    496 F. Supp. 2d 404 (D. Del. 2007) ..................................................................... 6

*JES Props., Inc. v. USA Equestrian, Inc.*
    2005 WL 1126665 (M.D. Fla. May 9, 2005) ...................................................... 5

*Knevelbaard Dairies v. Kraft Foods, Inc.*
    232 F.3d 979 (9th Cir. 2000)............................................................................. 4, 5

*Lewis v. Casey*
    518 U.S. 343 (1996) ........................................................................................... 14

*Lorenzo v. Qualcomm, Inc.*
    603 F. Supp. 2d 1291 (S.D. Cal. 2009) ........................................................... 8, 10

*McKinney v. Bayer Corp.*
    744 F. Supp. 2d 733 (N.D. Ohio 2010) .............................................................. 26

*Meijer, Inc. v. Abbott Laboratories*
    2008 WL 4065839 (N.D. Cal. Aug. 27, 2008) .................................................... 16

*In re MI Windows and Doors, Inc. Prods. Liab. Litig.*
    2012 WL 5408563 (D.S.C. Nov. 6, 2012) ........................................................... 26

*Mueller Co. v. U.S. Pipe & Foundry Co.*
    2003 WL 22272135 (D. N.H. 2003) ................................................................... 27

*Nelsen v. King County*
    895 F.2d 1248 (9th Cir. 1990)............................................................................. 16

*In re New Motor Vehicles Canadian Export Litig.*
    350 F. Supp. 2d 160 (D. Me. 2004)....................................................... 22, 26, 29

*NicSand, Inc. v. 3M Co.*
    507 F.3d 442 (6th Cir. 2007)......................................................................... 2, 3, 6

*In re Optical Disk Drive Antitrust Litig.*
    2011 WL 3894376 (N.D. Cal. Aug. 3, 2011)....................................................... 13

*O'Regan v. Arbitration Forums, Inc.*
    121 F.3d 1060 (7th Cir. 1997).............................................................................. 4

*Or. Laborers-Emp'rs Health & Welfare Trust Fund v. Philip Morris*
    185 F.3d 957 (9th Cir. 1999)............................................................................ 3, 5

*Orr v. Beamon*
    77 F. Supp. 2d 1208 (D. Kan. 1999) .................................................................... 4

*Ortiz v. Fibreboard Corp.*
    527 U.S. 815 (1999) ............................................................................................ 17

*In re Packaged Ice Antitrust Litig.*
    779 F. Supp. 2d 642 (E.D. Mich. 2011) .......................................................... 24, 26

*Perry v. Am. Tobacco Co., Inc.*
    324 F.3d 845 (6th Cir. 2003) ............................................................................. 4

*In re Pharm. Indus. Average Wholesale Price Litig.*
    738 F. Supp. 2d 227 (D. Mass. 2010) ............................................................. 23

*Phillips v. Philip Morris Companies Inc.*
    2013 WL 1182233 (N.D. Ohio March 21, 2013) ............................................. 24

*In re Potash Antitrust Litig.*
    667 F.Supp.2d 907 (N.D. Ill. 2009 ............................................................ 17, 18

*Precourt v. Fairbank Reconstruction Corp.*
    856 F.Supp.2d 327 (D.N.H. 2012) ............................................................. 26, 28

*R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*
    890 F.2d 139 (9th Cir. 1989) ........................................................................ 3, 6

*Ramirez v. STI Prepaid LLC*
    644 F.Supp.2d 496 (D.N.J. 2009) ................................................................... 18

*Ratzlaf v. United States*
    510 U.S. 135 (1994) ........................................................................................ 30

*Rector v. City & County of Denver*
    348 F.3d 935 (10th Cir. 2003) ........................................................................ 19

*In re Refrigerant Compressors Antitrust Litig.*
    2013 WL 1431756 (E.D. Mich. April 9, 2013) ....................................... passim

*Ryman v. Sears, Roebuck & Co.*
    505 F.3d 993 (9th Cir. 2007) ............................................................................ 3

*Sadler v. Rexair Inc.*
    612 F. Supp. 491 (D. Mont. 1985) .................................................................. 21

*Schlesinger v. Reservists Comm. To Stop the War*
    418 U.S. 208 (1974) ........................................................................................ 14

*Sekhar v. United States*
    133 S.Ct. 2720 (2013) ..................................................................................... 30

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*
    559 U.S. 393 (2010) ........................................................................... 24, 25, 26

*Smith v. Hedgpeth*
    706 F.3d 1099 (9th Cir. 2013) ........................................................................ 24

-vi-

*In re SRAM Antitrust Litig.*
    2010 WL 5094289 (N.D. Cal. Dec. 8, 2010) ........................................................ 21, 28, 29

*Stalvey v. Am. Bank Holdings, Inc.*
    2013 WL 6019320 (D.S.C. Nov. 13, 2013) ................................................................. 24, 26

*Steel Co. v. Citizens for a Better Env't*
    523 U.S. 83 (1998) ............................................................................................................. 20

*Tait v. BSH Home Appliances Corp.*
    2011 WL 1832941 (C.D. Cal. May 21, 2011) .................................................................... 24

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ................................................................... passim

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
    599 F. Supp. 2d 1179 (N.D. Cal. 2009) ............................................................................ 21

*Toscano v. PGA Tour, Inc.*
    201 F. Supp. 2d 1106 (E.D. Cal. 2002) .............................................................................. 3

*In re Wellbutrin XL Antitrust Litig.*
    756 F. Supp. 2d 670 (E.D. Pa. 2010) ............................................................................... 26

*Williams v. Boeing*
    517 F.3d 1120 (9th Cir. 2008) .................................................................................... 14, 18

State Cases

*Assoc. Press v. So. Ark. Radio Co.*
    809 S.W.2d 695 (Ark. Ct. App. 1991) .............................................................................. 29

*Beckler v. Visa U.S.A., Inc.*
    2004 WL 2475100 (N.D. Dist. Ct. Sept. 21, 2004) ........................................................... 4

*Clayworth v. Pfizer, Inc.*
    49 Cal. 4th 758 (2010) ......................................................................................................... 4

*Cnty. of Cook v. Philip Morris, Inc.*
    353 Ill. App. 3d 55 (Ill. Ct. App. 2004) ............................................................................ 4

*Dema v. Tenet Physician Servs.-Hilton Head, Inc.*
    678 S.E.2d 430 (S.C. 2009) .............................................................................................. 23

*Duvall v. Silvers, Asher, Sher & McLaren, M.D.s*
    998 S.W.2d 821 (Mo. Ct. App. 1999) .............................................................................. 22

*Fucile v. Visa U.S.A. Inc.*
    2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004) .................................................. 4, 5, 11

-vii-

*Gaebler v. N.M. Potash Corp.*
    676 N.E.2d 228 (Ill. App. Ct. 1996)........................................................................ 23

*Gibbons v. Nuckolls, Inc.*
    216 S.W.3d 667 (Mo. 2007)................................................................................... 22

*Ho v. Visa U.S.A., Inc.*
    787 N.Y.S.2d 677 (N.Y. Sup. Ct. 2004) ............................................................... 4, 5

*Ireland v. Microsoft Corp.*
    2001 WL 1868946 (Mo. Cir. Jan. 24, 2001) ........................................................ 22

*Kanne v. Visa U.S.A., Inc.*
    723 N.W.2d 293 (Neb. 2006).......................................................................... 4, 5, 11

*Knowles v. Visa U.S.A., Inc.*
    2004 WL 2475284 (Me. Super. Ct. Oct. 20, 2004)............................................. 4, 10

*LaChance v. U.S. Smokeless Tobacco Co.*
    931 A.2d 571 (N.H. 2007)..................................................................................... 27

*Luscher v. Bayer AG*
    2005 WL 6959406 (Ariz. Super. Ct. Sept. 14, 2005)............................................. 4

*Nass-Romero v. Visa U.S.A., Inc.*
    279 P.3d 772 (N.M. Ct. App. 2012)........................................................................ 4

*Owens Corning v. R.J. Reynolds Tobacco Co.*
    868 So.2d 331 (Miss. 2004)..................................................................................... 4

*Peterson v. Visa U.S.A., Inc.*
    2005 WL 1403761 (D.C. Super. Ct. Apr. 22, 2005) .............................................. 4

*Princeton Ins. Agency, Inc. v. Erie Ins. Co.*
    225 W.Va. 178 (2009).............................................................................................. 5

*Romero v. Philip Morris, Inc.*
    148 N.M. 713 (2010)............................................................................................... 4

*Smith v. Video Lottery Consultants, Inc.*
    858 P.2d 11 (Mont. 1993)...................................................................................... 21

*Stark v. Visa U.S.A., Inc.*
    2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004)................................................. 4

*State ex rel. Spitzer v. Daicel Chem. Indus. Ltd.*
    42 A.D.3d 301 (N.Y. App. Div. 2005)..................................................................... 5

*State v. R&A Inv. Co.*
    985 S.W.2d 299 (Ark. 1999).................................................................................. 28

-viii-

DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS IPPS'
CONSOLIDATED AMENDED COMPLAINT (PHASE II)

*Strang v. Visa U.S.A., Inc.*
    2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005)..................................................5, 10

*Tenn. Med. Ass'n v. BlueCross BlueShield of Tenn., Inc.*
    229 S.W.3d 304 (Tenn. Ct. App. 2007) ...................................................................4

*Vinci v. Waste Mgmt., Inc.*
    36 Cal. App. 4th 1811 (Cal. Ct. App. 1995) ...........................................................4

*Wrobel v. Avery Dennison Corp.*
    2006 WL 7130617 (Kan. Dist. Ct. Feb. 1, 2006)....................................................4

<u>Federal: Statutes, Rules, Regulations, Constitutional Provisions</u>

Clayton Act 432 U.S. 720 (1977)..................................................................................20

15 U.S.C. § 15 ...............................................................................................................20

Federal Rule of Civil Procedure 23 ........................................................................23, 25

<u>State: Statutes, Rules, Regulations, Constitutional Provisions</u>

740 Ill. Comp. Stat.
    §§ 10/1, *et seq.*..................................................................................................23
    § 10/7(2) ........................................................................................................23, 25

Ark. Code
    Ann. § 4-2A-108 ..................................................................................................30
    Ann. § 4-88-107(a) ..............................................................................................28

Mo. Rev. Stat.
    §§ 407.010, *et. seq.*...........................................................................................22
    § 416.141 .............................................................................................................22

Mont. Code Ann.
    §§ 30-14-103, *et seq.*....................................................................................20, 23
    § 30-14-133 (1).....................................................................................................25
    § 30-14-222 ..........................................................................................................20

N.H. Rev. Stat.
    § 356:14 ...............................................................................................................5
    § 358-A:2 .............................................................................................................26

Nev. Rev. Stat. 598A.050 ...............................................................................................5

Or. Rev. Stat. § 646.715(2) .............................................................................................5

S.C. Code Ann.
    § 39-5-140(a)...................................................................................................23, 25
    §§ 39-5-10, *et seq.*.............................................................................................23

SMRH:418094820.10      DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS IPPS'
CONSOLIDATED AMENDED COMPLAINT (PHASE II)

1

<u>Other Authorities</u>

2

Black's Law Dictionary ............................................................................................... 29

3

http://www.ag.ny.gov/antitrust/antitrust-enforcement ................................................ 20

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:418094820.10
DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS IPPS'
CONSOLIDATED AMENDED COMPLAINT (PHASE II)

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Plaintiffs seek to represent sixty-three alleged classes, "alternative" classes, and "subclasses," and assert claims under thirty-five different state antitrust, unfair competition, and consumer protection statutes.  Of these claims and theories, Defendants now seek to dismiss those that have been held deficient as a matter of law under compelling authority, including substantial jurisprudence in this District:[1]

- Plaintiffs' claims under the laws of nineteen states should be dismissed under the U.S. Supreme Court's decision in *Associated General Contractors of California* because they did not make purchases or otherwise participate in the relevant market for lithium ion battery cells.

