1   SHEPPARD MULLIN RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2       Including Professional Corporations
    GARY L. HALLING, Cal. Bar No. 66087
3   JAMES L. McGINNIS, Cal. Bar No. 95788
    MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
4   DYLAN I. BALLARD, Cal. Bar No. 253929
    Four Embarcadero Center, 17th Floor
5   San Francisco, California  94111-4106
    Telephone:     415-434-9100
6   Facsimile:     415-434-3947
    E-mail:        ghalling@sheppardmullin.com
7                  jmcginnis@sheppardmullin.com
                   mscarborough@sheppardmullin.com
8                  dballard@sheppardmullin.com

9   Attorneys for Defendants
    SAMSUNG SDI AMERICA, INC. and
10  SAMSUNG SDI CO., LTD.

11  *Additional Moving Defendants and Counsel Listed on Signature Pages*

12

13                      UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                          OAKLAND DIVISION

16

17  In re: LITHIUM ION BATTERIES        Case No. 13-MD-02420 YGR
18  ANTITRUST LITIGATION
                                        MDL No. 2420
19  _____
                                        **REPLY BRIEF IN SUPPORT OF**
20  This Document Relates to:           **DEFENDANTS' JOINT SUPPLEMENTAL**
                                        **MOTION TO DISMISS THE INDIRECT**
21      ALL INDIRECT PURCHASER          **PURCHASER PLAINTIFFS'**
        ACTIONS                         **CONSOLIDATED AMENDED**
22                                      **COMPLAINT (PHASE II)**

23                                      Date:      May 9, 2014
                                        Time:      9:30 a.m.
24                                      Judge:     Hon. Yvonne Gonzalez Rogers
                                        Location:  Courtroom 5
25

26

27

28

SMRH:422191443.5                        REPLY BRIEF I/S/O DEFS' SUPPLEMENTAL MOT. TO DISMISS IPPS'
                                          CONSOLIDATED AM. COMPLAINT (PHASE II)

# TABLE OF CONTENTS

**Page**

I.   ARGUMENT ....................................................................................................... 1

    A.   PLAINTIFFS LACK ANTITRUST STANDING IN *AGC* STATES
        BECAUSE THEY DID NOT PURCHASE PRODUCTS IN THE
        LITHIUM ION BATTERY CELLS COMPONENT MARKET. ........................... 1

        1.   Applying *AGC* Does Not Contravene *Illinois Brick* Repealer Laws
                Where State Courts Have Adopted *AGC* or Similar Antitrust
                Standing Principles................................................................................... 1

        2.   Once This Court Determines that *AGC* Principles Apply, It Must
                Rule That Plaintiffs Lack Antitrust Injury Because They Were Not
                Participants in the Allegedly Restrained Component Market For
                Lithium Ion Battery Cells......................................................................... 4

        3.   Plaintiffs Have Also Failed to Satisfy the Other *AGC* Factors .................... 9

    B.   THE COURT SHOULD DETERMINE NOW THAT PLAINTIFFS LACK
        CONSTITUTIONAL STANDING TO ASSERT THEIR MONTANA AND
        NON-CALIFORNIA GOVERNMENTAL SUBCLASS CLAIMS. ...................... 11

    C.   PLAINTIFFS' ARGUMENTS AGAINST APPLICATION OF *ILLINOIS
        BRICK* TO CERTAIN MONTANA AND MISSOURI CLAIMS ARE
        MERITLESS ................................................................................................. 15

        1.   Montana..................................................................................................... 15

        2.   Missouri.................................................................................................... 15

    D.   MANY OF PLAINTIFFS' INDIVIDUAL STATE LAW CLAIMS HAVE
        ADDITIONAL LEGAL DEFICIENCIES REQUIRING DISMISSAL. ................ 16

        1.   Supreme Court and Ninth Circuit Precedent Preclude Class-Action
                Claims Under Illinois, Montana and South Carolina Law. ......................... 16

        2.   Governing Authority Requires Conspiratorial Conduct In New
                Hampshire To State a Claim under New Hampshire Law. ......................... 19

        3.   Arkansas State Courts' Interpretation of Their Own State Law
                Trumps Any Dictionary Definition. .......................................................... 20

1

<u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

<u>Federal Cases</u>

4

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*
    2009 WL 9502003 (C.D. Cal. July 6, 2009) ....................................................... 3, 7

5

*Am. Ad Mgmt. v. Gen. Tel. Co.*
    190 F.3d 1051 (9th Cir. 1999).......................................................................... 5, 6, 7

6

7

*Am. Timber & Trading Co. v. First Nat'l Bank*
    690 F.2d 781 (9th Cir. 1982)................................................................................. 13

8

*Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*
    241 F.3d 696 (9th Cir. 2001)................................................................................ 5, 6

9

10

*Associated General Contractors of California v. California State Council of Carpenters*
    459 U.S. 519 (1983) ................................................................................................ 5

11

12

*In re Automotive Parts Antitrust Litig.*
    No. 12-md-02311, 2013 WL 2456612 (E.D. Mich. June 6, 2013) ........................ 19

13

*Bates v. UPS, Inc.*
    511 F.3d 974 (9th Cir. 2007) (en banc) ............................................................... 12

14

*Betts v. Reliable Collection Agency, Ltd.*
    659 F.2d 1000 (9th Cir. 1981)............................................................................... 14

15

16

*Bhan v. NME Hosps., Inc.*
    772 F.2d 1467 (9th Cir. 1985).................................................................................. 8

17

18

*BMW of N. Am., Inc. v. Gore*
    517 U.S. 599 (1996) .............................................................................................. 20

19

20

*Bradley v. Gen. Motors Corp.*
    512 F.2d 602 (6th Cir. 1975).................................................................................... 2

21

22

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
    738 F. Supp. 2d 1011 (N.D. Cal. 2010) ........................................................... 9, 10

23

*In re Chocolate Confectionary Antitrust Litig.*
    749 F. Supp. 2d 224 (M.D. Pa. 2010) .................................................................. 19

24

25

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*
    691 F.2d 1335 (9th Cir. 1982).................................................................................. 1

26

27

*In re Digital Music Antitrust Litig.*
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) ............................................................. 17, 18

28

-ii-

*Donovan v. Digital Equip. Corp.*
883 F. Supp. 775 (D.N.H. 1994) ............................................................. 4

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*
516 F. Supp. 2d 1072 (N.D. Cal. 2007) ................................................ 3, 6, 9, 10, 11

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*
536 F. Supp. 2d 1129 (N.D. Cal. 2008) ................................................ 5, 6, 7, 8

*Easter v. Am. West Fin.*
381 F.3d 948 (9th Cir. 2004) ................................................................. 12

*Fieger v. Pitney Bowes Credit Corp.*
251 F.3d 386 (2d Cir. 2001) ................................................................... 2

*In re Flash Memory Antitrust Litig.*
643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................................................ 7, 20

*In re Ford Tailgate Litig.*
No. 11-CV-2953-RS, 2014 U.S. Dist. LEXIS 32287 (N.D. Cal. March 12, 2014) ............... 19

*Freund v. Nycomed Amersham*
347 F.3d 752 (9th Cir. 2003) ................................................................. 17, 18

*In re Graphics Processing Units Antitrust Litig.*
540 F. Supp. 2d 1085 (N.D. Cal. 2007) ................................................ 3, 4, 8, 10

*In re Graphics Processing Units Antitrust Litig.*
527 F. Supp. 2d 1011 (N.D. Cal. 2007) ................................................ 4

*In re Graphics Processing Units Antitrust Litig.*
253 F.R.D. 478 (N.D. Cal. 2008) .......................................................... 11

*In re Hotel Tel. Charges*
500 F.2d 86 (9th Cir. 1974) ................................................................... 17

*In re Hydroxycut Mktg. and Sales Practices Litig.*
No. 09-md-2087, 2014 U.S. Dist. LEXIS 11750 (S.D. Cal. Jan. 27, 2014) ........................ 19

*JES Props., Inc. v. USA Equestrian, Inc.*
No. 802CV1585T24MAP, 2005 WL 1126665 (M.D. Fla. May 9, 2005) ............................... 4

*Knevelbaard Dairies v. Kraft Foods, Inc.*
232 F.3d 979 (9th Cir. 2000) ................................................................. 6

*Lee v. State of Oregon*
107 F.3d 1382 (9th Cir. 1997) ............................................................... 12

*Leonard v. Abbott Labs., Inc.*
No. 10-CV-4676, 2012 WL 764199 (E.D.N.Y. March 5, 2012) ....................................... 17

-iii-

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
    134 S. Ct. 1377 (2014) ............................................................................................ 2

*Lorenzo v. Qualcomm, Inc.*
    603 F. Supp. 2d 1291 (S.D. Cal. 2009) .......................................................... 7, 10

*Makaeff v. Trump Univ., LLC*
    736 F.3d 1180 (9th Cir. 2013) ............................................................................ 18

*Marks v. United States*
    430 U.S. 188 (1977) ............................................................................................ 16

*Meijer, Inc. v. Abbott Laboratories*
    2008 WL 4065839 (N.D. Cal. Aug. 27, 2008) .................................................... 12

*In re New Motor Vehicles Canadian Export Antitrust Litig.*
    241 F.R.D. 77 (D. Me. 2007) ............................................................................. 18

*In re Nexium (Esomeprazole) Antitrust Litig.*
    968 F. Supp. 2d 367 (D. Mass. 2013) ............................................................... 18

*In re Optical Disk Drive Antitrust Litig.*
    No. 3:10-cv-2143 RS, 2011 U.S. Dist. LEXIS 101763 (N. D. Cal. Aug. 3, 2011) ................... 3

