*Law Offices*

# PEARSON, SIMON & WARSHAW, LLP

44 MONTGOMERY STREET, SUITE 2450

SAN FRANCISCO, CALIFORNIA 94104

(415) 433-9000

FAX (415) 433-9008

WWW.PSWLAW.COM

LOS ANGELES OFFICE
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403
(818) 788-8300

WRITER'S DIRECT CONTACT
(415) 400-7706
ASHEANIN@PSWLAW.COM

March 11, 2015

**VIA ECF**

The Honorable Donna M. Ryu
United States District Court
Oakland Courthouse, Courtroom 4
1301 Clay Street
Oakland, CA 94612

Re:   *In Re: Lithium Ion Batteries Antitrust Litigation, All Actions*
      Case No.:   13-md-02420 YGR (DMR)
      <u>Joint Letter Brief re Toshiba Corporation's Withholding of Sales Data</u>

Dear Judge Ryu:

Pursuant to the Notice of Amended Discovery Procedures (ECF No. 499), Direct Purchaser Plaintiffs ("DPPs") and Indirect Purchaser Plaintiffs ("IPPs" and collectively "Plaintiffs") ask the Court to compel Defendant Toshiba Corporation ("Toshiba") to produce all of its worldwide transaction-level sales data for lithium ion battery cells and packs. Counsel for Plaintiffs and Toshiba held a final meet-and-confer by telephone on March 3, 2015 on this issue, and the parties remain at an impasse. The first deadline set by the Court that might be affected by the outcome of this dispute is the deadline for Plaintiffs' class certification motions on November 30, 2015. The parties submit that this issue can be decided without oral argument.

## I.   PLAINTIFFS' POSITION

Last December, Toshiba represented to the Court:   "***Toshiba Corp. will produce its worldwide transaction-level sales and cost data for lithium ion battery cells and packs for the period 1997 to 2007. . . . Toshiba has not placed geographic restrictions on its production of transactional sales data***." ECF No. 606 at 3 (emphasis added). The Court then issued an Order stating that defendants, including Toshiba, "have agreed to produce worldwide transaction-level (i.e., non-aggregate) data, including cost data, where available." Order on Joint Discovery Letter re Worldwide Transaction Data ("Worldwide Data Order"), ECF No. 624 at 1 n.1.

Toshiba now recants from its representation and the Court's order. At the close of business on February 27, the last day to complete production of its transaction-level sales data, Toshiba reversed its position, buried in correspondence. Toshiba informed Plaintiffs—*for the first time*—in a production transmittal letter that it was "not producing internal sales data regarding LiBs used in finished products that were neither sold in the United States nor destined for United States buyers."

But Toshiba had already agreed to produce this data and expressly elected not to join briefing from other Defendants who were resisting production of worldwide cell and pack data. Even if the subsequent Worldwide Data Order applied to Toshiba—which it does not—Toshiba did not confer with Plaintiffs to alert them before the Court-ordered deadlines that it changed its position, and failed to satisfy its obligation under the Court's order to demonstrate that the data meet the Court's definition of a foreign finished product. Toshiba's refusal to produce the data breaks its representation to Plaintiffs (and the Court) and violates this Court's order.

### A.     Toshiba Agreed to Produce Worldwide Cell and Pack Data

"The Federal Rules of Civil Procedure embrace a policy of encouraging broad discovery, and exhibit little patience for gamesmanship and attempts to withhold discoverable materials and information. Such gamesmanship produces needless delay, wasting the Court's and the parties' time, contrary to the purpose of the Federal Rules of Civil Procedure, which seek 'inexpensive determination of every action and proceeding.'" *Lane v. Page*, No. CIV 06–1071 JB/ACT, 2011 WL 1004825, at *5 (D.N.M. Feb. 10, 2011) (quoting Fed. R. Civ. P. 1). Such gamesmanship has been the unfortunate history of Toshiba's conduct with respect to its production of worldwide data. A brief recounting of the procedural history demonstrates why Toshiba's February 27th letter represents a complete reversal in its commitments to Plaintiffs and this Court that it would produce all of its worldwide cell and pack data.

In a teleconference on October 31, 2014, Toshiba agreed to produce its worldwide transaction-level sales and cost data for cells and packs for 1997 to 2007, and its U.S. subsidiary's (TAEC) transaction-level sales and cost data for cells and packs for 1997 to 2004.

