UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>LITHIUM ION BATTERIES ANTITRUST LITIGATION | Case No. 13-md-02420-YGR (DMR)<br><br>**ORDER RE PLAINTIFFS' MOTION TO COMPEL DEPOSITION OF SEOK HWAN KWAK**<br><br>Re: Dkt. No. 764 |

Plaintiffs and Defendants LG Chem Ltd. and LG Chem America, Inc. ("LG Chem") filed a joint discovery letter brief regarding Plaintiffs' motion to compel LG Chem to produce Seok Hwan Kwak for deposition. [Docket No. 764 (Joint Letter).] In the joint letter, Plaintiffs contend that LG Chem violated the terms of the deposition protocol governing this case. They ask the court to order LG Chem to make Kwak available for deposition pursuant to Federal Rule of Civil Procedure 30(b)(1), rather than utilizing the procedures of the Hague Convention to secure his appearance. They also seek leave to move for monetary sanctions.

On August 14, 2015, the court ordered Plaintiffs to submit evidence and correspondence cited in the letter, which Plaintiffs timely filed. [Docket No. 795.] The court conducted a hearing on September 10, 2015. For the following reasons as well as those stated at the hearing, Plaintiffs' motion is GRANTED.

**I. Background**

**A.    The Parties' Deposition Protocol**

In August 2014, the parties submitted a joint letter brief addressing several contested provisions of a proposed deposition protocol. [Docket No. 501 (Joint Letter re Depo. Protocol).] One of the disputes involved the implementation of a deposition protocol for departing employees, including a notification procedure. Plaintiffs asked the court to order the implementation of a procedure by which Defendants would (1) give notice if an employee identified by Plaintiffs as a

1  custodian or possible witness ceased employment, and (2) produce the witness for deposition to
2  the extent reasonably possible before or after departure.  Plaintiffs argued this procedure was
3  necessary to avoid "complicated, lengthy proceedings for the issuance of letters rogatory" since
4  most custodians and witnesses are located overseas and beyond the reach of a Rule 45 subpoena.
5  (Joint Letter re Depo. Protocol 3.)  Plaintiffs proposed that these requirements apply first to the
6  custodians for the grand jury document productions,[1] before the establishment of witness or
7  custodian lists.  (Joint Letter re Depo. Protocol 2.)  Defendants objected, arguing that such a
8  procedure would be unduly burdensome.  (Joint Letter re Depo. Protocol 3.)

At the November 10, 2014 hearing on the joint letter, the court ordered the parties to implement Plaintiffs' proposed procedure and granted Plaintiffs leave to establish so-called "watchlists" of up to fifteen custodians or witnesses per Defendant group for whom the notification and production requirements would apply.  The court questioned Plaintiffs' counsel, asking, "[r]ight now that [watch]list has the [DOJ] custodians, right?"  Counsel for Plaintiffs confirmed that this was correct. [Docket No. 559 (Hr'g Tr. Nov. 10, 2014, 37-38).]  Two attorneys representing LG Chem were present at the hearing.  [*See* Docket No. 545 (Minute Order).]

On December 3, 2014, this court entered its Order re Deposition Protocol.  [Docket No. 593 (Deposition Protocol).]  The Deposition Protocol provided that for each individual on Plaintiffs' watchlists, "Defendants shall timely inform Plaintiffs in writing if they become aware that such person intends to leave, or does leave, his or her employment, to the extent reasonably possible," and that upon request, "Defendants shall make that person available for deposition either before or after his or her departure, to the extent reasonably possible."  (Deposition Protocol § I (C).)

**B.    Seok Hwan Kwak**

Seok Hwan Kwak is a former Vice President of LG Chem's battery business.  According to Plaintiffs, he played "a pivotal role" in the alleged conspiracy.  LG Chem admits in

---

[1] Certain Defendants produced documents to the U.S. Department of Justice ("DOJ") and/or a grand jury in connection with investigations relating to lithium ion batteries or battery products.

