1

2                          UNITED STATES DISTRICT COURT

3                         NORTHERN DISTRICT OF CALIFORNIA

4

5    **IN RE: LITHIUM ION BATTERIES**          Master Case No. 4:13-MD-02420
     **ANTITRUST LITIGATION**
6    This Document Relates To:                 MDL No. 2420
     Case No. 4:15-CV-02987-YGR
7                                              Individual Case No.  15-CV-02987-YGR
     **DELL INC., ET AL.,**
8                        Plaintiffs,           **ORDER DENYING DEFENDANT TOSHIBA**
                                               **CORPORATION'S MOTION TO COMPEL**
9         **V.**                               **ARBITRATION WITH DELL**

     **LG CHEM LTD., ET AL.,**                 Re: Dkt. No. 1311, 1312, 1369
10                       Defendants.

11

12          Plaintiffs bring this action against defendants LG Chem, Ltd. and LG Chem America, Inc.

13   (collectively, "LG Chem"), Samsung SDI Co., Ltd. and Samsung SDI America, Inc. (collectively,

14   "Samsung"), and Toshiba Corporation for alleged antitrust violations relating to the sales of

15   lithium ion batteries, cells, and packs spanning a period of eleven years.[1]  Presently, the following

16   claims remain:  (i) violation of the Sherman Act, 15 U.S.C. § 1 against Samsung and Toshiba; (ii)

17   violation of the Sherman Act, 15 U.S.C. § 1 against LG Chem but limited to January 2000 through

18   September 30, 2009; and (iii) breach of contract against Samsung.

19          Now before the Court is defendant Toshiba's motion to compel plaintiffs into arbitration

20   and stay this action pending arbitration.  (Dkt. No. 1312.)  Having carefully considered the

21   pleadings, the papers submitted on this motion, and oral arguments at the hearing on September

22   27, 2016, and for the reasons set forth herein, the Court **DENIES** Toshiba's motion.[2]

23   _____

24          [1]  Plaintiffs have dismissed claims against eight of the thirteen defendants in this case
     namely, Panasonic Corporation and Panasonic Corporation of North America (collectively,
25   "Panasonic"), Sanyo Electric Co. Ltd. and Sanyo North America Corporation (collectively,
     "Sanyo"), Sony Corporation, Sony Energy Devices Corporation, and Sony Electronics, Inc.
26   (collectively, "Sony"), and GS Yuasa Corporation.

27          [2]  Plaintiffs and Toshiba each filed an administrative sealing motion (Dkt. Nos. 1311,
     1369) in connection with their briefing on Toshiba's motion to compel.  The material in question
28   is subject to an earlier Stipulated Protective Order, allowing the parties to designate certain
     documents produced in discovery as highly confidential.  (Dkt. No. 193.)  The Court finds the

United States District Court
Northern District of California

## I.   BACKGROUND

This action alleges a global anti-trust conspiracy to "fix, raise, stabilize, and maintain the prices" of lithium ion batteries ("LIBs") from at least January 1, 2000 through at least May 31, 2011. According to the complaint, defendants engaged in continuous communications with each other "to set prices collusively" and "devis[e] mechanisms to nullify competition in procurements by their customers." (Compl. ¶ 7.)

Throughout this period, plaintiffs allege that they directly purchased more than $3.1 billion worth of LIBs collectively from defendants and their co-conspirators. (*Id.* at ¶¶ 6, 25.) Plaintiffs further allege that some of these purchases were made pursuant to master purchase agreements ("MPAs") with Panasonic, Sanyo, Samsung, and Sony. (*Id.* at ¶ 27.)

Relevant to this motion, the Panasonic and Sanyo MPAs contained arbitration provisions. The Panasonic arbitration provision provides that: "[A]ny remaining dispute, controversy or claim arising out of or related to the subject matter of this Agreement, shall be submitted to final and binding arbitration before and in accordance with the commercial rules of the American Arbitration Association." (Dkt. No. 1311-7 at ¶ 18.1.) The Sanyo arbitration provision provides that: "Any dispute which cannot be resolved between the parties . . . shall be resolved finally and conclusively by binding arbitration conducted in the applicable location of the events that give rise to the dispute, and if in the United States, in accordance with the rules of the American Arbitration Association." (Dkt. No. 1311-8 at ¶ 17.1.) Both MPAs also note that the laws of the state of Texas apply to the agreements. (Dkt. No. 1311-7 at ¶ 18.10; Dkt. No. 1311-8 at 17.1.)

