UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: LITHIUM ION BATTERS ANTITRUST LITIGATION** | Master File No.  13-MD-02420-YGR |
| This Document Relates To: | Case No. 15-CV-03443-YGR |
| **MICROSOFT MOBILE, INC. ET AL.**          Plaintiffs,<br><br>v.<br><br>**LG CHEM AMERICA, INC., ET AL.**          Defendants. | **ORDER GRANTING SONY DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS BETWEEN MICROSOFT AND SONY; DENYING MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Re: Dkt. No. 1316 |

Defendants Sony Corporation, Sony Electronics, Inc., and Sony Energy Devices Corporation (collectively, "Sony") filed a motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and 9 U.S.C. § 206 to compel plaintiffs Microsoft Mobile Inc. and Microsoft Mobile Oy (collectively, "Microsoft") into arbitration of the claims at issue and dismiss Microsoft's claims against Sony, or, in the alternative, stay such claims during the pendency of any arbitration proceedings. (Dkt. No 1316.)[1]

Having carefully considered the papers submitted, the record in this case, and the arguments of counsel at the August 16, 2016 hearing on the motion, the Court hereby **GRANTS** Sony's motion to compel arbitration and stay Microsoft's claims against Sony. The Court **DENIES** Sony's motion to dismiss Microsoft's claims against Sony as moot, without prejudice. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (holding that a

---

[1] The Court has previously compelled Microsoft to arbitrate its claims against defendants Panasonic Corporation and Panasonic Corporation of North America (collectively, "Panasonic") and Sanyo Electric Co., Ltd. and Sanyo North America Corporation (collectively, "Sanyo"). (Dkt. No. 986.) Defendants LG Chem America, Inc. and LG Chem Ltd. (collectively, "LG Chem") and Samsung SDI America, Inc. and Samsung SDI Co., Ltd. (collectively, "Samsung") have answered Microsoft's complaint in this action and have not moved to compel arbitration.

district court may either stay the action or dismiss it when it determines that claims are subject to arbitration).

## I. BACKGROUND

Microsoft filed this antitrust suit for damages and injunctive relief on June 26, 2015, alleging that all defendants named in this action engaged "in a massive conspiracy to fix, raise, stabilize, and maintain the prices of Lithium Ion Batteries and Cells" for more than a decade running at least from January 1, 2000 to May 31, 2011. (Case No. 15-CV-3433, Dkt. No. 1 ¶ 1.)

Nokia Mobile Phones Ltd. and its affiliated companies, later acquired by Microsoft, entered into a Product Purchase Agreement ("PPA") dated July 1, 2001 with Sony, which governed "all sale and purchase of Product(s)," which are defined as "certain lithium-ion batteries manufactured by or for [Sony] subject to purchase and sale between the Parties." (*See* Dkt. No. 1361-2, PPA §§ 1, 2.1.) The PPA includes an arbitration clause, which contains the following provision:

> Any disputes related to this Agreement or its enforcement shall be resolved and settled by arbitration in the English language in United Kingdom, in accordance with the Arbitration Rules of the International Chamber of Commerce in United Kingdom. However, any disputes related to BUYER's Intellectual Property Right(s) or Confidential Information, or for injunctive relief, may, at BUYER's sole election, be resolved by a court of competent jurisdiction. The decision of the arbitrators shall be final, binding and executable. The arbitration shall be the exclusive remedy of the Parties to the dispute.

(*Id.* § 25.2.)

## II. LEGAL STANDARD

The parties do not dispute that federal law applies to the arbitration clauses at issue for purposes of this motion. The Federal Arbitration Act requires a district court to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement. 9 U.S.C. § 3. A party may bring a motion in the district court to compel arbitration. 9 U.S.C. § 4. In ruling on a motion to compel, the court's role is typically limited to determining whether: (i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the agreement is valid and enforceable. *Lifescan, Inc. v.*

1 *Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

The Ninth Circuit recently reaffirmed: "[U]nlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise*." *Mohamed v. Uber Techs., Inc.*, --- F.3d ---, 2016 WL 4651409, at *4 (9th Cir. 2016) (internal quotations and citations omitted) (emphasis in original). "In other words, there is a presumption that courts will decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of arbitrability." *Id.* (internal quotations and citation omitted).

