UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: LITHIUM ION BATTERIES ANTITRUST LITIGATION | Case No.13-md-02420-YGR<br><br>And related case No. 16-cv-4018 YGR<br><br>**ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT OF FLEXTRONICS INTERNATIONAL USA, INC.**<br><br>Re: MDL Dkt. No. 1671 |
| This Order Relates to:<br><br>*Flextronics International USA v. LG Chem, Ltd., et al.* | |

Plaintiff Flextronics International USA, Inc. ("Flex USA") brings this antitrust action, asserting its own claims and claims based upon the purchases of 277 affiliates (collectively, "Flextronics") who have assigned their claims to Flex USA. They filed their original complaint in this action on July 15, 2016, and filed a first amended complaint ("FAC") on December 9, 2016. (Dkt. No. 32.) The FAC alleges that defendants and their co-conspirators fixed the price of lithium ion batteries ("LIB"). Defendants Panasonic Corporation, Panasonic Corporation of North America; Sanyo Electric Co., Ltd.; Sanyo North America Corporation; LG Chem, Ltd.; LG Chem America Inc.; Samsung SDI America, Inc.; Samsung SDI Co., Ltd.; Sony Corporation; Sony Energy Devices Corporation; Sony Electronics, Inc.; Toshiba Corporation; Hitachi Maxell, Ltd.; Maxell Corporation of America; NEC Corporation; and NEC TOKIN Corporation

("Defendants")[1] move to dismiss the FAC pursuant to Rules 8(a), 12(b)(1) and 12(b)(6) for lack of standing under Article III of the United States Constitution and failure to state a claim. Specifically, Defendants contend that: (1) the FAC's claims based on foreign purchases are barred by the applicable four-year statute of limitations; (2) the foreign affiliates cannot allege injury in fact for purposes of standing; (3) the FAC does not allege express assignments by the 277 affiliates adequately; (4) the FAC does not allege facts sufficient to state a claim under the Foreign Trade Antitrust Improvements Act (FTAIA), 15 U.S.C. § 6(a), for claims based on foreign purchases; and (5) the affiliates' purchases are barred by *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

For the reasons set forth herein, the motion to dismiss is **DENIED**. While Defendants' arguments may ultimately prevail, such issues are more suitable for resolution at summary judgment upon an adequate record. For pleading purposes, the arguments fail.

## I.  APPLICABLE STANDARD

A motion to dismiss pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pleaded in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). While the plaintiff bears the burden to establish jurisdiction, on a facial challenge the court assumes the allegations in the complaint are true and draws all reasonable inferences in favor of the party opposing dismissal. *Id.*

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted); *see also* Fed. R. Civ. P. 12(b)(6). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citation omitted). "Threadbare recitals

---

[1] Defendant GS Yuasa Corporation ("GS Yuasa") does not join this motion because it has not been served and is not subject to the Court's November 16, 2016 Order. (*See* MDL Dkt. No. 1632.)

2

of the elements of a cause of action, supported by mere conclusory statements" will not suffice. *Id.* at 679.

**II. DISCUSSION**

A. STATUTE OF LIMITATIONS

The original complaint in this action was filed on July 15, 2016. Defendants argue that the claim is time-barred under the applicable four-year statute of limitations and that neither of the FAC's alleged bases for tolling—fraudulent concealment and tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) and related authority—apply. Further, Defendants contend that the allegations indicated that the alleged assignments of claims by the affiliates had not been made by the time of the original complaint, further establishing the affiliates' claims were not filed timely. Flextronics counters that the allegations of the FAC set forth sufficient facts to support tolling under both fraudulent concealment and *American Pipe*, and that the assignments were timely. The Court addresses each issue in turn.

On the fraudulent concealment argument, Defendants contend that first direct purchaser complaint in this MDL acknowledged the existence of a government investigation into potential antitrust violations in the LIB market as of May 2011. That first complaint filed in the MDL alleged that Sony disclosed, in a May 2011 corporate filing, that its United States subsidiary received a subpoena from the Department of Justice Antitrust Division "seeking information about its secondary battery business." (*See Carte v. Samsung SDI Co., Ltd., et al.*, No. 4:12-cv-05268-YGR, Dkt. No. 1 ["*Carte* Complaint"] ¶ 64.) Thus, Defendants argue, plaintiffs would necessarily have been on notice more than four years prior to the filing of their complaint.

However, the *Carte* Complaint further alleged that, around August 20, 2012, LG Chem confirmed that it was also a target of DOJ's investigation. (*Carte* Complaint ¶ 66.) The FAC alleges that plaintiffs were not on notice of their potential claims until, at least, the August 20, 2012 public announcement of the government's investigations into price-fixing in the lithium-ion battery market. (FAC ¶ 262.) The FAC alleges that plaintiffs could not have known about this activity sooner because of Defendants' efforts to conceal their conspiracy, including making false

3

and misleading public statements, withholding information from customers, and destroying documents. (FAC ¶¶ 262- 275.)

