1   Steven N. Williams (SBN 175489)
    COTCHETT, PITRE & MCCARTHY, LLP
2   840 Malcolm Road
    Burlingame, CA 94010
3   Telephone:   (650) 697-6000
    Fax:   (650) 697-0577
4   swilliams@cpmlegal.com

5   Elizabeth J. Cabraser (SBN 83151)
    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
6   275 Battery Street, 29th Floor
    San Francisco, CA 94111-3339
7   Telephone:   (415) 956-1000
    Fax:   (415) 956-1008
8   ecabraser@lchb.com

9   Steve W. Berman (*Pro Hac Vice*)
    HAGENS BERMAN SOBOL SHAPIRO LLP
10  715 Hearst Avenue, Suite 202
    Berkeley, CA 94710
11  Telephone:   (510) 725-3000
    Fax:   (510) 725-3001
12  steve@hbsslaw.com

13  *Interim Co-Lead Counsel for Indirect Purchaser Plaintiffs*

14
                    UNITED STATES DISTRICT COURT
15
                  NORTHERN DISTRICT OF CALIFORNIA
16
                          OAKLAND DIVISION
17

18  IN RE: LITHIUM ION BATTERIES          Case No.  13-md-02420 YGR (DMR)
19  ANTITRUST LITIGATION
                                          MDL No. 2420
20
                                          **INDIRECT PURCHASER PLAINTIFFS'**
21                                        **MOTION FOR AN AWARD OF**
                                          **ATTORNEYS' FEES, REIMBURSEMENT**
22                                        **OF EXPENSES, AND SERVICE AWARDS**

23  This Document Relates to:

24  ALL INDIRECT PURCHASER              Date:      August 1, 2017
    ACTIONS                            Time:      2:00 p.m.
25                                     Judge:     Hon. Yvonne Gonzalez Rogers
                                       Location: Courtroom 1- 4th Floor
26

27                                     DATE ACTION FILED: Oct. 3, 2012

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at 2:00 p.m. on August 1, 2017, Indirect Purchaser Plaintiffs ("IPPs" or "Plaintiffs") and their counsel ("Class Counsel") will move, and hereby do move, the Honorable Yvonne Gonzalez Rogers, United States District Judge for the Northern District of California, at the United States Courthouse, 1301 Clay Street, Courtroom 1 (4th Floor), Oakland, California, for the following:

1.    Award 25% of the total $44,950,000 settlement to attorneys' fees in the amount of $11,240,000;

2.    Reimbursement of a portion of litigation expenses incurred in the amount of $4,159,515.28.  The categories of litigation expenses for which Class Counsel seeks reimbursement are as follows:

    a.    payments made to expert economists;

    b.    payments made to vendors for document hosting services; and

    c.    payments made to vendors for the translation of foreign language documents; and

3.    Service awards totaling $34,500 ($1,500 each for each Class Representative).

This motion is brought pursuant to Federal Rules of Civil Procedure 23(h), 54(b), and 54(d)(2).  The motion should be granted because: (1) the requested attorneys' fees are fair, appropriate, and commensurate to the benefit obtained for the class; (2) the expenses for which reimbursement is sought were reasonably and necessarily incurred in connection with the prosecution of this case for the benefit of Plaintiffs and the proposed class; and (3) $1,500 to each Class Representative is warranted for bringing the case, submitting to extensive electronic production of their files, and sitting for extended depositions—sometimes lasting six hours—regarding their lithium-ion battery purchases and participation in this case.

This motion is based upon this Memorandum of Points and Authorities; the Joint Declaration of Steven Williams, Steve W. Berman, and Elizabeth J. Cabraser ("Joint Decl."); the declarations of Class Counsel; the [Proposed] Order submitted herewith; such other records,

1  pleadings, and papers filed in this action; and upon such argument and further pleadings as may

2  be presented to the Court at the hearing on this motion.

3       This motion will be available on the website established for this case,

4  www.reversethecharge.com for review by class members.

5  Dated:  May 26, 2017                    Respectfully submitted,

6                                          COTCHETT, PITRE & MCCARTHY, LLP

7                                          By:    /s/ Steven N. Williams
                                                  Steven N. Williams
8
9                                          Steven N. Williams (SBN 175489)
                                           840 Malcolm Road
10                                         Burlingame, CA 94010
                                           Telephone: (650) 697-6000
11                                         Facsimile: (650) 697-0577
                                           swilliams@cpmlegal.com
12
13                                         HAGENS BERMAN SOBOL SHAPIRO LLP

14                                         By:    /s/ Steve W. Berman
                                                  Steve Berman
15
                                           Steve Berman
16                                         1918 8th Avenue, Suite 3300
                                           Seattle, WA 98101
17                                         Telephone: (206) 623-7292
                                           Facsimile: (888) 381-2889
18                                         sberman@hbsslaw.com

19                                         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

20                                         By:    /s/ Elizabeth J. Cabraser
                                                  Elizabeth J. Cabraser
21
22                                         Elizabeth J. Cabraser (SBN 83151)
                                           275 Battery Street, 29th Floor
23                                         San Francisco, CA 94111-3339
                                           Tel: (415) 956-1000
24                                         Fax: (415) 956-1008
                                           ecabraser@lchb.com
25
                                           *Interim Co-Lead Counsel for Indirect Purchaser Plaintiffs*
26
27
28

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.     STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

II.    INTRODUCTION ................................................................................................................ 1

III.   PROCEDURAL HISTORY ................................................................................................ 3

     A.    The Allegations ...................................................................................................... 3

     B.    The Complaints and Motions to Dismiss ............................................................. 3

     C.    Substitution of Class Representatives .................................................................. 5

     D.    Toshiba's Summary Judgment Motion ................................................................ 5

     E.    The Discovery Process .......................................................................................... 5

          1.    Class Representative Discovery .............................................................. 5

          2.    Written Discovery and Document Review and Analysis ........................ 6

          3.    Plaintiffs' Depositions ............................................................................. 7

          4.    Motions to Compel .................................................................................. 7

          5.    Data Analysis and Expert Work .............................................................. 8

          6.    Class Certification and *Daubert* Motions ............................................. 8

     F.    Settlement History ................................................................................................. 9

IV.   ARGUMENT ..................................................................................................................... 10

     A.    The Requested Fee Is Reasonable and Appropriate ......................................... 10

          1.    Class Counsel Are Entitled to a Fee Under the Common Fund Doctrine ................................................................................................... 11

          2.    The Requested $11.24 Million Fee Award Falls Within the Range of Reasonableness ................................................................................. 13

               a.    This Litigation Involves Significant Risk ................................. 14

               b.    In the Face of These Risks, Class Counsel Achieved an Excellent Recovery for the Class ........................................... 15

               c.    A High Level of Skill Was Required to Prosecute This Case ........................................................................................... 17

               d.    The Contingent Nature of the Fee Justifies the Requested Award ....................................................................... 20

          3.    The Lodestar Cross-Check Confirms the Reasonableness of the Requested Award ................................................................................... 20

     B.    The Class Received Appropriate Notice of Class Counsel's Fee Application ......................................................................................................... 22

     C.    Co-Lead Counsel Should be Authorized to Distribute Fees Among Class Counsel ................................................................................................................. 23

     D.    Class Counsel Should be Reimbursed for Their Reasonable Litigation Expenses ............................................................................................................... 24

## TABLE OF CONTENTS
### (continued)

Page

    E.     Class Representatives Should Receive Service Awards Totaling $34,500........... 24

V.    CONCLUSION ................................................................................................................. 25

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989) ................................................12, 13

*In re Air Cargo Shipping Servs. Litig.*,
No. 06- md-1775, 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) ................10

*Alpine Pharmacy, Inc. v. Charles Pfizer & Co., Inc.*,
481 F.2d 1045 (2d Cir. 1973) .....................................................12

*In re Apple iPhone/iPod Warranty Litig.*,
40 F. Supp. 3d 1176 (N.D. Cal. 2014) ........................................12

*Arenson v. Bd. of Trade*,
372 F. Supp. 1349 (N.D. Ill. 1974) ..............................................18

*In re Auto. Refinishing Paint Antitrust Litig.*,
No. MDL 1426, 2008 WL 63269 (E.D. Pa. Jan. 3, 2008) .........................10

*Blum v. Stenson*,
465 U.S. 886 (1984)...........................................................12

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)...........................................................11

*Bowling v. Pfizer, Inc.*,
102 F.3d 777 (6th Cir. 1996)...................................................23

*In re Capacitors Antitrust Litig.*,
No. 3:14-cv-03264-JD (Jan. 30, 2017), ECF No. 1458 .......................20, 21

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. C-07-5944 (JST), 2016 WL 3648478 (N.D. Cal. July 7, 2016).............16, 17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. C-07-5944 JST (N.D. Cal. Sep. 23, 2015), ECF No. 4071 ..................21

*Cent. R.R. & Banking Co. of Ga. v. Pettus*,
113 U.S. 116 (1885)...........................................................11

*In re Corel Corp., Inc. Sec. Litig.*,
293 F. Supp. 2d 484 (E.D. Pa. 2003) ..........................................16

*In re Crazy Eddie Sec. Litig.*,
824 F. Supp. 320 (E.D.N.Y. 1993) .............................................16

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Diet Drugs Prod. Liab. Litig.,*
   No. 99-md-1203, 2002 WL 32154197 (E.D. Pa., Oct. 3, 2002) ...................................10

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
   No. M-02-1486-PJH (N.D. Cal Feb. 28, 2014), ECF No. 2181 ...............................16

*In re Gen. Instr. Sec. Litig.,*
   209 F. Supp. 2d 423 (E.D. Pa. 2001) ........................................................16

*Gustafson v. Valley Ins. Co.,*
   No. CV 01-1575-BR, 2004 WL 2260605 (D. Or. Oct. 6, 2004) ...............................17

*Hartless v. Clorox Co.,*
   273 F.R.D. 630 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir.
   2012) ........................................................................................23

*Hawaii v. Standard Oil Co.,*
   405 U.S. 251 (1972) ........................................................................11

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983) ........................................................................15

*In re Heritage Bond Litig.,*
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)............................14

*In re King Res. Co. Sec. Litig.,*
   420 F. Supp. 610 (D. Colo. 1976) ..........................................................18

*Knight v. Red Door Salons, Inc.,*
   No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ................................13

*Lofton v. Verizon Wireless (VAW) LLC,*
   No. C 13-05665 YGR, 2016 WL 7985253 (N.D. Cal. May 27, 2016)...........................13

*In re Medical X-Ray Film Antitrust Litig.,*
   No. CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998).................................16

*Meijer v. Abbott Labs.,*
   No. C-07-05985 (N.D. Cal. Aug. 11, 2011), ECF No. 514 ...............................13, 14

