1   Steven N. Williams (SBN 175489)
    **COTCHETT, PITRE & MCCARTHY, LLP**
2   840 Malcolm Road
    Burlingame, CA 94010
3   Telephone: (650) 697-6000
    Facsimile: (650) 697-0577
4   swilliams@cpmlegal.com

5   Steve W. Berman (*Pro Hac Vice*)
    **HAGENS BERMAN SOBOL SHAPIRO LLP**
6   1918 8th Avenue, Suite 3300
    Seattle, WA 98101
7   Telephone: (206) 623-7292
    Facsimile: (206) 623-0594
8   steve@hbsslaw.com

9   Elizabeth J. Cabraser (SBN 83151)
    **LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
10  275 Battery Street, 29th Floor
    San Francisco, CA 94111-3339
11  Tel: 415-956-1000
    Fax: 415-956-1008
12  ecabraser@lchb.com

13  *Interim Co-Lead Counsel for Indirect Purchaser Plaintiffs*

14                     UNITED STATES DISTRICT COURT

15                    NORTHERN DISTRICT OF CALIFORNIA

16                           OAKLAND DIVISION

17
    IN RE LITHIUM ION BATTERIES              Case No. 13-MD-02420 YGR (DMR)
18  ANTITRUST LITIGATION,
                                             MDL No. 2420
19
                                             DECLARATION OF ALAN VASQUEZ
20  This Documents Relates to:              REGARDING IMPLEMENTATION OF
                                             CLASS NOTICE PLAN
21  ALL INDIRECT PURCHASER ACTIONS
                                             **Date:** October 3, 2017
22                                           **Time:** 2:00 p.m.
                                             **Judge:** Hon. Yvonne Gonzalez Rogers
23                                           **Location:** Courtroom 1 - 4th Floor
24
                                             DATE ACTION FILED: Oct. 3, 2012
25

26

27

28

I, Alan Vasquez, hereby declare and state as follows:

**INTRODUCTION**

1.     I am a Vice President of Legal Notification Services at Gilardi & Co. LLC ("Gilardi"), a KCC Class Action Services ("KCC") company.  In my role, I oversee Gilardi's in-house advertising division specializing in the design and implementation of legal notice plans to reach unknown class members in class action litigation.  I make this declaration pursuant to 28 U.S.C. § 1746.

2.     Gilardi was established in 1984 and is one of the largest full service class action notice and claims administrators in the United States.  The in-house advertising division has specialized in designing, developing and implementing legal notification plans for more than 25 years.  As such, we are familiar with, and guided by, Constitutional due process provisions, rules of state and local jurisdictions, and the relevant case law relating to legal notification.  Media plans designed and implemented by our group have included both domestic and international newspapers and magazines, Internet-based banners, notices and websites, wire service, radio, television, point of purchase displays and direct mail. As V.P. of Legal Notification Services, I oversee all of the group's activities as they relate to these notice services.

3.     I have been involved in the development and implementation of media plans for class action notification for more than twelve years. Prior to my engagement with Gilardi, I spent five years with another nationally recognized claims administrator serving in a similar capacity.

4.     For several years, courts have accepted my expert testimony regarding our firm's quantitative and qualitative evaluation of judicially approved notice plans. I have also testified in person and was acknowledged as an expert in *Larson v. Sprint Nextel Corp.*, No. 07-cv-5325 (D. N.J.).  Media campaigns for which I have been directly responsible include, but are not limited to, *Pappas v. Naked Juice*, No 11-cv-08276-JAK (C.D. Cal.), *Mattel, Inc., Toy Lead Paint Prods. Liab. Litig.*, No. 07-ML-01897 (S.D. Cal.), *Pecover, et al. v. Electronic Arts Inc.*, No. 08-cv-02820 (N.D. Cal.), *New Motor Vehicles Canadian Export Antitrust Litig.*, No. MDL 03-1532 (D. Me.), *Matthew Edwards, et al.v. National Milk Producers Federation*, Case No. 11-CV-04766-JSW

(N.D. Cal.), and *SRAM Antitrust Litig.*, No. 07-MD-01819 (N.D. Cal.). A more comprehensive list of notable matters for which I have been personally responsible for the Notice planning and implementation services is attached as Exhibit 1.  I have also spoken as faculty on various CLE panels related to class action notice and related trends.

5.      I submit this declaration at the request of counsel in the above-referenced litigation in order to describe the results of implementing the Court approved notice plan and other notice services in this matter.  I have personal knowledge of the matters set forth in this declaration and, if called as a witness, could and would testify competently thereto.

6.      This declaration is based upon my personal knowledge, information provided by counsel, and my independent research regarding the litigation and the defined class, including information obtained by Gilardi's staff and reliable industry sources.

**Litigation Background**

7.      Defendants Hitachi Maxell, Ltd. and Maxell Corporation of America (collectively, "Hitachi"), NEC Corporation ("NEC"), and LG Chem, Ltd. and LG Chem America (collectively, "LG Chem")(together, the "Settling Defendants") agreed to Settlements resolving claims that they allegedly fixed the price of cylindrical Lithium Ion Battery Cells. This potentially caused individuals and businesses to pay more for the following products which contained Lithium-Ion Cylindrical Batteries: (i) portable computers; (ii) power tools; (iii) camcorders; or (iv)a replacement battery for any of these products.

