Timothy R. Hanigan (SBN 125791)
LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, CA 91367
Tel: (818) 883-5644
Fax: (818) 704-9372
Attorneys for Objector/Class Member,
Gordon Morgan

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE: LITHIUM ION BATTERIES ANTITRUST LITIGATION | Case No. 13-MD-02420 YGR (DMR) |
| This Document Relates to: | MDL No. 2420 |
| INDIRECT PURCHASER ACTIONS | Date:  December 12, 2017 |
| All Indirect Purchaser Actions | Time:  2:00 p.m. |
| | Courtroom: 1, 4th floor |
| | Judge:  The  Honorable  Yvonne Gonzalez Rogers |

## OBJECTIOR  GORDON MORGAN's NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, AND MEMORANDUM IN SUPPORT

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 12, 2017, at 2:00 p.m. or as soon thereafter as the matter may be heard by the Honorable Judge Yvonne Gonzalez Rogers of the United States District Court for the Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, CA 94612, Courtroom 1, 4th Floor Objector Gordon Morgan will and hereby does move the Court pursuant to N.D. Cal. Civil Local Rule 54-5 for an order (1) awarding Objector Gordon Morgan attorneys' fees of 1.75% of the $6,745,000 million benefit bestowed by objector ($118,037); and (2) awarding Objector Gordon Morgan an incentive award of $1,500.

This motion is based on this Notice of Motion and Motion for Attorneys' Fees, and the following memorandum of points and authorities, and such other materials as the Court may consider. The relief requested by Objector Gordon Morgan from this Court is an award of attorneys' fees in the amount of $118,037 and an incentive award of $1,500, with these amounts taken from class counsels' fee award.

PLEASE TAKE FURTHER NOTICE that, in accordance with Local Rule 54-5(a) and (b)(1), counsel for Mr. Morgan met and conferred with class counsel and Defendants for the purpose of attempting to resolve disputes with respect to this motion.

On November, 6 2017, Timothy Hanigan, counsel for Mr. Morgan telephoned the following class counsel and defense counsel in an attempt to meet and confer regarding the merits of this motion, prior to its filing:  Class counsel: Steven Williams

(Cotchett, Pitre & McCarthy); Steve Berman (Hagens Berman Sobol Shapiro, LLP); Elizabeth Cabraser (Lieff Cabraser Heiman & Bernstein, LLP). Defendants' counsel: Craig Seebald (Vinson & Elkin) for defendant Hitachi Maxell, LTD & Maxell Corp.; George Nicoud (Gibson Dunn & Crutcher LLP) for defendant NEC Tokin Corp.; Kenneth Ewing for defendant LG Chem LTD and LG Chem America, Inc. Steptoe & Johnson.

With the exception of Mr. Nicoud, none of the other counsel were available to take Mr. Hanigan's call. Mr. Nicoud advised that he took no position on the motion.

On November 6, 2017, Jason Levine, on behalf of his partner, Mr. Seebald, returned Mr. Hanigan's call. After Mr. Hanigan informed Mr. Levine that his client would not be requesting that any of the attorney's fees or the incentive award be paid by defendants, but instead that the fees and the incentive award be paid from the attorneys' fees awarded to class counsel or from the class action settlement funds, Mr. Levine advised Mr. Hanigan that he took no position on the motion.

On November 7, 2017, Mr. Hanigan exchanged emails with class counsel Jeff Friedman with Mr. Berman's office, who advised Mr. Hanigan that it was his firm's position that the motion for attorney's fees was premature since the court's order regarding attorney's fees was without prejudice to a future request for fees and, on that basis, he opposed same. In response, Mr. Hanigan advised Mr. Friedman that the Court's order reduced his proposed fees from 25% to 10% as a result of the mega-fund analysis in Mr. Morgan's objection; and, to the extent the court ultimately allows class counsel to return and seek more fees from this round of settlements, Mr. Hanigan would

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

leave it to the discretion of the court to limit his own attorneys' fees accordingly. But, as Mr. Hanigan explained, there is no question that Mr. Morgan's objection provided a concrete benefit to the class, entitling him to fees at this stage.

     PLEASE TAKE FURTHER NOTICE that, in accordance with Local Rule 7-2, a proposed Order is attached (Exhibit 4). PLEASE TAKE FURTHER NOTICE that the undersigned consents to disposition of this motion on the papers in accordance with Local Rule 7-1(b).

