Class Action Clerk

U.S. District Court for the

Northern District of California

United States Courthouse

1301 Clay Street

Oakland California 94612

FILED

NOV 22 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

NOTICE OF APPEAL
In re Lithium Ion Batteries Antitrust Litigation – All Indirect Purchaser
Actions, MDL 4:13-md-02420-YGR,
LG Chem, Hitachi Maxwell and NEC (the Second Round Settlements)

Judge Yvonne Gonzalez Rogers



- Christopher Andrews, Pro se

- Objector, non attorney

- **Notice of Appeal of Entire**

- **Settlement and**

- **Attached Motion to Proceed In .**

- **Forma Pauperis (Under Seal Please)**

Notice is hereby given that Christopher Andrews, pro se objector in the above named case, hereby appeals in good faith, and with overwhelming evidence to back his claim for reversal to the United States Court of Appeals for the 9th Circuit from the final approval Doc 2003 entered on the 27th day of October 2017, Judgment of Dismissal, Doc 2004 entered on the 27th day of October 2017, Motion for Attorney Fees, Doc 2005 entered on the 27th day of October 2017, for the following multitude of good faith reasons, among others, that were raised and were not addressed and resolved prior to approval of this deal. The objector will improve the settlement for the benefit of the class.

First, the objector objects to not being sent a copy of any of the documents described above, by anyone, even though the objector stated in writing he was not an automatic receiver of pacer filings and requested to be put on a manual mailing list  The objector was rushed to get this done and mailed out. The objector found out about the approval made October 27, 2017 on Saturday November 18, 2017 by accident. Apparently the parties were hoping the objector would miss the appeal deadline to prevent an appeal notice from being filed and ultimately reversed.

The objector repeats the issues below from his objection in this notice. The court failed to address and articulate the reasons the approval was made with all the errors pointed out in pages repeated as repeated below taken from the objection which prevents the

appeals court for adequately reviewing the reasons why the court did what it did. This is a reversal in the wings based on the errors that the parties refused to fix.

## ISSUES THAT SHOULD GIVE THIS COURT CAUSE TO PAUSE

"The fairness of the settlement must be evaluated primarily based on how it "compensates class members" —not on whether it provides relief to other people, much less on whether it interferes with the defendant's marketing plans.

Synfuel Techs., Inc. v. DHL Express (USA) Inc., 463 F.3d 646, 654 (7th Cir. 2006) (emphasis added); see also, e.g., Katrina Canal Breaches Litg., 628 F.3d at 195; Gen. Motors Pickup Litg., 55 F.3d at 809–12.

In this case we still don't know how it compensates unnamed class members because important information the class requires is unavailable.

The law relies upon the "fiduciary obligation[s]" of the class representatives and, especially, class counsel, to protect those interests. Creative Montessori Learning Ctrs. V. Ashford Gear LLC, 662 F.3d 913, 917 (7th Cir. 2011).

**22 Issues with the Three Settlement Releases That Makes Them All Invalid**

- The following principles of interpretation do not apply to the Agreements: (a) the plural of any defined term does not include the singular, and the singular of any defined term does not include the plural, (b) references to a person are also to the person's successor-

interest; and (c) whenever the words "include," includes," or 'including" are used in the Agreement, they are limiting making the releases confusing and ambiguous.

- Missing is the expiration date of the "settlement checks" or credits issued.
- Missing information that is supposed to be disclosed to the class before approval can be decided is as follows and should have been included in Paragraph 20 but is not making that section and the claims process null and voiding the agreement:

  The Rights, Duties and Obligations of Class Counsel and the Administrator Regarding Verification Process of Claims, Rights to Cure Deficiencies, Timetable to Effect Those Changes, Appeal Rights of Claims Unfairly Rejected and Notification Procedures to Claimants that the Claim was Accepted or Denied are all missing and not addressed which protects the class. The claims process and the distribution process are linked, like conjoined twins and should not be unfairly separated out of the approval process just so Class Counsel can get a fast payday at the expense of the class. This violates due process and Rule 23.

- Long notice or releases should have stated the following to the class but do not:

  Who decides my claim?

  The Claim Forms will be reviewed by an independent Claim Administrator according to criteria agreed to by the parties. The Claim Administrator may contact you or other persons listed in your Claim Form if it needs additional information or otherwise wants to verify information in your Claim Form. The Claim Administrator's determination is

final. Neither you nor the defendant's can appeal or contest the decision of the Claim Administrator."

Right now the claimants have no protections, they are on a wing and prayer in this rush to divide and conquer the class into a forced, dreadful, piece meal settlement.

