UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: LITHIUM ION BATTERIES ANTITRUST LITIGATION<br><br>This Order Relates to:<br><br>*Flextronics International USA v. LG Chem, Ltd., et al.* | Case No.13-md-02420-YGR<br><br>And related case No. 16-cv-4018 YGR<br><br>**ORDER GRANTING CERTAIN SETTLING DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AND ENJOIN PROSECUTION OF CLAIMS BY PLAINTIFF FLEXTRONICS INTERNATIONAL USA, INC.; DENYING STAY AS MOOT; AND DENYING CROSS-MOTION TO EXCLUDE FROM DPP CLASS SETTLEMENT**<br><br>Re: 16-cv-4018 Dkt. Nos. 59, 60, 61 |

Presently before the Court are three motions: (1) the motion of Defendants Panasonic Corporation, Panasonic Corporation of North America, SANYO Electric Co., Ltd. and SANYO North America Corporation, Maxell, Ltd. and Maxell Corporation of America, NEC Corporation, and Toshiba Corporation ("Settling Defendants") to Enforce Settlement and Enjoin Prosecution of Claims by Plaintiff Flextronics International USA, Inc. ("Flex USA") (Dkt. No. 59)[1]; (2) Settling Defendants' Motion for Stay Pending Resolution of Certain Defendants' Motion to Enforce Settlement Agreements and Enjoin Prosecution of Claims (Dkt. No. 60); and Flex USA's Cross-Motion for An Order Excluding Flex USA from Settlements between the Direct Purchaser Class and Settling Defendants (Dkt. No. 61).

---

[1] Docket references are to the individual case (16-cv-4018) ECF docket unless otherwise stated.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court **GRANTS** Settling Defendants' motion to enforce the settlement and enjoin Flex USA from further prosecution of its claims against them. For those same reasons, Flex USA's cross-motion is **DENIED**. In light the Court's ruling, Settling Defendants' motion for a stay pending decision on the motion to enforce the settlement is **DENIED AS MOOT**.

Settling Defendants' motion seeks to enforce the terms of their class action settlement agreements with the direct purchaser plaintiffs (DPPs) in this multi-district litigation, which were finally approved by this Court, and judgments entered thereon, on September 5, 2017. (MDL Dkt. Nos. 1940, 1941, 1942, 1943, 1944, 1945, 1946, 1947.) Specifically, Settling Defendants seek to enjoin Flex USA, as a member of the DPP class, from prosecuting claims that were released by those settlement agreements. The settlement agreements, and final approval orders, provide that any member of the settlement class who failed to make a valid, timely request to be excluded is bound by the provisions of the settlement agreement. The judgments entered were final judgments as to all claims within the scope of the releases in the settlement agreements.

Flex USA offers two arguments in opposition: (1) its tardy request for exclusion from the class settlements should be permitted based upon its excusable neglect; and (2) even if it is not excluded from the settlements, not all of its claims are covered by the releases in those settlement agreements. The Court considers each argument in turn.

## I. RELIEF FROM TARDY REQUEST FOR EXCLUSION DUE TO EXCUSABLE NEGLECT

As to the excusable neglect issue, it is undisputed that Flex USA failed to make a timely request for exclusion from the settlement classes, making it bound by the provisions of the Settlement Agreements and the Final Judgments. The standard for determining whether to permit a class member to opt out after the Court-ordered deadline has passed is whether Flex USA has shown that its failure to comply was the result of "excusable neglect" consistent with Rule 6(b)(2) of the Federal Rules of Civil Procedure. In making such a determination, courts in the Ninth Circuit consider the factors identified by the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993). Those factors include: (1) the danger of

1  prejudice to nonmoving parties; (2) the length of delay in seeking relief; (3) the reason for the
2  delay; and (4) whether movant acted in good faith. *Id*.

Taking the reason for delay factor first, here, Flextronics USA's counsel does not offer a plausible reason for its failure to opt-out by the June 26, 2017 deadline. Flex USA did not request exclusion until October 16, 2017, nearly four months after the opt-out deadline and more than six weeks after the final approval hearing. As reason for its delay, it offers only that the notice identified its Chicago-based counsel as the recipient, but was mailed directly to Flex USA's San Jose, California headquarters and was not forwarded. Counsel states that he inadvertently failed to monitor other potential sources of notice, but this is no more than neglect, not excusable neglect. Flex USA would have received notice from multiple sources, including notice mailed to the many affiliates that assigned their claims to Flex USA, as well as through its ongoing participation in the MDL and receipt of notices of filing of the preliminary approval motion and preliminary approval order, not to mention the final fairness hearing and entry of judgments. Similar to the *In re CRT* case, counsel here received notice at the same address that had been effective to prompt a request to opt out of the earlier Sony settlement. Moreover, Flex USA was actively involved in the litigation and receiving notifications of filings. "Inadvertence and miscommunication are insufficient excuses." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, Case No. C-07-5944-SC, 2014 WL 4181732, at *3 (N.D. Cal. Aug. 20, 2014).

