# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: LITHIUM ION BATTERIES ANTITRUST LITIGATION** | Case No.: 13-MD-2420 YGR<br>**ORDER DENYING IPPS' RENEWED MOTION FOR CLASS CERTIFICATION; GRANTING MOTION TO STRIKE EXPERT REPORT OF EDWARD E. LEAMER, PH. D.**<br><br>**DKT. NOS. 1960, 2022** |
| **This Order Relates to:**<br><br>**All Indirect Purchaser and Direct Purchaser Actions** | |

Indirect purchaser plaintiffs ("IPPs") bring this renewed motion for class certification after the Court previously denied their motion for class certification without prejudice. (*See* Dkt. No. 1960.) The antitrust action herein is brought on behalf of indirect purchasers of lithium ion battery ("LIB") cells, who allege a multi-year, international conspiracy fixing prices of those cells among Japanese and Korean manufacturers and their American subsidiaries.[1] In connection with the renewed motion, IPPs submit a new report of their expert, Dr. Edward E. Leamer. Defendants have moved to strike or exclude Dr. Leamer's new report. (Dkt. No. 2022.)

The Court, having considered the admissible evidence, the papers in support and in opposition to the motion, the pleadings, and the oral arguments of the parties, and for the reasons stated herein, **ORDERS** as follows:

1. IPPs' Renewed Motion for Class Certification is **DENIED**; and

2. the Motion of Panasonic and Sanyo to Strike the Proposed Expert Testimony of Dr. Edward E. Leamer (Dkt. No. 2022) is **GRANTED** with respect to his focal point pricing analysis and

---

[1] As of the time of the hearing on these motions, the non-settling defendants in the IPP action were Samsung SDI and Panasonic/Sanyo. (*See* Dkt. No. 2124.)

his regressions with respect to camcorder and power tool pass-through rates. As the Court finds these issues fatal to the renewed motion for class certification, the remainder of the motion to strike is **MOOT**.

I.  **BACKGROUND**

The Court previously denied class certification without prejudice based upon IPPs' failure to establish antitrust impact, including pass-through of overcharges to IPPs, as well their failure to put forth a reliable model for determining damages to the putative class. In conjunction with that motion, the Court granted in part defendants' motion to strike the proposed testimony of Dr. Edward E. Leamer. The Court rejected many of defendants' arguments for excluding Dr. Leamer's analysis, including that: (1) he should have used a random sample of the class data; (2) averaging or aggregating data in the pass-through analysis was improper; (3) the confidence levels in his analysis made it unreliable; and (4) the data collection and failure to perform additional statistical tests made the data unreliable. (Prior Order at 17-18.) However, the Court agreed that Dr. Leamer's pass-through analysis did not include data from a sufficient variety of class members and product categories to find a reliable pass-through rate applicable to the class, particularly with respect to the packer level of the distribution chain. (*Id.* at 19.) In conjunction with the original motion, Dr. Leamer had only analyzed data from one pack of prismatic LIBs, not the cylindrical batteries and the products included in the proposed class definition. (*Id.*) In addition, Dr. Leamer's analysis acknowledged that the data used in his analysis could be affected by two phenomena— first, bundling, rebates, and discounts, and, second, focal point pricing strategies—but his analysis did not explain how they would affect his analysis of pass-through or his calculation of damages. (*Id.*)

IPPs now make a renewed motion for certification accompanied by additional analysis and opinions of Dr. Leamer. IPPs now seek to certify a narrowed Rule 23(b)(3) class under California law, defined as follows:

> All persons and entities who, as a resident of Alabama, Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota,

2

Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, or Wisconsin. and during the period from January 1, 2000 through May 31, 2011, indirectly purchased new for their own use and not for resale one of the following products which contained a lithium-ion cylindrical battery manufactured by one or more defendants or their coconspirators: (i) a portable computer; (ii) a power tool; (iii) a camcorder; or (iv) a replacement battery for any of these products. Excluded from the class are any purchases of Panasonic-branded computers. Also excluded from the class are any federal, state, or local governmental entities, any judicial officers presiding over this action, members of their immediate families and judicial staffs, and any juror assigned to this action.

