

Shana E. Scarlett
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 HEARST AVENUE, SUITE 202
BERKELEY, CA 94710
www.hbsslaw.com
**Direct (510) 725-3032**
shanas@hbsslaw.com

July 11, 2018

<u>VIA ECF</u>

Honorable Yvonne Gonzalez Rogers
United States District Court
Oakland Courthouse, Courtroom 1 - 4th Floor
1301 Clay Street, Oakland, CA 94612

      Re: *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420-YGR (N.D. Cal.)
          <u>Pre-Filing Conference re Defendants' Motions for Summary Judgment</u>

Dear Judge Gonzalez Rogers:

    Pursuant to this Court's Standing Order in Civil Cases, the indirect purchaser plaintiffs (IPPs) respond to Panasonic Corporation, Panasonic Corporation of North America, SANYO Electric Co., Ltd., and SANYO North America Corporation's (together, Defendants) letter requesting 105 total pages of briefing for summary judgment on various issues.

    Defendants fail to acknowledge this Court's prior rulings on choice of law and standing, which preclude several of their arguments, and allow the remainder to be addressed on a truncated basis. Defendants also fail to mention the inevitable *Daubert* motion or motions that they will bring against IPPs' testifying experts, which will substantially overlap with their proposed arguments about damages. IPPs respectfully suggest that a single 25-page motion on both summary judgment and *Daubert* issues will adequately serve Defendants' purposes.

**A.  Common proof may be used to prove individual harm.**

    Defendants suggest that to show impact and damages, IPPs cannot rely on generalized proof, including econometric analysis based on aggregate data. This is incorrect. *First*, this argument overlooks copious non-expert record evidence supporting an inference of impact and damages – all of which the jury may consider. This evidence includes public statements, documents and testimony of packers, OEMs, and members of the conspiracy. *Second*, as leading treatises recognize, econometric measurements play "a central role in modern antitrust litigation . . . and economic experts are regularly the star witnesses in court and before the enforcement agencies."[1] Regression models have been used in a variety of contexts – both individual and class actions – to demonstrate impact and injury.[2] As the Supreme Court held in *Tyson Foods, Inc. v. Bouaphakeo*, a

---

[1] *See* ABA Section of Antitrust Law, Econometrics, xiii (2d ed. 2014).

[2] *See, e.g.*, *Bazemore v. Friday*, 478 U.S. 385, 398-401 (1986) (statistical analysis of "average black employee" data in discrimination case supports inference of individual injury). *See also In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 21, 42 (1st Cir. 2013) ("regression analysis is a well recognized and scientifically valid approach . . . and courts have long permitted parties to use statistical data to establish causal relationships" in class actions and many other settings) (collecting cases); *In re High*

"representative or statistical sample, like all evidence, is a means to establish or defend against liability. Its permissibility turns not on the form a proceeding takes – be it a class *or individual action* – but on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action."[3] (Emphasis added.)

Defendants likewise question whether sufficient evidence exists to support an injunction against ongoing or prospective harm. The Clayton Act requires only that a plaintiff "'demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur.'"[4] Defendants are repeat cartelists – having participated in a litany of price-fixing cartels, including the CRT and ODD conspiracies.[5] As recently as March 2017, Panasonic disciplined one of its employees who participated in this cartel, making its participation far from ancient history. Courts have rejected the argument offered by Defendants here: that despite their guilty pleas for participation in this cartel, there is no risk of continuing harm. In *In re Vitamin C Antitrust Litigation*, the court entered a ten-year injunction despite the end of the conspiracy seven years prior.[6] As another court noted, "a permanent injunction almost by definition must rest on outdated facts, those facts presented at the earlier trial and developed through even earlier discovery."[7] Allowing otherwise would incentivize antitrust defendants to prolong proceedings to increase the likelihood of escaping injunctive sanctions.

**B. The FTAIA does not bar the plaintiffs' claims for overcharges on finished products.**

*First*, IPPs do not agree that the Foreign Trade Antitrust Improvements Act (FTAIA) limits claims under the Cartwright Act or other state antitrust laws. The "unbroken line of cases" advanced by Defendants is no such thing: one of their main authorities explicitly deferred the question and has yet to rule on it,[8] and other cases have given scant analysis or simply assumed that the FTAIA applied *arguendo* before concluding it did not affect the case at bar.[9]

*Second*, the FTAIA allows consumers to recover damages resulting from the overseas sales of finished products containing a price-fixed component (such as an LIB). Under the "import commerce" exception, the Ninth Circuit made clear in *United States v. Hui Hsiung* that it is not

---

*Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 660-61 (7th Cir. 2002) (permitting use of regression analysis to show causation in antitrust case).

[3] *Tyson Foods, Inc. v. Bouaphakeo*, _U.S._, 136 S. Ct. 1036, 1046 (2016).

[4] *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC) (JO), 2013 U.S. Dist. LEXIS 169083, at *21 (E.D.N.Y. Nov. 25, 2013) (internal citation omitted).

[5] Fourth Amended Complaint, ¶ 322, Mar. 18, 2016, ECF No. 1168 (ODD and CRT).

[6] *In re Vitamin C Antitrust Litig.*, 2013 U.S. Dist. LEXIS 169083, at *22.

[7] *In re Data Gen. Corp. Antitrust Litig.*, No. 369 (MHP), 1986 U.S. Dist. LEXIS 22076, at *13 (N.D. Cal. July 30, 1986).

