Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
steve@hbsslaw.com

Elizabeth J. Cabraser (State Bar No. 083151)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
ecabraser@lchb.com

Adam Zapala (State Bar No. 245748)
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com

*Indirect Purchaser Plaintiffs*
*Interim Co-Lead Class Counsel*

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE LITHIUM ION BATTERIES ANTITRUST LITIGATION<br><br>This Documents Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS | Case No. 4:13-md-02420 YGR (DMR)<br><br>MDL No. 2420<br><br>**INDIRECT PURCHASER PLAINTIFFS' CORRECTED SECOND RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>Date:  November 6, 2018<br>Time:  2:00 p.m.<br>Judge: Hon. Yvonne Gonzalez Rogers<br>Court: Courtroom 1, 4th Floor<br><br>Date Action Filed: October 3, 2012 |

1

## NOTICE OF MOTION AND MOTION

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that on November 6, 2018, at 2:00 p.m., or as soon thereafter as

4

the matter may be heard by the Honorable Judge Yvonne Gonzalez Rogers of the United States

5

District Court for the Northern District of California, Oakland Division, located at 1301 Clay

6

Street, Oakland, CA 94612, Indirect Purchaser Plaintiffs ("IPPs") will and hereby do move for an

7

order certifying the following classes of persons and entities pursuant to Federal Rule of Civil

8

Procedure 23(b)(3) and under California law.

9

First, IPPs move for certification of the following class of persons and entities (the

10

"Consumer Class"):

11

> All persons and entities who, as a resident of Alabama, Arizona, Arkansas,
> California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine,

12

> Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada,
> New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon,

13

> South Dakota, Tennessee, Utah, Vermont, West Virginia, or Wisconsin who,
> during the period from January 1, 2007 through May 31, 2011, indirectly

14

> purchased, new for their own use and not for resale, one of the following products
> containing a lithium-ion cylindrical battery manufactured by one or more

15

> defendants or their co-conspirators: (i) a portable computer; or (ii) a replacement
> battery for a portable computer.  Excluded from the class are any purchases of

16

> Panasonic-branded computers.  Also excluded from the class are any federal, state,
> or local governmental entities, any judicial officers presiding over this action,

17

> members of their immediate families and judicial staffs, and any juror assigned to
> this action.

18

19

IPPs also move for certification of the following class of government entities (the "California

20

Government Entity Class"):

21

> All non-federal and non-state governmental entities in California that, during the
> period from January 1, 2007 through May 31, 2011, indirectly purchased, new for

22

> their own use and not for resale, one of the following products containing a
> lithium-ion cylindrical battery manufactured by one or more defendants or their

23

> co-conspirators: (i) a portable computer; or (ii) a replacement battery for a portable
> computer.  Excluded from the class are any purchases of Panasonic-branded

24

> computers.  Also excluded from the class are any federal or state governmental
> entities, any judicial officers presiding over this action, members of their

25

> immediate families and judicial staffs, and any juror assigned to this action.

26

Second, IPPs move to appoint the following plaintiffs as class representatives for the

27

Consumer Class: Jason Ames, Caleb Batey, Christopher Bessette, Cindy Booze, Matt Bryant,

28

Steven Bugge, William Cabral, Matthew Ence, Drew Fennelly, Sheri Harmon, Linda Lincoln,

1572086.18

1   Patrick McGuinness, Joseph O'Daniel, Piya Robert Rojanasathit, Bradley Seldin, David Tolchin,

2   and Bradley Van Patten.  IPPs move to appoint the following plaintiffs as class representatives for

3   the California Government Entity Class: the City of Palo Alto and the City of Richmond.

4          Third, IPPs move to appoint Hagens Berman Sobol Shapiro LLP; Lieff Cabraser Heimann

5   & Bernstein, LLP; and Cotchett, Pitre & McCarthy, LLP as Co-Lead Class Counsel for both the

6   Consumer Class and the California Government Entity Class.

7          This motion is based on this notice of motion and motion, the following memorandum of

8   points and authorities, the previous papers submitted in support of class certification, and all

9   accompanying declarations and exhibits, the pleadings and the papers on file in this action, oral

10  argument, and such other matters as the Court may consider in hearing this motion.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF ABBREVIATIONS**

| Class Cert. Mot. I | IPPs' Motion for Class Certification, filed under seal (Jan. 22, 2016), ECF No. 1036 |
|---|---|
| Class Cert. Opp'n II | Defendants' Opposition to IPPs' Renewed Motion for Class Certification, filed under seal (Oct. 24, 2017), ECF No. 2000-2 |
| Class Cert. Reply II | IPPs' Reply in Support of Renewed Motion for Class Certification, filed under seal (Nov. 21, 2017), ECF No. 2044-1 |
| Class Cert. Order I | Order Denying Without Prejudice Motion for Class Certification; Granting in Part and Denying in Part Motions to Strike Expert Reports or Portions Thereof (Apr. 12, 2017), ECF No. 1735 |
| Class Cert. Order II | Order Denying IPPs' Renewed Motion for Class Certification; Granting Motion to Strike Expert Report of Edward E. Leamer, Ph. D. (Mar. 5, 2018), ECF No. 2197 |
| Haider I | Declaration of Laila Haider, Ph.D., in Support of Defendants' Opposition to Indirect Purchaser Plaintiffs' Renewed Motion for Class Certification and Defendants' Motion to Exclude the Proposed Expert Testimony of Dr. Edward E. Leamer (Oct. 24, 2017), filed under seal as Exhibit 62 to the Corrected Sheen Declaration |
| Haider III | Expert Rebuttal Report of Dr. Laila Haider to Dr. Edward E. Leamer (Jun. 15, 2018), filed concurrently herewith |
| Leamer I | Corrected Expert Report of Edward E. Leamer, Ph.D. (Feb. 2, 2016), filed under seal as Exhibit 58 to the Corrected Sheen Declaration |
| Leamer II | Expert Reply Report of Edward E. Leamer, Ph.D. (Aug. 23, 2016), filed under seal as Exhibit 59 to the Corrected Sheen Declaration |
| Leamer III | Supplemental Expert Report of Edward E. Leamer, Ph.D. (Sept. 26, 2017), filed under seal as Exhibit 60 to the Corrected Sheen Declaration |
| Leamer IV | Supplemental Expert Reply Report of Edward E. Leamer, Ph.D. (Nov. 21, 2017), filed under seal as Exhibit 61 to the Corrected Sheen Declaration |
| Leamer V | Expert Report of Edward E. Leamer, Ph.D. (May 25, 2018), filed concurrently herewith |
| Leamer VI | Expert Reply Report of Edward E. Leamer, Ph.D. (June 29, 2018), filed concurrently herewith |
| Corrected Sheen Decl. Ex. | Exhibits to the Corrected Declaration of Michael K. Sheen in Support of Indirect Purchaser Plaintiffs' Second Renewed Motion for Class Certification, filed concurrently herewith |

