# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

IN RE LITHIUM ION BATTERIES
ANTITRUST LITIGATION,

This Documents Relates to:

ALL INDIRECT PURCHASER ACTIONS

Case No. 13-MD-02420 YGR (DMR)

MDL No. 2420

**AMENDED ORDER GRANTING MOTION OF PANASONIC AND SANYO DEFENDANTS TO STRIKE INDIRECT PURCHASER PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION**

(Dkt. No. 2396)

The Panasonic and Sanyo Defendants filed their motion to strike the Indirect Purchaser Plaintiffs' (IPPs') "Second Renewed Motion for Class Certification." (Dkt. No. 2396.) Consistent with the Court's Order of August 27, 2018 (Dkt. No. 2403), IPPs filed their opposition on August 30, 2018. (*See* Dkt. No. 2404.) Having thoroughly considered the parties' written arguments in favor of and in opposition to the motion, and good cause appearing, the Court **GRANTS** the motion to strike.

**I.  BACKGROUND**

The Court denied IPPs original motion for class certification without prejudice on April 12, 2017. (Dkt. No. 1735.) The April 12, 2017 Order expressly stated that it was "without prejudice to IPPs revising the analysis to cure the defects identified." (*Id.* at 19.) In their joint case management statement filed July 7, 2017, IPPs indicated that they would seek to make a second class certification motion, and the parties offered competing positions on the length of the schedule that would be needed for briefing that motion and any accompanying expert motions, as well as a projected trial date based upon the Court's ruling on that second class certification motion. (Dkt. No. 1858). At the case management conference on July 14, 2017, IPPs represented that the second class certification motion would be "all but pre-proving our case" and the expert reports offered in

1 | support of that motion "may be able to be . . . final reports." (Transcript of July 14, 2017
2 | proceedings, Dkt. No. 1890, 19:21-20:5.)

3 |     On July 19, 2017, the Court entered a scheduling order based upon the the parties' input,
4 | setting dates for briefing of the second class certification motion, and dates for filing of summary
5 | judgment motions and Daubert motions, as well as a trial date, off the anticipated date by which it
6 | could issue a decision on that motion. (Dkt. No. 1873.)

7 |     On March 5, 2018, the Court issued an order denying IPPs' second motion for class
8 | certification. (Dkt. No. 2197.) During the hearing on the second class certification motion, the
9 | Court inquired as to whether the parties anticipated any problems maintaining the schedule that
10 | previously had been set, with dates calculated from issuance of the order on the second class
11 | certification motion. (Transcript on January12, 2018 hearing, Dkt. No. 2184, at 78:18-23.) The
12 | Court engaged in the following colloquy with defendants' counsel, Mr. Kessler, and IPPs' counsel,
13 | Mr. Friedman:

> MR. KESSLER: I think, Your Honor, that, from our standpoint, most of the fact discovery has been completed. And the real issue is whether your Court's class certification ruling would raise any different factual needs that needed to be addressed in some way, going forward . . . . In other words, from my standpoint, if we ran everything 60 days from your class certification ruling and did -- I think we could complete, you know, whatever remaining fact discovery there was and then have our expert reports geared off after that. Unless, of course, Your Honor were to deny cert and give them a third chance, which I would urge you not to do. I would urge you -- you know, either say enough or the other. But that's --
>
> THE COURT: *That's not my plan. I mean, I think the plan is, you know, it's granted, it's denied, or it's granted in a modified version.* Right?
>
> MR. KESSLER: Right.
>
> THE COURT: *We're not going to go through this again*.
>
> MR. KESSLER: Then I would say 60 days from the ruling, you know -- if it were granted in some form, 60 days from the ruling would be enough for remaining fact discovery. I don't know if Jeff [Friedman] feels the same.
>
> MR. FRIEDMAN: We agree, Your Honor.

(*Id.* at 78:24-79:22, emphasis supplied.)

1    By order dated April 10, 2018, the Court requested that the parties submit a joint letter
2    brief, describing the impact, if any, of the order denying the second class certification motion on
3    some pending discovery disputes. (Dkt. No. 2255.) In the parties' joint response letter brief of
4    April 12, 2018, IPPs indicated that they were seeking to appeal the order denying the second class
5    certification motion, and that "Rule 23(c)(1)(C) permits the Court to alter or amend its class
6    certification order at any time before final judgment." (Dkt. No. 2257 at 2.) In that same joint
7    letter, they indicated that "IPPs intend to try this case *on behalf of the individual plaintiffs*." (*Id.* at
8    3, emphasis supplied.)

9    On June 27, 2018, the Ninth Circuit Court of Appeal ordered that the petition for
10   permission to appeal the order denying IPPs' renewed motion for class certification was denied.
11   (Dkt. No. 2347.)

