Elizabeth J. Cabraser (State Bar No. 083151)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
ecabraser@lchb.com

Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
steve@hbsslaw.com

Adam Zapala (State Bar No. 245748)
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com

*Interim Co-Lead Class Counsel for*
*Indirect Purchaser Plaintiffs*

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

#### OAKLAND DIVISION

| | |
|---|---|
| IN RE LITHIUM ION BATTERIES ANTITRUST LITIGATION | Case No. 4:13-md-02420 YGR (DMR) |
| | MDL No. 2420 |
| This Document Relates to: | **INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DIRECT NOTICE TO THE CLASS REGARDING THE SDI, TOKIN, TOSHIBA & PANASONIC SETTLEMENTS** |
| ALL INDIRECT PURCHASER ACTIONS | |
| | Date:       March 5, 2019 |
| | Time:       2:00 p.m. |
| | Judge:      Hon. Yvonne Gonzalez Rogers |
| | Location:   Courtroom 1, 4th Floor |

1          **NOTICE OF MOTION AND MOTION**

2          PLEASE TAKE NOTICE that on March 5, 2019, at 2:00 p.m. or as soon thereafter as the

3    matter may be heard by the Honorable Yvonne Gonzalez Rogers of the United States District

4    Court of the Northern District of California, located in Courtroom 1, at 1301 Clay Street,

5    Oakland, California 94612, Indirect Purchaser Plaintiffs ("Plaintiffs") will and hereby do move

6    the Court, pursuant to Federal Rules of Civil Procedure 23 and in accordance with the Northern

7    District's Procedural Guidance for Class Action Settlements, for an order:

8          (1)      finding that the Court will likely approve the proposed class action settlements

9    with (a) Samsung SDI Co., Ltd. and Samsung SDI America, Inc. (collectively, "SDI"); (b)

10   TOKIN Corporation ("TOKIN"); (c) Toshiba Corporation ("Toshiba"); and (d) Panasonic

11   Corporation, Panasonic Corporation of North America, SANYO Electric Co., Ltd., and SANYO

12   North America Corporation (collectively, "Panasonic"), under Rule 23(e)(2);

13         (2)      finding that the Court will likely certify the settlement class;

14         (3)      directing notice to the settlement class in connection with the proposed class action

15   settlements, and approving the proposed forms and manner thereof;

16         (4)      appointing plaintiffs Jason Ames, Caleb Batey, Christopher Bessette, Cindy

17   Booze, Matt Bryant, Steve Bugge, William Cabral, Matthew Ence, Drew Fennelly, Sheri

18   Harmon, Christopher Hunt, John Kopp, Linda Lincoln, Patrick McGuiness, Joseph O'Daniel,

19   Tom Pham, Piya Robert Rojanasathit, Bradley Seldin, Donna Shawn, David Tolchin, Bradley

20   Van Patten, the City of Palo Alto, and the City of Richmond (the "Named Representatives") as

21   representatives for the settlement class for purposes of disseminating notice;

22         (5)      appointing Cotchett, Pitre & McCarthy, LLP; Hagens Berman Sobol Shapiro LLP;

23   and Lieff Cabraser Heimann & Bernstein, LLP (collectively, "Interim Co-Lead Counsel") as

24   counsel for the settlement class;

25         (6)      authorizing retention of Epiq Class Action & Claims Solutions ("Epiq") as notice

26   and claims administrator; and

27         (7)      scheduling a hearing to determine whether the proposed settlements are fair,

28   reasonable, and adequate under Rule 23(e)(2) and whether the settlement class should be certified

1    (the "Final Approval Hearing").

2           This motion is based on this Notice of Motion and Motion to Direct Notice to the Class

3    Regarding the SDI, TOKIN, Toshiba, and Panasonic Settlements; the following memorandum of

4    points and authorities; the Declaration of Brendan P. Glackin, filed concurrently herewith; the

5    Declaration of Cameron R. Azari, filed concurrently herewith; the pleadings and the papers on

6    file in this action; and such other matters as the Court may consider.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................... 1

II. BACKGROUND ............................................................................................... 2

    A. PROCEDURAL HISTORY ...................................................................... 2

    B. THE SDI, TOKIN, TOSHIBA, AND PANASONIC SETTLEMENTS ............... 5

III. LEGAL STANDARD ....................................................................................... 7

IV. ARGUMENT ................................................................................................... 8

    A. THE SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE. .......... 8

        1. The Class Has Been Zealously Represented. .............................. 8

        2. The Settlement Agreements Result from Arm's-Length Negotiations. ......................................................................... 10

        3. The Settlement Agreements Represent Substantial Relief for the Class. ...................................................................... 12

            a. The Settlements Are Fair, Reasonable, and Adequate. ................ 12

            b. The Claims Process Is Straightforward. ....................... 13

            c. Counsel Will Seek Reasonable Attorney's Fees. .......................... 15

            d. There Are No Other Related Agreements. .................................... 17

        4. The Settlement Agreements Treat Class Members Equitably. ................. 17

        5. The Settlements Satisfy the District's Procedural Guidance. ................... 19

            a. The Litigation and Settlement Classes Are Identical. .................... 19

            b. The Releases Track the Allegations in the Complaint. ................. 19

            c. The Settlement Administrator Selection Process and Costs ......... 21

            d. Costs and Expenses ...................................................... 22

            e. Service Awards ............................................................. 23

            f. Reversions and *Cy Pres* Awardees ............................... 24

            g. Class Action Fairness Act ("CAFA") ........................... 25

            h. Past Distributions ......................................................... 25

    B. THE SETTLEMENT CLASS MERITS CERTIFICATION. .............................. 26

        1. The Settlement Class Meets the Requirements of Rule 23(a) ................... 26

        2. Common Issues Predominate Under Rule 23(b)(3). ................................. 28

            a. Predominance Is Readily Shown in Antitrust Cases. .................... 29

            b. Residents of Non-Repealer States Should be Included. ................. 30

            c. Differing Allocation of Funds Does Not Affect Predominance. ........................................................... 32

# TABLE OF CONTENTS
## (continued)

Page

      3.    The Settlement Class Satisfies Superiority Under Rule 23(b)(3). ............ 32

C.    THE PROPOSED NOTICE PROGRAM IS THE BEST PRACTICABLE......... 33

      1.    The Proposed Notice Forms Are Plain and Easy to Understand. ............. 33

      2.    The Proposed Notice Plan Will Reach a Broad Audience. ....................... 34

D.    PROPOSED SCHEDULE FOR OF NOTICE AND FINAL APPROVAL ........ 35

V.    CONCLUSION ........................................................................................................... 35

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................ 15, 26, 28, 29

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ............................................................................... 29, 31

*Anderson v. Nextel Retail Stores, LLC*,
   No. CV 07-4480-SVW FFMX, 2010 WL 8591002 (C.D. Cal. Apr. 12, 2010)........................ 18

*Angell v. City of Oakland*,
   No. 13-CV-00190 NC, 2015 WL 65501 (N.D. Cal. Jan. 5, 2015) ........................................... 21

*Chavez v. PVH Corp.*,
   No. 13-CV-01797-LHK, 2015 WL 9258144 (N.D. Cal. Dec. 18, 2015) ................................ 21

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ...................................................................................................... 32

*Facciola v. Greenberg Traurig LLP*,
   281 F.R.D. 363 (D. Ariz. 2012) .......................................................................... 27

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)..................................................................................... passim

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) ......................................................................................... 21

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) ................................................................................................ 1, 3

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................................ 16

*In re Anthem, Inc. Data Breach Litig.*,
   No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ............................... 24

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)........................................................................................... 12

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   308 F.R.D. 606 (N.D. Cal. 2015) ................................................................................... 27

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. C-07-5944 JST, 2016 WL 183285 (N.D. Cal. Jan. 14, 2016)..................................... 17, 29

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. 3:07-CV-5944 JST, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016)................................ 5, 13

*In re Citric Acid Antitrust Litig.*,
   No. 95-1092, 1996 WL 655791 (N.D. Cal. Oct. 2, 1996)................................................. 28, 29

*In re Currency Conversion Fee Antitrust Litig.*,
   263 F.R.D. 110 (S.D.N.Y. 2009) .................................................................................... 13

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. M 02-1486 PJH, 2006 WL 1530166, (N.D. Cal. June 5, 2006)................................... 27, 29

*In re Hyundai & Kia Fuel Econ. Litig.*,
   881 F.3d 679 (9th Cir. 2018)........................................................................................... 32

*In re Hyundai & Kia Fuel Econ. Litig.*,
   No. 15-56014, 2018 WL 3597310 (9th Cir. July 27, 2018).................................................. 32

*In re Ikon Office Sols., Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ........................................................................... 18

*In re Lithium Ion Batteries Antitrust Litig.*,
No.13-md-02420-YGR, 2018 WL 3064391 (N.D. Cal. May 16, 2018) ........................ 16, 17

*In re Mexico Money Transfer Litig.*,
267 F.3d 743 (7th Cir. 2001) ................................................................................ 32

*In re MicroStrategy, Inc. Sec. Litig.*,
148 F. Supp. 2d 654 (E.D. Va. 2001) ..................................................................... 18

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
269 F.R.D. 80 (D. Me. 2010) ................................................................................ 29

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) .................................................................. 23, 24, 33

*In re Optical Disk Drive Prod. Antitrust Litig.*,
No. 3:10-MD-2143 RS, 2016 WL 7364803 (N.D. Cal. Dec. 19, 2016) ................... 13

*In re Rubber Chems. Antitrust Litig.*,
232 F.R.D. 346 (N.D. Cal. 2005) ................................................................... 27, 29

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................................. 12

*In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*TFT- LCD I*"),
267 F.R.D. 583 (N.D. Cal. 2010) ........................................................................... 29

*In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*TFT-LCD II*"),
267 F.R.D. 291 (N.D. Cal. 2010) ........................................................................... 27

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. M 07-1827 SI, 2013 WL 149692 (N.D. Cal. Jan. 14, 2013) ........................... 17, 25

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
No. 2672 CRB (JSC), 2016 WL 6091259 (N.D. Cal. Oct. 18, 2016) ....................... 23

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) .................................................................................. 13

*Indirect Purchaser Plaintiffs v. Andrews*,
No. 17-17369 (9th Cir. filed Nov. 24, 2017) ........................................................... 2

*Indirect Purchaser Plaintiffs v. Bednarz*,
No. 17-17367 (9th Cir. filed Nov. 24, 2017) ........................................................... 2

*Knight v. Red Door Salons, Inc.*,
No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .............................. 16

*Lofton v. Verizon Wireless (VAW) LLC*,
No. C 13-05665 YGR, 2016 WL 7985253 (N.D. Cal. May 27, 2016) ...................... 16

*Microsoft Corp. v. Baker*,
137 S. Ct. 1702 (2017) .......................................................................................... 11

*Perry v. Arise Virtual Solutions Inc.*,
No. 11-01488 YGR, 2013 WL 12174056 (N.D. Cal. May 15, 2013) ...................... 17

*Priceline.com, Inc. v. Silberman*,
405 F. App'x 532 (2d Cir. 2010) .......................................................................... 13

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ................................................................................ 32

*Rhom v. Thumbtack, Inc.*,
    No. 16-CV-02008-HSG, 2017 WL 4642409 (N.D. Cal. Oct. 17, 2017) ................................... 24
*Rodriguez v. W. Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................................ 12, 23
*Slaven v. BP Am., Inc.*,
    190 F.R.D. 649 (C.D. Cal. 2000) ................................................................................... 27
*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ......................................................................................... 23
*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) ............................................................................... 30, 31, 32
*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................................ 27
*Young v. LG Chem Ltd.*,
    No. 17-15795 (9th Cir. filed Apr. 20, 2017) ................................................................... 2

**Statutes**
28 U.S.C. § 1332(d) ............................................................................................................. 25
28 U.S.C. § 1712 .................................................................................................................. 25
28 U.S.C. § 1713 .................................................................................................................. 25
28 U.S.C. § 1714 .................................................................................................................. 25
28 U.S.C. § 1715(b) ............................................................................................................. 25
Antitrust Criminal Penalty Enhancement and Reform Act of 2004,
    Pub. L. No. 108-237, 118 Stat. 661 ................................................................................ 13

**Rules**
Fed. R. Civ. P. 23 .............................................................................................................. 2, 7
Fed. R. Civ. P. 23(a)(1) ....................................................................................................... 27
Fed. R. Civ. P. 23(a)(3) ....................................................................................................... 27
Fed. R. Civ. P. 23(a)(4) ....................................................................................................... 28
Fed. R. Civ. P. 23(b)(3) ................................................................................................... 28, 33
Fed. R. Civ. P. 23(c)(2)(B) .................................................................................................. 33
Fed. R. Civ. P. 23(e) ............................................................................................................. 7
Fed. R. Civ. P. 23(e) 2003 advisory committee notes ....................................................... 17
Fed. R. Civ. P. 23(e)(1) ......................................................................................................... 8
Fed. R. Civ. P. 23(e)(1)(B) ............................................................................................... 7, 33
Fed. R. Civ. P. 23(e)(1)(B)(ii) ............................................................................................. 26
Fed. R. Civ. P. 23(e)(2) .............................................................................................. 7, 8, 17
Fed. R. Civ. P. 23(e)(2) 2018 advisory committee notes ....................................... 8, 12, 13
Fed. R. Civ. P. 23(e)(2)(A) .................................................................................................... 8
Fed. R. Civ. P. 23(e)(2)(C) .................................................................................................. 12
Fed. R. Civ. P. 23(e)(2)(C)(iii) ............................................................................................. 15
Fed. R. Civ. P. 23(e)(2)(D) .................................................................................................. 17
Fed. R. Civ. P. 23(e)(3) ................................................................................................. 12, 17
Fed. R. Civ. P. 23(e)(4) ......................................................................................................... 7
Fed. R. Cvi. P. 23(e)(5) ......................................................................................................... 7

**TABLE OF AUTHORITIES**
**(continued)**

Procedural Guidance for Class Action Settlements,
    https://www.cand.uscourts.gov/ClassActionSettlementGuidance
    (last updated Dec. 5, 2018) .............................................................................. passim

**Treatises**
1 Newberg on Class Actions § 3:11 (5th ed.) ............................................ 27
3 Newberg on Class Actions § 7:35 (5th ed.) ............................................ 29
4 Newberg on Class Actions § 13:10 (5th ed.) ............................................ 7
Manual for Complex Litigation (4th ed. 2004) § 21.632 ................................. 7, 26

**Other Authorities**
Consumer Financial Protection Bureau, Arbitration Study: Report to Congress,
    Pursuant to Dodd–Frank Wall Street Reform & Consumer Protection Act § 1028(a)
    (Mar. 2015), *available at* https://files.consumerfinance.gov/f/201503_cfpb_arbitration-study-
    report-to-congress-2015.pdf ...................................................................... 15
U.S. Courts, *U.S. Courts of Appeals—Decisions in Cases Terminated on the Merits,
    by Circuit & Nature of Proceeding, During the 12-Month Period Ending Mar. 31, 2018* ....... 19

## I.    INTRODUCTION

Plaintiffs brought this action on behalf of a nationwide class to recover damages caused by a decade-long conspiracy to fix prices for rechargeable lithium ion batteries.  The class Plaintiffs seek to represent consists of United States consumers who purchased portable computers, power tools, camcorders, and digital cameras that are powered by those batteries.[1] This motion requests approval to provide notice to these consumers of settlements that would conclude this litigation, based on findings that the Court would likely approve the settlements and certify the class.

