Timothy R. Hanigan (SBN 125791)
LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, CA 91367
Tel: (818) 883-5644
Fax: (818) 704-9372
Attorneys for Objector/Class Member,
Gordon Morgan

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| IN RE: LITHIUM ION BATTERIES ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>INDIRECT PURCHASER ACTIONS<br><br>All Indirect Purchaser Actions | Case No. 13-MD-02420 YGR (DMR)<br><br>MDL No. 2420<br><br>The Honorable Yvonne Gonzalez Rogers |

**OBJECTION OF GORDON MORGAN TO THE SETTLEMENTS WITH SDI, TOKIN, TOSHIBA AND PANASONIC SETTLEMENTS, AND TO THE REQUESTED ATTORNEYS' FEES**

# INTRODUCTION

Class member Gordon Morgan again calls for this Court to exercise its fiduciary obligation on behalf of the class. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010). Mr. Morgan previously complained that 25% from this mega-fund was too much. Dkt. 1906. The Court agreed, at least in principal, by awarding 10% and deferring a full award of attorneys' fees. Dkt. 2005.

A year-and-a-half later with all settlements in, class counsel now believe they should get 5% more even though the return on class damages dropped from 17.5%[1] to 11.7%[2] over that time. Class counsel seemingly hope to follow in the wake of the Direct Purchaser Plaintiffs' counsels' 30% fee award in the same litigation. Dkt. 2322. But, they achieved a 39% return on class damages (Dkt. 2171 at 2), nearly **four times** the return class counsel for the Indirect Purchaser Plaintiffs were able to extract from the defendants.

Class counsel here should be capped at a 20% fee from the $113 mega-fund. That would allow a .54 multiplier, which is just below the .58 multiplier allowed for DPPs' counsels' far superior recovery. The millions in excess should be returned to the class.

# STANDING AND PRELIMINARY STATEMENTS

Objector's full name, address, telephone number, are as follows: Gordon Morgan; 4701 Ayers, Suite 105; Corpus Christi, TX 77415; (281) 733-4097.

During the class period (January 1, 2000 through May 31, 2011), Mr. Morgan

---

[1] Dkt. 1814 at 9.
[2] Dkt. 2487 at 1.

1

purchased and owned numerous devices with those lithium products covered by the proposed class action settlement, including but not limited to laptop computers, mobile phones, smart phones, cameras, video cameras, digital audio players, and power tools. Dkt. 1906-1. He bought these products from numerous retailers. *Id.* As such, he has standing to make this objection. Mr. Morgan filed a claim online via the settlement website. Dkt. 1906-2.

Mr. Morgan is represented by local counsel, Timothy R. Hanigan, Lang, Hanigan & Carvalho, LLP. Mr. Morgan is also represented by Robert Clore and Christopher Bandas of the Bandas Law Firm, P.C., who contemporaneous with this objection, are moving for *pro hac vice* admission before this Court.

The statement of the objections and the grounds therefore are set forth below. Objector relies upon the documents contained in the Court's file in support of these objections. Objection is made to any procedures or requirements to object in this case that require information or documents other than those that are contained herein on grounds that such requirements

This objection is filed for the purpose of improving the settlement for the benefit of the class members. Objector incorporates by reference the arguments and authorities contained in other filed objections, if any, made in opposition to the fairness, reasonableness and adequacy of the proposed settlement, the adequacy of class counsel and to the proposed award of attorneys' fees and expenses that are not inconsistent with this objection.

### I. IPPs' counsel should not be awarded the same high-end fee percentage as DPPs' counsel for a far inferior return on damages.