- Under Ninth Circuit precedent that has been consistently followed by courts in this district, including in the *CRT*, *LCD*, *GPU*, *Flash Memory*, and *DRAM* multi-district litigations, Plaintiffs lack constitutional standing to assert claims on behalf of classes of Montana and Utah purchasers and "subclasses" of governmental purchasers in states other than California because no named plaintiff is alleged to be a member of any of those classes.

---

[1] On March 5, 2014, following meet and confer efforts as directed by the Court, the parties filed a stipulation and proposed order dismissing Plaintiffs' damages claims (1) under Puerto Rico law and (2) under New Hampshire and Utah law as to alleged damages that accrued before those states enacted *Illinois Brick* repealer statutes.  *See* Dkt. No. 399.  In addition, pursuant to the Court's direction, this motion does not address Plaintiffs' purported "nationwide" class allegations.  *See* IPP CAC, ¶¶ 398-400.  The Court indicated at the February 7, 2014 status conference that it will make a future determination as to when Defendants may file a motion to strike those allegations.  *See* Declaration of Dylan I. Ballard ("Ballard Decl."), ¶5, Ex. C (2/7/14 Transcript) at 35:10-14.

- Plaintiffs' claims under Montana and Missouri law should be dismissed because those states adhere to the U.S. Supreme Court's holding in *Illinois Brick* that indirect purchasers lack standing to sue for damages.

- Plaintiffs' claims under the laws of Illinois, Montana, and South Carolina cannot be asserted as class actions.

- The New Hampshire claim should be dismissed because Plaintiffs do not allege conspiratorial conduct in that state.

- Plaintiffs' Arkansas claim fails because courts have repeatedly held that the statute at issue does not apply to alleged price-fixing.

## II.

## ARGUMENT

**A.** **PLAINTIFFS LACK ANTITRUST STANDING IN *AGC* STATES BECAUSE THEY DID NOT PURCHASE PRODUCTS IN THE LITHIUM ION BATTERY CELLS COMPONENT MARKET.**

Plaintiffs have failed to meet their burden of pleading facts sufficient to demonstrate antitrust standing under *Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*").   Plaintiffs cannot plead antitrust standing here because they did not purchase allegedly price fixed lithium ion battery cells—they only purchased finished consumer electronics that contained battery cells—and therefore cannot establish that they suffered any antitrust injury.

As articulated by the Supreme Court, and as this Court has recently recognized, antitrust standing is a critical threshold question that is properly addressed on a motion to dismiss.  *See AGC*, 459 U.S. at 545-46 (1983) (district court properly dismissed complaint for failure to allege antitrust standing);  *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 701 (9th Cir. 2001) (same); *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) ("antitrust standing

1    is a threshold, pleading-stage inquiry"); Order re: Motions to Dismiss, ECF No. 361, at 8-16.[2]  A

2    complaint's failure to allege facts sufficient to demonstrate antitrust standing under *AGC* is

3    grounds for dismissal under all state laws where the *AGC* doctrine applies.  *See, e.g.*, *Or.*

4    *Laborers-Emp'rs Health & Welfare Trust Fund v. Philip Morris*, 185 F.3d 957, 962-66 (9th Cir.

5    1999) (affirming judgment on the pleadings against both federal and state claims for lack of

6    antitrust standing).

7          In *AGC*, the Supreme Court identified factors for courts to use when determining antitrust

8    standing.  These factors encompass: (1) the nature of the plaintiffs' injury (*i.e.*, whether it

9    constitutes "antitrust injury"); (2) the directness of the injury; (3) the risk of duplicative recovery

10   and complexity in apportioning damages; and (4) the speculative nature of the harm.  *Exhibitors'*

11   *Serv., Inc. v. Am. Multi-Cinema, Inc.*, 788 F.2d 574, 578 (9th Cir. 1986) (citing *AGC*, 459 U.S. at

12   545); *see* Certain Defs. Joint Mot. to Dismiss the DPP-CAC, ECF No. 290, at 22-24.

13         Of these, the most important factor is the existence of "antitrust injury."  *See R.C. Dick*

14   *Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 148-49 (9th Cir. 1989).  Failure to allege

15   facts establishing a plausible claim of antitrust injury is, by itself, an "independent ground" for

16   dismissal.  *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 704 (9th Cir.

17   2001); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129,

18   1136, 1141 (N.D. Cal. 2008) ("*DRAM II*") (antitrust claims may be properly dismissed for failing

19   to allege antitrust injury even if the other *AGC* factors "tilt in the plaintiffs' favor."); *Toscano v.*

20   *PGA Tour, Inc.*, 201 F. Supp. 2d 1106, 1116 (E.D. Cal. 2002) ("the absence of antitrust injury is

21   fatal").

22         It is the Plaintiffs' burden to establish antitrust injury and standing.  *See, e.g.*, *In re*

23   *Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007).  Their failure to do so

24   here warrants dismissal.  *See, e.g.*, *In re Dynamic Random Access Memory (DRAM) Antitrust*

25   _____

26   [2]      While some courts have postponed ruling on the applicability of *AGC* principles to a later
     stage in the litigation, *e.g.*, *In re Graphic Processing Units Antitrust Litig.*, 540 F. Supp. 2d

27   1085, 1097 (N.D. Cal. 2007), because antitrust standing is a threshold issue it should
     properly be addressed on a motion to dismiss, as this Court recognized in its *Illinois Brick*
     decision.  Order re: Motions to Dismiss, Dkt. No. 361, at 8-16.

28

DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS IPPS'
                                                  CONSOLIDATED AMENDED COMPLAINT (PHASE II)

1   *Litig.*, 516 F. Supp. 2d 1072, 1088–89 (N.D. Cal. 2007) ("*DRAM I*") (applying *AGC* and

2   dismissing indirect purchaser claims under various state antitrust statutes).

3        **1.**       **The *AGC* Test Has Been Adopted By Most of The States At Issue Here.**

4           The federal antitrust standing and antitrust injury principles of *AGC* have been held to

5   apply to the antitrust laws of nineteen of the states that serve as the basis for Plaintiffs' claims in

6   the IPP-CAC.[3]  Courts of sixteen of these nineteen states have adopted and applied *AGC* or

7   analogous federal antitrust injury cases to their antitrust laws.[4]  For the three other states, federal

8   ─────────────────────

9   [3]    Contrary to Plaintiffs' argument that "*AGC* applies only if there is a 'clear directive from
     those' legislatures or highest courts' to apply it" (Ballard Decl. Ex. B, Feb. 21, 2014
10   Ltr. from Plaintiffs' Counsel at 1), the Ninth Circuit instructs courts to look to lower state
     court decisions if higher authority is not available.  *See Ryman v. Sears, Roebuck & Co.*,
11   505 F.3d 993, 994 (9th Cir. 2007) ("[T]he federal court must follow the state intermediate
     appellate court decision unless the federal court finds convincing evidence that the state's
12   supreme court likely would not follow it."); *Or. Laborers-Emp'rs Health & Welfare Trust
     Fund*, 185 F.3d at 963 n.4 (holding federal antitrust standing doctrine applies to Oregon
13   antitrust law based on state appellate court decision and harmonization statute);
     *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987-94 (9th Cir. 2000)
14   (examining California appellate decisions to determine federal antitrust injury law applies;
     *see also DRAM I*, 516 F. Supp. 2d at 1094 (examining state trial court decisions to
15   determine applicability of *AGC*).

16   [4]    **Arizona:** *Luscher v. Bayer AG*, No. CV 2004-014835, 2005 WL 6959406, at *1-2 (Ariz.
     Super. Ct. Sept. 14, 2005); **California:** *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811,
17   1814 (Cal. Ct. App. 1995); *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987-
     94 (9th Cir. 2000); *see also Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 774 (2010) (citing
18   *AGC* and *Vinci* approvingly in discussion of "antitrust causation"); **D.C.:** *Peterson v. Visa
     U.S.A., Inc.*, No. 03-8080, 2005 WL 1403761, at *2-6 (D.C. Super. Ct. Apr. 22, 2005);
19   **Illinois:** *Cnty. of Cook v. Philip Morris, Inc.*, 353 Ill. App. 3d 55, 60-64 (Ill. Ct. App.
     2004) (citing *AGC* in applying the "direct injury" doctrine); *O'Regan v. Arbitration
20   Forums, Inc.*, 121 F.3d 1060, 1066 (7th Cir. 1997); **Kansas:** *Wrobel v. Avery Dennison
     Corp.*, No. 05-cv-1296, 2006 WL 7130617, at *2-4 (Kan. Dist. Ct. Feb. 1, 2006); *Orr v.
21   Beamon*, 77 F. Supp. 2d 1208, 1211-12 (D. Kan. 1999); **Maine:** *Knowles v. Visa U.S.A.,
     Inc.*, No. Civ.A. CV-03-707, 2004 WL 2475284, at *8-9 (Me. Super. Ct. Oct. 20, 2004);
22   **Michigan:** *Stark v. Visa U.S.A., Inc.*, No. 03-055030-CZ, 2004 WL 1879003, at *4-5
     (Mich. Cir. Ct. July 23, 2004); **Mississippi:** *Owens Corning v. R.J. Reynolds Tobacco Co.*,
23   868 So.2d 331, 343-44 (Miss. 2004) (applying federal antitrust injury principles to
     Mississippi antitrust claim); **Nebraska:** *Kanne v. Visa U.S.A., Inc.*, 723 N.W.2d 293, 298-
24   301 (Neb. 2006); **New Mexico:** *Nass-Romero v. Visa U.S.A., Inc.*, 279 P.3d 772, 778-81
     (N.M. Ct. App. 2012); *see also Romero v. Philip Morris, Inc.*, 148 N.M. 713, 724 (2010) **New
25   York:** *Ho v. Visa U.S.A., Inc.*, 787 N.Y.S.2d 677, at *5 (N.Y. Sup. Ct. 2004), *aff'd*, 793
     N.Y.S.2d 8 (N.Y. App. Div. 2005); **North Dakota:** *Beckler v. Visa U.S.A., Inc.*, No. 09-04-
26   C-00030, 2004 WL 2475100, at *4 (N.D. Dist. Ct. Sept. 21, 2004); **Tennessee:** *Perry v.
     Am. Tobacco Co., Inc.*, 324 F.3d 845, 849-51 (6th Cir. 2003) (*AGC* applies under the
27   TTPA); *Tenn. Med. Ass'n v. BlueCross BlueShield of Tenn., Inc.*, 229 S.W.3d 304, 311
     (Tenn. Ct. App. 2007) (citing *Perry* and noting that "the Sixth Circuit Court of Appeals set
28   forth controlling principles"); **Vermont:** *Fucile v. Visa U.S.A. Inc.*, No. S1560-03, 2004

─────────────────────

        **DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS IPPS'
CONSOLIDATED AMENDED COMPLAINT (PHASE II)**

1    courts have applied *AGC* to each state's antitrust law based on explicit harmonization provisions

2    in the relevant laws that make federal antitrust rules applicable.[5]  Finally, the principles of *AGC*

3    have also been held to apply to four of Plaintiffs' causes of action which are based on state

4    consumer protection laws, rather than state antitrust laws.[6]

5          The Ninth Circuit has made it clear that *AGC* principles must be applied where state law

6    has adopted them.  *See Knevelbaard Dairies*, 232 F.3d at 987 (determining that distinct "antitrust

7    standing"" is required under California state law and applying *AGC* factors); *Or. Laborers-Emp'rs*

8    *Health & Welfare Trust Fund*, 185 F.3d at 963 n.4 (applying *AGC* to claims asserted under

9    Oregon antitrust statutes because Oregon courts rely on federal decisions for guidance).

10   Accordingly, numerous district courts have already determined that *AGC* applies to many of the

11   specific state laws at issue here.  *See, e.g.*, *DRAM I*, 516 F. Supp. 2d at 1094-95; *DRAM II*, 536 F.