*In re Optical Disk Drive Antitrust Litig.*
    No. 3:10-md-2143 RS, 2012 WL 1366718 (N.D. Cal. April 19, 2012) ................................ 19

*Orr v. Beamon*
    77 F. Supp. 2d 1208 (D. Kan. 1999) ..................................................................... 3

*Prado-Steiman v. Bush*
    221 F.3d 1266 (11th Cir. 2000) ............................................................................ 14

*Precourt v. Fairbank Reconstruction Corp.*
    856 F. Supp. 2d 327 (D.N.H. 2012) ..................................................................... 20

*In re Refrigerant Compressors Antitrust Litig.*
    No. 2:09-md-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) ......................... 7, 10, 20

*Ryman v. Sears, Roebuck & Co.*
    505 F.3d 993 (9th Cir. 2007) ................................................................................. 2

*Schlesinger v. Reservists Comm. To Stop the War*
    418 U.S. 208 (1974) ............................................................................................ 12

*Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*
    559 U.S. 393 (2010) ............................................................................... 16, 17, 18

*Stalvey v. Am. Bank Holdings, Inc.*
    No. 4:13-cv-714, 2013 WL 6019320 (D.S.C. Nov. 13, 2013) .................................... 18

-iv-

*Steel Co. v. Citizens for a Better Env't*
    523 U.S. 83 (1998) ............................................................................ 13

*Tait v. BSH Home Appliances Corp.*
    No. SACV 10-711, 2011 WL 1832941 (C.D. Cal. May 12, 2011).......................... 17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
    586 F. Supp. 2d 1109 (N. D. Cal. 2008) ...................................................... 3, 9, 10

*United Bhd. of Carpenters & Joiners of Am. Local 586 v. Nat'l Labor Relations Bd.*
    540 F.3d 957 (9th Cir. 2008)............................................................................. 15

*Warth v. Seldin*
    422 U.S. 490 (1975) ........................................................................................ 13

*In re Wellbutrin XL Antitrust Litig.*
    756 F. Supp. 2d 670 (E.D. Pa. 2010) ............................................................ 17, 18

<u>State Cases</u>

*Beckler v. Visa U.S.A., Inc.*
    No. 09-04-C-00030, 2004 WL 2475100 (N.D. Dist. Ct. Sept. 21, 2004) ................................ 1

*Clayworth v. Pfizer, Inc.*
    49 Cal. 4th 758 (2010)...................................................................................... 2

*Cnty. of Cook v. Philip Morris, Inc.*
    817 N.E.2d 1039 (Ill. Ct. App. 2004)................................................................ 3

*Fucile v. Visa U.S.A. Inc.*
    No. S1560-03, 2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004) .................................... 1, 11

*Kanne v. Visa U.S.A., Inc.*
    723 N.W.2d 293 (Neb. 2006) ...................................................................... 1, 2, 11

*Knowles v. Visa U.S.A.,Inc.*
    No. Civ.A. CV-03-707, 2004 WL 2475284 (Me. Super. Ct. Oct. 20, 2004) ..................... 1, 11

*LaChance v. U.S. Smokeless Tobacco Co.*
    931 A.2d 571 (N.H. 2007)............................................................................... 19

*Nass-Romero v. Visa U.S.A., Inc.*
    279 P.3d 772 (N.M. Ct. App. 2012) ............................................................... 1, 2

*Owens Corning v. R.J. Reynolds Tobacco Co.*
    868 So.2d 331 (Miss. 2004) ........................................................................... 2, 3

*Peterson v. Visa U.S.A. Inc.*
    No. 03-8080, 2005 WL 1403761 (D.C. Super. Apr. 22, 2005)................................. 3

*Princeton Ins. Agency, Inc. v. Erie Ins. Co.*
    225 W.Va. 178 (2009).................................................................................................. 2

*Romero v. Philip Morris, Inc.*
    148 N.M. 713 (2010)............................................................................................... 2, 3

*Santa Monica Rent Control Bd. v. Bluvshtein*
    230 Cal. App. 3d 308 (Cal. Ct. App. 1991)............................................................ 14

*Smith v. Ill. Cent. R.R. Co.*
    860 N.E.2d 332 (Ill. 2006) ..................................................................................... 19

*Smith v. Video Lottery Consultants, Inc.*
    858 P.2d 11 (Mont. 1993) ...................................................................................... 15

*Stark v. Visa U.S.A., Inc.*
    No. 03-055030-CZ, 2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004) .................. 1

*State ex rel. Bryant v. R & A Inv. Co.*
    985 S.W.2d 299 (Ark. 1999) .................................................................................. 20

*Strang v. Visa U.S.A., Inc.*
    No. 03 CV 011323, 2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005) ..................... 10

*Wrobel v. Avery Dennison Corp.*
    No. 05-cv-1296, 2006 WL 7130617 (Kan. Dist. Ct. Feb. 1, 2006)......................... 1

<u>Federal Statutes, Rules, Regulations, Constitutional Provisions</u>

D.N.H. Civ. L.R. 5.3(b)....................................................................................................... 20

N.D. Cal. Civ. L.R. 3-4(e) .................................................................................................. 20

<u>State Statutes, Rules, Regulations, Constitutional Provisions</u>

740 Ill. Comp. Stat. § 10/7(2) ............................................................................................ 16

Cal. Bus. & Prof. Code § 17201 ........................................................................................ 14

Mont. Code Ann. §§ 30-14-102(1)...................................................................................... 14

Mont. Code Ann. § 30-14-103 ............................................................................................ 15

Mont. Code Ann. § 30-14-133(1)................................................................................... 14, 16

Nev. Rev. Stat. 598A.050 ..................................................................................................... 4

Or. Rev. Stat. § 646.715 ....................................................................................................... 4

S.C. Code Ann. § 39-5-140(a) ............................................................................................ 16

# I.  ARGUMENT

**A.  PLAINTIFFS LACK ANTITRUST STANDING IN *AGC* STATES BECAUSE THEY DID NOT PURCHASE PRODUCTS IN THE LITHIUM ION BATTERY CELLS COMPONENT MARKET.**

**1.  Applying *AGC* Does Not Contravene *Illinois Brick* Repealer Laws Where State Courts Have Adopted *AGC* or Similar Antitrust Standing Principles.**

Unequivocal case law establishes that state courts, interpreting their own laws, have applied *AGC* or analogous antitrust injury doctrines to sixteen of the antitrust laws and three of the consumer protection laws invoked by the IPPs here.  Mot. at 4-5 & nn.4, 6.  Plaintiffs attempt to evade this state-law precedent by contending—with no citation to authority—that applying their principles would contradict the "legislative intent behind *Illinois Brick* repealer statutes."  Opp'n at 3-4.  There simply is no basis to ask this Court to disregard controlling state law.

State courts are fully capable of determining the scope and requirements of their own antitrust laws, and those courts have found that *AGC* or analogous principles apply to the nineteen laws at issue.  Moreover, those courts have already found there is no inconsistency in applying *AGC*'s antitrust standing requirements to injuries claimed by indirect purchasers.  *See, e.g.*, *Wrobel v. Avery Dennison Corp.*, No. 05-cv-1296, 2006 WL 7130617, at *2-4 (Kan. Dist. Ct. Feb. 1, 2006) (rejecting the argument that that "applying *AGC* in a jurisdiction that recognizes indirect purchaser suits could effectively negate the legislative or judicial rejection of *Illinois Brick*") (citing *McCarthy v. Recordex Serv.*, 80 F.3d 842, 851 (3d Cir. 1996));[1] *see also In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1340 n.6 (9th Cir. 1982) (*Illinois Brick* is "analytically distinct" from antitrust injury analysis).  These rulings are dispositive and not subject to challenge by Plaintiffs in a federal court, which is required to defer

---

[1] *Knowles v. Visa U.S.A.,Inc.*, No. Civ.A. CV-03-707, 2004 WL 2475284, at *3-4 (Me. Super. Ct. Oct. 20, 2004) (same); *Stark v. Visa U.S.A., Inc.*, No. 03-055030-CZ, 2004 WL 1879003, at *4 (Mich. Cir. Ct. July 23, 2004) (same); *Beckler v. Visa U.S.A., Inc.*, No. 09-04-C-00030, 2004 WL 2475100, at *4 (N.D. Dist. Ct. Sept. 21, 2004) (same); *Kanne v. Visa U.S.A., Inc.*, 723 N.W.2d 293, 298-301 (Neb. 2006) (same); *Nass-Romero v. Visa U.S.A., Inc.*, 279 P.3d 772, 781 (N.M. Ct. App. 2012) (same); *Fucile v. Visa U.S.A. Inc.*, No. S1560-03, 2004 WL 3030037, at *2 (Vt. Super. Ct. Dec. 27, 2004) (same).  Plaintiffs' argument that "the Minnesota and Missouri Supreme Courts have held that *AGC* does *not* apply to claims brought under those states laws" is of no relevance, because Defendants do not contend that *AGC* applies to those laws.  Opp'n at 4-5; *see* Mot. at 4 n.4.

1  to state court rulings in this circumstance.[2]

2  Plaintiffs suggest that these state law precedents are not sufficiently "a clear directive" to

3  apply *AGC*, Opp'n at 2-3, but do not cite any contrary state authority considering whether to apply

4  *AGC* and holding it inapplicable.  *Id.* at 4 & n.4.  Defendants have cited decisions from the highest

5  courts of five states that establish the applicability of *AGC* or analogous federal antitrust standing

6  doctrine to those states' laws.[3]  Further, where state legislatures or the states' highest courts have

7  not yet spoken on a state law issue, the Ninth Circuit has held that, in determining the substance of

8  state law, district courts "must follow the state intermediate appellate court decision unless the

9  federal court finds convincing evidence that the state's supreme court likely would not follow it."