On December 2, 2014, Plaintiffs and the Panasonic, Sanyo, NEC Tokin, GS Yuasa, and Sony defendants submitted a joint letter brief to the Court concerning a dispute over the relevance of, and burden of producing, worldwide transaction-level sales data for lithium ion battery cells and packs. The letter explained that several non-objecting defendants including Toshiba agreed to produce—in effect, they were not going to withhold data. ECF No. 590 at 1.

On December 15, 2014, the Court ordered Plaintiffs, Toshiba, and other non-objecting defendants to "file copies of the actual agreements . . . regarding the production of worldwide transaction data, or provide detailed descriptions of those agreements, including any temporal or geographic limitations and a description of the information/categories of information that will be produced." ECF No. 605. The following day, Plaintiffs, Toshiba, and other non-objecting defendants submitted a report entitled Supplemental Information re Joint Discovery Letter. ECF No. 606. The parties represented: "Toshiba Corp. will produce its worldwide transaction-level sales and cost data for lithium ion battery cells and packs for the period 1997 to 2007, at which time Toshiba Corp. stopped delivering those products. Toshiba Corp. also will produce United States transaction-level sales and cost data for lithium ion battery cells and packs from its United States affiliate, Toshiba America Electronic Components, Inc. ('TAEC'), for the period 1997 to 2004, at which time TAEC stopped selling those products." *Id.* at 2-3. Importantly, the parties represented to the Court that, "***Toshiba has not placed geographic restrictions on its production of transactional sales data***." *Id.* at 3 (emphasis added). The Court held a hearing on the worldwide data question on December 18, 2014. At no point during that hearing did Toshiba join the dispute or state that it would withhold data. *See* Tr. of Proceedings dated 12/18/2014.

On December 23, 2014, the Court issued its Worldwide Data Order. ECF No. 624. The order stated that defendant groups including Toshiba "have agreed to produce worldwide transaction-level (i.e., non-aggregated) data, including cost data, where available." *Id.* at 1 n.1. The Court also held that any "Objecting Defendant"—defined as "Panasonic, Sanyo, Sony, NEC, and GS Yuasa"—"need not produce sales or cost data related to . . . 'foreign finished products' if the Objecting Defendant can demonstrate that the data meets the court's definition. The court ordered the parties to meet and confer to develop a process for identifying and verifying that information falls within the court's definition of irrelevant data regarding a 'foreign finished product.'" *Id.* at 2. The Court also established a schedule for Plaintiffs and certain Objecting Defendants to complete the meet and confer process by January 29, 2015, and to file any joint letter regarding outstanding disputes by February 9, 2015. *Id.* at 3-4.

Fundamental fairness precludes Toshiba from relying upon the Worldwide Data Order to withhold data it previously agreed to produce, while at the same time ignoring the parts of the order that it finds unfavorable. Specifically, the order acknowledges Toshiba's agreement to produce the data without restrictions. The provisions of the order allowing Objecting Defendants to withhold data apply only to Panasonic, Sanyo, Sony, NEC, and GS Yuasa—not Toshiba. And the order establishes a schedule, process, and burdens on Objecting Defendants who seek to withhold data. Toshiba may not ignore these provisions.

Toshiba waited more than two months after the entry of the Worldwide Data Order before taking the position that the order even applied. Not until the close of business on February 27, 2015, the last day for Defendants to complete their production of cell and pack data, did Toshiba inform Plaintiffs that it was withholding "internal sales data regarding LiBs used in finished products that were neither sold in the United States nor destined for United States buyers." Toshiba's position now is that the data are irrelevant to this case under the Court's Worldwide Data Order. Toshiba's change in position comes too late. If the order applied to Toshiba, as it now claims, Toshiba was obligated to meet and confer about its objection by January 29, 2015. Moreover, Toshiba's contention that it preserved its objection through its written discovery response—despite its subsequent agreement to produce all worldwide data without geographic restriction and its representation of the same to the Court— would render the meet and confer process meaningless.