2

interrogatory responses that Kwak participated in 11 meetings and communications with Sony, Panasonic, and Sanyo between 2001 and 2005.[2] Kwak also drafted documents describing meetings allegedly related to the conspiracy, including a 2004 meeting between LG Chem and Sony in which he described Sony's request "for mutual collaboration" regarding pricing. (Joint Letter 1-2.) Plaintiffs assert that Kwak "is the only current LG Chem employee who can testify about meetings early in the class period." (Joint Letter 2.) Kwak was a custodian who produced documents to the Department of Justice ("DOJ") prior to LG Chem's guilty plea.

On January 9, 2015, LG Chem notified Plaintiffs that Kwak, a resident of Korea, had "suddenly" left LG Chem in December 2014 and should be considered a former employee. (*See* Sheanin Decl., Aug. 18, 2015, Ex. 2.) On February 6, 2015, Plaintiffs made a written request for Kwak's deposition, noting that as a DOJ custodian, Kwak had been on Plaintiffs' watchlist for purposes of the Deposition Protocol. In response, LG Chem responded that Kwak was "a former employee" who "had left the firm very suddenly" without advance warning. (Sheanin Decl. Exs. 1, 2.) On March 4, 2015, Plaintiffs asked for more information about Kwak, including whether he had any current or continuing employment or quasi-employment relationship with LG Chem or any of its affiliates. (Sheanin Decl. Ex. 3.) In response, LG Chem stated "Mr. Kwak does not have an employment or quasi-employment relationship with LGC or any of their subsidiaries or affiliates." (Sheanin Decl. Ex. 4.)

On March 13, 2015, Plaintiff asked LG Chem to provide additional details of Kwak's departure from LG Chem, including the circumstances and timing of his separation from the company. They also amended their watchlist pursuant to the Deposition Protocol, identifying fifteen individuals. (Sheanin Decl. Ex. 5.) Plaintiffs did not include Kwak on their watchlist. In its March 23, 2015 response, LG Chem reiterated its position that "Mr. Kwak left too quickly to

---

[2] In September 2013, LG Chem, Ltd. pled guilty to engaging in a criminal conspiracy to fix the prices of cylindrical lithium ion battery cells sold in the United States and elsewhere for use in notebook computer battery packs. At the October 2013 plea hearing, LG Chem, Ltd.'s representative testified that officers within LG Chem, Ltd.'s battery division participated in "about 20 or 30" discussions or meetings related to the charged conspiracy. *See In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420-YGR (DMR), 2015 WL 1223972, at *1 (N.D. Cal. March 17, 2015).

permit LGC to provide advance notice to Plaintiffs." It also stated that it had not failed to comply with the Deposition Protocol regarding the notification procedure, since Plaintiffs "did not act to identify an LG[Chem] watchlist" until the March 13, 2015 letter. (Sheanin Decl. Ex. 6.) LG Chem subsequently notified Plaintiffs that Kwak refused to voluntarily appear for a deposition. (Sheanin Decl. Ex. 7.)

In response to document requests propounded by Plaintiffs, LG Chem produced Kwak's employment records in April 2015. In July 2015, LG Chem produced a declaration from an LG Chem Human Resources employee, Dokyun Kim, which provided more details about Kwak's termination.

Plaintiffs contend that the information produced by LG Chem shows that Kwak was actually employed by LG Chem at least through March 31, 2015, and argue that LG Chem should have produced Kwak for deposition in response to their February 6, 2015 request. They also assert that Kwak remains a managing agent of LG Chem, and is therefore subject to deposition by Rule 30(b)(1) notice. LG Chem disputes Plaintiffs' characterization of Kwak's status, maintaining that Kwak left the company in December 2014. It argues that because Kwak is a former employee who refuses to appear voluntarily, it cannot be compelled to produce him for deposition.

## II. Discussion

As a preliminary matter, the court finds without merit LG Chem's argument that Kwak was never on Plaintiffs' watchlist and thus it had no duty to provide any information about Kwak's employment status at any point. LG Chem argues that Plaintiff did not identify a watchlist until March 13, 2015, long after Kwak's purported December 2014 departure. It also notes that Kwak was not included on Plaintiffs' March 2015 list. However, the initial watchlists included the DOJ custodians, as confirmed by the court at the November 2014 hearing. There is no dispute that Kwak was a DOJ custodian and a current LG Chem employee at that time. Therefore, Kwak was on Plaintiffs' watchlist as of November 10, 2014, and accordingly subject to the requirements of the deposition protocol.[3]

---

[3] Although LG Chem notes that Kwak was not included on Plaintiffs' March 2015 list, by that time, LG Chem had repeatedly represented that Kwak was no longer employed by LG Chem.