Toshiba and LG Chem did not enter into any MPAs with plaintiffs. Plaintiffs entered into an MPA with Samsung, but that MPA did not include an arbitration provision. Here, Toshiba seeks to enforce the arbitration provisions in the Panasonic and Sanyo MPAs to compel plaintiffs

United States District Court
Northern District of California

requests are sufficiently justified with respect to the underlying documents under the applicable "good cause" standard and, therefore, **GRANTS** the motions to seal the documents in question solely for purposes of resolving the instant motion. *See Kamakana v. City & Cty. of Honolulu,* 447 F.3d 1172, 1179–80 (9th Cir. 2006). The Court **DENIES** the motion to seal the designated excerpts in the parties' papers relating to this motion.

into arbitration.[3]

## II.    LEGAL FRAMEWORK

The Federal Arbitration Act (the "FAA") requires a district court to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement.  9 U.S.C. § 3.  A party may bring a motion in the district court to compel arbitration.  9 U.S.C. § 4.  In ruling on the motion, the court's role is typically limited to determining whether: (i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the agreement is valid and enforceable.  *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

"Both the arbitrability of the merits of a dispute and the question of who has the primary power to decide arbitrability depend on the agreement of the parties."  *Goldman, Sachs & Co. v. Reno*, 747 F.3d 733, 738 (9th Cir. 2014) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *see also Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013).  However, these questions are decided by the arbitrator instead of courts where "the parties clearly and unmistakably" express that intention.  *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.").  An arbitration clause including an agreement to follow a particular set of arbitration rules may constitute such an expression where those rules provide for the arbitrator to decide questions of arbitrability.  *See Poponin v. Virtual Pro, Inc.*, No. 06-CV-4019, 2006 WL 2691418, at *9 (N.D. Cal. Sept. 20, 2006) (finding the ICC Rules of Arbitration clearly "provide for the arbitrator to decide arbitrability").  In such circumstances, the Court's inquiry is limited to determining whether the assertion of arbitrability is "wholly groundless."  *See Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law).

---

[3]  Toshiba is the only party in this action that is seeking to compel arbitration.  LG Chem and Samsung have already filed answers to plaintiffs' complaint.

Non-signatories to an arbitration agreement may, at times, be able to compel signatories into arbitration in situations where state contract law would allow such litigant to do so. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631–32 (2009); *see also Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1130 n.5 (9th Cir. 2013) (explaining that *Andersen* clarified that a "litigant who is not party to an arbitration agreement may invoke arbitration if the relevant state contract law allows the litigant to enforce the agreement") (citing *Arthur Andersen*, 556 U.S. at 632).

## III. DISCUSSION

Toshiba proffers two arguments:  First, Toshiba argues that because a valid arbitration agreement exists between plaintiffs and Panasonic and Sanyo, and those parties agreed to arbitrate arbitrability, the Court must allow the arbitrator to decide whether such agreements extend to Toshiba.  Second, Toshiba argues that under the doctrine of equitable estoppel, it can enforce the arbitration agreement against plaintiffs.  The Court addresses each, in turn.

### A.     Applicability of the Arbitration Agreement to Toshiba

The parties do not dispute that plaintiffs entered into MPAs with Panasonic and Sanyo, and that each MPA included an arbitration provision.  The parties also do not dispute that the arbitration provisions involved an agreement to arbitrate arbitrability.  Despite conceding that it did not enter into any agreements with plaintiffs, Toshiba contends that the existence of valid arbitration agreements is dispositive, and the determination of whether Toshiba falls within the scope of that agreement should be reserved for an arbitrator.

Toshiba, however, offers no support for its proposition that, simply because an arbitration agreement exists, Toshiba, as a non-signatory to such agreements, can compel plaintiffs into arbitration.  Rather, the cases cited by Toshiba state merely the general proposition that antitrust claims arising under purchase contracts are arbitrable, *see Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 636–40 (1985); apply arbitration agreements to non-signatories through the applications of principles of estoppel, *see JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004); or discuss that issues regarding the scope of an arbitration clause are reserved for the arbitrator if that is what the parties agreed, *see, e.g.*, *In re Cathode Ray Tube Antitrust Litig.*, No. 07-CV-5944, 2014 WL 7206620, at *4 (N.D. Cal. Dec. 18, 2014).