Ultimately, "[b]oth the arbitrability of the merits of a dispute and the question of who has the primary power to decide arbitrability depend on the agreement of the parties." *Goldman, Sachs & Co. v. Reno*, 747 F.3d 733, 738 (9th Cir. 2014) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *see also Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013). Such agreements may delegate such power to the arbitrator rather than the courts. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). "Clear and unmistakable evidence of an agreement to arbitrate arbitrability "might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Mohamed*, 2016 WL 4651409, at *4 (quoting *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)).

In this regard, the Ninth Circuit has found certain language to be a "clear and unmistakable" expression of the parties' intention for an arbitrator, rather than a court, to decide arbitrability. Thus: In *Momot*, the express delegation was as follows:

> If a dispute arises out of or relates to this Agreement, the relationships that result from this agreement, the breach of this Agreement or the validity or application of any of the provisions of this Section 4, and, if the dispute cannot be settled through negotiation, the dispute shall be resolved exclusively by binding arbitration.

*Momot*, 652 F.3d at 988 (quoting exhibit). The Ninth Circuit found the arbitration provision giving rise to *Mohamed* even "more expansive":

3

> Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability, or validity of the Arbitration Provision or any portion of the Arbitration Provision.

*Mohamed*, 2016 WL 4651409, at *3 (citing exhibit). Additionally, the Ninth Circuit has held that the incorporation of arbitral rules that delegate to the arbitrator the authority to decide their own jurisdiction constitutes a "clear and unmistakable" delegation, at least with respect to sophisticated parties. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015) (holding that incorporation of the American Arbitration Association rules was a clear and unmistakable delegation where the rules provided that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement"); *Oracle Am.*, 724 F.3d at 1075 (holding that incorporation of the United Nations Commission on International Trade Law arbitration rules constitutes "clear and unmistakable" delegation).

### III. DISCUSSION

The parties do not dispute either that these agreements apply to each of them or that the arbitration clauses are valid and enforceable. Rather, Microsoft contends that the Court should determine the arbitrability of two categories of claims: (i) those which pre-date the signing of the PPA; and (ii) injunctive relief claims, which were carved out of the arbitration agreement. Sony counters that because the parties delegated questions of arbitrability to an arbitrator, the Court lacks the authority to determine the arbitrability of such claims. Microsoft argues that the Court's authority to decide the same is based on the "wholly groundless" standard. The Court addresses each issue raised.

#### A. Clear and Unmistakable Delegation of Arbitrability Questions

By way of background, courts would typically first look to the language of the parties' agreement to determine whether a clear and unmistakable delegation exists. Here, the arbitration provision provides:

> Any disputes related to this Agreement or its enforcement shall be resolved and settled by arbitration in the English language in United Kingdom, in accordance with the Arbitration Rules of the International Chamber of Commerce in United Kingdom. However,

4

> any disputes related to BUYER's Intellectual Property Right(s) or Confidential Information, or for injunctive relief, may, at BUYER's sole election, be resolved by a court of competent jurisdiction. The decision of the arbitrators shall be final, binding and executable. The arbitration shall be the exclusive remedy of the Parties to the dispute.

(PPA § 25.2.) On its face, the arbitration provision does not explicitly delegate authority to decide questions of arbitrability to an arbitrator.