The Court agrees with plaintiffs that the possible awareness of the existence of the DOJ investigation based upon the content of Sony's disclosure alone was not, on its face, sufficient notice of a potential conspiracy as of May 2011. The allegations in the *Carte* Complaint do not so contradict the allegations of fraudulent concealment in the instant complaint as to justify dismissing it at the pleading stage on these grounds.

With respect to the question of whether *American Pipe* tolling applies to plaintiffs' claims, the Court likewise finds the allegations sufficient. Under *American Pipe* and its progeny, the commencement of a class action lawsuit "tolls the running of the statute of limitations for all purported members of the class" until class certification is denied or the class member opts out. *American Pipe*, 414 U.S. at 554-55. Tolling applies where the legal claims asserted in the individual action and pending class action concern the same "evidence, memories, and witnesses." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 355 (1983) (Powell, J., concurring). The legal claims in the follow-on action need not be "identical in every respect to the class suit for the statute to be tolled." *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985).

Defendants argue that the doctrine is inapplicable to plaintiffs' claims based on purchases made outside the United States. The class definition in the *Carte* Complaint included only "individuals and entities who . . . purchased Lithium-ion Rechargeable Batteries *in the United States* directly from one or more of the Defendants." (*Carte* Complaint ¶ 28, emphasis supplied.) The FAC here alleges that Flex USA and its affiliates purchased LIB packs directly from Defendants during the relevant period, and identify certain model or series numbers of batteries purchased from Defendants. (FAC ¶¶ 6, 7.) The nature of the claims alleged here is the same as in the *Carte* Complaint even though the FAC does not specifically allege whether the purchases of plaintiff and the affiliates were in the United States. Plaintiffs need not allege additional details of where purchases were made, when, or from whom at the pleading stage. *See In re: Lithium Ion Batteries Antitrust Litig.*, No. 15-CV-02987-YGR, 2016 WL 5793457, at *3–4 (N.D. Cal. Oct. 4, 2016) (citing *In re TFT-LCD*, 2009 WL 4874872 at *4 (N.D.Cal. Oct. 6, 2009)). Thus, the FAC

4

sufficiently alleges a basis for tolling under *American Pipe* on the face of the pleading. To the extent that additional facts would undermine the applicability of such tolling, the information can be developed in discovery.

Defendants' reliance on *In re Cathode Ray Tube (CRT) Antitrust Litigation* is misplaced. *In re CRT*, 27 F. Supp. 3d 1015 (N.D. Cal. 2014). There, *American Pipe* principles did not toll the statute of limitations on state-law causes of action and, to the extent that Plaintiffs there relied upon indirect purchases for standing, they could not toll claims based on complaints brought exclusively on behalf of direct purchasers. *Id.* at 1021-23. Those issues do not extend here.

Finally, Defendants argue that the affiliates' claims are untimely since the original complaint indicated that claims "will be" assigned, but had not been assigned at the time of filing.. The FAC alleges that the affiliates "have" assigned the claims to Flextronics International USA, as listed in the attachment thereto. (FAC at p. 1, n. 1; ¶ 6 at n.4; Exh. A.) In opposition to the motion, plaintiff contends that the affiliates expressly assigned their claims associated with this litigation to Flex USA in writing effective July 15, 2016, that is, the same day as the filing of the original complaint. While that allegation is not part of the FAC, it need not be. Any issues about the timeliness of individual assignments for purposes of the statute of limitations again can be explored in discovery. The allegations are sufficient.

B. STANDING

Defendants next contend that the FAC has failed to allege standing because it does not state facts to establish an "effective" assignment and an injury-in-fact as to each of the 277 affiliates. The FAC alleges that: (1) Flex USA purchased LIB directly from Defendants, including the LP-15 (PHA14-0006-01) from GS Battery (USA) Inc., a subsidiary of GS Yuasa Corporation, and the 1S1S40AA-S from Toshiba; and (2) the affiliated entities purchased LIB Packs directly from Defendants, including the Sony US18650VTC4 and US18650G4; the Samsung EV06047; the LG and Sony BST-38; the Panasonic 42T5226; and the Maxell BAT-26483-series. (FAC ¶¶ 6, 7.)