*In re Mercury Interactive Corp. Sec. Litig.,*
   618 F.3d 988 (9th Cir. 2010)...............................................................23

*Mills v. Elec. Auto-Lite Co.,*
   396 U.S. 375 (1970) ........................................................................11

1

## TABLE OF AUTHORITIES
### (continued)

2
Page

3   *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
4       473 U.S. 614 (1985)..............................................................................................11

    *Moore v. Verizon Commc'n, Inc.*,
5       No. C–09–1823 SBA, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) ....................25

6   *Morganstein v. Esber*,
7       768 F. Supp. 725 (C.D. Cal. 1991) ......................................................................23

8   *In re NASDAQ Mkt.-Makers Antitrust Litig.*,
9       187 F.R.D. 465 (S.D.N.Y. 1998) ..........................................................................14

    *In re Omnivision Tech., Inc.*,
10      559 F. Supp. 2d 1036 (N.D. Cal. 2008) .....................................................15, 17, 24

11  *In re Online DVD-Rental Antitrust Litig.*,
12      779 F.3d 934 (9th Cir. 2015)................................................................................13

13  *In re Optical Disk Drive Antitrust Litig.*,
14      No. 3:10-md-02143 (N.D. Cal. July 23, 2015), ECF No. 1658 ...............................10

15  *Perry v. Arise Virtual Solutions Inc.*,
        No. 11-01488 YGR, 2013 WL 12174056 (N.D. Cal. May 15, 2013) ................13, 25

16  *Pillsbury Co. v. Conboy*,
17      459 U.S. 248 (1983)..............................................................................................11

18  *In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
        No. 1:09-cv-07666 (N.D. Ill. Jan. 22, 2014), ECF No. 693.....................................10
19
    *In re Polyurethane Foam Antitrust Litig.*,
20      168 F. Supp. 3d 985 (N.D. Ohio 2016)..................................................................23

21  *In re Portal Software, Inc. Sec. Litig.*,
22      No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) .....................22

23  *Reiter v. Sonotone Corp.*,
24      442 U.S. 330 (1979)..............................................................................................11

    *Rodriguez v. W. Publ'g Corp.*,
25      563 F.3d 948 (9th Cir. 2009)..........................................................................24, 25

26  *Six (6) Mexican Workers v. Ariz. Citrus Growers*,
27      904 F.2d 1301 (9th Cir. 1990)...............................................................................12

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3
*In re Southeastern Milk Antitrust Litig.*,
   No. 2:08-MD-1000, 2013 WL 2155387 (E.D. Tenn. May 17, 2013)........................10

4

5
*In re Static Random Access Memory Antitrust Litig.*,
   No. 07-13-md-1819-CW (N.D. Cal. June 30, 2011), ECF No. 1370 .................13, 16

6

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
7
   No. 4:07-md-01819-CW (N.D. Cal. Oct. 14, 2011), ECF No. 1407 .................13, 17

8
*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)..........................................................................11

9

*In re Superior Beverage/Glass Container Consol. Pretrial*,
10
   133 F.R.D. 119 (N.D. Ill. 1990) ....................................................................15

11
*In re TFT-LCD Antitrust Litig.*,
12
   No. M 07-1827 SI, 2011 WL 7575003 (N.D. Cal. Dec. 27, 2011)..........12, 13, 15, 17

13
*In re TFT-LCD Antitrust Litig.*,
   No. M 07-1827 SI, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) .........................15

14

15
*In re TFT-LCD Antitrust Litig.*,
   No. M 07-1827 SI, 2013 WL 149692 (N.D. Cal. Jan. 14, 2013) ....................13, 22

16
*In re TFT-LCD Antitrust Litig.*,
17
   No. M 07-1827 SI (N.D. Cal. Sep. 7, 2012), ECF No. 6662 .............................21

18
*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
   No. C 07-05634 CRB, 2015 WL 3396829 (N.D. Cal. May 26, 2015) ....................10

19

20
*In re Urethane Antitrust Litig.*,
   MDL No. 1616 (D. Kan. Dec. 13, 2011), ECF No. 2210 .................................10

21
*Van Vraken v. Atl. Richfield Co.*,
22
   901 F. Supp. 294 (N.D. Cal. 1995) ................................................................25

23
*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977)........................................................................24

24

*Vizcaino v. Microsoft Corp.*,
25
   142 F. Supp. 2d 1299 (W.D. Wash. 2001) ......................................................18

26
*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005).........................................................................12
27

28

IPPs' MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS
Case No. 13-md-02420 YGR (DMR)

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*In re Warfarin Sodium Antitrust Litig.,*
    391 F.3d 516 (3d Cir. 2004)..............................................................................23

4

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
    19 F.3d 1291 (9th Cir. 1994)........................................................................11, 20

5

6

**Other Authorities**

7

Alan Hirsch et al., Fed. Judicial Ctr., *Awarding Attorneys' Fees & Managing Fee*
    *Litig.* (2d ed. 2005)......................................................................................12

8

9

1 Alba Conte, *Attorney Fee Awards* § 2.19 (3d ed. 2004) .............................................24

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should (1) award the Ninth Circuit benchmark of 25% of the total $44,950,000 settlement to attorneys' fees in the amount of $11.24 million, (2) reimburse Class Counsel $4,159,515.28 for a portion of their litigation costs; and (3) approve service awards totaling $34,500 ($1,500 each for each Class Representative).

### II.   INTRODUCTION

After more than four years of hard fought litigation, IPPs have obtained settlements with four defendant groups—Sony, LG Chem, Hitachi Maxell, and NEC[1]—in the amount of $64,450,000. The LG Chem, Hitachi Maxell, and NEC settlements alone total $44,950,000 ("Settlement Fund"). These settlements provide a substantial benefit to both the proposed settlement class and the proposed litigation class because they: (1) provide a considerable recovery to the settlement class; and (2) require the settling defendants to cooperate with IPPs in their continuing prosecution of this case against the four remaining defendants. This recovery was accomplished as a result of the dedication, effort, and skill of interim co-lead counsel and the firms working at their direction, including their substantial multi-year investment of time and expenses.

Several aspects of the litigation in this case are particularly noteworthy in evaluating Class Counsel's request. **First**, unlike in other electronic component price-fixing cases, Defendants focused their defense on aggressively attacking individual Class Representatives. Joint Decl. ¶ 17. This attack included 32 long and combative Class Representative depositions, lasting a total

---

[1] The settling defendants are (1) Sony Corporation, Sony Energy Devices Corporation, and Sony Electronics Inc. ("Sony"); (2) LG Chem, Ltd. and LG Chem America, Inc. ("LG Chem"); (3) Hitachi Maxell, Ltd. and Maxell Corporation of America ("Hitachi Maxell"); and (4) NEC Corporation ("NEC") (collectively, the "Settling Defendants"). The Sony settlement has received final approval (ECF No. 1712), and the other settlements have received preliminary approval (ECF No. 1714), notice has been given to the class, and the final approval hearing is scheduled for August 1, 2017.

The remaining defendants are Samsung SDI Co., Ltd and Samsung SDI America, Inc. ("Samsung"); Panasonic Corporation and Panasonic Corporation of North America ("Panasonic"); Sanyo Electric Co., Ltd. and Sanyo North America Corporation ("Sanyo"); NEC Tokin Corporation ("NEC Tokin"); and Toshiba Corporation ("Toshiba") (collectively, the "Non-Settling Defendants").

1   of over 144 hours (averaging approximately 4.5 hours/deposition), extended discovery disputes

2   regarding "metadata" that accompanied receipts and photographs of lithium-ion battery product

3   purchases, excessive written discovery (including three sets of interrogatories, three sets of

4   document requests, and one set of requests for admission) and three contested motions regarding

5   substitution of Class Representatives. *Id.*  **Second**, Plaintiffs, working in close coordination with

6   attorneys for the Direct Purchaser Class, have taken an enormous amount of discovery, including

7   taking 34 merits depositions (with more than one thousand exhibits), bringing (and prevailing at

8   least in part on) 12 motions to compel, taking three expert depositions, reviewing and analyzing

9   more than 2.7 million pages of documents (approximately 41% of which were in a foreign

10  language), obtaining nearly 1,400 translations of those documents, propounding 22

11  interrogatories, 78 document requests, and 1,482 requests for admissions, issuing 140 subpoenas

12  of third-parties for data, and taking four third-party depositions. Joint Decl. ¶¶ 18-19.  **Third**,

13  Plaintiffs, through expert consultants they retained, conducted a massive amount of data analysis,

14  including review and analysis of more than 381 gigabytes of data and many multiple regression

15  analyses.  Joint Decl. ¶24.  Professor Edward E. Leamer analyzed impact and damages using

16  statistical modeling and Dr. Rosa M. Abrantes-Metz analyzed whether the available economic

17  evidence supports the existence and impact of the alleged conspiracy on a class-wide basis. *Id.*

18  **Fourth**, Class Counsel have invested a total of 86,178.655 hours and approximately $4.4 million

19  in out-of-pocket expenses since this case began in 2012. Joint Decl. ¶ 28.  Throughout the

20  litigation, Class Counsel have prosecuted this case on a contingent basis, funding the case out-of-

21  pocket, without the use of outside litigation funders. Joint Decl. ¶ 29.  **Fifth**, because this case

22  was brought by Class Counsel who litigated prior electronic component price-fixing cases, Class

23  Counsel applied that experience to litigate this case with exceptional efficiency.  Joint Decl.  ¶ 14.

24          In light of the work and investment of time and money described above, as well as the

25  substantial risks Plaintiffs faced and continue to face, Class Counsel submit that this request for

26  fees and costs is fully appropriate and supported by the case law of this District.  Class Counsel

27  seek an award of $11.24 million in fees under the established age-of-the-fund methodology, and

28  at the Ninth Circuit's benchmark percentage. *Vizcaino v. Microsoft Corp.* ("*Vizcaino II*"), 290

1    F.3d 1043, 1048-50 (9th Cir. 2002). Application of the lodestar cross-check reveals the award to

2    comprise approximately 1/3 of the applicable lodestar (i.e., a negative multiplier) in a hard-

3    fought, intensively litigated case. Class Counsel also seek $4,159,515.28 in unreimbursed out-of-

4    pocket expenses that Class Counsel necessarily incurred (Class Counsel has incurred a total of

5    over $4.4 million in out-of-pocket expenses prosecuting this action, but seek reimbursement of

6    only a subset of those costs here). Finally, Class Counsel seek service awards in an amount of

7    $34,500 ($1,500 each for Class Representative) to compensate Class Representatives for their

8    substantial time and effort and for the service they provided in bringing this antitrust enforcement

9    action.