**Objective**

8.      The objective of the proposed Notice plan was to provide the best notice practicable to the defined class, consistent with the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure and all applicable state laws and court rules. The methods and tools used in developing this Notice plan have been employed in many other court-approved notice plans.

**Class Definition**

9.      The Class is made up of indirect purchasers of consumer products that included cylindrical Lithium Ion Battery Cells.  Specifically, "the Class" references the "Settlement Class"

in the Motion for Preliminary Approval of the Class Action Settlement with LG Chem and refers to:

> "All persons and entities who, as residents of the United States and during the period from January 1, 2000 through May 31, 2011, indirectly purchased new for their own use and not for resale one of the following products which contained a lithium-ion cylindrical battery manufactured by one or more defendants or their co-conspirators: (i) a portable computer; (ii) a power tool; (iii) a camcorder; or (iv) a replacement battery for any of these products. Excluded from the class are any purchases of Panasonic-branded computers. Also excluded from the class are any federal, state, or local governmental entities, any judicial officers presiding over this action, members of their immediate families and judicial staffs, and any juror assigned to this action, but included are all non-federal and non-state governmental entities in California."

**Notice Plan Summary**

11.     As part of the Notice plan, Gilardi was informed by the parties that Sipree, Inc. would be responsible for developing the case website, disseminating direct notice for all Class members for whom email contact information was available, and claims processing of the online claims submitted.  Gilardi's duties included the implementation of the Notice publication efforts to supplement direct notice, development and maintenance of a toll-free support line for class members, and collection of claims submitted by mail as well as collection of requests for exclusion received by mail.

12.     To supplement the dissemination of direct notice, Gilardi developed a publication program consisting of efficient media vehicles that ensured a large percentage of potential class members received notice of their rights in the litigation. Specifically, the Notice publication program relied on the following elements:

a.   1x print publication insertion in the national edition of *USA Today*;

b.   Run of Network Banner advertising, including prospecting to reach likely class members;

c.  Banner advertising and text link advertising on Facebook.com;

d.  Promoted tweet advertising through Twitter.com;

e.  1x national, party-neutral press release;

f.  A case specific website; and

g.  Toll-free telephone support services.

**Notice Plan Implementation**

15.    **Direct Notice.**  Whenever practicable, direct notice is the preferred form of notice to class members.  The foundation of the Notice plan was to disseminate the Notice via email to each deliverable address provided.  Based on information provided by Sipree, Gilardi is informed that emails were sent to approximately 8.7 million class members.

16.    **Case-Dedicated Website**.  Gilardi has been informed by the parties that the case-dedicated website was developed and pushed live by Sipree on or before April 11, 2017.  All paid media efforts for the campaign directed individuals to the case website where they could view information about their rights in the Settlement as well as file a claim to receive payment.

17.    **Print Publication**.  On April 12, 2017, Gilardi caused the notice to be published in the national edition of *USA Today*.  A tearsheet of the insertion is attached as <u>Exhibit 2</u>.

18.    **Internet Publication**. Gilardi developed and implemented a comprehensive internet notice campaign along with an insertion in a nationally circulated newspaper and national press release.  Results of the paid internet advertising efforts are detailed in the following paragraphs.

19.    On or before April 11, 2017, Gilardi developed banner advertisements and implemented targeted banner advertising through Collective, Inc.[1]  As of August 23, 2017, the banners have generated 359,640,400 impressions and 1,008,519 clicks through to the case website for a CTR of approximately .30%.  In general, static banner display advertising click-through rates

---

[1] Collective, Inc. is a leading programmatic banner advertising vendor.  Collective's Audience Cloud of unique U.S. consumer profiles, including 30,000 attributes from "M 21+" to "Green Products," helps brands identify and engage key target audiences at scale.  Collective's technology integrates a combination of data sets, including brand first-party website data and qualified third-party data from top providers. By appending these data sets, Collective leverages consumer information such as geographic and social behaviors, TV viewing patterns, search and purchase history, online content consumed, and more to extend audience reach.

range from .03% to .10% for standard media ad formats[2]. The click-through rate for the banner portion of the campaign significantly exceeded these benchmarks.

20.     On or before April 11, 2017, Gilardi created a case Facebook page and implemented Facebook text link and banner display advertising to Facebook and Instagram users. As of August 23, 2017, Facebook ads have generated 369,163 impressions reaching 273,293 unique individuals on Facebook. The impressions generated 21,259 clicks to the case website for a CTR of approximately 5.76%, which in our experience managing over 20 similar class action notice campaigns on Facebook is well above average for this type of campaign.

21.     On or before April 11, 2017, Gilardi implemented Promoted Tweet advertising through Twitter. As of August 23, 2017, the Twitter Promoted Tweets advertisements have generated 848,163 impressions with 41,861 clicks to the case website for a CTR of approximately 4.94%. In our experience managing over 12 campaigns for class action notice on Twitter, this click through rate was also well above average.

22.     **Press Release**. On April 11, 2017, Gilardi issued a party-neutral nationwide Press Release about the Settlement through PR Newswire. A report detailing the viewability metrics for the release is attached as Exhibit 3.