# Table of Contents

Notice of Motion and Motion ............................................................................. i

Statement of Issues............................................................................................ 1

Preliminary Statement ...................................................................................... 2

Background ........................................................................................................ 5

A.   Objector Morgan Objects to the $19.5 Million Sony Settlement and Potential 30% Fee Request Identified in the Class Notice, along with the Potential Mercury Violation. ................................................................................ 5

B.   Mr. Morgan Objects to Class Counsels' Request for 25% from the Second Round of Settlements, Which He Identified as Violative of Mega-Fund Principals Recognized in the Ninth Circuit. ................................................. 6

C.   This Court Applied Mr. Morgan's Mega-fund Analysis, Reducing Requested Fees by $6.7 Million. ........................................................................ 9

D.   The Two Other Remaining Objectors Miss the Mark. ...............................10

Argument............................................................................................................13

I.    Mr. Morgan Provided a Substantial Benefit to the Class. ..........................13

II.   Mr. Morgan's Fee Request is Reasonable. .................................................14

III.  Mr. Morgan's Lodestar of $38,430 Confirms the Fee is Reasonable on Cross-Check. .....................................................................................................15

IV.  Mr. Morgan's Fee Award Should be Funded from Class Counsels'   Fees. ..........16

V.   Mr. Morgan is Entitled to an Incentive Award. .........................................17

Conclusion..........................................................................................................18

1

# Table of Authorities

2

3

## Cases

4

*Alexander v. FedEx Ground Package Sys., Inc.*, 05-CV-00038-EMC,
  2016 WL 3351017, at *2–3 (N.D. Cal. June 15, 2016) .......................... 7, 8, 12

5

6

*Craft v. County of San Bernardino*, 624 F.Supp. 2d 1113 (C.D. Cal. Apr. 1, 2008) ............6, 12

7

*Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373 (D.N.J. 2012) ...........................................14

8

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 2 F. Supp. 2d 175 (D. Mass. 1998) .................15

9

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ...........................................................3

10

*Facciola v. Greenberg Traurig LLP*, CV-10-1025 PHX-FJM, 2012 WL 4711894
  (D. Ariz. Oct. 3, 2012) ...........................................................................................6, 12

11

12

*Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) ...................................................................14

13

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PriceWaterhouse Coopers,
  L.L.P.* 212 F.R.D. 400 (E.D. Wis. 2002) ...................................................... 13, 15

14

15

*In re Apple Inc. Sec. Litig.*, No. 5:06-cv-05208-JF, 2011 U.S. Dist. LEXIS 52685
  (N.D. Cal. May 17, 2011) ..........................................................................................16

16

17

*In re Citigroup Secs. Litig.*, No. 07-cv-9901(SHS), Dkt. No. 286, Order at 1-2
  (S.D.N.Y. Sept. 10, 2013) ...........................................................................................15

18

*In re High-Tech Emple. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist.
  LEXIS 118052, at *50, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ..........................7, 12

19

20

*In re Horizon/CMS Healthcare Corp. Secs. Litig.*, 3 F. Supp. 2d 1208 (D.N.M. 1998) ...........15

21

*In re Ikon Office Solutions*, 194 F.R.D. 166 (E.D. Pa. 2000) ..................................................15

22

*In re Mercury Interactive Corp. Securities Litig*, 618 F.3d 988 (9th Cir. 2010)..............................5

23

*In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741 (7th Cir. 2011) .......................................16

24

*Lan v. Ludrof*, 2008 WL 763763 (W.D. Pa. Mar, 21, 2008) ..................................................14

25

*Neslin v. Wells*, 104 U.S. 428 (1882) .....................................................................................15

26

*Parker v. Time Warner Entm't Co., L.P.* 631 F. Supp. 2d 242 (E.D.N.Y. 2009)....................15

27

*Reynolds v. Beneficial National Bank*, 288 F.3d 277 (7th Cir. 2002) .......................................14

28

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................................3, 14

*Sobel v. Hertz Corp.*, 53 F.Supp.3d 1319 (D. Nev. 2014) ............................................................ 3

*Stetson v. West Publishing Corp.*, No. 2:08-CV-00810-RGK-E, 2016 WL 5867434
    (C.D. Ca. Aug. 11, 2016) ................................................................................................3, 14

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ............................................. 3, 7, 12

*Wininger v. SI Management L.P.*, 301 F.3d 1123 (9th Cir. 2001) ................................................ 3

**Other Authority**

ABA Standing Committee on Ethics and Professional Responsibility, Formal Opinion
    07-446 (May 5, 2007) .......................................................................................................... 5

## STATEMENT OF ISSUES

1. The Ninth Circuit instructs that an objecting class member is entitled to attorneys' fees and an incentive award for material benefits resulting from the objection. Objecting class member Gordon Morgan was the only litigant or objector to advocate a Ninth Circuit and Northern District of California-specific mega-fund analysis, which this Court adopted in reducing class counsels' proposed fees from $11.2 million to $4.4 million. Consequently, Mr. Morgan moves the Court to enter an order awarding attorneys' fees in the amount of $118,037, 1.5% of the benefit conveyed, $118,037, and an incentive award of $1,500, with the funds to come from class counsels' fee award. Although the extent of the benefit may change based on the possibility of future awards, considering the Court is adhering to mega-fund principals, there is no question Mr. Morgan's objection provided a concrete benefit to the class, entitling him to fees at this stage.

**PREIMINARY STATEMENT**

Mr. Morgan is entitled to attorneys' fees and an incentive award based on his role in returning $6.7 million in excessive fees to the class.[1] Mr. Morgan advanced the mega-fund argument that this Court relied on in rejecting class counsels' call for 25%, and only allowing 10%.