- Collateral Attack and Res Judicata are don't apply. The three agreements are subject to collateral attack by any Class Member or any recipient of the Class Notice after the Judgment is entered. Such acceptable collateral attacks shall include but are not limited to claims that the procedures for claims administration were incorrect, (in this case missing) or that the Class Member failed for any reason to receive timely notice of the procedure for submitting a Claim Form.
- Provisions of the agreements are severable because severability has not been pleaded so if any part is invalid (and many are) it makes the entire agreement(s) invalid. To be clear, if any portion, provision, or part of this Agreement is held, determined or judged to be invalid, unenforceable, or void, for any reason whatsoever, each such portion, provision, any part is not severed from the remaining portions, provisions, or parts of this Agreement and does affect the validity or enforceability of all such remaining portions, provisions, or parts, which does deprive a Party of a benefit of its bargain.
- Attorneys' Fees not defined.
- Exclusion Deadline not defined.
- CAFA Notice has not been mentioned or defined. (28 U.S. C. 1715(b).)

- Missing is a section addressing Incapacitated or Deceased Class members making the releases materially deficient. The following should be incorporated into the releases: "Claims may be submitted by a legally authorized guardian, executor, or legal representative (collectively, "Representative") of an incapacitated or deceased Class Member upon presentation of a certified copy of the Order of Appointment or equivalent judicial decree establishing the Representative's authority to act on behalf of the incapacitated or deceased Class Member."
- Headings used in the releases constitute part of the Agreement and can be used to help construe the meaning of the Releases.
- Claims deadline missing and not defined.
- Notice is not defined and does not satisfy the requirement of due process, Fed. R. Civ. P. 23(e) (1) and any other applicable law.
- Class members should have been advised in the Notice: "Please be sure to check your email account's spam or junk folder to ensure future messages are not filtered possibly cheating them of future communications including alerting them they have received a credit, sometime in the future.
- The parties never required claimants to affirmatively agree to the release of claims when submitting a claim form even though they were prohibited from even filing a claim until three weeks after the approval for the Sony release! The claim form now available does not reference or incorporate the release into it or are claimants

acknowledging they have read and agree to the release of any claims when considering whether to file a claim, object out or do nothing. The claimants are not releasing any claims against the three defendants. The releases do not bind the claimants in any way shape or form so the defendants do not have a valid binding release making the releases and approval invalid." See www.reversethecharge.com under claim form.

- The Court did not state in the preliminary approval order that it had exclusive original jurisdiction over the federal claim pursuant to § 16 of the Clayton Act (15 U.S.C. § 26) as well original jurisdiction pursuant to 28 U.S.C. § 1331. Or over this entire action pursuant to 28 U.S.C. § 1332(d) because one plaintiff and one defendant are citizens of different states and the amount-in- controversy sought on behalf of the class exceeds $5 million exclusive of interest and costs, or under supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they arise out of a common nucleus of operative facts of the federal claim asserted in this action.
- Claimants cannot electronically submit documents supporting their Claim Forms if requested by the Claims Administrator because the claimant has no right to contest or correct any deficiency in the claim form once it is submitted unless the claimant finds the error themselves, fixes it then resubmits, so the claim can and will be unfairly denied. The administrator is judge and jury.
- The claim by Class Counsel and the administrator that Notice will reach 70% of the 193 million class is laughable, impossible to achieve, can't be proven in any way shape

or form because most of the impressions will be bot viewed only, very few real eye balls will see the electronic notice. This fake claim and is stated solely to gain approval. Doc 1672-4 page 4 at 1-2 It will be fortunate to be a few percentage points if history is a guide. Objector requests that counsel state for the record in their response to objections what an acceptable claims take rate is. 70% of 193 million people is 135 claimants that Class Counsel and the administrator are claiming will see the notice. They rely almost exclusively on "impressions" which is one big con used to gain unjustified approval. (As of this date we still don't know if the Notice Program was successful because it is still ongoing so the approval is being rushed through for the sake of expediency.)

- **Material Issues with the LG Release**

- Since there is no effective date of this agreement on the top of page 2 that error makes the release confusing, ambiguous and invalid.

- Paragraph 30. Cooperation.

  (a) Within a reasonable period of time (but no more than thirty (30) days) after submission by Class Counsel to the Court of a proposed form of notice to the Classes, LG Chem's counsel shall meet with Class Counsel for the purpose of identifying any LG Chem documents that have been produced as of that time that relate to and/or support the allegations in the Third Consolidated Amended Class Action Complaint or that show LG Chem Lithium Ion Battery sales, pricing, capacity or production; provided, however, that such obligation shall not require LG Chem to provide

information protected by the attorney-client privilege, attorney work-product doctrine and/or other similar privileges and shall not waive any such protections or privileges. Response: The fourth line states a "Third Amended Consolidated Amended Complaint" but in reality it should be the "Fourth Consolidated Amended Complaint" that was filed seventeen months later which would obviously have more information and evidence in it so the damages the class receives should now be higher. This is confusing and ambiguous and makes the release invalid.