Unlike other cases where a late opt-out has been permitted, Flextronics offers no evidence of any misinformation about the deadline to opt out, or that it otherwise attempted to communicate its intention to opt out. The assertion that it continued to participate in some aspects of the litigation, including case management discussions and individual settlement discussions, does not rise to the level of the "reasonable indication" circumstances discussed in the *In re TFT-LCD/Flat Panel* litigation. By contrast, there, the court found that a blanket opt-out request sent by one class member applied to the company's wholly-owned subsidiary. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 37 F. Supp. 3d 1102, 1106 (N.D. Cal. 2014). Flextronics offers no evidence of such a blanket opt-out request here. Although Flextronics requested exclusion from the initial

settlement with the Sony defendants in this action, it only asked for notices to be sent to counsel regarding any future settlements.

The other *Pioneer* factors do not tip the balance in favor of relief. The delay here is greater than in the situations in *In re CRT*, 2014 WL 4181732, at *2 (4 weeks' delay) and in *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2009 WL 2447802 (N.D. Cal. Aug. 7, 2009) (2 months' delay), both of which were found to weigh against relief. Granting the late exclusion would prejudice both Settling Defendants' and the DPP class's interests in the finality of the judgments, as well as the expeditious resolution of the settlement distribution approved by the Court. Flex USA appears to be acting in good faith, and not for tactical reasons, in its failure to opt out timely. However, the balance of the factors here does not establish excusable neglect sufficient to allow Flex USA's long delayed request for exclusion.

Flex USA's argument that the class action settlement was not properly determined to be fair and reasonable under Rule 23 because the Court did not consider the value of the foreign purchase claims the settlement extinguishes, does not persuade. No objections to the settlement were made on this basis, though presumably many other class members would have had claims based upon foreign purchases falling into one of the FTAIA exceptions as well.[2] The operative complaint included claims based upon a "direct, substantial and reasonably foreseeable effect" on domestic or import commerce, mirroring the FTAIA's language about claims covered by the Sherman Act. (MDL Dkt. No. 415, DPP SCAC ¶74.) The settlement agreement apparently was drafted to include viable Sherman Act claims, including those permitted under the FTAIA amendments' import commerce and "domestic effects" exceptions.[3] Based on the record at the time of the settlement, the Court had no reason to believe that the settlement terms and amount for

---

[2] The Court notes that Flex USA did not file any timely objection to the settlements.

[3] While Flex USA contends that its damages for overcharges based upon its "worldwide" purchases would constitute some 23% of the total settlement, and that its pro-rata share would only equate to about 1% of the total value of its claims, the basis for those numbers is not apparent from the record here.

4

these defendants were not fair and reasonable, nor does it have reason to doubt the fairness and reasonableness now.[4]

## II. SCOPE OF THE RELEASES

Flex USA further argues that the releases in the four settlement agreements at issue do not encompass all their claims in this litigation against the Settling Defendants, and therefore further litigation of this action should not be enjoined. Specifically, Flex USA contends that it has claims, against Settling Defendants, including claims assigned to it by its affiliates, for "foreign purchases" that are not covered by the scope of the releases.

The settlement agreements here all contain essentially the same language regarding the scope of the released claims:

> [¶ 13. T]he Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, claims, causes of action, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to any act or omission of the Releasees (or any of them) that is alleged in the Complaint up to the date of the execution of this Agreement or that could have been alleged in the Complaint or in any other complaint filed in the Action . . . . For purposes of clarity, the Released Claims include any claims under foreign antitrust or competition laws or state antitrust or competition laws that relate to or arise out of the subject of the Plaintiffs' Complaint, ***but do not include any foreign antitrust or competition law claims*** or any state law indirect purchaser claims that relate to or arise out of the sale of Li-Ion Cells, Li-Ion Batteries or Li-Ion Products that: (a) were not purchased from a Defendant, a subsidiary or affiliate of a Defendant, or an alleged coconspirator in the Action; or (b) ***were not billed to or shipped to the United States***.