IPPs also move for certification of the following class of government entities:

All non-federal and non-state governmental entities in California that, during the period from January 1, 2000 through May 31, 2011, indirectly purchased new for their own use and not for resale one of the following products which contained a lithium-ion cylindrical battery manufactured by one or more defendants or their co-conspirators: (i) a portable computer; (ii) a power tool; (iii) a camcorder; or (iv) a replacement battery for any of these products. Excluded from the class are any purchases of Panasonic-branded computers. Also excluded from the class are any federal or state governmental entities, any judicial officers presiding over this action, members of their immediate families and judicial staffs, and any juror assigned to this action.

In support of their renewed motion, IPPs offer a Supplemental Expert Report of Dr. Edward E. Leamer, as well as a Supplemental Expert Reply Report, submitted with their class certification reply briefing. (Dkt. Nos. 1690-9 ["Leamer III"], 2044-2 ["Leamer IV"].) Dr. Leamer has updated his analysis to address the packer pass-through issue, utilizing new data obtained from third parties, as well as other documentary evidence, to show that pricing was closely coordinated between defendants and packers. Dr. Leamer's supplemental report also addresses the effects of rebates, bundles, and discounts on pass-through, as well as the effects of focal point pricing on pass-through and damages. Dr. Leamer provides an updated damage calculation, taking into account the additional work done on pass-through. The calculation apportions the damages estimates in his original report to the class members in the thirty states permitting actions by indirect purchasers. It applies a 100 percent pass-through rate, yielding a damages estimate of approximately $573 million for the proposed class. (Leamer III, ¶¶ 105-106, Figure 31.)[2]

---

[2] Dr. Leamer also indicates that the damages calculation could be based properly on the individual pass-through rates for the different product types in his analysis instead.

Defendants Panasonic and Sanyo again move to strike Dr. Leamer's proposed testimony as unreliable. They oppose class certification on largely the same grounds as they seek to preclude Dr. Leamer's testimony, including that he offers no reliable method for proving pass-through in the presence of focal point pricing.[3]

## II. DISCUSSION

The Court addresses the interrelated issues of the admissibility of Dr. Leamer's opinions on pass-through of the antitrust overcharge and resulting damages, and whether those opinions support class certification. The Court finds that Dr. Leamer's opinion his estimate of 100% pass-through at each level of the supply chain does not adequately account for the effects of focal point pricing, and therefore fails to yield reliable conclusions. As a result, IPPs cannot meet their burden to show antitrust impact and damages can be established on a class-wide basis.

In a class of indirect purchasers, proof of class-wide antitrust impact is made more complex because plaintiffs must offer a model of impact and damages that demonstrates the alleged overcharge was passed through to each successive link in the distribution chain, and ultimately to the plaintiffs. *See In re Static Random Access memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 613 (N.D. Cal. 2009); *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 499 (N.D. Cal. 2008). At the class certification stage, the Court does not make an ultimate determination of the admissibility of an expert's report for purposes of a dispositive motion or trial. *Dukes v. Wal–Mart Stores, Inc.* (*Dukes II*), 603 F.3d 571, 602 n. 22 (9th Cir. 2010) *rev'd on other grounds* by 564 U.S. 338 (2011); *Millenkamp v. Davisco Foods Int'l, Inc.,* 562 F.3d 971, 979 (9th Cir. 2009). Rather, the court considers only whether the expert evidence is "useful in evaluating whether class certification requirements have been met." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 495–96 (C.D. Cal. 2012) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir.

---

[3] Defendants also moved to strike Dr. Leamer's testimony on grounds that: (1) his pass-through analyses does not represent sufficiently the entire distribution chain for all the products within the class definition; (2) he fails to account for third-party LIB packers in his pass-through analysis; and (3) his analysis fails to account sufficiently for the effect of rebates, discounts, and bundling on pass-through rates. In addition to the expert testimony issues, defendants also opposed the renewed class certification motion on the grounds that the revised class definition creates due process and manageability issues that preclude certification.