[8] *In re Capacitors Antitrust Litig.*, No. 14-cv-03264, 2016 WL 5724960, at*8 (N.D. Cal. Sept. 30, 2016).

[9] *See*, *e.g.*, *Amarel v. Cornell*, 202 Cal. App. 3d 137, 149 (1988) ("Thus, the most the [FTAIA] does to state law is to establish an 'effects' test for application of the state's antitrust and unfair competition laws to *export activity*.") (Emphasis added.)

Honorable Yvonne Gonzalez Rogers
July 11, 2018
Page 3

necessary that a conspirator have physically imported the price-fixed good itself directly into the United States.[10] "It is sufficient that a conspiring defendant negotiated to set the price of a good that was imported into the United States, even if that good was sold by another conspirator or imported by someone else" – including where the price-fixed good is a component of the finished product.[11]

Similarly, the "domestic effects" exception to the FTAIA applies even if conspirators first sold a price-fixed component ultimately incorporated into a finished product abroad, where the prices paid in the U.S. follow "as an immediate consequence of" defendants' price-fixed foreign sales.[12] Multiple courts in this District (and in other circuits) have rejected the same argument Defendants make here: that the distribution chain made any effect on U.S.-commerce too attenuated.[13] Likewise, these same courts found substantial effects on U.S. commerce for similarly sized component parts.[14] Defendants raise no arguments that other courts in this District have not extensively addressed.

**C. Defendants should not be allowed to re-litigate the legal question of antitrust standing.**

Defendants request a separate 15-page motion on the question of antitrust standing, but do not even reference this Court's prior rulings. In its first order denying class certification, this Court conducted an extensive choice of law analysis and found that non-California residents could bring claims under the Cartwright Act. The Court specifically directed the parties to take this analysis into consideration in future filings. The Court has also already held that California courts would not apply *Associated General Contractors* to limit Cartwright Act claims in the manner suggested by Defendants.[15] Defendants have offered no intervening change in law justifying re-analyzing these arguments. Furthermore, Defendants' "causation" argument is simply a re-hash of the arguments they wish to make about pass-through analysis, and their "duplicative recovery" argument has absolutely no basis in law.[16] The request for a separate 15-page motion on standing should be denied.

---

[10] *United States v. Hui Hsiung*, 778 F.3d 738, 756 (9th Cir. 2014).

[11] *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2016 U.S. Dist. LEXIS 136420, at *81 (N.D. Cal. Sep. 30, 2016).

[12] *Hsiung*, 778 F.3d at 758.

[13] *CRT*, 2016 U.S. Dist. LEXIS 136420, at *84; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 822 F. Supp. 2d 953, 966 (N. D. Cal. 2011); *see also Lotes Co., Ltd. v. Hon Hai Precision Indus. Co.Ltd.*, 753 F.3d 395 (2nd Cir. 2014) (finding that "[t]his kind of complex manufacturing process is increasingly common in our modern global economy, and antitrust law has long recognized that anticompetitive injuries can be transmitted through multi-layered supply chains. Indeed, the Supreme Court has held that claims by indirect purchaser are 'consistent with the broad purposes of the federal antitrust laws: deterring anticompetitive conduct and ensuring [] compensation. . . .'") (internal citation omitted).

[14] *In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311, 322 n.8 (N.D. Cal. 2014) (average overcharge on an ODD is around $4); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-02143-RS, (N.D. Cal. Dec. 18, 2017), ECF No. 2706 (ruling FTAIA barred only claims asserted by plaintiffs HP and Dell for computers sold outside the United States to foreign consumers and never imported).

[15] *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 141358, at *83 (N.D. Cal. Oct. 2, 2014) (declining to conclude "that California applies *AGC*").

[16] *See, e.g.*, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1093 (N.D. Cal. 2007) ("Duplicative recovery is, in many if not all cases alleging a nationwide

Honorable Yvonne Gonzalez Rogers
July 11, 2018
Page 4

| By *s/ Shana E. Scarlett* | By *s/ Brendan P. Glackin* | By *s/ Adam J. Zapala* |
|---|---|---|
| SHANA E. SCARLETT | BRENDAN P. GLACKIN | ADAM J. ZAPALA |

Steve W. Berman (*Pro Hac Vice*)
Jeff D. Friedman (173886)
Shana Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Tel: (510) 725-3000
Fax: (510) 725-3001
steve@hbsslaw.com
jefff@hbsslaw.com
shanas@hbsslaw.com

Elizabeth J. Cabraser (083151)
Eric B. Fastiff (182260)
Brendan P. Glackin (199643)
Lin Y. Chan (255027)
Michael K. Sheen (288284)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: (415) 956-1000
Fax: (415) 956-1008
ecabraser@lchb.com
efastiff@lchb.com
bglackin@lchb.com
lchan@lchb.com
msheen@lchb.com

Joseph W. Cotchett (36324)
Adam J. Zapala (245748)
Adam M. Shapiro (267429)
Tamarah Prevost (313422)
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
jcotchett@cpmlegal.com
azapala@cpmlegal.com
ashapiro@cpmlegal.com
tprevost@cpmlegal.com

*Counsel for Indirect Purchaser Plaintiffs*

---

conspiracy with both direct and indirect purchaser classes, a necessary consequence that flows from indirect purchaser recovery. Accordingly, it is no bar against standing. . . .").