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED ............................................................................iii

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL BACKGROUND OF THE CARTEL................................................... 4

III.    PROCEDURAL BACKGROUND......................................................................... 6

        A.      First Class Certification Order ................................................................ 6

        B.      Second Class Certification Order............................................................ 7

IV.     LEGAL STANDARD ............................................................................................ 8

V.      ARGUMENT ......................................................................................................... 8

        A.      Dr. Leamer's Prior Regression Analyses Show Consumers in the Narrowed
                Class Were Harmed................................................................................. 9

        B.      Dr. Haider's New Opinions Support the Conclusion That Consumers Were
                Harmed by Defendants' Collusion........................................................ 14

        C.      Dr. Leamer's New Analysis and Evidence Addresses This Court's
                Concerns About the Effects of Focal Point Pricing. ............................ 16

                1.      Identifying Actual Quality Reduction Due to the Conspiracy Is
                        Impossible, But New Analysis Shows Quality and Price Trade-Offs
                        Both In and Out of the Conspiracy and for Batteries Specifically........... 17

                2.      Additional Testimony, Documents, and Data Analysis Strengthen
                        the Overall Evidence of Quality Adjustment as a Response to Focal
                        Point Prices. ............................................................................... 21

VI.     CONCLUSION..................................................................................................... 25

1

## TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
568 U.S. 455 (2013).................................................................................................. 8

5

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998).................................................................................. 9

6

*In re Optical Disk Drive Antitrust Litig.,*
No. 3:10-MD-2143 RS, 2016 WL 467444 (N.D. Cal. Feb. 8, 2016) ................... 21, 22

7

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
No. C07-01819 CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) ....................... 18

8

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
MDL No. 1827, 2012 WL 253298 (N.D. Cal. Jan. 26, 2012) .................................. 18

9

*In re: Cathode Ray Tube (CRT) Antitrust Litig.,*
No. C-07-5944-SC, 2013 WL 5391159, at *5-8 (N.D. Cal. Sept. 24, 2013)............ 18

10

*In re: High-Tech Emp. Antitrust Litig.,*
985 F. Supp. 2d 1167 (N.D. Cal. 2013) .................................................................. 17

11

*Lambert v. Nutraceutical Corp.,*
870 F.3d 1170 (9th Cir. 2017),
cert. granted, 138 S. Ct. 2675 (2018)...................................................................... 17

12

*Tyson Foods, Inc. v. Bouaphakeo,*
136 S. Ct. 1036 (2016)............................................................................................. 8

13

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011)................................................................................................. 8

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- ii -

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether this Court should certify under Federal Rule of Civil Procedure 23(b)(3) the following class, under California law, of persons and entities who are residents of states that permit indirect purchasers to bring claims (the "Consumer Class"):

> All persons and entities who, as a resident of Alabama, Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, or Wisconsin who, during the period from January 1, 2007 through May 31, 2011, indirectly purchased, new for their own use and not for resale, one of the following products containing a lithium-ion cylindrical battery manufactured by one or more defendants or their co-conspirators: (i) a portable computer; or (ii) a replacement battery for a portable computer. Excluded from the class are any purchases of Panasonic-branded computers. Also excluded from the class are any federal, state, or local governmental entities, any judicial officers presiding over this action, members of their immediate families and judicial staffs, and any juror assigned to this action.

2.      Whether this Court should certify under Federal Rule of Civil Procedure 23(b)(3) the following class, under California law, of non-federal and non-state governmental entities in California (the "California Government Entity Class"):

> All non-federal and non-state governmental entities in California that, during the period from January 1, 2007 through May 31, 2011, indirectly purchased, new for their own use and not for resale, one of the following products containing a lithium-ion cylindrical battery manufactured by one or more defendants or their co-conspirators: (i) a portable computer; or (ii) a replacement battery for a portable computer. Excluded from the class are any purchases of Panasonic-branded computers. Also excluded from the class are any federal or state governmental entities, any judicial officers presiding over this action, members of their immediate families and judicial staffs, and any juror assigned to this action.

3.      Whether this Court should appoint the following plaintiffs as class representatives for the Consumer Class: Jason Ames, Caleb Batey, Christopher Bessette, Cindy Booze, Matt Bryant, Steven Bugge, William Cabral, Matthew Ence, Drew Fennelly, Sheri Harmon, Linda Lincoln, Patrick McGuinness, Joseph O'Daniel, Piya Robert Rojanasathit, Bradley Seldin, David Tolchin, and Bradley Van Patten.

4.      Whether this Court should appoint the following plaintiffs as class representatives for the California Government Entity Class: the City of Palo Alto and the City of Richmond.

1

2

3
5.      Whether this Court should Hagens Berman Sobol Shapiro LLP; Lieff Cabraser Heimann & Bernstein, LLP; and Cotchett, Pitre & McCarthy, LLP as Co-Lead Class Counsel for both the Consumer Class and the California Government Entity Class.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    ## I.    **INTRODUCTION**

2           This case concerns a decade-old cartel organized to inflate the price of cylindrical lithium

3    ion batteries ("LIBs").  The reality of this case is that the ultimate impact of the price-fixing was

4    not borne by Taiwanese packers, or huge multinational OEMs, or gigantic big-box retailers.  It

5    landed squarely on the backs of consumers, just as common sense would suggest.  According to

6    the overcharge analysis conducted by Dr. Edward E. Leamer, these consumers (in the proposed

7    class definitions) suffered ███████████ in damages.[1]  The following defendants, which now

8    belong to a single corporate entity, remain in the indirect purchaser case: Panasonic Corporation

9    and Panasonic Corporation of North America (collectively, "Panasonic"), and Sanyo Electric Co.,

10   Ltd and Sanyo North America Corporation (collectively, "Sanyo").  One of these defendants,

11   Sanyo, pled guilty to participating in a criminal conspiracy to fix the price of lithium ion batteries

12   sold to U.S. consumers and named Panasonic as its co-conspirator.[2]  Trial in this case is

13   scheduled for January 2019.  Because the evidence will be the same regardless of whether this

14   case is tried on behalf of twenty-three consumers or a class, Indirect Purchaser Plaintiffs ("IPPs")

15   make this renewed motion for class certification.