12   On July 27, 2018, the parties filed a joint submission regarding the case management
13   conference set for August 3, 2018, indicating that there were no ripe disputes and they were
14   proceeding on the schedule for filing of summary judgment briefing. (Dkt. No. 2361.)

15   On August 10, 2018, the deadline in the Court's scheduling order for the filing of summary
16   judgment motion and Daubert motions as to their experts' merits reports, IPPs filed their "Second
17   Renewed Motion for Class Certification," in actuality a *third* class certification motion. (*See* Dkt.
18   No. 2369, *corrected at* Dkt. No. 2383.) IPPs filed their third class certification motion without first
19   seeking leave from the Court or mentioning that they intended to file a third class certification
20   motion in any case management or other filing. In the motion, IPPs relied on Rule 23(c)(1)(C) as
21   authority for their third attempt to gain certification of a class.

**II.    DISCUSSION**

The Federal Rules of Civil Procedure expressly authorize courts to strike a pleading that is filed in violation of a scheduling order. *See* Fed. R. Civ. P. 16(f)(1)(C) ("On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order."); Fed. R. Civ. P. 37(b)(2)(A)(iii) (court may issue order "striking pleadings in whole or in part"); Adv. Comm.

Notes, Fed. R. Civ. P. 16(f) (1983) ("Among the sanctions authorized by [Rule 16(f)] are . . . striking a pleading. . . .").

Scheduling orders, and the parties' adherence to those orders, have special importance in multi-district litigation, as here. In multi-district litigation, "the district judge must establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial." *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1232 (9th Cir. 2006). The Ninth Circuit has held:

> A district judge charged with the responsibility of "just and efficient conduct" of the multiplicity of actions in an MDL proceeding must have discretion to manage them that is commensurate with the task. The task is enormous, for the court must figure out a way to move thousands of cases toward resolution on the merits while at the same time respecting their individuality. The court is also confronted with substantial legal questions . . . *Daubert* motions, questions of joinder and federal jurisdiction, class certification, timeliness of claims, and causation. For it all to work, multidistrict litigation assumes cooperation by counsel and macro-, rather than micro-, judicial management because otherwise, it would be an impossible task for a single district judge to accomplish. Coordination of so many parties and claims requires that a district court be given broad discretion to structure a procedural framework for moving the cases as a whole as well as individually, more so than in an action involving only a few parties and a handful of claims. . . . In sum, multidistrict litigation is a special breed of complex litigation where the whole is bigger than the sum of its parts. The district court needs to have broad discretion to administer the proceeding as a whole, which necessarily includes keeping the parts in line. Case management orders are the engine that drives disposition on the merits.

*Id.* at 1231–32. Thus, "[s]ound management of the court's docket also counsels in favor of sanctions as a deterrent to others, particularly in the context of an MDL proceeding where there are thousands of plaintiffs and tag-along cases are continually being added." *Id.* at 1234 (court acted within its discretion in dismissing individual plaintiffs' actions for failure to comply with case management order).

Here, the Court's scheduling orders specifically set forth the briefing schedule for second class certification motion, which it invited by denying the original class certification motion without prejudice. The Court further set the trial date and dispositive motion deadlines based upon a schedule that relied on the second class certification motion being the *final* full-blown motion it would consider from IPPs. Indeed, the Court so stated on the record during the hearing of the

4

second motion for class certification. While the Court's scheduling orders was silent as to the filing of a *third* class certification motion, the entire case plan depended upon class certification being settled once the Court issued its decision on the second class certification motion.

Rule 23 provides courts the discretion to modify orders granting or denying class certification prior to a final judgment. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment"). "The court's discretion to reconsider class certification, however, cuts both ways." *Hartman v. United Bank Card, Inc.*, 291 F.R.D. 591, 597 (W.D. Wash. 2013) (denying motion for leave to file a second motion for class certification); *see also In re Initial Public Offering Sec. Litig.,* 483 F.3d 70, 73 (2d Cir.2007) (district courts "have ample discretion to consider (or decline to consider) a revised class certification motion after initial denial."). "In the absence of materially changed or clarified circumstances ... courts should not condone a series of rearguments on the class issues by either the proponent or the opponent of the class [.]" *Hartman,* 291 F.R.D. at 597 *quoting* NEWBERG ON CLASS ACTIONS § 7:47. "***Plaintiffs must show some justification for filing a second motion, and not simply a desire to have a second or third run at the same issues***." *Id.* (emphasis supplied).[1]