Plaintiffs have now reached settlements with all remaining defendants in this action— SDI, TOKIN, Toshiba, and Panasonic (collectively, the "Settling Defendants").  Together, these Settlement Agreements[2] provide substantial compensation to settlement class members—$49 million in total—and, if approved, will conclude the litigation entirely.  Each of the Settlement Agreements is fair, reasonable, and adequate: class representatives and their counsel vigorously prosecuted the case and obtained an excellent result in the face of extraordinary risks.  Plaintiffs also propose an allocation plan, based on a finding and recommendation by the Honorable Rebecca J. Westerfield, that meaningfully reflects the greater settlement value of claims by residents of states that have passed laws allowing recovery by indirect purchasers (so-called "*Illinois Brick* repealer states") versus residents of states that have not done so ("non-repealer states").[3]  In addition, the proposed settlement class will warrant certification upon final approval because all major issues in the nationwide class are common ones that can be adjudicated collectively.  This includes any differences between the claims of class members from *Illinois Brick* repealer and non-repealer states, which are legal questions that differ only by state, not by individual class member, and which can be resolved in one stroke as to the entire class.

---

[1] *See generally* Pls.' 4th Consol. Am. Compl. (Mar. 18, 2016), ECF No. 1168 ("Amended Complaint" or "Compl.").

[2] *See* Glackin Decl., Exs. A (SDI Settlement), B (TOKIN Settlement), C (Toshiba Settlement), D (Panasonic Settlement).

[3] The term "repealed" also refers to a decision of the state's highest court that the relevant state law affords a right of recovery to consumers notwithstanding the Supreme Court's decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

Pursuant to Rule 23 and this District's Procedural Guidance, Plaintiffs respectfully request that this Court (1) find it will likely approve the Settlement Agreements; (2) find it will likely certify the settlement class upon final approval; (3) direct notice to the settlement class; (4) appoint the Named Representatives as representatives for the settlement class for purposes of disseminating notice; (5) appoint Interim Co-Lead Counsel Class Counsel as counsel for the settlement class; (6) authorize retention of Epiq as notice and claims administrator; and (7) schedule a Final Approval Hearing.

## II.     BACKGROUND

### A.     PROCEDURAL HISTORY

The Settlement Agreements presented here bring to an end extensive and hard-fought litigation that began in October 2012 and that was centralized in this Court in February 2013. As detailed below, and as this Court knows, this case has been typified by voluminous, contested discovery and multiple rounds of motions addressing complex antitrust and Rule 23 issues.

Plaintiffs reached their first settlement with defendants Sony Corporation, Sony Energy Devices Corporation, and Sony Electronics Inc. (collectively, "Sony") in November 2015, resulting in a recovery of $19.5 million. Two months later, Plaintiffs moved for class certification.[4] While that motion was pending, Plaintiffs reached additional settlements with defendants LG Chem Ltd. and LG Chem America, Inc. (collectively, "LG Chem"), on November 14, 2016, for $39 million; defendants Hitachi Maxell, Ltd. and Maxell Corporation of America (collectively, "Hitachi Maxell"), on December 16, 2016, for $3.45 million; and defendant NEC Corporation ("NEC"), on December 31, 2016, for $2.5 million. In March and October of 2017 the Court approved these settlements and certified them for class treatment pursuant to Rule 23.[5] Appeals remain pending as to those orders.[6]

---

[4] Pls.' Mot. for Class Certification (Jan. 22, 2016), ECF No. 1036.

[5] *See* Order Granting Final Approval of Class Action Settlements with Hitachi Maxell, NEC & LG Chem Defs. (Oct. 27, 2017), ECF No. 2003; Order Granting Final Approval of Class Action Settlement with Sony Defs. (Mar. 20, 2017), ECF No. 1712.

[6] *See Young v. LG Chem Ltd.*, No. 17-15795 (9th Cir. filed Apr. 20, 2017); *Indirect Purchaser Plaintiffs v. Bednarz*, No. 17-17367 (9th Cir. filed Nov. 24, 2017); *Indirect Purchaser Plaintiffs v. Andrews*, No. 17-17369 (9th Cir. filed Nov. 24, 2017).

In April 2017, the Court denied without prejudice Plaintiffs' motion for class certification.[7] The order contained guidance on choice of law that suggested the Court would not certify a class that included residents of non-repealer states seeking to proceed under the Cartwright Act. After further discovery, Plaintiffs filed a renewed motion for class certification.[8] The renewed motion sought to certify a class composed only of residents of all *Illinois Brick* repealer states, asserting claims under the Cartwright Act. In early 2018, while Plaintiffs' renewed motion was pending, Plaintiffs reached settlement agreements with three additional defendants. First, SDI agreed to pay $39.5 million, representing approximately 18.8 percent of the estimated damages attributable to its sales. Second, TOKIN agreed to pay $2 million, representing approximately 207.0 percent of the estimated damages attributable to it. Lastly, Toshiba agreed to pay $2 million, representing approximately 34.5 percent of the estimated damages attributable to it. Only defendant Panasonic remained.

On March 5, 2018, the Court denied Plaintiffs' renewed motion for class certification.[9] The Ninth Circuit denied Plaintiffs' Rule 23(f) petition on June 27, 2018. Following additional discovery, Plaintiffs filed a second renewed motion for class certification,[10] which the Court struck on September 4, 2018.[11] The parties then briefed summary judgment and *Daubert* motions.[12] The parties also began preparing for trial, which was scheduled to commence January

---

[7] Order Den. Without Prejudice Mot. for Class Certification; Granting in Part & Den. in Part Mots. to Strike Expert Reports or Portions Thereof (Apr. 12, 2017), ECF No. 1735.

[8] Pls.' Renewed Mot. for Class Certification (Sept. 26, 2017), ECF No. 1960-2.

[9] Order Den. Pls.' Renewed Motion for Class Certification; Granting Motion to Strike Expert Report of Edward E. Leamer, Ph. D. (Mar. 5, 2018), ECF No. 2197 at 8.

[10] Pls.' Corrected 2d Renewed Mot. for Class Certification (Aug. 15, 2018), ECF No. 2383.

[11] Am. Order Granting Panasonic's Mot. to Strike Pls.' 2d Renewed Mot. for Class Certification (Sept. 4, 2018), ECF No. 2407.

[12] *See* Panasonic's Mot for Summ. J. (Aug. 10, 2018), ECF No. 2371; Pls.' Opp'n to Panasonic's Mot. for Summ. J. (Sep. 7, 2018), ECF No. 2410; Panasonic's Reply in Further Supp. of Mot. for Summ. J. (Oct. 5, 2018), ECF No. 2428-3; Defs.' Mot. to Exclude Proposed Expert Test. of Dr. Edward E. Leamer (Aug. 10, 2018), ECF No. 2366; Pls.' Opp'n to Defs.' Mot. to Exclude Proposed Expert Test. of Dr. Edward E. Leamer (Sept. 7, 2018), ECF No. 2414; Defs.' Reply in Further Supp. of Mot. to Exclude Proposed Expert Test. of Dr. Edward E. Leamer (Oct. 5, 2018), ECF No. 2426; Defs.' Mot. to Exclude Proposed Expert Test. of Dr. Rosa M. Abrantes-Metz (Aug. 10, 2018), ECF No. 2370; Pls.' Opp'n to Defs.' Mot. to Exclude Expert Test. of Dr. Rosa M. Abrantes-Metz (Sept. 7, 2018), ECF No. 2415; Defs.' Reply in Further Supp. of Mot. to

MOTION TO DIRECT NOTICE TO CLASS RE
SDI, TOKIN, TOSHIBA & PANASONIC SETTLEMENTS
CASE NO. 4:13-MD-02420 YGR (DMR)

28, 2019.[13]  On November 7, 2019, Plaintiffs and Panasonic reached a settlement for $5.5 million.[14]  Subject to court approval, this ended the litigation.

To recommend a plan of distribution for this final round of settlements, Interim Co-Lead Counsel retained two advocates and one neutral mediator.[15]  Counsel undertook this process in order to address the significantly changed circumstances of settlements that occurred after the choice-of-law analysis contained in this Court's first order provisionally denying class certification.[16]  Laura Alexander, of Cohen Milstein Sellers & Toll PLLC, advocated on behalf of residents of repealer states,[17] which have recognized indirect purchaser standing.  Marc M. Seltzer and Krysta Kauble Pachman, of Susman Godfrey LLP, advocated on behalf of residents of non-repealer states whose laws do not allow indirect purchaser claims.  Neither Interim Co-Lead Counsel nor the Named Representatives had any input in or influence on this process after it was set in motion (except as to scheduling deadlines and the like).[18]

On December 6, 2018, Judge Westerfield issued a Neutral Analysis, recommending that

Exclude Proposed Expert Test. of Dr. Rosa M. Abrantes-Metz (Oct. 5, 2018), ECF No. 2429; Pls.' Mot. to Exclude Proposed Expert Test. of Dr. Laila Haider (Aug. 10, 2018), ECF No. 2368; Defs.' Opp'n to Mot. to Exclude Proposed Expert Test. of Dr. Laila Haider (Sept. 7, 2018), ECF No. 2412; Pls.' Reply in Supp. of Mot. to Exclude Proposed Expert Test. of Dr. Laila Haider (Oct. 5, 2018), ECF No. 2431.

[13] *See* Order Setting Schedule (July 19, 2017), ECF No. 1873.

[14] Glackin Decl. ¶ 5.

[15] Glackin Decl. ¶ 9.  The advocates are leading antitrust litigators who have served as lead counsel in major antitrust litigations.  Glackin Decl. ¶ 10.  The mediator, Hon. Rebecca J. Westerfield (Ret.), is a JAMS panelist and former Circuit Court Judge of Jefferson County, Kentucky, who is widely regarded as a respected neutral in multi-party complex civil and class cases.  *Id.* ¶ 11.  Copies of their statements and Judge Westerfield's recommendation are filed herewith as Exhibits E–I to the Glackin Declaration.

[16] Pursuant to Rule 23(e)(3), Plaintiffs represent that they retained these parties for the limited purpose of advocating for potentially divergent interests among class members and to assist the Court in determining the most fair and efficient allocation of settlement funds.  *See id.* ¶ 9.

[17] For purposes of this assignment, the repealer states are Alabama, Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.  *See* App. A (Table of States with Indirect Purchaser Standing).

[18] It is therefore irrelevant that representatives of non-repealer states did not participate; the process was a "black box" as far as the Named Representatives and their lawyers were concerned.

1   (a) "a fair, reasonable, and adequate allocation of settlement funds would be to allocate all funds

2   to Class Member residents of repealer states," or in the alternative, (b) the Court "only allocate

3   Class Member residents from non-repealer states 10% of the settlement funds."[19]

4       Judge Westerfield's recommendation was based on several findings.[20] *First*, looking to

5   this Court's first class certification order, she concluded that residents of non-repealer states

6   cannot proceed under California law and that those claims are therefore worthless. *Second*, she

7   determined that residents of non-repealer states would not be releasing any other claims of value.

8   Relying on Special Master Martin Quinn's opinion in *CRT*, Judge Westerfield concluded that

9   none of those residents' claims for restitution, racketeering, and damages under the Wilson Tariff

10  Act are viable.[21] Nevertheless, Judge Westerfield held out the possibility that this Court may find

11  that "while weak, some of the non-repealer state residents' released claims have at least some

12  value . . . ." Under such circumstances, Judge Westerfield recommended that the Court allocate

13  10 percent of the settlement funds to those class members, so long as recovery for those class

14  members' claims are not themselves depleted by the cost of administering such claims.[22]

15      **B.      THE SDI, TOKIN, TOSHIBA, AND PANASONIC SETTLEMENTS**

16      The Settlement Agreements are substantially identical to one another in their non-

17  monetary terms. They also follow the same form as prior settlements with LG Chem, Hitachi

18  Maxell, and NEC. Each agreement grants a release (and otherwise binds) on behalf of a single

19  nationwide, cylindrical battery-only class of purchasers of portable computers, power tools,

20  camcorders, or replacement batteries, defined as follows:

21              [A]ll persons and entities who, as residents of the United States and
                during the period from January 1, 2000 through May 31, 2011,
22              indirectly purchased new for their own use and not for resale one of
                the following products which contained a lithium-ion cylindrical
23              battery manufactured by one or more defendants or their
                coconspirators: (i) a portable computer; (ii) a power tool; (iii) a
24              camcorder; or (iv) a replacement battery for any of these products.

25  _____

26  [19] Glackin Decl. Ex. I (Neutral Analysis) at 19–20.