This Court appropriately refrained from awarding class counsel for Indirect Purchaser Plaintiffs their full 25% fee request after the last round of settlements given the aggregate fee up to that stage, $64 million, approached a mega-fund settlement. Dkt. 2005. Mega-fund settlements generally call for an adjustment downward in light of decreasing expenses at the higher margins. *See e.g., Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) ("There may be some marginal costs of bumping the recovery from $100 million to $200 million, but as a percentage of the incremental recovery these costs are bound to be low. It is accordingly hard to justify awarding counsel as much of the second hundred million as of the first. The justification for diminishing marginal rates applies to $50 million and $500 million cases too, not just to $200 million cases.").

Remarkably, now that the settlements total $113 million, well into mega-fund territory, class counsel for the IPPs actually ask for a bump up above the 25% benchmark. The impetus for their brazen request is ostensibly the 30% award for counsel for the Direct Purchaser Plaintiffs (Dkt. 2322), who recovered a noteworthy **39% of single damages**. Dkt. 2171 at 2. Class counsel for the IPPs request the same 30% fee for a **much smaller 11.7% return**. Dkt. 2487 at 1. That is, class counsel ask for the same percentage as attorneys who recovered **nearly four times** as much for their clients. Allowing class counsel to recover the same fee as counsel for DPPs would yield a windfall profit from this mega-fund settlement, and should not be indulged. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 ("[w]here awarding 25% of a

'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead") (citing *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990)("[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors")).

The result achieved, the most important factor in determining an appropriate percentage, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008), does not support the rise above the benchmark. Nor does the "awards made in similar cases" factor considering counsel for the DPPs achieved nearly four times as much in terms of recovery of potential damages.

One might reasonably question what happened between May 29, 2017 (when class counsel petitioned for 25% from the prior round of settlements) and now to explain the 5% increase. The simple answer is DPPs' counsel obtained their 30% fee. Otherwise, class counsel are actually now less deserving of a 25% (and certainly 30%) fee. At the time IPPs' counsel filed their last fee motion, they had secured 17.5% of IPPs' single damages from the collective $64 million settlements. Dkt. 1814 at 9. Since then, SDI, Tokin, Toshiba, and Panasonic, to whom class counsel attributed 62% of class damages, settled for $49 million. That's around 8% of the $595 million nationwide damages attributable to these defendants. Dkt. 2487 at 13. There is no basis for this Court to

entertain the same 5% push above the benchmark awarded to DPPs' counsel for IPPs' counsel for these results.

## II. Class counsel for IPPs should be given no more than the .58 lodestar multiplier from DPPs' counsels' fee.

Class counsel make much of their $41 million lodestar,[3] but only $7 million was expended since the last fee motion. As applied to their request for an additional $29.5 million, the multiplier from their $7 million lodestar is above 4. Of course, diminishing labor necessary to achieve successive millions is the exact predicate for reducing fees below the benchmark for mega-fund settlements. *See e.g., In re Cendant Corp. PRIDES Litigation*, 243 F.3d 722, 736 (3d Cir. 2001).

Looking at the entire $41 million lodestar relative to class counsels' total request of $34 million, the .82 multiplier does not compare favorably to DPP's counsels' .58 multiplier. Dkt. 2487 at 2; Dkt. 2322 at 2. If class counsel are awarded some percentage of their lodestar, it should be lower than the percentage applied to DPPs' counsel. A more reasonable 20% fee in the context of a mega-fund would allow an aggregate $22,690,000 fee, with a slightly lower .54 multiplier. That would amount to an additional $18,195,000 award here taking into account the interim $4,495,000.00 already awarded.[4] Under no circumstance should IPPs' counsels' fee exceed the .58 multiplier given the far superior recovery for the DPPs.

---

[3] IPPs' class counsels' represented aggregate lodestar is $41,458,223.50. Dkt. 2487 at 2.
[4] $113,450,000 x .2 = $22,690,000 - $4,495,000 = $18,195,000.