12   Supp. 2d at 1135 n. 2 (applying *AGC* to eight of the state laws at issue here and dismissing state

13   law claims for lack of antitrust standing); *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL

14   1431756, at *10-13 (E.D. Mich. Apr. 9, 2013) (applying *AGC* to eleven of the state laws at issue

15   here and dismissing state law claims for lack of antitrust standing);  *In re Aftermarket Auto.*

16   <hr>

17   WL 3030037, at *2-4 (Vt. Super. Ct. Dec. 27, 2004); **West Virginia:** *Princeton Ins.*
*Agency, Inc. v. Erie Ins. Co.*, 225 W.Va. 178, 184-85, 189-90 (2009) (applying federal

18   antitrust injury principles and observing that a plaintiff must allege "that it was injured as a
proximate result" of "anticompetitive effects within the relevant… markets"); *see also In*

19   *re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *10 (E.D. Mich. April
9, 2013) (applying *AGC* pursuant to W.Va. harmonization provision); **Wisconsin:** *Strang*

20   *v. Visa U.S.A., Inc.*, No. 03 CV 011323, 2005 WL 1403769, at *3-5 (Wis. Cir. Ct. Feb. 8,
2005).

21   [5]  **Nevada:**  Nev. Rev. Stat. 598A.050; *DRAM I*, 516 F. Supp. at 1095; **New  Hampshire:**

22   N.H. Rev. Stat. § 356:14; *Donovan v. Digital Equipment Corp.*, 883 F. Supp. 775,
787 (D.N.H. 1994); *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at

23   *10 (E.D. Mich. April 9, 2013); **Oregon:** Or. Rev. Stat. § 646.715(2); *Or.  Laborers-*
*Employees Health &   Welfare Trust Fund v. Philip  Morris, Inc.*, 185 F.3d 957, 963 n.4

24   (9th Cir. 1999).

25   [6]  **Florida:** *JES Props., Inc. v. USA Equestrian, Inc.*, 2005 WL 1126665, at *10-11, 19 (M.D.
Fla. May 9, 2005) (where FDUTPA claim is based on the same allegations as a plaintiff's

26   federal antitrust claim, the standing analysis is the same for both); **Nebraska:** *Kanne*, 723
N.W.2d 293, 298-301; **New York:** *Ho*, 787 N.Y.S.2d 677, at *5; *State ex rel. Spitzer v.*

27   *Daicel Chem. Indus. Ltd.*, 42 A.D.3d 301, 303-04 (N.Y. App. Div. 2005); **Vermont:**
*Fucile*, 2004 WL 3030037, at *2-4.

28

                **DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS IPPS'
CONSOLIDATED AMENDED COMPLAINT (PHASE II)**

1  *Lighting Prods. Antitrust Litig.*, 2009 WL 9502003, at \*3-6(C.D. Cal. July 6, 2009) (applying

2  *AGC* to seventeen of the state laws at issue here and dismissing claims for lack of antitrust

3  standing) (tentative ruling adopted sub nom *Sahagian v. Genera Corp.,* 2009 WL 7185616, at \*1

4  (C.D. Cal. July 7, 2009); *see also In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp.

5  2d 404, 408-09 (D. Del. 2007) (applying *AGC* to evaluate standing under the antitrust laws of nine

6  state lawss at issue here).

7      **2.    <u>Plaintiffs Lack Antitrust Injury Because They Were Not Participants in the</u>**

8          **<u>Allegedly Restrained Component Market For Lithium Ion Battery Cells.</u>**

9      As held by the Supreme Court, a plaintiff cannot obtain antitrust standing without antitrust

10  injury.  *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 110 n.5 (1986).  Because the

11  antitrust laws were created to "protect[] the economic freedom of participants in the *relevant*

12  *market*," *AGC*, 459 U.S. at 538 (emphasis added), "the injured party [must] be a participant in the

13  same market" where the alleged anticompetitive conduct occurred.  *R.C. Dick Geothermal*, 890

14  F.2d at 148 (quotation omitted).  "Parties whose injuries, though flowing from that which makes

15  the defendant's conduct unlawful, are experienced in another market do not suffer antitrust

16  injury." *Ass'n of Wash. Pub. Hosp. Dists.*, 241 F.3d at 705 (quoting *Am. Ad. Mgmt., Inc. v. Gen.*

17  *Tel. Co.*, 190 F.3d 1051, 1057 (9th Cir. 1999)).  As explained below, Plaintiffs have not and

18  cannot allege that they participated in or sustained an antitrust injury in the relevant market.

19      In the Ninth Circuit, the "market participation" test for antitrust injury underscores the

20  common-sense conclusion that retail purchasers of finished consumer electronics products, such as

21  Plaintiffs here, do not participate in the component market for products, like raw battery cells, that

22  are first sold to equipment manufacturers (and/or packers) and later integrated into finished

23  products with countless other components before reaching a retail customer.  To establish

24  participation in such a component market for purposes of *AGC*, Plaintiffs must first allege facts to

25  establish that the products that they purchased are reasonably interchangeable, or have cross-

26  elastic demand, with the products in the market where competition has allegedly been restrained.

27  *See Bhan v. NME Hosps., Inc.*, 772 F.2d 1467, 1470-71 (9th Cir. 1985); *DRAM II*, 536 F. Supp. 2d

28  at 1137-41.  Plaintiffs have not and cannot do so here because raw lithium ion battery cells are in

-6-

DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS IPPS'
CONSOLIDATED AMENDED COMPLAINT (PHASE II)

1  an entirely different market than the various consumer electronics (*e.g.*, a notebook computer, cell

2  phone, digital camera) allegedly purchased by the Plaintiffs.

3      The *DRAM* case is particularly instructive in this regard.  *DRAM*, like the present case,

4  involved claims by purchasers of finished consumer electronics products—like computers and

5  "other electronic equipment"—that contained allegedly price-fixed components known as

6  dynamic random access memory ("DRAM"), a type of semiconductor chip.  *DRAM I*, 516 F.

7  Supp. at 1089-91.  The court held that indirect-purchaser plaintiffs who had purchased computers

8  containing DRAM chips—but not the DRAM chips themselves—lacked standing, even though the

9  markets in which they purchased products were "interlinked" with the DRAM market.  *DRAM II*,

10  536 F. Supp. 2d at 1141-42.  In reviewing allegations that closely mirror those of the Plaintiffs

11  here, Judge Hamilton twice determined that *AGC* required dismissal of plaintiffs' claims because

12  "plaintiffs who are purchasing products in which DRAM is a component, rather than DRAM

13  itself, are participating in a secondary market that is incidental to the primary price-fixed market

14  (i.e., the market for DRAM modules themselves)."  *DRAM I*, 516 F. Supp. at 1089-91; *see also*

15  *DRAM II*, 536 F. Supp. 2d at 1135-1142 (dismissing claims after previously granting leave to

16  amend).  The same is true in the present case.

17      Here, just as in *DRAM*, dismissal is required because Plaintiffs are participants in a

18  secondary market and therefore cannot plausibly allege that they participated (or incurred any

19  antitrust injury) in the component market for "raw cells" that are the subject of the alleged

20  conspiracy.  *See* IPP-CAC ¶ 30.  As this Court previously recognized, the current case involves

21  allegations of "a conspiracy . . . that fixed prices for battery cells used in all three major formats of

22  lithium ion battery . . . ."  Order re: Motions to Dismiss, ECF No. 361, at 17; *see* IPP-CAC ¶ 7.

23  The "cell" is "the part of the battery that stores and releases electricity," and "[a]fter manufacture,

24  one or more cells are 'packed' inside a casing, sometimes with protective circuitry.  The casing

25  makes the cell usable as a battery, or . . . as a battery pack."  Order re: Motions to Dismiss, ECF

26  No. 361, at 4; *see* IPP-CAC ¶¶ 1-2, 29-30, 242.  These battery packs "reach the consumer market

27  either as components of consumer products or standalone products, for example, replacement

28  batteries."  Order re: Motions to Dismiss, ECF No. 361, at 4; *see* IPP-CAC ¶¶ 29-30, 242.  "Li-ion

-7-

DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS IPPS'
CONSOLIDATED AMENDED COMPLAINT (PHASE II)

1    manufacturers . . . do not sell individual cells" to retail consumers such as Plaintiffs.  IPP-CAC ¶

2    187.  Rather, individual cells "are available only to outside pack assemblers."  *Id.*  By contrast,

3    Plaintiffs are alleged to be purchasers of "end-use product[s]."  IPP-CAC ¶ 255.  Plaintiffs

4    therefore have alleged that they participate in a retail market for consumer electronics products

5    that contain assembled battery packs, or in the rare case, for stand-alone finished battery packs.

6    They have not alleged any participation in the component market for raw battery cells.

7         Plaintiffs cannot plausibly allege that finished Lithium Ion Battery Products, such as

8    notebook computers and mobile telephones, are reasonably interchangeable with the raw

9    component cells whose prices were allegedly fixed.   Nor have Plaintiffs alleged any facts that

10   could plausibly establish cross-elasticity of demand between the finished products that they

11   purchased and the raw Lithium Ion Battery cells themselves.  *Cf.* IPP-CAC ¶¶ 1, 30, 196

12   ("Demand for Lithium Ion Batteries," which the IPP-CAC defines as the raw cells, "is not very

13   elastic because there are no close substitutes for these products").  Accordingly, because Plaintiffs

14   have failed to allege facts that plausibly establish that they were participants in the "same market"

15   as the allegedly restrained component market for raw Lithium Ion Battery cells, they have not met

16   their burden to establish antitrust injury or *AGC* standing.  *See*, *e.g.*, *DRAM II*, 536 F. Supp. 2d at

17   1137-41.[7]

_____

[7]    *See also Barton & Pittinos, Inc. v. Smithkline Beecham Corp.*, 118 F.3d 178, 184 (3rd Cir. 1997) (Alito, J.) (marketer of vaccine was not a participant in the market for the "package of marketing and distribution of the vaccine," because marketing alone was not "reasonably interchangeable" with the package); *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 994 (N.D. Cal. 2010) (plaintiff lacked standing where its "allegations center on its injury in the secondary market"); *Lorenzo v. Qualcomm, Inc.*, 603 F. Supp. 2d 1291, 1302-03 (S.D. Cal. 2009) (plaintiff lacked standing under California Cartwright Act because his "injuries occurred in a different market from the allegedly anticompetitive conduct"); *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *11-13 (purchasers of finished refrigerator products containing allegedly price-fixed compressors as components lacked antitrust injury); *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 2009 WL 9502003, at *5-6 (allegation that plaintiffs "indirectly purchased autolight products . . . from one or more of the defendants" not sufficient for standing because "without Plaintiffs pleading specific facts detailing their alleged purchases, it is impossible to tell whether the Complaint alleges that they *are* market participants").

1

**3.      Plaintiffs' Allegations Also Fail to Satisfy the Other *AGC* Factors.**

Although their failure to allege facts to establish antitrust injury is an "independent ground" for dismissal, *Ass'n of Wash. Pub. Hosp. Dists.*, 241 F.3d at 705, Plaintiffs also fail to plead facts to satisfy the other *AGC* factors.  For example, the directness of injury factor looks "to the chain of causation between [Plaintiffs'] injury and the alleged restraint," *AGC*, 459 U.S. at 540, to determine "whether, as indirect purchasers, there is a direct link in the causation chain between defendants' alleged conspiracy to restrain prices, and the artificially high prices paid by plaintiffs." *DRAM  I*, 516 F. Supp. 2d at 1091(citing *AGC*, 459 U.S. at 540; *Am. Ad. Mgmt.*, 190 F.3d at 1038).  Here, at best, Plaintiffs plead facts of an indirect and attenuated causal connection between Plaintiffs' alleged injuries and Defendants' claimed wrongdoing.

Specifically, Plaintiffs allege that the inflated prices resulting from Defendants' claimed price-fixing were the prices of raw cells, which were then passed on to Plaintiffs through multiple levels of the manufacturing and distribution chain "by direct purchasers, manufacturers, distributors and retailers."  IPP-CAC ¶ 258.  These allegations of remote causation cannot support a claim of sufficiently direct injury under *AGC*.  *See In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *13 ("[N]one of the IP Plaintiffs allege that they purchased a hermetic compressor, so they were not directly injured by the alleged conspiracy.").