10  *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007).  This principle covers another

11  three *AGC* states.  *See* Mot. at 4 n.4 (citing decisions from Illinois, New York, and Tennessee).

12  For the other state laws at issue on this motion, this Court must consider how state trial

13  courts have decided the issue.  *See, e.g.*, *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 399

14  (2d Cir. 2001) ("In predicting how a state's highest court would rule on an issue, it is helpful to

15  consider the decisions of the state's trial and appellate courts."); *Bradley v. Gen. Motors Corp.*,

16  512 F.2d 602, 605 (6th Cir. 1975) ("[T]his court may give weight to the decision of a trial court in

17

---

18  [2] Plaintiffs try to latch on to a recent Supreme Court opinion that characterized the *AGC* standing analysis under the Lanham Act as "statutory" and not "prudential."  *Lexmark Int'l, Inc. v. Static

19  Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014).  Defendants' motion, however, is not based on "prudential" arguments, but on settled state court authority applying antitrust standing

20  analysis to indirect purchaser claims under their own state laws.  Plaintiffs' argument that *AGC* should not apply to indirect purchaser claims because "*AGC* came down <u>after</u> *Illinois Brick*"

21  makes no sense, as many states that allow indirect purchaser actions have also held that *AGC* applies.  *See* Opp'n at 2 (underline added).

22

23  [3] *See Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 774 (2010) (citing *AGC* and observing that "to have an antitrust claim one must establish a causal nexus between one's injury and the alleged

24  unlawful restraint of trade"); *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So.2d 331, 343-44 (Miss. 2004) (applying federal antitrust injury principles to Mississippi antitrust claim); *Kanne*,

25  723 N.W.2d at 298-301; *Romero v. Philip Morris, Inc.*, 148 N.M. 713, 724 (2010) ("It is . . . the duty of the courts to ensure that New Mexico antitrust law does not deviate substantially from

26  federal interpretations of antitrust law"); *Nass-Romero*, 279 P.3d at 778-81 (applying *AGC* following instruction of N.M. Supreme Court in *Romero*, 148 N.M. at 724); *Princeton Ins.*

27  *Agency, Inc. v. Erie Ins. Co.*, 225 W.Va. 178, 184-85, 189-90 (2009) (applying federal antitrust injury principles and observing that a plaintiff must allege "that it was injured as a proximate

28  result" of "anticompetitive effects within the relevant … markets").

---

1    determining what is the controlling law of Tennessee").[4]  Thus, all nineteen state laws at issue are

2    governed by *AGC* or analogous principles.  *See* Mot. at 4-5 & nn. 4, 6.

3         Plaintiffs only offer citations to: (i) inapposite state statutes that generally allow suits by

4    indirect purchasers, but which (as discussed above) are not inconsistent with also applying *AGC*

5    principles; and (ii) individual cases that do not apply *AGC* under the specific facts of those cases

6    (but which do not hold the doctrine to be generally inapplicable).[5]

7         Nor is it correct, as Plaintiffs contend, that "Judges Illston, Alsup, and Seeborg, have

8    considered and rejected the applicability of *AGC*" under "[a]ll of the state laws under which

9    Plaintiffs bring their claims . . . ."  Opp'n at 3.  None of the cited decisions found that *AGC* did not

10   apply to any of the state laws before them.  They instead reviewed the particular complaints at

11   issue and found that, based on the specific facts pleaded, *AGC* would be satisfied at the pleading

12   stage.[6]  Such fact-specific rulings provide no guidance on the issue of whether *AGC* applies to the

13   laws of a particular state.

14        For example, *GPU*, cited by Plaintiffs, is inapposite because Defendants are not asking the

---

15   [4] *See also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072,
16   1094 (N.D. Cal. 2007) ("*DRAM I*"); *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 2009
     WL 9502003, at *4 (C.D. Cal. July 6, 2009) (tentative ruling *adopted sub nom Sahagian v.*
17   *Genera Corp.*, 2009 WL 7185616, at *1 (C.D. Cal. July 7, 2009)).

18   [5] In fact, Plaintiffs cite at least five cases that actually *support* applying *AGC* in the states at
     issue:  *Orr v. Beamon*, 77 F. Supp. 2d 1208, 1211-12 (D. Kan. 1999) (analyzing standing under
19   federal and Kansas state antitrust statutes together because federal case law is "sufficiently
     persuasive to guide its decision with regard to standing under Kansas law."); *Peterson v. Visa*
20   *U.S.A. Inc.*, No. 03-8080, 2005 WL 1403761, at *4-9 (D.C. Super. Apr. 22, 2005) ("[Plaintiff]
     lacks standing … because of the following *Associated General Contractors* factors: (1) his claims
21   are remote and speculative; (2) more direct victims exist to enforce the antitrust laws; and (3) he
     has not shown that his harm is the type for which the antitrust laws provide redress"); *Cnty. of*
22   *Cook v. Philip Morris, Inc.*, 817 N.E.2d 1039, 1045-48 (Ill. Ct. App. 2004) (quoting and citing
     *AGC* favorably and dismissing state claims under "remoteness doctrine"); *Romero*, 148 N.M. at
23   724 (discussed *supra*, n.3); *Owens Corning*, 868 So. 2d at 343-44 (discussed *supra*, n.3).
     Plaintiffs also cite to a few federal decisions that declined to decide whether *AGC* applied to the
24   states at issue.  *See* Opp'n at 4 n.4.  These cases provide no guidance for the Court here on the
     *AGC* issue, which is a matter of individual state law.
25

26   [6] *See In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*LCD*"), 586 F. Supp. 2d 1109, 1122 (N. D.
     Cal. 2008); *In re Graphics Processing Units Antitrust Litig.* ("*GPU II*"), 540 F. Supp. 2d 1085,
27   1097-98 (N. D. Cal. 2007); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-cv-2143 RS, 2011
     U.S. Dist. LEXIS 101763, at *46 (N. D. Cal. Aug. 3, 2011).
28

---

-3-

1  Court here to "pronounce a blanket and nationwide revision of all state antitrust laws." Opp'n at 3

2  (quoting *In re Graphic Processing Units Antitrust Litig.* ("*GPU I*"), 527 F. Supp. 2d 1011, 1026

3  (N.D. Cal. 2007)). Rather, as *GPU* recognized, "[s]tanding under each state's antitrust statute is a

4  matter of that state's law"—which is exactly Defendants' position here. *Id.* Indeed, in a later

5  *GPU* order, Judge Alsup found that *AGC* was applicable to a number of state laws, but declined to

6  consider which specific states would be governed by *AGC* principles because he also found, based

7  on the specific facts alleged in that case (and unlike here), that *AGC* standing would be satisfied by

8  the facts that were pleaded. *GPU II*, 540 F. Supp. 2d at 1097-98. A fact-specific ruling like this

9  has no bearing on the pure legal issue of whether the *AGC* doctrine applies under the laws of a

10 particular state.

11      Finally, while Plaintiffs assert that *AGC* should not be applied to the laws of three states

12 that have federal antitrust law harmonization provisions (Opp'n at 5), Defendants have cited to

13 federal court decisions—including a controlling Ninth Circuit opinion (addressing Oregon

14 antitrust law)—that have already held that federal antitrust standing requirements apply to these

15 three states. *See* Mot. at 4-5 & n.5.[7] Plaintiffs cite no contrary authority or offer any persuasive

16 rationale why these precedents should not be followed.

17          **2.**      **Once This Court Determines that *AGC* Principles Apply, It Must Rule That**
                         **Plaintiffs Lack Antitrust Injury Because They Were Not Participants in the**
18                       **Allegedly Restrained Component Market For Lithium Ion Battery Cells.**

19      In states where *AGC* principles apply, it cannot be seriously contested that Plaintiffs must

20 _____

21 [7] The case Plaintiffs cite to argue that "harmonization clauses do not require consistency" between
   state and federal law was not addressing the Nevada, New Hampshire, or Oregon statutes—two of
22 which *do* require consistency with federal law. *See* Nev. Rev. Stat. 598A.050 ("[T]his chapter
   *shall be construed in harmony* with prevailing judicial interpretations of the federal antitrust
23 statutes") (emphasis added); Or. Rev. Stat. § 646.715 ("The decisions of federal courts in
   construction of federal law relating to the same subject *shall be persuasive authority*") (emphasis
24 added); *see also* Opp'n at 5 (citing *D.R. Ward Constr. Co. v. Rohm and Haas Co.*, 470 F. Supp. 2d
   485, 498-501 (E.D. Pa. 2006)). As for New Hampshire, the federal district court in that state has
25 held that federal antitrust standing requirements do apply based on New Hampshire state court
   authority. *See Donovan v. Digital Equip. Corp.*, 883 F. Supp. 775, 785-87 (D.N.H. 1994).
26 Similarly, a Florida federal court has held that federal antitrust standing principles apply to claims
   under the Florida consumer protection statute. *JES Props., Inc. v. USA Equestrian, Inc.*, No.
27 802CV1585T24MAP, 2005 WL 1126665, at *19 (M.D. Fla. May 9, 2005).

28

-4-

1   allege that that they "were 'participants' in the relevant market" to demonstrate that they have

2   suffered antitrust injury.  *See* Mot. at 6-8; Opp'n at 6-7.  Indeed, failure to allege antitrust injury is,

3   by itself, an "independent ground" for dismissal.  Mot. at 3 (quoting *Ass'n of Wash. Pub. Hosp.*

4   *Dists. v. Philip Morris Inc.*, 241 F.3d 696, 704 (9th Cir. 2001)).  Plaintiffs contend that the *AGC*

5   market participation requirement "must be balanced along with the other factors," Opp'n at 6 &

6   n.6, but the Ninth Circuit actually held in *American Ad Management* that "[a] showing of antitrust

7   injury *is necessary, but not always sufficient*, to establish standing . . . ."  *Am. Ad Mgmt. v. Gen.*

8   *Tel. Co.*, 190 F.3d 1051, 1055 (9th Cir. 1999) (quoting *Cargill, Inc. v. Monfort of Colo., Inc.*, 479

9   U.S. 104, 110 n.5 (1986)) (emphasis added).  Thus, failure to allege participation in the relevant

10  market is failure to allege a "necessary" requirement of antitrust standing, regardless of the other

11  *AGC* factors.  *Id.*; *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp.