At no point before February 27, 2015 did Toshiba suggest that it would recant its representation to the Court. Toshiba now points to a letter sent by plaintiffs on February 6, 2015, claiming Plaintiffs permitted Toshiba to withhold data regarding cells and packs not incorporated into finished products sold into the United States. Not so. Plaintiffs' letter related to Toshiba's ***document, not data***, production. That is evident because the letter was sent just last month while the parties were negotiating Toshiba's production of conduct evidence and other documents, long after the data issue had been put to rest. The letter refers to Toshiba's responses and objections to RFP Set 3, which pertains to conduct evidence, not RFP Set 2, which pertains to transaction-level data. The text Toshiba quotes specifically relates to Toshiba's objection that it intended to withhold conduct evidence pertaining solely to foreign conduct. Plaintiffs' letter explained that all foreign conduct evidence is centrally relevant to the claims at issue, and that the Court's Worldwide Data Order was intended only to create a limited exception for production of data relating to sales of finished products. Nothing in the letter suggested that Plaintiffs were reopening negotiations over data, knew Toshiba intended to withhold data, or

allowed Toshiba to do so. While this Court's standing order prohibits exhibits to joint discovery letters, Plaintiffs offer to submit their February 6, 2015 letter, so that the Court may assess for itself Toshiba's characterization of this discovery correspondence.

Given the numerous representations to Plaintiffs and this Court that it would produce worldwide cell and pack data, Toshiba has waived any argument objecting to its production.

**B.      Even If the Worldwide Data Order Applied to Toshiba, Toshiba Failed to Demonstrate Any Burden Associated With Production**

Even if this Court were to entertain Toshiba's late objection, Toshiba cannot demonstrate any burden associated with production. At the parties' March 3, 2015 conference regarding this data, counsel for Toshiba conceded that the withheld data had been collected ***from the same database*** as the data that Toshiba already had produced. In the same context, this Court rejected NEC's arguments of burden at the December 2014 hearing: "If it's centralized and you have it and you have it at the transactional level, what is the burden? It's relevant. They've established relevance." Tr. of Proceedings dated 12/18/2014 at 71. *See also* ECF No. 624 at 3 (ordering both NEC and Sanyo to produce complete worldwide transaction-level sales data for cells and packs stored on centralized databases). Toshiba cannot, and does not, make any concrete argument regarding burden associated with the production of this data.

**C.      Toshiba Failed to Carry Its Burden to Demonstrate that These Sales Relate to Foreign Finished Products**

Setting aside that Toshiba does not show any burden associated with production, the Worldwide Data Order places the burden on an Objecting Defendant to demonstrate that the data meets the Court's definition of a foreign finished product. In arguing that the data at issue here is not relevant, Toshiba ignores this Court's order and the extended discussion at the December 2014 hearing. At the hearing, Plaintiffs articulated the basis for this finding of relevance. First, worldwide sales data is necessary to determine supply and demand for sales worldwide, and to estimate damages based on the volume of commerce being sold direct or indirectly into the United States. *See* Tr. at 6-11. Second, worldwide sales data provides a greater number of observations, allowing for increased precision in economic models. *See* Tr. at 11-14. And finally, worldwide data allows for the benchmarking of pre- and post-periods to help isolate the overcharge due to the conspiracy. *See* Tr. at 15-17. The order held: "For the reasons stated on the record, the court finds that worldwide transaction-level sales and cost data for lithium ion battery cells and packs is relevant." ECF No. 624 at 2. Sales of batteries that are incorporated into finished products that are only sold overseas, and are never imported into the United States, fall at the extreme end of this relevance.

As with all discovery, relevance is balanced against burden. The Court ordered Objecting Defendants who articulated burden to meet and confer with Plaintiffs and develop a process for identifying and verifying that information falls within the Court's definition of irrelevant data regarding a "foreign finished product." This, Toshiba has not done. Unlike Objecting Defendants Panasonic and Sanyo, Toshiba failed to provide any information to substantiate its withholding of the data. Toshiba failed to meet and confer by January 29, 2015 and to file a joint letter regarding outstanding disputes by February 9, 2015—the deadlines the Court imposed for the Objecting Defendants. Instead, Toshiba buried its decision to withhold these data in a production transmittal letter sent at the close of business on the deadline for production.