4

### A. Whether LG Chem Complied With the Deposition Protocol

Plaintiffs argue that Kwak's employment records and documents attached to the Kim declaration establish that LG Chem misrepresented Kwak's employment status. According to Plaintiffs, LG Chem's records demonstrate that Kwak was employed by LG Chem through at least March 31, 2015, three months after LG Chem informed Plaintiffs that Kwak had suddenly left the company, and over two months after Plaintiffs first requested Kwak's deposition.

Kwak's personnel records, dated April 8, 2015, indicate that he began his employment with LG Chem in 1996, and that he held the position of Vice President in the Power Storage Battery, Marketing division from January 1, 2014 to December 31, 2014. His records include a "Transfer to a New Department" on January 1, 2015, and show that he retained his title of Vice President in the Advisor's Office until March 31, 2015. On April 1, 2015, his status changed from Vice President to "Consultant" in the Advisor's Office. His duties in his two positions in the Advisor's Office are listed as "Business Consultation," and it appears he received compensation in each position. (Sheanin Decl. Ex. 8 (LGC-MDL0005426E).) Notably, these documents contain no indication that he resigned, retired, or was terminated. Plaintiffs claim the absence of such information is inconsistent with the personnel files of two other former LG Chem employees, which contain evidence of their resignations from the company. Plaintiffs also submit pages from Kwak's Linkedin profile, dated August 6, 2015, which state that Kwak was a Vice President in LG Chem's Energy Storage System Business Department from January 2012 through March 2015, and has been an "Advisor" to LG Chem from April 2015 to the present. (Sheanin Decl. Ex. 9.)

On July 27, 2015, LG Chem produced the Kim declaration to furnish additional details about Kwak's employment. (Sheanin Decl. Ex. 10 (Kim Decl., July 22, 2015).) Kim states that since 2015, he has been "Team Leader of the HR Planning Team under Chief Human capital Officer of LG Chem." (Kim Decl. ¶ 1.) According to Kim, the effective date of Kwak's separation from LG Chem was December 2, 2014, after which Kwak "stopped coming to LG Chem's offices and stopped performing any work," and that to Kim's knowledge, Kwak "ceased

---

Plaintiffs were entitled to rely on LG Chem's representations and replace Kwak on their watchlist.

to have any business-related communications with his fellow employees at LG Chem." (Kim Decl. ¶¶ 3, 7.) However, in a notice given to Kwak, LG Chem stated that it would continue to pay him full compensation and other benefits, including use of a company vehicle, mobile phone, health benefits, and children's education expenses, through March 31, 2015. (Kim Decl. Ex. A.) Kim states that from January 1, 2015 to the end of March 2015, Kwak held a "transitional status, which was, as is typical for such former upper management, listed in his personnel file as 'business advisor' position." (Kim Decl. ¶ 6.)

On April 1, 2015, Kwak's title changed from Vice President to Consultant, as reflected in his personnel records, and it appears that he will continue to receive significant compensation from LG Chem until April 2016. (Sheanin Decl. Ex. 8; Kim Decl. Ex. C.) Kim states that it is his understanding that Kwak is presently employed by another company, ANP Corporation, and that Kwak has refused to voluntarily participate in a deposition. (Kim Decl. ¶ 12.)

In light of this evidence, the court concludes that LG Chem failed to comply with the watchlist provision of the deposition protocol. The notification procedure provides that "Defendants shall timely inform Plaintiffs in writing if they become aware that [a person on the watchlist] intends to leave, or does leave, his or her employment, to the extent reasonably possible." LG Chem contends that Kwak's employment ended on December 2, 2014, (Kim Decl. ¶ 3), but by its own admission, it did not notify Plaintiffs of that fact until over a month later, on January 9, 2015. The purpose of the watchlist provision is to give Plaintiffs sufficient notice of a witness's departure so that a defendant can promptly produce him or her for deposition to avoid complicated, lengthy proceedings for the issuance of letters rogatory. LG Chem's only explanation for why it waited over a month to alert Plaintiffs of Kwak's departure is that it believed that Plaintiffs had *not* established a watchlist at that time. As discussed above, however, the court confirmed the watchlists as of November 10, 2014. LG Chem's untimely notification violated the watchlist notification provision of the protocol.