United States District Court
Northern District of California

4

These cases do not support Toshiba's assertion that it can compel plaintiffs into arbitration simply on the grounds that plaintiffs entered into arbitration agreements with Panasonic and Sanyo.

To the contrary, the Ninth Circuit has recently addressed the issue, and held otherwise.  In *Mohamed v. Uber Technologies, Inc.*, -- F.3d --, 2016 WL 4651409 (9th Cir. 2016), the Ninth Circuit held that Uber could compel the plaintiffs into arbitration based on the arbitration agreements plaintiffs signed with Uber.  However, the Ninth Circuit also held that another defendant, Hirease, could not do so where it was "not identified as a party or a signatory to the agreement between Uber and the drivers," and other principles of contract law and equity did not otherwise allow Hirease to enforce the arbitration provision as a non-signatory.  *Id.* at *8–10. *Mohamed* reaffirms the fundamental policy of requiring parties to abide by previously agreed upon dispute resolution terms.  *See Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (noting that the FAA's "primary purpose" is "ensuring that private agreements to arbitrate are enforced" and that arbitration is a "matter of consent, not coercion"); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002) (noting that the FAA does not "require parties to arbitrate when they have not agreed to do so") (internal citations and quotations omitted); *cf. Rajagopalan v. Noteworld, LLC*, 718 F.3d 844, 846 (9th Cir. 2013) (noting that where the question "is not whether a particular issue is arbitrable, but whether a particular *party* is bound by the arbitration agreement" that the "liberal federal policy regarding the scope of arbitrable issues is inapposite") (emphasis in original).  Here, no such agreement to arbitrate disputes with Toshiba exists.

Accordingly, Toshiba cannot compel plaintiffs into arbitration absent the existence of special circumstances that would allow it to do so by virtue of plaintiffs' arbitration agreements with Panasonic and Sanyo.

### B.    Equitable Estoppel Doctrine

Toshiba next argues that it can compel plaintiffs into arbitration based on their arbitration agreements with Panasonic and Sanyo pursuant to the doctrine of equitable estoppel.  Non-signatories may enforce arbitration agreements only where the relevant state contract law would allow the litigant to do so.  *Kramer*, 705 F.3d at 1130 n.5 (explaining that *Andersen* clarified that a

United States District Court
Northern District of California

"litigant who is not party to an arbitration agreement may invoke arbitration if the relevant state contract law allows the litigant to enforce the agreement") (citing *Arthur Andersen*, 556 U.S. at 632). Because both arbitration provisions indicate that the laws of the state of Texas apply to the contracts, the Court applies Texas equitable estoppel law to determine whether Toshiba can compel plaintiffs into arbitration.[4]

Under Texas law, "[w]hether an arbitration agreement binds a nonsignatory is a gateway matter to be determined by the court, rather than the arbitrator." *Glassell Producing Co., Inc. v. Jared Res., Ltd.*, 422 S.W.3d 68, 81 (Tex. Ct. App. 2014). Texas law recognizes six theories under which a non-signatory can be bound to an arbitration clause, including one form of equitable estoppel, namely, "direct benefits" estoppel.[5] *See Glassell*, 422 S.W.3d at 80–82 (holding that direct benefit estoppel is the "only form of equitable estoppel recognized in Texas") (citing *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 192–94 (Tex. 2007)); *see also Hays v. HCA Holdings, Inc.*, No. 15-432, 2015 WL 5737963, at *4 (W.D. Tex. Sept. 30, 2015) (citing *In re*

---

[4] Toshiba argues that state law may not be the proper law to apply in this context. Toshiba contends, citing *In re Labatt Food Service, L.P.*, 279 S.W.3d 640 (Tex. 2009), that the Texas Supreme Court has expressed uncertainty as to whether state or federal law governs the enforcement of arbitration provisions by or against non-signatories. *Id.* at 643 (noting that neither the FAA nor the U.S. Supreme Court have addressed whether state law or federal law should apply). However, months after the Texas Supreme Court's decision in *Labatt*, the U.S. Supreme Court actually decided the issue and held that state contract law governs whether equitable estoppel can be used in the context of non-signatory enforcement of arbitration agreements. *Arthur Andersen*, 556 U.S. at 631–32; *see also Kramer*, 705 F.3d at 1130 n.5 (explaining that *Andersen* clarified that a "litigant who is not party to an arbitration agreement may invoke arbitration if the relevant state contract law allows the litigant to enforce the agreement") (citing *Arthur Andersen*, 556 U.S. at 632).