However, the provision incorporates the rules of the International Chamber of Commerce (the "ICC"). The Court, therefore, considers those rules next. *See Brennan*, 796 F.3d at 1130–31; *Oracle Am.*, 724 F.3d at 1075. The ICC rules provide that "any question of jurisdiction or of whether the claims may be determined together in that arbitration shall be decided directly by the arbitral tribunal." ICC Article 6.3, *available at* http://www.iccwbo.org/products-and-services/arbitration-and-adr/arbitration/icc-rules-of-arbitration (last accessed Oct. 4, 2016); *see also Baysand Inc. v. Toshiba Corp.*, No. 15-CV-2425, 2015 WL 7293651, at *4 (N.D. Cal. Nov. 19, 2015) (discussing and quoting ICC arbitration rules). Circuit courts that have discussed the ICC arbitration rules have held or acknowledged that the incorporation of the ICC rules constitutes a delegation of questions of arbitrability to an arbitrator. *See, e.g.*, *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 122, 124–25 (2d Cir. 2003) (holding that incorporation of the ICC rules constituted clear and unmistakable evidence of the parties' intent to arbitrate questions of arbitrability); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 472–73 (1st Cir. 1989) (same); *cf. China Minmetals Materials Import & Export Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 287 n.14 (3d Cir. 2003) (acknowledging that the ICC rules provide that the arbitral tribunal rules on arbitrability).[2]

Accordingly, the Court finds that the parties' incorporation of the ICC rules in the

---

[2] Several district courts in the Ninth Circuit have found similarly. *See, e.g.*, *Baysand*, 2015 WL 7293651, at *4 (finding that the ICC rules grant the arbitrator the authority to "determine its own jurisdiction" and therefore "incorporation of the ICC Rules provides 'clear and unmistakable' evidence of parties' intent to arbitrate arbitrability"); *Shany Co., Ltd. v. Crain Walnut Shelling, Inc.*, No. 11-CV-1112, 2012 WL 1979244, at *9 (E.D. Cal. June 1, 2012) (same); *Poponin v. Virtual Pro, Inc.*, No. 06-CV-04019, 2006 WL 2691418, at *12 (N.D. Cal. Sept. 20, 2006) (same); *Daiei, Inc. v. U.S. Shoe Corp.*, 755 F. Supp. 299, 303 (D. Haw. 1991) (same).

1    arbitration provision constitutes a clear and unmistakable delegation of the question of arbitrability

2    here to an arbitrator, rather than the Court.  Microsoft concedes as much.[3]

### B. Arbitrability of Specific Claims

Despite the delegation of arbitability, Microsoft contends that the Court may determine arbitrability if the arbitration of such claim is "wholly groundless." *See Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law).   Sony argues the "wholly groundless" standard is not the law of this Circuit, and indeed the Court is aware of no Ninth Circuit decision explicitly adopting this standard.  However, the Court could envision circumstances warranting such a standard.  As Microsoft has noted, numerous courts in this District have cited the basic test articulated by the Federal Circuit applying Ninth Circuit law.  *See, e.g.*, *ASUS Computer Int'l v. InterDigital, Inc.*, No. 15-CV-01716, 2015 WL 5186462, at *3 (N.D. Cal. Sept. 4, 2015) (applying *Qualcomm*'s "wholly groundless" test); *Bitstamp Ltd. v. Ripple Labs Inc.*, No. 15-CV-01503, 2015 WL 4692418, at *5 (N.D. Cal. Aug. 6, 2015) (same).

The "wholly groundless" test, as articulated by other courts, is intended to "prevent[] a party from asserting any claim at all, no matter how divorced from the parties' agreement, to force an arbitration."  *Qualcomm Inc.*, 466 F.3d at 1373 n.5; *see also Ellsworth v. U.S. Bank, N.A.*, No. 12-CV-02506, 2012 WL 4120003, at *7 (N.D. Cal. Sept. 19, 2012) (finding a motion to compel arbitration "wholly groundless" where there were "[n]o reasonable doubts" as to the claims falling outside the scope of the arbitration at issue); *Guidewire Software, Inc. v. Chookaszian*, No. 12-CV-03224, 2012 WL 5379589, at *5–6 (N.D. Cal. Oct. 13, 2012) (finding motion to compel arbitration was *not* "wholly groundless" where arbitration clause broadly covered all matters "'arising out of or relating to'" the agreement in question).