Relying on *In re Apple iPhone Antitrust Litig.*, No. 11-CV-06714-YGR, 2013 WL 4425720 (N.D. Cal. Aug. 15, 2013), Defendants contend that the FAC contains only "collective

5

allegations" which are insufficiently detailed as to the injury experienced by each affiliate. The argument fails to persuade. *In re Apple iPhone Antitrust Litigation* is inapposite, since the circumstances there were a lack of allegations that *any* named plaintiff class representative had suffered an injury-in-fact, *i.e.* the alleged injury to the applications aftermarket class related to the inability to purchase applications not available on Apple's App Store, but none of the class representatives alleged that they had ever purchased an application. *Id.* at 6. Here, the allegations are that all affiliates purchased LIB packs directly from Defendants. While the evidentiary support for the allegations can be tested in discovery, the allegations are sufficient as a pleading matter.

### C. SUFFICIENCY OF ASSIGNMENT ALLEGATIONS

Defendants next contend that the assigned claims must be dismissed for failure to allege those assignments sufficiently. Defendants insist that the pleading should have set forth the actual text of the assignments and facts related thereto. The FAC alleges that Flex USA "has been assigned the claims associated with this action, including specifically claims pursuant to the Sherman Act, of all of the Flextronics entities identified in Attachment A. The assignment of these claims are in writing." Attachment A lists all 277 affiliates. (FAC at 1 n. 1 and Exh. A.) These allegations are sufficient to specify that the claims brought in the lawsuit have been assigned to Flex USA. *Cf. In re WellPoint, Inc. Out-of-Network UCR Rates Litigation*, 903 F. Supp. 2d 880, 896-99 (C.D. Cal. 2012) (allegations of the complaint indicated that plaintiff healthcare providers obtained ERISA assignments of benefits from patients which were limited and did not indicate assignors intended to assign their rights to bring causes of action under the Sherman Act, RICO, the UCL/FAL and other provisions of ERISA not related to benefits reimbursements). No further allegations are necessary. Moreover, Defendants have obtained detailed information about the purchase transactions for these affiliates in discovery.

### D. FTAIA

Given the limitations established by the FTAIA, Defendants argue the FAC should allege, and does not, facts identifying the location of the purchases. The FTAIA excludes from the Sherman Act's coverage trade or commerce with foreign nations, other than import trade or

commerce, unless such conduct has a "direct, substantial, and reasonably foreseeable effect" on American domestic, import, or certain export commerce, and "such effect gives rise to a claim' under the Sherman Act." 15 U.S.C. § 6a. In other words, U.S. companies are not liable under the Sherman Act for conduct that typically would be considered anticompetitive so long as that conduct adversely affects foreign markets only. *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 161 (2004). The Supreme Court has held that the FTAIA removes overseas transactions and business arrangements from the purview of the Sherman Act "*unless* those activities adversely affect domestic commerce, imports to the United States, or exporting activities of one engaged in such activities within the United States." *Id.* (emphasis in original.) However, the "locus of a transaction is not dispositive under the FTAIA," which "does not state or support a per se rule excluding foreign purchasers just because they did their buying abroad." *In re Capacitors Antitrust*, No. 14-CV-03264-JD, 2016 WL 5724960, at *5 (N.D. Cal. Sept. 30, 2016).

The FAC alleges that: (1) Defendants' own documents show that the United States is one of the world's largest markets for LIB, making it reasonably foreseeable that Defendants' wrongful conduct would artificially inflate prices for LIB sold in the United States, and therefore would have an effect on United States domestic trade or commerce and/or United States import trade or commerce (FAC ¶ 68); (2) a substantial portion of the LIBs purchased by Flex USA and its affiliates were intended for and shipped to the United States, purchased for use by their U.S.-based customers, incorporated into electronic goods intended for sale in the United States and sold in the United States, and purchased for the purpose of manufacturing goods for their U.S. customers (for example, purchased from Sony "for manufacture into items sold by Flextronics's U.S. customer, Apple") (FAC ¶¶ 71-75). The FAC further alleges that Defendants knew or should have known that a substantial portion of the products they sold to affiliates would be manufactured into goods sold to U.S. consumers, and targeted plaintiffs' U.S. imports. (FAC ¶¶ 76, 80.) These allegations are sufficient to allege a plausible basis for "import trade or commerce." *See United States v. Hsiung et al.,* 778 F.3d 738, 754-56 (9th Cir. 2015); *In re Capacitors Antitrust Litig.,* No. 14-cv-03264-JD, 2016 WL 5724960, at *6-7 (N.D. Cal. Sept. 30, 2016) (Flex USA's claim that Defendants' conduct involved import commerce permitted to proceed to trial based on allegations

that Defendants sold Flex Affiliates capacitors that were incorporated into manufactured products shipped to the United States); *In re TFT-LCD (Flat Panel) Antitrust Litigation,* 2012 WL 3763616, at *1 (N.D. Cal. Aug. 29, 2012) (defendants' conduct involved import commerce where purchases were shipped to the United States but were paid for by a foreign entity abroad).