10   **III.   PROCEDURAL HISTORY**

11      **A.    The Allegations**

12      IPPs allege that from no later than January 1, 2000 to at least May 31, 2011, Defendants

13   conspired to fix the prices of lithium-ion batteries, which are widely used in consumer electronics.

14   4th Consol. Am. Compl. ("FCAC") ¶4, ECF No. 1168. IPPs allege that Defendants agreed to fix

15   prices, restrict output, and allocate markets. *Id.* ¶6. Defendants' collusive activities included

16   direct communication between competitors, face-to-face meetings, phone conversations, and the

17   use of trade associations. *Id.* ¶¶6, 7, 277-293, 476. Defendants made extensive efforts to conceal

18   their activities by meeting in private rooms at restaurants and hotels, and instructing subordinates

19   to delete evidence of collusive communications. *Id.* ¶¶7, 18. Two Defendants—LG Chem and

20   Sanyo—pled guilty to criminal charges for fixing the prices of lithium-ion batteries, and Sanyo

21   named a third Defendant, Panasonic, as a co-conspirator. *Id.* ¶¶294, 302.

22      **B.    The Complaints and Motions to Dismiss**

23      This litigation has been pending for approximately four-and-a-half years. IPPs filed their

24   first complaint on October 4, 2012 in the Northern District of California. *See Hanlon v. LG*

25   *Chem. et al.*, No. 12-5159 (N.D. Cal.), ECF No. 1. In total, forty-seven complaints were filed in

26   several district courts, each making substantially similar legal and factual allegations. *See*

27   Transfer Order (Feb. 6, 2013), ECF No. 1. On February 6, 2013, the JPML transferred all cases

28   to this Court and found centralization appropriate under 28 U.S.C. §1407. *Id.* On May 17, 2013,

IPPs' MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS
Case No. 13-md-02420 YGR (DMR)

1    this Court appointed Cotchett, Pitre & McCarthy, LLP, Hagens Berman Sobol Shapiro LLP, and

2    Lieff Cabraser Heimann & Bernstein, LLP as Interim Co-Lead Counsel for the IPPs ("Co-Lead

3    Counsel"). Order Appoint'g Interim Co-Lead Counsel & Liaison Counsel for Direct Purchaser

4    Pls. & Appoint'g Interim Co-Lead Counsel and Liaison Counsel for IPPs (May 17, 2013), ECF

5    No. 194. On July 2, 2013, IPPs filed a detailed 162-page Consolidated Class Action Complaint

6    ("CCAC"). *See* 1st Consol. Am. Class Action Compl., ECF No. 221.

7            Plaintiffs defended against three rounds of motions to dismiss. **First**, Defendants filed

8    one joint and five individual motions to dismiss the CCAC. *See* ECF Nos. 288 (Joint Motion);

9    284 (Hitachi and Maxell); 289 (Panasonic and Sanyo); 291 (LG Chem America); 293 (Toshiba);

10   296 (Sony). Defendants argued: (1) IPPs failed to allege a plausible "overarching" conspiracy

11   involving each Defendant; (2) IPPs' claims were barred by the statute of limitations; (3)

12   Defendants' U.S.-based subsidiaries were not properly named as Defendants; and (4) various

13   state law claims should be dismissed. *Id.* In total, the first round of motions to dismiss generated

14   278 pages of briefing. Joint Decl. ¶ 20. On January 21, 2014, this Court issued an Order

15   dismissing IPPs' CCAC with leave to amend. Order re: Mots. to Dismiss, ECF No. 361. The

16   Court rejected Defendants' first two arguments, holding that IPPs had alleged a plausible

17   conspiracy as to the Defendants' Korean and Japanese parent companies, but found that IPPs

18   needed to make more detailed allegations as to the Defendant subsidiaries and conspiracy

19   allegations in 2000 and 2001. *Id.* at 3, 21-24. On April 11, 2014, IPPs filed their Second

20   Consolidated Amended Complaint ("SCAC") to conform to the Court's order. IPPs' Corrected

21   Consol. 2d Am. Class Action Compl., ECF No. 419.

22           **Second**, Defendants filed a joint supplemental motion to dismiss that challenged IPPs'

23   antitrust standing and claims under various state laws. Defs.' Joint Suppl. Mot. to Dismiss the

24   IPPs' Consol. Am. Compl. (Phase II) (Mar. 7, 2014), ECF No. 401. Briefing related to this

25   motion totaled 284 pages. Joint Decl. ¶ 20.

26           **Third**, on April 25, 2015, Defendants filed another round of motions to dismiss, including

27   one joint motion and seven individual motions. *See* ECF Nos. 428 (Joint Motion); 424 (GS

28   Yuasa); 425 (LG Chem America); 427 (Hitachi and Maxell); 426 (NEC); 429 (Panasonic and

-4-

1   Sanyo); 431 (Sony); 430 (Toshiba).  In total, the third round of motions to dismiss generated 227

2   pages of briefing.  Joint Decl. ¶ 20.  With the exception of the Court's dismissal of two state law

3   claims (Montana and New Hampshire), and the dismissal of the State Governmental Damages

4   Subclass (except California), Defendants' motions were denied.  Omnibus Order re: Mots. to

5   Dismiss the 2d Consol. Am. Compls. of Direct & IPPs at 36 and 44 (Oct. 2, 2014), ECF No. 512.

6   On October 22, 2014, IPPs filed their Third Consolidated Amended Complaint ("TCAC") to

7   conform to this order.  ECF No. 519.

8   **C.     Substitution of Class Representatives**

9           On December 2, 2015, IPPs filed a Motion to Amend the TCAC to add, substitute, and

10  dismiss certain class representatives.  IPPs' Notice of Mot. & Mot. for Leave to Amend Compl.

11  Pursuant to Fed. R. of Civ. P. 15(a) & 20(a), ECF No. 984.  On March 14, 2016, with the

12  exception of five proposed substitute class representatives who only purchased Apple products,

13  the Court granted IPPs' motion.  Order Grant'g in Part IPPs' Mot. to Amend Compl., ECF No.

14  1154.  IPPs filed the Fourth Consolidated Amended Complaint ("FCAC") on March 18, 2016.

15  ECF No. 1168.

16  **D.     Toshiba's Summary Judgment Motion**

17          On June 30, 2015, Toshiba filed a motion for summary judgment arguing that it had

18  withdrawn from the conspiracy by 2004 and that the statute of limitations therefore barred all

19  plaintiffs' claims.  Toshiba Corp.'s Notice of Mot. & Mot. for Summ. J. on Withdrawal, ECF No.

20  735.  On November 13, 2015, IPPs and DPPs collectively opposed the motion, and this Court

21  denied Toshiba's motion following oral argument.  Pls.' Joint Opp'n to Toshiba Corp.'s Mot. for.

22  Summ. J. on Withdrawal, ECF No. 957; Order Den. Toshiba Corp.'s Mot. for Summ. J. on

23  Withdrawal (Mar. 16, 2016), ECF No. 1160.

24  **E.     The Discovery Process**

25          An enormous amount of discovery has occurred in this case.

26  **1.     Class Representative Discovery**

27          Defendants spent the bulk of the first three years of litigation aggressively attacking the

28  individual Class Representatives.   This attack included lengthy and contentious Class

-5-

1   Representative depositions, extended disputes about "metadata" related to receipts and

2   photographs of Class Representatives' lithium-ion battery purchases, and voluminous written

3   discovery.  For document collection and production alone, document hosting, and ESI discovery,

4   IPPs spent approximately $660,994.53.  A substantial portion of this was paid to iDiscovery

5   Solutions and Omega Discovery Solutions to collect and review Class Representative documents

6   for production.  Defendants also deposed every Class Representative in the FCAC, which

7   amounted to 32 depositions, lasting a total of over 144 hours (approximately 4.5 hours per

8   deposition on average).  Consequently, IPPs and their counsel incurred enormous time and

9   expense preparing for and defending these depositions.  Defendants also propounded 22

10  interrogatories, 37 document requests, and four requests for admission to each of the Class

11  Representatives, despite the tiny amount of relevant information in their possession:  what type of

12  lithium-ion battery product they purchased and when.  Joint Decl. ¶17.

13              2.    <u>**Written Discovery and Document Review and Analysis**</u>

14          IPPs have also propounded significant written discovery, including 78 document requests,

15  22 interrogatories, 1,482 requests for admissions,[2] and 140 subpoenas to third-parties for data.

16  Joint Decl. . ¶ 18.  Of the $660,994.53 spent for ESI and discovery, the majority was for

17  document hosting and document review platforms.  To date, IPPs have spent over 58,000 hours

18  reviewing and analyzing the 2,760,613 pages of documents (much of which was in Japanese,

19  Korean, or Chinese) that were produced from over 250 negotiated custodians.  *Id.* ¶ 18.  IPPs

20  contracted with Catalyst, Omega Discovery Solutions, and iDiscovery Solutions to retrieve, host,

21  review, and synthesize these documents.  *Id.* ¶ 18.  Due to the large number of foreign language

22  documents in this case, IPPs had to retain foreign language document reviewers and spent

23  $199,193.97 to obtain certified translations of nearly 1,400 documents.  Joint Decl. ¶ 49.  In order

24  to economize, IPPs shared translation costs with Direct Purchaser Plaintiffs.  *Id.*  Thus, the

25  $199,193.97 in translation costs incurred by IPPs represents only half of the total cost of

26  translations for the IPPs and DPPs combined.

27

28

---

[2] Many of these requests for admissions addressed document authentication.