**Gilardi Administration Services**

23.     In addition to the Notice publication efforts to supplement the direct Notice, Gilardi's services included administration of the toll-free support line as well as the collection of claims and requests for exclusion received through USPS mail. Statistics regarding these services are detailed in the following paragraphs.

24.     **Automated Telephone Support**. On or before April 11, 2017, Gilardi created a toll-free number for class members where they were able to call and receive information through an automated menu system. As of August 23, 2017 the support line has received 202 calls. Callers who wished to receive a paper copy of the claim form were able to request one through the automated support line or by writing to Gilardi. As of August 23, 2017 Gilardi has received 112

---

[2] http://www.richmediagallery.com/tools/benchmarks

1    requests, 17 via the telephone support line and 95 via USPS mail.  To date, Gilardi has mailed out

2    110 forms with 2 additional forms to be mailed within 7 days of the date of this declaration.

3        25.    **Request for Exclusion Processing**.  The deadline to submit a request for exclusion

4    was August 11, 2017.  Gilardi has received seven requests for exclusion.  A report listing the

5    number of requests is attached as Exhibit 4.

6        26.    Gilardi has also been informed that Sipree received 6 timely exclusion requests

7    through its email address.

8        27.    **Claims Processing**.  As of August 23, 2017 Gilardi has processed 1,517 timely

9    paper claims forms received via postal mail.  The number of claims is included in the attached

10   Exhibit 4.

11                                    **SUMMARY**

12       28.    Based on the results of the program, Gilardi believes the plan satisfied due process

13   standards given the current parameters of the settlement(s).  The Notice plan provided the best

14   practicable method to reach the potential class members and is consistent with other class action

15   notice plans that have been approved by various federal courts for similarly situated matters.  It is

16   Gilardi's opinion that the Notice Plan reached a minimum of 70% of the class members.

17       29.    As of August 23, 2017, Notice efforts have served nearly 361 million impressions,

18   generating over 1,146,639 clicks through to the case website.  A summary of the statistics

19   collected for each media vehicle is attached as Exhibit 5.  In addition to the paid Notice efforts, the

20   program received a fair amount of earned media as evidenced by the tweet and example article

21   attached in Exhibit 6.

22       30.    Gilardi understands that as of August 23, 2017, the total volume of online claims

23   filed is currently 557,551.  Including the paper claim forms the total is 559,068. These current

24   claim totals are consistent with other consumer class actions with similar case parameters.

25

26

27

28

31.     Many courts have held that notice plans estimated to reach a minimum of 70% of the class are sufficient and thus comply with Rule 23.  It is Gilardi's opinion the Notice Plan exceeded this standard of reach using methodology consistent with many other national class action notice programs.  Gilardi believes that the Notice Plan implementation resulted in a campaign that reached a large percentage of the class members while comporting in all respects with Rule 23 of the Federal Rules of Civil Procedure.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 28th day of August, 2017, at San Rafael, California.

_____

ALAN VASQUEZ

# Exhibit – 1



**EXHIBIT - 1**

**Notice Plans Designed and Implemented by Alan Vasquez**

---

**Automotive**

Automobile Antitrust Cases I and II , No. JCCP 4298 and 4303 (San Francisco Sup. Ct., CA)

New Motor Vehicles Canadian Export Antitrust Litigation , No. MDL 03-1532 (Dist. Court of Maine) & New Motor Vehicles Canadian Export

Antitrust Litigation, No. 2:03-MD-1532-DBH (Dist. Court of Maine)

In Re: Automotive Parts Antitrust Litigation, Master File No. 12-md-02311 (E.D. MI, Southern Division)

**Entertainment**

Herbert et al. v. Endemol USA, Inc. et al. , Case No. 2:07-cv-03537-JHN-VBKx (C.D. Cal.)

Couch v. Telescope Inc., et al, Case No. 2:07-cv-03916-JHN-VBKx (C.D. Cal.)

McDonald v. RealNetworks, Inc. , No. 816666 (Orange County Sup. Ct., CA)

Pecover et al. v. Electronic Arts Inc , No. 08-cv-02820 CW (N.D. Cal.)

In re NCAA Student-Athlete Name & Likeness Licensing Litigation, Case No. 4:09-cv-1967 CW (NC) (N.D. Cal.)

**Environment**

Koepf et al. v. Hanjin Shipping, Co. et al., No. CGC-07-469379 (San Francisco County Sup. Ct., CA)

Loretz et al. v. Regal Stone Limited et al., No. 07-5800-SC (N.D. Cal.)

Tarantino et al. v. Regal Stone et al., No. CGC-07-469379 (San Francisco County Sup. Ct., CA)

**Government**

McKesson Governmental Entities Average Wholesale Price Litigation, No. 1:08-cv-10843-PBS (D. Mass.)

**Technology**

SRAM Antitrust Litigation, No. 4:07-MD-01819-CW (N.D. Cal)

**Telecommunications**

White v. Cellco Partnership , No. RG04-137699 (Alameda County Sup. Ct., CA)

In re Universal Service Fund Telephone Billing Practices Litig., MDL No. 1468 (D. Kan.)