It must be remembered that mega-fund principals were omitted entirely from class counsels' fee motion. Doc. 1814. Only Mr. Morgan focused on Ninth Circuit standards, and mega-funds in the Northern District of California particularly, in advocating application of mega-fund principals. Doc. 1906, at 2-3, 5-8.[2] Mr. Morgan was the only objector to specify that considering (1) we are now at $64 million with the two rounds of settlements, and (2) "[t]he four settling defendant groups are responsible for 38% of the damages," it is imperative to limit fees now under mega-fund methodology. Doc. 1906, at 2.

The Court acknowledged Mr. Morgan's analysis at the fairness hearing:

> To suggest that this isn't a mega case when we're already at $64 million, if I count Sony, and that represents only 38 percent of the claimed damages, seems to me to be a little bit of intellectually disingenuous.

Transcript of Oct. 3, 2017 Fairness Hearing, Exhibit 1, at 13; *see also* Doc. 1984, at 13. It then awarded class counsel $4.4 million in fees (10%) rather than the $11.2 million (25%) sought, consistent with Mr. Morgan's objection. *Compare* Doc. 2005 (order) with Doc.

---

[1] $11,240,000 - $4,495,000 = $6,745,000.

[2] Objector Morgan references the ECF pagination with respect to his objection to the second round of settlements, Doc. 1906.

1906 (fee motion).

Under well-settled Ninth Circuit authority, this Court should award Mr. Morgan an incentive award and his reasonable attorneys' fees for the material benefit conveyed. *Rodriguez v. West Publishing Corp.* 563 F.3d 948, 963 (9th Cir. 2009) (reversing and remanding for the district court to award objectors' fees where the net effect of their argument was to leave $325,000 in the settlement fund); *Stetson v. West Publishing Corp.*, No. 2:08-CV-00810-RGK-E, 2016 WL 5867434, at *6 (C.D. Ca. Aug. 11, 2016) ("objectors play a particularly valuable role in providing the court with information to aid the process of determining the reasonableness of attorney's fee requests by class counsel"). Indeed, "[c]ounsel for objectors whose actions confer a benefit upon the class are *entitled* to reasonable fees and expenses." *Stentson*, 2016 WL 5867434, at *6; (emphasis added) (citing *Wininger v. SI Management L.P.*, 301 F.3d 1115, 1123 (9th Cir. 2001)); *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) (when objections produce a more favorable class recovery, "the objectors will receive a cash award that can be substantial").

When as here, "these objections result in an increase to the common fund, the objectors may claim entitlement to fees on the same equitable principles as class counsel." *Rodriguez*, 688 F.3d at 658 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051–52 (9th Cir. 2002)). The objecting class member must show a substantial enhancement to the class benefit. *Vizcaino*, 290 F.3d at 1052; *Sobel v. Hertz Corp.*, 53 F.Supp.3d 1319, 1332–33 (D. Nev. 2014) (awarding fees and an incentive award where objections "did contribute to the value of the resulting settlement").

Mr. Morgan's advocacy against a 25% from the mega-fund contributed to providing millions of dollars in benefit to the class members. Mr. Morgan focused on Ninth Circuit authority *requiring* the Court to consider the size of the fund, and identified several opinions from this District in which courts refused to entertain the 25% sought here under a mega-fund analysis. Doc. 1906, 2-3, 5-8. He pointed out that with four settling defendants making up only 38% of class damages, mega-fund limits must be applied now. Doc. 1906, at 2, 7. And he directed the Court to two opinions within the Ninth Circuit concluding that mega-funds principals start at settlements involving $50 million or more. Doc. 1906, at 2.

This Court's application of Mr. Morgan's analysis, reducing fees from $11.4 million to $4.4 million conveyed a $6.7 million direct class benefit. Though Ninth Circuit authority would permit a far greater percentage, Mr. Morgan requests only 1.75% of the benefit bestowed, or $118,037 in attorneys' fees, based on the percentage method, as well as a $1,500 incentive award. He requests that this amount be taken from class counsels' fees to preserve as much recovery for the class as possible.

Objector recognizes that the Court's order awarding 10% fees is without prejudice to class counsel returning to petition for more. Doc. 2005, at 2. Yet, the Court denied the request for 25% expressly on mega-fund principals. *Id.* at 1-2. Although the extent of the benefit may change based on the possibility of future awards, considering the Court is adhering to mega-fund principals, there is no question Mr. Morgan's objection provided a concrete benefit to the class, entitling him to fees at this stage.