### Material Issues with the Hitachi Release

The Hitachi Release has the same problem as the LG Release. In Class Counsel's early rush to celebrate they failed to date the document on page 2 at the top making the release confusing and ambiguous and invalid.

### Material Issues with the NEC Release

NEC settlement agreement is dated December 31, 2016 but the signatures are dated January 18, 2017, January 18, 2107 and January 20, 2017 making it unclear, confusing and ambiguous when the parties actually made and agreed to the terms and whether the parties had second thoughts or new evidence came up to halt the process for that three week period.

The objection below was filed in the United States District Court for the Northern District of California Case 4:14-md-02541-CW Document 562 on 02/14/2017. This document address the ambiguous and unclear meaning of numerous terms and unfair conditions created in the three releases rendering the approval defective, reversible and abuse of discretion.

**II. LEGAL ARGUMENT**

**A. Standard for Preliminary Approval Under Rule 23(e)**

Rule 23 requires judicial review of any settlement of the "claims, issues, or defenses of a certified class." Fed. R. Civ. P. 23(e). The decision of whether to approve a proposed class action settlement entails a two-step process, including a preliminary fairness evaluation, and a "fairness" or final approval hearing. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.632 (2004).

Importantly, "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *Tijero v. Aaron Bros., Inc.*, No. C 10-01089, 2012 U.S. Dist. LEXIS 183238, at *20 (N.D. Cal. Jan. 2, 2013) (citing *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008)). The Court's primary concern in reviewing a class settlement agreement must be the "'protection of those class members . . . whose rights may not have been given due regard by the negotiating parties.'" *Stokes v. Interline Brands, Inc.*, No. 12-cv-05527-JD, 2014 U.S. Dist. LEXIS 111734, at *8 (N.D. Cal. Aug. 12, 2014) (citing *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982)).

Preliminary approval and notice of the proposed settlement to the class are appropriate

only when the settling parties demonstrate that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, **has no obvious deficiencies**, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of **possible approval**." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted) (emphasis added); *see also Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on the Final Approval, after such time as any party has had a chance to object and/or opt out.").

Clarification of a release's scope before preliminary approval is critical to avoid an inadequate settlement notice and violation of the identical predicate rule. If a release's scope is clarified after the Court's preliminary approval and after class notice is distributed, a change in the scope could constitute a substantive change in the settlement's terms, impacting class members' rights under the agreement. *See Hendricks v. Starkist Co.*, No. 13-cv-00729 HSG, slip op. at 2-3, ECF No. 336 (N.D. Cal. Feb. 19, 2016) ("*Hendricks* Opinion") (declining final approval settlement approval based on inadequate notice due to a change in the release's scope after preliminary approval). Class notice then fails to satisfy due process requirements because the parties cannot establish that class members were informed of the consequences of remaining in the class or opting out. *Id.* at 3. Settlement Agreements may also release claims "based on the identical factual predicate" as the underlying claims even though the claims were "not presented and might not have been presentable in the class action" at that time. *See Hesse v. Sprint Corp.*, 598 F.3d 381, 590 (9th Cir. 2010). However, as discussed in more detail below, "superficial similarity between the two class actions is insufficient to justify the release of later claims by the

settlement of the former." *Id.* at 591. The fact that both actions in *Hesse* involved Sprint's improper billing of government fees to its customers was insufficient to release claims based on "the identical factual predicate," since the factual predicate in each case was different: "different surcharges, imposed to recoup different costs, that were alleged to be improper for different reasons." *Id. See also Hendricks* Opinion at 6 (declining to approve a final settlement in which the scope of the release differs from the scope of liability alleged based on a similar factual predicate); *Willner v. Manpower, Inc.*, No. 11-cv-02856-JST, 2014 U.S. Dist. LEXIS 123450, at *22 (N.D. Cal. Sept. 3, 2014) (holding that a release of claims that "go beyond the scope of the allegations of the operative complaint" is impermissible).

**B. The Proposed Settlement Has Obvious Deficiencies and Does Not Fall Within the Range of Possible Approval**

Preliminary approval of the proposed settlement must be withheld because it has obvious deficiencies and does not fall within the range of possible approval to the extent it includes an overbroad release of claims that were neither pled nor litigated by Plaintiffs and for which Defendants are paying no consideration. For that reason, the release is woefully overbroad and patently unfair to the class, including Dawson and those he represents in the *Dawson* Action. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . . When the language of the instrument is unambiguous, we determine the parties' intent solely by reference to that language." *PV Little Italy, LLC v. MetroWork Condominium Ass'n*, 210 Cal. App. 4th 132, 145-46, (2012) (internal citations omitted) (interpreting scope of release of developer's rights). In *Operating Engineers' Pension Trust Fund v. Clark's Welding & Mach.*, 688 F. Supp. 2d 902 (N.D. Cal. 2010), this Court similarly held:

> In interpreting an unambiguous contractual provision, the court must give effect to the plain and ordinary meaning of the language used by the parties. *Coast PlazaDoctors Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677, 684, 99 Cal. Rptr. 2d 809 (Ct. App. 2000). Where contract language is clear and explicit and does not lead to absurd results, the court ascertains intent ***from the written terms and goes no further***. *Shaw v. Regents of University of Cal.*, 58 Cal. App. 4th 44, 53, 67 Cal. Rptr. 2d 850 (Ct. App. 1997) . . . . That intent is to be inferred, if possible, ***solely from the written provisions of the contract***. *Id.;* see also 66 Am. Jur. 2d Release § 31 ("The scope of a release is determined by the intention of the parties as expressed through a release's terms considering all the facts and circumstances."). *Id.* at 910 (emphasis added).

The grossly overbroad and defective releases along with the unclear, ambiguous and unfair terms used throughout the four agreements in this case makes the settlements/approval not fair, reasonable, adequate, unenforceable and invalid. This defective, half baked claims process is part of the distribution process and if it isn't it violates due process regardless of what they write. The lack of any claims result or process in this case proves and makes for defective notice.(See Union Asset Mgmt. Holding A.G. v. Dell, Inc., 669 F.3d 632, 641 (5th Cir. 2012).

23. Distribution Plan Not Part of Settlement. It is understood and agreed by the Settling Parties that any Distribution Plan, including any adjustments to any Authorized Claimant's claim, is not a part of this Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Agreement, and any order or proceedings relating to

the Distribution Plan shall not operate to terminate or cancel this Agreement or affect the finality of the Judgment, the Final Approval Order, or any other orders entered pursuant to this Agreement. The time to appeal from an approval of the Settlement shall commence upon the Court's entry of the Judgment regardless of whether either the Distribution Plan or an application for attorneys' fees and expenses has been submitted to the Court or approved. (From LG and the two other releases).

Wait a second here. Objector objects to the parties attempting to break out the terms of the deal that benefits them in this rush for the cash but leaves the class on a wing and a prayer for the important part of the deal, the claims, administration and distribution process. The claims and distribution process are linked and cannot be broken apart simply to satisfy Class Counsel's rush to approve a defective settlement to obtain fees first while the class has nothing and only lots of questions with no protections. So if the claims process is defective that does not make the distribution process defective? It most certainly does, objector and common sense disagree with Class Counsel and so will the 9th Circuit. This has never been done before in 150 settlement agreements the objector has reviewed. Objector repeats this section from above showing what the class is missing in the claims process:

Rights, Duties and Obligations of Class Counsel and the Administrator Regarding Verification Process of Claims, Rights to Cure Deficiencies, Timetable to Effect Those Changes, Appeal Rights of Claims Unfairly Rejected and Notification Procedures to

Claimants that the Claim was Accepted or Denied are all missing. The claims process and the distribution process are linked, like conjoined twins and should not be unfairly separated out of the approval process just so Class Counsel can get a fast payday at the expense of the class. This is an unfair, unreasonable and inadequate clause that voids all the agreements.

The defective settlement releases are not binding on this objector or any class members based on the errors and need to be redone.

## Conclusion

The settlement should be rejected for all the multitude of reasons listed above which prove these settlements are not fair, reasonable and adequate under Rule 23(e). Doing the right thing often isn't the easy thing. In fact, doing the right thing often means doing the hard thing, making the tough and unpopular choice which means rejecting and fixing the issues in this settlement, it needs a do-over. This is a five star, meritorious appeal that will be reversed.

"There is a saying that if something looks like a duck, walks like a duck, and quacks like a duck, then it is probably a duck." In re Sorah, 163 F.3d 397, 401 (6th Cir. 1998).

I certify under penalty of perjury of the United States that all of the above is true and accurate to the best of my knowledge. /s/ Christopher Andrews

Christopher Andrews, Pro Se Objector, PO Box 530394 Livonia, MI 48153-0394 T. 248-635-3810 Email: caaloa@gmail.com, November 20, 2017

## Proof of Service

I hereby certify under the penalty of perjury that on this day November 20, 2017 the objector mailed this Notice of appeal Class Action Clerk U.S. District Court for the Northern District of California, 1301 Clay Street, Oakland California 94612 via USPS Priority Mail and mailed a copy to Hagens Berman via first class mail.

*/s/ Christopher Andrews/*

Christopher Andrews, Pro Se Objector, PO Box 530394 Livonia, MI 48153-0394

Telephone 248-635-3810   Email: caaloa@gmail.com