\*\*\*

---

[4] Flex USA contradicts itself by first arguing that the class damage estimates by Dr. Roger Noll were flawed because they only captured "damages arising from domestic purchases" (Reply on Cross-Motion, Dkt. 65, at 6:7-9), but then arguing that the report was flawed because it "*includ[ed]* foreign purchase data" (*id.*, at 6:24-36, emphasis supplied).

5

> [¶ 15.] The release, discharge, and covenant not to sue set forth in Paragraph 13 of this Agreement does not include claims by any of the Class Members other than the Released Claims and does not preclude Class Members from pursuing claims based on indirect sales or foreign sales of Li-Ion Cells, Li-Ion Batteries or Li-Ion Products *so long as such claims are not based on the same purchases included as part of the Released Claims defined in Paragraph 13*.

(*See, e.g.,* Panasonic Settlement, MDL Dkt. No. 1707-4, at ¶¶ 13, 15, emphasis supplied.) Thus, the settlements cover all claims, including all foreign purchase claims, based on the allegations in the DPPs' operative complaint *unless* those claims are brought under foreign law *and* concern products that were *not billed to or shipped to* (or in the case of the Hitachi Maxell Agreement, "not *sold* in") *the United States*. (*See* Panasonic Agreement ¶ 13, NEC Agreement ¶ 13, Hitachi/Maxell Agreement ¶ 13, Toshiba Agreement ¶ 15.) Paragraph 15 of the agreements (paragraph 17 in the Toshiba Agreement) does not result in any ambiguity, but rather emphasizes that the release does not preclude class members from bringing claims based on foreign purchases under foreign law, so long as they are not based on the same purchases included in the released claims.

The language included in the releases appears to be the parties' attempt to carve out certain claims that would not be covered by the Sherman Act, as amended by the FTAIA. The FTAIA, 15 U.S.C. § 6a, removes overseas transactions and business arrangements from the purview of the Sherman Act "*unless* those activities adversely affect domestic commerce, imports to the United States, or exporting activities of one engaged in such activities within the United States." *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 161 (2004). Contrary to Flex USA's argument that one paragraph addresses foreign *law* and the other addresses foreign *purchases*, both paragraphs consistently preclude claims: (1) *based upon foreign law* for (2) purchases of products not *billed to or shipped to (or sold in)* the United States.

When the Court denied defendants' motion to dismiss Flex USA's complaint for failure to allege purchases cognizable under the FTAIA, it did so based on Flex USA's allegations and arguments that a substantial portion of the purchases at issue for Flextronics and its affiliates were shipped to the United States or otherwise met the definition of "import trade or commerce," and thus were cognizable under the Sherman Act. (*See* Order Denying Motion to Dismiss, Dkt. No.

40, at 7-8; *see also* Flex USA's Opposition to Motion to Dismiss, MDL Dkt No. 1677, at 16:15-22 [detailing allegations that a substantial portion of its purchases were "intended for and shipped to the United States"].) Moreover, the Court denied the motion to dismiss Flex USA's claims based upon purchases made outside the United States on timeliness grounds, accepting Flex USA's argument that the statute of limitations on those claims was tolled under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). (Order Denying Motion to Dismiss at 4:17-5:3.) Flex USA argued strenuously that *American Pipe* applied because its claims were identical to the claims pursued by the DPP class, arose from the same nucleus of operative facts, and relied on the same law. (Flex USA's Oppo. to Motion to Dismiss at 10:1-24.) The operative DPP complaint included allegations regarding purchases under the FTAIA's import and domestic effects exceptions. (*See* DPP Second Consolidated Amended Complaint, MDL Dkt No. 415, at ¶ 74.) That these same claims would now be released in conjunction with the class settlement of DPPs' Sherman Act claims follows logically.[5]

Based on the foregoing, the Court **GRANTS** Settling Defendants' motion to enforce the settlement. Flex USA is enjoined from further prosecution of its claims against Settling Defendants in this action. Flex USA's cross-motion is **DENIED**. The Settling Defendants' motion for a stay pending decision on the motion to enforce the settlement is **DENIED AS MOOT**.

This terminates Docket Nos. 59, 60, and 61.

**IT IS SO ORDERED.**

Dated: December 19, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**

---

[5] To the extent that Flex USA contends its claims in this action are based upon purchases of lithium-ion batteries, cells, or products not covered by the terms of the releases (*i.e.*, based upon foreign law and not billed to or shipped to [or in the case of the Hitachi Maxell Agreement "sold in"] the United States), such claims would not be included in scope of the settlement agreement.

7