4

2011)); *see also Rai v. Santa Clara Valley Trans.*, 308 F.R.D. 245 (N.D. Cal. 2015). At class certification, "the relevant inquiry is a tailored *Daubert* analysis which scrutinizes the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence." *Rai*, 308 F.R.D. at 264. Further, the Ninth Circuit recently affirmed its longstanding rule that "uncertain damages calculations should not defeat certification . . . . as long as a valid method has been proposed for calculating those damages." *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017).[4] At the same time, given that discovery in this matter is nearly concluded, the evidence here is fairly well-developed.

Here, Dr. Leamer's analysis still falls short in explaining how, and how much, focal point pricing affects the pass-through rate for the OEM and retailer points in the distribution chain. Dr. Leamer's opinion that focal point pricing will lead to quality adjustments for other components by laptop OEMs raises more questions than it answers on these topics. Not only does the opinion fail to clarify the effects for each step in the chain, it leaves too much uncertainty as to whether pass-through can be estimated reliably at 100% as to retailers or distributors farther down the supply chain, and ultimately to the consumers who make up the proposed class.

Defendants contend that focal point pricing is prevalent in the pricing of products within the class definition, and will result in no pass-through when a small cost change—such as the estimated $2.16 overcharge for a notebook computer battery here—in presence of focal points that are wider apart than the cost difference itself. They cite evidence in the literature that retailers use focal points or price points, and that certain focal points, such as prices ending in the digit "9," increase consumer demand. Retailers thus may assign products with small to moderate differences in costs to the same price point despite cost differences, or may not move a given product to the next higher price point in response to relatively small cost increases. (Haider II at ¶¶ 21-26.) Defendants argue

---

[4] *Lambert* acknowledged and harmonized the change in law worked by *Comcast v. Behrend*, in which the Supreme Court held that class certification required a "rigorous analysis" to determine that plaintiffs offer a valid damages model. *See Comcast v. Behrend*, 569 U.S. 27, 35 (2013). This stands in contrast to pre-*Comcast* decisions allowing class certification based an inquiry "limited to whether or not the proposed methods are so insubstantial as to amount to no method at all." *SRAM*, 264 F.R.D. at 615.

5

that this pricing strategy results in class members who purchased at a focal point price and experienced no overcharge attributable to the battery cost.

Dr. Leamer opines that, to the extent that focal point pricing occurs, battery overcharges will result in quality reductions. That is, if battery costs had not been artificially propped up by the alleged price-fixing conduct, a laptop sold at a particular price point would have included higher quality components to maintain the price point in a highly competitive market. (Leamer III ¶¶ 58-60, 63.) He further opines that, to the extent focal point prices are used, their shelf-life is usually very short, "generally under a year" because products are put on sale or phased out rapidly with constant advances in technology. (Leamer III ¶ 64.)

Dr. Leamer performed hedonic regressions on two datasets from HP and Acer which, he contends, demonstrate that constant improvements in notebook computers over time, combined with declining feature costs and use of focal point prices, would result in 100 percent pass-through by way of quality adjustments to other components. (Leamer III, ¶¶ 86-90, Fig. 20-23.) If notebook computer OEMs design towards specific price points, the effect of overcharging for batteries will be to reduce the quality of the other components delivered to the ultimate customer. On reply, Dr. Leamer offers an additional supplemental report utilizing data from ten retailers to estimate a pass-through for the relationship between costs and prices at focal points, *i.e.* if the cost of a product decreases, will the price stay the same or be moved to a focal point $9.00 lower? (Leamer IV ¶ 13, Fig. 1-3.) Dr. Leamer contends this analysis showed an approximately one-to-one relationship between costs and focal point prices for notebooks, camcorders, and power tools. Thus, he opines that the competitive pressures on OEMs to improve productivity and lower fixed costs would have been the same in the but-for and the actual world, and the effects on pass-through, whether measured as a difference in the price paid or the monetized value of quality reductions, would be 100% of the overcharge. (Leamer IV at ¶¶ 11-13, 21.)