16          Federal Rule of Civil Procedure 23(c)(1)(C) allows that an "order that grants or denies

17   class certification may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1)(C).

18   This Court has denied class certification in the indirect purchaser case twice.  But IPPs have

19   pursued additional fact discovery and have undertaken additional economic work that addresses

20   the concerns expressed by the Court and further weighs in favor of class certification.

21   Furthermore, this renewed motion is based on narrowed class definitions covering a shorter time

22   period—January 1, 2007 through May 31, 2011.  This time period more closely tracks the guilty

23   pleas of defendants Sanyo and LG Chem Ltd. ("LG Chem"), and corresponds to the time period

24   with the greatest record evidence and largest impact on consumers.[3]  IPPs have additionally

---

25   [1] Am. Sheen Decl. Ex. 1 (All Defendant Cylindrical LIB Damages for Notebooks in Class States
26   2007-2011); *see also* Am. Sheen Decl. Ex. 2 (All Defendant Cylindrical LIB Damages for
     Notebooks in Class States Including a 3-month Delay in Pass-Through 2007-2011).
27   [2] Am. Sheen Decl. Ex. 39 (Sanyo Plea) at 3-4.
     [3] *See* Am. Sheen Decl. Ex. 39 (Sanyo Plea) at 3-4 (admitting to price-fixing conspiracy from
28   April 2007 through September 2008), Ex. 40 (LG Chem Plea) at 3-4 (same).

1572086.18

IPPS' CORRECTED SECOND RENEWED
MOTION FOR CLASS CERTIFICATION
CASE NO. 13-MD-02420 YGR (DMR)

narrowed the proposed class definitions to purchasers of portable personal computers and replacement batteries—products that defendants LG Chem and Sanyo admitted were the target of their collusion.[4]  The documentary, testimonial, and econometric evidence show that long-term price effects of defendants' decade-plus conspiracy harmed all or nearly all class members.

<u>Pass-Through via Price and Quality.</u>  Dr. Leamer's merits reports pursuant to Federal Rule of Civil Procedure 26 synthesize additional record evidence and econometric analysis to show that pass-through occurred at the OEM level in the form of *both* increased prices and reduced quality.  This evidence includes:



This new evidence and Dr. Leamer's new econometric and other analyses address the concerns raised by the Court in its Second Class Certification Order, and confirm what economic theory

---

[4] *See* Am. Sheen Decl. Ex. 39 (Sanyo Plea) at 4, Ex. 40 (LG Chem Plea) at 3.
[5] Leamer V ¶ 30. Additional, similar testimony is discussed in Section V.C.2, *infra*.
[6] Leamer V ¶¶ 46, 50-51, 59-60, fig.5.
[7] Leamer V ¶¶ 50-66, figs.2-8.
[8] Leamer V ¶¶ 67-75, figs.9-11.
[9] Leamer V ¶¶ 76-78, fig.12.

1  holds:  focal point prices do not result in prices that defy the nature of competitive markets.  In

2  other words, retail-level focal point pricing does not allow OEMs or retailers to earn more or less

3  of a profit margin (than they would have without a battery overcharge) because OEMs and

4  retailers do not have the market power to do so.  The narrowed class definition, which includes

5  only purchasers of portable computers from 2007 to 2011, further weakens defendants' argument

6  that ██████████████████████████████████████████[10] ████████

7  ████████████████████████████████████

8  ████████████████████████████████████████

9  ████████████████████████████████.[11]

10  Furthermore, this case is about a decade-plus conspiracy that started many years before the

11  narrowed class period, eliminating any concern about the time it might have taken for the effect

12  of higher cell prices to work their way down the distribution chain.

13  ██████████████████████████████.  Defendants' own expert, Dr. Laila

14  Haider ██████████████████████████████████

15  ████████████████████████████████

16  ████████████████████████████████

17  ██████████[12] ████████████████████

18  ██████████████████████████████████████

19  ████████████████████████████████████

20  ████████████████████████████████

21  █[13] ████████████████████████████████████████

22  ██████

23

24

─────────────────────

25  [10] Haider III ¶ 21.  *See* Class Cert. II Opp'n at 5-11.

26  [11] Am. Sheen Decl. Ex. 4 (Damages per Notebook Including a 3-month Delay in Pass-Through);
*see also* Am. Sheen Decl. Ex. 3 (Damages per Notebook).

27  [12] Haider III ¶ 43.

28  [13] Am. Sheen Decl. Ex. 5 (Dell Pack Cost Pass-Through), Ex. 9 (Learner Dep.) 792:16-23, 859:3-
860:14, 863:9-867:23, 968:17-971:11; *see also* Haider III tbl. F-5.

Defendants' Arguments Reflect a Misunderstanding of the Consumer Electronics Market and the Class Certification Inquiry. Defendants' attack on IPPs' evidence requires viewing the issue through the narrowest of lenses: ███████████████████████████████████ ████████████████████████████████████████████████████████████[14] However, when it comes to OEM pass-through and focal point prices, IPPs do not contend—and have never contended—that the market would instantaneously and uniformly pass through an isolated $1 increase in the price of batteries. That is not the relevant inquiry. What IPPs contend, and what the evidence overwhelmingly shows, is that OEMs could have and would have passed on to consumers the ██████ in global price impact caused by the cartel over its decade-plus existence. As Dr. Leamer explained, ██████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████[15] Defendants disagree.[16] Regardless, however, what matters at this stage is that this dispute is common to every class member. This renewed motion should therefore be granted.

## II.   FACTUAL BACKGROUND OF THE CARTEL

Defendants in this case are admitted participants in a successful and covert international price-fixing cartel aimed at artificially raising the prices of LIBs, including batteries incorporated into consumer products sold in the United States. Following an investigation by the United States Department of Justice ("DOJ"), defendants Sanyo and LG Chem pled guilty to criminal violations of the Sherman Antitrust Act.[17] The Sanyo Plea Agreement named Panasonic as a co-conspirator.[18] Both Sanyo and LG Chem admitted that they "participated in a conspiracy . . . the primary purpose of which was to fix the prices of cylindrical lithium ion battery cells sold in the

---

[14] *See, e.g.*, Leamer I ¶¶ 122-25, fig.44; Haider I ¶ 26; *see also* Am. Sheen Decl. Ex. 4 (Damages per Notebook Including a 3-month Delay in Pass-Through), Ex. 3 (Damages per Notebook).

[15] Am. Sheen Decl. Ex. 9 (Leamer Dep.) 894:19-895:3; *see also* Leamer I ¶ 91, figs.35-36.