---

[1] The authorities cited by plaintiff nearly all limit the filing of a renewed motion to those circumstances in which the court has expressly granted leave to renew. *See e.g.*, *Dunbar v. Google, Inc.*, No. 5:12-CV-003305-LHK, 2012 WL 6202797, at *5 (N.D. Cal. Dec. 12, 2012) (original class certification denial was "without prejudice" and court granted leave to file a second class certification motion based on amended complaint); *In re Apple iPod iTunes Antitrust Litig.*, No. 05-0037, 2011 WL 5864036 at n.7 (N.D. Cal. Nov. 22, 2011) (considering plaintiffs' second class certification motion after prior motion "denied without prejudice to being renewed"); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 106 (N.D. Cal. 2008) ("Court denied without prejudice Plaintiffs' motion for class certification, indicating that Plaintiffs could renew their motion when they had ample opportunity for discovery"); *Bushbeck v. Chicago Title Ins. Co.*, No. C08-0755JRL, 2012 WL 405173, at *2 n.1 (W.D. Wash. Feb. 8, 2012) (granting motion for leave to file "renewed" motion for class certification after prior motion stayed and never ruled on, after which court set new scheduling order for class certification); *Terrill v. Electrolux Home Prods., Ind.*, 274 F.R.D. 698, 700-01 (S.D. Ga. 2011) (granting motion for leave to file second motion for class certification where plaintiffs offered new evidence, belatedly obtained due to defendants' failure to produce discovery by set deadlines); *Rosales v. El Rancho Farms*, No. CIV-F-09-0707 AWI, 2012 WL 2684979, at *6 (E.D. Cal. July 6, 2012) (motion for reconsideration of denial of class certification granted in part, based upon new evidence, giving plaintiff leave to file a second motion for class certification); *but see Centeno v. Inslee*, 310 F.R.D. 483, 486 (W.D. Wash. 2015) (denying on the merits second motion for class certification brought based upon narrowed class definition). Further, *none* of the cases cited by IPPs would support filing of a *third* class

Thus, the district court in *Hartman* denied a request for leave to file a second motion for class certification, finding no changed circumstances where plaintiffs offered only that a "proposed revised class definition, coupled with additional discovery and expert analysis and testimony" would address the Court's concerns in the order denying the prior motion for class certification. *Id* at 597. IPPs now seek to certify a narrower class, relying upon the same methodologies and same transactional sales data used by their expert in the prior motions. As in *Hartman*, IPPs have revised their expert opinions and narrowed their class definitions, but offer no "changed circumstances." The addition of testimony from company representatives that could, with the exercise of reasonable diligence, have been offered earlier, does not alter the analysis.

Rule 23(c)(1)(C) does not provide independent justification to sidestep the standards for seeking to renew or reconsider an order in the absence of the court's express provision of leave to renew the motion. *See Daniel F. v. Blue Shield of California*, No. C 09-2037 PJH, 2015 WL 3866212, at *3 (N.D. Cal. June 22, 2015) ("Rule 23(c)(1)(C) does not reference motions to alter or amend class certification orders, and it is not a separate mechanism by which a party can seek reconsideration of a prior order relating to class certification. Rather it is simply a provision authorizing the court to alter or amend an order relating to class certification at any time prior to judgment.") While Rule 23 gives the Court discretion to modify a class certification order, reconsideration of the prior order in the absence of "newly discovered evidence, [ ]clear error, or . . . an intervening change in the controlling law" should be denied all but the most unusual circumstances, and certainly not when "used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (reconsideration should not be granted except in highly unusual circumstances); *see also Gardner v. First Am. Title Ins. Co.*, 218 F.R.D. 216, 218 (D. Minn. 2003) ("Rule 23(c)(1) provides Plaintiffs

---

certification motion where no leave had been granted to do so. *Cf. Soto v. Diakon Logistics (Delaware), Inc.*, No. 08CV0033 L WMC, 2013 WL 5939787, at *1 (S.D. Cal. Nov. 5, 2013) (denying motion to reconsider order granting third motion for class certification, after first two class certification motions had been "denied without prejudice").

with a *limited* opportunity to adduce additional facts: It is not a Trojan Horse by which Plaintiffs may endlessly reargue the legal premises of their motion.") (emphasis in original). Further, in the context of multi-district litigation such as this, it would set a dangerous precedent to permit filing of renewed motions for class certification (or decertification) wholly outside the court's scheduling order and careful management of the actions, and without any request or justification for seeking leave to do so.

For all the foregoing reasons, the motion to strike IPPs' second renewed motion for class certification is **GRANTED**. The motion is **STRICKEN**. The accompanying motions to seal in connection with the second renewed motion for class certification (Dkt. Nos. 2369, 2382) are terminated as moot.[2]

This terminates Docket Nos. 2369, 2382, 2383, 2396, and 2404.

**IT IS SO ORDERED.**

Dated: September 4, 2018

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[2] The motion to seal portions of the opposition to the motion to strike (Dkt. No. 2404) is **GRANTED**.