    [20] *See id.* at 12–20.
27
    [21] *See id.* at 13–14 (citing *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-CV-5944 JST,
28  2016 WL 721680, at *24 (N.D. Cal. Jan. 28, 2016)).

    [22] *Id.* at 19.

Excluded from the class are any purchases of Panasonic-branded computers. Also excluded from the class are any federal, state, or local governmental entities, any judicial officers presiding over this action, members of their immediate families and judicial staffs, and any juror assigned to this action, but included in the class are all non-federal and non-state governmental entities in California.[23]

Each agreement provides that upon final approval and entry of judgment, class members will release certain claims against the Settling Defendants relating to purchases of any product containing cylindrical, prismatic, or polymer lithium ion batteries.[24] In return for the releases and other terms set forth in the Settlement Agreements, the Settling Defendants agree to pay a combined total of $49 million.[25] The following table summarizes the gross recovery from all settlements in this action:

| Defendant Family | Contribution to Settlement Fund | Nationwide Damages Attributed to Defendant by Plaintiffs | Percent Recovery |
|---|---|---|---|
| *First Round of Settlements Presented* | | | |
| Sony | $19,500,000 | $252,143,962.33 | 7.7% |
| *Second Round of Settlements Presented* | | | |
| LG Chem | $39,000,000 | $116,894,327.36 | 33.4% |
| Hitachi Maxell | $3,450,000 | $2,898,206.46 | 119.0% |
| NEC | $2,500,000 | $966,068.82 | 258.8% |
| *Third Round of Settlements Presented* | | | |
| SDI | $39,500,000 | $209,636,934.20 | 18.8% |
| TOKIN | $2,000,000 | $966,068.82[26] | 207.0% |
| Toshiba | $2,000,000 | $5,796,412.93 | 34.5% |
| Panasonic | $5,500,000 | $378,698,977.90 | 1.5% |
| **TOTAL** | **$113,450,000** | **$967,034,890.00[27]** | **11.7%** |

---

[23] SDI Settlement ¶ 1(d), (f); TOKIN Settlement ¶ 1(d), (f); Toshiba Settlement ¶ 1(d), (f); Panasonic Settlement ¶ 1(d), (f). The Sony Settlement, reached at an earlier stage of the case, includes persons who only purchased cell phones. *See* Pls.' Mot. for Final Approval of Class Action Settlement with Sony Defs. (Oct. 4, 2016), ECF No. 1504 at 6–7.

[24] SDI Settlement ¶¶ 1(y)–(aa), 7, 11; TOKIN Settlement ¶¶ 1(y)–(aa), 7, 11; Toshiba Settlement ¶¶ 1(y)–(aa), 7, 11; Panasonic Settlement ¶¶ 1(z)–(bb), 7, 11. For a comparison of these release provisions with the claims alleged in the Amended Complaint, *see* Section IV.A.5.b, *infra*.

[25] *See* SDI Settlement ¶¶ 1(cc), 12; TOKIN Settlement ¶¶ 1(cc), 12; Toshiba Settlement ¶¶ 1(cc), 12; Panasonic Settlement ¶¶ 1(dd), 12.

[26] The "attributable damages" for TOKIN and NEC are the same because they operated as one entity during the class period. Accordingly, the percentage recoveries are likely to be higher.

## III.    **LEGAL STANDARD**

The new amendments to Rule 23, effective December 1, 2018, address several substantive aspects of the class action settlement approval process. First, Rule 23(e) now explicitly codifies the district court's role in undertaking a preliminary evaluation of a proposed settlement, the first step in a three-stage process. While the rule previously required district courts to direct notice of a settlement to class members, the standards for directing such notice were developed by the courts over time.[28] The rule now instructs this Court to initially determine whether it "will likely be able to" (i) approve the settlement as fair, reasonable, and adequate; and (ii) "certify the class for purposes of judgment on the proposal."[29] Then, after potential class members are given notice and an opportunity to object to the settlement or opt out of its coverage, the Court must hold a hearing to consider whether to approve the settlement and certify the settlement class.[30]

In determining whether a proposed settlement initially appears fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each

---

[27] At class certification, Plaintiffs' damages expert estimated that, nationwide, indirect purchaser damages totaled $967,034,890 for the period of January 2000 through May 31, 2011. *See* [Corrected] Expert Report of Edward E. Leamer (Feb. 2, 2016), ECF No. 1599-4 at 78. Because each defendant would be joint and severally liable for the entire amount of damages, and potentially liable for treble damages, Plaintiffs could have recovered three times the aggregate sum from each individual defendant at trial.

[28] *See* 4 Newberg on Class Actions § 13:10 (5th ed.); Manual for Complex Litigation (4th ed. 2004) § 21.632.

[29] Fed. R. Civ. P. 23(e)(1)(B).

[30] *See* Fed. R. Civ. P. 23(e)(2), (4), (5).

other.[31]

Recognizing that "[c]ourts have generated lists of factors," the Advisory Committee emphasizes that these new provisions are intended to "focus" the inquiry on "the primary considerations that should always matter to the decision whether to approve the proposal."[32]

Separately, this District recently published its updated Procedural Guidance for Class Action Settlements ("Procedural Guidance"), which instructs the parties to submit specific information in connection with a motion under Rule 23(e)(1).[33] In particular, the Procedural Guidance requests information about: (i) any differences between the settlement class and the class as asserted in the operative complaint, and between the claims to be released and the claims alleged in the operative complaint; (ii) the anticipated class recovery under the settlement and the potential class recovery if plaintiffs were to fully prevail; (iii) the proposed allocation plan; (iv) expected participation by class members in the settlement; (v) the settlement administrator, the selection process, and the anticipated administrative costs; (vi) the proposed notice, including deadlines to opt out of or object to the settlements; (vii) attorneys' fees that counsel intend to request; (viii) incentive awards that the parties intend to request; (ix) the allocation of any unused settlement funds, including a reversion, if any; (x) notice of and compliance with CAFA; and (xi) past distributions in comparable class settlements.

## IV.  ARGUMENT

### A.  THE SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE.

The Settlement Agreements satisfy each of the requirements of Rule 23(e)(2).

#### 1.  The Class Has Been Zealously Represented.

First, the class representatives and counsel have vigorously represented the interests of the class in this action for more than five years.[34] During this time, Plaintiffs engaged in extensive

---

[31] Fed. R. Civ. P. 23(e)(2).

[32] Fed. R. Civ. P. 23(e)(2) 2018 advisory committee notes.

[33] *See* Procedural Guidance for Class Action Settlements, https://www.cand.uscourts.gov/ClassActionSettlementGuidance (last updated Dec. 5, 2018).

[34] *See* Fed. R. Civ. P. 23(e)(2)(A).

motion practice—including briefing on three rounds of motions to dismiss,[35] Toshiba's motion for summary judgment,[36] three motions for class certification, Panasonic's motion for summary judgment, and multiple motions to exclude expert testimony.

This motion practice was supported by massive amounts of expert work. For example, at a total cost of millions of dollars, Plaintiffs submitted four expert reports totaling 435 pages in support of their motions to certify a class.[37] Professor Edward E. Leamer analyzed impact and damages using statistical modeling and conducted nearly 1,000 regressions. Dr. Rosa Abrantes-Metz, a specialist in cartel theory, analyzed whether the available economic evidence supported the existence and impact of the alleged conspiracy on a class-wide basis. Dr. Leamer and Dr. Abrantes-Metz performed additional analyses with respect to the merits of Plaintiffs' claims, which supported briefing relating to Plaintiffs' second renewed motion for class certification and Panasonic's motion for summary judgment.[38]

Plaintiffs' expert work followed substantial fact discovery. Working closely with counsel for the direct purchaser plaintiffs, Plaintiffs served defendants with 24 interrogatories (some of which were jointly served on all defendants), 78 document requests, and 1,534 requests for admissions. Plaintiffs also issued at least 141 subpoenas to non-parties.[39] Plaintiffs conducted extensive negotiations with defendants and non-parties regarding the production of documents and transactional data, the identification of document custodians, the use of search terms, the completeness of discovery responses, and deposition scheduling. In total, Plaintiffs reviewed

---

[35] *See* Omnibus Order re Mots. to Dismiss 2d Consol. Am. Compls. (Oct. 2, 2014), ECF No. 512; Order re Mots. to Dismiss (Jan. 21, 2014), ECF No. 361.

[36] *See* Order Den. Toshiba's Mot. for Summ. J. on Withdrawal (Mar. 16, 2016), ECF No. 1160.

[37] Suppl. Expert Reply Report of Edward E. Leamer, Ph.D. (Nov. 21, 2017), ECF No. 2089-2; Suppl. Expert Report of Edward E. Leamer, Ph.D. (Sept. 26, 2017), ECF No. 2088-1; Expert Rebuttal Report of Rosa M. Abrantes-Metz, Ph.D. (Aug. 23, 2016), ECF No. 1604-8; Expert Report of Rosa M. Abrantes-Metz, PhD (Jan. 22, 2016), ECF No. 1599-6; Expert Reply Report of Edward E. Leamer, Ph.D. (Aug. 23, 2016), ECF No. 1782-16; Corrected Expert Report of Edward E. Leamer, Ph.D. (Feb. 2, 2016), ECF No. 1782-11.

[38] Expert Report of Edward E. Leamer, Ph.D. (May 25, 2018), ECF No. 2379-8; Expert Reply Report of Edward E. Leamer, Ph.D. (June 29, 2018), ECF No. 2379-10; Expert Report of Rosa M. Abrantes-Metz, Ph.D. (May 25, 2018), ECF No. 2379-10; Expert Rebuttal Report of Rosa M. Abrantes-Metz, Ph.D. (June 29, 2018), ECF No. 2379-12.

[39] Glackin Decl ¶ 17.

more than 2.7 million documents and voluminous electronic transactional data. This included translating more than 1,500 documents written in Japanese, Korean, and Chinese.[40] Lastly, Plaintiffs took nearly 40 fact depositions and seven expert depositions (involving at least 769 exhibits), and defended 32 class representative depositions and five expert depositions.[41]

To obtain this discovery, Plaintiffs brought and prevailed on, at least in part, fourteen motions to compel.[42] For instance, this work included successfully compelling packer Simplo USA to produce data from its overseas parent Simplo Taiwan, the world's largest third-party packer.[43] Securing Simplo Taiwan's data required (i) opposing a motion to quash a deposition subpoena in Wyoming, (ii) winning a contested motion to transfer the Simplo discovery to this MDL Court, (iii) filing multiple motions to compel, (iv) taking a Rule 30(b)(6) deposition of Simplo USA to support those motions, (v) opposing Simplo USA's motion for a stay of proceedings pending appeal, and (vi) bringing a motion for discovery sanctions.[44]

Taken together, these litigation efforts show that the Settlement Agreements are the product of well-informed negotiations and vigorous advocacy on behalf of the class.

### 2. The Settlement Agreements Result from Arm's-Length Negotiations.

The Settlement Agreements also arise out of serious, arm's-length negotiations between counsel for Plaintiffs and the Settling Defendants.[45] After years of litigation and extensive

---

[40] *Id.* ¶ 18.

[41] *Id.* ¶ 19.

[42] *See* Min. Order (Oct. 3, 2017), ECF No. 1968; Min. Order (Aug. 10, 2017), ECF No. 1905; Min. Order (Oct. 27, 2016), ECF No. 1547; Min. Order (Oct. 13, 2016), ECF No. 1530; Min. Order (Aug. 25, 2016), ECF No. 1411; Order Granting Mot. to Compel Dep. of Jae Jeong Joe (Mar. 24, 2016), ECF No. 1177; Min. Order (Feb. 4, 2016), ECF No 1066; Order re Mot. to Compel Dep. of Seok Hwan Kwak (Sept. 15, 2015), ECF No. 836; Order on Mot. to Continue Dep. of Hiroshi Kubo (Aug. 31, 2015), ECF No. 822; Min. Order (Aug. 13, 2015), ECF No. 781; Order on Joint Disc. Letter (Apr. 1, 2015), ECF No. 710; Order on Joint Disc. Letter (Mar. 17, 2015), ECF No. 690; Order on Joint Disc. Letter (Aug. 21, 2015), ECF No. 805.

[43] Glackin Decl. ¶ 20; *see* Min. Order (Oct. 3, 2017), ECF No. 1968; Min. Order (Aug. 10, 2017), ECF No. 1905.

[44] Glackin Decl. ¶ 20; *see* Pls.' Opp'n to Simplo Tech. USA Logistic Co.'s Admin. Mot. for Emergency Stay Pending Appeal at 1 (Oct. 27, 2017), ECF No. 2006-3 (detailing prior efforts); Mot. for Sanctions Against Simplo Tech. USA Logistic Co. Ltd. (Dec. 1, 2017), ECF No. 2066.

[45] *See* Fed. R. Civ. P. 23(e)(2)(B).

discovery, counsel for Plaintiffs and the Settling Defendants convened multiple times over several months to arrive at settlement terms. The resulting agreements reflect careful consideration of the circumstances of the case and bear no signs of either collusive behavior or a conflict of interest.

SDI, TOKIN, and Toshiba Settlements. The SDI Settlement followed multiple mediation sessions involving retired Judge Vaughn R. Walker.[46] The much smaller TOKIN and Toshiba Settlements resulted from iterative negotiations directly between counsel.[47] In each instance, the parties reached compromises after briefing and argument on Plaintiffs' renewed motion for class certification, but before this Court's denial of that motion. The amounts of the SDI, TOKIN, and Toshiba Settlements therefore reflect the parties' assessments of the strengths and weaknesses of the case and the relative risks of prevailing on class certification at that time.

Panasonic Settlement. The Panasonic Settlement followed months of additional litigation and was reached at a time of highest risk to Plaintiffs, due to a significantly changed litigation posture. By this time, the Court had denied Plaintiffs' renewed motion for class certification, the Ninth Circuit had denied Plaintiffs' subsequent Rule 23(f) petition, and this Court had granted a motion to strike Plaintiffs' second renewed motion for class certification. As a result, Plaintiffs' only avenue for challenging class certification in this case—and recovering any class-wide relief—would have been through direct appeal of a final judgment following trial.[48] Even with substantial evidence of liability, as was the case here, Plaintiffs faced a high risk that class members would ultimately receive nothing.