**III.    30% is not consistent with typical fees for mega-fund settlements.**

Class counsel rely on outliers to claim that 30% would be reasonable from this mega-fund. The cases they cite involve exceptional recoveries. For example, in *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1213 (S.D. Fla. 2006) (cited at Dkt. 2847 at 11 n. 55), the court permitted an extraordinary 31% fee from a mega-fund where class members recovered **full compensatory damages** after fifteen years of litigation, including two trials and appeals before the United States Supreme Court. And in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) (cited at Dkt. 2847 at 12 n. 57), the court allowed a 28.5% recovery from a mega-fund where the class recovered "**50% of the potential recovery**" after six years of litigation. (emphasis added). Similarly, in *In re: Urethane Antitrust Litig.*, No. 04-1616-JWL, 2016 WL 4060156, at *4-6 (D. Kan. July 29, 2016) (cited at Dkt. 2847 at 11 n. 55), the court awarded 33% from a mega-fund based on "unique circumstances[,]" including eleven years of litigation and a recovery of **1.4 times actual damages**.

The trends are clear, "typically the percentage award in [megafund cases] is substantially less than the 25% benchmark applicable to class settlements in this Circuit." *Alexander v. FedEx Ground Package Sys., Inc.*, 05-CV-00038-EMC, 2016 WL 3351017, at *2–3 (N.D. Cal. June 15, 2016). There is "persuasive evidence that 'the median attorney's fee award in a sample of 68 'megafund' class action settlements over a 16-year period was 10.2%." *In re High-Tech Emple. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118052, at *50, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) (also citing a study where the mean award was 12%). Notably, Judge Koh rejected evidence from a

different study indicating that the mean and median fee percentages awarded were 17.8% and 19.5%. *See id.* at \*48-50 (noting that the "study spanned just two years" and "the sample size in the ... study is only eight"); *Alexander v. FedEx Ground Package Sys., Inc.*, 05-CV-00038-EMC, 2016 WL 3351017, at \*2–3 (N.D. Cal. June 15, 2016) ("[t]his data suggests that a proposed award of 22%, while not without precedent, is well above the typical range in a megafund case").

Thus, while there are outliers in cases where class counsel achieved extraordinary returns on potential damages, the proposed 30% from $113 million "is well above the typical range in a megafund case." *Alexander v. FedEx Ground Package Sys., Inc.*, 05-CV-00038-EMC, 2016 WL 3351017, at \*3 (awarding 16.4%, which was on "the higher end of awards in megafund cases").

**IV.  This Court should require Hagens Berman to disclose the fee methodology promised in its bid for co-lead counsel.**

Mr. Morgan renews his request for the Court to unseal Hagens Berman bid to secure co-lead counsel status filed on March 28, 2013.[5] According to Hagens, this bid "provide[d] for fair compensation while minimizing the impact on the proposed class."[6] Hagens justified the sealing and redaction as necessary because the defendants could use the information to gain tactical advantage in making settlement offers.[7]

Now that all defendants have settled, there is no justification, and certainly no compelling reason, for keeping the fee bid hidden from the class. As a matter of

---

[5] Dkt. 108-1, ¶¶ 17-18.

[6] *Id.* at ¶ 18.

[7] *Id.*

transparency to the class members, this Court should order the bid unsealed. *See In re Oracle Sec. Litig.*, 136 F.R.D. 639 644-647 (N.D. Cal. 1991); Model Rules of Professional Conduct, Rule 1.5(b)("the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation. . . . Any changes in the basis or rate of the fee or expenses shall also be communicated to the client."); CA ST RPC Rule 3-500 (attorneys must "keep a client reasonably informed about significant developments… including promptly complying with reasonable requests for information…."). A sealing order "must be lifted at the earliest possible moment when the reasons for sealing no longer obtain." *See Cendant Corp.*, 260 F.3d at 196. This means bids may be "submitted under seal to ensure their confidentiality *up to the point of selection*," but must then be "unsealed to assure transparency of the selection process." *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 975 (N.D. Cal. 2001) (emphasis added). At the very least, some portion of the bid must be unsealed, with appropriate redactions for aspects that reasonably relate to strategy. *See In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 975 (N.D. Cal. 2001) ("The bids were submitted under seal to ensure their confidentiality *up to the point of selection*, but are, with this order, unsealed to assure transparency of the selection process.") (emphasis added).