Moreover, Plaintiffs' conclusory allegation that "any costs attributable to Lithium Ion Batteries can be traced through the chain of distribution" because "[t]hey do not undergo any physical alterations as they move through the chain," IPP-CAC ¶¶ 255, 261, is contradicted by the IPP-CAC's own more specific factual allegations.  Plaintiffs allege that battery packs are designed for use in a wide variety of products: "laptop, notebook, netbook, and tablet computers (such as iPads), mobile telephones, smartphones, digital audio players (such as iPods), power tools, digital cameras and camcorders/digital video cameras . . . ."  IPP-CAC ¶ 3.  A battery pack manufactured for use in, for example, a Dell notebook computer is not compatible with a mobile telephone or a power tool.  Thus, it cannot be disputed that the raw cells that were allegedly price fixed were transformed when they were given custom enclosures and circuitry and were assembled for use in specific products.  *See* IPP-CAC ¶¶ 29, 242; *see, e.g.*, *DRAM I*, 516 F. Supp. 2d at 1092 ("It

-9-

1  requires no leap of logic to conclude that each product in which DRAM is a component, contains

2  numerous other components, all of which *collectively* determine the final price actually paid by

3  plaintiffs for the final product."); *Lorenzo*, 603 F. Supp. 2d at 1301 (dismissing claims where the

4  alleged anticompetitive conduct affected only a single component in the end product and

5  plaintiffs' injury would require "trac[ing] through three levels of the supply chain" and

6  "disaggregat[ion] from a multitude of other manufacturing and component factors."); *In re*

7  *Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *14 ("[T]he causal nexus between

8  the alleged conspiracy in the hermetic compressor market and the IP Plaintiffs' alleged injury

9  (paying inflated prices for finished goods that contain hermetic compressors) is too remote and

10  attenuated to support antitrust standing").

11      Similarly, Plaintiffs have failed to plead facts showing that their antitrust damages claims

12  would not be too speculative and complex to apportion because of their remoteness from the

13  source of the claimed injury.  *See, e.g.*, *DRAM I*, 516 F. Supp. 2d at 1092.  Damages may be

14  impermissibly speculative or unreasonably complex to apportion where the alleged antitrust

15  violation is only indirectly related to the alleged injury, or where independent factors impact the

16  price that plaintiff paid.  *AGC*, 459 U.S. at 542.

17      As discussed above, Plaintiffs claim to have purchased an extremely broad array of

18  consumer products, from notebook computers to power tools.  *See* IPP-CAC ¶ 3.  All of these

19  finished consumer products obviously contain a large number of other components that influence

20  their price.  Plaintiffs are therefore "faced with the daunting task of proving the effect of the

21  prohibited conduct on the price at any and all levels above them and then at their removed position

22  in the chain of distribution, and disproving, or at least quantifying, the effects of a multitude of

23  other pricing considerations which clearly did or could have intervened at any relevant level."

24  *Strang*, 2005 WL 1403769, at *5.  With so many factors affecting the price of the products

25  purchased by Plaintiffs, proving damages would be "unduly speculative," and any "damages

26  would be difficult to apportion, in view of the fact that the plaintiffs in question purchased their

27  [battery cells] in the form of a component product."  *DRAM I*, 516 F. Supp. 2d at 1092; *Knowles*,

28  2004 WL 2475284, at *6 ("To determine what portion of any overcharge was passed on by any

-10-
DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS IPPS'
CONSOLIDATED AMENDED COMPLAINT (PHASE II)

given merchant, with respect to which products, and to which consumers is a task of monumental uncertainty and complexity."); *Kanne*, 723 N.W.2d at 299 (it "would be a nightmare" to apportion damages between direct purchasers and consumer plaintiffs who may have purchased goods at inflated prices); *Fucile*, 2004 WL 3030037, at *4; *see also AGC*, 459 U.S. at 545 n.51 ("the task of disentangling overlapping damages claims is not lightly to be imposed upon potential antitrust litigants, or upon the judicial system.")

### 4.    The Cases Cited By Plaintiffs Are Distinguishable and Unavailing.

In their meet and confer communications, Plaintiffs have argued that "virtually all courts in this District hold that *AGC* poses no bar to indirect purchasers asserting state law antitrust claims for products containing price-fixed products."  *See* Ballard Decl. Ex. B, Feb. 21, 2014 Ltr. from Plaintiffs' Counsel at 1-2.  Plaintiffs' assertion far overstates their support and oversimplifies the relevant issues.  Indeed, the cases Plaintiffs cite in fact show that the *AGC* antitrust standing determination requires a case-specific analysis.  *See id.*  As described below, the allegations in the IPP-CAC differ in several dispositive respects from the cases relied upon by the Plaintiffs.  Indeed, Judge Hamilton's decisions in *DRAM*  make it clear that *AGC* standing is far from automatic in indirect purchaser cases  *DRAM I*, 516 F. Supp. 2d at 1088-95; *DRAM II*, 536 F. Supp. 2d at 1135-42.

In *CRT*, for example, the Court found *AGC* standing had been adequately pled because the plaintiffs alleged that the "market for CRTs and the market for CRT Products are . . . inextricably linked and cannot be considered separately."  *In re Cathode Ray Tube Antitrust Litig.*, 738 F. Supp. 2d 1011, 1023-24 (N.D. Cal. 2010).  This was because the allegedly price-fixed component—the cathode ray tube—was alleged to be the essential and largest component of every finished CRT product (*i.e.*, televisions or computer monitors), allegedly making it the predominant determinant of the price of such products because it "account[ed] for approximately sixty per cent of the cost of manufacturing" a CRT product.  *Id.*  Similar facts were alleged in *TFT-LCD*, where the allegedly price-fixed components—LCD panels—were also alleged to "make up 60-70% of the cost" of the finished products that they were integrated into, "such as TVs, computer monitors, and laptops."  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1123-24 (N.D.

-11-

1    Cal. 2008); *see also In re Flash Mem. Antitrust Litig.*, 643 F. Supp. 2d 1133, 1155 (N.D. Cal.

2    2009) (*AGC* directness factor satisfied in part because it was alleged that NAND Flash Memory

3    "makes up an overwhelming majority of the cost of NAND flash-based memory devices").

4           Here, by contrast, Plaintiffs have not alleged, and cannot allege, that the allegedly price-

5    fixed lithium ion battery cells make up 60-70%, much less an "overwhelming majority," of the

6    cost of the wide array of complex electronic products that Plaintiffs claim to have purchased—

7    *e.g.*, "laptop, notebook, netbook, and tablet computers (such as iPads), mobile telephones,

8    smartphones, digital audio players (such as iPods), power tools, digital cameras and

9    camcorders/digital video cameras . . . ."  IPP-CAC ¶¶ 1, 3.

10          The decision on *AGC* standing in *Flash Memory* is also inapposite.  There, the complaint

11   alleged that regardless of how NAND flash memory was purchased—"as a stand-alone item or

12   incorporated as a central component of finished products, such as digital music players, USB

13   drives, and so on"—it "provide[d] essentially the same functionality; that is, versatile, digital

14   storage that is *not* dependent on the presence of power to retain its memory."  *In re Flash Mem.*

15   *Antitrust Litig.*, 643 F. Supp. 2d at 1154.  Thus, the complaint alleged that the market for NAND

16   flash memory and the market for products containing NAND flash memory were "inextricably

17   intertwined and there is inherent cross-elasticity of demand between the two."  *Id.*  Here, by

18   contrast, there is no allegation that laptops, mobile telephones, and the various other types of

19   finished Lithium Ion Battery Products that Plaintiffs purchased "provide[] essentially the same

20   functionality" as the allegedly price-fixed raw cells (which would be nonsensical).

21          The facts alleged in *GPU* also do not support *AGC* standing here.  There, the court relied

22   on the allegations that "GPUs are separate components of a computer," and "in purchasing a

23   computer, consumers are allegedly told that it contains an ATI or Nvidia graphics card of a certain

24   type" "having certain speed and performance characteristics [which] can be a selling point to a

25   consumer."  *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1098 (N.D.

26   Cal. 2007).  By contrast, the IPP-CAC here alleges the exact opposite—that "Lithium Ion

27   Batteries are commodity-like products" that are manufactured "pursuant to standard

28   specifications."  IPP-CAC ¶ 254.  The *GPU* court also relied on the complaint allegation that "the

-12-

1    GPU is a separately-invoiced component of a finished computer," which "is severable from the

2    computer itself . . . ."  *In re GPU*, 540 F. Supp. 2d at 1098.  There is no similar allegation with

3    respect to lithium ion battery cells here.

4            In sum, the facts alleged here are vastly different from those in *CRT*, *LCD*,[8] *Flash*, and

5    *GPU*, and are far closer to those which led to dismissal on *AGC* grounds in *DRAM*.  *See DRAM I*,

6    516 F. Supp. 2d at 1088-95; *DRAM II*, 536 F. Supp. 2d at 1135-42.  Plaintiffs do not (and cannot)

7    allege that the battery cell is the essential and predominant component in the price and function of

8    the various complex electronic finished products which they allegedly purchased. It is simply not

9    factually plausible to allege that purchasing a laptop computer, for example, is the equivalent of

10   directly participating in the component market for lithium ion battery cells.

11           Plaintiffs' price-fixing claim against lithium ion battery cells is simply too far removed from

12   the manufacturing and distribution chain from the secondary markets for finished products like

13   laptop computers and cell phones for Plaintiffs' claims in those secondary product markets to meet

14   the *AGC* antitrust standing test.

15   **B.    PLAINTIFFS LACK CONSTITUTIONAL STANDING TO ASSERT CLAIMS ON**

16   **       BEHALF OF CLASSES OR SUBCLASSES OF WHICH NO NAMED PLAINTIFF**

17   **       IS A MEMBER.**

18           Plaintiffs lack constitutional standing to bring their Montana and Utah claims because no

19   named plaintiff is alleged to have purchased a lithium ion battery product in Montana or Utah

20   while a resident of those states.[9]  Similarly, because the only named governmental plaintiffs in the

21

22   [8]    In *ODD*, also relied on by Plaintiffs, the court did not conduct a detailed    examination of
             the plaintiffs' allegations with respect to standing.  Rather, the Court merely cited to

23           the "analysis in *In re TFT-LCD . . . .*"  *See In re Optical Disk Drive Antitrust Litig.*, No.
             3:10-md-2143 RS, 2011 WL 3894376, at *11-12 (N.D. Cal. Aug. 3, 2011).

24

25   [9]    During the meet and confer process, Plaintiffs relied on their allegations that one of the
             named plaintiffs, Sue Hiller, "is a former resident of Salt Lake City, Utah" and purchased a

26           lithium ion battery product in an unspecified location, as sufficient to establish standing for
             their Utah claim.  *See* Ballard Decl., ¶2, Ex. B (2/21/14 Letter) at 3 (citing IPP CAC,

27           ¶358).  For the reasons discussed below, however, these allegations are insufficient—
             Plaintiffs must allege that Ms. Hiller purchased a lithium ion battery product *in Utah*,

28           during the alleged class period, *while she was a resident of Utah*.  Merely being a former

                                                      -13-

1    IPP complaint—the San Francisco Community College District, the City of Palo Alto, and the

2    City of Richmond—are all located in California, Plaintiffs lack standing to bring claims on behalf

3    of all twenty-nine state-specific "subclasses" of governmental entities located outside of

4    California.

5            To have constitutional standing, a plaintiff must allege that it personally suffered an "actual

6    injury."  "This is no less true with respect to class actions than with respect to other suits," as

7    "named plaintiffs who represent a class must allege and show that they personally have been

8    injured, not that injury has been suffered by other, unidentified members of the class to which they

9    belong and which they purport to represent."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal

10   quotations omitted); *see also Schlesinger v. Reservists Comm. To Stop the War*, 418 U.S. 208, 216

11   (1974) ("To have standing to sue as a class representative it is essential that a plaintiff must be a

12   part of that class."); *Williams v. Boeing*, 517 F.3d 1120, 1127 (9th Cir. 2008) ("At least one *named*

13   plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf of

14   himself or the class.") (emphasis in original).