12  2d 1129, 1136, 1141 (N.D. Cal. 2008) ("*DRAM II*").

13      As the Court knows, some cases in this district have found *AGC* satisfied by specific facts

14  alleged at the pleading stage, while other cases have reached the opposite conclusion.  Defendants

15  reviewed these cases in their moving brief and demonstrated why, based on the facts alleged by

16  Plaintiffs here, the pleadings are insufficient under the *AGC* test.  *See* Mot. at 6-8, 11-13.  In

17  particular, Plaintiffs' allegations are very similar to the facts alleged in *DRAM*, which resulted in

18  two thoroughly reasoned decisions by Judge Hamilton finding that *AGC* was not satisfied.  *Id.* at

19  6-8.

20      Indeed, Plaintiffs do not even attempt to distinguish this case from *DRAM*.  *See* Opp'n at

21  9-10.  Instead, Plaintiffs try to discredit Judge Hamilton's decisions, arguing that "*DRAM II* is not

22  the majority rule," that "*DRAM II* was never fully resolved" because the case settled while on

23  appeal, and that the decision improperly "gave substantial weight to the market participation factor

24  under *AGC* . . . ."  *Id.*  None of these arguments has any merit.  First, there can be no "majority

25  rule" for whether *AGC* has been satisfied by a particular complaint, because, as the Supreme Court

26  has held, each case must be evaluated under its "specific circumstances."  *AGC*, 459 U.S. at 537.

27  That is precisely what the judges in this district, including Judge Hamilton in *DRAM*, have done.

28  Mot. at 6-8, 11-13.  Second, there is no basis to disregard Judge Hamilton's well-reasoned

-5-

REPLY BRIEF I/S/O DEFS' SUPPLEMENTAL MOT. TO DISMISS IPPS'
CONSOLIDATED AM. COMPLAINT (PHASE II)

1  decision, applying *AGC* to very similar factual allegations to those presented here, merely because

2  it was never reviewed by the Court of Appeals.  If this were the case, all of the decisions that

3  Plaintiffs cite would also need to be disregarded because they too were never reviewed on appeal.

4  Third, a dismissal solely for failure to allege market participation facts establishing antitrust injury

5  is entirely proper—and, indeed, required—because the Ninth Circuit has held, as noted above, that

6  "antitrust injury is necessary … to establish standing" and thus is an "independent ground" for

7  dismissal.  *Am. Ad. Mgmt.*, 190 F.3d at 1055; *Ass'n of Wash. Pub. Hosp. Dists.*, 241 F.3d at 704.

8       The alleged conspiracy here was in the component market for "raw cells," which Plaintiffs

9  allege that they did not and cannot purchase, because "manufacturers . . . do not sell individual

10  cells" to consumers such as Plaintiffs.  Mot. at 7-8; IPP-CAC ¶¶ 29-30, 187; *see also* IPP-CSAC

11  ¶¶ 30-31, 261.[8]  Instead, Plaintiffs allege participation in the "consumer market" for "consumer

12  products or standalone products, for example, replacement batteries."[9]  Order re: Motions to

13  Dismiss, ECF No. 361, at 4; Mot. at 7-8; IPP-CAC ¶¶ 29-30, 242; *see also* IPP-CSAC ¶¶ 30-31,

14  322.  These allegations mirror the allegations in *DRAM*, where Judge Hamilton twice determined

15  that antitrust injury and standing were lacking because "plaintiffs who are purchasing products in

16  which DRAM is a component, rather than DRAM itself, are participating in a secondary market

17  that is incidental to the primary price-fixed market (i.e., the market for DRAM modules

18  themselves)."  *DRAM I*, 516 F. Supp. 2d at 1089-91; *see also DRAM II*, 536 F. Supp. 2d at 1135-

19  42; Mot. at 7-8.  Given the substantively identical operative market participation facts, Plaintiffs

20  similarly lack antitrust standing in all applicable *AGC* states.

21       In response, Plaintiffs advance a few erroneous legal propositions, none of which save

22

---

23  [8] Defendants were instructed by the Court to file their Phase II motion to dismiss before Plaintiffs
    filed the IPPs' Consolidated Second Amended Complaint, ECF No. 408 ("IPP-CSAC").  For
24  consistency with their opening brief, Defendants cite the IPP-CAC, which Plaintiffs represented at
    the February 7, 2014 hearing would be substantively identical in the Consolidated Second
25  Amended Complaint, along with parallel citations to the IPP-CSAC, where applicable.

26  [9] Plaintiffs' reliance on the facts alleged in *Knevelbaard Dairies* is misplaced, because there the
    plaintiffs alleged that they "sold milk directly or indirectly to one or more of the defendants"—*i.e.*,
27  both the plaintiffs and defendants participated in the market for milk.  Opp'n at 7; *Knevelbaard
    Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000).
28

1    their claims from dismissal under the state laws where *AGC* governs:

2    •    "[H]arm to consumers in the form of supra-competitive prices flowing from

3    *Defendants' collusion" gives rise to antitrust injury.  Opp'n at 7.* This argument lacks merit

4    because "[p]arties whose injuries, though flowing from that which makes the defendant's conduct

5    unlawful, are experienced in another market do not suffer antitrust injury." *Ass'n of Wash. Pub.*

6    *Hosp. Dists.*, 241 F.3d at 705 (quoting *Am. Ad. Mgmt.,* 190 F.3d at 1057).

7    •    *"No case has held that a consumer who has paid an overcharge has not suffered*

8    *antitrust injury." Opp'n at 8.* This is demonstrably false as numerous cases have done so where

9    the plaintiffs suffered their alleged overcharge in a secondary market. *See, e.g.*, *DRAM II*, 536 F.

10   Supp. 2d at 1137-41; *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2013

11   WL 1431756, at *11-13 (E.D. Mich. Apr. 9, 2013); *In re Aftermarket Auto. Lighting Prods.*

12   *Antitrust Litig.*, 2009 WL 9502003, at *1, 5; *Lorenzo v. Qualcomm, Inc.*, 603 F. Supp. 2d 1291,

13   1296, 1302-03 (S.D. Cal. 2009) (dismissing class action claims brought by an "end-user, who

14   purchased indirectly" for failure to allege antitrust injury even where the allegedly

15   supracompetitive prices were "ultimately pass[ed] . . . on to end consumers").

16   •    *Dismissal here would mean that "every single indirect purchaser price-fixing case*

17   *in this District – and in the United States – involving claims for products containing price-fixed*

18   *components would have been dismissed." Opp'n at 7.* This is not true because the application of

19   *AGC* is a fact-specific determination based on the specific allegations of each complaint.  This is

20   why courts, when presented with different factual allegations, have concluded that *AGC* standards

21   were satisfied.  *See* Mot. at 11-13.

22   •    *"[I]nterchangeability and cross-elasticity between a product and its price-fixed*

23   *component has not been accepted as a requirement for showing market participation . . . ."*

24   *Opp'n at 11.* It is surprising that Plaintiffs make this argument because *Flash Memory*—a case

25   that Plaintiffs rely on throughout their opposition—applied this exact test to determine antitrust

26   standing.  *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1153-54 (N.D. Cal. 2009);

27   *see* Mot. at 12 (discussing the factual differences between *Flash Memory* and Plaintiffs' fact

28   allegations here).  Indeed, this is the test for market participation set forth by the Ninth Circuit,

-7-

1  and that has been applied in this District.  *See Bhan v. NME Hosps., Inc.*, 772 F.2d 1467, 1470-71

2  (9th Cir. 1985); *DRAM II*, 536 F. Supp. 2d at 1137-41.  As Plaintiffs admit that they "do not

3  contend that batteries and laptops are substitutes or 'reasonably interchangeable,'" Opp'n at 10,

4  they cannot meet the controlling *Bhan* test.

5      •    *"[A]llegations that price-fixed components are physically traceable to end*

6  *purchasers are an independent basis for finding antitrust standing . . . ."  Opp'n at 11*.  In *GPU,*

7  the *combination* of allegations of traceability and performance characteristics that were selling

8  points to consumers was found to "slightly favor[] standing."  *GPU II*, 540 F. Supp. 2d at 1098.

9  Plaintiffs, however, have alleged the opposite—that batteries "are commodity-like products"

10  manufactured "pursuant to standard specifications."  Mot. at 12; IPP-CAC ¶ 254; *see also* IPP-

11  CSAC ¶ 334.  As Judge Hamilton explained, allowing traceability alone to substitute for market

12  participation undermines the foundations of antitrust standing because "nearly all markets that

13  service one another can be said to be 'related' to such a degree that the impact of one upon another

14  could allegedly be 'proven' with the use of econometrics."  *DRAM II*, 536 F. Supp. 2d at 1141.