Despite the passage of all pertinent deadlines, Plaintiffs requested further information regarding the withheld data, specifically: (1) the entities involved on each side of the transactions; (2) how those entities fit within Toshiba's corporate structure (e.g., are they divisions, subsidiaries, or affiliates; where are they located; who are their other customers or suppliers of lithium ion battery cells and/or packs); (3) the products sold and their end uses; (4) the time period of the sales; (5) the names and locations of each end customer; and (6) the specific basis for Toshiba's belief that as to each of those sales, the cells and packs were incorporated into finished products that were neither sold in the United States nor destined for United States buyers. Objecting Defendants Sanyo and Panasonic timely provided this information when they sought to withhold data. In contrast, Toshiba refused, asserting that this information was "not pertinent to relevance." In this joint letter, Toshiba states only that the data "overwhelmingly" (not completely) relates to batteries sold to Toshiba's affiliated "Mobile Company" for use in mobile phones destined for Japan. That statement lacks transparency. It fails to provide any detail sufficient to satisfy Plaintiffs that these sales relate solely to foreign finished products. Moreover, Toshiba fails to mention here that it told Plaintiffs on March 3, 2015 that the data also pertains to notebook battery sales. Simply put, Toshiba has not met its burden to show that these batteries did not end up in the United States.

The nature of discovery requires that parties adhere to their agreements. Toshiba has abused the discovery process and wasted Plaintiffs' time and the Court's resources by forcing this motion. Allowing Toshiba to withhold data it agreed, and was ordered, to produce will encourage it to exploit other opportunities to game the system. That result would be intolerable.

## II.     TOSHIBA'S POSITION

Plaintiffs have no basis to compel the production of irrelevant data. As Plaintiffs have been informed, the data they seek is data regarding Toshiba's internal sales of lithium ion battery cells and packs to certain foreign, Toshiba-affiliated, finished product manufacturing entities for incorporation into finished products that were neither destined for, nor sold in, the United States. Plaintiffs' requested relief is plainly at odds with the Court's prior Order stating that such data is irrelevant to this case, regardless of the Defendant, and with Plaintiffs' own representations to the Court and to Toshiba. Plaintiffs make no attempt now to argue that this data is relevant. And, Toshiba has preserved all rights to withhold irrelevant data. In any event, Plaintiffs suffer no prejudice from the withholding of indisputably irrelevant data.

### A.     Plaintiffs Cannot Compel the Production of Irrelevant Information

#### 1.     Toshiba Preserved All Objections Regarding Relevance

In August 2014, Plaintiffs requested that Defendants produce transaction-level sales data for worldwide sales of lithium ion battery cells and packs. In October 2014 Toshiba responded to Plaintiffs' requests for production of this data. In its response, Toshiba specifically stated: "TSB objects to this Request to the extent that it seeks data that are not relevant to Plaintiffs' claims." *See* Toshiba Corporation's Objections and Responses to Plaintiffs' Second Set of Requests for Production of Documents to Defendants, Responses to Request Nos. 1 and 2. Toshiba further responded: "TSB objects to this Request because it seeks data 'for all worldwide sales or transfers,' and as a result seeks information regarding sales outside the United States and unrelated to United States commerce, as such sales are beyond the scope of this litigation and production of such information would render these requests overly broad, unduly burdensome

and not reasonably calculated to lead to the discovery of admissible evidence." *Id.* Nevertheless, Toshiba stated that subject to its objections, Toshiba would produce worldwide transactional sales data. *Id.* For, among other reasons, it was not feasible to identify whether individual sales were destined for the United States in the data Toshiba had identified at that time.

The December 16, 2014, Joint Discovery Letter does not state Toshiba will produce irrelevant data. That letter—filed prior to the Court's ruling regarding relevance of foreign data—states that Toshiba's anticipated production would include worldwide transaction-level sales and cost data. Toshiba at all times maintained its objections stated in its Responses to Plaintiffs' Request for Production.

### 2.    Toshiba Demonstrated Why Data Withheld Is Irrelevant

On December 23, 2014, the Court issued an Order stating that "the Court finds that the following information is irrelevant: data relating to sales to foreign companies of cells and packs incorporated into finished products that were neither sold in the United States nor destined for United States buyers. *See* ECF No. 624 at 2 (the "December Order"). And, at the prior hearing, the Court stated that it would rule similarly for any Defendant who could make the requisite showing that the data at issue is irrelevant. Dec. 18, 2014 Hearing Tr. at 89:2-8

On December 30, 2014, Toshiba produced its transactional sales data of lithium ion batteries sold to external customers. Although it would have been entitled to do so by the December Order, that data was produced without restriction on the location of the customer, or whether those batteries were used in finished products sold in the United States or elsewhere. Also included in the production was transactional sales data from Toshiba Corporation's U.S. distributor, Toshiba America Electronic Components, Inc. ("TAEC"), a company that is not a Defendant.