The protocol also states that "[u]pon Plaintiffs' request, Defendants shall make [a person on the watchlist] available for deposition either before or after his or her departure, to the extent reasonably possible." Plaintiffs formally requested Kwak's deposition on February 6, 2015. LG

Chem's own personnel records indicate that Kwak held the title of Vice President until March 31, 2015, and LG Chem paid him full compensation and benefits through that date, and indeed, continues to pay him compensation. The March 31, 2015 date is consistent with Kwak's own representations on his Linkedin page that he was a Vice President through March 2015. Notwithstanding Kim's statement that Kwak stopped performing any work for LG Chem after December 2, 2014, at the very least, the manner in which LG Chem and Kwak held out their relationship through March 31, 2015 is inconsistent with the company's unequivocal representations to Plaintiffs that Kwak did not have "an employment or quasi-employment relationship" with LG Chem. (*See* Sheanin Decl. Exs. 4, 6.) Since Kwak was on Plaintiffs' watchlist and continued to maintain his title and receive full pay and benefits through March 31, 2015, LG Chem should have produced him for deposition in response to Plaintiffs' February 2015 request. By failing to do so, LG Chem violated the watchlist production provision of the protocol.

**B.     Whether Kwak May Be Deposed Pursuant to Rule 30(b)(1) Deposition Notice**

As discussed above, the court finds that under the terms of the deposition protocol, LG Chem should have produced Kwak for deposition pursuant to Plaintiffs' February 2015 request. LG Chem argues that Kwak's present status is that of a former employee, and that as a former employee, he is not a "managing agent" and thus not subject to deposition by notice pursuant to Rule 30(b)(1).

Pursuant to Federal Rule of Civil Procedure 30, a party may request the deposition of another party to the litigation by serving a notice upon that party. Fed. R. Civ. P. 30(b)(1). "However, a corporate employee or agent who does not qualify as an officer, director, or managing agent is not subject to deposition by notice." *United States v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994). If the witness is located in another country, the party seeking the deposition must utilize the procedures of the Hague Convention or other applicable treaty. *Id.*

Courts generally consider the following factors to determine if a proposed witness is a managing agent:
> 1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; (2)

7

> whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; (3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; (4) the general responsibilities of the individual *respecting the matters involved in the litigation*.

*Calderon v. Experian Info. Sols., Inc.*, 287 F.R.D. 629, 632 (D. Idaho 2012) (emphasis in original) (citations omitted). The factors have also been described as "[(1)] whether the corporation has invested the person with discretion to exercise his judgment; (2) whether the employee can be depended upon to carry out the employer's directions, and (3) whether the individual can be expected to identify him or herself with the interests of the corporation as opposed to the interests of the opposing party." *Id*. (quoting *In re Honda Am. Motor Co., Inc. Dealership Relations Litig.*, 168 F.R.D. 535, 540-41 (D. Md. 1996)). "[T]he question of whether a particular person is a 'managing agent' is to be answered pragmatically, on an ad hoc basis, considering the facts of the particular case. Further, at least where the question is whether the deposition should occur, as opposed to whether the corporation may ultimately be bound by the employee's statements . . . the witness's likely 'identification with the interests of the employer'—is said to be the 'paramount test.'" *Calderon*, 287 F.R.D. at 632. At the discovery stage, "all doubts are to be resolved in favor of the party seeking discovery." *Id.* Thus, if there is "at least a 'close question' as to the managing agent status of a potential witness, doubts should be resolved in favor of allowing the deposition, with the final determination of whether the agent has the ability to bind the corporation to be left for trial." *Id.*

The determination of an individual's status as a managing agent is "determined as of the time of the deposition, not as of the time when the activities disputed in the litigation occurred." *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 268 F.R.D. 45, 49 (E.D. Va. 2010) (citation omitted). However, "courts have made exceptions to this general rule, for example when a corporation terminates an officer in light of pending litigation, plans to rehire the individual in another position, or an individual continues to act as a managing agent despite no longer being an employee." *Rundquist v. Vapiano SE*, 277 F.R.D. 205, 208 (D.D.C. 2011) (citing *Honda*, 168 F.R.D. at 541; *E.I. DuPont de Nemours & Co.*, 268 F.R.D. at 50–51 ("[t]he timing and circumstances of [defendant's] reassignment or termination of its employees render the true status

of the proposed deponents highly suspect, and allow for a strong inference that [defendant] is moving its employees around like chessmen, conveniently shielding them from [plaintiff's] access.")).