[5] The Texas Supreme Court has rejected the "concerted misconduct" theory of equitable estoppel. Under concerted misconduct estoppel, some courts have held that a non-signatory may enforce the arbitration agreement where it is charged with "interdependent and concerted misconduct" with a party that is a signatory to the arbitration agreement. *See Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528 (5th Cir. 2000). The Texas Supreme Court in *In re Merrill Lynch* held, however, that Texas law does not recognize "concerted misconduct" estoppel explaining that conspiracy "is a tort, not a rule of contract law." *In re Merrill Lynch*, 235 S.W.3d at 194; *see also Al Rushaid v. Nat. Oilwell Varco, Inc.*, 814 F.3d 300, 305 (5th Cir. 2016) (stating that the Texas Supreme Court has foreclosed the "concerted misconduct" theory of equitable estoppel); *see also Glassell*, 422 S.W.3d at 81 (explaining that the Texas Supreme Court "rejected the second prong of *Grigson*, which includes intertwined claims or concerted misconduct").

*Merrill Lynch*, 235 S.W.3d at 194).[6]  Under the direct benefits theory of estoppel, equitable estoppel will allow parties to apply arbitration agreements to non-signatories where the claim "seeks a direct benefit from a contract containing an arbitration clause."  *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131–32 (Tex. 2005).  In other words, equitable estoppel applies "if liability arises solely from the contract or must be determined by reference to it.  On the other hand, claims can be brought in tort (and in court) if liability arises from general obligations imposed by law." *Id.* at 132; *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739–40 (Tex. 2005). Accordingly, an analysis of whether direct benefits estoppel applies begins with an analysis of the pleadings to determine the nature of plaintiffs' claims.  *See Al Rushaid*, 814 F.3d at 305.

Here, plaintiffs bring only one claim against Toshiba:  a violation of 15 U.S.C. § 1. (Compl. ¶¶ 293–303.)  Plaintiffs have alleged that Toshiba conspired with other parties to "fix, raise, stabilize, and maintain prices" for LIBs, and as a result, plaintiffs have been harmed "by being forced to pay inflated, supra-competitive prices" for LIBs.  (*Id.* at ¶¶ 296, 299.)  Plaintiffs argue that such a claim does not fall within the purview of direct benefits estoppel because it does not depend on an interpretation of the MPAs.  Plaintiffs further argue that even if they had never entered into any MPAs with any party, they could still have brought antitrust claims against

---

6   Some courts have suggested that the Texas Supreme Court has implied that an "intertwined claims" theory of equitable estoppel may also be viable in Texas.  *See Hays*, 2015 WL 5737963, at *4 (citing *In re Merrill Lynch*, 235 S.W.3d at 192–94).  In *In re Merrill Lynch*, the Texas Supreme Court acknowledged that federal circuit courts have "estopped signatory plaintiffs from avoiding arbitration with nonsignatories using an 'intertwined-claims' test."  *In re Merrill Lynch*, 235 S.W.3d at 193.  Citing the Second Circuit, the Texas Supreme Court explained that under such test, a non-signatory defendant may compel arbitration where it has a "'close relationship' with one of the signatories and the claims are 'intimately founded in and intertwined with the underlying contract obligations.'"  *Id.* (citing *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)).  The Texas Supreme Court further explained that the "close relationship" requirement is generally limited to "instances of strategic pleading by a signatory who, in lieu of suing the other party for breach, instead sues that party's nonsignatory principals or agents for pulling the strings."  *Id.*  Such strategic pleading does not appear to be present here where Toshiba is distinctly separate from Panasonic and Sanyo, and Toshiba does not appear to have had any relationship to the Panasonic and Sanyo MPAs.  Accordingly, because Toshiba would not satisfy the "intertwined claims" test, the Court need not decide whether such test is viable under Texas law.  *See Ross v. Am. Exp. Co.*, 547 F.3d 137, 146–48 (2d Cir. 2008) (holding that defendant could not avail itself of the arbitration agreement where its only connection to the signatory defendants was as a co-conspirator in a conspiracy to violate the antitrust laws).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    defendants.