---

[3] Microsoft does not contend that the incorporation of the ICC rules is not a clear and unmistakable delegation of such authority to the arbitrator.  (Opp'n at 17 ("Second, because the parties agree that they delegated the power to decide arbitrability to the arbitrator, the Court's inquiry is a narrow one, asking only whether arbitrability is wholly groundless rather than conducting a full arbitrability analysis.").) Microsoft also conceded this point in a prior action in this matter. (Dkt. No. 931, Microsoft Opposition to Panasonic and Sanyo Defendants' Motion to Dismiss and Compel Arbitration at 1; *see also* Dkt. No. 986, Order on Panasonic and Sanyo Motion to Compel at 4.)

1         Here, Microsoft argues that based upon that "wholly groundless" test, the following claims
2    are not subject to arbitration:  (1) claims arising out of transactions that pre-date the PPA; and (2)
3    injunctive relief claims.  The Court need not resolve whether the Ninth Circuit would adopt this
4    standard because, as discussed below, even if the "wholly groundless" standard applied, the
5    outcome would remain the same.

### 1. Transactions Predating the Agreement

7         Microsoft challenges the arbitrability of claims predating the PPA on the ground that the
8    arbitration agreements are not retroactive absent a clear and unequivocal provision to that effect.
9    *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-MD-1827, 2011 WL 3353867, at *2
10   (N.D. Cal. Aug. 3, 2011) (holding that claims prior to the effective date of the agreement, which
11   specified that that the agreement was effective between May 2004 and January 2007, were not
12   covered by the arbitration agreement).  However, none of the cases cited by Microsoft for this
13   proposition addressed whether the parties agreed to submit to an arbitrator gateway questions of
14   arbitrability.  *See, e.g.*, *id.*; *Morse v. ServiceMaster Global Holdings, Inc.*, No. 10-CV-628, 2012
15   WL 4755035, at *3–5 (N.D. Cal. Oct. 4, 2012).

16        Where a delegation exists, courts have compelled arbitration even of claims predating the
17   arbitration agreement.  *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-5944,
18   2014 WL 7206620, at *1, 4 (N.D. Cal. Dec. 18, 2014) (reserving for arbitrator the determination
19   of whether pre-agreement claims were arbitrable explaining that the court would only reach this
20   question if the court determines that "it, and not the arbitrators, has jurisdiction to determine what
21   parts of the dispute are arbitrable").  In particular, courts have found that the retroactive
22   application of an arbitration agreement is not "wholly groundless" where the arbitration provision
23   is broad.  *See Ell v. Turner Indus. Grp., LLC*, No. 15-CV-230, 2016 WL 866342, at *5 (M.D. La.
24   Mar. 3, 2016) (finding that it was not "wholly groundless" for an arbitration provision to apply to
25   claims arising two years prior to arbitration agreement and reserving for the arbitrator such
26   determination where the language of the arbitration agreement applied to "any and all claims,
27   disputes or controversies" arising out of the agreement).  Courts have also found such application
28   not "wholly groundless" where, as here, the claims at issue were not wholly devoid from the

7

relationship of the parties giving rise to the arbitration agreement at issue. *See Hancock Med. Ctr. v. Quorum Health Resources, LLC*, No. 14-CV-55, 2015 WL 1387469, at *1, 6–7 (S.D. Miss. Mar. 25, 2015) (reserving for arbitrator questions of arbitrability of claims predating arbitration agreement finding that such claim was not "wholly groundless" where complaint included allegations of conduct predating the agreement which continued pursuant to the agreement).