Moreover, the FAC alleges facts sufficient to support a "direct effects" exception to the FTAIA. This exception requires that plaintiffs show Defendants' conduct had a "direct, substantial and reasonably foreseeable effect" on U.S. domestic commerce, and such effect gave rise to their Sherman Act claim. 15 U.S.C. § 6a. Here, the FAC alleges that Defendants' conduct distorted market prices in the U.S., that the prices generally were negotiated in the U.S., and, even where individual prices paid by certain affiliates were negotiated outside the U.S., those prices were set by reference to prices approved by management in the U.S. (FAC ¶¶ 81-83.) It further alleges that Defendants' conspiracy inflated prices of LIB set or approved by management in the U.S. and proximately caused damages to affiliates that were purchasing pursuant to the prices or price ranges approved in the U.S., since affiliates did not negotiate their prices independently. (FAC ¶¶ 84-86.) These allegations state a plausible basis for a "direct effects" exception. *Cf. In Re Capacitors,* 2016 WL 5724960 at *7 (claims of Flex USA and its affiliates permitted to proceed based on Flex USA's allegations that the domestic effects of Defendants' conspiracy proximately caused injury to Flex USA's foreign affiliates); *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 781 F. Supp. 2d 955, 962-63 (N.D. Cal. Mar. 16, 2011) (claim that defendants' conspiracy distorted U.S. price negotiations and proximately caused its foreign affiliates to pay higher prices for LCD panels permitted).

Defendants contend that plaintiffs' theory has been rejected by the court in *In re Capacitors Antitrust*, 2016 WL 5724960. However, the Court's reading of that decision evinces only that, *at summary judgment*, after ample discovery, a "global pricing theory" was not supported by evidence of causation, *i.e.*, evidence that increased prices in the U.S. proximately caused injury to the foreign plaintiff purchasers. *Id.* at *6-7. The case simply reiterates the requirement that plaintiffs plead, and eventually prove, U.S. effects proximately caused plaintiffs'

8

injuries, consistent with *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 989 (9th Cir. 2008).

Here, similar to the allegations in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 781 F. Supp. 2d 955, 962 (N.D. Cal. 2011), plaintiffs have set forth negotiations within the United States with Flextronics International USA, Inc., a California corporation. Plaintiffs allege a direct causal relationship between the alleged anticompetitive price-fixing conspiracy, the negotiations in the U.S., and the prices paid by all the alleged purchasers. The Court finds the allegations of proximate causation sufficient as a pleading matter and declines to reach the merits of plaintiffs' theory without further factual development.

E. *ILLINOIS BRICK*

Finally, defendants contend that plaintiffs' claims must be dismissed for lack of antitrust standing under *Illinois Brick*, to the extent they are based on purchases of LIB *packs*, not *cells.* Defendants contend that the FAC conflates cells and packs, referring to them collectively as "Lithium Ion Batteries" throughout the amended complaint. (FAC ¶ 2 ["[f]or purposes of this Complaint, 'Lithium Ion Batteries' and 'Batteries' include both Lithium Ion Battery Cells and Lithium Ion Battery Packs"].) Defendants argue that the only products the FAC alleges were subject to the purported conspiracy are cells, a single component of the LIB packs actually purchased. (FAC ¶ 1.) Thus, Defendants contend that, in the absence of allegations that they conspired to fix the prices of battery *packs*, plaintiffs are mere indirect purchasers who lack standing under *Illinois Brick*.

This Court previously determined that, where the complaint "alleges each particular seller. . . and alleges with specificity the corporate relationships linking that seller to an allegedly conspiring defendant," when the "entities in those chains are wholly owned subsidiaries or divisions of each other," such relationships would satisfy *Illinois Brick*'s ownership or control exception, as stated in *Royal Printing v. Kimberly Clark Corp.*, 621 F.2d 323, 326 (9th Cir. 1980). (*See* Omnibus Order Re: Motions To Dismiss the Second Consolidated Amended Complaints of Direct and Indirect Purchaser Plaintiffs, Dkt. No. 512, filed October 2, 2014, at 46-47 (citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, C 12-3802 SI, 2013 WL 1164897, at *2 (N.D. Cal. Mar.

20, 2013)). Here, allegations of both the purchase of cells from particular Defendants (FAC ¶ 7) and the ownership and control relationships linking the seller to a conspiring defendant (FAC ¶¶ 25-52) are pleaded. The allegations are nearly identical to those previously approved in the underlying MDL complaint. The Court finds these allegations to be sufficient at this stage of the litigation.

### III. CONCLUSION

The motion to dismiss the FAC is **DENIED**. Defendants shall file their answer within 21 days of this order.

This terminates Docket No. 1671.

**IT IS SO ORDERED.**

Dated: May 12, 2017

_____
**YVONNE GONZALEZ ROGERS**
United States District Judge