1

### 3.   Plaintiffs' Depositions

2       IPPs have aggressively prosecuted this case by taking 34 merits depositions of

3   Defendants' witnesses, three expert depositions, and four depositions of third-parties.  Joint Decl.

4   ¶ 19, 23.  Of the merits depositions, almost all witnesses testified in Japanese or Korean, requiring

5   additional time and expense.  *Id.* ¶ 19.  To increase efficiency, IPPs and DPPs coordinated on

6   these depositions, alternating on who took the lead on each deposition.  *Id.*  In total, the merits

7   depositions lasted more than 80 days and involved more than 1,000 exhibits.[3]  *Id.* ¶

8

### 4.   Motions to Compel

9       The discovery in this case involved significant disputes that required Plaintiffs to bring

10  (and prevail at least in part on) twelve motions to compel:

| Order on Motion to Compel | Date | Outcome |
|---|---|---|
| Order on Joint Disc. Letter Br. re LG Chem's Interrog. Resp., ECF No. 805 | Aug. 21, 2015 | Granted |
| Order on Joint Disc. Letter, ECF No. 690 | Mar. 17, 2015 | Granted |
| Order on Joint Disc. Letter, ECF No. 710 | Apr. 1, 2015 | Granted |
| Minute Entry re Joint Disc. Letter Br. re LG Chem's Interrog. Resp., ECF No. 781 | Aug. 13, 2015 | Granted |
| Order on Pls.' Mot. to Continue Dep. Hiroshi Kubo, ECF No. 822 | Aug. 31, 2015 | Granted |
| Order re Pls.' Mot. to Compel Dep. Seok Hwan Kwak, ECF No. 836 | Sept. 15, 2015 | Granted |
| Minute Entry re Joint Disc. Letter Br. re LG Chem's Data Preservation and Docs. Used to Refresh Deponent's Memory, ECF No. 1066 | Feb. 4, 2016 | Granted |
| Order Grant'g Pls.' Mot. to Compel Dep. Jae Jeong Joe, ECF No. 1177 | Mar. 24, 2016 | Granted |
| Minute Entry re Disc. Letter Br. re Compel'g Produc. of Walmart Data, ECF No. 1411 | Aug. 25, 2016 | Granted |
| Minute Entry re Disc. Letter Br. re Mot. to Compel Robert Bosch Tool Corp., ECF No. 1530 | Oct. 13, 2016 | Granted in part |
| Minute Entry re Disc. Letter Br. re Mot. to Compel Canon, ECF No. 1530 | Oct. 13, 2016 | Granted in part |
| Minute Entry re Disc. Letter Br. re Compel'g Sanyo to Produce Docs. of Hiroshi Shimokomaki, ECF No. 1547 | Oct. 27, 2016 | Granted in part |

As with depositions of defendant witnesses, IPPs coordinated briefing and argument of these

motions with DPPs for efficiency purposes.  Joint Decl. ¶ 22.  Nevertheless, these motions

---

[3] DPPs and IPPs coordinated preparation for these depositions for efficiency purposes, and IPPs
first-chaired twenty-one of the merits depositions.  Joint Decl. ¶ 19.

IPPs' MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS
Case No. 13-md-02420 YGR (DMR)

1    necessitated large amounts of time for meet-and-confers, briefing, and hearing preparation.  *Id.*

2    ### 5.    Data Analysis and Expert Work

3    As part of IPPs' motion for class certification and opposition to Defendants' *Daubert*

4    motions, IPPs engaged in a massive amount of data analysis.  Joint Decl. ¶¶ 24-25.  IPPs retained

5    University of California Los Angeles Economics Professor Edward E. Leamer to analyze the

6    impact of the conspiracy and resulting damages using statistical modeling.  Joint Decl. ¶ 24.

7    Economic consulting firm EconOne performed work at the direction of Dr. Leamer, which

8    included analyzing Defendants' and non-parties' transactional data.  *Id.*  EconOne analyzed data

9    from more than 71 non-parties and from each Defendant.  *Id.*  This analysis involved a systematic

10   analysis of more than 381 gigabytes of data.  *Id.*  Class Counsel also engaged an industry expert

11   and applEcon for additional data collection.  *Id.*  IPPs also engaged Dr. Rosa Abrantes-Metz to

12   analyze the available economic evidence and whether it supports the existence and impact of the

13   alleged conspiracy.  *Id.*  The work of Drs. Leamer and Abrantes-Metz informed all aspects of

14   IPPs' prosecution of this case, including their settlement negotiations.  *Id.*  As a result of this

15   work, IPPs incurred a total of $3,299,326.78 in expert expenses.  Declaration of Brendan P.

16   Glackin submitted herewith, ¶ 29.

17   ### 6.    Class Certification and *Daubert* Motions

18   IPPs filed their motion for class certification along with the expert reports of economists

19   Dr. Edward Leamer and Dr. Rosa Abrantes-Metz on January 22, 2016.  ECF Nos. 1036, 1036-1,

20   1036-2.  Defendants filed their opposition to class certification on May 24, 2016.  Defs.' Opp'n to

21   IPPs' Mot. Class Cert., ECF No. 1551.  As part of that filing, Defendants submitted two *Daubert*

22   motions and the expert reports of Margaret Guerin-Calvert, Dr. Quinn Horn, and Daniel Moe.

23   *Id.*; Defs.' Mot. to Exclude Proposed Test. of IPPs' Experts, ECF Nos. 1280-3; 1280-5.  On

24   August 23, 2016, IPPs filed their reply in support of class certification, along with reply reports

25   by Drs. Leamer and Abrantes-Metz.  IPPs' Reply in Further Supp. of Mot. Class Cert., ECF No.

26   1402-2.  Each of the expert reports filed by IPPs was based on extensive economic analyses of

27   Defendants' and third-party documents, transactional data and opposing expert reports, and took

28

1   many hours to complete.  Joint Decl. ¶ 25.  Drs. Leamer and Abrantes-Metz were deposed by

2   Defendants for a collective sixteen-and-a-half hours.  Joint Decl. ¶ 24.

3         The Court held a class certification hearing on November 11, 2016, and issued an order

4   denying IPPs' motion for class certification without prejudice on April 12, 2017.  Order Deny'g

5   Without Prejudice Mots. for Class Cert.; Grant'g in Part & Deny'g in Part Mots. to Strike Expert

6   Reports or Portions Thereof, ECF No. 1735.  In the same order, this Court denied Defendants'

7   *Daubert* motions as to Dr. Abrantes-Metz, and granted the motion in part as to Dr. Leamer, on the

8   grounds that more analyses were needed on the degree of pass-through to the IPP class.  *Id.*

9      **F.**    **Settlement History**

10        Thus far, IPPs have settled with half of the Defendant families in this case, securing a

11   Settlement Fund totaling $44,950,000 ($64,450,000 including the Sony settlement) in cash for the

12   IPP Class.  Joint Decl. ¶ 30.  Class Counsel have also secured cooperation from the four settling

13   Defendants in the ongoing action against Non-Settling Defendants, two of whom (Samsung and

14   Sanyo) are the biggest worldwide manufacturers of lithium-ion batteries.  *Id.* ¶ 31.  IPPs entered

15   into the four settlements only after extensive discovery and analysis of liability and damages

16   evidence.  *Id.* ¶ 32.  The amount of each settlement, and the percentage share of each Defendant's

17   single damages that each settlement represents is provided below.

| Defendant Family | Damages Attributed to Defendant Family By IPPs | Percent Share of Total Damages | Contribution to Settlement Fund | Percent Recovery for IPPs (of Damages Attributed to Defendant Family by IPPs) |
|---|---|---|---|---|
| Hitachi Maxell | $3,187,687 | 0.3% | $3,450,000 | 108.2% |
| NEC | $967,035 | 0.1% | $2,500,000 | 258.5% |
| LG Chem | $123,312,217 | 12.8% | $39,000,000 | 31.6% |
| Sony | $239,725,760 | 24.8% | $19,500,000 | 8.1%[4] |
| TOTAL | $367,192,699 | 38% | $64,450,000 | 17.55% |

23   The terms of these settlements are detailed in IPPs' various motions for preliminary and final

24   approval.[5]

---

26   [4] The Sony settlement included prismatic, polymer, and cylindrical lithium-ion batteries, whereas the other settlement classes are cylindrical-only.  To make a meaningful comparison across settlements, IPPs provided the estimated recovery for the Sony settlement against the current damage model.  The Sony settlement was also the first, "ice-breaker," settlement.

28   [5] *See* IPPs' Mot. for Prelim. Approval of the Sony Settlement at 5-9 (Apr. 8. 2016), ECF No. 1209; IPPs' Mot. for Final Approval of the Sony Settlement at 6-9 (Oct. 4, 2016), ECF No. 1504;

IV.   **ARGUMENT**

    A.   **The Requested Fee Is Reasonable and Appropriate.**

Recognizing that this case is ongoing, IPPs request an award of $11.24 million in attorneys' fees, which represents 25% of the Settlement Fund and 32.62% of their lodestar incurred from June 1, 2013 to February 28, 2017. Courts routinely award interim fees from initial settlements in multi-defendant cases. *See, e.g., In re Air Cargo Shipping Servs. Litig.*, No. 06-md-1775, 2015 WL 5918273, at *6-7 (E.D.N.Y. Oct. 9, 2015) (awarding fourth round of interim attorneys' fees); Order Grant'g DPPs' Mot. for an Award of Att'ys' Fees, Reimbursement of Expenses, & Class Representative Incentive Awards, *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-02143 (N.D. Cal. July 23, 2015), ECF No. 1658 (granting attorney's fees in the amount of 30% interim settlement fund); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C 07-05634 CRB, 2015 WL 3396829, at *4 (N.D. Cal. May 26, 2015) (granting interim fees); Order Grant'g Class Pls.' Mot. for Interim Award of Att'ys' Fees & Reimbursement of Expenses, *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 1:09-cv-07666 (N.D. Ill. Jan. 22, 2014), ECF No. 693 (awarding one-third interim fee from initial settlement in multi-defendant case); *In re Southeastern Milk Antitrust Litig.*, No. 2:08-MD-1000, 2013 WL 2155387, at *1 (E.D. Tenn. May 17, 2013) (noting initial one-third fee award from early settlements and approving additional fee from later settlements); Order Awarding Att'ys' Fees & Reimbursement of Litig. Expenses to Pls.' Co-Lead Counsel, *In re Urethane Antitrust Litig.*, MDL No. 1616 (D. Kan. Dec. 13, 2011), ECF No. 2210 (awarding one-third fee from initial settlements with litigation continuing); *In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2008 WL 63269, at *1 (E.D. Pa. Jan. 3, 2008) (noting prior 32% fee award from initial settlements and approving additional fee from later settlements); *In re Diet Drugs Prod. Liab. Litig.*, No. 99-md-1203, 2002 WL 32154197, at *12 (E.D. Pa., Oct. 3, 2002) (awarding attorneys' fees after four years of litigation and noting "[t]o make them wait any longer for at least some award would be grossly unfair").

---

IPPs' Mot. for Prelim. Approval of the LG Chem Settlement at 3-5 (Dec. 6, 2016), ECF No. 1652; IPPs' Mot. for Prelim. Approval of the Hitachi & NEC Settlements at 3-6 (Jan. 24, 2017), ECF No. 1672.

IPPs' MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS
Case No. 13-md-02420 YGR (DMR)

1    This litigation fits this paradigm.  It has been ongoing for nearly five years, and will likely

2    continue for several more.  Class Counsel assumed substantial risks and incurred substantial out-

3    of-pocket costs in pursuing recovery for the Settlement Class, and Class Counsel litigated this

4    case efficiently.  Granting this request would partially compensate Class Counsel for the work

5    performed so far.