**Consumer Products**

Natalie Pappas v. Naked Juice Co. of Glendora, Inc. Case No. LA CV 11-08276-JAK (C.D. Cal)

Barbara Marciano v. Schell & Kampeter, Inc. et al No. 12-cv-02708-SJF-AKT (E.D. NY)

Mattel, Inc., Toy Lead Paint Products Liability Litigation, No. 2:07-ML-01897-DSF-AJW (S.D. Cal.)

Gallucci v. Boiron, Inc. et al., No. 11-cv-2039-JAH (NLSx)

Nigh v. Humphreys Pharmacal, Incorporated et al., Case No. 3:12-cv-02714-MMA-DHB

In re: Bayer Corp. Combination Aspirin Products Marketing and Sales Practices Litigation, No. 09-MD-2023

In Re: Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation, Civil Litigation No. 4:08-md-01907-ERW

Eliason v. Gentek Building Products, Inc., and Associated Materials, Inc. , No. 1:10-cv-02093 (N.D. Ohio)

Hart v. Louisiana-Pacific Corporation , No. 2:08-cv-00047 (E.D.N.C.)

**Debt Collection Practices**

Adams, et al., v. AllianceOne Receivables Management, Inc. (Case No. 08-CV-0248)

Pepper v. Midland Credit Management, Inc. and Encore Capital Group, Inc., No. 37-2011-00088752 (San Diego Sup. Ct. Ca)

# Exhibit – 2

**USA TODAY**
WEDNESDAY, APRIL 12, 2017

**MONEY 5B**

# 4 simple ways to add hours of battery life to your phone

**Jennifer Jolly**
@JenniferJolly
Special for USA TODAY

I've had big-time battery drain issues on my last three iPhones. I just figured it was my fault — maybe I'm too addicted to apps, take too many photos, or just use my phone too much.

It was an issue I've gone to Apple for help with many times, but nothing seemed to solve the problem.

It was time to kick things up to the next level. I enlisted experts such as Scotty Loveless, a former Apple Genius and iOS tech.

Here's how I finally beat the worst of my battery battles.

### 1. START WITH YOUR OWN BATTERY TEST

Your battery should only be doing its heavy lifting when you're actually *using* your iPhone, and the rest of the time it should be relaxing in standby mode. Sometimes an app prevents your phone from going into standby and wreaks havoc on your battery life.

Here's how to test it.

Go into **Settings/Battery**. Scroll all the way down to the bottom and you'll find two numbers, one for Standby and one for Usage. Your Usage number should be way, way lower than your Standby number. If it's not, you might have a problem, and you can confirm it by jotting down your Standby and Usage times and then clicking the lock button on your phone. Let it sit for about five minutes and then check the numbers again. If your Standby time is five minutes higher, you're in good shape, but if your Usage time has bumped up by a more than a minute it's a sign that your phone isn't resting like it should.

On Android, you can get the same information under **Settings/ Device/Battery** (or **Settings/Battery** if you have a newer version of Android).

If you find that your phone isn't "resting" when you're not



Although it's a handy feature, "Background App Refresh" can be a real battery killer.
*FLICKR*

**Sometimes an app prevents your phone from going into standby and wreaks havoc on your battery life.**

using it, there's likely a very clear reason, which brings us to No. 2.

### 2. DON'T PUSH ME

When an app is doing things even when you're not using it, it could be malfunctioning and stuck in an endless loop that's draining all your power. That's what happened to me, with, of all things, one of the email accounts I had connected to my phone. Loveless picked up on this right away.

"This happens unbelievably often, especially with Exchange push email," he said.

The fix was simple.

Go into **Settings/Mail/Accounts/Fetch New Data.** Mine was automatically set to **Push**. Loveless recommended that I turn that off temporarily and set it to Fetch every 15 to 30 minutes instead. You can also use the **Manual** mode, which only scans

for new messages when you actually open the email app.

You can also tweak the push settings to fetch new emails only every hour or so, which is also a big help. You don't sacrifice timely email updates either, though you'll still save the most power by disabling push emails altogether.

On an Android phone, you can manage the push notification settings for any apps that use it by heading into **Settings/Apps** and then picking an app and tweaking its individual settings.

### 3. WHEN BACKGROUND APPS ARE THE KILLER

There are other times when an app is running when you're not using it, and that's called "Background App Refresh."

There are lots of reasons apps update in the background, like the Music app fetching new playlists, Facebook updating your social feeds, even *Pokémon Go* keeping an eye on your steps so you can hatch eggs.

To check out which apps are eating up valuable power in the background, go to **Settings/Battery** and you'll see a list of the

apps taking up your battery life, with the topmost app being the biggest power hog. If you see an app listed with "Background Activity" below it, that's when you know it's using power even when you're not using it. Facebook, Snapchat and Twitter can be real demons in this department.

### 4. MULTITASKING IS OK

Do you ever double-tap your home button and see all the apps your iPhone has suspended, waiting for you to go back to them? Loveless says that closing apps from the multitasking menu can actually hurt the iPhone's overall battery life, because when you inevitably open the app back up, it forces your phone to load all that data back up again.

Just leave the apps alone and you'll be doing your battery a favor.

On Android, finding the apps that are running is as easy as pulling the top menu bar down.