# BACKGROUND

**A. Objector Morgan Objects to the $19.5 Million Sony Settlement and Potential 30% Fee Request Identified in the Class Notice, along with the Potential *Mercury* Violation.**

On September 21, 2016, Mr. Morgan, through local counsel Timothy Hanigan,[3] objected to class counsels' suggested 30% fee, identified in the class notice, from the $19.5 million settlement. Doc. 1472, at 14-17. The Court emphasized this Court's obligation to act as a fiduciary for the class, recognizing "the relationship between plaintiffs ant their attorneys turns adversarial at the fee-setting stage," and that "every dollar that is not awarded to Class Counsel remains in the Settlement Fund for the benefit of the Class." Doc. 1472, at 15 (quotation omitted). Mr. Morgan also observed that because class counsel were not required to submit a fee motion ahead of the September 22, 2016 objection deadline for the Sony settlement, the objection procedure potentially violated *In re Mercury Interactive Corp. Securities Litig*, 618 F.3d 988 (9th Cir. 2010).[4]

Mr. Morgan further observed that "[e]ven without the ability to review a fee motion, . . . it is clear Class Counsel's request for 30% of the gross settlement fund

---

[3] As disclosed in both Mr. Morgan's objections, he is also represented by attorney Christopher Bandas, of Bandas Law Firm, P.C., as his general counsel in objecting to the settlement. Doc. 1472, at 8; Doc. 1906, at 4; *see generally* ABA Standing Committee on Ethics and Professional Responsibility, Formal Opinion 07-446 (May 5, 2007).

[4] As Mr. Morgan observed, "[t]he Class Notice indicate[d] "the motion [for fees] will be posted on the website at least 35 days before the Court holds a hearing to consider the request, and you will have an opportunity *to comment on the motion*." Doc. 1472, at 12 (citing Class Notice, ECF Doc. 1292-1, at 5). Mr. Morgan remarked that it was "not clear when the hearing on the motion for fees will be set, but the Class Notice would suggest it will be during the November 8, 2016 hearing or later." Doc. 1472, at 12 n. 14 (citing Class Notice, ECF Doc. 1292-1, at 5). Mr. Morgan also posited that it was "unclear whether allowing the Class to 'comment' on the motion is tantamount to an objection to Class Counsels' requested fees. If it is, the Notice does not explain whether the failure to make an initial objection by the September 22nd deadline will preclude  class member from "commenting" on the fee request.' Doc. 1472, at 12.

departs from the interests of the Class and is excessive." Doc. 1472, at 17.

On March 20, 2017, the Court overruled Mr. Morgan's objections, and approved the settlement. Doc. 1712, at 6-7. Class counsel have still not petitioned for fees from the Sony settlement. As class counsel explained recently, however, "you might have noticed in the papers we did not make a claim against money from the Sony fund. And the reason is that, while in theory I suppose we could have, there would have been an obligation to re-notice the class." Exhibit 1, Transcript of October 3, 2017 Fairness Hearing; *see also* Doc. 1984, at 18.

**B. Mr. Morgan Objects to Class Counsels' Request for 25% from the Second Round of Settlements, Which He Identified as Violative of Mega-Fund Principals Recognized in the Ninth Circuit.**

In May, 2017, class counsel moved for 25% of the $44.9 million settlements with LG Chem, Hitachi Maxwell, and NEC defendant groups. Doc. 1814. Mr. Morgan objected again, this time noting the latest fund moved the aggregate settlements to $64.5 million,[5] which is mega-fund territory. Doc. 1906, at 2. As Mr. Morgan observed, courts within the Ninth Circuit treat settlements involving $50 million or more as mega-funds. Doc. 1906, at 2 (citing *Craft v. County of San Bernardino*, 624 F.Supp. 2d 1113, 1127 (C.D. Cal. Apr. 1, 2008); *Facciola v. Greenberg Traurig* LLP, CV-10-1025 PHX-FJM, 2012 WL 4711894, at *1 (D. Ariz. Oct. 3, 2012)).

Mr. Morgan stated:

> In this context, a fixed 25% in attorneys' fees for this group

---

[5] Mr. Morgan correctly referenced the aggregate settlement funds a $64.5 million on page 2 of his second objection. Doc. 1906, at 2 (citing Doc. 1814, at 1 ("IPPS have obtained settlements with four defendant groups—Sony, LG Chem, Hitachi Maxell, and NEC—in the amount of $64,450,000"). In rounding up, the objection contains an immaterial miscalculation in referring to the fund as $66 million rather than $65 million. Doc. 1906, at 5-6. Either number falls well into mega-fund classification.

of settlements or prior or future settlements, is unauthorized. The fee motion makes no mention of the fact that as settlement size increases for these settlements, the percentage of recovery for attorneys' fees diminishes. **In fact, the Ninth Circuit has held that a "court *must* consider the fund's size in light of the circumstances of the particular case" and "the 25 percent 'benchmark' is of little assistance in a case such as this."**

Doc. 1906, at 2-3 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002)). Mr. Morgan explained the inequities behind a 25% recovery for mega-fund, in that costs begin to decline relative to recovery as the settlements continue to rise by tens of millions. Doc. 1906, at 5.