Defendants argue that Dr. Leamer's analysis does not establish whether such quality-based "pass through" ever occurred, or in what amounts, and that his analysis is pure theory without any factual support. The Court agrees. While Dr. Leamer offers various kinds of statistical data analyses to support his economic theory of quality adjusted pricing, these analyses do not

demonstrate that any products (and thus the purchasers of those products) actually experienced a quality reduction, rather than an increased cost, as a result of the alleged price-fixing conspiracy. As he concedes, Dr. Leamer's hedonic equations are offered only to show the *opportunities* for design changes in response to focal point prices, not actual changes. (Leamer IV ¶ 22.) His analysis of when cost increases result in focal point price increases seems to demonstrate little more than that product cost changes correspond to product price changes, an unsurprising result. (Leamer IV ¶ 13, Fig. 2, 3.)[5]

Moreover, assuming that consumer class members experienced quality reductions rather than price differences, Leamer does not explain how the existence of those quality reductions affects the reliability of his prior overcharge pass-through regression calculations.[6] Those calculations were based on actual cost and price data for different points along the distribution chain for the products at issue. If the relationship between the cost and price data was skewed by the effects of artificially holding the price constant, while changing the quality of the product obtained for that price, how then should Dr. Leamer's previous cost/price regressions be interpreted? Dr. Leamer does not explain how the quality adjustments—which logically would occur at the OEM level of the distribution chain—would affect pass-through rates for points later in the distribution chain, particularly the retailer level where the pricing decisions would be most volatile and, seemingly, most likely to be affected by the focal point pricing strategy.

IPPs offer the fall-back position that if, as defendants contend, focal point pricing is so prevalent, it supports finding common issues. However, regardless of whether focal point pricing is

---

[5] To the extent this analysis was meant to explain some relationship other than just cost to price, Dr. Leamer's very brief description of his analysis fails to offer any such explanation. (Leamer IV ¶ 13. ["[t]hese pass-through estimates are clustered around 100% and confirm that there is generally a one-for-one difference in total costs corresponding with any difference in focal point prices for notebooks, camcorders, and power tools (*e.g.*, if two focal points ending in 9 differ by $10, the corresponding costs also differ by $10)"].)

[6] The circularity of IPPs' proffered analysis is nowhere more apparent than in Dr. Leamer's response to Dr. Haider's argument that his model lacks a methodology for assessing the effects of quality adjustment resulting from an alleged overcharge, in which Dr. Leamer replies that "the best measure of quality impact is the cost impact, *i.e.*, the overcharge." (Leamer IV ¶ 24.)

7

limited or prevalent for products purchased by the putative class members, its effects on IPPs' ability to demonstrate pass-through, and to quantify it for purposes of damages, are not explained adequately by Dr. Leamer. Having failed to provide an explanation for the effect of focal point pricing on the pass-through analysis previously calculated, the Court cannot find that the antitrust injury to the class can be determined on a common basis as to the putative class.[7]

### III. CONCLUSION

For the reasons stated herein, the Court **ORDERS** that:

1. The IPP Plaintiffs' Renewed Motion for Class Certification (Dkt No. 1960) is **DENIED**.

2. The Motion of Panasonic and Sanyo to Strike the Proposed Expert Testimony of Dr. Edward E. Leamer (Dkt. No. 2022) is **GRANTED.**

This Order terminates Docket Nos. 1960 and 2022.

**IT IS SO ORDERED**.

Dated: March 5, 2018

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[7] Because the Court finds this shortcoming in Dr. Leamer's analysis to be fatal to the viability of class certification, it declines to reach the additional critiques raised by defendants' motion to exclude and in opposition to class certification.