[16] However, as set forth in the accompanying motion to exclude Dr. Haider's testimony, that disagreement is without basis in fact or economics.

[17] *See* Am. Sheen Decl. Ex. 39 (Sanyo Plea), Ex. 40 (LG Chem Plea).

[18] *See* Am. Sheen Decl. Ex. 39 (Sanyo Plea) at 3.

1   United States and elsewhere for use in notebook computer battery packs."[19]  They further

2   admitted that between April 2007 and September 2008, they sold more than $40 million of price-

3   fixed battery cells for use in notebook computers by U.S. customers.[20]  An additional defendant

4   has cooperated with the federal government in its investigation and prosecution of the LIB cartel

5   as a participant in the DOJ's leniency program.

6   ████████████████████████████████████████████████████████

7   ██████████████████████████████████████.[21]████████████████████████

8   ██████████████████████████████████████████████████████████

9   ███████████████████████████████████████████

10  ██████████████[22]███████████████████████████████████

11  █████████████████████████████████████████

12  ████████████████████████████████████████████████████[23]

13  ████████████████████████████████████████

14  ██████████████████████████████████████████████

15  ███████████████████████████████████████████[24]██████

16  ████████████████.[25]█████████████████████████████████

17  ██████████████████████████[26]████████████████████

---

[19] Am. Sheen Decl. Ex. 39 (Sanyo Plea) at 3-4, Ex. 40 (LG Chem Plea) at 3.

[20] Am. Sheen Decl. Ex. 39 (Sanyo Plea) at 4 ("approximately $36,839,000"), Ex. 40 (LG Chem Plea) at 4 ("at least $3,359,000").

[21] *See, e.g.*, Am. Sheen Decl. Ex. 15 (PANA0026382) ██████████, Ex. 16 (PANA0026433) (████), Ex. 17 (PANA0026500) ██████, Ex. 18 (PANA0026502E) (██████); Ex. 19 (PANA0026505) ██████, Ex. 20 (PANA0026507) (██████), Ex. 22 (SANYO0670262) (██████), Ex. 23 (SANYO0670265) (██████), Ex. 24 (SANYO0670404) (██████), Ex. 25 (SANYO0670406) (██████), Ex. 26 (SANYO0670407) (██████), Ex. 27 (SANYO0670410) (██████); Ex. 31 (SANYO0670308) (██████), Ex. 32 (SNA0338909) (██████).

[22] Am. Sheen Decl. Ex. 24 (SANYO0670404) (██████).

[23] Am. Sheen Decl. Ex. 17 (PANA0026500) (██████).

[24] Am. Sheen Decl. Ex. 54 (LGC-MDL0001873) at 1874; *see also* Am. Sheen Decl. Ex. 42 (TSB-LIB-00006527E) (██████).

[25] Am. Sheen Decl. Ex. 44 (SDI-B-000005140E).

[26] *See, e.g.,* Am. Sheen Decl. Ex. 46 (PANA0013754) (██████, Ex. 52 (PANA-C000054124E) (██████, Ex. 45 (P-DOJ0000006) (██████), Ex. 47 (SANYO00552924E) at 2625E (██████),

*Footnote continued on next page*

1  ██████████████████████████████████████████████████████████

2  ██████████████ 28 ████████████████████████████████████████

3  ██████████████████ 29 ██:

4  ██████████████████████████████████████████████████

5  ██████████████████████████████████████████████████████████

6  ██████████████████ 31 ████████████████████████████████████

7  ██████████████████ 32 ██████████████████████████████████████

8  ██ ██████████████████ 34 ██████████████████████████ 35

9  ### III.   PROCEDURAL BACKGROUND

10 ### A.   First Class Certification Order

11         IPPs first moved to certify a nationwide class of indirect purchasers in January 2016.  In

12  *Footnote continued from previous page*
    Ex. 48 (NEC00763074E) ██████. Ex. 49 (SANYO0552987E) ██████████ Ex. 50

13  (SANYO00553033E) (██████); Ex. 11 ██████████████ 45:23-24 (██████).
    [27] Am. Sheen Decl. Ex. 51 (PANA-C000173988E) (Panasonic email █████

14  ██████████).

15  [28] *See* Am. Sheen Decl. Ex. 55 (LGC-MDL-0002004) at 2007, 2010, 2011 ████████

16  ██████████████ .

17  [29] Am. Sheen Decl. Ex. 43 (LGC-MDL0000001) at 0006.
    [30] *See* Class Cert. Mot. I § I.5.

18  [31] *See, e.g.,* Am. Sheen Decl. Ex. 53 (PNA0060555) ████████████████

19  ████████████████ ██████") Ex. 56 (PANA-C000091865E) ████████),
    (Panasonic PPT ██████████████████),

20  Ex. 57 (LGC-MDL0002261) (██████████████████).

21  [32] *See, e.g.,* Am. Sheen Decl. Ex. 41 (TSB-LIB-00003333E) at TSB-LIB-00003335E (███
    ████████████) Ex. 52 (PANA-

22  C0000541124) (██████████████), Ex. 30 (S-DOI00855572)

23  ██████████████████ .

24  [33] *See, e.g.,* Am. Sheen Decl. Ex. 29 (SANYO-COOO869823) (██████████████

25  ██████████████) Ex. 21
    (P-DOI00000017) (████████████████).

26  [34] *See supra* note 26.
    [35] *See, e.g.,* Am. Sheen Decl. Ex. 28 (SANYO-C000603817) (██████████

27  ██████████████████████████████████████

28  ██████████████ ).

denying the motion without prejudice, the Court found that IPPs had satisfied the elements of Federal Rule of Civil Procedure Rule 23(a).[36]  With respect to Rule 23(b)(3), the Court found no dispute about the applicability of class-wide evidence of the existence of a conspiracy to fix battery prices.[37]  The Court accepted the opinions of IPPs' experts, Dr. Rosa Abrantes-Metz and Dr. Leamer, almost in their entirety, but it concluded that IPPs failed to meet Rule 23(b)(3)'s predominance requirement with respect to class-wide evidence of impact and damages.[38] Specifically, the Court identified three areas requiring further analysis: (i) the effect of packers on pass-through to the Class; (ii) the role of rebates, bundling, and discounts on pass-through; and (iii) the influence of focal point pricing and adjustments to quality rather than cost.[39]

The Court also found, with respect to the application of California law to a nationwide class, that: (i) applying California law was constitutional; (ii) the relevant laws of *Illinois Brick* repealer and non-repealer states present a true conflict; and (iii) the interests of non-repealer states would be impaired more significantly than California's interests by applying California law to non-repealer states.[40]