No Signs of Collusion. Separately, the Settlement Agreements bear no signs of collusion among the parties. The Ninth Circuit has identified three indicators of potential collusion or conflict in the settlement negotiation process: (i) when class counsel receives a disproportionate distribution of the settlement proceeds; (ii) when the parties negotiate a "clear sailing" arrangement providing for the independent payment of attorney's fees; and (iii) when the parties

---

[46] Glackin Decl. ¶ 2.

[47] Glackin Decl. ¶¶ 3–4.

[48] *See Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1706 (2017) (absent relief under Rule 23(f), plaintiffs must "pursue their individual claims on the merits to final judgment").

arrange for a reversion of unused funds to defendants.[49] Here, none of those hallmarks is present. The Settlement Agreements include no "clear sailing" agreements or any agreement on the amount of attorney's fees to be awarded.[50] Instead, counsel anticipates seeking reasonable attorney's fees consistent with Ninth Circuit case law. Furthermore, there will be no reversion of unused funds to the Settling Defendants.[51]

### 3. The Settlement Agreements Represent Substantial Relief for the Class.

The relief provided to the class is more than "adequate," considering (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed distribution plan; (iii) the terms of any proposed award of attorney's fees; and (iv) any agreement required to be identified under Rule 23(e)(3).[52]

### a. The Settlements Are Fair, Reasonable, and Adequate.

With a contribution of $49 million from this final round of Settlement Agreements, Plaintiffs will have recovered a total settlement fund worth $113,450,000. By all measures, this recovery falls well within the range of possible approval, particularly given the high-risk and complex nature of Plaintiffs' case.[53]

SDI, TOKIN, and Toshiba Settlements. In reaching agreements with Plaintiffs, defendants SDI, TOKIN, and Toshiba agree to provide $43.5 million in relief to the settlement fund—approximately 20.11 percent of the $216 million in estimated nationwide damages attributed to those defendants. This recovery is consistent with recoveries in similar litigation.[54]

---

[49] *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–48 (9th Cir. 2011).

[50] *See* SDI Settlement ¶¶ 24–27; TOKIN Settlement ¶¶ 24–27; Toshiba Settlement ¶¶ 24–27; Panasonic Settlement ¶¶ 24–27.

[51] SDI Settlement ¶ 22; TOKIN Settlement ¶ 22; Toshiba Settlement ¶ 22; Panasonic Settlement ¶ 22.

[52] *See* Fed. R. Civ. P. 23(e)(2)(C).

[53] *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) ("To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."); Fed. R. Civ. P. 23(e)(2) 2018 advisory committee notes ("Another central concern will relate to the cost and risk involved in pursuing a litigated outcome."); *see also Procedural Guidance*, Preliminary Approval (1)(e) (instructing parties to explain the potential class recovery if plaintiffs had fully prevailed on each of their claims and the factors bearing on the amount of the compromise).

[54] *See, e.g., Rodriguez v. W. Publishing Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (settlement

Furthermore, Plaintiffs settled with these defendants after the Court denied Plaintiffs' original motion for class certification and while Plaintiffs' renewed motion was still pending—"a time of extraordinary risk for the class receiving no recovery at all."[55]

Panasonic Settlement. And of course, those risks came to pass. The Court denied the Plaintiffs' renewed motion for class certification and struck from the docket a second renewed motion. After that, Plaintiffs settled with Panasonic for $5.5 million, a tiny fraction of the damages but substantial in light of the fact that recovering anything for the class at all would have required a trial and a successful appeal in the Ninth Circuit that would have lasted for years.

**b.      The Claims Process Is Straightforward.**

Claims Process. The Settlement Agreements in this case provide direct monetary relief to class members through a straightforward claims process,[56] materially identical to the process this Court previously approved. Plaintiffs present a proposed claim form, which will be made available to class members electronically and in hard copy.[57] Following this Court's order to direct notice to the class regarding the Settlement Agreements, class members will be able to make claims for their purchases by providing basic information about themselves (*e.g.*, name, mailing address, and email address); the total number of covered products, purchased from

---

represented 30 percent of estimated antitrust damages); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 3648478, at *7 (N.D. Cal. July 7, 2016) (approving $576.75-million settlement with all defendants, representing a recovery of 20 percent of the estimated damages to indirect purchasers); *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 124 (S.D.N.Y. 2009) (approving $336-million settlement representing 31 percent of estimated damages), *aff'd*, *Priceline.com, Inc. v. Silverman*, 405 F. App'x 532 (2d Cir. 2010); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) (approving $44.5-million settlement representing 33 percent of estimated damages). Moreover, the combined amount recovered through the settlements reached in this case is particularly sizeable considering that some of the defendants were the amnesty applicants and therefore would have had defenses against treble damages under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, 118 Stat. 661.

[55] *See In re Optical Disk Drive Prod. Antitrust Litig.*, No. 3:10-MD-2143 RS, 2016 WL 7364803, at *14 (N.D. Cal. Dec. 19, 2016) (finding justification for a lower rate of recovery).

[56] "Measuring the proposed relief may require evaluation of any proposed claims process." Fed. R. Civ. P. 23(e)(2) 2018 advisory committee notes; *see also Procedural Guidance*, Preliminary Approval (1)(g) (instructing parties to provide an estimate of the number of class members expected to submit a claim based on experience from other recent settlements).

[57] *See* Azari Decl., Ex. 3 (Claim Form).

January 1, 2000 through May 31, 2011; and each class member's state of residence at the time of purchase. Although a class member will not be required to submit proof of purchase, the claim form advises them to retain all purchase documentation until the claim is closed. After all claims have been submitted and a review of the claim data is performed, the claims administrator may request supporting documentation from claimants (*e.g.*, for particularly large-value claims).

Claims Rate. This claims process will build upon the work already performed in connection with the Sony, LG Chem, Hitachi Maxell, and NEC Settlements. To date, approximately 946,241 claimants have submitted claims in connection with those settlements, representing 0.49 percent of the estimated total class size of 193 million.[58] Any claims previously submitted on prior settlements will be deemed made against the new Settlement Agreements; and any new claims made will also apply to the prior settlements. This process will ensure that benefits from the all settlements reach the maximum number of class members possible. With a renewed notice effort, Plaintiffs expect the total number of claimants to exceed 1.1 million— resulting in a claims rate of 0.57 percent of all potential class members and approximately 15 percent of the approximately 7.3 million known class members for which Plaintiffs have obtained email addresses.[59]

The expected claims rate here is greater than the claims rate in similar antitrust cases. By comparison, as a measure of total numbers and percentage of the class—this estimated rate falls among the high end of results in comparable cases involving similarly large class sizes[60]:

| Case | Claims Rate |
|---|---|
| *In re Lithium Ion Batteries*, **No. 4:13-md-02420 (IPP)** | **0.57%** |
| *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, (No. 02-md-01486-PJH (N.D. Cal.) | 0.27% |
| *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-01827-SI (N.D. Cal.) (IPP) | 0.14% |
| *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819-CW (N.D. Cal.) | 0.000303% |

[58] The devices identified in the claims received to date are comprised of approximately 13,303,251 laptops, 10,151,989 mobile devices, 2,518,192 camcorders, and 3,565,989 cordless power tools. The number of claims continues to increase as the claims period for prior settlements remains open. For example, even after past notice efforts concluded, nearly 60,000 new claimants filed claims in 2018.

[59] *See* Azari Decl. ¶ 18; *see also* App. B (Past Distributions in Comparable Class Settlements).

[60] For an in-depth comparison with other settlements, *see* App. B.

While low as a matter of absolute levels, such claims rates are the norm in cases such as this in which the per-claim dollar amount is also relatively low. For example, the landmark 2015 Arbitration Study by the Consumer Financial Protection Bureau, which examined 105 settlements in financial consumer fraud cases, showed that low claims rates in cases with low individual claim amounts has been a persistent phenomenon.[61] This reflects the fact that in cases with very small individual claim values, class members are often unlikely to take the time to submit a claim, even if that process is as streamlined as possible. Indeed, the low-dollar value of individual claims is precisely why class actions are necessary to enforce the law—not only to obtain redress, but also to deter future misconduct.[62]

<u>Distribution Process.</u> Following the close of the claims period, settlement administrators will make payment to class members with valid claims through either (i) direct payment by check, direct deposit, or bank-based EFT; or (ii) digital payment through services such as PayPal, Amazon, or Google Wallet.[63] Digital payments will be used for all small-dollar payments (*e.g.*, recoveries of less than $5.00), in order to minimize the administrative costs associated with distributing those payments.[64] Based on preliminary data, Plaintiffs estimate that class members who purchased portable computers, power tools, camcorders, or replacement batteries, may be eligible to receive an aggregate sum of between $1.00 and $2.00 per device claimed, subject to a Court-approved allocation plan, *see* Section IV.A.4, *infra*.[65]

### c. Counsel Will Seek Reasonable Attorney's Fees.

In evaluating the adequacy of the proposed settlements, the Court must also take into account the terms of any proposed attorney's fees, including the timing of payment.[66]

---

[61] Consumer Financial Protection Bureau, Arbitration Study: Report to Congress, Pursuant to Dodd–Frank Wall Street Reform & Consumer Protection Act § 1028(a) (Mar. 2015), *available at* https://files.consumerfinance.gov/f/201503_cfpb_arbitration-study-report-to-congress-2015.pdf.

[62] *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

[63] Glackin Decl. ¶ 28.

[64] *Id.* ¶ 29. The precise dollar cut-off for direct payment for small-dollar payments is subject to change based on the claims data Plaintiffs receive during the notice and claims administration process.

[65] *Id.* ¶ 30.

[66] Fed. R. Civ. P. 23(e)(2)(C)(iii).

Accordingly, the Procedural Guidance instructs class counsel to include information about (1) the fees they intend to request, (2) their lodestar calculation, including the total number of hours billed to date and the requested multiplier, if any, and (3) the relationship among the amount of the award, the amount of the common fund, and counsel's lodestar calculation.[67]

Here, while Settlement Agreements do not contemplate a specific award of attorney's fees, they do provide that any Court-awarded fees will be paid from the Gross Settlement Fund.[68] Plaintiffs anticipate requesting a total award of $34,035,000 in attorneys' fees plus interest, which represents 30% of the total recovery in this case, inclusive of the $4,495,000 already awarded.[69] This is the same percentage award sought by counsel for the direct purchaser plaintiffs, and approved by the Court, in this MDL last year.[70]  In view of a total lodestar of $40,122,129.20 incurred by counsel through September 30, 2018, such an award would presently result in a negative lodestar multiplier of 0.8483.[71]  A preliminary calculation shows that counsel has spent a total of 98,898.07 hours on this case during that time period, with a blended average rate of $405.69 per hour.  Accordingly, a lodestar cross-check would support the reasonableness of a fee request, in light of this hard-fought, intensely litigated case.[72]

---

[67] *See Procedural Guidance*, Preliminary Approval (6).

[68] *See* SDI Settlement ¶¶ 19, 24–26; TOKIN Settlement ¶¶ 19, 24–26; Toshiba Settlement ¶¶ 19, 24–26; Panasonic Settlement ¶¶ 19, 24–26.

[69] As described in the proposed notice to the class, *see* Azari Decl., Ex. 2 (Notice), these fees would be awarded proportionally from these and all prior settlements.  Because the Court previously deferred full consideration of a fee award in connection with settlements, Plaintiffs expect to seek $29,540,000 in net additional fees plus interest.  *See* Order Granting in Part & Den. in Part, Without Prejudice, Mot. for an Award of Attorneys' Fees, Reimbursement of Expenses & Service Awards (Oct. 27, 2017), ECF No. 2005 ("Fee Order").

[70] *In re Lithium Ion Batteries Antitrust Litig.*, No.13-md-02420-YGR, 2018 WL 3064391, at *1 (N.D. Cal. May 16, 2018).

[71] *See* Glackin Decl. ¶ 34.  This lodestar is likely to increase in light of counsel's continued work in the case, which would decrease the lodestar multiplier further.  Plaintiffs will conduct a further audit of all time records prior to seeking an award of attorney's fees.

[72] In common fund cases, such as this one, fee awards of 30 percent or higher have been found to be reasonable.  *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("[T]his court finds that in most recent cases the benchmark is closer to 30%"); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) ("[I]n most common fund cases, the award exceeds that [25%] benchmark."); *see also Lofton v. Verizon Wireless (VAW) LLC*, No. C 13-05665 YGR, 2016 WL 7985253, at *1 (N.D. Cal. May 27, 2016)

#### d. There Are No Other Related Agreements.

Rule 23(e)(3) requires parties to identify "any agreement made in connection with" the settlement. This provision is aimed at "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others."[73] Plaintiffs have not entered into any such agreements.

### 4. The Settlement Agreements Treat Class Members Equitably.

The proposed Settlement Agreements do not contemplate any unwarranted preferential treatment of class representatives or segments of the class.[74] Matters of concern for the Court may include "whether apportionment of relief among class member takes appropriate account of differences among their claims."[75]

Under the terms of the Settlement Agreements, the plan of distribution is, appropriately, left for the determination of the Court.[76] Plaintiffs recognize that allocation of the Gross Settlement Fund among class members may depend on factors such as the number of qualifying products purchased and state of residence. The last factor bears on whether class members reside in an *Illinois Brick* repealer state permitting indirect purchaser actions.

Although the Settlement Agreements do not specify how the settlement amount should be allocated as between class members from repealer and non-repealer states, Plaintiffs recommend that this Court adopt the second of Judge Westerfield's recommended methods of allocation:

(30% of the common fund); *Perry v. Arise Virtual Solutions Inc.*, No. 11-01488 YGR, 2013 WL 12174056, at *2 (N.D. Cal. May 15, 2013) (30% of the common fund). *See also* App. B. Moreover, this Court and others in this District have routinely found that negative multipliers confirm the reasonableness of an award of attorney's fees. *See, e.g.*, *Batteries*, 2018 WL 3064391, at *1 (concluding that a negative multiplier of 0.58 "obviates concern about any windfall given the size of the settlement recovery"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 183285, at *3 (N.D. Cal. Jan. 14, 2016) (finding that a fee multiplier of 0.8823 "confirms the reasonableness of the award"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 149692, at *1 (N.D. Cal. Jan. 14, 2013) (approving attorney's fees resulting in a negative multiplier of 0.86).