Further, to the extent Hagens promised a lower fee, this Court in its fiduciary role on behalf of the class should hold the firm to its bid. *Dugan v. Lloyds TSB Bank*, PLC, No. 12-2549 WHA, 2014 WL 1647652 (N.D. Cal. April 24, 2014) ("When attorneys promise to restrict the fees to be sought in a fee petition, that ex ante promise should be

honored, absent special circumstances"); *In re Oracle Secs. Litig.*, 131 F.R.D. 688, 692 (N.D. Cal. 1990) (Walker, J.) ("[i]t is inherently illogical for lawyers to undertake litigation on the basis of the risks and rewards they perceive at the beginning, yet be compensated on the basis of the risks and rewards the court perceives at the end of the litigation").

### V. If class counsels' excessive fee request is granted, the settlement itself is unfair under amended rule 23.

Under amended Rule 23(e), effective December 1, 2018, the Court is required to "tak[e] into account … the terms of any proposed award of attorney's fees, including timing of payment" in determining whether the "relief provided for the class is adequate[.]" FED. R. CIV. P. 23(e)(2)(c). Consequently, the excessive 30% of $113 million request in attorneys' fees, if granted, would unfairly take millions away from the class, rendering class recovery inadequate. *See also Redman v. RadioShack Corp.*, 768 F.3 622, 629 (7th Cir. 2014) (fees should be considered as part of the overall fairness of the settlement "bearing in mind that the higher the fees the less compensation will be received by the class members"); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014) (considering that "class counsel sought and were awarded excessive compensation" in reversing approval of a class action settlement). The provisions included in the settlements purporting to segregate consideration of attorneys' fees from settlement fairness[8] are no longer legally viable under Rule 23 and should be rejected.

---

[8] *See e.g.,* Dkt. 2459-1 at 21 ¶ 26.

**Conclusion**

Consistent with mega-fund principals and the comparative (and superior) achievements of DPPs' counsel, this Court should award class counsel for IPP no more than 20% of the $113.45 million settlements. This would allow an aggregate $22,690,000 fee, or an additional $18,195,000, minus the interim $4,495,000.00 already awarded. A 20% award would produce a .54 lodestar multiplier, comparable to DPPs' counsels' .58 multiplier for a recovery that awarded the DPPs nearly four times as much in terms of percentage of single damages. Mr. Morgan also renews his request that Hagens Berman be ordered to disclose what fee they promised in securing co-lead class counsel status, and further that, to the extent it reveals a fee below 25%, that the Court enforce that promise used to secure class counsel status. To the extent the full 30% fee is allowed, the settlement itself is unfair under Rule 23(e).

DATED:  May 27, 2019

Respectfully submitted,
*/s/ Timothy R. Hanigan*
Timothy R. Hanigan (125791)
LANG, HANIGAN & CARVALHO, LLP,
21550 Oxnard Street, Suite 760
Woodland Hills, California 91367
(818) 883-5644
trhanigan@gmail.com

Robert W. Clore
Christopher Bandas
BANDAS LAW FIRM, P.C.
500 North Shoreline, Suite 1020
Corpus Christi, TX 78401
Tel: (361) 698–5200
Fax: (361) 698-5200
*Pro Hac Vice* Admission Pending

Counsel Objecting Class Member
Gordon Morgan

**Certificate of Service**

The undersigned certifies that today he filed the foregoing Objection on ECF which will send electronic notification to all attorneys registered for ECF-filing. The foregoing Objection was also mailed today to the Class Action Clerk, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 96412.

DATED: May 27, 2019

                                                          /s/ *Timothy R. Hanigan*
                                                          Timothy R. Hanigan