15           Accordingly, courts in this and other federal districts—including the courts in the *CRT*,

16   *LCD*, *GPU*, *Flash Memory*, and *DRAM* multi-district litigations in this District—have consistently

17   dismissed claims for lack of standing <u>*at the pleading stage*</u> under the laws of states where no

18   named plaintiff is alleged to have resided and purchased the relevant product.  *See, e.g.,* Ballard

19   Decl., ¶6, Ex. D (Report, Recommendations and Tentative Rulings Regarding Defendants' Joint

20   Motion to Dismiss, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-05944-SC, MDL

21   No. 1917 (N.D. Cal. Sept. 30, 2010)) (Special Master Ret. J. Legge) at 6 ("where, as here, separate

22   state classes are sought, there must be a plaintiff in each state who alleges purchase of the alleged

23   price-fixed product and harm from a violation of that state's laws"); *id.*, ¶7, Ex. E (Stipulation and

24   Order Modifying and Adopting Special Master's Report, *In re Cathode Ray Tube (CRT) Antitrust*

25   *Litig.*, No. 3:07-cv-05944-SC, MDL No. 1917 (N.D. Cal. Oct. 27, 2010) (adopting

26

27           resident of a state and making a purchase at an unspecified time and place are not enough
             to confer standing on Ms. Hiller to bring a Utah claim.

28

DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS IPPS'
CONSOLIDATED AMENDED COMPLAINT (PHASE II)

1  recommendation); *In re TFT-LCD Antitrust Litig.*, 586 F.Supp.2d 1109, 1125 (N.D. Cal. 2008) (J.

2  Illston) ("*LCD I*") ("In light of Judge Alsup's decision in *GPU,* plaintiffs agree to dismissal of

3  these claims and seek leave to amend to add a class representatives for these states."); *In re Flash*

4  *Memory Antitrust Litig.*, 643 F.Supp.2d 1133, 1163-1164 (N.D. Cal. 2009) (J. Armstrong)

5  ("Where, as here, a representative plaintiff is lacking for a particular state, all claims based on *that*

6  state's laws are subject to dismissal.") (emphasis in original); *In re Graphics Processing Units*

7  *Antitrust Litig.*, 527 F.Supp.2d 1011, 1026-1027 (N.D. Cal. 2007) (J. Alsup) ("*GPU I*") ("A class

8  cannot assert a claim on behalf of an individual that they cannot represent."); *In re Dynamic*

9  *Random Access Memory Antitrust Litig.*, 516 F.Supp.2d 1072, 1103-1104 (N.D. Cal. 2007) (J.

10  Hamilton) ("*DRAM I*") (dismissing claims where "[n]o named plaintiff is a resident of any of the

11  three states in question"); *In re Apple and AT&T Antitrust Litig.*, 596 F.Supp.2d 1288, 1309 (N.D.

12  Cal. 2008) (J. Ware) (dismissing claims for lack of standing "prior to class certification"); *In re*

13  *Ditropan XL Antitrust Litig.*, 529 F.Supp.2d 1098, 1107 (N.D. Cal. 2007) (J. White) (same).

14          These courts have emphasized that each putative class or subclass claim in a complaint

15  must be analyzed separately for standing purposes.  *See, e.g., GPU I*, 527 F.Supp.2d at 1026

16  ("Each claim under each state statute must be analyzed separately."); *Ditropan*, 529 F.Supp.2d at

17  1107 ("at least one named plaintiff must have standing with respect to each claim the class

18  representatives seek to bring").  Thus, for each claim asserted on behalf of a putative class or

19  "subclass" in the IPP complaint, the relevant inquiry is whether any of the existing named

20  plaintiffs are alleged to be a member of that class—that is, whether they reside in or claim to have

21  been injured in the relevant state .

22          The classes at issue on this motion are:  (1) Plaintiffs' alleged Montana Damages Class;[10]

23  (2) Plaintiffs' alleged Utah Damages Class, IPP CAC ¶ 411(z); and (3) twenty-nine of Plaintiffs'

24

25  _____

[10]     It is not entirely clear whether Plaintiffs intend to maintain claims under Montana law.
26      Montana is not included in the Plaintiffs' list of "State Damages Classes," IPP CAC, ¶¶
       401, 411, but later in the complaint Plaintiffs assert a claim for relief under Montana's
27      Unfair Trade Practices and Consumer Protection Act, and refer to an undefined "Montana
       Damages Class."  *See id.*, ¶ 479.

28

SMRH:418094820.10                           DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS IPPS'
                                            CONSOLIDATED AMENDED COMPLAINT (PHASE II)

1    thirty "State Governmental Damages Classes," consisting of subclasses of governmental

2    purchasers in states other than California. *See id.*, ¶¶ 402, 411. No existing named plaintiff is a

3    member of any of these classes. None of the named plaintiffs is alleged to reside in or to have

4    purchased lithium ion batteries in Montana or Utah during the alleged class period. And none of

5    the named governmental plaintiffs is alleged to reside in or to have purchased lithium ion batteries

6    in states outside California. Under U.S. Supreme Court and Ninth Circuit precedent, this is

7    dispositive of the standing inquiry.

8        Indeed, based on counsel's statements at the February 7, 2014 status hearing, it appears

9    that Plaintiffs may concede that they lack standing to assert these claims. *See* Ballard Decl., ¶5,

10   Ex. C (2/7/14 Transcript) at 20:10-13 ("The Court: So, does the law at least as decided require

11   that you have named plaintiffs from these states? Mr. Fastiff: That's the position we are taking

12   today, yes."). Nevertheless, Defendants anticipate that Plaintiffs will argue that the Court should

13   delay dismissing these claims until the class certification stage. This argument has been soundly

14   rejected in the Ninth Circuit, and should be rejected again here. *See Easter v. Am. West*, 381 F.3d

15   948, 962 (9th Cir. 2004).

16       In *Easter,* the Ninth Circuit underscored the principle that standing issues should be

17   resolved prior to class certification. *Id.* There, because none of the named plaintiffs had standing

18   to maintain claims against certain of the defendants, the Ninth Circuit explained that claims

19   against those defendants were properly dismissed prior to class certification—regardless of

20   whether the putative class, if certified, would have included members who had standing to

21   maintain such claims. *See id.*; *see also Ditropan*, 529 F.Supp.2d at 1107 (*Easter* explicitly rejects

22   deferral of standing issues until class certification); *Nelsen v. King County*, 895 F.2d 1248, 1249-

23   1250 (9th Cir. 1990) (standing "is a jurisdictional element that must be satisfied prior to class

24   certification."); *Meijer, Inc. v. Abbott Laboratories*, 2008 WL 4065839, at *4 (N.D. Cal. Aug. 27,

25   2008) ("'[I]t is well-settled that prior to the certification of a class . . . the district court must

26   determine that at least one named class representative has Article III standing to raise each class

27   []claim.'") (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1287-1288

28   (11th Cir. 2001)).

-16-

1    Despite this precedent, however, Defendants anticipate that—as other indirect purchaser

2    plaintiffs have done unsuccessfully before them—Plaintiffs will rely on the Supreme Court's

3    decision in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), to argue that consideration of state-

4    law standing issues should be deferred until class certification.  This argument should be rejected.

5    *Fibreboard*, along with its sister opinion *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997),

6    only addressed the ordering of standing and class certification determinations in a specific context

7    that is irrelevant here: namely,  a proposed global settlement class that included both current and

8    future claims.  In both cases, objectors to the settlement class argued that class members with only

9    future claims lacked standing.  The Supreme Court, while noting that "ordinarily" any "Article III

10   court must be sure of its own jurisdiction before getting to the merits," nonetheless declined to

11   reach issues of standing because the class certification issues were "dispositive" of the case.

12   *Amchem*, 521 U.S. at 612; *Fibreboard*, 527 U.S. at 831 (declining to certify the "sprawling"

13   proposed settlement class).

14    Accordingly, in *Easter* the Ninth Circuit expressly limited *Fibreboard* to its facts:

15       Although the court in *Fibreboard* examined class issues before the question of
         Article III standing, it did so in the very specific situation of a mandatory global
16       settlement class.  ***Fibreboard* does not require courts to consider class
         certification before standing**….[A] court must be sure of its own jurisdiction
17       before getting to the merits.

18   381 F.3d 948, 961-62 (emphasis added; internal citations and quotations omitted).

19    The district courts of the Ninth Circuit—again including the Northern District courts in

20   *CRT*, *LCD*, *GPU*, *Flash Memory*, and *DRAM*—have uniformly followed this authority by

21   dismissing putative class claims on motions to dismiss prior to the class certification stage.  *See,*

22   *e.g.,* Ballard Decl., ¶6, Ex. D (Report, Recommendations and Tentative Rulings Regarding

23   Defendants' Joint Motion to Dismiss, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-

24   05944-SC, MDL No. 1917 (N.D. Cal. Sept. 30, 2010)) at 6 ("the law in this circuit appears

25   consistent" that standing issues are resolved at the pleading stage); *LCD I*, 586 F.Supp.2d at 1124-

26   1125 (due to compelling local case law, plaintiffs stipulated to dismissal at pleading stage); *GPU*,

27   527 F.Supp.2d at 1026-1027 (*Fibreboard* only applies in context of certifying settlement class);

28   *Flash Memory*, 643 F.Supp.2d at 1163-1164; *DRAM I*, 516 F.Supp.2d at 1103-1104; *Ditropan*,

-17-

1   529 F.Supp.2d at 1107 (same); *Apple & AT&T*, 596 F.Supp.2d at 1309 (same); *see also* In re

2   *Potash Antitrust Litig.*, 667 F.Supp.2d 907, 922 (N.D. Ill. 2009) (refusing to apply *Fibreboard*

3   outside of settlement context; *Fibreboard* applies only where class certification issue would be

4   dispositive of litigation).

5          In the face of this authority, Plaintiffs indicated in a February 21, 2014 letter to Defendants

6   that they intend to rely on a handful of district court opinions from other Circuits in which the

7   court delayed resolution of standing issues until class certification.  *See* Ballard Decl., ¶2, Ex. B

8   (2/21/14 letter) at 3 (citing cases).  These cases are not controlling, however, and, at least as

9   interpreted by Plaintiffs, are directly contrary to the Ninth Circuit authority discussed above,

10  which expressly requires dismissal at the pleading stage where existing named plaintiffs lack

11  standing.  *Easter*, 381 F.3d at 962; *Boeing*, 517 F.3d at 1127 ("At least one *named* plaintiff must

12  satisfy the actual injury component of standing in order to seek relief on behalf of himself or the

13  class.") (emphasis in original).

14         Moreover, the cases relied upon by Plaintiffs are plainly distinguishable.  In each case the

15  defendants challenged an alleged single class of *nationwide* purchasers, not individually-defined

16  state-specific classes and subclasses.  In the former context, unlike here, the named plaintiffs were

17  technically members of the nationwide class at issue (because they allegedly made a purchase

18  somewhere in the United States).  Accordingly, the courts in those cases held that the named

19  plaintiffs' assertion of claims in states where they did not make purchases was more properly

20  analyzed as a class certification issue under concepts of typicality or commonality.  *See, e.g., In re*

21  *Bayer Corp. Comb. Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F.Supp.2d 356, 376-377

22  (E.D.N.Y. 2010) (because named plaintiff had standing as alleged member of nationwide class,

23  lack of injury in relevant states was properly treated as class certification issue); *Ramirez v. STI*

24  *Prepaid LLC*, 644 F.Supp.2d 496, 505 (D.N.J. 2009) (same).