15  This conclusion is particularly apt here, where Plaintiffs concede that battery cells are packed by

16  independent companies, which in turn sell them to finished product manufacturers, which in turn

17  sell to retailers, which in turn sell to consumers without any particular, traceable emphasis on the

18  specific battery cells utilized.[10]

19      •    *"Defendants . . . draw from [the other cases from this District] a pleading standard*

20  *that does not exist."  Opp'n at 12-14*.  This is incorrect.  The other decisions from this District

21  upon which Plaintiffs rely—*CRT*, *LCD*, and *GPU*—found *AGC* to be satisfied at the pleading

22  stage based on the specific characteristics of the products and markets that were alleged in those

23  cases, which have not been alleged here.  *See* Mot. at 11-13.  In *CRT*, for example, plaintiffs were

24  found to have standing because it was alleged that the "market for CRTs and the market for CRT

25  Products are . . . inextricably linked and cannot be considered separately," because the allegedly

26  price-fixed component—the cathode ray tube—"account[ed] for approximately sixty per cent of

27  _____

28  [10] *See* IPP-CAC ¶¶ 29-30, 296-298; *see also* IPP-CSAC ¶¶ 30-31, 376-378.

1   the cost of manufacturing" the finished product. *In re Cathode Ray Tube (CRT) Antitrust Litig.*

2   ("*CRT*"), 738 F. Supp. 2d 1011, 1023-24 (N.D. Cal. 2010); *see also LCD*, 586 F. Supp. 2d at 1124

3   ("LCD panels make up 60-70% of the cost of an LCD television or computer monitor").[11]  Here,

4   by contrast, there are no similar allegations that the cost of a raw cell accounts for a majority of the

5   cost of the finished consumer products purchased by the Plaintiffs.  Indeed, it is implausible that

6   such allegations could be made about a battery cell, incorporated into a battery pack, that, in turn,

7   is only one of a large number of other more expensive components contained in a finished product

8   like a laptop computer.  Plaintiffs' vague and conclusory allegation that "Lithium Ion Batteries

9   make up a substantial component cost of Lithium Ion Battery products," *see* Opp'n at 13, does not

10  make it plausible that such an undefined component cost is large enough that the markets are

11  "inextricably linked and cannot be considered separately."  *CRT*, 738 F. Supp. 2d at 1023-24.  For

12  example, Plaintiffs do not dispute that the cost of an individual raw lithium ion battery cell would

13  be no more than a few dollars, while a laptop computer purchased by a consumer would cost

14  hundreds, if not thousands of dollars, and be purchased in a market with entirely different relevant

15  factors than that for lithium ion battery cells.

16              **3.    Plaintiffs Have Also Failed to Satisfy the Other *AGC* Factors**

17          Defendants have shown that Plaintiffs failed to satisfy the *AGC* directness factor because

18  they failed to allege facts that "as indirect purchasers, there is a direct link in the causation chain

19  between defendants' alleged conspiracy to restrain prices, and the artificially high prices paid by

20  plaintiffs." *DRAM I*, 516 F. Supp. 2d at 1091; Mot. at 9-10.  Unlike in the cases relied on by

21  Plaintiffs (again *CRT*, *LCD*, and *GPU* (*see* Opp'n at 11-14)),[12] it is the cells' "nature as a

22  ubiquitous component in all manner of personal electronic devices that are purchased for end use

23  [that] lessens the directness of its impact on price."  *DRAM I*, 516 F. Supp. 2d at 1091.

24  _____

25  [11] Although Plaintiffs argue that the plaintiffs in *LCD* "*never* alleged that the cost of the LCD
    panels comprised a large percentage of the cost of all LCD products at issue," the *LCD* court

26  indicated that it was in fact relying on such allegations.  *See* Opp'n at 13.

27  [12] Plaintiffs also cite to the complaint in the *SRAM* case, but they cite to no decision from the
    *SRAM* court discussing how the complaint's allegations were sufficient to confer *AGC* antitrust

28  standing in the context of that case.  *See* Opp'n at 12-13.

1    As noted above, the components at issue in *CRT* and *LCD* were alleged to be integrated

2    only into a very limited set of finished products, and they were further alleged to be the

3    predominant factor that determined the price of those finished products.  *See CRT*, 738 F. Supp. 2d

4    at 1016, 1023-24 (televisions and computer monitors); *LCD*, 586 F. Supp. 2d at 1113, 1124

5    (televisions, computer monitors/laptop computers, cellular phones); Mot. at 11-13.  In *GPU*, the

6    component was alleged to be a "separately-invoiced component" incorporated into limited types of

7    finished products and was "severable from the computer itself."  *GPU II*, 540 F. Supp. 2d at 1098.

8    Here, by contrast, Plaintiffs allege that lithium ion battery cells are incorporated into a

9    broad array of different types of finished products purchased by different Plaintiffs, which requires

10   the raw cells to be transformed for specific uses with custom enclosures and circuitry.  *See* IPP-

11   CAC ¶ 3; *see also* IPP-CSAC ¶ 4.  Given the breadth and variation of the finished products at

12   issue here, from technologically simple and low-cost power tools to high-end laptop computers,

13   with different manufacturing and distribution chains subject to different supply and demand

14   forces, the conclusory allegation that the batteries are traceable by model number provides no

15   indication that the "ultimate cost of the . . . component is somehow directly traceable and/or

16   distinguishable" "within the final purchase price of a given product . . . ."  *DRAM I*, 516 F. Supp.

17   2d at 1092; *see also Lorenzo*, 603 F. Supp. 2d at 1301 (injury too remote where it would require

18   "trac[ing] through three levels of the supply chain" and "disaggregat[ion] from a multitude of

19   other manufacturing and component factors."); *In re Refrigerant Compressors Antitrust Litig.*,

20   2013 WL 1431756, at *14; Mot. at 9-11.

21   For similar reasons, *AGC* standing cannot be established in cases like this, where Plaintiffs

22   are "faced with the daunting task of proving the effect of the prohibited conduct on the price at any

23   and all levels above them and then at their removed position in the chain of distribution, and

24   disproving, or at least quantifying, the effects of a multitude of other pricing considerations which

25   clearly did or could have intervened at any relevant level."  *Strang v. Visa U.S.A., Inc.*, No. 03 CV

26   011323, 2005 WL 1403769, at *5 (Wis. Cir. Ct. Feb. 8, 2005); *see* Mot. at 10-11.[13]

27   _____

28   [13] Plaintiffs cite to the class certification decisions in *SRAM* and *LCD* as purported support for

REPLY BRIEF I/S/O DEFS' SUPPLEMENTAL MOT. TO DISMISS IPPS'
CONSOLIDATED AM. COMPLAINT (PHASE II)

1    Plaintiffs allege purchases of a broad array of consumer products from different sellers at

2   different levels of the distribution chain, with a multitude of factors affecting the price of the those

3   products.  Plaintiffs thus cannot meet the *AGC* test of alleging facts to show that their indirect

4   damages are not "unduly speculative" and unduly "difficult to apportion, in view of the fact that

5   the plaintiffs in question purchased their [battery cells] in the form of a component product."

6   *DRAM I*, 516 F. Supp. 2d at 1092; *see also Kanne*, 723 N.W.2d at 199; *Knowles*, 2004 WL

7   2475284, at *6; *Fucile*, 2004 WL 3030037, at *4.

8   **B.    THE COURT SHOULD DETERMINE NOW THAT PLAINTIFFS LACK**
        **CONSTITUTIONAL STANDING TO ASSERT THEIR MONTANA AND NON-**
9       **CALIFORNIA GOVERNMENTAL SUBCLASS CLAIMS.**

10    Despite voluminous case law in the Ninth Circuit—including no less than *seven prior*

11  *antitrust MDLs in this District alone*—holding that a named plaintiff lacks Article III standing to

12  represent a separately-defined class or subclass unless he or she is a member of that class; despite

13  the fact that similarly-situated class plaintiffs in the *LCD* and *Flash* cases simply conceded the

14  issue; and contrary to the statements made by Plaintiffs' counsel at the February 7, 2014 status

15  hearing in this litigation, Plaintiffs *nonetheless* maintain that they have standing to assert claims on

16  behalf of classes of which no named plaintiff is alleged to be a member.[14]  With the exception of

17  _____

18  their contention that their ability to prove damages is not unduly speculative.  *See* Opp'n at 14-15
    (citing *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 612 (N.D.
19  Cal. 2009); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 603 (N.D. Cal. 2010)).
    However, to the extent that any class certification decision is relevant to an *AGC* standing
20  determination (which it is not), *GPU* is more instructive with respect to the facts alleged in this
    case.  *See In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 504 (N.D. Cal. 2008).
21  *GPU* involved "the fact that the indirects purchased graphics cards and computers from potentially
    thousands of different retailers and manufacturers, some of whom negotiated special prices for the
22  graphics products that they in turn purchased from defendants."  *Id.*  The Court denied
    certification of the indirect purchasers' state law subclasses because "the only way to fully assess
23  pass-through in this action would be to conduct a wholesaler-by-wholesaler and re-seller-by-re-
    seller investigation, which would essentially result in thousands of mini-trials, rendering this case
24  unmanageable and unsuitable for class action treatment."  *Id.* at 505 (internal quotation marks
25  omitted).

26  [14]  The classes that remain at issue on this motion are:  (1) Plaintiffs' alleged Montana Damages
    Class; and (2) twenty-nine of Plaintiffs' thirty "State Governmental Damages Classes," consisting
27  of subclasses of governmental purchasers in states other than California.  After this motion was
    filed, Plaintiffs filed their IPP-CSAC, which remedies the prior deficiency as to the Utah claim.
28

1   one novel (yet equally unavailing) argument discussed below, every contention Plaintiffs advance

2   in support of their position has been squarely rejected by the courts of this Circuit.