On February 6, 2015, *after* Toshiba's initial production, Plaintiffs sent a letter to Toshiba stating that it need not produce data regarding cells and packs for which Toshiba can demonstrate were not incorporated into finished products that were sold in the U.S. or destined for U.S. buyers and cited the December Order. *See* February 6, 2015 Letter from E. Pritzker to A. Black ("All Toshiba cell and pack sales are relevant unless Toshiba can demonstrate that they were not incorporated into finished products that were sold in the U.S. or destined for U.S. buyers. *See* Order on Joint Discovery Letter re Worldwide Transaction Data at 2 (N.D. Cal. Dec. 23, 2014), ECF No. 624.").

On February 27, 2015, Toshiba made a timely production of transactional data reflecting internal sales of lithium ion battery cells and packs that were sold to Toshiba-affiliated finished product manufacturing entities in Asia. The produced internal sales data included among other things data for sales of lithium ion battery cells and packs used in the manufacture of those Toshiba-branded laptops destined for and sold in the United States. The produced data also included information on lithium ion battery cells and packs used by a Toshiba-affiliated entity that manufactured mobile telephones. Not included in the production was information regarding Toshiba's internal sales of batteries where the Toshiba-affiliated entity was located abroad and where the battery was not for use in a finished product that was sold in the United States nor destined for United States buyers. The cover letter accompanying the production specifically informed Plaintiffs that the production did not include data that the Court had already determined to be irrelevant. *See* February 27, 2015 Letter to Plaintiffs ("Toshiba is not producing internal

sales data regarding LIBs used in finished products that were neither sold in the United States nor destined for United States buyers. *See* ECF No. 624.").

On March 3, 2015, Toshiba's counsel met and conferred with Plaintiffs to explain Toshiba's production of internal sales data. In response to Plaintiffs' questions as to why the withheld data was not mentioned in previous a meet and confer, Toshiba responded that that the existence of irrelevant sales within Toshiba's internal sales data was something that had only come to light shortly before the production.

As to the irrelevant data itself, counsel explained that the data set included a customer field that identified the Toshiba-affiliated entities, located in Asia, that manufactured finished products using Toshiba's lithium ion battery cells or packs. The irrelevant data also includes sufficient information for Toshiba to identify where those products were sold. Unlike transactions with third parties, Toshiba knows the destination of the cells and packs reflected in the data because the sales were internal. At the meet and confer, Toshiba provided Plaintiffs sufficient information to establish that the data is irrelevant. Toshiba described its understanding that: (1) the transactions were between Toshiba's Battery & Energy ("BE") division and Toshiba-affiliated entities, such as "Mobile Company" and "PC Company", with the overwhelming majority of the data relating to transactions with Mobile Company; (2) the sales to Mobile Company were for use in mobile phones largely destined for Japan (and none were destined to the United States); (3) the sales to PC Company were for notebook computers not sold to the United States; and (4) Toshiba knew the cells and packs were incorporated into finished products not sold in the United States because these Toshiba-affiliated entities incorporated the cells and packs into finished products and sold them. Toshiba attempted to provide further information, but Plaintiffs aborted the meet and confer process and refused to allow Toshiba to do so.[1]

Plaintiffs' sent an email on March 5, 2015, demanding that Toshiba explain within 24 hours not only further information regarding the relationship of the affiliates but also further specifics such as the names and specifics of each customer, the type of battery, and time periods for the sales. It also demanded to know who currently has possession of the irrelevant data. When Toshiba informed Plaintiffs that they would respond to the list of questions no later than March 10, 2015, Plaintiffs immediately declared an impasse and said they would move to compel.

### 3. Production Of Irrelevant Information Is An "Inherently Undue Burden"

Only information that is relevant to a claim at issue need be produced. Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." The Court has already confirmed this common-sense rule in the December Order. *See also Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, No. CV058493AG (SHX), 2007 WL 4357552, at *4 (C.D. Cal. June 25, 2007) (upholding a magistrate's ruling that "even the broad rules of discovery do not require the [opposing party] to disclose this irrelevant information.").

---

[1] Toshiba is willing, as its compromise, to re-enter the meet and confer process with Plaintiffs on this topic.