LG Chem contends that as a former employee, Kwak cannot be considered a managing agent as a matter of law. Although it is noteworthy that by LG Chem's own admission, Kwak is an "Advisor" and receives compensation from LG Chem, the court need not resolve the question of whether Kwak is presently a current or former employee. In light of LG Chem's violations of the deposition protocol and the fact that Kwak appears to be a key witness with first-hand knowledge of the alleged conspiracy, the court will apply the managing agent test as of February 6, 2015, the date Plaintiffs requested Kwak's deposition.

The first factor, whether Kwak is invested with general powers allowing him to exercise judgment and discretion in corporate matters, weighs against a finding that he is a managing agent. While Kwak maintained his Vice President title through March 2015, it appears undisputed that he was no longer performing his regular duties after December 2, 2014, when he vacated LG Chem's offices and "stopped performing any work." (Kim Decl. ¶ 7.) However, the remaining factors weigh in favor of finding that Kwak was a managing agent in February 2015. While the parties have offered little information about Kwak's status and role within the battery division of LG Chem and the company's overall corporate structure, LG Chem does not deny or contradict Plaintiffs' representations about Kwak's "pivotal role in the conspiracy." (Joint Letter 1.) The managing agent inquiry focuses less on "the title or status of an individual within the corporation"; the individual's "duties and responsibilities respecting the subject matter of the litigation" is more important. *Calderon*, 287 F.R.D. at 634. Kwak participated in 11 meetings and communications early in the class period and drafted documents describing such meetings, and according to Plaintiffs, he is "the only current LG Chem employee who can testify about meetings early in the class period." (Joint Letter 1-2.)

As to the "paramount test," this question focuses on the extent to which Kwak identifies with LG Chem's interests as opposed to Plaintiffs' interests. *See E.I. DuPont*, 268 F.R.D. at 50. As of February 2015, Kwak could certainly be expected to identify himself with LG Chem's

interests, as opposed to Plaintiffs' interests. He had held management positions for LG Chem for nearly twenty years, evidencing a long, close relationship with the company. At that time, he still held the title of Vice President and was receiving full compensation and benefits from LG Chem. There is no indication that Kwak was no longer loyal to the company as of February 2015, and in fact, he continues to hold himself out publicly as an Advisor to LG Chem. For the same reasons, the court finds that Kwak could have been depended upon to carry out LG Chem's direction to give testimony in February 2015.

In sum, based on the record before the court, the court finds that as of February 2015, Kwak was a managing agent for purposes of this litigation. Therefore, he was subject to deposition by notice pursuant to Rule 30(b)(1). Accordingly, as the court announced from the bench at the hearing, the court orders LG Chem to produce Kwak for deposition within thirty days of the September 10, 2015 hearing.

At the hearing, LG Chem's counsel stated that he expected that Kwak's deposition would take place in Korea. If the deposition takes place in Korea, the parties shall cooperate to coordinate scheduling of Kwak's deposition with the depositions of any other witnesses if possible. LG Chem shall also pay for Plaintiffs' reasonable travel costs to Korea for the deposition, including economy class airfare, lodging, and meals for up to two attorneys. LG Chem shall pay for all costs of the deposition, including court reporter and translation expenses, regardless of whether it takes place in Korea or in the United States. Plaintiffs' request for leave to move for additional sanctions is denied.

### III. Conclusion

For the foregoing reasons, Plaintiffs' motion to compel LG Chem to produce Seok Hwan Kwak for deposition is GRANTED. LG Chem shall produce Kwak in accordance with this order within thirty days.

**IT IS SO ORDERED.**

Dated: September 15, 2015



_____
Donna M. Ryu
United States Magistrate Judge

10