2         Toshiba, on the other hand, argues that plaintiffs' claims rely on the existence of the MPAs

3    for several reasons including that (i) plaintiffs' purchases from Panasonic and Sanyo were

4    governed by the MPAs and plaintiffs allege that Toshiba is jointly and severally liable for such

5    purchases and (ii) the MPAs support plaintiffs' jurisdictional allegation that negotiations of

6    worldwide prices of LIBs occurred in the United States.  However, neither of these reasons meets

7    the "direct benefits" standard applied under Texas law.  For instance, in *Al Rushaid*, the Fifth

8    Circuit, applying Texas direct benefits estoppel, held that direct benefits estoppel did not apply to

9    claims involving allegations of bribery, even though they were related to contracts containing

10   arbitration agreements.  *Al Rushaid*, 814 F.3d at 305–06.  The Fifth Circuit explained that the non-

11   signatories could not seek the benefit of the arbitration agreements because plaintiffs were not

12   trying to enforce those contacts against them, and instead, liability was "premised on 'general

13   obligations imposed by law.'"  *Id.* (citing *In re Weekley Homes, L.P.*, 180 S.W.3d at 131–32).

14        Toshiba's argument that plaintiffs' claims rely on or are dependent on the MPAs does not

15   persuade.  For one, the vast majority of cases upon which Toshiba relies do not apply the direct

16   benefits test for equitable estoppel under Texas law.  *See, e.g.*, *In re Apple & AT&TM Antitrust

17   Litig.*, 826 F. Supp. 2d 1168, 1176–78 (N.D. Cal. 2011) (applying the "intertwined claims" theory

18   of estoppel to enforce an arbitration agreement where the class was defined as those who

19   purchased an iPhone and entered into the two-year service agreement containing the arbitration

20   agreement); *JLM Indus.*, 387 F.3d at 177 (applying "intertwined claims" theory); *Amisil Holdings

21   Ltd. v. Clarium Cap. Mgmt.*, 622 F. Supp. 2d 825, 841 (N.D. Cal. 2007) (applying estoppel based

22   on the fact that the claims either referred to or presumed the existence of the agreement); *Larson v.

23   Speetjens*, No. 05-CV-3176, 2006 WL 2567873, at *7 (N.D. Cal. Sept. 5, 2006) (applying a direct

24   benefits standard under California law, the court held that the arbitration agreement was

25   enforceable because the claims were based on a breach of fiduciary duty "created by the

26   [a]greements").  Those that do apply the direct benefits test under Texas law are readily

27   distinguishable.  *See, e.g.*, *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 307 (Tex. 2006) (applying

28   equitable estoppel but parties conceded that damages could not be calculated without reference to

the agreement); *Hays*, 2015 WL 5737963, at *5–6 (finding that direct benefits estoppel did not apply to wrongful termination or negligence claims but did apply to the tortious interference claims as they depended on plaintiff's employment agreement).

Plaintiffs have not brought claims against Toshiba based on the MPAs, but have instead brought a single, independent statutory claim under the Sherman Act. While relevant, the MPAs are just one piece of a much larger claim. The Court therefore finds that direct benefits estoppel does not apply in the instant matter. *See In re Weekley Homes*, 180 S.W.3d at 131–32; *see also In re E. Rio Hondo Water Supply Corp.*, No. 13-12-00538, 2012 WL 5377898, at *6 (Tex. Ct. App. Oct. 29, 2012) (holding that direct benefits estoppel did not apply where plaintiff could claim that damages were caused by defendant even if they had not entered into a contract). Thus, the Court **DENIES** Toshiba's motion to compel plaintiffs into arbitration.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Toshiba's motion to compel plaintiffs into arbitration. The Court **DENIES** Toshiba's motion to stay proceedings pending arbitration as moot.

This Order terminates Docket Numbers 1311, 1312, and 1369.

**IT IS SO ORDERED.**

Dated: October 4, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**