Accordingly, given the commercial relationship between the parties and the overlap in the substantive claims many of which stem from the arbitration agreement, the Court cannot find that the arbitrability of Microsoft's claims arising out of alleged pre-PPA transactions is "wholly groundless" and not subject to the delegation to the arbitrator to address that issue.[4]

### 2. Injunctive Relief

Next, Microsoft contends that the arbitration agreement clearly carved out claims for injunctive relief. (Dkt. No. 1361-2, PPA § 25.2.) Again, the case upon which Microsoft relies was not a "wholly groundless" case, and did not involve a finding that the parties committed questions of arbitrability to an arbitrator. *See Frydman v. Diamond*, No. 14-CV-8741, 2015 WL 5294790, at *8 (S.D.N.Y. Sept. 10, 2015) (holding that carve-out for actions involving injunctive relief rendered plaintiff's claims not arbitrable). Where the parties agreed to arbitrate arbitrability, courts have even compelled arbitration of claims that were "carved out" of the agreement. *See Bitstamp Ltd. v. Ripple Labs, Inc.*, No. 15-CV-01503, 2015 WL 4692418, at *5 (N.D. Cal. Aug. 6, 2015) (finding that the assertion of arbitrability even with respect to claims that were "carved out" of the agreement was not "wholly groundless" given the parties' agreement to arbitrate "any dispute, claim or controversy arising out of th[e] Agreement"); *Oracle Am.*, 724 F.3d at 1076–77 (holding that the determination of whether claims fell within the carve-out of the arbitration agreement was reserved for the arbitrator); *cf. Noodles Dev., L.P. v. Latham Noodles, LLC*, No. 09-CV-1094, 2009 WL 2710137, at *3 (D. Ariz. Aug. 26, 2009) (finding claims for injunctive

---

[4] Additionally, this Court previously compelled arbitration of all claims in this case between Microsoft and Panasonic and Sanyo where the arbitration agreement became effective on March 6, 2000, two months after the alleged start of the price-fixing conspiracy. (*See* Dkt. No. 986, Order on Motion to Compel; Dkt. No. 892-2 at 23–24.)

relief which appear to have been carved out of the arbitration agreement to be arbitrable).

Although the question here is a closer call as the language appears to carve out, unambiguously such a claim, the gravamen of the complaint is not for injunctive relief, but rather for damages.  Microsoft did not rush into Court seeking emergency injunctive relief.  Nor is intellectual property at issue.  Given the overlap between the damages sought and the potential for injunctive relief, the Court cannot find that Microsoft's injunctive relief claims against Sony would fall within a "wholly groundless" category depriving the question of arbitrability from the arbitrator.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Sony's motion to compel arbitration.[5]  The Court further **GRANTS** Sony's request to stay the proceedings between Sony and Microsoft pending a decision on arbitrability by an arbitrator.  *See Zenelaj v. Handybrook Inc.*, 82 F. Supp. 3d 968, 979 (N.D. Cal. 2015).[6]  The Court **DENIES** Sony's motion to dismiss as moot.

This Order terminates Docket Number 1316.

**IT IS SO ORDERED.**

Dated: October 4, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[5] Microsoft invited this Court to incorporate Microsoft's prior arguments on whether Microsoft's claims based on joint and several liability are encompassed by the arbitration provision and to reconsider its prior ruling finding that the arbitration provision covered such claims.  (Opp'n 3.)  The Court **DENIES** Microsoft's request to incorporate such arguments and its request for reconsideration of the Court's prior ruling.

[6] Sony briefly suggested that the Court stay Microsoft's entire claim against all defendants in this action rather than just Microsoft's claims against Sony.  However, Sony provided no good cause for the Court's exercise of its discretion to do so, and the Court sees none.  *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 09-CV-05609, 2011 WL 2650689, at *9 (N.D. Cal. July 6, 2011) ("In light of the many parties associated with this multidistrict litigation, as well as the significant amount of time between now and the scheduled trial date, the Court stays all litigation between Nokia and AUO that involves purchases made by Nokia from AUO and Nokia remains free to pursue litigation with the other alleged co-conspirators.").