### 1.   Class Counsel Are Entitled to a Fee Under the Common Fund Doctrine.

8    The common fund doctrine applies in the Ninth Circuit.  *Staton v. Boeing Co.*, 327 F.3d

9    938, 967 (9th Cir. 2003).  Under this doctrine, counsel have an equitable right to be compensated

10   for their successful efforts in creating a common fund.  *Id.* at 968; *Boeing Co. v. Van Gemert*,

11   444 U.S. 472, 478 (1980) (". . . a litigant or a lawyer who recovers a common fund . . . is entitled

12   to a reasonable attorney's fee from the fund as a whole"); *In re Wash. Pub. Power Supply Sys.*

13   *Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (same).  The Supreme Court has explained that "a

14   litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or

15   his client is entitled to a reasonable attorney's fee from the fund as a whole." *Van Gemert*, 444

16   U.S. at 478; *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392–93 (1970); *Cent. R.R. &*

17   *Banking Co. of Ga. v. Pettus*, 113 U.S. 116, 123 (1885).

18   The common fund doctrine is particularly appropriate in antitrust actions.  The Supreme

19   Court has repeatedly recognized that private antitrust litigation is essential to the effective

20   enforcement of the antitrust laws. *See, e.g., Pillsbury Co. v. Conboy*, 459 U.S. 248, 262–63

21   (1983); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 331 (1979); *Hawaii v. Standard Oil Co.*, 405 U.S.

22   251, 266 (1972); *Wash. Pub. Power*, 19 F.3d at 1296.  Appropriate fee awards in cases like this

23   one encourage meritorious class actions, and thereby promote private enforcement of, and

24   compliance with, the antitrust laws. In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,

25   473 U.S. 614, 653-54 (1985), the Supreme Court said:

26       What we have described as "the public interest in vigilant enforcement of the
         antitrust laws through the instrumentality of the private treble-damage action," is
27       buttressed by the statutory mandate that the injured party also recover costs,
         "including a reasonable attorney's fee."  15 U.S.C. §15(a).  **The interest in wide**
28       **and effective enforcement has thus, for almost a century, been vindicated by**

**enlisting the assistance of "private Attorneys General"; we have always attached special importance to their role because "[e]very violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress."**

(internal citations omitted, emphasis added). Indeed, "[i]n the absence of adequate attorneys' fees awards, many antitrust actions would not be commenced[.]" *Alpine Pharmacy, Inc. v. Charles Pfizer & Co., Inc.*, 481 F.2d 1045, 1050 (2d Cir. 1973).

The most appropriate way to calculate a reasonable fee where, as here, contingency fee litigation has produced a common fund, is the percentage-of-the-fund method. *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *Vizcaino II*, 290 F.3d at 1047; *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (common fund fee is generally "calculated as a percentage of the recovery"). The percentage method comports with the legal marketplace because it "helps ensure that the fee award will simulate marketplace rates, since most common fund cases are the kinds of cases normally taken on a contingency fee basis, by which counsel is promised a percentage of any recovery." *See* Alan Hirsch et al., Fed. Judicial Ctr., *Awarding Attorneys' Fees & Managing Fee Litig.* at 73 (2d ed. 2005).

The percentage-of-the-fund method aligns class counsel's interests with those of the class, and properly incentivizes capable counsel, not to only accept challenging cases, but to push for the best result that can be achieved for the class. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (percentage method "directly aligns the interests of the class and its counsel") (citation omitted). Moreover, the percentage-of-the-fund method encourages efficiency and discourages waste.[6] The lodestar method, by contrast, encourages counsel to bill time and to create opportunities to bill time. Calculating the fee here as a percentage-of-the-fund, rather than merely as a function of counsels' billed time, rewards Class Counsel for assuming the risks of this case and efficiently prosecuting it.

---

[6] The lodestar method's emphasis on time has drawn substantial criticism because it incentivizes inefficiency. *Vizcaino II*, 290 F.3d at 1050 n.5 ("the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee"); *In re Apple iPhone/iPod Warranty Litig.*, 40 F. Supp. 3d 1176, 1180 (N.D. Cal. 2014) ("Whatever merits the lodestar method might have, particularly outside the context of a common fund case, it has also been subject to heavy criticism by commentators and in the courts."); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989).

1    Thus, most district courts in the Ninth Circuit use the percentage-of-the-fund method, and

2    virtually all of the major recent antitrust class actions in the Northern District of California have

3    applied the percentage-of-the-fund approach. *See, e.g., In re TFT-LCD Antitrust Litig.*, No. M 07-

4    1827 SI, 2011 WL 7575003, at \*1–2 (N.D. Cal. Dec. 27, 2011) ("*LCD I*"); *In re TFT-LCD*

5    *Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 149692, at \*1–2 (N.D. Cal. Jan. 14, 2013) ("*LCD*

6    *II*") (30%); Order Award'g Class Counsel Att'ys' Fees, Reimbursement of Expenses & Incentive

7    Award, *In re Static Random Access Memory Antitrust Litig.*, No. 07-13-md-1819-CW (N.D. Cal.

8    June 30, 2011), ECF No. 1370 (30%) ("*SRAM*"); Order Grant'g Final Approval of Settlement &

9    Enter'g Final J. of Dismissal with Prejudice, *Meijer v. Abbott Labs.*, No. C-07-05985 (N.D. Cal.

10   Aug. 11, 2011), ECF No. 514 (33⅓%) ("*Meijer*").

11               **2.     The Requested $11.24 Million Fee Award Falls Within the Range of**
                          **Reasonableness.**
12

13   Class Counsel's requested fee calculated at the 25% benchmark set by the Ninth Circuit is

14   within the range of reasonableness. *See, e.g., Vizcaino II*, 290 F.3d at 1047 ("in common fund

15   cases, the 'benchmark' award is 25% of the recovery obtained") (citation omitted); *In re Online*

16   *DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("[I]n this circuit, the benchmark

17   percentage is 25%."). In common fund cases, fee awards tend to be approximately 30% or higher.

18   *Activision*, 723 F. Supp. at 1377 ("[T]his court finds that in most recent cases the benchmark is

19   closer to 30%"); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at \*6

20   (N.D. Cal. Feb. 2, 2009) ("[I]n most common fund cases, the award exceeds that [25%]

21   benchmark."); *see also Lofton v. Verizon Wireless (VAW) LLC*, No. C 13-05665 YGR, 2016 WL

22   7985253, at \*1 (N.D. Cal. May 27, 2016) (30% of the common fund); *Perry v. Arise Virtual*

23   *Solutions Inc.*, No. 11-01488 YGR, 2013 WL 12174056, at \*2 (N.D. Cal. May 15, 2013) (30% of

24   the common fund).

25   Although Plaintiffs do not seek fees beyond 25% of the Settlement Fund here, awarding

26   fees beyond the 25% benchmark is especially common in antitrust cases within this District. In

27   fact, many have awarded fees of **at least 30%** of the common fund. *See, e.g., LCD I*, 2011 WL

28   7575003, at \*1–2 (**30%**); *LCD II*, , 2013 WL 149692, at \*1–2 (**30%**); Order Grant'g Award of

-13-

1   Att'y's Fees, Reimbursement of Expenses & for Class Representative Incentive Payments at 2-3,

2   *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 4:07-md-01819-CW (N.D. Cal.

3   Oct. 14, 2011), ECF No. 1407 (**33⅓%**); *SRAM,* No. 07-13-md-1819-CW (N.D. Cal. June 30,

4   2011), ECF No. 1370 (**30%**); *Meijer,* C-07-05985 (N.D. Cal. Aug. 11, 2011), ECF No. 514

5   (**33⅓%**).  This pattern reflects the common characteristics of these cases:  hard-fought litigations

6   spanning many years against gigantic corporations employing the finest defense counsel for hire.

7          In considering whether an award represents a fair percentage of the recovery, the

8   following factors may be considered:

9          [T]he extent to which class counsel achieved exceptional results for the class,
           whether the case was risky for class counsel, whether counsel's performance
10         generated benefits beyond the cash settlement fund, the market rate for the
           particular field of law (in some circumstances), the burdens class counsel
11         experienced while litigating the case (e.g., cost, duration, foregoing other work),
           and whether the case was handled on a contingency basis.
12

13   *Online DVD*, 2015 WL 846008, at *14 (citations omitted).  The Court may also consider the

14   volume of work performed, counsels' skill and experience, the complexity of the issues faced, and

15   the reaction of the class. *See, e.g.*, *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL

16   1594403, at *18–23 (C.D. Cal. June 10, 2005) ("*Heritage Bond*").  Consideration of these factors

17   supports the fees requested here.

18                    a.    **This Litigation Involves Significant Risk.**

19          Risk is an important factor in determining a fair fee award—and it is particularly important

20   in this case, given its current posture. *Online DVD*, 2015 WL 846008, at *14.  **First**, this is,

21   intrinsically, a difficult and risky case due to the scope of the conspiracy alleged and complexity

22   associated with showing that lithium-ion battery overcharges existed and were passed down the

23   distribution chain to consumers.  The fact that this Court denied (without prejudice) IPPs' motion

24   for class certification exemplifies the complexity and risk associated with this case.  Order

25   Deny'g Without Prejudice Mots. for Class Cert.; Grant'g in Part & Deny'g in Part Mots. to Strike

26   Expert Reports or Portions Thereof (Apr. 12, 2017), ECF No. 1735.  The Defendants' lengthy,

27   multi-round motions to dismiss based on conspiracy and antitrust standing narrowed the case and

28   could have ended it.  The Court permitted an early summary judgment motion by Toshiba based

1   on a withdrawal defense that likewise could have terminated the case against that defendant. It is

2   because of these kinds of issues that many courts have noted that "[a]ntitrust litigation in general,

3   and class action litigation in particular, is unpredictable." *See In re NASDAQ Mkt.-Makers*

4   *Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998); *In re Superior Beverage/Glass Container*

5   *Consol. Pretrial*, 133 F.R.D. 119, 127 (N.D. Ill. 1990).

6        **Second**, while many electronic component cases in this district share these characteristics,

7   in most cases plaintiffs had the benefit of a more extensive concurrent criminal investigation the

8   outcome of which more closely mapped the conspiracy pled and proven by the plaintiffs. *See In*

9   *re TFT-LCD Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900, at *7 (N.D. Cal. Apr. 3,

10  2013) (recognizing that class counsel's risk is minimized when civil litigation has the benefit of

11  parallel criminal price-fixing charges and guilty pleas). For example, while the plaintiffs in *TFT-*

12  *LCD* proved a broader and longer conspiracy than the criminal enforcement authorities, nearly all

13  the civil defendants pled guilty to something, and some pled guilty to a lengthy and continuous

14  criminal enterprise. *Id.* That case was nevertheless hard-fought and risky. Here, however, only

15  two Defendants—Sanyo and LG Chem—pled guilty to criminal price-fixing. FCAC ¶¶294, 302.