*Jennifer Jolly is an Emmy Award-winning consumer tech contributor and host of USA TODAY's digital video show* **TECH NOW.**

---

# Amazon may be on road to $1,250 share price

**Elizabeth Weise**
@eweise
USA TODAY

SAN FRANCISCO  All those TVs, books, Echos, diapers and water filters have sent Amazon stock to the stratosphere. Wall Street thinks it can go to the moon.

Eleven analysts forecast Amazon will hit $1,000 a share in 2018, with nine forecasting it will go even higher, according to S&P Global Market Intelligence. Among the most rosy — a prediction of $1,250 — would amount to a nearly 40% surge from Tuesday's price of $902.

If the stock ran up that far, Amazon would be worth a whopping $596.6 billion in market capitalization, outpacing Microsoft and Google's parent company Alphabet — but still well below Apple, currently the world's most valuable company at $742 billion.

It would also put Amazon CEO Jeff Bezos in range of the title of world's richest person, Microsoft co-founder Bill Gates, who's No. 1 on the Bloomberg Billionaire Index with personal wealth worth $86.4 billion. Bezos is estimated to be worth $78.2 billion.

Brokerage Piper Jaffray forecast Amazon will hit $1,000 in part because of the deep penetration its Amazon Prime service is making in the U.S., estimating the service added 10 million more households in the past year, a 20% year-over-year growth rate.

While $1,000 a share is rare among U.S. companies (once they tend to engage in stock splits to make it easier to buy shares), four companies' shares have already rocketed into space. Berkshire Hathaway Class A shares were trading at $248,601 on Tuesday, Seaboard Corp., an agribusiness and transportation company, was at $4,039, homebuilder NVR Inc. at $2,112.08 and travel company The Priceline Group at $1,768.

---

# FCC chairman says he plans to keep voice-call ban on planes

**Bart Jansen**
@ganjansen
USA TODAY

WASHINGTON  Cellphone calls will continue to be prohibited during flights under an order proposed Monday, which would end consideration of lifting the ban.

The Federal Communications Commission technically must vote on Chairman Ajit Pai's proposed order to keep the ban on voice calls over cellular service during flights. But two of the three current commissioners — Pai and Michael O'Rielly — voted against even collecting comment about lifting the ban in December 2013, so the termination order is likely to succeed.

"I stand with airline pilots, flight attendants and America's flying public against the FCC's ill-conceived 2013 plan to allow people to make cellphone calls on planes," Pai told USA TODAY in a statement. "Taking it off the table permanently will be a victory for Americans across the country at quiet at 30,000 feet."

The FCC adopted the ban in 1991 because of concerns numerous cellphones on flights could jam ground-based relay stations as planes flew across the country.

But Pai's predecessor as FCC chairman, Thomas Wheeler, argued the ban had become obsolete because many airliners basically carry their own cellphone towers for in-flight entertainment. He proposed in 2013 to lift the ban and leave the policy in the hands of the Transportation Department and the airlines.

The third current FCC commissioner, Mignon Clyburn, supported lifting the ban in December 2013 because more competition among wireless companies could lower costs for fliers. While she acknowledged heading to the "quiet car" without voice calls on trains, Clyburn said airlines could decide whether to allow voice calls or just silent cellular services such as Web browsing or texting.



The FCC says it received 1,425 comments that were overwhelmingly opposed to allowing voice calls.
*AP FILE PHOTO*

**"Allowing in-flight cellphone calls was such a bad idea that it brought virtually everyone in the aviation community ... together in opposition."**

Bob Ross, president of the Association of Professional Flight Attendants

The FCC received 1,425 comments that were overwhelmingly opposed to allowing voice calls, including hand-scrawled diatribes and multipage rants. John Simpson of San Francisco called lifting the ban "the worst idea ever." Frank Wake of Anchorage said allowing calls would be "cruel and unusual torture for those of us trapped."

In February 2014, the Transportation Department also sought public comment about whether to allow voice calls during flights in the event the FCC dropped its ban.

At least two dozen foreign airlines allow calls, which the providers said are typically short. AeroMobile Communications has flown aboard foreign airlines since 2008 and has said only 5% of passengers on flights bound for the U.S. make calls that last an average two minutes.

But the U.S. department received more than 1,700 comments, with 96% favoring the ban, 2% favoring the ban with exceptions for emergencies and 2% saying airlines should set their own policies.

Flight attendants were among the most vocally opposed to lifting the ban because of concerns including passengers ignoring safety briefings, getting into fights over noise or possibly helping terrorists coordinate attacks.

"Allowing in-flight cellphone calls was such a bad idea that it brought virtually everyone in the aviation community — passengers, policymakers and flight crews, first and foremost — together in opposition," said Bob Ross, president of the Association of Professional Flight Attendants, which represents crews at American Airlines.

Pai's proposed order would formally terminate the FCC rulemaking because "the record is insufficient to determine any reasonable solution that would strike an appropriate balance of competing interests."

The FCC's action leaves untouched the prospect for Wi-Fi calls during flights through services such as Skype. No federal regulations now prevent Wi-Fi calls, although most U.S. airlines prohibit all voice calls.