Mr. Morgan identified a number of cases from the Northern District of California detailing empirical data from mega-fund recoveries, confirming a 25% recovery as unwarranted:

Judge Edward M. Chen of the Northern District of California recently observed that although there are outliers, "typically the percentage award in [megafund cases] is substantially less than the 25% benchmark applicable to class settlements in this Circuit." *Alexander v. FedEx Ground Package Sys., Inc.*, 05-CV-00038-EMC, 2016 WL 3351017, at *2–3 (N.D. Cal. June 15, 2016). Similarly, Judge Lucy Koh from the Northern District of California found that there is "persuasive evidence that 'the median attorney's fee award in a sample of 68 'megafund' class action settlements over a 16-year period was 10.2%." *In re High-Tech Emple. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118052, at *50, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) (also citing a study where the mean award was 12%). Notably, Judge Koh rejected evidence from a different study indicating that the mean and median fee percentages awarded were 17.8% and 19.5%. *See id.* at *48-50 (noting that the "study spanned just two years" and "the sample size in the ... study is only eight"); *Alexander v. FedEx Ground Package Sys., Inc.*, 05-CV-00038-EMC, 2016 WL 3351017, at *2–3 (N.D. Cal. June 15, 2016) ("[t]his data suggests that a proposed award of 22%, while not without

precedent, is well above the typical range in a megafund case").

Doc. 1906, at 6.

Mr. Morgan qualified that there are outliers; still, the 25% recovery sought in this context dramatically exceeded typical recovery. Doc. 1906, at 6 (citing *Alexander v. FedEx Ground Package Sys., Inc.*, 05-CV-00038-EMC, 2016 WL 3351017, at *3 (awarding 16.4%, which was on "the higher end of awards in megafund cases")). He urged this Court to give no deference to authority cited by class counsel involving smaller settlements where the benchmark or higher was awarded. Doc. 1906, at 6-7.

Critically, Mr. Morgan stressed the importance of "head[ing] off the excessive fee request" at this stage. Doc. 1906, at 7. As he noted, "[t]he four settling defendant groups are responsible for 38% of the damages, with key defendants remaining in the litigation. Future settlements should push the collective funds above $100 million." Doc. 1906, at 2. Resultingly,

> [i]f class counsel later seek 25% of future settlements in this litigation, then they will be correspondingly overpaid as a percentage of the aggregate mega-fund. Class counsel will incur more time and expense going forward against the remaining defendants, but inevitably, the marginal cost of litigation will continue to decrease.
>
> Thus, the 25% fee award is out of bounds on a stand-alone basis. But, when considered in the context of future settlements, it is particularly offensive.

Doc. 1906, at 7.

### C. This Court Applied Mr. Morgan's Mega-fund Analysis, Reducing Requested Fees by $6.7 Million.

Mr. Morgan's arguments against class counsels' excessive request from a mega-fund did not go unrecognized. Again, during the October 3, 2017 fairness hearing, this Court remarked:

> To suggest that this isn't a mega case when we're already at $64 million, if I count Sony, and that represents only 38 percent of the claimed damages, seems to me to be a little bit of intellectually disingenuous.

Exhibit 3, at 13; *see also* Doc. 1984, at 13.

On October 27, 2017, this Court granted final approval of second round of the Hitachi, NEC, and LEG settlements, and entered a final judgment. Docs. 2003, 2004. The court explained it considered the objections filed by "Christopher Andres, Michael Frank Bednarz and Gordon Morgan[" Doc. 2003, at 1. The Court discussed these objections collectively (Doc. 2003, at 4); however, Mr. Morgan's objection was the only objection to examine mega-fund principals in detail with a focus on Ninth Circuit and Northern District of California authority. *Compare* Doc. 1906 (objection of Gordon Morgan) *with* Doc.1902 (objection of  Michael Frank Bednarz) and Docs. 1752, 1753, 1787, 1833, 1834 (objection and supplements of Christopher Andrews).

The court's order approving the settlement stated it would take the "appropriateness of the percentage of the total settlement in light of potential 'megafund' status into account in its consideration of the IPP attorneys' fee motion." Doc. 2003, at 4. The court then overruled each of the objections. Doc. 2003, at 5.

On the same day, this Court granted in part and denied in part, without prejudice,

class counsels' motion for an award of attorneys' fees, reimbursement of expenses, and service award. Doc. 2005. The Court remarked that "[t]he total settlement amounts to date approach the characteristics of a so-called 'megafund' case, in which a fee amount approaching the 25 benchmark may result in a windfall." Doc. 2005, at 1-2 (quotation omitted). The court also observed that it was unprepared to make a full award of fees considering "the settlement with the Sony defendants has been approved, but no amount of attorneys' fees was determined in connection with that approval yet." Doc. 2005, at 2.[6] With these concepts in mind, the Court awarded class counsel a partial attorney fee payment of $4,495,000, or 10% of the Hitachi, NEC, and LEG settlement fund. Doc. 2005, at 2. And, it denied the request for 25% without prejudice to a further motion for attorneys' fees. Doc. 2005, at 2.

### D. The Two Other Remaining Objectors Miss the Mark.

While several other class members filed objections, Mr. Morgan's was the only to provide thorough Northern District of California and Ninth Circuit-specific analysis to why the Court should not allow anything approaching a 25% recovery in this mega-fund case, particularly when the settling defendants only account for 38% of damages.

Michael Frank Bednarz, represented by Theodore Frank, did not present mega-fund analysis in his objection or during the fairness hearing, and is not entitled to a fee.