**B.  Second Class Certification Order**

In January 2018, IPPs filed a renewed motion to certify a class of consumers from *Illinois Brick* repealer states. ████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████[41]████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████;[42]███ █████████████████████████
████████████████████████████████████████████████████████████

---

[36] Class Cert. Order I at 11-12.
[37] *Id.* at 13 n.6.
[38] *Id.* at 13-19.
[39] *Id.* at 19.
[40] *Id.* at 21-24.
[41] Class Cert. Reply II at 8 n.17 (citing Am. Sheen Decl. Ex. 33 (SONY-LIB-000818909) at 910 and Leamer III n.48, figs.2-4, 26); Leamer IV ¶¶ 38, 45-51, figs.7-12; *see also* Leamer I ¶ 125.
[42] Class Cert. Order II at 13; Leamer III ¶¶ 33, 35, 40-42, fig.8.

1   ██████████████ [43]

2       On March 5, 2018, the Court denied IPPs' second motion on the issue of focal point

3   pricing.  The Court concluded that Dr. Leamer's additional analysis did "not adequately account

4   for the effects of focal point pricing, and therefore fail[ed] to yield reliable conclusions."[44]  In

5   particular, the Court explained that IPPs did not sufficiently explain: (i) how focal point pricing

6   affected pass-through for OEMs and retailers; (ii) how focal point pricing led to quality

7   adjustments in the finished products; and (iii) how those quality reductions, rather than price

8   increases, affected the reliability of Dr. Leamer's prior overcharge pass-through regressions.[45]

9   The Court struck Dr. Leamer's regressions concerning camcorder and power tool pass-through.[46]

10  The Court did not address Dr. Leamer's opinions about packers and the effect of bundling,

11  rebates, and discounts on pass-through.

12  **IV.   LEGAL STANDARD**

13      To certify a class under Rule 23(b)(3), a court must find that common questions of law or

14  fact predominate over questions affecting only individual class members.[47]  But it cannot and

15  must not decide the answers to those questions.[48]  Once a question and the evidence addressing it

16  have been identified as common to the class, the trial court should delve no further into the

17  merits, because to do so invades the province of the jury.[49]

18  **V.   ARGUMENT**

19      Focusing on the core group of consumers harmed by this conspiracy, IPPs seek to certify

20  smaller classes that have been narrowed by time period and the type of product purchased by the

21  consumer.  As the Court previously held, each of the elements of Rule 23(a) is satisfied.[50]  That

22  conclusion applies with equal force with respect to the narrowed class definitions IPPs now

---

[43] Leamer IV ¶¶ 12-13, figs.1-3.

[44] Class Cert. Order II at 4.

[45] Class Cert. Order II at 5-8.

[46] Class Cert. Order II at 1-2.

[47] Fed. R. Civ. P. 23(b)(3); *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

[48] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1049 (2016).

[49] *Id.*; *Amgen*, 568 U.S. at 468.

[50] Class Cert. Order I at 10-12.

1572086.18

IPPS' CORRECTED SECOND RENEWED
MOTION FOR CLASS CERTIFICATION
CASE NO. 13-MD-02420 YGR (DMR)

1   propose.[51]  The only material issue remaining with respect to class certification, then, is whether

2   IPPs have established that antitrust impact and damages are common questions susceptible to

3   common proof.

4   ████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████

8   ██████████████████████████████ Panasonic and Sanyo have not disputed this point

9   directly—they have not argued, for example, that any level of the distribution chain is *not*

10  characterized by high levels of competition and complete pass-through of costs over time.

11  Rather, they have focused on an irrelevant hypothetical question:  would focal point prices have

12  affected the pass-through of a sudden, one-time cost increase of a few cents or dollars?

13          Notwithstanding its irrelevance, this question is—still—a common one, and the fact that

14  there may be a dispute about the answer (or even the proper question) is not a basis to deny class

15  certification.  Moreover, Defendants' question is contrary to the facts in this case, which involve a

16  decade-plus period of collusion, not a one-time price increase.  The vast weight of evidence

17  addressing the true facts overwhelmingly supports the proposition that the entire conspiracy effect

18  was passed through to consumers over time, ████████████████████████████████

19  ████████████████████████████████████████

20          A.       **Dr. Leamer's Prior Regression Analyses Show Consumers in the Narrowed Class Were Harmed.**

21

22          As the Court knows, Dr. Leamer conducted 978 regression analyses—the platinum

23  standard for computing damages to classes in antitrust cases[52]—showing that the battery

---

[51] The proposed Class is sufficiently numerous—in the tens of thousands at minimum—such that joinder would be impracticable.  This Court previously held that IPPs made a sufficient showing to satisfy the typicality argument, and explicitly rejected defendants' argument that IPPs must (i) prove class membership, or (ii) show that the claims of individuals who purchase a small number of LIB products are not typical of those of institutional entities that purchase such products in bulk.  Class Cert. Order I at 10-12.  Finally, the class representatives "will fairly and adequately protect the interests of the class" because they (i) do not have conflicts of interest with the proposed Class, and (ii) are represented by qualified counsel.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

[52] Class Cert. Order I at 17 n.9 (noting "multi-variable regression is the sort of analysis most

*Footnote continued on next page*

1    overcharges were passed-through to consumers.[53]  Those analyses stand uncontradicted in any

2    meaningful way—nobody has performed work showing that the conspiracy did *not* have an effect

3    or that pass-through did *not* occur.  However, those results have increased magnitude, coverage,

4    and precision with respect to a notebook-only class.

5        <u>Impact of the Conspiracy on Battery Prices.</u>  ████████████████████

6    ████████████████████████████████████████████████████████

7    ████████████████████████████████████[54]████████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████████[55]████████████████████████████

10   ██████████████[56]██████████████████████████████

11   ████████████████████████████████████████[57]:

*Footnote continued from previous page*

[53]  *See* Leamer III ¶¶ 98-103, fig.27 (████████████████████████████████████████);
Leamer IV ¶¶ 12-13, figs.1-3 ████████████████████████████████████████████).

[54]  Leamer I ¶¶ 77-91, figs.34-36; *see also* Leamer V ¶¶ 86-90, fig.23.

[55]  *See* Class Cert. Order II at 5.

[56]  Am. Sheen Decl. Ex. 4 (Damages per Notebook Including a 3-month Delay in Pass-Through);
*see also* Am. Sheen Decl. Ex. 5 (Damages per Notebook).