[73] Fed. R. Civ. P. 23(e) 2003 advisory committee notes.

[74] *See* Fed. R. Civ. P. 23(e)(2)(D).

[75] Fed. R. Civ. P. 23(e)(2) 2018 advisory committee notes; *see also Procedural Guidance*, Preliminary Approval (1)(f) (instructing parties to describe the proposed allocation plan).

[76] *See* SDI Settlement ¶¶ 1(h), 23; TOKIN Settlement ¶¶ 1(h), 23; Toshiba Settlement ¶¶ 1(h), 23; Panasonic Settlement ¶¶ 1(h), 23.

allocating 10 percent of the settlement funds to class members from non-repealer states.[77]  Claims

belonging to class members from non-repealer states are less valuable on a risk-discounted basis

than those of class members from repealer states, particularly in light of this Court's choice of law

analysis in its first order denying class certification.  Nevertheless, Plaintiffs caution that

allocating *nothing* to non-repealer state residents, Judge Westerfield's other recommendation,

carries risks on appeal.  While the Ninth Circuit has not directly addressed the issue, other courts

have endorsed the proposition that a release of claims, no matter how few or weak, must have

*some* value and therefore cannot go uncompensated.  As the Second Circuit put it in *National*

*Super Spuds, Inc. v. New York Mercantile Exchange*:

> An advantage to the class, no matter how great, simply cannot be
> bought by the uncompensated sacrifice of claims of members,
> whether few or many, which were not within the description of
> claims assertable by the class.[78]

Indeed, the fact that the claims have value is borne out by the fact that the defendants in each case

insisted on releases that would cover them.

Thus, in recognition of the fact that such releases themselves have some value, even if

nominal, Plaintiffs recommend that the Court allocate 10 percent of the settlement funds for

distribution to non-repealer state residents.  As the advocates for repealer state residents

acknowledge, courts have approved such *de minimis* awards to class members to achieve global

peace.[79]  A similar allocation would be reasonable and defensible here.  Indeed, it would be

comparable to the percentage of civil appeals in the Ninth Circuit that succeed in a reversal of the

lower court—the road that the non-repealer class members would have had to walk to obtain any

---

[77] The proposed notice provides for an allocation of 90% of funds to claimants from repealer states and 10% of funds to claimants from non-repealer states.  *See* Azari Decl., Ex. 2 (Notice).

[78] 660 F.2d 9, 19 (2d Cir. 1981); *see also Anderson v. Nextel Retail Stores, LLC*, No. CV 07-4480-SVW FFMX, 2010 WL 8591002, at *9 (C.D. Cal. Apr. 12, 2010) (noting, in addressing the fairness of a settlement agreement, "the danger that class representatives not sharing common interests with other class members would sacrifice the interests of those class members at no cost to themselves").

[79] Glackin Decl., Ex. E at 10 (citing *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) (10 percent); *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) (10 percent and less)).

relief whatsoever.[80]

**5.** **The Settlements Satisfy the District's Procedural Guidance.**

In accordance with this District's recently updated Procedural Guidance, Plaintiffs have provided above relevant information regarding (i) the anticipated class recovery under the settlement and the potential class recovery if Plaintiffs were to fully prevail, *see* Section IV.A.3.a; (ii) the proposed allocation plan, *see* Section IV.A.4; (iii) expected participation by class members in the settlement, *see* Section IV.A.3.b; and (iv) attorneys' fees that counsel intend to request, *see* Section IV.A.3.c. In addition, the proposed notice and notice program are detailed in Section IV.C, below. The remaining relevant provisions of the Procedural Guidance are addressed here.

**a.** **The Litigation and Settlement Classes Are Identical.**

Where a litigation class has not been certified, parties should explain any differences between the settlement class and class asserted in the operative complaint.[81] Here, the settlement class is materially identical to the classes asserted in Plaintiffs' Amended Complaint.[82]

**b.** **The Releases Track the Allegations in the Complaint.**

Where a litigation class has not been certified, parties should explain any differences between the claims to be released and claims asserted in the complaint.[83] The Settlement Agreements provide that class members will release claims relating to purchases of more battery types and more product types than those identified as the basis of claims in the operative complaint.[84] Specifically, whereas the operative complaint sought damages only for cylindrical

---

[80] *See* U.S. Courts, *U.S. Courts—Decisions in Cases Terminated on the Merits, by Circuit & Nature of Proceeding, During the 12-Month Period Ending Mar. 31, 2018, available at* https://www.uscourts.gov/statistics/table/b-5/federal-judicial-caseload-statistics/2018/03/31 (reporting a 12.3% reversal rate among non-prisoner civil appeals).

[81] *See Procedural Guidance*, Preliminary Approval (1)(a).

[82] Aside from some extremely minor cosmetic differences, the settlement class definition includes non-federal and non-state governmental entities in California, which were named in the alternate governmental class definition in the operative complaint. *Compare* Compl. ¶¶ 451 ("Nationwide Damages Class"), 453 ("California Governmental Damages Class"), *with* SDI Settlement ¶ 1(d); TOKIN Settlement ¶ 1(d); Toshiba Settlement ¶ 1(d); Panasonic Settlement ¶ 1(d).

[83] *See Procedural Guidance*, Preliminary Approval (1)(c).

[84] *Compare* Compl. ¶¶ 451, 453, *with* SDI Settlement ¶ 1(y); TOKIN Settlement ¶ 1(y); Toshiba

batteries, the Settlement Agreements release claims based on all three battery types (*i.e.*, cylindrical, prismatic, and polymer batteries).[85]  Additionally, whereas the operative complaint sought damages only on behalf of purchasers of four products (portable computers, power tools, camcorders, and replacement batteries), the Settlement Agreements release claims for additional products, including mobile phones, smart phones, cameras, digital video cameras, and digital audio players.[86]  In other words, while the proposed settlement class only includes purchasers of portable computers, power tools, camcorders, and replacement batteries, those settlement class members will release *all* antitrust claims relating to *all* lithium-ion battery types.

The inclusion of these additional battery types and products, however, reflects the history of this case, which has included allegations that defendants fixed prices as to these additional battery types and products.[87]  Similarly, although the types of legal claims covered by the release are broader than the federal and state antitrust, consumer protection, and unfair competition laws asserted in the operative complaint, they are claims that are related to and arise out of the same underlying battery product purchases that are the subject of this litigation.[88]  Moreover, as consideration for payment of the settlement amounts, these broad release provisions were absolute requirements for the Settling Defendants, who sought a definitive end to the litigation and any potential litigation arising from the same nucleus of facts alleged in the operative complaint.[89]  It is not unusual for releases to reach all possible claims arising from the subject matter of the lawsuit, not merely those for which relief has been sought.[90]

---

Settlement ¶ 1(y); Panasonic Settlement ¶ 1(z).

[85] *Compare* Compl. ¶ 4, *with* SDI Settlement ¶ 1(q)–(s); TOKIN Settlement ¶ 1(q)–(s); Toshiba Settlement ¶ 1(q)–(s); Panasonic Settlement ¶ 1(q)–(s).

[86] *Compare* Compl. ¶ 4, *with* SDI Settlement ¶ 1(m); TOKIN Settlement ¶ 1(m); Toshiba Settlement ¶ 1(m); Panasonic Settlement ¶ 1(m).

[87] *See generally* Compl. ¶¶ 48–322.

[88] *Compare* Compl. ¶¶ 463–523, *with* SDI Settlement ¶ 1(y); TOKIN Settlement ¶ 1(y); Toshiba Settlement ¶ 1(y); Panasonic Settlement ¶ 1(z).

[89] Glackin Decl. ¶¶ 7–8.  Though broad, the release provisions in the Settlement Agreements ultimately relate to facts alleged in Plaintiffs' Amended Complaint.  Moreover, it was critical to Settling Defendants that they achieve global peace with respect to the alleged price-fixing conspiracy at issue in this case.

[90] As the Ninth Circuit has held, "[a] settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been

### c. The Settlement Administrator Selection Process and Costs

The Procedural Guidance instructs parties to identify (1) the proposed settlement administrator, (2) the settlement administrator selection process, (3) the number of proposals submitted, (4) the methods of notice and claims payment proposed, (5) counsel's history of engagements with the settlement administrator over the last two years, (6) anticipated administration costs, (7) the reasonableness of those costs in relation to the value of the settlement, and (8) who will pay the costs.[91] Here, the answers to each of these questions support the fairness and adequacy of the settlement administration process proposed.

Selection Process. To select a settlement administrator, Plaintiffs conducted a competitive bidding process with five administrators.[92] Having considered the competing bids, Plaintiffs selected Garden City Group ("GCG"), whose proposal represented the most cost-effective, efficient, and comprehensive plan, which Plaintiffs believe provides the best value for the class.[93] After the selection process was completed, GCG was purchased by Epiq.[94] Epiq has since assumed responsibility over design and implementation of the proposed notice program.

Method of Notice and Claims Payment. In their solicitation for bids, Plaintiffs required that any proposal employ contemporary and diverse methods of notice to ensure the broadest reach possible.[95] Every administrator proposed a program that included direct notice to class members for whom Plaintiffs have contact information (*e.g.*, via email), online digital internet banner advertising across different advertising networks, outreach through social media channels, and a press release.[96] Some proposals included additional print publication, and the proposal

---

presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (citations and internal quotation marks omitted); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992); *Chavez v. PVH Corp.*, No. 13-CV-01797-LHK, 2015 WL 9258144, at *4 (N.D. Cal. Dec. 18, 2015); *Angell v. City of Oakland*, No. 13-CV-00190 NC, 2015 WL 65501, at *7 (N.D. Cal. Jan. 5, 2015).

[91] *Procedural Guidance*, Preliminary Approval (2).

[92] Glackin Decl. ¶ 21.

[93] *Id.* ¶ 23.

[94] *Id.* ¶ 24.

[95] *Id.* ¶ 21.

[96] *Id.* ¶ 22.

from GCG included television advertisements and additional digital video notice on YouTube, Facebook, Instagram, and Twitter.[97]

Counsel's History of Engagements with Epiq. Interim Co-Lead Counsel's firms have had extensive experience with Epiq and GCG. Over the last two years, Interim Co-Lead Counsel have hired Epiq or GCG for administration of settlements in eighteen class actions.[98]

Anticipated Administration Costs. The total cost of the notice program and claims administration is currently estimated to be approximately $525,000. The costs will be paid proportional to the amounts set aside for administration costs from the four Settlement Agreements, which provide for up to $1.6 million in notice and administrative costs.[99] This cost is reasonable, as it represents approximately 1 percent of the total proceeds from the Settlement Agreements and approximately 33 percent of the aggregate amount provided for such costs. By comparison to settlements in comparable cases, the administrative costs associated with the Settlement Agreements here are reasonable. *See* App. B.

### d. Costs and Expenses

The Procedural Guidance instructs counsel to state whether and in what amounts they seek payment of costs and expenses, including expert fees.[100] Here, Plaintiffs anticipate requesting reimbursement of out-of-pocket litigation expenses, not to exceed $6.85 million,[101] inclusive of the $860,188.50 already awarded.[102] This amount represents at least the following estimated expenses: approximately $4,812,656.51 for expert and consultant costs; $950,360.76 for

---

[97] *Id.*

[98] *See id.* ¶¶ 25–27.

[99] *See* SDI Settlement ¶ 1(u) ($750,000); TOKIN Settlement ¶ 1(u) ($300,000); Toshiba Settlement ¶ 1(u) ($300,000); Panasonic Settlement ¶ 1(v) ($250,000). The estimated cost is also reasonable compared to notice and claims administration costs accrued in connection with the Sony, Hitachi Maxell, NEC, and LG Chem Settlements. To date, those costs have totaled approximately $2,023,305.52 of the $2.5 million available under those agreements.

[100] *See Procedural Guidance*, Preliminary Approval (6).

[101] *See* Glackin Decl. ¶ 35. This figure represents Plaintiffs' records to date, plus additional expenses Plaintiffs expect to spend in connection with a motion for final approval and any subsequent appeals. *Id.* Plaintiffs will conduct a careful audit of all expenses prior to seeking payment of these costs and expenses.

[102] *See* Fee Order. In other words, the net additional amount sought by Plaintiffs will be approximately $5.872 million.

document review platform hosting costs; $221,435.93 for document translation costs; $141,754.77 for court reporter and other deposition-related costs; $18,701.51 for court costs; $180,119.66 for mail and photocopy costs; $161,660.45 for travel costs; $76,060.00 for mediation costs; and $174,566.83 for other costs.

### e. Service Awards

The Procedural Guidance instructs parties to include information about the amount of any service awards and evidence supporting the awards.[103] While the Settlement Agreements do not specifically require service awards for class representatives, Plaintiffs anticipate seeking such awards—not to exceed $10,000 for each individual class representative and $25,000 for each governmental entity class representative. As the Ninth Circuit has recognized, service awards "are fairly typical in class action cases."[104] Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."[105] Such awards, by themselves, do not render a proposed settlement unfair or unreasonable.[106] Indeed, in evaluating the propriety of service awards in a given case, the Ninth Circuit has instructed district courts to evaluate the awards using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, [and] the amount of time and effort the plaintiff expended in pursuing the litigation."[107] Moreover, courts are to consider "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment."[108]

---

[103] *See Procedural Guidance*, Preliminary Approval (7).

[104] *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *accord In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).

[105] *Id.*

[106] *See Online DVD-Rental*, 779 F.3d at 947–48; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 6091259, at *12 (N.D. Cal. Oct. 18, 2016) (holding potential service awards do not provide preferential treatment).

[107] *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

[108] *Online DVD-Rental*, 779 F.3d at 947 (quoting *Staton*, 327 F.3d at 977 (9th Cir. 2003)).