25

26

27

28

DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS IPPS'
CONSOLIDATED AMENDED COMPLAINT (PHASE II)

1    By contrast, this motion does *not* challenge Plaintiffs' standing to assert claims on behalf

2   of their alleged "nationwide" classes.[11]  *See* IPP CAC, ¶¶ 398-400.  This motion challenges only

3   Plaintiffs' claims on behalf of separately defined Montana and Utah classes and twenty-nine

4   separately defined, state-specific governmental "subclasses"—and the named plaintiffs simply are

5   not members of *those classes*.  As explained above, this is a straightforward standing deficiency

6   that can and should be addressed and resolved on the pleadings.  *See* Ballard Decl., ¶6, Ex. D

7   (Report, Recommendations and Tentative Rulings Regarding Defendants' Joint Motion to

8   Dismiss, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-05944-SC, MDL No. 1917

9   (N.D. Cal. Sept. 30, 2010)) at 6 (plaintiffs' alleged nationwide class had no bearing on lack of

10   standing to assert claims on behalf of separately-defined state classes).

11    Of course, it is true that Plaintiffs' lack of a named plaintiff with standing would *also*

12   preclude certification of the classes at issue.  *See Rector v. City & County of Denver*, 348 F.3d

13   935, 949-950 (10th Cir. 2003) ("It should be obvious that there cannot be adequate typicality

14   between a class and a named representative unless the named representative has individual

15   standing to raise the legal claims of the class.").  But that is an additional defect, not a reason to

16   delay ruling on the standing issues now before the Court.  There are no intervening developments

17   that could imbue the existing named plaintiffs with standing to represent the alleged Montana or

18   Utah classes or the non-California governmental subclasses.  If Plaintiffs wish to amend their

19   complaint to add new named plaintiffs with standing to represent these classes, they must attempt

20   to do so now.

21    Finally, Plaintiffs may argue that the existing named *natural person consumer* plaintiffs

22   have standing to assert claims on behalf of *governmental* entities in the states where the named

23   consumer plaintiffs made purchases.  But this argument would lead to absurd results—implying,

24   for example, that a New York consumer who purchased a cell phone or laptop in a Syracuse retail

25   store somehow has standing to assert claims on behalf of governmental entities like the City of

---

[11]    While Defendants intend to move to strike Plaintiffs' "nationwide" class allegations at a
future date on both due process and choice of law grounds, the viability of those
allegations is irrelevant for purposes of this motion.

DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS IPPS'
CONSOLIDATED AMENDED COMPLAINT (PHASE II)

1    Schenectady and the New York City Police Department, along with myriad other non-federal and

2    non-state governmental purchasers in New York.  Plaintiffs already implicitly acknowledge that

3    consumers and governmental entities are differently situated and must be treated differently by

4    alleging separate subclasses of governmental purchasers.

5            Indeed, the absent governmental entities Plaintiffs now seek to represent by way of

6    subclasses are typically represented in suits brought by their respective State Attorneys General,

7    not private counsel.  *See, e.g.,* Ballard Decl., ¶7, Ex. F (New York AG Complaint in LCD) at ¶ 7

8    (bringing suit in LCD multi-district litigation on behalf of "New York public entities,

9    including…local governmental entities such as counties, cities, towns and villages, public schools,

10   the State University of New York and other state colleges, state hospitals, and public institutions

11   such as the New York Department of Correctional Services, the New York State Department of

12   Transportation, the Metropolitan Transit Authority, fire and police departments, and many other

13   entities throughout the State of New York"); *id.*, ¶8, Ex. G (page from New York Attorney

14   General website, available at http://www.ag.ny.gov/antitrust/antitrust-enforcement) ("The

15   Attorney General represents not only New York consumers but also New York State, and its

16   political units, such as cities, villages, towns, public schools and hospitals in lawsuits under the

17   federal and state antitrust laws."); *id.*, ¶9, Ex. H (California AG CRT Complaint) (bringing suit on

18   behalf of governmental entities in California).

19           Standing is an issue of law—indeed, a prerequisite to suit that speaks to the constitutional

20   power of a federal court to hear a case.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95

21   (1998).  The existing named plaintiffs do not have standing to assert Montana or Utah class claims

22   or the governmental class claims for any state other than California, and that is just as true today

23   as it would be at the class certification stage.  These claims should be dismissed now.

24   **C.     PLAINTIFFS' CLAIMS UNDER MONTANA AND MISSOURI LAW MUST BE**

25   **DISMISSED BECAUSE THOSE STATES APPLY THE *ILLINOIS BRICK* BAR ON**

26   **INDIRECT PURCHASER ACTIONS.**

27           In *Illinois Brick v. Illinois*, the U.S. Supreme Court held that indirect purchasers lack

28   standing to sue for damages under Section 4 of the federal Clayton Act.  432 U.S. 720 (1977).

1   Because Montana and Missouri courts both follow federal law when interpreting their state

2   antitrust statutes, Plaintiffs' claims under these state laws must be dismissed.[12]

3       **1.    Montana**

4       Plaintiffs assert a claim under Montana's Unfair Trade Practices and Consumer Protection

5   Act of 1970, Mont. Code Ann. §§ 30-14-103, *et seq.*  Plaintiffs lack standing to bring any claim

6   under Part 2 of that statute (Montana's unfair trade practices act, or "MUTPA").[13]  MUTPA's

7   private standing provision is substantively identical to the Clayton Act's standing provision, under

8   which federal courts have held indirect purchasers lack standing to bring suit for damages.

9   *Compare* Mont. Code Ann. § 30-14-222 *with* 15 U.S.C. § 15.  Montana has not legislatively or

10  judicially "repealed" the bar on indirect purchaser damage actions set forth in *Illinois Brick*.  On

11  the contrary, the Montana Supreme Court, observing that MUTPA was patterned largely after

12  federal antitrust law, has held that where the language of the Montana statute is similar to that of a

13  federal antitrust statute, courts must give "due weight to the federal courts' interpretation" of

14  antitrust laws.  *Smith v. Video Lottery Consultants, Inc.*, 858 P.2d 11, 13 (Mont. 1993) (affirming

15  the trial court's dismissal of state antitrust claims based on federal antitrust authority and the

16  similarity between MUTPA and Sherman Act); *see also Sadler v. Rexair Inc.*, 612 F. Supp. 491,

17  495 (D. Mont. 1985) (applying federal precedent in the absence of Montana case law interpreting

18  MUTPA, noting the "similar purposes" of MUTPA and Sherman Act).

19      Accordingly, federal courts within the Northern District of California—including courts

20  presiding over the *SRAM*, *LCD* and *CRT* cases—have repeatedly held that indirect purchasers lack

21  standing to bring claims under MUTPA.  *See, e.g., In re SRAM Antitrust Litig.*, 2010 WL 5094289

22  (N.D. Cal. Dec. 8, 2010) at *4 ("lawsuits by indirect purchasers [MUTPA] are barred by *Illinois*

23

---

24  [12]     As noted above, Plaintiffs have conceded that their claims under Puerto Rico, New
        Hampshire, and Utah are barred in whole or in part by *Illinois Brick* and have stipulated to
25      the dismissal of those claims with prejudice.  *See supra*, n. 1.

26

27  [13]     To the extent Plaintiffs seek to recover under Part 1 of the statute, Montana's Consumer
        Protection Act, that statute prohibits plaintiffs from bringing claims as a class action.
        *See* pp. 22-26, infra.

28

---

-21-

DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS IPPS'
                                                                CONSOLIDATED AMENDED COMPLAINT (PHASE II)

1   *Brick* …."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1187 (N.D. Cal.

2   2009) ("*LCD II*") (dismissing indirect purchasers' claims under MUTPA for lack of standing

3   because the Montana and federal standing provisions are "almost identically worded" and there is

4   no "relevant difference between the two statutes" or any contrary case law); Ballard Decl., ¶6, Ex.

5   D at 4-5 (Report, Recommendations and Tentative Rulings Regarding Defendants' Joint Motion to

6   Dismiss, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-05944-SC, MDL No. 1917

7   (N.D. Cal. Sept. 30, 2010)) (recommending dismissal with prejudice of indirect purchasers' claims

8   under MUTPA); *id.*, ¶7, Ex. E (Stipulation and Order Modifying and Adopting Special Master's

9   Report, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-05944-SC, MDL No. 1917

10  (N.D. Cal. Oct. 27, 2010)) (adopting recommendation).

11      ## 2.   **Missouri**

12      Missouri's antitrust statute similarly directs courts to interpret it consistent with federal

13  judicial interpretations of comparable federal antitrust statutes.  Mo. Rev. Stat. § 416.141.  As a

14  result, Missouri courts have relied on *Illinois Brick* to find that indirect purchasers may not sue for

15  damages under Missouri's antitrust law.  *See Duvall v. Silvers, Asher, Sher & McLaren, M.D.'s*,

16  998 S.W.2d 821, 825-27 (Mo. Ct. App. 1999) (affirming dismissal of claim under Missouri

17  antitrust statute).  In an effort to avoid Missouri's ban on indirect purchaser antitrust suits,

18  Plaintiffs bring their antitrust claim under Missouri's Merchandising Practices Act ("MMPA"),

19  Mo. Rev. Stat. §§ 407.010, *et. seq*.  However, both Missouri and federal district courts have held

20  that Missouri's ban on indirect purchaser antitrust suits extends to claims made under the MMPA.

21  *See Ireland v. Microsoft Corp.*, No. 00CV-201515, 2001 WL 1868946, at *1 (Mo. Cir. Jan. 24,

22  2001) (unpub.) (dismissing indirect purchaser plaintiffs' claim under the MMPA based on lack of

23  standing); *In re New Motor Vehicles Canadian Export Litig.*, 350 F. Supp. 2d 160, 192 (D. Me.

24  2004) (same) ("[P]laintiffs cannot avoid [Missouri's] antitrust prohibition on indirect purchaser

25  suits by making the same claim under Missouri's consumer protection statute.").

26      Defendants anticipate that Plaintiffs will rely on *Gibbons v. Nuckolls, Inc*., 216 S.W.3d 667

27  (Mo. 2007), in which the Missouri Supreme Court held that a plaintiff could sue an automobile

28  wholesaler for failing to disclose that a car had been in an accident, despite a lack of privity

-22-

DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS IPPS'
CONSOLIDATED AMENDED COMPLAINT (PHASE II)

between plaintiff and the wholesaler.  That case was not an antitrust case, and so did not address the impediment to Plaintiffs' claims here—Missouri's choice to limit the class of people who can sue for antitrust violations.  Plaintiffs' complaint alleges, at base, antitrust violations.  They may not sidestep the Missouri's limitations on such a claim by bringing the claim under the MMPA's "unlawful" prong.

**D.    MANY OF PLAINTIFFS' INDIVIDUAL STATE LAW CLAIMS HAVE ADDITIONAL DEFICIENCIES REQUIRING DISMISSAL.**

**1.    Plaintiffs' Claims Under Illinois, Montana and South Carolina Law Cannot Be Brought As Class Actions.**

Plaintiffs assert claims on behalf of a purported class of indirect purchasers under the Illinois Antitrust Act, 740 Ill. Comp. Stat. §§ 10/1, *et seq*.; Montana's Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code Ann. §§ 30-14-103, *et seq*.; and South Carolina's Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*   All three statutes, however, prohibit Plaintiffs from bringing their claims as class actions.[14]  As a result, federal and state courts alike have dismissed purported class action claims under these statutes.  *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig*., 738 F. Supp. 2d 227, 236 (D. Mass. 2010) (granting summary judgment to purported class action claims under South Carolina Unfair Trade Practices Act); *Dema v. Tenet Physician Servs.-Hilton Head, Inc*., 678 S.E.2d 430, 434 (S.C. 2009) ("SCUTPA claims may not be maintained in a class action law suit."); *DRAM*, 516 F. Supp. 2d 1072, 1104 (N.D. Cal. 2007) (dismissing purported indirect purchaser class actions under South Carolina and Montana statutes); *Gaebler v. N.M. Potash Corp*., 676 N.E.2d 228, 230 (Ill. App. Ct.