3          First, Plaintiffs claim this motion conflates constitutional standing with class certification

4   issues.  Opp'n at 18.  But under binding case law, Article III standing is entirely distinct from class

5   certification issues, asking not whether alleged injuries are "sufficiently similar," but whether any

6   named plaintiff is alleged to be a member of each class or subclass alleged.  *Schlesinger v.*

7   *Reservists Comm. To Stop the War*, 418 U.S. 208, 216 (1974) ("To have standing to sue as a class

8   representative it is essential that a plaintiff must be a part of that class.").  Similarly, it is not

9   enough that each named plaintiff alleges a "personal injury" (Opp'n at 17-18); rather, for each

10  class or subclass claim asserted there must be a named plaintiff who alleges injury *as a member of*

11  *that class.  See Meijer, Inc. v. Abbott Laboratories*, 2008 WL 4065839, at *4 (N.D. Cal. Aug. 27,

12  2008) ("'[I]t is well-settled that prior to the certification of a class . . . the district court must

13  determine that at least one named class representative has Article III standing to raise each class

14  []claim.'") (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1287-1288

15  (11th Cir. 2001)).  Plaintiffs do not even attempt to argue that this requirement is satisfied.

16         Ninth Circuit law is equally clear that constitutional standing issues are to be decided at the

17  pleading stage.  While Plaintiffs claim that *Easter* "gave district courts discretion" to delay

18  resolution of standing issues until class certification (Opp'n at 19), the opinion says no such thing.

19  Instead, *Easter* identified a single inapplicable situation where standing issues can be deferred—

20  where the court is addressing a "mandatory global settlement class"—and otherwise endorsed the

21  rule that "a court must be sure of its own jurisdiction before getting to the merits."  *Easter v. Am.*

22  *West Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) (internal citations and quotations omitted).  Other

23  Ninth Circuit decisions also hold that "[s]tanding is a jurisdictional element that must be satisfied

24  prior to class certification."  *Lee v. State of Oregon*, 107 F.3d 1382, 1390 (9th Cir. 1997) (citation

25  and internal quotation marks omitted); *accord Bates v. UPS, Inc.*, 511 F.3d 974, 985 (9th Cir.

26  2007) (en banc) ("Standing is a threshold matter central to our subject matter jurisdiction. We

27  ─────────────────

28  *See* IPP-CSAC ¶ 437.

-12-

1   must assure ourselves that the constitutional standing requirements are satisfied before proceeding

2   to the merits.").

3         Plaintiffs make no meaningful attempt to distinguish the numerous cases following *Easter*,

4   including the antitrust precedents from this District, that have decided standing issues at the

5   pleading stage, asserting only that these cases "include little analysis." Opp'n at 20. But the

6   reasons for resolving standing deficiencies immediately are well-established. "In essence, the

7   question of standing is whether the litigant is entitled to have the court decide the merits of the

8   dispute or of particular issues," and therefore standing "is the threshold question in every federal

9   case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498

10  (1975); *accord Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

11        As anticipated in Defendants' opening brief, Plaintiffs rely entirely on inapposite cases, all

12  but one of which are from other Circuits, involving challenges to an alleged single class of

13  *nationwide* purchasers of which the existing named plaintiffs were alleged to be members—not, as

14  here, individually-defined state-specific classes and subclasses. *See* Opp'n at 18-19. Plaintiffs fail

15  to explain why these cases should be followed when they contradict governing Ninth Circuit law.

16        Finally, in a last attempt to avoid immediate dismissal of their governmental subclass

17  claims for lack of standing, Plaintiffs appear to argue that the Court should defer dismissal of these

18  claims until class certification because it is possible that *the Court* might elect at that time to create

19  informal "managerial subclasses" of governmental purchasers—which Plaintiffs suggest would

20  somehow retroactively moot their standing deficiencies.[15]

21        An obvious problem with this argument is that Plaintiffs' governmental subclass claims are

22  not "managerial subclasses" under Plaintiffs' own authorities. Where appropriate, "managerial

23  subclasses" are *informally* created *by the court* at the class certification stage for case management

24  purposes by "segregating" a portion of a broader class that implicates a "distinct legal issue." *See,*

25  *e.g., Am. Timber & Trading Co. v. First Nat'l Bank*, 690 F.2d 781, 786-787 (9th Cir. 1982) (court

26

27  [15] By its own terms, this argument could not save the Montana claim, which Plaintiffs do not claim

28  was asserted for purposes of demonstrating potential class certification "management tools."

1   created additional subclass "solely to expedite resolution of the case by segregating the

2   compensating balance issue which was common to some members of the existing subclasses.").

3   But here *Plaintiffs*, not the Court, decided to *formally* assert claims on behalf of governmental

4   subclasses.  While Plaintiffs say they made these claims solely to educate the Court about

5   "managerial tools" that may be useful at class certification (Opp'n at 21), this post-hoc

6   justification is irrelevant:  *every* class and subclass claim formally asserted in Plaintiffs' complaint

7   is subject to Article III standing requirements.  *See, e.g., Prado-Steiman v. Bush*, 221 F.3d 1266,

8   1279 (11th Cir. 2000) ("it is well-settled that prior to the certification of a class, and technically

9   speaking before undertaking any formal typicality or commonality review, the district court must

10  determine that at least one named class representative has Article III standing to raise each class

11  subclaim."); *Betts v. Reliable Collection Agency, Ltd*., 659 F.2d 1000, 1005-06 (9th Cir. 1981) ("a

12  fundamental requirement in the establishment of a subclass is that the representative plaintiff must

13  be a member of the class she wishes to represent").

14          Plaintiffs also argue that Defendants have not demonstrated conflicts or material

15  differences in the claims of the proposed class and subclass members (Opp'n at 22-23).  But that is

16  not Defendants' burden on this motion to dismiss.  Moreover, Plaintiffs' argument ignores reality,

17  including significant differences in how large governmental entities and individual consumers

18  procure products, and the manner in which claims on their behalf are litigated.  For example,

19  government agencies often assert antitrust claims via assignment from their vendors.  *See, e.g.*,

20  Ballard Decl. (Dkt. No. 401-1), Ex. F at 39-41 (New York AG complaint in *LCD*) (alleging claims

21  based on assignment); *Id*. Ex. H at 40-41 (California AG complaint in *CRT*) (same).  In addition,

22  some states do not allow some government entities—including those at issue here—to sue under

23  the state unfair competition laws Plaintiffs invoke.  *See, e.g*., Cal. Bus. & Prof. Code § 17201

24  ("person" under California UCL does not include government entities); *Santa Monica Rent*

25  *Control Bd. v. Bluvshtein*, 230 Cal. App. 3d 308, 318 (Cal. Ct. App. 1991) (government agency

26  lacked standing to bring suit); *see also* Mont. Code Ann. §§ 30-14-102(1), 30-14-133(1)

27  (providing right of action for "consumer[s]," defined as persons who purchased "primarily for

28  personal, family, or household purposes").

-14-

1    Overwhelming precedent in this Circuit requires that standing deficiencies be resolved

2    immediately.  Plaintiffs identify no cases in which a court in this Circuit has indulged in

3    speculation about a "managerial" subclass as a reason to delay resolution of standing.  The only

4    proper result is dismissal now of these claims on behalf of classes of which no Plaintiff is a

5    member.

6    **C.    PLAINTIFFS' ARGUMENTS AGAINST APPLICATION OF *ILLINOIS BRICK* TO CERTAIN MONTANA AND MISSOURI CLAIMS ARE MERITLESS**

7        **1.    Montana**

8    Plaintiffs argue that *Illinois Brick* does not preclude them from asserting a claim under Part

9    1 of Montana's Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. § 30-14-

10   103.  Opp'n at 24-25.  But Defendants have moved to dismiss Plaintiffs' claim under Part 2 of the

11   statute on *Illinois Brick* grounds.[16]  Mot. at 21.  Controlling Montana Supreme Court authority

12   mandates dismissal of these claims, as the *CRT*, *LCD* and *SRAM* courts each held.  *Id*. at 21-22

13   (citing cases).  Plaintiffs ignore these authorities and instead rely on a single, contrary unpublished

14   slip opinion from a Montana trial court.  Opp'n at 25 (citing *Olson v. Microsoft Corp*., No. CDV-

15   2000-219, 2001 Mont. Dis. LEXIS 2710 (Feb. 15, 2001)).  The *Olson* trial court, however,

16   wrongly ignored the Montana Supreme Court's dictate.  Moreover, *Olson* has no precedential

17   value, because this Court is bound to follow Montana's highest court on this state law issue.

18   *United Bhd. of Carpenters & Joiners of Am. Local 586 v. Nat'l Labor Relations Bd.*, 540 F.3d

19   957, 963 (9th Cir. 2008).  Montana's Supreme Court has held that Montana's antitrust law must be

20   construed in accordance with federal law.  *Smith v. Video Lottery Consultants, Inc.*, 858 P.2d 11,

21   13 (Mont. 1993).  This includes *Illinois Brick*'s ban on indirect purchaser damages actions under

22   Part 2 of the statute.

23       **2.    Missouri**

24   Missouri's antitrust statute expressly requires judicial interpretation consistent with federal

25   antitrust laws, and Missouri courts have followed that mandate by dismissing indirect purchaser

26   claims under the state's antitrust law.  Plaintiffs try to dodge this limitation by rebranding their

27   _____

28   [16] As discussed *infra*, claims under Part 1 of the statute cannot be brought as class actions.

antitrust claim as a violation of the state's Merchandising Practices Act, but cite no Missouri authority to support this.  The sole Missouri authority upon which Plaintiffs rely is not an antitrust case.  *See* Opp'n at 24 (citing *Gibbons v. Nuckolls, Inc.*, 216 S.W.3d 667 (Mo. 2007)).  *Gibbons* did not consider whether an indirect purchaser may assert an antitrust claim under the MMPA, and thus did not abrogate the holding in *Ireland v. Microsoft Corp.,* that indirect purchasers may not bring antitrust claims under the MMPA.  2001 Mo. App. LEXIS 2371 (Feb. 7, 2001).