Pursuant to Rule 26(2)(C)(iii), the Court should weigh the burden of producing the information against need for the information in the case. *See also Thompson v. C&H Sugar Co.*, No. 12-CV-00391 NC, 2014 WL 595911, at *4 (N.D. Cal. Feb. 14, 2014) (denying a motion to compel production where the benefits of production were outweighed by the burden). But, with respect to irrelevant data, any burden is too high. *See, e.g.*, *Rich v. Shrader*, No. 09-CV-0652-AJB BGS, 2013 WL 3710806, at *9 (S.D. Cal. July 11, 2013). In *Shrader*, the plaintiffs moved to compel production of documents already produced to them in a separate litigation. Plaintiffs admitted that the relevance of the documents may be "tenuous," but argued that the court should order production because there was no real burden in reproducing the documents. The court, nevertheless denied the motion concluding even this burden was too high. Similarly, in *Carrera v. First Am. Home Buyers Protection Co.*, No. 13CV1585-BAS JLB, 2014 WL 3695403, at *1 (S.D. Cal. July 23, 2014), the court stated the burden of showing that harm or prejudice can result from production of requested information is met where the party demonstrates that the discovery sought is irrelevant. The court further stated that "[t]he compulsion of production of irrelevant information is an inherently undue burden." *Id.*

### 4.     Plaintiffs Have Previously Stated That This Type Of Data Is Irrelevant

The December Order is clear that foreign sales data for products destined for a location outside the United States is not relevant in this case. Indeed, during the December 18, 2014 hearing, Plaintiffs repeatedly acknowledged that data regarding cells and packs incorporated into finished products that were not sold in the United States are irrelevant. *See, e.g.*, Dec. 18, 2014 Hearing Tr. at 43:15-17 (confirming example of a cell incorporated into a laptop in India and sold in China is irrelevant); 45:11-14 (stating that if a Defendant can show that a cell is sold to a Russian company for incorporation into Russian goods, such data would be irrelevant). Further, following the Court's Order—and after Toshiba had completed its initial production—Plaintiffs confirmed that Toshiba need not produce data regarding cells and packs for which Toshiba can demonstrate were not incorporated into finished products that were sold in the U.S. or destined for U.S. buyers. *See* February 6, 2015 Letter from E. Pritzker to A. Black. Despite these representations, Plaintiffs nevertheless seek to compel the production of this data. Plaintiffs to-date have articulated no basis why this data is irrelevant as to other Defendants but somehow relevant as to Toshiba. Nor have they offered any explanation why they should not be bound to their representations. Their argument that Toshiba somehow "waived" any objections necessarily ignores the fact that Plaintiffs themselves are the ones that waived any attempt to seek the irrelevant data now.

### 5.     This Court's Prior Order Applies to Toshiba

Plaintiffs are simply wrong to assert that the December Order does not apply to Toshiba. During the December 18, 2014 hearing, after both Plaintiffs and Defendants presented their arguments about the production of worldwide data, the Court ruled that data regarding sales of cells and packs to foreign companies making foreign goods could be withheld because such data is irrelevant. Dec. 18, 2014 Hearing Tr. at 81:20-82:3; 82:18-83:6. Additionally, the Court made clear that any further rulings on cell and pack data for cells and packs sold abroad and incorporated into finished products sold abroad by any Defendant would be consistent with its decision regarding the data of Sony, NEC, and Sanyo.

> THE COURT: Okay. So here's what we'll do. You – You've heard my ruling. Any ruling I make on this will be consistent with what I've done with Sony and NEC and Sanyo.
>
> . . . If ***any Defendant*** wants to carve out that information of truly foreign goods and can – and will bear the burden of showing that they're truly foreign goods, then I'm going to allow that.

Dec. 18, 2014 Hearing Tr. at 89:2-8 (emphasis added). The logic of the Court's ruling is clear. It would make no sense to deem data relevant for some Defendants but not others. Indeed, one of the primary purposes of consolidation into a multidistrict litigation is to avoid unnecessary and duplicative discovery rulings. *See Orthopedic Bone Screw Products Liability Litig.*, 79 F.3d 46, 48 (7th Cir. 1996).