16  And, while each admitted to participating in a lithium-ion battery price-fixing conspiracy, their

17  pleas covered a much more narrow time period—April 2007 to September 2008—than that

18  alleged by IPPs. *Id.*

19          b.        **In the Face of These Risks, Class Counsel Achieved an**
                     **Excellent Recovery for the Class.**
20

21        Recovery is an important factor to be considered in determining an appropriate fee award.

22  *See Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d

23  1036, 1046 (N.D. Cal. 2008). Here, in the face of the daunting risks set forth above, Class

24  Counsel secured a pre-class certification Settlement Fund of $44.95 million in addition to the

25  $19.5 million Sony settlement. Class Counsel estimate that this recovery represents

26  approximately 17.55% of the damages attributed to the Settling Defendant families. Meanwhile,

27  IPPs still seek to recover from two of the Defendants with the largest market share—Samsung

28  and Sanyo—who remain in the litigation, as well as Toshiba.

| Defendant | IPP Settlement | Damages Attributed to Defendant Family | Percent Recovery for IPPs (of Damages Attributed to Defendant Family) |
|---|---|---|---|
| Hitachi Maxell | $3,450,000 | $3,187,687 | 108.23% |
| LG Chem | $39,000,000 | $123,312,217.00 | 31.63% |
| NEC | $2,500,000 | $967,035 | 258.52% |
| Sony | $19,500,000 | $239,725,760 | 8.13% |
| Total | $64,450,000 | $367,192,699 | 17.55% |

Recovering more than 17% of IPPs' total damages attributable to these Defendant families is a substantial achievement on behalf of the class and is an important factor weighing in favor of Plaintiffs' requested $11.24 million fee award, which is less than the percentage fee awards granted in similar cases. *See, e.g.*, *In re Medical X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, at *7-8 (E.D.N.Y. Aug. 7, 1998) (court increased 25% benchmark to 33.3% where counsel recovered 17% of damages); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (court increased 25% benchmark to 33.8% where counsel recovered 10% of damages); *In re Gen. Instr. Sec. Litig.*, 209 F. Supp. 2d 423, 431, 434 (E.D. Pa. 2001) (one-third fee awarded from settlement fund that was 11% of the plaintiffs' estimated damages); *In re Corel Corp., Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 489-90, 498 (E.D. Pa. 2003) (one-third fee awarded from settlement fund that equaled about 15% of damages).

Moreover, with each settlement, the percentage recovery measured by damages attributed to that Defendant family increased, eventually increasing to more than 250%. Sony, the first settling Defendant, paid 8.13% of the damages attributed to it; the second Settling Defendant, LG Chem, paid 31.63% of its attributable damages; Hitachi Maxell paid 108.23% of its attributable damages; and NEC paid 258.52% of its attributable damages. Achieving **17.5%** of single damages through settlements with only **half** of the defendant families in this case is substantial given the percentages of damages recovered after settlement with **all defendants** in similar litigation. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 (JST), 2016 WL 3648478, at *7 (N.D. Cal. July 7, 2016)) (**IPPs recovered 20%**); IPPs and Att'ys Gen.'s Joint Appl. for Att'ys' Fees; IPPs' Appl. for Costs & Incentive Awards; & Att'ys Gen.'s Appl. for Costs at 4, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486-PJH (N.D. Cal Feb. 28, 2014), ECF No. 2181 (**IPPs recovered 12%**); Notice of Mot. & Mot. for

IPPs' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
Case No. 13-md-02420 YGR (DMR)

1   Award of Att'y's Fees, Reimbursement of Expenses, & Incentive Awards at 15, *In re Static*

2   *Random Access Memory Antitrust Litig.*, No. 07-13-md-1819-CW (N.D. Cal. July 27, 2011), ECF

3   Nol. 1375 (**IPPs recovered 15%**); *see also* Mot. for Preliminary Approval of Class Action

4   Settlements with Hitachi Maxell, Ltd., Maxell Corp. of Am., & NEC Corp. at 9-10 (Jan. 24,

5   2017), ECF No. 1672 (comparing other electronic component price-fixing settlements).

6   Achieving these results prior to class certification is even more remarkable and of even greater

7   value to the class, for the simple and obvious reason that given the Court's recent order the class

8   might otherwise face the possibility of recovering *nothing*.

9                    **c.      A High Level of Skill Was Required to Prosecute This Case.**

10          The effort and skill displayed by counsel and the complexity of the issues involved are

11   additional factors used in determining a proper fee. *Vizcaino II*, 290 F.3d at 1048; *In re*

12   *Omnivision*, 559 F. Supp. 2d at 1046-47; *Gustafson v. Valley Ins. Co.*, No. CV 01-1575-BR, 2004

13   WL 2260605, at *2 (D. Or. Oct. 6, 2004). These factors strongly support the reasonableness of

14   the fee requested here in light of the circumstances of the litigation, which included practical

15   barriers to discovery, massive amounts of discovery, and significant economic analysis.

16          **First**, because this case covers an alleged ten-plus-year conspiracy involving eight

17   multinational Defendant families, Class Counsel reviewed more than 2.7 million pages of

18   predominantly foreign-language documents, translated nearly 1,400 foreign language documents,

19   and propounded seventy-eight document requests, twenty-two interrogatories, and 1,482 requests

20   for admission. Finding the right needles in such a haystack requires more than hiring people who

21   speak Japanese and Korean. It requires attorneys with specialized knowledge in antitrust, in

22   organizing and running a foreign language review, in selecting and administering the appropriate

23   database software, in managing hundreds upon hundreds of certified translations—and some of

24   whom also speak Japanese and Korean. Class Counsel brought to bear hard-learned lessons from

25   *TFT-LCD*, *ODD*, *CRT*, *SRAM* and many other cases, and the class benefited enormously. After

26   reviewing the documents and having dozens translated in the weeks before each deposition, Class

27   Counsel in many instances assigned lawyers with dozens of foreign-language depositions under

28   their belts to take them.   These lawyers brought a degree of skill and experience to the

IPPs' MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS
Case No. 13-md-02420 YGR (DMR)

1    depositions that could be matched by very few other firms.   Based on lessons learned in other

2    cases, Class Counsel also set up watchlists early in the discovery process to prevent the still-

3    remaining foreign employees of Defendants from leaving their employment without IPPs being

4    permitted a chance to depose them. *See, e.g.*, Order re Dep. Protocol 2 (Dec. 3, 2014), ECF No.

5    593 (permitting Plaintiffs to establish watchlists of potential witnesses); Order re Seok Hwan

6    Kwak 2 (Feb. 14, 2017), ECF No. 1675 ("Judge Gonzalez Rogers will take up the matter of

7    appropriate sanctions for LG Chem's failure to comply with the court orders regarding Kwak's

8    deposition in the context of summary judgment or trial" due to failure to comply with the

9    watchlist protocol by producing witness for deposition).

10         The economic and damages issues in this case demanded an equal level of highly

11   specialized skill—as demonstrated by the class certification motion.  Class Counsel were not

12   learning on the job; rather, they brought to bear years of experience in prosecuting class

13   certification in some of the most complex, high profile and hard-fought antitrust cases in recent

14   district history, such as *Optical Disk Drives*, *High Tech Employees*, and *Automotive Parts*.  This

15   specialized knowledge was on display in the voluminous analyses and arguments submitted to the

16   Court in the initial round of class certification briefing.

17         **Second**, the caliber of opposing counsel is another important factor in assessing the quality

18   of Class Counsel's work. *Vizcaino v. Microsoft Corp.* ("*Vizcaino I*"), 142 F. Supp. 2d 1299, 1303

19   (W.D. Wash. 2001); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 634 (D. Colo. 1976);

20   *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974).  Here, Class Counsel was

21   opposed by attorneys from some of the best and largest firms in the country with extensive

22   resources at their disposal. This again reflects not only the high stakes of the case, but also the

23   degree of specialized skill and knowledge necessary to litigate it on either side.

24         **Third**, Class Counsel respectfully submit that the sheer scale of what were always

25   multiple simultaneous discovery, motions and other projects further demonstrates the value of

26   Class Counsel's skill and experience.  This included:

27         • Preparing four comprehensive consolidated amended complaints detailing Defendants'
             alleged violations of the antitrust laws (ECF Nos. 221, 419, 519, and 1168);

28

-18-

- Conducting exhaustive legal research regarding the claims and the defenses, particularly with respect to Defendants' multiple rounds of motions to dismiss, and Toshiba's motion for summary judgment based on its alleged withdrawal from the conspiracy. Joint Decl. ¶ 27. IPPs largely prevailed on each motion (ECF Nos. 361, 512, and 1160);

- Propounding multiple sets of discovery that—after extensive meet and confers and negotiations with Defendants—resulted in the identification of over 250 document custodians and the production of more than 2.7 million documents, and voluminous electronic transactional data. Many of these documents were in Japanese and Korean and had to be translated, Joint Decl. ¶ 18;

- Organizing a team of lawyers that reviewed, searched, and extensively coded and analyzed these foreign language documents, *id.* ¶ 18;

- Engaging in extensive non-party discovery, including obtaining access to and reviewing 71 datasets concerning the non-parties' purchases and sales of lithium-ion batteries and packs and products containing lithium-ion batteries, Joint Decl. ¶ 23;

- Retaining expert economists and consultants to analyze and review Defendant and non-party data to assist counsel in their investigation and analysis and to prepare expert reports in support of IPPs' class certification motion. This involved many hours of discussions, research, and analysis, Joint Decl. ¶ 24;

- Maintaining close communication with Class Representatives throughout the litigation and answering seven sets of discovery propounded by Defendants, including document requests, interrogatories, and requests for admission, Joint Decl. ¶ 17, 50-51;

- Deposing 34 fact witnesses of Defendants and four non-party witnesses, Joint Decl. ¶ 19;

- Deposing five experts in relation to IPPs' class certification motion, Joint Decl. ¶ 5;

- Defending the depositions of 32 Class Representatives. This involved extensive consultation with each Class Representative and their individual counsel and electronic document retrieval for document production, Joint Decl. ¶¶ 17, 51;

- Defending against Toshiba's Motion for Summary Judgment, Joint Decl. ¶ 21;

- Preparing for, briefing and arguing IPPs' Motion for Class Certification, Joint Decl.. ¶¶ 24-25;

- Securing settlements with Sony, LG Chem, Hitachi Maxell, and NEC, Joint Decl. ¶¶ 24, 26; and

- Building a notice program to inform Class Members of the pending settlements, Joint Decl. ¶ 26.

In other words, IPPs were not generally fighting on two fronts at once—more like three or four.