---

**LEGAL NOTICE**

**If You Bought Electronics Such as a Portable Computer, Power Tool, Camcorder and/or Other Items Containing a Lithium Ion Cylindrical Battery Since 2000**

*You Could Get Money From $44.95 Million in Settlement*

LG Chem, Ltd. and LG Chem America, Inc. ("LG Chem"), Hitachi Maxell Ltd. and Maxell Corporation of America ("Hitachi Maxell"), and NEC Corporation ("NEC"), or collectively "the Settling Defendants," have agreed to settlements resolving claims that they allegedly fixed the price of cylindrical Lithium Ion Battery Cells. This may have caused individuals and businesses to pay more for the following products which contained Lithium-Ion Cylindrical Batteries: (i) portable computers; (ii) power tools; (iii) camcorders; or (iv) a replacement battery for any of these products.

**Am I Included?**

You may be included if, as a resident of the United States and during the period from January 1, 2000 through May 31, 2011, you indirectly purchased new for your own use and not for resale one of the following products which contained a lithium-ion cylindrical battery manufactured by one or more Defendants in this lawsuit or their co-conspirators: (i) a portable computer; (ii) a power tool; (iii) a camcorder; or (iv) a replacement battery for any of these products. "Indirectly" means the product was purchased from someone other than the manufacturer, such as a retail store. A more detailed notice, which includes additional information about the settlements, is available at www.reversethecharge.com.

**What do the Settlements provide?**

The LG Chem Settlement provides for the payment of $39,000,000 in cash to the Class. The Hitachi Maxell settlement provides for the payment of $3,450,000. The NEC settlement provides for the payment of $2,500,000. The Settling Defendants have also agreed to cooperate in the pursuit of the litigation.

Previously, notice was provided about a settlement reached with Sony Corporation, Sony Energy Devices Corporation, and Sony Electronics Inc. (collectively "Sony") for $19,500,000. Below, there is information about how to receive benefits from the Sony settlement.

**How can I get a payment and how much will I receive?**

At this time, it is unknown how much each Class Member who submits a valid claim will receive from the LG Chem, Hitachi Maxell, and NEC Settlements. Payments will be based on a number of factors, including the number of valid claims filed by all Class Members and each Class Member's number of purchase(s) of the products described above, in proportion to the total claims filed and products purchased. No matter how many claims are filed, no money will be returned to the Settling Defendants once the Court finally approves the settlements.

The claims period for the Sony settlement will be opened up and occur during the same time period as the claims period for the LG Chem, Hitachi Maxell, and NEC settlements. Payments to Class Members from the Sony settlement will be based on a number of factors, including the number of valid claims filed by all members of the Sony Class and each Class Member's number of purchase(s) of laptop PCs, notebook PCs, netbook computers, tablet computers, mobile phones, smart phones, cameras, camcorders, digital video cameras, digital audio players, power tools, or a replacement battery for any of these products, in proportion to the total claims filed and products purchased. No matter how many claims are filed, no money will be returned to Sony once the Court finally approves the Settlement.

To make a claim and get payment from any of these settlements, you will need to file a valid claim form online or by mail by September 30, 2017. **The simple online claim form only takes 3-5 minutes for most individuals to complete. You will find the claim form at www. reversethecharge.com.** Claims may be submitted online at www.reversethecharge.com or by mail to Lithium Batteries Indirect Purchaser Settlements, c/o KCC Class Action Services, P.O. Box 43454, Providence, RI 02940-3454.

No money will be distributed yet. The lawyers for the Plaintiffs will continue to pursue the lawsuit against the Non-Settling Defendants. All settlement funds that remain after payment of the Court-ordered attorneys' fees, service awards, costs, and expenses will be distributed at the conclusion of the lawsuit or as ordered by the Court.

If you want to receive notice about the claims process or future settlements, you should register at www.reversethecharge.com.

**What are my rights?**

Even if you do nothing, you will be bound by the Court's decisions concerning these Settlements. If you want to keep your right to sue the Settling Defendants regarding Lithium Ion Battery and/or Lithium Ion Battery Product purchases, you must exclude yourself in writing from the Class by June 12, 2017. If you stay in the Class, you may object in writing to the Settlements by June 12, 2017. The Settlement Agreements, along with details on how to exclude yourself or object, is available at www.reversethecharge.com. The U.S. District Court for the Northern District of California will hold a hearing on August 1, 2017 at 2:00 p.m., at 1301 Clay Street, Courtroom 1, 4th Floor, Oakland, CA 94612 to consider whether to approve the Settlements. Class Counsel will also request at the hearing, at the hearing, or a later date, attorneys' fees of up to 30% of the settlement funds, plus reimbursement of costs and expenses, for investigating the facts, litigating the case, and negotiating the settlements. Class Counsel also will request reimbursement for Class Representatives in the amount of $1,500 each. You or your own lawyer may appear and speak at the hearing at your own expense, but you are not required to appear. The hearing may be moved to a different date or time without additional notice. Check the Court about this case for updated information. Please do not contact the Court about this case.

If the case against the other Defendants is not dismissed or settled, Class Counsel will have to prove their claims against the other Defendants at trial. Dates for the trial have not yet been set. The Court has appointed the law firms of Cotchett, Pitre & McCarthy, LLP; Lieff Cabraser Heimann & Bernstein, LLP; and Hagens Berman Sobol Shapiro LLP as Class Counsel, to represent Indirect Purchaser Class members.