---

[6] To the extent this Court withholds any fees from Objector Morgan on the premise that the full benefit of the reduction in fees cannot yet be ascertained, he should be permitted to seek additional fees for future reductions based on mega-fund principals.

Doc. 1902.[7] Christopher Andrews submitted a *pro se* objection to the second round of settlements. Doc. 1752 (3 pages). In this initial three-page document, Andrews did not mention a mega-fund argument. Doc. 1753. Over the course of several months leading up to the objection deadline, Andrews filed four supplements with kitchen-sink arguments to all conceivable aspects of the settlement. Between the supplements and exhibits, he submitted hundreds of pages to the Court, burying a few pages of mega-fund discussion towards the end of two supplements. Doc. 1753 (3 pages, no mega-fund discussion); Doc. 1787 (32 page supplement; one paragraph on p. 30-31 discussing mega-fund with no authority); Doc. 1833 (25-page supplement, 63 pages of exhibits, and no mega-fund discussion); Doc. 1834 (15-page supplement, 105 pages of exhibits, and 3 ½ pages of mega-fund discussion(pp. 6-9)). Even then, Mr. Andrews' hodgepodge argument was largely non-specific to the Ninth Circuit. He urged the Court to employ a declining percentage approach that has not been adopted in the Ninth Circuit. Doc. 1834, at 9. Otherwise, in the hundreds of pages of morass, he cited a single Ninth Circuit opinion and a single opinion from this district involving mega-fund concepts; both more than twenty years old. Doc. 1834, at 8-9 .

By contrast, Mr. Morgan led off with a comprehensive mega-fund analysis in both

---

[7] Mr. Frank previously worked for Mr. Bandas in objecting to class action settlements and handling appeals. He is now director of a "non-profit" organization, acting as a gadfly in the class action process. *Andrew Trask, The Problem with Prospective Injunctive Relief*, Class Action Counter Measures, McGuire Woods (Aug. 24, 2016) accessible at http://www.classactioncountermeasures.com/2016/08/articles/scholarship/the-problem-with-prospective-injunctive-relief/ (last visited May 26, 2017) (characterizing Ted Frank as a "professional gadfly"). He is paid handsomely to do so. *See Ted Frank: Lightning Rod for Class Settlement Storms*, BLOOMBERG BNA (March 25, 2016) ("As the chief of CCAF, Mr. Frank received $199,200 in compensation from the organization for the fiscal year ending June 30, 2014, according to Internal Revenue Service's records"), accessible at https://www.bna.com/ted-frank-lightning-n57982069046/ (last visited May 26, 2017).

his introduction and as the first section of his objection. Doc. 1906, at 2-3, 5-9,  Mr.

Morgan advocated the fee methodology employed in the Northern District of California

and the Ninth Circuit. Doc. 1906, at 2-3, 5-9. Mr. Morgan specified that the "Ninth

Circuit has held that a 'court *must* consider the fund's size in light of the circumstances of

the particular case' and 'the 25 percent 'benchmark' is of little assistance in a case such as

this.'" Doc. 1906, at 3 (citing *Vizcaino*, 290 F.3d at 1047-48 (emphasis added in

objection)). Mr. Morgan also identified two cases from within the Ninth Circuit finding

that settlements of $50 million or more (as opposed to $100 million or more as identified

by Mr. Andrews) are categorized as mega-funds. Doc. 1906, at 2 (citing *Craft v. County of*

*San Bernardino,* 624 F. Supp. 2d 1113, 1127 (C.D. Cal. Apr. 1, 2008) (noting that generally

"fees of less than 25% will be awarded in megafund cases (cases of $50 million or

more)); *Facciola v. Greenberg Traurig LLP,* CV-10-1025-PHX-FJM, 2012 WL 4711894, at

*1 (D. Ariz. Oct. 3, 2012) ("awarding 25% of a 'megafund' (funds of $50 million or

more) may yield unreasonable windfall profits for class counsel") (citation omitted)). He

also discussed in detail 2015 and 2016 large-scale settlements before Judge Chen and

Judge Koh, in which the judges considered mega-fund principals. Doc. 1906, at 6-7, 9

(citing *Alexander v. FedEx Ground Package Sys., Inc.,* 05-CV-00038-EMC, 2016 WL

3351017, at *2–3 (N.D. Cal. June 15, 2016); *In re High-Tech Emple. Antitrust Litig.,* No. 11-

CV-02509-LHK, 2015 U.S. Dist. LEXIS 118052, at *50, 2015 WL 5158730 (N.D. Cal.

Sept. 2, 2015)).

Thus, Mr. Morgan is the only objector who added meaningful, substantive mega-

fund analysis specific to this District, indicting the scope of overreaching by class

counsels' 25% fee request. Consistent with this analysis, the Court rejected the 25% fee request, and awarded $4.49 million, or 10%, in line with authority cited in Mr. Morgan's objection. *See* Doc. 1906, at 5 (explaining "Judge Lucy Koh from the Northern District of California found that there is 'persuasive evidence that 'the median attorney's fee award in a sample of 68 'megafund' class action settlements over a 16-year period was 10.2%'") (quoting *Alexander, Inc.*, 05-CV-00038-EMC, 2016 WL 3351017, at *2–3).