[57]  Haider III ¶ 60, ex.3.



**Quantity of Data Analyzed.** ███████████████████████

████████████████████████████████████████.[58] ████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████;[59]

███████████████████████████████████████████████████████

████████████████████████████████████.[60]

███████████████████████████████.[61]  Although defendants criticized Dr. Leamer's work for

failing to analyze pass-through at the packer level of the distribution chain, █████████

███████████████████████████████████████████████████.[62]

---

[58] Leamer III ¶¶ 96-104, figs.26-30.
[59] Am. Sheen Decl. Ex. 35 ██████████████████████████████████
████████████████, Ex. 36 ███████████████
███████████).
[60] Am. Sheen Decl. Ex. 37 ████████████████████████████████
█████).
[61] Am. Sheen Decl. Ex. 38 (███████████████████████████████████).
[62] Leamer IV ¶¶ 38, 47.  Packers assemble raw battery cells into battery packs before they are

*Footnote continued on next page*



1

2

3   [63]

4

5

6   .[64]

7   <u>Consistent Impact Down the Distribution Chain.</u>  In total,

8

9

10   [65]

11

12   [66]

13   The strength and consistency of Dr. Leamer's regression analysis is amplified by the

14   revised class definition, which excludes camcorders and power tools.

15

16

17   .[67]

18

19

20

21   [68]

22

23   _Footnote continued from previous page_
    sold to OEMs.  Leamer III ¶ 23.

24   [63] Am. Sheen Decl. Ex. 33 (SONY-LIB-000818909) at 910; Leamer III ¶ 97 n.48, figs.2-4, 26;
    Leamer IV ¶¶ 38, 45-51, figs.7-12.

25   [64] Leamer IV app. B.

26   [65] Leamer III ¶¶ 98-103, fig.27                             ); Leamer IV ¶¶ 12-13, figs.1-3

27   [66] Leamer III ¶¶ 98, 104, figs.28-30.

    [67] _See_ Leamer III ¶¶ 98, 103 n.49, figs.29-30.

28   [68] _See_ Leamer III figs. 29-30; Leamer IV app. B.

IPPS' CORRECTED SECOND RENEWED
MOTION FOR CLASS CERTIFICATION
CASE NO. 13-MD-02420 YGR (DMR)

1  <u>Overcharges Were Passed-Through Even for Small Cost Changes and Even in the</u>

2  <u>Presence of Focal Point Pricing.</u>

[text redacted][69]

[text redacted][70]

[text redacted][71]

[text redacted][72]

[text redacted][73]

[text redacted][74]

17  <u>Overcharges Were Passed-Through Even with Rebates, Discounts, and Bundling.</u>

[text redacted][75]

---

[69] Leamer I ¶¶ 118-121, figs.42-43; Leamer II ¶¶ 119-125, figs.16-17; Leamer IV ¶¶ 55-59, fig.13; Leamer V ¶¶ 15.

[70] Leamer I ¶ 121, fig.43; Leamer II ¶ 125, figs.16-17; *see also* Leamer IV ¶ 58, fig.13.

[71] Leamer I ¶¶ 119-121, fig.42; Leamer II ¶¶ 128-130, fig.22; Leamer IV ¶¶ 100-103, fig.24; Leamer V ¶ 15.

[72] Leamer V ¶ 15.

[73] Leamer IV ¶¶ 12-13, figs.1-3 ([text redacted]); Leamer V ¶ 17.

[74] *Id.*

[75] Leamer III ¶¶ 38-39.

IPPS' CORRECTED SECOND RENEWED
MOTION FOR CLASS CERTIFICATION
CASE NO. 13-MD-02420 YGR (DMR)



**B.**

---

[76] Leamer III ¶¶ 33, 35, 40-42, fig.8.
[77] Haider III ¶ 43 (emphasis added).
[78] Haider III ¶ 34, tbl. F-5.

1572086.18



[79]

1572086.18

1 ████████████████████████████████████████████████████████

2 ████████████████████ [80]

3 ████████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ████████████████████████████████████████████ [81]

6 ███████████████████████████████████████████████

7 ████████████████████████████████████████████████

8 ████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████

10 ██████████████████████████████████████ [82]

**C.    Dr. Leamer's New Analysis and Evidence Addresses This Court's Concerns About the Effects of Focal Point Pricing.**

In its Second Class Certification Order, the Court determined that Dr. Leamer's analysis failed to adequately address how, and by how much, the use of focal point pricing strategies affected pass-through rates for OEMs and retailers.[83] Specifically, the Court stated that Dr. Leamer's reports did not explain (i) that any finished products actually experienced a quality reduction, rather than an increase of price, in the presence of focal point pricing; (ii) how the existence of such quality reductions affected the reliability of Dr. Leamer's prior regression analyses; and (iii) the effect of focal point pricing on IPPs' ability to demonstrate and quantify pass-through of the LIB overcharge.[84] In his latest reports, Dr. Leamer addresses each of the Court's concerns in turn.

---

[80] Am. Sheen Decl. Ex. 9 (Leamer Dep.) at 864:7-21 ██████████████████████

███████████████████████████████████████████ ).

[81] Am. Sheen Decl. Ex. 5 ████████████████████████ ), Ex. 9 (Leamer Dep.) 792:16-23, 859:3-860:14, 863:9-867:23, 968:17-971:11.

[82] Am. Sheen Decl. Ex. 9 (Leamer Dep.) 863:12-21.

[83] Class Cert. Order II at 5.

[84] Class Cert. Order II at 6-8.

1

2

**1.** **Identifying Actual Quality Reduction Due to the Conspiracy Is Impossible, But New Analysis Shows Quality and Price Trade-Offs Both In and Out of the Conspiracy and for Batteries Specifically.**

3

In its Second Class Certification Order, the Court faulted IPPs for failing to identify "that

4

any products (and thus the purchasers of those products) actually experienced a quality reduction,

5

rather than an increase cost, as a result of the alleged price-fixing conspiracy."[85]  If by that the

6

Court meant to require that IPPs show how a specific notebook computer would have been

7

differently configured absent the conspiracy, such an analysis is impossible.[86]  Identifying which

8

products actually experienced a quality reduction in the absence of a conspiracy would require

9

projecting with absolute certainty all the product designs for a hypothetical parallel time period—

10

a time period from 2007 to 2011 in which there was *no* conspiracy.[87]  The data to carry out such

11

an exercise does not exist because whether a quality reduction actually occurred in the real world

12

can only be measured against what quality would have prevailed in the but-for, counterfactual

13

world.[88]  Furthermore, such a requirement misconstrues the way the market and the conspiracy

14

operated.  This case does not allege discrete and separable overcharges imposed at different

15

periods of time, but rather a continuous price effect that resulted from a decade-plus conspiracy,

16

all taking place in the context of innovation and product improvement in the consumer electronics

17

industry.[89]  Therefore, it is impossible to segregate the amount of the overcharge related to

18

collusion based on a particular price increase.  Doing so would undercount the cumulative effect

19

of the price-fixing over time.[90]  Furthermore, it comes into direct conflict with copious authority

20

holding that once the elements of the violation have been established, including a penny of

21

impact, aggregate damages to the class need not be estimated with pinpoint precision.[91]

22

[85] Class Cert. Order II at 6-7.