Service awards are particularly appropriate here, where class representatives were deposed and also responded to more than 22 interrogatories and 37 document requests, and where this case could not have been prosecuted without their service as individual plaintiffs.[109] Furthermore, in addition to bringing the case, these class representatives continued to prosecute the case following this Court's second denial of class certification. They also declined other settlement offers that would have been less advantageous to the class as a whole or that otherwise would have enriched them personally to the detriment of the class.[110] Service awards are particularly appropriate considering their relationship to the total settlement fund in this case with the aggregate sum of $294,500 in service awards[111] representing approximately 0.26 percent of the total settlement funds.[112] And this Court found similarly modest service awards in the amounts of $5,000 to $30,000 per class representative appropriate in the direct purchaser litigation.[113] In light of the total value of settlement proceeds under the Settlement Agreements and the class representatives' extraordinary service and perseverance in this case, including their willingness to be deposed at length and forego a settlement that would have extinguished recovery for the IPP class, such awards are reasonable.

### f.     Reversions and *Cy Pres* Awardees

As noted above, there will be no reversion of unused funds to the Settling Defendants. *See* Section IV.A.2, *supra*. Should a balance remain after distribution to the class (whether by reason of tax refunds, uncashed checks, or otherwise), class counsel may reallocate such funds among class members, distribute the funds to a *cy pres* beneficiary, or allow the money to escheat

---

[109] Glackin Decl. ¶ 32.

[110] *Id.* ¶ 33.

[111] This aggregate sum includes service awards previously approved by the Court. *See* Fee Order.

[112] *See, e.g.*, *Online DVD-Rental*, 779 F.3d at 948 (finding that $5,000 service awards, when unnamed class members received $12, were reasonable when they "make[] up a mere .17% of the total settlement fund"); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *31 (N.D. Cal. Aug. 17, 2018) (finding as reasonable service awards representing 0.52% of the total settlement fund); *Rhom v. Thumbtack, Inc.*, No. 16-CV-02008-HSG, 2017 WL 4642409, at *8 (N.D. Cal. Oct. 17, 2017) (finding as reasonable a service award "equal[ing] approximately 1-2% of the total settlement fund").

[113] *See* Order Granting Co-Lead Counsel for DPPs' Notice of Mot. and Mot. for an Award of Attorneys' Fees, Reimbursement of Expenses & Service Awards (May 16, 2018), ECF No. 2322.

to federal or state governments, subject to the Court's approval.[114]  Plaintiffs propose such funds escheat to federal or state governments.

### g.  Class Action Fairness Act ("CAFA")

Pursuant to the Settlement Agreements and as required by CAFA, the Settling Defendants will serve notices in accordance with the requirements of 28 U.S.C. § 1715(b) within ten days of the filing of this motion.[115]  This Court has jurisdiction over this case under 28 U.S.C. § 1332(d) and CAFA, which vest original jurisdiction in this Court for any multi-state class action where the aggregate amount in controversy exceeds $5 million and where the citizenship of any plaintiff class member is different from that of any defendant.  The settlements do not provide for a recovery of coupons (28 U.S.C. § 1712), do not result in a net loss to any class member (28 U.S.C. § 1713), and do not provide for payment of greater sums to some class members solely on the basis of geographic proximity to the Court (28 U.S.C. § 1714).  Thus, the Settlement Agreements are in substantive compliance with CAFA.

### h.  Past Distributions

The Procedural Guidance instructs parties to provide information for at least one past comparable settlement, including (i) the total settlement fund, (ii) the total number of class members, (iii) the total number of class members to whom notice was sent, (iv) the methods of notice, (v) the number of claim forms submitted, (vi) the average recovery per class member or claimant, (vii) the amounts distributed to *cy pres* recipients, (viii) administrative costs, and (ix) attorney's fees and costs.[116]  As shown below, the claims rate and administrative costs compare favorably to similar settlements.[117]

---

[114] *Id.*

[115] SDI Settlement ¶ 4; TOKIN Settlement ¶ 4; Toshiba Settlement ¶ 4; Panasonic Settlement ¶ 4.

[116] *See Procedural Guidance*, Preliminary Approval (11).

[117] This chart shows information related to settlements in the IPP action, compared to the settlements in (i) the DPP action in this case, and (ii) *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-01827-SI (N.D. Cal.) (IPPs).  These figures reflect best estimates based on publicly available records.  A complete chart, with citations and figures for other comparable cases can be found in Appendix B.

| Case | Batteries (IPPs) (proposed) | Batteries (DPPs) | TFT-LCD (IPPs) |
|---|---|---|---|
| **Total Settlement Fund** | $113.45 million | $139.3 million | $1,082 million |
| **Total Estimated Number of Class Members** | 193 million | 809,590 | 175 million |
| **Total Number of Class Members to Whom Notice Was Sent** | 7.3 million | 809,590 | 0 |
| **Method(s) of Notice** | Direct notice; indirect notice, including broadcast, digital media, and press release | Direct notice; indirect notice campaigns through publication. | Indirect notice, including broadcast, digital media, and press release |
| **Number of Claims Submitted** | 946,241 (0.49%) (to date) | 9,257 (1.14%) | 247,558 (0.14%) |
| **Average Recovery** | $2.15 per device (repealer states) $1.23 per device (non-repealer states) | $9,836.39 per claim | $43.64 per monitor or laptop $87.28 per television |
| **Expected Residual** | $0 | n/a | $0 |
| **Attorneys' Fees** | $34.035 million (30%) | $41.79 million (30%) | $309.725 million (28.6%) |
| **Litigation Costs** | $6.85 million (6.0%) | $3,354,573.35 (2.41%) | $8,736,131.43 (0.81%) |
| **Administrative Costs** | $4.1 million (3.6%) | $3.1 million (2.2%) | $39.5 million (3.7%) |

## B.    THE SETTLEMENT CLASS MERITS CERTIFICATION.

At this stage, the Court must also determine that it is likely to certify the settlement class, under Rule 23(a) and (b)(3), for purposes of judgment on the proposal.[118] "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."[119] Each element of Rule 23's requirements is satisfied here.

### 1.    The Settlement Class Meets the Requirements of Rule 23(a).

This Court previously determined that identical nationwide litigation and settlement classes meet the requirements of Rule 23(a).[120]

---

[118] See Fed. R. Civ. P. 23(e)(1)(B)(ii); see also Amchem, 521 U.S. at 620; Manual for Complex Litigation (4th ed. 2004) § 21.632.

[119] Amchem, 521 U.S. at 620.

[120] See Order Den. Without Prejudice Mot. for Class Certification; Granting in Part & Den. in Part

Numerosity.  The settlement class readily satisfies the numerosity requirement.[121]  The millions of class members,[122] combined with their geographic dispersal across the country, would make joinder impracticable, if not impossible.[123]

Commonality.  The claims of the settlement class are sufficiently common as they "depend upon a common contention . . . of such a nature that it is capable of classwide resolution."[124]  This requirement is to be "construed permissively,"[125] and a single issue has been held sufficient to satisfy the commonality requirement.[126]  The central, common questions underlying each of Plaintiffs' claims in this case are whether defendants participated in a conspiracy to raise, fix, stabilize or maintain the prices of lithium ion batteries sold in the United States, and if so, the general effects and circumstances thereof.[127]

Typicality.  The claims of the class representatives are "typical of the claims . . . of the class."[128]  The typicality requirement is easily satisfied where, as here, "it is alleged that the defendants engaged in a common [price-fixing] scheme relative to all members of the class."[129]

---

Mots. to Strike Expert Reports or Portions Thereof (Apr. 12, 2017), ECF No. 1735; Order Granting Final Approval of Class Action Settlements with Hitachi Maxell, NEC & LG Chem Defs. (Oct. 27, 2017), ECF No. 2003 at 3.

[121] *See id.*; Fed. R. Civ. P. 23(a)(1); 1 Newberg on Class Actions § 3:11 (5th ed.).

[122] *See* Pls.' Mot. for Final Approval of Class Action Settlements with Hitachi Maxell, NEC & LG Chem (Aug. 28, 2017), ECF No. 1921 at 2 (reflecting "notice to more than 8.7 million potential Class Members").

[123] *See In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal. 2005); *In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*TFT-LCD II*"), 267 F.R.D. 291, 300 (N.D. Cal. 2010).

[124] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); Fed. R. Civ. P. 23(a)(2).

[125] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

[126] *See Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996).

[127] *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *3 (N.D. Cal. June 5, 2006) ("[T]he very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist." (quoting *Rubber Chems.*, 232 F.R.D. at 351)); *TFT-LCD II*, 267 F.R.D. at 300.

[128] Fed. R. Civ. P. 23(a)(3).

[129] *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 613 (N.D. Cal. 2015) (quoting *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993)); *see also Facciola v. Greenberg Traurig LLP*, 281 F.R.D. 363, 369 (D. Ariz. 2012) ("[T]he claims of all investors in the proposed classes turn on a common scheme premised on the same alleged course of conduct by defendants."); *In re Citric Acid Antitrust Litig.*, No. 95-1092, 1996 WL 655791, at *3 (N.D.

<u>Adequacy of Representation</u>.  Finally, "the representative parties will fairly and

2    adequately protect the interests of the class."[130]  The class representatives have no interests in

3    conflict with those of the class, have been actively involved in the litigation of this case, and have

4    each reviewed and approved the terms of the proposed Settlement Agreements.[131]  Moreover,

5    Interim Co-Lead Counsel have vigorously prosecuted the action since their appointment in 2013.

6    They have each successfully prosecuted numerous antitrust class actions on behalf of injured

7    purchasers throughout the United States.

8        Rule 23(g) separately requires this Court to appoint class counsel to represent the

9    settlement class.  At the outset of this action, the Court appointed Interim Co-Lead Counsel for

10   Plaintiffs after a competitive application process.[132]  Considering counsel's work in this action,

11   their collective expertise and experience in handling similar actions, and the resources they have

12   committed to representing the class, they should be appointed as class counsel for the proposed

13   settlement class under Rule 23(g)(3), and confirmed under Rule 23(g)(1).

14                **2.    Common Issues Predominate Under Rule 23(b)(3).**

15       The settlement class satisfies Rule 23(b)(3) because common questions predominate over

16   questions affecting individual class members.  "The Rule 23(b)(3) predominance inquiry tests

17   whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[133]

18   Rule 23(b)(3) does not require that all elements of a claim are susceptible to class-wide proof;

19   rather, it only requires that common questions "*predominate* over any questions affecting only

20   individual members."[134]  Indeed, this Court already found that the predominance requirement of

21

22

---

23   Cal. Oct. 2, 1996).

[130] Fed. R. Civ. P. 23(a)(4); *see also Hanlon*, 150 F.3d at 1020 ("To satisfy constitutional due
24   process concerns, absent class members must be afforded adequate representation before entry of
     a judgment which binds them.").

25   [131] Glackin Decl. ¶ 31.

26   [132] Order Appointing Interim Co-Lead Counsel & Liaison Counsel for Indirect Purchaser Pls.
     (May 17, 2013), ECF No. 194.

27   [133] *Amchem*, 521 U.S. at 623; *Hanlon*, 150 F.3d at 1022.

28   [134] Fed. R. Civ. P. 23(b)(3) (emphasis added); *see also Amgen Inc. v. Conn. Ret. Plans & Tr.
     Funds*, 568 U.S. 455, 469 (2013).

Rule 23(b)(3) was met for an identical settlement class.[135]

### a. Predominance Is Readily Shown in Antitrust Cases.

In horizontal price-fixing cases, questions as to the existence of the alleged conspiracy and as to the occurrence of price-fixing are readily found to predominate.[136] This case is no different. Here, resolution of Plaintiffs' claims depends principally on whether defendants participated in a price-fixing conspiracy, and whether that conspiracy caused an artificial and non-competitive increase to the market price of lithium ion batteries. Thus, if Plaintiffs were able to prove these elements, based on common evidence, a jury could reasonably infer that every class member suffered some injury as a result.[137]

On the other hand, if, for example, class members brought their claims individually, each would have to rely on the same evidence of cartel behavior, and prove damages using the same economic modeling on which Plaintiffs rely. Although this Court denied Plaintiffs' renewed motion for class certification, courts "will certify settlement classes although they had previously denied certification of the same class for litigation purposes."[138] Here, Plaintiffs have provided, though prior briefing, ample common factual evidence to support a finding that a conspiracy existed to fix prices for lithium ion batteries. Moreover, Plaintiffs' experts have examined the factual record, performed economic analyses, and offered opinions regarding the effect of the alleged conspiracy on individual purchasers. Other courts have found settlement classes properly certifiable even though litigation classes were not.[139] Indeed, this Court's second class certification order indicated a concern, not with the evidence relating to the presence of a

---

[135] *See* Order Granting Final Approval of Class Action Settlements with Hitachi Maxell, NEC & LG Chem Defs. (Oct. 27, 2017), ECF No. 2003 at 3.

[136] *See Rubber Chems.*, 232 F.R.D. at 352; *Citric Acid*, 1996 WL 655791, at *8; *see also Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.").

[137] *See ODD*, 2016 WL 467444, at *4–5; *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 5391159, at *3 (N.D. Cal. Sept. 24, 2013); *In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*TFT- LCD I*"), 267 F.R.D. 583, 600–01 (N.D. Cal. 2010).

[138] 3 Newberg on Class Actions § 7:35 (5th ed.).

[139] *See, e.g.*, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. C 06-4333 PJH, 2013 WL 12333442, at *56 (N.D. Cal. Jan. 8, 2013); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 269 F.R.D. 80, 81-82 (D. Me. 2010).

conspiracy, but rather with the quantification of the conspiracy's effect on individual purchasers.[140]  Those concerns are less salient in the context of certification of a settlement class.[141]

### b.    Residents of Non-Repealer States Should be Included.

The Settlement Agreements here cover both class members from repealer states and class members from non-repealer states.  This Court previously performed a choice of law analysis resulting in guidance that it would be likely to allow only residents of repealer jurisdictions to assert claims under California's Cartwright Act.  But this fact does not affect the predominance inquiry here for at least three reasons.