---

[14]      740 Ill. Comp. Stat. § 10/7(2) ("***no person shall be authorized to maintain a class action*** in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General ...."); Mont. Code Ann. § 30-14-133 (1)("A consumer who suffers any ascertainable loss of money or property... may bring an individual ***but not a class action*** ...."); S.C. Code Ann. § 39-5-140(a) ("Any person who suffers any ascertainable loss of money or property [as a result of an unlawful or deceptive act or practice] may bring an action individually, ***but not in a representative capacity***, to recover actual damages.") (all emphases added).

1  1996) (affirming dismissal of purported indirect purchaser class action claim under Illinois

2  Antitrust Act).

3  　　　　Defendants anticipate that Plaintiffs will argue that the Supreme Court's decision in *Shady*

4  *Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393  (2010), permits them to allege

5  class action claims on behalf of indirect purchasers under the Illinois, Montana and South Carolina

6  statutes.  The *Shady Grove* opinion does no such thing, as many federal courts have held.

7  　　　　In *Shady Grove*, the Supreme Court considered a New York statute that prohibited class

8  actions in suits seeking penalties.  The question was whether the New York statute precluded class

9  treatment in federal court, or whether Federal Rule of Civil Procedure 23 effectively preempted

10  New York's prohibition on such class actions.   559 U.S. at 398-399.   A majority of the Court

11  concluded that plaintiff's suit could proceed as a class action, but disagreed as to why.  A plurality

12  of the Court set out a categorical approach that turns on whether the federal rule at issue is

13  substantive or procedural.  Rule 23 is procedural, the plurality concluded, and therefore may be

14  applied "in all jurisdictions, with respect to all claims, regardless of its incidental effect upon state-

15  created rights."  *Id.* at 410 (Scalia, J., plurality).

16  　　　　This rationale, however, failed to command a majority of the Court, and is therefore not the

17  law.  "When a fragmented Court decides a case and no single rationale explaining the result enjoys

18  the assent of five Justices, the holding of the Court may be viewed as that position taken by those

19  Members who concurred in the judgments on the narrowest grounds."  *Smith v. Hedgpeth*, 706

20  F.3d 1099, 1105 (9th Cir. 2013) (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977))

21  (internal quotation marks omitted).  The holding in *Shady Grove* is provided by Justice Stevens's

22  separate, narrower concurring opinion, as many courts have recognized.  *See, e.g., Garman v.*

23  *Campbell Cnty. Sch. Dist. No. 1,* 630 F.3d 977, 983 n.6 (10th Cir. 2010) ("we look to Justice

24  Stevens' concurrence for guidance on this issue."); *Stalvey v. Am. Bank Holdings, Inc.*, 2013 WL

25  6019320, at *4 (D.S.C. Nov. 13, 2013) ("A majority of the courts considering the impact of the

26  case have concluded that Justice Stevens' opinion is controlling in view of the 'narrowest

27  grounds' principle."); *Phillips v. Philip Morris Companies Inc.*, 2013 WL 1182233, at *3 (N.D.

28  Ohio March 21, 2013) ("a clear majority of courts have applied Stevens's narrower holding as the

-24-

1   controlling opinion"; citing cases); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 660-

2   61 (E.D. Mich. 2011) (citing cases); *Tait v. BSH Home Appliances Corp.*, 2011 WL 1832941, at

3   *8 (C.D. Cal. May 21, 2011).

4          In his concurrence, Justice Stevens emphasized that determination of whether a federal rule

5   applies in a diversity action requires a case-by-case assessment of the state law that conflicts with

6   the federal rule.  Because the Rules Enabling Act requires that federal procedural rules "shall not

7   abridge, enlarge or modify any substantive right," 559 U.S. at 418 (Stevens, J., concurring)

8   (quoting 28 U.S.C. § 2072(b)), federal rules must be interpreted with some "sensitivity to

9   important state interests and regulatory policies."  *Id.*  Specifically, Justice Stevens held that "[a]

10  federal rule … cannot govern a particular case in which the rule would displace a state law that is

11  procedural in the ordinary use of the term but is so intertwined with the state right or remedy that

12  it functions to define the scope of the state-crated right."  *Id*. at 423.  Thus, whether a federal rule

13  of procedure displaces state law "turns on whether the state law is actually part of a State's

14  framework of substantive rights or remedies."  *Id*. at 419.  Justice Stevens found that the New

15  York statute at issue in *Shady Grove* was not "intertwined" with New York's definition of

16  substantive rights, because the rule was part of New York's procedural code, applicable to class

17  actions brought under any source of law.  *Id*. at 432-433.

18         The opposite is true of the state statutes at issue here.  These class-action bans are not

19  statutes of general application, but are restricted to the antitrust and consumer protection statutes

20  in which they are found.  Illinois' class-action ban is in the same subsection as, and immediately

21  follows, the statutory provision creating the right for indirect purchasers to sue for damages.  740

22  Ill. Comp. Stat. § 10/7(2).  The class-action bans found in the Montana and South Carolina statutes

23  are contained in the very same sentence that creates a private right of action.  Mont. Code Ann. §

24  30-14-133 (1); S.C. Code Ann. § 39-5-140(a).  These provisions are literally "intertwined with"

25  and "bound up in" the specific substantive rights provided by the statutes.  *Shady Grove*, 559 U.S.

26  at 423, 433 (Stevens, J., concurring).  They are part of the overall "framework of substantive rights

27  or remedies" created by Illinois, Montana and South Carolina.  *Id*. at 419.  Because class treatment

28

DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS IPPS'
                                        CONSOLIDATED AMENDED COMPLAINT (PHASE II)

1   would necessarily "enlarge … [the] substantive right[s]" of plaintiffs under Illinois, Montana and

2   South Carolina law, Rule 23 does not preempt these state provisions.  *Id.*

3        Since *Shady Grove* was decided, numerous federal courts have followed this same

4   reasoning and dismissed purported class-action claims under the Illinois, Montana and South

5   Carolina statutes.  *See, e.g.*, *Stalvey*, 2013 WL 6019320, at *4 (dismissing plaintiff's

6   representative claims under South Carolina Unfair Trade Practices Act); *In re Automotive Parts*

7   *Antitrust Litig.*, 2013 WL 2456612, at *22 (E.D. Mich. June 6, 2013) (dismissing indirect

8   purchasers' claims under Illinois Antitrust Act); *In re Packaged Ice*, 779 F. Supp. 2d at 661 n.4

9   (class action bar in Montana Consumer Protection Act is "sufficiently intertwined" with

10  substantive rights to survive *Shady Grove*) (internal quotations omitted);  *In re Wellbutrin XL*

11  *Antitrust Litig.*, 756 F. Supp. 2d 670, 675-677  (E.D. Pa. 2010) ("Because the indirect purchaser

12  restrictions of the IAA are 'intertwined' with the underlying substantive right, application of Rule

13  23 would 'abridge, enlarge or modify' Illinois' substantive rights, and therefore Illinois'

14  restrictions on indirect purchaser actions must be applied in federal court"); *In re Digital Music*

15  *Antitrust Litig.*, 812 F. Supp. 2d 390, 414-416 (S.D.N.Y. 2011); *see also In re MI Windows and*

16  *Doors, Inc. Prods. Liab. Litig.*, 2012 WL 5408563, at *5 & n.3 (D.S.C. Nov. 6, 2012) (South

17  Carolina's ban on class actions under the Unfair Trade Practices Act survives *Shady Grove*).

18  Other courts have addressed similar restrictions under Ohio and Tennessee law and have

19  concluded that the restrictions also survive *Shady Grove*.[15]  Accordingly, the Court should dismiss

20  Plaintiffs' class-action claims under the Illinois Antitrust Act, Montana Consumer Protection Act

21  and the South Carolina Unfair Trade Practices Act.

22        **2.    Plaintiffs Fail To Allege Required Conspiratorial Conduct In New Hampshire.**

23        New Hampshire's Consumer Protection Act makes it "unlawful for any person to use any

24  unfair method of competition or any unfair or deceptive act or practice *in the conduct of any trade*

25

---
26  [15]    *See, e.g.*, *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 745-47 (N.D. Ohio 2010);
        *Bearden v. Honeywell Int'l Inc.*, 2010 WL 3239285, at *10 (M.D. Tenn. Aug. 16, 2010);
27      *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 2010 WL 2756947, at
        *1-3 (N.D. Ohio July 12, 2010).
28

-26-

1   *or commerce within this state*."  N.H. R.S.A. 358-A:2 (emphasis added).  This plain language "has

2   been interpreted to mean that the statute only applies to offending conduct *that took place within*

3   *New Hampshire*."  *Environamics Corp. v. Ferguson Enterprises, Inc*., 2001 WL 1134727, at *4, 6

4   (D.N.H. Sept. 24, 2001) (emphasis added); *accord Precourt v. Fairbank Reconstruction Corp.*,

5   856 F.Supp.2d 327, 342-344 (D.N.H. 2012); *Mueller Co. v. U.S. Pipe & Foundry Co*., 2003 WL

6   22272135 (D. N.H. 2003) ("commercial conduct which affects the people of New Hampshire" is

7   actionable under the statute "only if it occurs within New Hampshire.").

8        In an antitrust case, this means that the plaintiff must allege that significant conspiratorial

9   conduct occurred in New Hampshire.  *See In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d

10  1133, 1159 (N.D. Cal. 2009) (J. Armstrong) (dismissing New Hampshire claim for lack of

11  allegations of intrastate conduct); *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL

12  1431756 at *17-18 (E.D. Mich. April 9, 2013) (distinguishing *In re New Motor Vehicles Canadian*

13  *Export Antitrust Litig.*, 350 F.Supp.2d 160, 194 (D.Me. 2004), in which alleged conspirators

14  resided in New Hampshire).  Mere allegations that a named indirect plaintiff resided in and made

15  affected purchases in the state—which is all Plaintiffs provide here, *see* IPP CAC, ¶ 344—are not

16  sufficient, because they do not speak to the locus of the defendants' alleged conduct.  *Refrigerant*

17  *Compressors*, 2013 WL 1431756 at *18; *Precourt*, 856 F.Supp. at 343-344.

18       Defendants anticipate that the Plaintiffs will rely in their opposition on *In re Chocolate*

19  *Confectionary Antitrust Litig.*, 749 F.Supp.2d 224, 234-35 (M.D. Pa. 2010), in which the court

20  found allegations "that defendants colluded to fix the price of chocolate products that were then

21  introduced into the New Hampshire market" sufficient at the pleading stage to avoid the

22  NHCPA's territorial limitation.  But this conclusion is impossible to square with the court's

23  acknowledgement that, as just discussed, the only relevant inquiry is the locus of "the offending

24  conduct itself rather than the locus of actual sales or the site of product manufacture."  *Id.* (internal

25  quotations omitted).  The mere allegation that affected products were sold in New Hampshire is

26  irrelevant.

27       The *Chocolate Confectionary* court—which ultimately dismissed all claims in the action,

28  including the New Hampshire claim, on other grounds— relied entirely on the New Hampshire

1   Supreme Court's opinion in *LaChance v. U.S. Smokeless Tobacco Co.*, 931 A.2d 571, 578 (N.H.

2   2007).  But subsequent courts, including Judge Armstrong in *Flash Memory*, have explained that

3   *LaChance* "merely states that 'indirect purchasers may bring claims under the CPA'"; it "does not

4   address the requirement that the offending conduct occur within the state."  *Flash Memory*, 643 F.

5   Supp. 2d at 1159 (internal quotations omitted); *Precourt*, 856 F.Supp. at 343 ("Because *LaChance*

6   involved offending conduct in New Hampshire, its holding about indirect purchasers has no

7   bearing on the issue in this case, which is the locus of the conduct on which Precourt's CPA claim

8   is based.").  Thus, the case does not excuse the Plaintiffs' failure to allege conspiratorial conduct

9   in New Hampshire.  The New Hampshire claim should be dismissed.