D.    **MANY OF PLAINTIFFS' INDIVIDUAL STATE LAW CLAIMS HAVE ADDITIONAL LEGAL DEFICIENCIES REQUIRING DISMISSAL.**

  1.    **Supreme Court and Ninth Circuit Precedent Preclude Class-Action Claims Under Illinois, Montana and South Carolina Law.**

Although the Illinois, Montana and South Carolina statutes each create a private right of action, the exact subsection (and in two cases, the same sentence) that *confers* that substantive right also *limits* it, by prohibiting plaintiffs from bringing or maintaining class actions. 740 Ill. Comp. Stat. § 10/7(2); Mont. Code Ann. § 30-14-133(1); S.C. Code Ann. § 39-5-140(a).  Thus, these state legislatures have defined the right to sue by excluding representative claims.  Plaintiffs urge the Court to lift these limitations, redefining the substantive rights afforded by these states. Doing so, however, would "abridge, enlarge or modify" the substantive right to sue under these statutes, violating the Rules Enabling Act, pursuant to Justice Stevens' controlling concurrence in *Shady Grove Orthopedic Assoc. v. Allstate Ins. Co*., 559 U.S. 393 (2010).  Mot. at 23-26 (citing 28 U.S.C. § 2072(b)).  Plaintiffs argue that neither Justice Stevens' concurrence nor the plurality opinion in *Shady Grove* control the Rules Enabling Act analysis, and urge the Court to apply Ninth Circuit precedent.  Opp'n at 26-28.  But whether *Shady Grove* or pre-existing Ninth Circuit law is applied, the result is the same:  Plaintiffs may not pursue class claims under these statutes.

As to *Shady Grove*, Plaintiffs urge the Court to disregard the "clear majority" of courts (*see* Mot. at 24-25) that follow Justice Stevens' concurrence under the "narrowest grounds" doctrine of *Marks v. United States*, 430 U.S. 188 (1977).  Opp'n at 26-29.  Plaintiffs argue that, to control, a concurrence must represent not just the "narrowest grounds" supporting the judgment, but also be a "logical subset" of a broader opinion, and "represent a common denominator of the Court's reasoning."  Opp'n at 28. But Justice Stevens' concurrence meets these criteria.

1    The concurrence shares a "common denominator" with the plurality in its "accept[ance]"

2  of the plurality's "framework," and at least part of the plurality's analysis under the Rules

3  Enabling Act. *Shady Grove*, 559 U.S. at 410 (plurality op.); *id.* at 426 (Stevens, J., concurring)

4  ("the plurality appears to agree with much of my interpretation").  The concurrence is a "logical

5  subset" of the plurality in that it applies an additional step in the Enabling Act analysis, examining

6  the state law, thus employing a more restrictive test that could only result in fewer displacements

7  of state law.  Several courts have applied the "common denominator" or "logical subset" tests and

8  concluded that Justice Stevens' concurrence is *Shady Grove*'s operative holding.[17]

9    Even if the Court were to accept Plaintiffs' argument that *Shady Grove* does not control the

10  Rules Enabling Act analysis, Plaintiffs' class-action claims would still fail under Ninth Circuit

11  precedent.  Like Justice Stevens, Ninth Circuit authority examines the state law to determine

12  whether it "create[s] any substantive right" or "add[s], subtract[s] or define[s]" a state law

13  element.  *Freund v. Nycomed Amersham*, 347 F.3d 752, 761-62 (9th Cir. 2003); *compare Shady*

14  *Grove*, 559 U.S. at 423 (Stevens, J., concurring) (state rule may be deemed substantive under

15  Rules Enabling Act analysis if it "define[s] the scope of" a state-created substantive right).  Like

16  Justice Stevens, Ninth Circuit authority holds that laws "procedural in the ordinary use of the

17  term," including the class-action device, may nonetheless define the scope of a substantive right,

18  and thus cannot be displaced by a Federal Rule.  *Shady Grove*, 559 U.S. at 423 (Stevens, J.,

19  concurring); *In re Hotel Tel. Charges*, 500 F.2d 86, 90 (9th Cir. 1974) (Rule 23 treatment of

20  antitrust claims "significantly alters substantive rights under the antitrust statutes.  Such

21  enlargement or modification of substantive statutory rights by procedural devices is clearly

22  prohibited by the Enabling Act").[18] The Ninth Circuit case Plaintiffs cite examined inapposite

---

24  [17] *See Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676, 2012 WL 764199, at *12 (E.D.N.Y. March

25  5, 2012); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 415 (S.D.N.Y. 2011); *Tait v. BSH Home Appliances Corp.*, No. SACV 10-711, 2011 WL 1832941, at *8 (C.D. Cal. May 12,

26  2011); *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 675 (E.D. Pa. 2010).

27  [18] Indeed, several Ninth Circuit judges interpreting the Rules Enabling Act recently cited with favor Justice Stevens' *Shady Grove* concurrence and his conclusion that "there are some state

28  procedural rules that federal courts must apply in diversity cases because they function as part of

-17-

REPLY BRIEF I/S/O DEFS' SUPPLEMENTAL MOT. TO DISMISS IPPS'
CONSOLIDATED AM. COMPLAINT (PHASE II)

1    California case law holding that the appealability of a punitive damages award cannot be waived.

2    *Freund*, 347 F.3d at 761.  This was a rule of general application that governed appealability

3    regardless of the underlying right asserted, and the Ninth Circuit deemed it procedural because it

4    neither created a substantive right nor did not "add, subtract or define" an element of the

5    underlying claim.  *Id.* at 761-62.

6        In contrast, the Illinois, Montana and South Carolina statutes at issue create substantive

7    rights and define the scope of those rights to exclude representative claims.[19]  Allowing Plaintiffs

8    to proceed in a representative capacity would redefine that right, violating the Rules Enabling Act.

9    Indeed, several courts have held that the Illinois, Montana and South Carolina class-action bans

10    are substantive limitations, which cannot be displaced by the application of Rule 23.  *See, e.g.,*

11    *Stalvey v. Am. Bank Holdings, Inc.*, No. 4:13-cv-714, 2013 WL 6019320, at *4 (D.S.C. Nov. 13,

12    2013) ("the prohibitions against class actions [in South Carolina Unfair Trade Practices Act] are

13    substantive portions of South Carolina law"); *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F.

14    Supp. 2d 367, 409 (D. Mass. 2013) (application of Rule 23 to Illinois Antitrust Act claim would

15    abridge, enlarge or modify state-created right or remedy); *Digital Music*, 812 F. Supp. 2d at 415-

16    16 (Illinois statute "defines the scope of" state-created substantive right or remedy); *Wellbutrin*,

17    756 F. Supp. 2d at 677 (Illinois class-action ban is a substantive limitation); *In re New Motor*

18    *Vehicles Canadian Export Antitrust Litig.*, 241 F.R.D. 77, 83 (D. Me. 2007) (Montana class-action

19    ban defines capacity to sue, or available remedy, and therefore is substantive).

20    the State's definition of the substantive rights and remedies."  *Makaeff v. Trump Univ., LLC*, 736

21    F.3d 1180, 1187 n.8 (9th Cir. 2013) (Wardlaw, J. and Callahan, J., concurring in denial of petition
for *en banc* rehearing) (internal quotation marks and citation omitted).  The four concurring judges

22    concluded that California's anti-SLAPP law imposes "substantive limitations" on state-law
actions, and that displacing those limitations with Federal Rules would be "bad policy" and

23    "arguably" a Rules Enabling Act violation.  *Id.* at 1187 & n.8.

24    [19] Defendants do not, as Plaintiffs claim, argue that class-action bans are substantive because they
are "adjacent in each state's statute books to substantive state rights."  Opp'n at 28.  These

25    provisions are substantive because they are each part and parcel of the statute's definition of the
right to sue.  Plaintiffs further obfuscate by arguing that the *Shady Grove* majority found the

26    structure of the state statute to be "immaterial."  *Id.*  The quoted passage relates only to the
threshold question of whether the federal and state rules concern the same subject matter, not

27    whether application of the Federal Rule would "abridge, enlarge or modify" a state-created

28    substantive right, the question presented here.  *Shady Grove*, 559 U.S. at 400-01.

-18-

REPLY BRIEF I/S/O DEFS' SUPPLEMENTAL MOT. TO DISMISS IPPS'
CONSOLIDATED AM. COMPLAINT (PHASE II)

1    Plaintiffs argue that various state courts "recognize that the class action device is

2 procedural …." Opp'n at 28; *id*. at 27 n.27 (citing cases). But the cases cited analyze neither the

3 Rules Enabling Act nor any of the state statutes at issue here. In fact, one opinion contradicts

4 Plaintiffs' argument that class action rules are necessarily procedural. *See Smith v. Ill. Cent. R.R.*

5 *Co*., 860 N.E.2d 332, 339 (Ill. 2006) ("Aggregating claims can dramatically alter substantive tort

6 jurisprudence.") (quoting *Southwestern Refining Co. v. Bernal*, 22 S.W.3d 425 (Tex. 2000)); *see*

7 *also Smith*, 860 N.E.2d at 340 (agreeing with *Southwestern*'s reasoning and conclusions).