Plaintiffs cannot flip-flop regarding the relevance of categories of data. But by seeking to compel production of the data at issue, Plaintiffs appear to be doing exactly that. Plaintiffs argue that the Court's ruling as to the relevance of this type of data does not apply to Toshiba because Toshiba was not one of the Defendants party to that dispute. But, a decision on the relevance of certain information to Plaintiffs' claims applies equally to all Defendants, as this Court has explicitly stated. Dec. 18, 2014 Hearing Tr. at 89:2-8. Discovery in large MDL proceedings is complex and burdensome, and Toshiba should not be forced to undergo the burden of producing data that is irrelevant and will not be used. *See In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328, 331 (N.D. Cal. 1985) ("Discovery is not now and never was free. Discovery is expensive. . . . It is no longer sufficient, as a precondition for conducting discovery, to show that the information sought 'appears reasonably calculated to lead to the discovery of admissible evidence.' After satisfying this threshold requirement counsel also must make a common sense determination, taking into account all the circumstances, that the information sought is of sufficient potential significance to justify the burden the discovery probe would impose . . . .").

### B. Conclusion

Toshiba has consistently maintained that the information Plaintiffs seek in this motion is irrelevant. That Toshiba agreed to produce worldwide data prior to the Court's December Order does not transform irrelevant data into relevant data. Plaintiffs have suffered no prejudice by Toshiba's withholding of the data at issue as the data has already been ruled irrelevant. The Court should deny Plaintiffs' motion to compel.

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP  PEARSON, SIMON & WARSHAW, LLP

By */s/ Shana E. Scarlett*  By */s/ Aaron M. Sheanin*
   SHANA E. SCARLETT     AARON M. SHEANIN

Jeff D. Friedman (SBN 173886)  Bruce L. Simon (SBN 96241)
715 Hearst Avenue, Suite 202  Benjamin E. Shiftan (SBN 265767)
Berkeley, CA 94710  44 Montgomery Street, Suite 2450
Telephone: (510) 725-3000  San Francisco, CA 94104

Facsimile: (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP

By  */s/ Brendan P. Glackin*
      BRENDAN P. GLACKIN

Eric B. Fastiff (SBN 182260)
Elizabeth J. Cabraser (SBN 83151)
Richard M. Heimann (SBN 63607)
Joy A. Kruse (SBN 142799)
Marc A. Pilotin (SBN 266369)
Lin Y. Chan (SBN 255027)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
ecabraser@lchb.com
rheimann@lchb.com
efastiff@lchb.com
jakruse@lchb.com
bglackin@lchb.com
mpilotin@lchb.com
lchan@lchb.com

COTCHETT, PITRE & McCARTHY, LLP

By  */s/ Steven N. Williams*
      STEVEN N. WILLIAMS

Joseph W. Cotchett (SBN 36324)
Nancy L. Fineman (SBN 124870)
840 Malcolm Road
Burlingame, CA 94010

Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswplaw.com
asheanin@pswplaw.com
bshiftan@pswplaw.com SAVERI & SAVERI,
INC.

By */s/ Carl N. Hammarskjold*
      CARL N. HAMMARSKJOLD

R. Alexander Saveri (SBN 173102)
Geoffrey C. Rushing (SBN 126910)
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
rick@saveri.com
grushing@saveri.com
carl@saveri.com

BERMAN DEVALERIO

By */s/ Todd A. Seaver*
      TODD A. SEAVER

Joseph J. Tabacco, Jr. (SBN 75484)
Jessica Moy (SBN 272941)
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
jtabacco@bermandevalerio.com
tseaver@bermandevalerio.com
jmoy@bermandevalerio.com

***Co-Lead Counsel for Direct Purchaser
Plaintiffs***

WHITE & CASE LLP

By */s/ J. Frank Hogue*
      J. FRANK HOGUE

Christopher M. Curran (*pro hac vice*)
J. Frank Hogue (*pro hac vice*)
701 Thirteenth Street, NW
Washington, DC 20005

Telephone: (650) 697-6000
Facsimile: (650) 697-0577
jcotchett@cpmlegal.com
nfineman@cpmlegal.com
swilliams@cpmlegal.com

**Co-Lead Counsel for Indirect Purchaser Plaintiffs**

Telephone: (202) 626-3600
Facsimile: (202) 639-9355
ccurran@whitecase.com
fhogue@whitecase.com

**Counsel for Toshiba Corporation**


# ATTESTATION

I, Aaron M. Sheanin, hereby attest, pursuant to Northern District of California, Local Rule 5-1(i)(3), that concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: March 11, 2015          By:  */s/ Aaron M. Sheanin*
                                    Aaron M. Sheanin

862517.2