IPPs' MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS
Case No. 13-md-02420 YGR (DMR)

1

**d.      The Contingent Nature of the Fee Justifies the Requested
         Award.**

2

3        The Ninth Circuit has confirmed that a fair fee award must include consideration of the

4   contingent nature of the fee. *See, e.g., Vizcaino II*, 290 F.3d at 1050; *Online DVD*, 2015 WL

5   846008, at \*14 & n.14.  It is well-established that attorneys who take on the risk of a contingency

6   case should be compensated for the risk they assume. *Wash. Pub. Power*, 19 F.3d at 1299.  Thus

7   far, Class Counsel have not received any compensation for nearly five years of work on this case.

8   This assumption of a lengthy and significant risk on behalf of the IPP Class supports the requested

9   $11.24 million.

10      **3.      The Lodestar Cross-Check Confirms the Reasonableness of the
                 Requested Award.**

11

12       Finally, fees awarded at the 25% benchmark are particularly appropriate here, where

13   application of the lodestar cross-check shows a negative multiplier in a hard-fought, intensely

14   litigated case.  The requested $11.24 million represents approximately 32.62% of the total

15   lodestar, a negative .67 multiplier.  Joint Decl. ¶ 35.  Class Counsel have spent 86,123.70 total

16   hours prosecuting this action.  This cross-check demonstrates that the proposed fee is more than

17   reasonable. *See Online DVD*, 2015 WL 846008, at \*15; *Vizcaino II*, 290 F.3d at 1048-50.

18       Moreover, all of this time was reasonable and necessary for effective prosecution. *Online*

19   *DVD*, 2015 WL 846008, at \*9.  Class Counsel took meaningful steps to ensure that their work

20   was efficient.[7]  Class Counsel applied their experience litigating other electronic component cases

21

22   [7] *See* Joint Decl.; Cotchett Pitre & McCarthy LLP Decl. ¶ 8; Hagens Berman Sobol Shapiro Decl. ¶ 2; Glackin Decl. (Lieff Cabraser Heimann & Bernstein) ¶¶ 3-19; ADR Office of Ken Mann Decl.; Andrus Anderson LLP Decl. ; Bangs, McCullen, Butler, Foye & Simmons Decl.;

23   Bleichmar Fonti & Auld LLP Decl.; Block & Leviton Decl.; Bonnett Fairbourn Friedman & Balint Decl.; Bramson, Plutzik, Mahler & Birkhaeuser Decl.; Branstetter Stranch & Jennings

24   Decl.; Breall & Breall Decl.; Cafferty Clobes Meriwether & Sprengel Decl.; Cohen Milstein Sellers & Toll Decl.; Cuneo Gilbert & La Duca Decl.; Emerson Scott Decl.; Goldman Scarlato

25   Karon & Penny Decl.; Green & Noblin Decl.; Grossman LLP Decl.;  Karon LLC Decl.; Keller Grover Decl.; Keller Rohrback Decl.; Kirby McInerney Decl.; Krause, Kalfayan, Benink &

26   Slavens Decl.; Langson & Lott Time Decl.; Law Office of George Rikos Decl.; Lexington Law Group Decl.; Milberg LLP Decl.; Nicholas & Tomasevic LLP Decl.; Pomerantz LLP Decl.;

27   Reich Radcliffe & Kuttler Decl.; Renne Sloan Holtzman Sakai Decl.; Robbins Geller Rudman & Dowd Decl.; Schneider Wallace Cottrell Konecky Decl.; Schubert Jonckheer & Kolbe Decl.;

28   Scott + Scott Decl.; Shaffer Lombardo Shurin Decl.; Straus & Boies Decl.; Susman Godfrey Decl.; Tostrud Law Group Decl.; Wood Law Firm, LLC Decl.; Wyatt & Blake Decl.

IPPs' MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS
Case No. 13-md-02420 YGR (DMR)

1    to this case, resulting in exceptional efficiency given the scale of this case. Joint Decl. ¶ 14. For

2    instance, Class Counsel's lodestar here, where the bulk of merits discovery is complete, is

3    substantially lower than the lodestar reported in *Capacitors* ($44.4 million; DPPs), *CRTs* ($83.8

4    million; IPPs) or *LCDs* ($148 million; IPPs). Counsel's Mot. for Att'ys' Fees & Reimbursement

5    of Expenses at 12, *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264-JD (Jan. 30, 2017), ECF

6    No. 1458 (DPPs, four months prior to class certification); IPPs' Notice of Mot. & Mot. for Award

7    of Att'ys' Fees, Reimbursement of Litig. Expenses, & Incentive Awards to Class Representatives

8    at 26, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST (N.D. Cal. Sep. 23,

9    2015), ECF No. 4071 (IPPs); IPP's Notice of Mot. & Mot. for Att'ys' Fees & Incentive Awards

10   at 5, *In re TFT-LCD Antitrust Litig.*, No. M 07-1827 SI at 5 (N.D. Cal. Sep. 7, 2012), ECF No.

11   6662.

12          Throughout, Class Counsel have been mindful of the efficiency guidelines set forth in

13   Exhibit A of this Court's Modified Pretrial Order No. 1 (May 24, 2013), ECF No. 202. Joint

14   Decl. ¶ 37. Class Counsel also audited the time records prior to their submission here and

15   eliminated time entries that did not comply with this Court's order or were otherwise inefficient

16   or duplicative. Joint Decl. ¶ 39. Of the hours spent on this case, 68.68% represent hours by Co-

17   Lead Counsel. Joint Decl. ¶ 38. The law firms of Straus & Boies, Kirby McInerney, and

18   Susman Godfrey represent 15.10% of the total hours due to their respective roles of handling

19   translations and translation objections, handling high level foreign language document analysis

20   and deposition check interpreting, and defending Class Representative depositions. Joint Decl. ¶

21   38. The bulk of the time spent by other firms involved document review and handling issues

22   related to their respective client Class Representatives. *Id.*

23          Moreover, the fee request is supported by detailed time records and the hourly rates

24   charged also reflect the reasonable prevailing rates. [8] *See* Joint Decl. ¶ 42, Ex. 1 (2015 National

25   _____

26   [8] *See* Joint Decl.; Cotchett Pitre & McCarthy LLP Decl. ¶ 24; Hagens Berman Sobol Shapiro
     Decl. ¶ 2; Glackin Decl. (Lieff Cabraser Heimann & Bernstein) ¶ 26; ADR Office of Ken Mann

27   Decl. ¶ 8; Andrus Anderson LLP Decl. ¶ 10; Bangs, McCullen, Butler, Foye & Simmons Decl. ¶
     7; Bleichmar Fonti & Auld LLP Decl. ¶ 7; Block & Leviton Decl. ¶ 7; Bonnett Fairbourn

28   Friedman & Balint Decl. ¶ 7; Bramson, Plutzik, Mahler & Birkhaeuser Decl. ¶ 7; Branstetter
     Stranch & Jennings Decl. ¶ 7; Breall & Breall Decl. ¶ 7; Cafferty Clobes Meriwether & Sprengel

1   Law Journal Billing Survey).[9]  Class Counsel capped document reviewer rates at $450 per hour

2   for foreign language reviewers and $350 per hour for English language reviewers.  Joint Decl. ¶

3   40.  Class Counsel's fee request of $11.24 million thus amounts to less than 33% of their lodestar

4   of $34,448,833.50.  Joint Decl. ¶ 35.  This confirms its reasonableness.  *See Online DVD*, 2015

5   WL 846008, at *15 (fact that fee sought is less than the lodestar suggests fairness of award); *In re*

6   *Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov.

7   26, 2007); and *LCD II*, 2013 WL 149692, at *1.

8          **B.    The Class Received Appropriate Notice of Class Counsel's Fee Application.**

9          Class Counsel's notice to the Settlement Class through the class notice and this motion for

10  fees, expenses, and service awards is sufficient to provide Class Members an opportunity to

11  review and evaluate this fee request prior to the deadline for objections.  *See In re Mercury*

12  *Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2010); N.D. Cal. Procedural Guidance

13  for Class Action Settlements at 3.  The class notice advised Settlement Class Members that Class

14  _____

15  Decl. ¶ 7; Cohen Milstein Sellers & Toll Decl. ¶ 7; Cuneo Gilbert & La Duca Decl. ¶ 7; Emerson
    Scott Decl. ¶ 7; Goldman Scarlato Karon & Penny Decl. ¶ 7; Green & Noblin Decl. ¶ 7;
    Grossman LLP Decl. ¶ 7;  Karon LLC Decl. ¶ 7; Keller Grover Decl. ¶ 8; Keller Rohrback Decl.
16  ¶ 7; Kirby McInerney Decl. ¶ 7; Krause, Kalfayan, Benink & Slavens Decl. ¶ 7; Langson & Lott
    Time Decl. ¶ 7; Law Office of George Rikos Decl. ¶ 7; Lexington Law Group Decl. ¶ 7; Milberg
17  LLP Decl. ¶ 7; Nicholas & Tomasevic LLP Decl. ¶ 7; Pomerantz LLP Decl. ¶ 7; Reich Radcliffe
    & Kuttler Decl. ¶ 7; Renne Sloan Holtzman Sakai Decl. ¶ 7; Robbins Geller Rudman & Dowd
18  Decl. ¶ 7; Schneider Wallace Cottrell Konecky Decl. ¶ 7; Schubert Jonckheer & Kolbe Decl. ¶ 7;
    Scott + Scott Decl. ¶  8; Shaffer Lombardo Shurin Decl. ¶ 7; Straus & Boies Decl. ¶ 7; Susman
19  Godfrey Decl. ¶ 5; Tostrud Law Group Decl. ¶ 7; Wood Law Firm, LLC Decl. ¶ 7; Wyatt &
    Blake Decl. ¶ 7.  Although time detail is submitted with historical rates, Class Counsel seek fees
20  at their current rates.