**For More Information:  1-855-730-8645 / www.reversethecharge.com**

# Exhibit – 3

# If You Bought Electronics Such as a Portable Computer, Power Tool, Camcorder and/or Other Items Containing a Lithium Ion Cylindrical Battery Since 2000 You Could Get Money From $44.95 Million in Settlements

English   Story Number: SF60313   Clear Time Apr 11, 2017 4:37 PM ET

## Overview

| TOTAL PICKUP | 145 |
|---|---|
| Exact Match | **144** Postings |
| Twitter | **1** Tweet |

| TOTAL POTENTIAL AUDIENCE | 87M |
|---|---|
| Exact Match | **87M** Visitors/Day |
| Twitter | **6.5K** Followers |

## Total Pickup Over Time
Total pickup since your content was distributed



## Total Pickup by Source Type



- Newspaper (95/65.5%)
- News & Information Service (23/15.9%)
- Online News Sites & Other Influencers (12/8.3%)
- Blog (3/2.1%)
- Blog–Parental Influencers (3/2.1%)
- Other (9/6.2%)

## Total Pickup by Industry



- Media & Information (111/76.6%)
- Financial (15/10.3%)
- Tech (5/3.4%)
- Retail & Consumer (4/2.8%)
- Business Services (2/1.4%)
- Other (8/5.5%)

## Exact Match Pickup

Exact matches are full text postings of your content which we have found in the online and social media that we monitor. Understand how it is calculated. Your release has generated **144** exact matches with a total potential audience of **86,988,582**.



YAHOO! FINANCE

View Release

📖 Source Type:
🌐 Location:
☰ Industry:

👥 Potential Audience:

76,000,231 visitors/day

Portal

Global

Media & Information

MarketWatch

**View Release**

**Source Type:**

**Location:**

**Industry:**

Potential Audience:

608,836 visitors/day

News & Information Service

United States

Financial

---

Seeking Alpha

**View Release**

**Source Type:**

**Location:**

**Industry:**

Potential Audience:

313,817 visitors/day

Online News Sites & Other Influencers

United States

Financial

---

ADVFN Deutschland

**View Release**

**Source Type:**

**Location:**

**Industry:**

Potential Audience:

241,103 visitors/day

Financial News Service

Germany

Financial

**Wichita Business Journal**

View Release

👥 Potential Audience:

204,256 visitors/day

📖 Source Type:
🌐 Location:
☰ Industry:

Newspaper
United States
Media & Information

---

**Washington BusinessJournal**

View Release

👥 Potential Audience:

204,256 visitors/day

📖 Source Type:
🌐 Location:
☰ Industry:

Newspaper
United States
Media & Information

---

**Minneapolis / St. Paul BusinessJournal**

View Release

👥 Potential Audience:

204,256 visitors/day

📖 Source Type:
🌐 Location:
☰ Industry:

Newspaper
United States
Media & Information

TRIANGLE BUSINESS JOURNAL

View Release

📖 Source Type:
🌐 Location:
☰ Industry:

👥 Potential Audience:

204,256 visitors/day

Newspaper
United States
Media & Information

## Twitter
Your release was mentioned in **1** tweets so far, with an estimated total audience of **6,504** followers.



🐦 CardTrak.com(@CardTrak)
Published on 2017-04-12 15:46:03 EDT

👥 Potential Audience:                    6,504 Followers
↔ Sentiment:                             Neutral

$45 Million Settlement Available for Lithium Ion Cylindrical Battery Powered Electronics https://t.co/LzZB4t2ZgE https://t.co/VECfIW3AS2

© 2017 PR Newswire Association LLC. All Rights Reserved.
A Cision company.

PR Newswire's Terms of Use Apply

# Exhibit – 4



**Weekly Statistic Report**
**In re Lithium Ion Batteries Antitrust Litigation**
**August 18, 2017**

| | |
|---|---|
| Publication Start Date: | 4/11/2017 |
| Claims filing Deadline: | 11/29/2017 |
| Opt-Out Deadline: | 8/11/2017 |
| Objection Dealine: | 8/11/2017 |
| Fairness Hearing: | 10/3/2017 |

| Project Manager | Marc Wall |
|---|---|
| Direct Telephone: | 415-458-3605 |
| Email: | Marc.Wall@kccllc.com |

**Plaintiff's Counsel**
Jeff D. Friedman
Chris O'Hara
Benjamin J. Siegel
**Hagens Berman Sobol Shapiro LLP**

| Asst. Project Manager: | Thalia Rojas |
|---|---|
| Direct Telephone: | 415-458-3679 |
| Email: | trojas@kccllc.com |