As a result, class counsel stand to take approximately $6.7 million less than they sought from the class members' fund. Mr. Morgan played an important role in limiting class counsels' fees to a more reasonable sum for the benefit of the class, and should be rewarded accordingly.

## ARGUMENT

### I. Mr. Morgan Provided a Substantial Benefit to the Class.

The pertinent question for an objector fee motion is whether the objection provided a substantial benefit to the class recovery. *Stentson*, 2016 WL 5867434, at *6; *see also Great Neck Capital Appreciation Inv. P'ship, L.P. v. PriceWaterhouse Coopers, L.L.P.* 212 F.R.D. 400, 413 (E.D. Wis. 2002) (court should consider whether the objector "improved the settlement, assisted the court, and/or enhanced the recovery in any discernible fashion).

Without question, Mr. Morgan's factual and legal analysis conveyed a material benefit to the class. He is therefore entitled to a fee and incentive award. Further, fees should not be denied based on the notion that a court would have arrived at the same conclusion without the objections because "objectors must decide whether to object without knowing what objections may be moot because they have already occurred to

13

the judge." *See Reynolds v. Beneficial National Bank*, 288 F.3d 277, 288 (7th Cir. 2002). The only other objector who even touched on mega-fund principals apart from Mr. Morgan buried it in hundreds of pages of supplements and exhibits, and even then failed to make arguments specific to the Ninth Circuit and the Northern District of California.

Class recovery was thus enhanced by the $6.7 million based on Mr. Morgan's analysis. Considering the benefit bestowed upon the class, $6.7 million, it would be error to deny Mr. Morgan's request. *See e.g., Rodriguez*, 563 F.3d at 963 ("clearly erroneous" for district court to decide that objector counsel "did not add anything"); *see Gottlieb v. Barry*, 43 F.3d 474, 491 (10th Cir. 1994).[8]

## II. Mr. Morgan's Fee Request is Reasonable.

Mr. Morgan's request for 1.75% of the benefit bestowed as attorneys' fees is in line, and in fact far below what he could have requested under Ninth Circuit authority. *See e.g., Stetson v. West Publishing Corp*. No. 2:08-CV-00810-RGK-E) 2016 WL 5867434, at *6 (C.D. Cal., Aug. 11, 2016) (awarding objectors 20% of the benefit—i.e., the amount by which the court reduced class counsels' excessive fee request); *Lan v. Ludrof*, No. 1:06cv114, 2008 WL 763763, at *28 (W.D. Pa. Mar, 21, 2008) (awarding objector 25% of the increase in the benefit to the class); *see also Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 396 (D.N.J. 2012) ("10% of the benefit conferred [is] well within the range of acceptable . . . recovery[.]").

---

[8] The *Rodriguez* litigation resulted in the Ninth Circuit's further determination that the lower court "clearly erred" and "abused its discretion by denying fees to the . . . Objectors." *Rodriguez II*, 688 F.3d at 659-60.

### III.   Mr. Morgan's Lodestar of $38,430 Confirms the Fee is Reasonable on Cross-Check.

Mr. Morgan's counsel have an aggregate $38,430 lodestar based on 105.8 hours. The lodestar is divided as follows: Christopher Bandas, sole shareholder of Bandas Law Firm, P.C., 11.2 hours at $475 per hour, for a $5,320 lodestar (Exhibit 2, Declaration of Robert Clore); Robert Clore, Senior Appellate Counsel, Bandas Law Firm., P.C., 89.5 hours at $350 per hour, for a $31,325 lodestar (Exhibit 2, Declaration of Robert Clore); Timothy Hanigan, local counsel, Lang, Hanigan & Carvalho, LLP, 5.1 hours at $350 per hour, for a lodestar of $1,785 (Exhibit 3, Declaration of Timothy Hanigan).

The collective $38,430 is conservative and reflects efficient billing practices. (Exhibit 2, Declaration of Robert Clore). It includes analysis of the various settlements and class counsels' fee motion, through legal research, conferring with Mr. Morgan on two separate objections, drafting and editing Mr. Morgan's two objections, and staying up to date on the docket since Mr. Morgan's first objection filed in September, 2016. *Id.* It excludes all work in preparing this fee motion. *Id.*

Mr. Morgan's request for $118,037 in fees reflects a 3.07 lodestar multiplier, which falls within what attorneys making up class counsel have elsewhere asserted is within the range of reasonable multipliers in the Ninth Circuit. *See e.g., In re: Optical Disk Drive Prods.*, 10-2143, Doc. 2326, at 16 n.30 (N.D. Cal. Jun. 30, 2017). Considering the degree of success, the degree of risk, and the efficiency of Mr. Morgan's attorneys' lodestar, the $118,037 request is reasonable.