23

[86] Leamer V ¶ 9.

[87] Leamer V ¶¶ 9-10.

24

[88] *Id.*

[89] *Id.*

25

[90] *Id.*

26

[91] *See Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017), *cert. granted*, 138 S. Ct. 2675 (2018) ("Uncertainty regarding class members' damages does not prevent certification

27

of a class as long as a valid method has been proposed for calculating those damages."); *see also In re: High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1223-26 (N.D. Cal. 2013)

28

(approving aggregate damages model); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-

*Footnote continued on next page*

1    Although identifying how specific products suffered reduced quality due to the conspiracy

2    is impossible, Dr. Leamer has conducted two new analyses that respond to the Court's concern.

3    <u>Comparison of Pass-Through Rates During and Outside the Conspiracy Period.</u> ███

4    ████████████████████████████████████████████████████████████

5    ██████████████████████████████████████████████████.[92] ███

6    ████████████████████████████████████████████████████████████

7    █████████████████████████████████.[93] ███████████████████████

8    █████████████████████████████████████████████████████████████████

9    ███████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████

11   ███████████████████████████████    Thus, there is no need to analyze pass-through separately

12   vis-à-vis the conspiracy as opposed to "ordinary" changes in cost or quality.  This addresses the

13   first part of the Court's concern:  that pass through might somehow have been different for

14   conspiracy overcharges.  It was not.

15   <u>New Analysis of Battery Cell Capacity and Price.</u> ███████████████████

16   ████████████████████████████████████████████████████████████

17   While it is not possible to say that a particular notebook would have had a particularly different

18   battery but-for the conspiracy, ███████████████████████████████████

19   ████████████████████████████████[94] ████████████████████████

20   █████████████████████████████ █ ███████████████████████████

21   ██████████████████████████████████████████████████████.[96]

*Footnote continued from previous page*
5944-SC, 2013 WL 5391159, at *5-8 (N.D. Cal. Sept. 24, 2013) (approving aggregate damages
model for showing injury); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2012
WL 253298, at *5 (N.D. Cal. Jan. 26, 2012) ("the use of aggregate damages in antitrust cases has
been approved numerous times"); *In re Static Random Access Memory (SRAM) Antitrust Litig.*,
No. C07-01819 CW, 2008 WL 4447592, at *5-7 (N.D. Cal. Sept. 29, 2008).

[92] Leamer V ¶¶ 76-78, fig.12.

[93] Leamer V ¶ 78, fig.12.

[94] Leamer V ¶¶ 67-75, fig.9.

[95] Leamer V ¶ 70.

[96] Leamer V ¶ 74.

1572086.18



[97] Leamer V ¶ 69.
[98] Leamer V ¶ 70.
[99] Leamer V ¶¶ 71-72, figs.9-10.
[100] Leamer V ¶ 73.
[101] *Id.*
[102] *Id.*
[103] Leamer V ¶ 74.
[104] Leamer V ¶ 75, fig.11.
[105] *Id.*

1 ███████████████████████████████████

2 █████████████████████████████████████████

3 ██████.[106] ████████████████████████████████████

4 █████████████████.[107] ████████████████████████

5 ███████████████████████████████

6      This analysis of the relationship of battery cost and battery capacity addresses the second

7 concern of the Court, specifically the desire to see evidence of the quality-adjustment process

8 working at the level of particular components.  This is that proof.

9      There is no tension between focal point prices, quality adjustment, and price-based pass

10 through of costs.  The Court also requested clarification about the implications of focal point

11 prices and quality adjustment for the total cost pass-through regressions.[108]  The answer is that all

12 three concepts are facts of life in consumer electronics markets subject to the incredible force of

13 competition in those markets.  The key is to remember that Dr. Leamer's work addresses long-

14 term pass-through effects, which is consistent with the long-term price effect of a decade-plus

15 conspiracy on LIB prices.  ████████████████████████

16 ████████████████████████████[109] ██

17 ████████████████████████████████.[110]

18 ██████████████████████████████████████

19 █████████████████████████████████████

20 █████████████████████████████████████

21 ███████████████████████████████████

22 ██████████████████████████[111].██ ████

23 ████████████████████████████████

24 _____

25 [106] *Id.*
[107] *Id.*

26 [108] Class Cert. Order II at 7-8.

27 [109] Leamer V ¶¶ 6, 8-12, 14, 15.
[110] Leamer IV ¶¶ 12-13, figs.1-3.

28 [111] *See* Leamer V ¶ 12.

IPPS' CORRECTED SECOND RENEWED
MOTION FOR CLASS CERTIFICATION
CASE NO. 13-MD-02420 YGR (DMR)



**2.** **Additional Testimony, Documents, and Data Analysis Strengthen the Overall Evidence of Quality Adjustment as a Response to Focal Point Prices.**

---

[112] Am. Sheen Decl. Ex. 7 (Gregorczyk Dep.) 31:19-22 (███████████████████████████████████████████████; *see also In re Optical Disk Drive Antitrust Litig.* ("*ODDs*"), No. 3:10-MD-2143 RS, 2016 WL 467444, at *8 (N.D. Cal. Feb. 8, 2016) ("[I]n a cost-declining market, competition will generally drive prices down to costs.").

[113] Leamer V ¶¶ 11, 35, 41-66, figs 2-8; *see also* Am. Sheen Decl. Ex. 12 (███████████) 28:20-22 (████████████████████████ Ex. 6 (████████████) 32:23-33; 33:3-10 (████████████████████████████████); *see also* Am. Sheen Decl. Ex. 12 (█████████████) 18:6-13 (███████████ Ex. 7 (███████████) 40:20-24 (████████████████████████).

[114] Leamer V ¶¶ 8, 11-14; s*ee also ODDs*, 2016 WL 467444, at *8 ("[I]n competitive markets, profit-maximizing behavior virtually always passes on cost-savings in full into lower prices.") ██████████████████████████████████████████████████████████████████████████ Leamer III ¶ 14.