*First*, purchasers of non-repealer states are active litigants in this case.  Their claims have not been dismissed or amended out of the pleadings.  Nor has the Court granted summary judgment against purchasers from non-repealer states.  And, even had the Court dismissed those claims or denied class certification as to them for the reasons expressed in that guidance, such claims would still be subject to appeal.  That is precisely why the Settling Defendants— sophisticated firms with top legal counsel—each insisted on a nationwide class and release as consideration for the settlement payments.[142]

*Second*, the legal issue—whether California law can be applied to purchasers from non-repealer states—is a common question susceptible to a common answer, as this Court's class certification guidance on the matter perfectly demonstrates.  In other words, whether or not residents of Alaska can proceed under the Cartwright Act is not an "individual" question for those persons or anyone else:  it is a common legal question that depends on common factors such as the competing interests of the two states and the nature of the defendants' conduct.  A final resolution of the question against Alaska residents does not create individual issues—as it might if, say, the outcome were to raise individualized elements such as personal reliance.  Rather, a

---

[140] Order Den. Pls.' Renewed Motion for Class Certification; Granting Motion to Strike Expert Report of Edward E. Leamer, Ph. D. (Mar. 5, 2018), ECF No. 2197 at 7.

[141] *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 304–05 (3d Cir. 2011).

[142] Glackin Decl. ¶¶ 7–8.

final judgment on the question will "end the case" as to those persons.[143]  As to this question, therefore, "the class is entirely cohesive:  It will prevail or fail in unison.  In no event will the individual circumstances of particular class members bear on the inquiry."  *Id.*

Indeed, *Sullivan* dealt with this question and found that predominance is met "where differences in state law fell into a limited number of predictable patterns" such that "any deviations could be overcome at trial by grouping similar state laws together and applying them as a unit."[144]  Such a "generally homogenous collection of causes of action" exists here where the causes of action for repealer and non-repealer state class members arise from the same nucleus of facts (price fixing of lithium ion batteries) and the only differences—state law remedies—fall into a predictable binary pattern (the existence or nonexistence of indirect purchaser standing depending on whether the purchaser resided in a repealer or non-repealer state).[145]

*Third*, even if there were some individual component to this question—there is not—denying certification of a settlement class on that basis would wrongly focus the inquiry on the merits of a single aspect of whether such class members may recover to the exclusion of determining "simply whether common issues of fact or law predominate."[146]  As the court found in *Sullivan* when examining the propriety of certifying a nationwide settlement class that included purchasers from *Illinois Brick* repealer and non-repealer states, "the supposed lack of one element necessary to prove a violation on the merits—statutory standing [under *Illinois Brick*]—does not establish a concomitant absence of the predominantly common issues."[147]  Indeed, courts have repeatedly found that nationwide settlement classes may be certified notwithstanding state law

---

[143] *Amgen*, 568 U.S. at 460.

[144] *Sullivan*, 667 F.3d at 301.

[145] *See Hanlon*, 150 F.3d at 1022 ("Variations in state law do not necessarily preclude a 23(b)(3) action . . . ."); *see also* App. A.

[146] *Sullivan*, 667 F.3d at 304–05; *see also Amgen*, 568 U.S. at 468 (courts should look to the existence of a question common to the class rather than whether plaintiffs have satisfied their burden on each element of proof).

[147] *Sullivan*, 667 F.3d at 307; *see also Hanlon*, 150 F.3d at 1022 ("Variations in state law do not necessarily preclude a 23(b)(3) action, but class counsel should be prepared to demonstrate the commonality of substantive law applicable to all class members." (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–23 (1985))).

variations.[148]  In other words, even if this were an individual issue, it would only be one such issue, and would not obviate the required analysis of whether common issues nevertheless predominate.  Here, the choice-of-law question is simply one issue among a host of obviously common ones, including all the factual and legal issues of the violation and the overcharge at the direct purchaser level.  Even if that question were somehow "individual," it would not, standing alone, defeat predominance.

### c.    Differing Allocation of Funds Does Not Affect Predominance.

Nor does allocating different amounts to subgroups of the class defeat predominance.  As discussed above, Judge Westerfield recommends that either zero or 10 percent of the Gross Settlement Funds be allocated for distribution to class members from non-repealer states.  This recommendation is based on considerations of the risk-discounted value of the claims those class members release under the terms of the Settlement Agreements.  Courts have universally recognized that individualized damages determinations, particularly when they are largely formulaic, do not defeat predominance.[149]   And insofar as the question of allocation is tied to the choice-of-law analysis, it is for the reasons stated above common, not individual.

### 3.    The Settlement Class Satisfies Superiority Under Rule 23(b)(3).

Resolution of Plaintiffs' claims through a class action is unquestionably superior to alternative methods.  For example, litigating every class member's claims separately would result

---

[148] *Hanlon*, 150 F.3d at 1022; *Sullivan*, 667 F.3d at 301; *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001).  Earlier this year, a three-judge panel of the Ninth Circuit issued an opinion requiring a lower court, in certifying a settlement class, "to apply California's choice of law rules to determine whether California law could apply to all plaintiffs in the nationwide class, or whether the court had to apply the law of each state, and if so, whether variations in state law defeat[] predominance."  *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 702 (9th Cir. 2018).  *Hyundai* did not hold that a class could not be certified; it held that the lower court had simply made inadequate findings.  In any event, the Ninth Circuit ordered rehearing *en banc*, meaning that the panel opinion no longer has any precedential or other effect.  *In re Hyundai & Kia Fuel Econ. Litig.*, No. 15-56014, 2018 WL 3597310 (9th Cir. July 27, 2018).

[149] *See, e.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27, 42 (2013) (Ginsburg & Breyer, JJ., dissenting) ("Recognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal."); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987 (9th Cir. 2015) (reaffirming "the proposition that differences in damage calculations do not defeat class certification").

in a waste of judicial and party resources, given that the vast majority of evidence of liability would be identical.[150] Certification of the settlement class is therefore appropriate.

## C. THE PROPOSED NOTICE PROGRAM IS THE BEST PRACTICABLE.

A court approving a class action settlement must "direct notice in a reasonable manner to all class members who would be bound by the proposal."[151] For a Rule 23(b)(3) class, the court must also "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[152] A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."[153] Plaintiffs propose a state-of-the-art notice program designed by experienced notice and claims administrator Epiq.

### 1. The Proposed Notice Forms Are Plain and Easy to Understand.

Under Plaintiffs' proposed notice program, Epiq will provide notice to the settlement class with all information required by Rule 23(c)(2)(B). Having followed, as closely as possible, the suggested language for notices in this Procedural Guidance, Plaintiffs submit for approval a proposed long-form notice to class members.[154] Plaintiffs propose that upon preliminary approval, a single notice—covering all four Settlement Agreements and referencing all prior settlements in the IPP action—be issued to all class members so that all settlements in this action can be administered on the same schedule, saving time and resources.

The proposed notices are written in plain and easy-to-understand language. Plaintiffs note that these notice forms have been simplified to make them easier to understand than the notices for the prior rounds of settlements. They set forth a clear schedule of deadlines and provide class members with at least thirty-five days to opt out of or object to the Settlement Agreements and

---

[150] *See Hanlon*, 150 F.3d at 1023.

[151] Fed. R. Civ. P. 23(e)(1)(B).

[152] Fed. R. Civ. P. 23(c)(2)(B).

[153] *Online DVD-Rental*, 779 F.3d at 946.

[154] *See* Azari Decl., Ex. 3; *see also Procedural Guidance*, Preliminary Approval (3)–(5).

1    the Plaintiffs' motion for attorney's fees and costs.[155]  And they also inform class members that

2    Interim Co-Lead Class Counsel will request attorneys' fees (and the amount thereof).

3              **2.     The Proposed Notice Plan Will Reach a Broad Audience.**

4              The proposed notice plan builds on the success of prior notice efforts in this litigation, by

5    leveraging information that is known about or has already been collected from potential class

6    members, in order to maximize the claims rate and ensure that claims are actually paid.  It

7    includes several principal components.  *First*, a direct email notice will be sent to class members

8    for whom a facially valid email address is available, and a long-form notice will be mailed to all

9    persons who request one.[156]  To date, Plaintiffs have collected approximately 7.3 million email

10   addresses for known class members, plus email addresses from claimants who have submitted

11   claims in connection with prior settlement agreements in this case.  *Second*, Plaintiffs propose a

12   robust broadcast and digital media notice campaign, targeted at a broad range of audiences most

13   likely to include class members.[157]  Targeted digital banner and video notices are estimated to

14   generate approximately 576 million adult impressions over a 42-day period.  *Third*, a party-

15   neutral press release will be issued to approximately 15,000 media outlets across all 50 states.[158]

16   *Fourth*, Plaintiffs will continue to maintain the existing website (www.reversethecharge.com) and

17   toll-free phone number (1-888-418-5566), established in connection with previous settlement

18   agreements in this case.[159]  On the website, class members will be able to find additional, detailed

19   information, including a "Claim Your Cash" link to easily file claims online, frequently asked

20   questions, important case documents, and contact information for both class counsel and the

21   notice and claims administrator.[160]  Class members will also be able to have their questions

22   answered through the toll-free telephone number.[161]  In total, Epiq estimates that this notice

23

24   ---

[155] *See Procedural Guidance*, Preliminary Approval (9).

25   [156] *See* Azari Decl. ¶¶ 21–23.

[157] *See id.* ¶¶ 24–41.

26   [158] *See id.* ¶ 42.

27   [159] *Id.* ¶¶ 43–45.

[160] *Id.* ¶ 43.

28   [161] *Id.* ¶ 45.

MOTION TO DIRECT NOTICE TO CLASS RE
SDI, TOKIN, TOSHIBA & PANASONIC SETTLEMENTS
CASE NO. 4:13-MD-02420 YGR (DMR)

campaign will reach in excess of 75 percent of class members, aged 25 or older.[162]  And as

explained in Section IV.A.3.b above, Plaintiffs expect that by leveraging the existing claims

received in connection with the prior settlements in this case, this notice program will expand the

total number of claimants to more than one million.[163]

### D.    PROPOSED SCHEDULE FOR OF NOTICE AND FINAL APPROVAL

Plaintiffs propose the following schedule for class notice and final approval:

| Event | Proposed Deadline |
|---|---|
| Order directing notice to the class regarding the Settlement Agreements | X |
| Notice campaign to begin, including email, broadcast and digital media, publication, and internet notice | X + 28 days |
| Claims period to begin | X + 28 days |
| Last day for motion for attorneys' fees, costs, expenses, and service awards | X + 76 days (14 days before objection deadline) |
| Last day for objections and requests for exclusion from the class | X + 90 days (62 days from notice) |
| Last day for motion in support of final approval of settlements | X + 105 days (15 days after objection deadline) |
| Final Approval Hearing | X + 140 days (35 days after final approval motion) |
| Close of claims period | X + 200 days |

## V.    CONCLUSION

For all the reasons set forth above, Plaintiffs respectfully request that this Court (1) find it

will likely approve the Settlement Agreements; (2) find it will likely certify the settlement class;

(3) direct notice to the settlement class; (4) appoint the Named Representatives as representatives

for the settlement class for purposes of disseminating notice; (5) appoint Interim Co-Lead Class

Counsel as counsel for the settlement class; (6) authorize retention of Epiq as notice and claims

administrator; and (7) schedule a Final Approval Hearing.

---

[162] Adults 25 years of age and older were chosen as the target audience because the end of the class period occurred over seven years ago.  Thus, this group would have been at least 18 years of age at the time they purchased their battery-containing products.  *See* Azari Decl. ¶¶ 16, 45.
[163] *See id.* ¶ 18.

1  | Dated:  January 24, 2019

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

2

By    /s/ Brendan P. Glackin
          BRENDAN P. GLACKIN

3

4

Elizabeth J. Cabraser (083151)
Brendan P. Glackin (199643)

5

Lin Y. Chan (255027)
Michael K. Sheen (288284)

6

Abbye R. Klamann (311112)
275 Battery Street, 29th Floor

7

San Francisco, CA 94111-3339
Tel: (415) 956-1000

8

Fax: (415) 956-1008
ecabraser@lchb.com

9

bglackin@lchb.com

10

lchan@lchb.com
msheen@lchb.com

11

aklamann@lchb.com

12

HAGENS BERMAN SOBOL SHAPIRO LLP

13

By    /s/ Shana E. Scarlett
          SHANA E. SCARLETT

14

Steve W. Berman (Pro Hac Vice)

15

Jeff D. Friedman (173886)
Shana E. Scarlett (217895)

16

Benjamin J. Siegel (256260)
HAGENS BERMAN SOBOL SHAPIRO LLP

17

715 Hearst Avenue, Suite 202

18

Berkeley, CA 94710
Tel: (510) 725-3000

19

Fax: (510) 725-3001
steve@hbsslaw.com

20

jefff@hbsslaw.com

21

shanas@hbsslaw.com
bens@hbsslaw.com

22

23

24

25

26

27

28

1      COTCHETT, PITRE & McCARTHY, LLP

2      By    */s/ Adam J. Zapala*
3            ADAM J. ZAPALA

4      Joseph W. Cotchett (36324)
      Adam J. Zapala (245748)
5      Tamarah Prevost (313422)
      840 Malcolm Road
6      Burlingame, CA 94010
      Tel: (650) 697-6000
7      Fax: (650) 697-0577
8      jcotchett@cpmlegal.com
      azapala@cpmlegal.com
9      tprevost@cpmlegal.com

10     *Interim Co-Lead Class Counsel*
     *For Indirect Purchaser Plaintiffs*
11

**ATTESTATION**

I, Brendan P. Glackin, hereby attest, pursuant to Northern District of California, Local Rule 5-1(i)(3) that concurrence in the filing of this document has been obtained from each of the signatories hereto.