10          **3.        The Arkansas Deceptive Trade Practices Act Does Not Apply To Price-Fixing.**

11          Plaintiffs purport to state a claim under Arkansas' Deceptive Trade Practices Act (the

12   "ADTPA"), which prohibits certain enumerated "[d]eceptive and unconscionable trade practices,"

13   and "any other unconscionable, false, or deceptive act or practice in business, commerce, or

14   trade."  Ark. Code Ann. § 4-88-107(a).  Price-fixing is not among the "deceptive and

15   unconscionable" trade practices enumerated by the ADTPA, and no Arkansas court has attempted

16   to apply the statute in an antitrust context.  *See SRAM*, 2010 WL 5094289, at *8 ("The Court has

17   found no Arkansas case law indicating that the ADTPA reaches price-fixing conduct of the nature

18   presented in this lawsuit.").  Moreover, Arkansas courts have held that, to be "unconscionable"

19   within the meaning of the ADPTA catch-all provision, plaintiffs must plead and prove that

20   defendants exploited a "gross inequality of bargaining power."  *See, e.g., State v. R&A Inv. Co.*,

21   985 S.W.2d 299, 302 (Ark. 1999) ("Two important considerations [in evaluating alleged conduct

22   under the ADTPA] are whether there is a gross inequality of bargaining power between the parties

23   to the contract and whether the aggrieved party was made aware of and comprehended the

24   provision in question.").

25          Accordingly, courts within the Northern District of California have repeatedly dismissed

26   claims under ADPTA after concluding that price-fixing is "not the kind of conduct prohibited" by

27   the statute.  *See, e.g., In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011,

28   1029-30 (N.D. Cal. 2007) (dismissing ADTPA claim because the statute "requires something

1    more than merely alleging that the price of a product was unfairly high."); *In re TFT-LCD (Flat*

2    *Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1125 (N.D. Cal. 2008) (refusing to "expansively

3    interpret the statute" to apply to price-fixing); *SRAM*, 2010 WL 5094289, at *8 ("the Court

4    declines to extend the statute to permit indirect purchasers to sue manufacturers for a conspiracy to

5    fix prices"); Ballard Decl., ¶6, Ex. D at 3-4 (Report, Recommendations and Tentative Rulings

6    Regarding Defendants' Joint Motion to Dismiss, *In re Cathode Ray Tube (CRT) Antitrust Litig.*,

7    No. 3:07-cv-05944-SC, MDL No. 1917 (N.D. Cal. Sept. 30, 2010)) at 3-4; *id.*, ¶7, Ex. E

8    (Stipulation and Order Modifying and Adopting Special Master's Report, *In re Cathode Ray Tube*

9    *(CRT) Antitrust Litig.*, No. 3:07-cv-05944-SC, MDL No. 1917 (N.D. Cal. Oct. 27, 2010)).

10          Although some federal courts have broadly construed ADTPA's "unconscionable" prong

11   to encompass price-fixing activity, they have primarily relied on a dictionary definition of

12   "unconscionable," which ignores the context of the statute and the legal interpretation given to the

13   term by Arkansas courts.  *See, e.g., In re: Chocolate Confectionary Antitrust Litig.,* 602 F. Supp.

14   2d 538, 583 (M.D. Pa. 2009) (relying on Black's Law Dictionary and definition of

15   "unconscionable"; ultimately dismissing all claims, including the Arkansas claim, on other

16   grounds); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F.Supp.2d 160, 178

17   (D. Me. 2004) ("*NMV*") (same).[16]  These decisions are not persuasive, for several reasons.  First,

18   "unconscionable" is a term of art, describing an established legal principle within contract law.  In

19   1993, when the Arkansas Legislature added the "unconscionability" term to ADTPA, Arkansas

20   courts had consistently used the term to refer to contract relationships or unequal bargaining

21   power.  *See, e.g., Assoc. Press v. So. Ark. Radio Co.*, 809 S.W.2d 695, 696 n.1 (Ark. Ct. App.

22   1991) (Uniform Commercial Code's definition of "unconscionability" is frequently used to define

23

24   [16]      Other cases cited by Plaintiffs rely on the *Chocolate* and/or *NMV* opinions.  *See In re*
         *Automotive Parts Antitrust Litig.*, 2013 WL 2456612 at *25; *In re Flash Memory Antitrust*
25       *Litig.*, 643 F. Supp.2d 1133, 1157 (N.D. Cal. 2009).  Plaintiffs have cited *Fond Du Lac*
         *Bumper Exchange, Inc. v. Jui Li Enter. Co., Ltd.*, 2012 U.S. Dist. LEXIS 125677 (E.D.
26       Wisc. Sept. 5, 2012), but any reliance on that case would be misplaced.  That court relied
         on a definition of "unconscionable" that comes from an Arkansas trial court order, which
27       the Arkansas Supreme Court reversed.  *Id.* at *24 (quoting *Baptist Health v. Murphy*, 226
         S.W.3d 800 (Ark. 2006)).

28

DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS IPPS'
                              CONSOLIDATED AMENDED COMPLAINT (PHASE II)

（

1 the word as used in state code).   In the present case, there is no reason to depart from the

2 established use of "unconscionable" as a contract law term of art.   Indeed, the U.S. Supreme

3 Court has repeatedly instructed that statutory terms "with a settled meaning at common law" are to

4 be interpreted in accordance with that legal meaning, absent some evidence to the contrary.  *See,*

5 *e.g., Beck v. Prupis*, 529 U.S. 494, 500-501 (2000); *Sekhar v. United States*, 133 S.Ct. 2720, 2724

6 (2013) (a word "transplanted from another legal source…brings the old soil with it.") (internal

7 quotations omitted).

8        Second, the term "unconscionable" is used throughout the same title in the Arkansas Code

9 to refer to contractual relationships.  *See, e.g.*, Ark. Code Ann. § 4-2A-108; *Id*. § 4-90-512.  "A

10 term appearing in several places in a statutory text is generally read the same way each time it

11 appears."  *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994).

12        As described above, the term "unconscionable" consistently refers to contractual or

13 bargaining relationships in both the Arkansas statutory scheme and in Arkansas state courts'

14 interpretation of the term.  Accordingly, the *GPU*, *LCD*, *SRAM* and *CRT* courts all interpreted the

15 term consistent with its established meaning as a term of art from contract law, and correctly

16 concluded that it did not encompass price-fixing.  There is no reason to depart from that reasoning

17 here.  Plaintiffs' claim under the ADTPA should be dismissed.

18                                            **III.**

19                                     **<u>CONCLUSION</u>**

20        The foregoing issues of law should be decided now in Defendants' favor.  Specifically,

21 Defendants respectfully request that the following claims should be dismissed in their entirety:

22 (1) Plaintiffs' antitrust claims under the laws of Arizona, Arkansas, California, the District of

23 Columbia, Illinois, Kansas, Maine, Michigan, Mississippi, Missouri, Nebraska, Nevada, New

24 Hampshire, New Mexico, New York, North Dakota, Oregon, Tennessee, Vermont, West Virginia

25 and Wisconsin; (2) Plaintiffs' consumer protection or unfair trade claims under the laws of

26 Florida, Montana, New Hampshire, New York, South Carolina, Utah and Vermont; and

27 (3) Plaintiffs' claims on behalf of governmental subclasses in all states other than California.

28

1  Respectfully submitted:  March 7, 2014

2

3                                               By:  /s/ Michael W. Scarborough

4                                               Gary L. Halling
                                                James L. McGinnis
5                                               Michael W. Scarborough
                                                SHEPPARD MULLIN RICHTER &
6                                               HAMPTON
7                                               4 Embarcadero Center, 17th Floor
                                                San Francisco, CA 94111
8                                               ghalling@sheppardmullin.com
                                                jmcginnis@sheppardmullin.com
9                                               mscarborough@sheppardmullin.com
10                                              Telephone:  (415) 434-9100
                                                Facsimile:  (415) 434-3947
11
12                                              *Counsel for Samsung SDI Co., Ltd. and
                                                Samsung SDI America, Inc.*
13

14                                              By:  /s/ Robert B. Pringle

15                                              Robert B. Pringle (SBN: 051365)
                                                rpringle@winston.com
16                                              Paul R. Griffin (SBN: 083541)
                                                pgriffin@winston.com
17                                              Sean D. Meenan (SBN: 260466)
                                                smeenan@winston.com
18                                              WINSTON & STRAWN LLP
19                                              101 California Street, Suite 3900
                                                San Francisco, CA 94111-5802
20                                              Telephone: (415) 591-1000
                                                Facsimile: (415) 591-1400
21
22                                              *Counsel for NEC Corporation and
                                                NEC Tokin Corporation*
23

24                                              By:  /s/  Jeffrey L. Kessler

25                                              Jeffrey L. Kessler (*pro hac vice*)
                                                jkessler@winston.com
26                                              A. Paul Victor (*pro hac vice*)
                                                pvictor@winston.com
27                                              Eva W. Cole (*pro hac vice*)
                                                ewcole@winston.com
28

-31-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jeffrey J. Amato (*pro hac vice*)
jamato@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY  10166-4193
Telephone:  (212) 294-4601
Facsimile:  (212) 294-4700

Ian L. Papendick (SBN 275648)
ipapendick@winston.com
Diana L. Hughes (SBN267606)
dhughes@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111
Telephone:  (415) 591-6904
Facsimile:  (415) 591-1400

Roxann E. Henry (*pro hac vice*)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
rhenry@mofo.com
Telephone:  (202) 887-1500
Facsimile:   (202) 887-0763

*Counsel for Panasonic Corporation,*
*Panasonic Corporation of North America,*
*SANYO Electric Co., Ltd., and*
*SANYO North America Corporation*


By: */s/ John C. Dwyer*

Stephen C. Neal (170085)
John C. Dwyer (136533)
Bennett S. Miller (254368)
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 843-5000
Facsimile: (650) 857-0663

Beatriz Mejia (190948)
Scott D. Joiner (223313)
COOLEY LLP

-32-

101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Counsel for Sony Corporation,*
*Sony Energy Devices Corporation,*
*and Sony Electronics, Inc.*


By: */s/ Christopher M. Curran*

Christopher M. Curran (*pro hac vice*)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
ccurran@whitecase.com
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Counsel for Toshiba Corporation and*
*Toshiba America Electronic Components, Inc.*


By: */s/ Kenneth P. Ewing*

Kenneth P. Ewing (*pro hac vice*)
Robert W. Fleishman (*pro hac vice*)
Andrew J. Lee (*pro hac vice*)
Andrew J. Sloniewsky (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, D.C. 20036
kewing@steptoe.com
Telephone:  (202) 429-6264
Facsimile:  (202) 429-3902

*Counsel for LG Chem, Ltd.*
*and LG Chem America, Inc.*


By: */s/ Djordje Petkoski*

Douglas M. Garrou *(pro hac vice)*
Djordje Petkoski *(pro hac vice)*
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037
dgarrou@hunton.com
dpetkoski@hunton.com

-33-

DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS IPPS'
CONSOLIDATED AMENDED COMPLAINT (PHASE II)

Telephone: (202) 955-1500
Facsimile: (202) 778-2201

*Counsel for GS Yuasa Corporation*

By: */s/ Craig P. Seebald*

Craig P. Seebald (*pro hac vice*)
Lindsey R. Vaala (*pro hac vice*)
Hannah C. Wilson (*pro hac vice*)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, D.C.  20037
cseebald@velaw.com
lvaala@velaw.com
hwilson@velaw.com
Telephone:  (202) 639-6585
Facsimile:  (202) 879-8995

Matthew J. Jacobs (SBN 171149)
VINSON & ELKINS LLP
525 Market Street, Suite 2750
San Francisco, California 94105
mjacobs@velaw.com
Telephone: (415) 979-6990
Facsimile: (415) 651-8786

*Counsel for Maxell Corporation of America
and Hitachi Maxell, Ltd.*


**E-FILING ATTESTATION**

I, Michael W. Scarborough, am the ECF User whose ID and password are being used to
file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the
signatories identified above has concurred in this filing.

*/s/ Michael W. Scarborough*
Michael W. Scarborough