8    The district court cases Plaintiffs cite are also not persuasive. The *ODD* opinion

9 summarily denied defendants' motion to dismiss, with no analysis. *In re Optical Disk Drive*

10 *Antitrust Litig*., No. 3:10-md-2143, 2012 WL 1366718, at *8 (N.D. Cal. April 19, 2012). Judge

11 Seeborg, who decided *ODD*, apparently reversed course on this issue and recently dismissed class-

12 action claims under a Tennessee statute with a similar class-action ban. *In re Ford Tailgate Litig*.,

13 No. 11-CV-2953-RS, 2014 U.S. Dist. LEXIS 32287, at *38-39 (N.D. Cal. March 12, 2014). The

14 *Hydroxycut* opinion relies on Justice Scalia's plurality opinion in *Shady Grove*, which Plaintiffs

15 concede is not controlling. *In re Hydroxycut Mktg. and Sales Practices Litig*., No. 09-md-2087,

16 2014 U.S. Dist. LEXIS 11750, at *69 (S.D. Cal. Jan. 27, 2014). The *Automotive Parts* opinion

17 reaches inconsistent results, dismissing a class action claim under the Illinois statute but denying a

18 motion to dismiss a class action claim under the South Carolina statute. *In re Automotive Parts*

19 *Antitrust Litig*., No. 12-md-02311, 2013 WL 2456612, at *22, *30 (E.D. Mich. June 6, 2013).

20 None of these cases provides a basis for permitting class action claims to go forward under these

21 state statutes.

22    **2.    Governing Authority Requires Conspiratorial Conduct In New Hampshire To State a Claim under New Hampshire Law.**

23    Plaintiffs deny that the NHCPA requires allegations of intra-state anticompetitive *conduct*

24 in addition to anticompetitive *effects*. As anticipated in Defendants' opening brief, Plaintiffs base

25 this contention entirely on a single distinguishable case, *LaChance v. U.S. Smokeless Tobacco Co*.,

26 931 A.2d 571 (N.H. 2007), and a subsequent misapplication of that decision in *In re Chocolate*

27 *Confectionary Antitrust Litig*., 749 F. Supp. 2d 224 (M.D. Pa. 2010). As explained in subsequent

28 cases, including by Judge Armstrong in *Flash*, *LaChance* "merely states that 'indirect purchasers

-19-

1  may bring claims under the CPA'"; it "does not address the requirement that the offending

2  conduct occur within the state."  *Flash*, 643 F. Supp. 2d at 1159 (internal quotations omitted);

3  *accord Precourt v. Fairbank Reconstruction Corp.*, 856 F. Supp. 2d 327, 343 (D.N.H. 2012).

4  Plaintiffs ignore the subsequent authority in *Flash* and *Precourt* that intra-state conduct is

5  required.  *See also  Refrigerant Compressors*, 2013 WL 1431756 at *17-18.  Nor is there merit to

6  Plaintiffs' argument that *Environamics* and *Mueller* should be ignored because these they were

7  unpublished.[20]  The Civil Local Rules for the District of New Hampshire—the only rules that

8  matter in this context, *see* N.D. Cal. Civ. L.R. 3-4(e)—expressly allow unpublished opinions made

9  available on its court website to be cited.  D.N.H. Civ. L.R. 5.3(b).

### 3.    Arkansas State Courts' Interpretation of Their Own State Law Trumps Any Dictionary Definition.

11    Plaintiffs fail to identify a single Arkansas authority applying the Arkansas Deceptive

12  Trade Practices Act ("ADTPA") to price-fixing or any other antitrust violation.  Instead, Plaintiffs

13  cite federal opinions that rely largely on dictionary definitions of "unconscionable" and disregard

14  the established meaning of this term in Arkansas law.  Opp'n at 30 n.31.

15    Only state courts may authoritatively construe state statutes.  *BMW of N. Am., Inc. v. Gore*,

16  517 U.S. 599, 577 (1996).  Arkansas courts have consistently used "unconscionable" to refer to

17  contractual relationships or unequal bargaining power.  *See* Mot. at 28-30.  The sole Arkansas

18  authority cited by Plaintiffs uses the term consistently with this established meaning.  *State ex rel.*

19  *Bryant v. R & A Inv. Co.*, 985 S.W.2d 299, 302 (Ark. 1999) (looking to "established contract law"

20  to define "unconscionable" under the ADTPA, and finding that the "test" asks whether "there is a

21  gross inequality of bargaining power between the parties to the contract.").  Applying this

22  established meaning of the term, Plaintiffs' ADTPA claim should be dismissed as the statute has

23  no application to alleged price-fixing behavior.

---

26  [20]  Both *Environamics* (accessed online at
27  http://www.nhd.uscourts.gov/ISYS/isysquery/1076f3d8-0b81-43e1-ab1d-a028efe98d06/19/doc/)
   and *Mueller* (accessed online at http://www.nhd.uscourts.gov/ISYS/isysquery/7da3a839-dafd-
28  46a5-8b75-758ea37c1d13/1/doc/) are available on the District of New Hampshire's website.

1  Respectfully submitted:    April 28, 2014

2                                                      By:  /s/ Michael W. Scarborough

3                                                      Gary L. Halling
                                                       James L. McGinnis
4                                                      Michael W. Scarborough
                                                       SHEPPARD MULLIN RICHTER &
5                                                      HAMPTON
                                                       4 Embarcadero Center, 17th Floor
6                                                      San Francisco, CA 94111
                                                       ghalling@sheppardmullin.com
7                                                      jmcginnis@sheppardmullin.com
                                                       mscarborough@sheppardmullin.com
8                                                      Telephone:  (415) 434-9100
                                                       Facsimile:  (415) 434-3947
9
                                                       *Counsel for Samsung SDI Co., Ltd. and*
10                                                     *Samsung SDI America, Inc.*

11
                                                       By:  /s/ Robert B. Pringle
12
                                                       Robert B. Pringle (SBN: 051365)
13                                                     rpringle@winston.com
                                                       Paul R. Griffin (SBN: 083541)
14                                                     pgriffin@winston.com
                                                       Sean D. Meenan (SBN: 260466)
15                                                     smeenan@winston.com
                                                       WINSTON & STRAWN LLP
16                                                     101 California Street, Suite 3900
                                                       San Francisco, CA 94111-5802
17                                                     Telephone: (415) 591-1000
                                                       Facsimile: (415) 591-1400
18
                                                       *Counsel for NEC Corporation and*
19                                                     *NEC Tokin Corporation*

20
                                                       By:  /s/  Jeffrey L. Kessler
21
                                                       Jeffrey L. Kessler (*pro hac vice*)
22                                                     jkessler@winston.com
                                                       A. Paul Victor (*pro hac vice*)
23                                                     pvictor@winston.com
                                                       Eva W. Cole (*pro hac vice*)
24                                                     ewcole@winston.com
                                                       Jeffrey J. Amato (*pro hac vice*)
25                                                     jamato@winston.com
                                                       WINSTON & STRAWN LLP
26                                                     200 Park Avenue
                                                       New York, NY  10166-4193
27                                                     Telephone:  (212) 294-4601
                                                       Facsimile:  (212) 294-4700
28

                                              -21-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ian L. Papendick (SBN 275648)
ipapendick@winston.com
Diana L. Hughes (SBN 267606)
dhughes@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111
Telephone:  (415) 591-6904
Facsimile:  (415) 591-1400

Roxann E. Henry (*pro hac vice*)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
rhenry@mofo.com
Telephone:  (202) 887-1500
Facsimile:   (202) 887-0763

*Counsel for Panasonic Corporation,*
*Panasonic Corporation of North America,*
*SANYO Electric Co., Ltd., and*
*SANYO North America Corporation*

By: */s/ John C. Dwyer*

Stephen C. Neal (170085)
John C. Dwyer (136533)
Bennett S. Miller (254368)
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 843-5000
Facsimile: (650) 857-0663

Beatriz Mejia (190948)
Scott D. Joiner (223313)
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Counsel for Sony Corporation,*
*Sony Energy Devices Corporation,*
*and Sony Electronics, Inc.*

SMRH:422191443.5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:  /s/ Christopher M. Curran

Christopher M. Curran (*pro hac vice*)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
ccurran@whitecase.com
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Counsel for Toshiba Corporation (Toshiba America Electronic Components, Inc. is no longer a Defendant in this case)*

By:  /s/ Kenneth P. Ewing

Kenneth P. Ewing (*pro hac vice*)
Robert W. Fleishman (*pro hac vice*)
Andrew J. Lee (*pro hac vice*)
Andrew J. Sloniewsky (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, D.C. 20036
kewing@steptoe.com
Telephone:  (202) 429-6264
Facsimile:  (202) 429-3902

*Counsel for LG Chem, Ltd.
and LG Chem America, Inc.*

By:  /s/ Djordje Petkoski

Douglas M. Garrou (*pro hac vice*)
Djordje Petkoski (*pro hac vice*)
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037
dgarrou@hunton.com
dpetkoski@hunton.com
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

*Counsel for GS Yuasa Corporation*

-23-

REPLY BRIEF I/S/O DEFS' SUPPLEMENTAL MOT. TO DISMISS IPPS'
CONSOLIDATED AM. COMPLAINT (PHASE II)

1

2

By: /s/ Craig P. Seebald

Craig P. Seebald (*pro hac vice*)
Lindsey R. Vaala (*pro hac vice*)
Hannah C. Wilson (*pro hac vice*)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, D.C.  20037
cseebald@velaw.com
lvaala@velaw.com
hwilson@velaw.com
Telephone:  (202) 639-6585
Facsimile:  (202) 879-8995

Matthew J. Jacobs (SBN 171149)
VINSON & ELKINS LLP
525 Market Street, Suite 2750
San Francisco, California 94105
mjacobs@velaw.com
Telephone: (415) 979-6990
Facsimile: (415) 651-8786

*Counsel for Maxell Corporation of America
and Hitachi Maxell, Ltd.*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

## E-FILING ATTESTATION

17

I, Michael W. Scarborough, am the ECF User whose ID and password are being used to

18 file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the

19 signatories identified above has concurred in this filing.

20

21

/s/ Michael W. Scarborough
Michael W. Scarborough

22

23

24

25

26

27

28

-24-

REPLY BRIEF I/S/O DEFS' SUPPLEMENTAL MOT. TO DISMISS IPPS'
CONSOLIDATED AM. COMPLAINT (PHASE II)