    [9] *See also* Cotchett Pitre & McCarthy LLP Decl. ¶¶ 22-24; Hagens Berman Sobol Shapiro Decl. ¶
21  1; Glackin Decl. (Lieff Cabraser Heimann & Bernstein) ¶¶ 21-24; ADR Office of Ken Mann
    Decl. ¶ 7; Andrus Anderson LLP Decl. ¶10; Bangs, McCullen, Butler, Foye & Simmons Decl. ¶
22  7; Bleichmar Fonti & Auld LLP Decl. ¶ 7; Block & Leviton Decl. ¶ 7; Bonnett Fairbourn
    Friedman & Balint Decl. ¶ 7; Bramson, Plutzik, Mahler & Birkhaeuser Decl. ¶ 6; Branstetter
23  Stranch & Jennings Decl. ¶ 6; Breall & Breall Decl. ¶ 6; Cafferty Clobes Meriwether & Sprengel
    Decl. ¶ 6; Cohen Milstein Sellers & Toll Decl. ¶ 6; Cuneo Gilbert & La Duca Decl. ¶ 6; Emerson
24  Scott Decl. ¶ 6; Goldman Scarlato Karon & Penny Decl. ¶ 6; Green & Noblin Decl. ¶ 6;
    Grossman LLP Decl. ¶ 6;  Karon LLC Decl. ¶ 6; Keller Grover Decl. ¶ 7; Keller Rohrback Decl.
25  ¶ 6; Kirby McInerney Decl. ¶ 6; Krause, Kalfayan, Benink & Slavens Decl. ¶ 6; Langson & Lott
    Time Decl. ¶ 6; Law Office of George Rikos Decl. ¶ 6; Lexington Law Group Decl. ¶ 6; Milberg
26  LLP Decl. ¶ 6; Nicholas & Tomasevic LLP Decl. ¶ 6; Pomerantz LLP Decl. ¶ 6; Reich Radcliffe
    & Kuttler Decl. ¶ 6; Renne Sloan Holtzman Sakai Decl. ¶ 6; Robbins Geller Rudman & Dowd
27  Decl. ¶ 6; Schneider Wallace Cottrell Konecky Decl. ¶ 6; Schubert Jonckheer & Kolbe Decl. ¶ 6;
    Scott + Scott Decl. ¶ 7; Shaffer Lombardo Shurin Decl. ¶ 6; Straus & Boies Decl. ¶ 6; Susman
28  Godfrey Decl. ¶6; Tostrud Law Group Decl. ¶ 6; Wood Law Firm, LLC Decl. ¶ 6; Wyatt & Blake
    Decl. ¶ 6.

IPPs' MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS
Case No. 13-md-02420 YGR (DMR)

1  Counsel would seek attorneys' fees "not to exceed 30% of the $44.95 million Settlement Fund,"

2  costs and expenses, and service awards in the amount of $1,500 each. Ex. 2 ("Long-Form

3  Notice") at 5 (Mar. 9, 2017), ECF No. 1700-4; *see also* Ex. 4 (Summary Notice) at 2, ECF No.

4  1700-6. The notice also advises that such a motion would be available at the settlement website

5  fourteen days before the deadline for requests for exclusion or objections to the settlement. Long-

6  Form Notice at 5. Class Counsel is filing this motion and posting it on the settlement website on

7  May 26, 2017, which is seventeen days before the June 12, 2017 deadline to object or opt-out.

8      **C.    Co-Lead Counsel Should be Authorized to Distribute Fees Among Class
         Counsel.**

9

10     Co-Lead Counsel also request the Court's authorization to distribute the awarded

11  attorneys' fees in a manner that, in the judgment of Co-Lead Counsel, fairly compensates each

12  firm for its contribution to the prosecution of IPPs' claims. "Federal courts routinely affirm the

13  appropriateness of a single fee award to be allocated among counsel and have recognized that

14  lead counsel are better suited than a trial court to decide the relative contributions of each firm

15  and attorney." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646 (S.D. Cal. 2011), *aff'd in part*, 473 F.

16  App'x 716 (9th Cir. 2012); *see also Morganstein v. Esber*, 768 F. Supp. 725, 728 (C.D. Cal.

17  1991) (explaining that "inasmuch as class counsel have indicated that they are able amicably

18  to allocate this award amongst themselves, this order does not do so"); *In re Polyurethane Foam

19  Antitrust Litig.*, 168 F. Supp. 3d 985, 1007 (N.D. Ohio 2016); *see, e.g., In re Warfarin Sodium

20  Antitrust Litig.*, 391 F.3d 516, 533 n.15 (3d Cir. 2004) (affirming the district court's decision, and

21  declining to "deviate from the accepted practice of allowing counsel to apportion fees amongst

22  themselves"); *Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996) (suggesting the Sixth Circuit

23  would adopt this approach to fee distribution, the critical inquiry is whether the fee fairly reflects

24  the work done by all plaintiffs' counsel). Accordingly, Co-Lead Counsel respectfully request that

25  the Court authorize them to allocate the fees that are awarded among Class Counsel.

26

27

28

IPPs' MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS
Case No. 13-md-02420 YGR (DMR)

**D.    Class Counsel Should be Reimbursed for Their Reasonable Litigation Expenses.**

Class Counsel also request reimbursement of litigation costs and expenses they incurred on behalf of the Class in the amount of $4,159,515.28.  Glackin Decl., ¶ 29.  Attorneys who create a common fund are entitled to reimbursement of their out-of-pocket expenses so long as they are reasonable, necessary, and directly related to the prosecution of the action.  *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also OmniVision*, 559 F. Supp. 2d at 1048; and 1 Alba Conte, *Attorney Fee Awards* § 2.19 (3d ed. 2004).  Class Counsel's expenses are summarized in the Declaration of Brendan P. Glackin with invoices attached.[10]  These expenses were reasonable and necessary for the prosecution of this action and are customarily approved by courts as proper litigation expenses.  Moreover, these expenses sought are only a subset of the expenses in this case, which are over $4.4 million.  Glackin Decl. ¶ 30, Joint Decl. ¶ 30.  The expenses sought **exclude** (1) costs for travel, copying, printing, filing fees, legal research and so forth; (2) deposition-related expenses; and (3) expert expenses that post-date 2016. Class Counsel believe that this request for expenses is reasonable in light of the length of this case and the fact that Class Counsel may continue to litigate this case for years before its conclusion.  Joint Decl. ¶ 46.

**E.    Class Representatives Should Receive Service Awards Totaling $34,500.**

Class Counsel request service awards for the class representatives in the amount of $34,500 ($1,500 each).[11]  "[Service] *awards* are fairly typical in class action cases."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (emphasis in original).  In the Ninth Circuit, service awards "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to

---

[10] To the extent that some of the invoices request more money than Class Counsel actually paid, this difference reflects the fact that Class Counsel negotiated discounts on some of the expenses in this case.

[11] The Class Representatives for whom Class Counsel seek service awards are those named in the LG Chem, Hitachi Maxell, and NEC settlements:  Christopher Hunt, Piya Robert Rojanasathit, Steven Bugge, Tom Pham, Bradley Seldin, Patrick McGuinness, Jason Ames, William Cabral, Joseph O'Daniel, David Tolchin, Matt Bryant, Sheri Harmon, Christopher Bessette, Linda Lincoln, Bradley Van Patten, the City of Palo Alto, the City of Richmond, John Kopp, Drew Fennelly, Donna Shawn, Cindy Booze, Matthew Ence, and Caleb Batey.

IPPs' MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS
Case No. 13-md-02420 YGR (DMR)

1  recognize their willingness to act as a private attorney general." *Id.* at 958-59.  Courts have

2  discretion to approve service awards based on the amount of time and effort spent, the duration of

3  the litigation, and the personal benefit (or lack thereof) as a result of the litigation. *See Van*

4  *Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

5        Each of these factors weighs in favor of compensating the Class Representatives for their

6  service on behalf of the IPP Class.  Class Representatives have remained actively involved

7  throughout the litigation of this case.[12]  Each has responded to more than 22 interrogatories and

8  37 document requests.  Each has also been deposed at length by Defendants, and has devoted

9  time to diligently prepare for his or her deposition with Class Counsel.  In light of this service,

10  $1,500 awards for each individual Class Representative are reasonable.

11        In addition, the amount of $1,500 per Class Representative is well below the level of

12  presumptive reasonableness.  "[C]ourts in the Northern District of California have held that a

13  $5,000 enhancement award is presumptively reasonable." *Perry*, 2013 WL 12174056, at *3

14  (citing *Villegas v. J.P. Morgan Chase & Co.*, No. 09-CV-00261 SBA, 2012 WL 5878390, at *7

15  (N.D. Cal. Nov. 21, 2012)); *see also Moore v. Verizon Commc'n, Inc.*, No. C–09–1823 SBA,

16  2013 WL 4610764, at *15 (N.D. Cal. Aug. 28, 2013) ("In this district, a $5,000 payment is

17  presumptively reasonable.").

18  **V.   CONCLUSION**

19        For the foregoing reasons, IPPs' motion should be granted.  Accordingly, this Court

20  should award attorneys' fees calculated at 25% of the Settlement Fund ($11.24 million in

21  attorneys' fees), litigation expenses in the amount of $4,159,515.28, and service awards totaling

22  $34,500 for the Class Representatives.

23

24

25

---

26  [12] Joint Decl. at ¶¶17, 50-51; Christopher Hunt Decl.; Piya Robert Rojanasathit Decl.; Steven Bugge Decl.; Tom Pham Decl.; Bradley Seldin Decl.; Patrick McGuinness Decl.; Jason Ames

27  Decl.; William Cabral Decl.; Joseph O'Daniel Decl.; David Tolchin Decl.; Matt Bryant Decl.; Sheri Harmon Decl.; Christopher Bessette Decl.; Linda Lincoln Decl.; Bradley Van Patten Decl.;

28  City of Palo Alto Decl.; City of Richmond Decl.; John Kopp Decl.; Drew Fennelly Decl.; Donna Shawn Decl.; Cindy Booze Decl.; Matthew Ence Decl.; Caleb Batey Decl.

IPPs' MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS
Case No. 13-md-02420 YGR (DMR)

1    Dated:  May 26, 2017                    Respectfully submitted,

2                                            COTCHETT, PITRE & MCCARTHY, LLP

3                                            By:    /s/ Steven N. Williams
                                                        Steven N. Williams
4
                                             Steven N. Williams (SBN 175489)
5                                            840 Malcolm Road
                                             Burlingame, CA 94010
6                                            Telephone: (650) 697-6000
                                             Facsimile: (650) 697-0577
7                                            swilliams@cpmlegal.com

8
                                             HAGENS BERMAN SOBOL SHAPIRO LLP
9
                                             By:    /s/ Steve Berman
10                                                      Steve Berman

11                                           Steve Berman
                                             1918 8th Avenue, Suite 3300
12                                           Seattle, WA 98101
                                             Telephone: (206) 623-7292
13                                           Facsimile: (888) 381-2889
                                             sberman@hbsslaw.com
14

15                                           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

16                                           By:    /s/ Elizabeth J. Cabraser
                                                        Elizabeth J. Cabraser
17
                                             Elizabeth J. Cabraser (SBN 83151)
18                                           275 Battery Street, 29th Floor
                                             San Francisco, CA 94111-3339
19                                           Tel: (415) 956-1000
                                             Fax: (415) 956-1008
20                                           ecabraser@lchb.com

21                                           *Interim Co-Lead Counsel for Indirect Purchaser Plaintiffs*

22

23

24

25

26

27

28

IPPs' MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS
Case No. 13-md-02420 YGR (DMR)