| Week of | PAPER CLAIM FORMS RECEIVED | | OPT-OUTS RECEIVED | | OBJECTIONS RECEIVED | | Physical Check Requests |
|---|---|---|---|---|---|---|---|
| | Timely | Late | Timely | Late | Timely | Late | |
| 4/14/2017 | 0 | - | 1 | - | 0 | - | 0 |
| 4/21/2017 | 0 | - | 0 | - | 0 | - | 1 |
| 4/28/2017 | 0 | - | 0 | - | 0 | - | 0 |
| 5/5/2017 | 1 | - | 0 | - | 0 | - | 12 |
| 5/12/2017 | 0 | - | 0 | - | 0 | - | 1 |
| 5/19/2017 | 36 | - | 0 | - | 0 | - | 3 |
| 5/26/2017 | 0 | - | 1 | - | 0 | - | 1 |
| 6/2/2017 | 0 | - | 1 | - | 0 | - | 0 |
| 6/9/2017 | 0 | - | 1 | - | 0 | - | 0 |
| 6/16/2017 | 3 | - | 0 | - | 0 | - | 1 |
| 6/23/2017 | 51 | - | 1 | - | 0 | - | 6 |
| 6/30/2017 | 3 | - | 1 | - | 0 | - | 3 |
| 7/7/2017 | 10 | - | 0 | - | 0 | - | 4 |
| 7/14/2017 | 15 | - | 0 | - | 0 | - | 18 |
| 7/21/2017 | 7 | - | 0 | - | 0 | - | 5 |
| 7/28/2017 | 102 | - | 0 | - | 0 | - | 1 |
| 8/4/2017 | 114 | - | 1 | - | 0 | - | 17 |
| 8/11/2017 | 1122 | - | 0 | - | 0 | - | 7 |
| 8/18/2017 | 53 | - | - | 0 | - | 0 | 9 |
| **Total:** | **1,517** | **0** | **7** | **0** | **0** | **0** | **89** |

The numbers and statistics are for your reference only and will change throughout the administration process.  Final numbers and statistics shall be provided by the Case Manager once response deadlines have passed and all responses have been properly validated.

# Exhibit – 5



**IN RE LITHIUM ION BATTERIES ANTITRUST LITIGATION**

**INDIRECT PURCHASER SETTLEMENT - SUPPLEMENTAL NOTICE PLAN**

**Report Week Ending - 8/18/2017 (5:00 p.m. PST)**

| PRINT MEDIA | Impressions | Clicks | CTR | Engagements |
|---|---|---|---|---|
| 1x Insertion - USA Today (1/6 page) | | **Published 4/12/2017** | | |

**PAID ONLINE MEDIA**

| | Impressions | Clicks | CTR | Engagements |
|---|---|---|---|---|
| Standard Display Banners: US National Prospecting -Run of Network | 359,640,400 | 1,083,519 | 0.30% | N/A |
| Facebook Banner Advertising | 369,153 | 21,259 | 5.76% | N/A |
| Twitter Promoted Tweet Advertising | 848,163 | 41,967 | 4.95% | N/A |

**NEWSWIRE**

| | |
|---|---|
| PR Newswire - US1 Release | Release issued 4/11/2017.  Complete text of release has been picked up 144 media outlets with combined audience of over 87 million visitors daily. |

| | Impressions | Clicks | CTR | Engagements |
|---|---|---|---|---|
| **TOTALS:** | 360,857,716 | 1,146,745 | 0.32% | N/A |

**KEY:**
**Impression:** How often your ad is shown. An impression is counted each time your ad is shown on a website page.
**Click:** Defined as an instance of someone clicking the link to the case URL and being directed to the case website.
**CTR:** "Click-Thru-Rate" number of clicks on the ad URL, represented as a percentage of imressions served
**Engagement:** Defined as a formula for "replies+retweets+mentions", meaning the percentage of people exposed to the notice message who shared the message in some way with others.
**Engagement Rate:** number of "replies+retweets+mentions" of the ad URL, represented as a percentage of imressions served

**Banner Samples from Websites**





**MOBILE PLACEMENT**



# Exhibit – 6





 **Inc.**   **Inc. 5000** REGISTER NOW!   Q SEARCH   NEWSLETTERS   FOLLOW   SUBSCRIBE   

TECHNOLOGY

# Did You Buy a Phone, Tablet, or Laptop Between 2000 and 2011? You Are Owed Money

Here is how to register for your payout from a class action lawsuit.

 By Joseph Steinberg  *CEO, SecureMySocial*  🐦 @JosephSteinberg

💬 WRITE A COMMENT

*CREDIT: Getty Images*

Were you a resident of the United States between January 1, 2000 and May 31, 2011 who bought during that time period--for either personal or business use--one or more phones, tablets, or laptops?

If so, you are likely owed money as the result of a class action lawsuit--but you may need to file a quick form in order to receive payment.

The class action lawsuit was brought against Hitachi Maxell, LG, and NEC--which make lithium-ion cylindrical batteries--on behalf of customers who bought electronics that utilize such power sources. The three manufacturers were accused of colluding to fix the price of the batteries, thereby increasing the price for customers who bought devices containing them.

So, check out the claim form if you bought any of the following from 2000 through 2011:

· Laptop PCs, notebooks, netbook computers

· Mobile phones, smart phones, tablets, digital audition players

· Camcorders, cameras

· Cordless power tools

· Replacement batteries for any of these products

While the defendants have agreed to settle for almost $45 million without admitting any wrongdoing, how much money each claimant will receive depends on how many valid claims are filed.

Filing a claim form takes just a few minutes, and you do not need to submit receipts. But you have only until November 29 to file.

Like this column? Sign up to subscribe to email alerts and you'll never miss a post.

*The opinions expressed here by Inc.com columnists are their own, not those of Inc.com.*