## IV.   Mr. Morgan's Fee Award Should be Funded from Class Counsels' Fees.

Considering class counsels' omission of mega-fund principals necessitated Mr. Morgan's objection, his attorneys' fee should be taken from class counsels' award rather than the class members' settlement fund. *See generally Neslin v. Wells,* 104 U.S. 428, 437 (1882) ("equity requires that the loss, which in consequence thereof must fall on one of the two, shall be borne by him by whose fault it was occasioned."). In fact, many courts have elected to award objector fees from class counsels' award rather than the common fund. *See Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.,* 212 F.R.D. 400, 417 (E.D. Wis. 2002) (ordering that "attorneys' fees awarded to the objector are to be paid by class counsel and the defendants as they may agree but without diminution of the sum awarded to the class"); *Lonardo v. Travelers Indem. Co.,* 706 F. Supp. 2d 766, 817 (N.D. Ohio 2010), *on reconsideration in part* (July 21, 2010) (awarding objector's attorneys' fees out of class counsel's fee award); *Parker v. Time Warner Entm't Co., L.P.* 631 F. Supp. 2d 242, 277 (E.D.N.Y. 2009) (same); *Prudential,* 273 F. Supp. at 573 (D.N.J. 2003), *aff'd* 103 Fed. Appx. 695, 697 (3d Cir. 2004) (same); *In re Ikon Office Solutions,* 194 F.R.D. 166, 197 (E.D. Pa. 2000) (same); *Duhaime v. John Hancock Mut. Life Ins. Co.,* 2 F. Supp. 2d 175, 176 (D. Mass. 1998) (same); *In re Horizon/CMS Healthcare Corp. Secs. Litig.,* 3 F. Supp. 2d 1208, 1215 (D.N.M. 1998) (same); *In re Citigroup Secs. Litig.,* No. 07-cv-9901(SHS), Dkt. No. 286, Order at 1-2 (S.D.N.Y. Sept. 10, 2013) (same with objector's expenses). Mr. Morgan urges this Court to do so here considering class counsels' overreaching 25% fee request from a mega-fund, and their neglect to so much as mention mega-fund principals.

16

### V. Mr. Morgan is Entitled to an Incentive Award.

Mr. Morgan further requests a $1,000 incentive award. That amount is appropriate in light of his role in conferring a benefit upon the class. *Dewey*, 909 F. Supp. 2d at 398-400; *Lonardo*, 706 F. Supp. 2d at 816-17; *In re Apple Inc. Sec. Litig.*, No. 5:06-cv-05208-JF, 2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011).

By objecting here, Mr. Morgan exposed himself to the risk of harassment by class counsel. *See generally In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 743 (7th Cir. 2011) (noting that "class lawyers may try to fend off interlopers who oppose a proposed settlement" and that such tactics should not be permitted considering objectors can "prevent cozy deals that favor class lawyers and defendants at the expense of class members"); Rob Capriccioso, *McCain Opposes Harper Nomination to UN Council, Citing Indian Concerns*, INDIAN COUNTRY TODAY MEDIA NETWORK, Sept. 24, 2013[9] (class counsel in the *Cobell* case revealed personal information of objecting class members, attempting to intimidate them into dropping their appeal).

Class counsels' *modus operandi* in responding to Mr. Morgan's objections has been to rely on personal attacks. Doc. 1923, at 1 (characterizing Mr. Morgan as a "serial objector" and urging his arguments be viewed with skepticism). Even though Mr. Morgan has *never* filed a baseless objection, class counsel falsely suggested he had, and lumped him in the same paragraph with another class member who has been repeatedly sanctioned. Doc. 1923, at 1. Mr. Morgan indeed exposed himself to considerable risk considering this type of character assassination submitted in a federal court pleading.

---

[9] Accessible at https://indiancountrymedianetwork.com/news/politics/mccain-opposes-harper-nomination-to-un-council-citing-indian-concerns (last visited May 3, 2017).

17

1   Mr. Morgan is requesting a small fraction of the aggregate $34,500 incentive

2   payments awarded to the class representatives, which this Court approved as reasonable.

3
    Like the class representatives, Mr. Morgan's meaningful contributions to the class should
4
5   be compensated. As a result of Mr. Morgan's having come forward, class counsel will

6   not take an unauthorized 25% of the settlement, and more will be available to the class.

7                                          **CONCLUSION**

8
        Objector  Gordon Morgan thus respectfully requests that this Court award him
9
10  $1,500 as an incentive award and $118,037 in attorneys' fees for his role in conferring a

11  direct benefit to the class.

12

13  DATED:  November 10, 2017                    Respectfully submitted,

14
                                          */s/ Timothy R. Hanigan*
15                                        Timothy R. Hanigan (125791)
16                                        LANG, HANIGAN &
                                          CARVALHO, LLP,
17                                        21550 Oxnard Street, Suite 760
18                                        Woodland Hills, California 91367
                                          (818) 883-5644
19                                        trhanigan@gmail.com
20                                        Attorney for Objector/Class Member
                                          Gordon Morgan
21

22                              **Certificate of Service**

23      The undersigned certifies that today he filed the foregoing on ECF which will

24  send electronic notification to all attorneys registered for ECF-filing.

25

26  DATED:  November 10, 2017

27

28                                        */s/ Timothy R. Hanigan*
                                          Timothy R. Hanigan