[115] Leamer V ¶¶ 46-52; *see also* Am. Sheen Decl. Ex. 6 (Greenwood Dep.) 16:21-17:13, 19:1-20:5, 24:18-23, 29:20-30:8, 31:15-17, 32:4-22, 33:3-10; Ex. 7 (Gregorczyk Dep.) 20:1-5, 23:3-15, 25:3-27:9, 30:22-31:2, 31:19-22, 32:15-18; Ex. 12 (Wagner Dep.) 21:11-18, 28:5-14, 28:20-22.



1

2

3

4

5   116

6

7

8

9

10

11

12

13   118

14

15

16   119

17

18   120

19

20

21   121

22   116 Am. Sheen Decl. Ex. 6 ( ) 33:3-10; *see also ODDs*, 2016 WL 467444, at *8
23   ("[I]f a firm tries to keep a cost reduction for itself – to increase margins over costs – other firms
     which also receive similar cost reductions will lower their prices (passing on the cost reductions)
     to siphon market share from the firm(s) which do not pass-on costs reductions.").

24   117 Am. Sheen Decl. Ex. 6 ( ) 22:7-23.

     118 *Id.* 31:15-17
25                                        ").

26   119 *Id.* 24:21-24.

     120 *Id.* 19:25-20:5
27                   ")

28   121 *See, e.g.*, Am. Sheen Decl. Ex. 7                      .) 30:4-9

*Footnote continued on next page*



15   <u>Documentary evidence confirms the inverse relationship between component costs and</u>

16   <u>product quality.</u>

18   .[127]  For example,

23   _____

*Footnote continued from previous page*

(objection omitted)).

[122] *Id.* 30:22-31:2.
[123] *Id.* 25:3-27:9.
[124] Am. Sheen Decl. Ex. 10 (Niko Dep.) 41:3-41:11.
[125] *Id.* 43:10-19.
[126] Am. Sheen Decl. Ex. 8 (Haider Nov. 14, 2017 Dep.) 199:4-8.
[127] *See* Leamer V ¶¶ 53-57, fig.2.



In other documents, [redacted].[129]

128 Am. Sheen Decl. Ex. 34 (AACTOSH000026643).

129 Am. Sheen Decl. Ex. 14 (AACTOSH000046013); Ex. 34 (AACTOSH000026643) [redacted]); Ex. 13 (AACTOSH000022424) ([redacted]).

130 Leamer V ¶¶ 58-66, figs.3-7.

131 Leamer V ¶ 58, fig.3.

132 Leamer V ¶¶ 59-60, fig.5.

133 Leamer V fig.5.

134 Leamer V ¶¶ 61-66, figs.6-7.

135 Am. Sheen Decl. Ex. 3 (Damages per Notebook).

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████

3 **VI.     CONCLUSION**

4          The new proposed class definitions—narrowed by time period and product—strengthen

5 IPPs' showing that defendants' price-fixing of batteries harmed consumers.  Taken together, Dr.

6 Leamer's new evidence confirms that defendants' focal point pricing theory does not affect the

7 reliability or the substance of his core conclusion: the long-term price effect of the conspiracy was

8 passed down every step in the distribution chain and borne by consumer at a rate of at least 100

9 percent.  Most importantly, Dr. Leamer's analysis makes clear that common issues of law and

10 fact not only exist but predominate in resolving IPPs' claims on a class-wide basis.  The existence

11 of a reliable, class-wide methodology for proving antitrust impact and damages is enough to

12 certify the class under Rule 23(b)(3).  To the extent a legitimate dispute exists among experts on

13 the common answer to a common question, such a dispute is reserved for the jury.  For the

14 foregoing reasons, the renewed motion should be granted.

15 Dated: August 15, 2018                    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

16

17                                          By: */s/ Brendan P. Glackin*
                                                BRENDAN P. GLACKIN
18

19                                          Elizabeth J. Cabraser (SBN 083151)
                                           Brendan P. Glackin (SBN 199643)
20                                          Lin Y. Chan (SBN 255027)
                                           Michael K. Sheen (SBN 288284)
21                                          Abbye R. Klamann (SBN 311112)
                                           275 Battery Street, 29th Floor
22                                          San Francisco, CA 94111-3339
                                           Telephone: (415) 956-1000
23                                          Facsimile: (415) 956-1008
                                           ecabraser@lchb.com
24                                          bglackin@lchb.com
                                           lchan@lchb.com
25                                          msheen@lchb.com
                                           aklamann@lchb.com

26

27

28

1572086.18

1    Dated: August 15, 2018                    HAGENS BERMAN SOBOL SHAPIRO LLP

2

3                                              By: /s/ Shana E. Scarlett
                                                   SHANA E. SCARLETT
4
                                               Steve W. Berman (*Pro Hac Vice*)
5                                              Jeff D. Friedman (SBN 173886)
                                               Shana E. Scarlett (SBN 217895)
6                                              Benjamin J. Siegel (SBN 256260)
                                               715 Hearst Avenue, Suite 202
7                                              Berkeley, CA 94710
                                               Telephone: (510) 725-3000
8                                              Facsimile: (510) 725-3001
                                               steve@hbsslaw.com
9                                              jefff@hbsslaw.com
                                               shanas@hbsslaw.com
10                                             bens@hbsslaw.com

11   Dated: August 15, 2018                    COTCHETT, PITRE & McCARTHY, LLP

12

13                                             By: /s/ Adam J. Zapala
                                                   ADAM J. ZAPALA
14
                                               Joseph W. Cotchett (SBN 36324)
15                                             Adam J. Zapala (SBN 245748)
                                               Tamarah Prevost (SBN 313422)
16                                             840 Malcolm Road
                                               Burlingame, CA 94010
17                                             Telephone: (650) 697-6000
                                               Facsimile: (650) 697-0577
18                                             jcotchett@cpmlegal.com
                                               azapala@cpmlegal.com
19                                             tprevost@cmplegal.com

20                                             *Interim Co-Lead Class Counsel*
                                               *For Indirect Purchaser Plaintiffs*
21

22

23

24

25

26

27

28

                                      - 26 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

I, Brendan P. Glackin, hereby attest, pursuant to Northern District of California, Local Rule 5-1(i)(3) that concurrence in the filing of this document has been obtained from each of the signatories hereto.


Dated: August 15, 2018          By:     */s/ Brendan P. Glackin*
                                         BRENDAN P. GLACKIN