Dated: January 24, 2019 By: _/s/ Brendan P. Glackin_
BRENDAN P. GLACKIN

# APPENDIX A

### *In re: Lithium Ion Batteries Antitrust Litigation*

### Table of States with Indirect Purchaser Standing
### (*Illinois Brick* Repealer States)*

| State | Repealer? | State | Repealer? |
|-------|-----------|-------|-----------|
| Alabama | **Yes** | Montana | No |
| Alaska | No | Nebraska | **Yes** |
| Arizona | **Yes** | Nevada | **Yes** |
| Arkansas | **Yes** | New Hampshire | **Yes** |
| California | **Yes** | New Jersey | No |
| Colorado | No | New Mexico | **Yes** |
| Connecticut | No | New York | **Yes** |
| Delaware | No | North Carolina | **Yes** |
| District of Columbia | **Yes** | North Dakota | **Yes** |
| Florida | **Yes** | Ohio | No |
| Georgia | No | Oklahoma | No |
| Hawaii | **Yes** | Oregon | **Yes** |
| Idaho | No | Pennsylvania | No |
| Illinois | **Yes** | Rhode Island | No |
| Indiana | No | South Carolina | No |
| Iowa | **Yes** | South Dakota | **Yes** |
| Kansas | **Yes** | Tennessee | **Yes** |
| Kentucky | No | Texas | No |
| Louisiana | No | Utah | **Yes** |
| Maine | **Yes** | Vermont | **Yes** |
| Maryland | No | Virginia | No |
| Massachusetts | **Yes** | Washington | No |
| Michigan | **Yes** | West Virginia | **Yes** |
| Minnesota | **Yes** | Wisconsin | **Yes** |
| Mississippi | **Yes** | Wyoming | No |
| Missouri | **Yes** | | |

\* This table identifies *Illinois Brick* repealer states for purposes of predominance analysis in this case only.

*In re: Lithium Ion Batteries Antitrust Litigation*

**Past Distributions in Comparable Class Settlements***

| Case | Batteries (IPPs) (estimated) | Batteries (DPPs) | LCDs (IPPs) |
|---|---|---|---|
| **Total Settlement Fund** | $113.45 million | $139.3 million | $1,082 million |
| **Estimated Class Members** | 193 million | 809,590[1] | 175 million |
| **Class Members to Whom Notice Was Sent** | 7.3 million | 809,590 | 0 |
| **Method(s) of Notice** | Direct notice; indirect notice, including broadcast, digital media, and press release | Direct notice; indirect notice campaigns through publication. | Indirect notice, including broadcast, digital media, and press release |
| **Claims Submitted** | 946,241 (0.49%) (to date) | 9,257 (1.14%) | 247,558 (0.14%) |
| **Average Recovery** | Non-mobile devices: $2.15 per device (repealer states) $1.23 per device (non-repealer states) | $9,836.39 per claim | $43.64 per monitor or laptop $87.28 per television |
| **Expected Residual** | $0 | n/a | $0 |
| **Attorneys' Fees** | $34.035 million (30%) | $41.79 million (30%) | $309.725 million (28.6%) |
| **Litigation Costs** | $6.85 million (6.0%) | $3,354,573.35 (2.41%) | $8,736,131.43 (0.81%) |
| **Administrative Costs** | $4.1 million (3.6%) | $3.1 million (2.2%) | $39.5 million (3.7%) |

---

[1] *See* Direct Purchaser Pls.' Submission in Response to Request by the Court (Jan. 19, 2018), ECF No. 2149 at 12.

| Case | *DRAM* (IPPs) | *SRAM* (IPPs) | *CRT* (IPPs) |
|---|---|---|---|
| **Total Settlement Fund** | $310.72 million | $41.322 million | $576.750 million |
| **Estimated Class Members** | 175.5 million | 220.3 million (including End Users and Resellers) | 207.5 million |
| **Class Members to Whom Notice Was Sent** | 0 | 11,355 | 10.535 million |
| **Method(s) of Notice** | Indirect notice | Direct; indirect notice | Direct; indirect notice |
| **Claims Submitted** | 469,487 submitted claims (0.27%)<br><br>445,553 bona fide claims (0.25%) | 668 submitted claims (0.000303% of End Users and Resellers)<br><br>381 claims approved for payment | n/a |
| **Average Recovery** | Average recovery per claimant in the Large Claims pool: $74,460<br><br>Average recovery per claimant in the Small Claims pool: $56<br><br>Average recovery per claimant: $423.90 | Average recovery per claim: $19,294.97<br><br>Median recovery per claim: $74.68 | n/a |
| **Expected Residual** | $2.3 million (1%) | $12.713 million (31%) (*cy pres* only distribution for End Users)<br><br>$3,219.99 (after distribution to Resellers) | n/a |
| **Attorneys' Fees** | $78.3 million (25%) | $13.774 million (33%) | $158.6 million (27.5%) |
| **Litigation Costs** | $11.34 million (4%) | $4.580 million (11%) | $7.63 million (1%) |
| **Administrative Costs** | $1.047 million (0.3%) | $2.438 million (6%) | n/a |

\* All figures in this Appendix represent estimates based the best publicly available information available to counsel at this time.  The citations below represent the sources of information used to arrive at these estimates.

**In re Lithium Ion Batteries Antitrust Litigation (DPP Actions), No. 4:13-md-02420-YGR (DMR) (N.D. Cal.)**
Order Granting Direct Purchaser Pls.'Mtn. for Attorneys' Fees (May 16, 2018), ECF No. 2322
Saveri Supp. Decl. in Supp. of Final Approval (May 7, 2018), ECF No. 2298
Direct Purchaser Pls.' Reply in Supp. of Mtn. for Attorneys' Fees (Mar. 29, 2018), ECF No. 2250
Direct Purchaser Pls.' Memo in Supp. of Final Approval (Mar. 29, 2018), ECF No. 2249
Tabacco Decl. in Supp. of Mtn. for Attorneys' Fees (Feb. 8, 2018), ECF No. 2172
Direct Purchaser Pls.' Submission in Response to Request by the Court (Jan. 19, 2018), ECF No. 2149
Direct Purchaser Pls.' Memo in Supp. of Final Approval (July 24, 2017), ECF No. 1888
Thompson Decl. in Supp. of Direct Purchaser Pls.' Mtn. for Final Approval (July 24, 2017), ECF No. 1888-1
Direct Purchaser Pls.' Memo in Supp. of Final Approval (July 29, 2016), ECF No. 1357
Thompson Decl. Re Dissemination of Sony Notice to Class Members (June 24, 2016), ECF No. 1330
Settlement Agreement, LG Chem Defs. (Oct. 2, 2017), ECF No. 2249-1 at Ex. 1
Settlement Agreement, Samsung SDI (Aug. 2, 2017), ECF No. 2249-1 at Ex. 2
Settlement Agreement, TOKIN Corp. (Aug. 30, 2017), ECF No. 2249-1 at Ex. 3
Settlement Agreement, Maxell Defs. (Sep. 30, 2016), ECF No. 1707-1 at Ex. 1
Settlement Agreement, NEC Corp. (Apr. 4, 2016), ECF No. 1707-1 at Ex. 2
Settlement Agreement, Panasonic Corp. (Dec. 15, 2016), ECF No. 1707-1 at Ex. 3
Settlement Agreement, Toshiba Corp. (Mar. 15, 2016), ECF No. 1707-1 at Ex. 4
Settlement Agreement, Sony Defs. (Feb. 1, 2016), ECF No. 1357-2 at Ex. 1

**In re TFT-LCD (Flat Panel) Antitrust Litigation (IPP Actions), No. 3:07-md-01827-SI (N.D. Cal.)**
Indirect Purchaser Pls.'s Report on Settlement Fund Distribution (Nov. 19, 2018), ECF No. 9591
Indirect Purchaser Pls.' & State Attorney General's Joint Report of Settlement Fund Distribution (Dec. 23, 2105), ECF No. 9498
Decl. of Amy Lake of Rust Consulting, Inc., Notice & Claims Administrator (Dec. 23, 2015), ECF No. 9498-1
Reply Decl. of Robin M. Niemiec (Oct, 7, 2014), ECF No. 9250-1
2d Am. Order Granting Final Approval of Combined Class (April 3, 2012), ECF No. 7697
Decl. of Katherine Kinsella Regarding Implementation of the Second Notice Program, (Nov. 15, 2012), ECF No. 7158-1
Decl. of Robin M. Niemiec (Nov. 15, 2012), ECF No. 7158-2
Settlement Agreement, Chimei Innolux Corp. (Dec. 23, 2011), ECF No. 4424-2
Settlement Agreement, Chunghwa Picture Tubes, Ltd. (Dec. 23, 2011), ECF No. 4424-3

Settlement Agreement, Epson Imaging Devices Corp. (Dec. 23, 2011), ECF No. 4424-4
Settlement Agreement, HannStar Display Corp. (Dec. 23, 2011), ECF No. 4424-5
Settlement Agreement, Hitachi Displays Defs. (Dec. 23, 2011), ECF No. 4424-6
Settlement Agreement, Samsung Elecs. Co., Ltd. et al. (Dec. 23, 2011), ECF No. 4424-7
Settlement Agreement, Sharp Corp., (Dec. 23, 2011) ECF No. 4424-8
Settlement Agreement, AU Optronics Corp. & AU Optronics Corp. Am. (July 12, 2012), ECF No. 6141-2
Settlement Agreement, LG Display Defs. (July 12, 2012), ECF No. 6141-3
Settlement Agreement, Toshiba (July 12, 2012), ECF No. 6141-4

***In re Dynamic Random Access Memory (DRAM) Antitrust Litigation* (IPP Actions), No. 4:02-md-01486-PJH (N.D. Cal.)**
Indirect Purchaser Pls.' & Attorneys General's Joint Reply Mem. (Apr. 7, 2017), ECF No. 2296
Decl. of Louise M. Roberts of Rust Consulting, Inc., Notice and Claims Administrator (Apr. 7, 2017), ECF No. 2296-1
Order Granting Mot. to Distribute Settlement Funds, (May 19, 2016), ECF No. 2283
Indirect Purchaser Pls.' & Attorneys General's Joint Mot. to Distribute Settlement Funds (May 4, 2016), ECF No. 2273
Decl. of Amy L. Lake of Rust Consulting, Inc., Notice & Claims Administrator (May 4, 2016), ECF No. 2273-2
Decl. of Terry Gross in Supp. of Mot. to Distribute Settlement Fund, (May 4, 2016) ECF No. 2273-4
Master's R. & R., Parts I & II; Final J. of Dismissal with Prejudice (June 27, 2014), ECF No. 2235
Order Granting Award of Attorneys' Fees, Reimbursement of Expenses & Incentive Awards, (June 27, 2017), ECF No. 2234
Decl. of Shannon R. Wheatman, Ph.D. on Implementation & Adequacy of Notice Plan (June 4, 2014), ECF No. 2209
Indirect Purchaser Pls.' & Attorneys General's Mot. for Attorneys' Fees, Costs & Incentive Awards (Mar. 11, 2014), ECF No. 2186

***In re Static Random Access Memory (SRAM) Antitrust Litigation* (IPP Actions), No. 4:07-md-01819-CW (N.D. Cal.)**
Order Granting Mot. for Order Authorizing Distribution of Settlement Fund (Aug. 30, 2012), ECF No. 1422
Indirect Purchaser Pls.' Mot. for Order Authorizing Distribution of Settlement Fund (Aug. 16, 2012), ECF No. 1421
Decl. of C. Micheletti in Supp. of Mot. for an Order Authorizing Distribution of Settlement Fund (Aug. 16, 2012), ECF No. 1421-1
Decl. of M. Sherwood in Supp. of Mot. for Order Authorizing Distribution of Settlement Fund (Aug. 16, 2012), ECF No. 1421-2
Order Granting Final Approval of Samsung and Cypress Settlements and Plan of Distribution (Oct. 14, 2011), ECF No. 1408
Order Granting Award of Attorneys' Fees, Reimbursement of Expenses & Incentive Payments (Oct. 14, 2011), ECF No. 1407
Mem. in Supp.of Final Approval of Samsung & Cypress Settlements & Distribution Plan (Sept. 15, 2011), ECF No. 1389
Notice of Compliance Regarding Notice Plan (Aug. 1, 2011) ECF No. 1380
Decl. of Dennis Gilardi re Dissemination of Notice to Class Members (Aug. 1, 2011), ECF No. 1380-1
Decl. of Dennis Gilardi re Dissemination of Notice to Class Members (May 24, 2011), ECF No. 1359-4
Mot. for Attorneys' Fees, Reimbursement of Expenses & Incentive Awards (July 27, 2011), ECF No. 1375

Am. Order Granting Interim Reimbursement of Expenses (Oct. 6, 2010), ECF No. 1142

***In re Cathode Ray Tube (CRT) Antitrust Litigation* (IPP Actions), No. 3:07-cv-05944-JST (N.D. Cal.)**
Order Den. Mot. to Require Lead Counsel to Disclose the Number of Indirect-Purchaser Claimants (Jan. 11, 2017), ECF No. 5093
Order on Attorneys' Fees, Expenses & Incentive Awards re Indirect Purchaser Pl. Settlements (Aug. 3, 2016), ECF No. 4740
Order Granting Final Approval of Indirect Purchaser Settlements (July 7, 2016), ECF No. 4712
Decl. of Joseph M. Fisher re Notice of Chunghwa Plan of Distribution (Mar. 15, 2016), ECF No. 4488
Decl. of Joseph M. Fisher re Class Notice (Feb. 4, 2016), ECF No. 4371
Indirect Purchaser Pls'. Mot. for Award of Attorneys' Fees, Litigation Expenses & Incentive Awards (Sept. 23, 2015), ECF No. 4071
Am. Order Granting Prelim. Approval of Class Action Settlements with Philips et al. (July 9, 2015), ECF No. 3906
Decl. of Joseph M. Fisher re Notice Program (May 29, 2015), ECF No. 3863
Decl. of Joseph M. Fisher re Class Notice Program for Cert. Class & Settlement with LG Elecs. et al. (Mar. 28, 2014), ECF No. 2511
Decl. of Joseph M. Fisher re Class Notice Program for Settlement with Chunghwa Picture Tubes, Ltd. (Mar. 1, 2012), ECF No. 1063