1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

9

10

11

12

13

14

15

16

| | |
|---|---|
| IN RE: LITHIUM ION BATTERIES ANTITRUST LITIGATION<br><br>———————————————————<br><br>This Documents Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS | Case No. 4:13-md-02420-YGR (MDL)<br><br>**ORDER GRANTING INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS WITH SDI, TOKIN, TOSHIBA, AND PANASONIC DEFENDANTS, GRANTING MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; OVERRULING OBJECTIONS; GRANTING MOTION OF GORDON MORGAN FOR LEAVE TO SUBMIT SUPPLEMENTAL AUTHORITY**<br><br>Dkt. Nos. 2487, 2501, 2514 |

17

18

19

20

21

22

    This matter comes before the Court on the motions of the indirect purchaser plaintiffs (IPPs) for final approval of settlements (Dkt. No. 2501) and for attorneys' fees, reimbursement of expenses, and service awards (Dkt. No. 2487). A hearing on these motions was held on July 16, 2019. Subsequently, IPPs submitted a supplemental brief addressing questions raised by the Court at the hearing (Dkt. No. 2513), and objector Gordon Morgan, joined by objector Michael Frank Bednarz, filed a motion for leave to submit supplemental authority (Dkt. No. 2514).[1]

23

24

25

26

27

    The Court has carefully reviewed and considered the record in this matter, including: the memoranda and supporting declarations submitted in support of the motions and the exhibits submitted therewith; the objections submitted to the Court by Gordan Morgan (Dkt. No. 2493), Michael Frank Bednarz (Dkt. No. 2495), and Christopher Andrews (Dkt No. 2497); IPPs'

28

---

    [1] The Motion of Gordon Morgan for Leave to Submit Supplemental Authority (Dkt. No. 2514) is **GRANTED**.

responses to those objections; the supplemental filing of IPPs; and the supplemental authority submitted by Morgan.

Good cause appearing, the Court **ORDERS** that the motion for final approval is **GRANTED** and the motion for attorneys' fees, expenses, and service awards is **GRANTED IN PART**, on the terms and for the reasons stated herein.

## I.   BACKGROUND

IPPs move for final approval of their settlements with defendants Samsung SDI Co., Ltd. and Samsung SDI America, Inc. (SDI), TOKIN Corporation (TOKIN), Toshiba Corporation (Toshiba), and Panasonic Corporation, Panasonic Corporation of North America, Sanyo Electric Co., Ltd., and Sanyo North America Corporation (Panasonic/Sanyo), collectively "Settling Defendants." The settlement agreements between IPPs and each of the Settling Defendants are attached hereto as **Exhibits 1 through 4**.[2] On March 11, 2019, this Court directed notice to the class regarding the SDI, TOKIN, Toshiba, and Panasonic/Sanyo settlements, granting preliminary approval of these settlements, provisionally certifying the settlement class, and ordering dissemination of notice to class members. (Dkt. No. 2475.)

The class administrator provided notice in accordance with this Court's order. Only ten class members requested exclusion from the class, and a total of three objections were filed. The settlements will result in the recovery of $49 million for the IPP class. The list of those who requested exclusion is attached hereto as **Exhibit 9**. Under the proposed schedule, class members could submit claims until July 19, 2019, after which time the settlement funds are to be distributed in accordance with this Court's order.

//

//

---

[2] The Court previously approved settlement agreements between IPPs and defendants Sony Corporation, Sony Energy Devices Corporation, and Sony Electronics Inc. (collectively, "Sony"); LG Chem, Ltd. and LG Chem America, Inc. (collectively, "LG Chem"); Hitachi Maxell Ltd. and Maxell Corporation of America (collectively, "Hitachi Maxell"); and NEC Corporation ("NEC"), upon the terms set forth in agreements attached hereto as **Exhibits 5 through 8**.

## II.    SUMMARY OF THE SETTLEMENTS

### A.    Settlement Terms

The proposed settlements resolve all claims against the Settling Defendants stemming from the alleged conspiracy to restrain competition for lithium-on batteries (LIBs).  The settlement class is defined as follows:

> [A]ll persons and entities who, as residents of the United States and during the period from January 1, 2000 through May 31, 2011, indirectly purchased new for their own use and not for resale one of the following products which contained a lithium-ion cylindrical battery manufactured by one or more defendants or their coconspirators: (i) a portable computer; (ii) a power tool; (iii) a camcorder; or (iv) a replacement battery for any of these products. Excluded from the class are any purchases of Panasonic-branded computers. Also excluded from the class are any federal, state, or local governmental entities, any judicial officers presiding over this action, members of their immediate families and judicial staffs, and any juror assigned to this action, but included in the class are all non-federal and non-state governmental entities in California.

(*See* Declaration of Brenden P. Glackin, Dkt. No. 2459-1, Exhs. A, B, C, D [SDI, Tokin, Toshiba, and Panasonic Settlement Agreements] at ¶¶ 1.d, respectively.)

### B.    The Settlement Fund

Under the proposed settlements, the Settling Defendants will pay a total of $49 million in cash: SDI will pay $39.5 million, TOKIN will pay $2 million, Toshiba will pay $2 million, and Panasonic/Sanyo will pay $5.5 million.  The settlement funds are non-reversionary to the Settling Defendants.  Inclusive of the settlements previously approved between IPPs and other defendants in this case, IPPs have secured a total of $113.45 million in settlement funds for the IPP class.

### C.    Release of Claims

Each Settlement Agreement provides that upon final approval and entry of judgment, class members will release state and federal law claims against the Settling Defendants relating to purchases of lithium-ion batteries or products containing lithium-ion batteries up through May 31, 2011.  The proposed settlement class includes only purchasers of portable computers, power tools, camcorders, and replacement batteries, consistent with the class for which IPPs originally sought

3

certification. As to these settlement class members, the Settlement Agreements will release all antitrust claims based on all lithium-ion battery types (*i.e.*, cylindrical, prismatic, and polymer batteries) and additional products (*e.g.*, mobile phones, smart phones, cameras, digital video cameras, and digital audio players), consistent with the scope of claims originally pleaded. (*See* Settlement Agreements at ¶¶ 1(m), (q)-(s), in each respectively.)

### D.     Plan of Distribution

IPPs will distribute the settlement funds in two steps. First, 90 percent of the settlement funds will be allocated toward Class Members who are residents from so-called *Illinois Brick* repealer states, and the remaining 10 percent will be allocated toward Class Members who are residents of non-repeater states. Second, within each allocation, the funds will be distributed *pro rata* to claimants based on the total number of covered products purchased from January 1, 2000, through May 31, 2011. Should a balance remain after distribution to the class (whether by reason of tax refunds, uncashed checks, or otherwise), those funds shall escheat to federal or state governments. Accordingly, no settlement funds will revert to the Settling Defendants.

## III.   OBJECTIONS

Three individuals have filed objections to the fairness of the settlements, including the attorneys' fees sought –Michael Frank Bednarz (Dkt. No. 2495), Gordon Morgan (Dkt. No. 2496), and Christopher Andrews (Dkt. No. 2497). While the Court has considered the objections it finds none of them to be substantial.

The objections are directed primarily to the amount of attorneys' fees sought, including whether an award amounting to thirty percent of the common fund is warranted, and whether fees should be reduced on the grounds that the settlement is a megafund and such a large percentage would amount to a windfall for counsel. They argue that the attorneys' fees here are not reasonable given the market rate for antitrust cases and the result obtained, particularly in light of the superior result obtained by DPPs' counsel.

The Court has considered the result obtained here, as well as the particular legal defenses and challenges in the IPPs' case, along with the other factors set forth by the Ninth Circuit in *In re*

4

*Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015).  Those factors, as well as the cross-check against IPPs' counsel's lodestar, support the Court's award herein.  Thus, the objections to the amount of attorneys' fees sought are overruled.

The specific arguments made by the objectors are also lacking in merit.  Bednarz objects, incorrectly, that IPPs' counsel did not maintain contemporaneous billing records.  Those records were submitted to the Court in support of the motion.  Further, Bednarz argues that the percentage requested by IPPs' counsel is actually higher than 30% because it should be calculated based on the net common fund rather than the gross common fund after expenses are deducted.  However, the Ninth Circuit has indicated that "the choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).  The Court's award, as stated herein, is based upon its assessment of what is reasonable under all the circumstances here.

Objector Morgan objected that IPPs' counsel's rates should be limited by the terms of a fee proposal submitted in connection with Hagens Berman's bid to be appointed lead counsel, and that the Court should unseal that bid.  The Court ultimately did not accept the bid and instead ordered that there would be Co-Lead Class Counsel, so the bid is irrelevant to the reasonableness of the attorneys' fees here.  The request to unseal the bid is denied.

Objector Andrews submits a number of unsubstantiated objections including that: U.S. mail would have resulted in a higher claims rate; an "untold number" of class members did not receive notice of the settlement via email; the claims website was down for nine days; one of the settlement agreements is unsigned and unenforceable; and an exhibit to the preliminary approval order was missing from the settlement website.  Andrews further objected that the claims rate here was too low, the class notice was vague, and other provisions should have been included in the settlement agreements or notices to ensure fairness.  The record here does not support Andrews' factual representations, nor does the Court find the settlement agreements or class notices deficient for their failure to include the details Andrews suggests.  These additional objections are overruled.

Further, Andrews objects that the Court should not decide the issue of attorneys' fees in

connection with these settlements since prior attorneys' fee awards in connection with earlier

settlements in this action are the subject of pending appeals. However, Andrews offers no authority

in support of this position, nor is the Court aware of any.

Finally, Andrews' objects that the incentive payments to the class representatives are too

disproportionate to the relief individual class members will receive and should not be awarded,

citing *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157 (9th Cir. 2013). *Radcliffe* is

distinguishable in that the court's decision was based primarily on the concern that "awards were

conditioned on the class representatives' support for the settlement. . . . [which] caused the interests

of the class representatives to diverge from the interests of the class." *Id*. at 1161. The Court has

considered the amount of the awards sought in comparison to the efforts of the representatives on

behalf of the class, the length of the litigation, and comparable settlements. The objection is

overruled.

## IV.    MOTION FOR FINAL APPROVAL

At final approval, this Court must decide whether: (1) the proposed settlement class meets

Rule 23's requirements; (2) the settlements are fair, reasonable, and adequate; and (3) appropriate

notice and other procedural requirements are met. The new amendments to Rule 23 provide that in

determining whether a proposed settlement is fair, reasonable, and adequate, the Court must

consider whether:

> (A) the class representatives and class counsel have adequately
>     represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing
>     relief to the class, including the method of processing class-
>     member claims;
>     (iii) the terms of any proposed award of attorney's fees,
>     including timing of payment; and
>     (iv) any agreement required to be identified under Rule
>     23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### A.      The Settlement Class Is Properly Certified.

#### 1.      *Rule 23(a) Factors*

This Court previously determined that identical nationwide litigation and settlement classes met the requirements of Rule 23(a).  The class numbers in the millions, which would make joinder impracticable, if not impossible (numerosity); there are common questions underlying each of IPPs' claims in this case (commonality); defendants are alleged to have engaged in a common [price-fixing] scheme relative to all members of the class including the Class Representatives (typicality); the Class Representatives have no interests that conflict with the Settlement Class; and the Class Representatives have been actively involved in the litigation of this case, as has Class Counsel, who have prosecuted the action vigorously since their appointment in 2013 (adequacy).

#### 2.      *Predominance*

For purposes of settlement, the parties agree and the Court concurs that common questions predominate over questions affecting individual class members.  IPPs move to certify a nationwide settlement class of consumers – including residents of both repealer states and non-repealer states.  While this Court previously performed a choice of law analysis with respect to the litigation class, it is not obligated to do for the settlement class.  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 563 (9th Cir. 2019).  The Ninth Circuit recently rejected the need to do so in the settlement context, holding that "[t]he prospect of having to apply the separate laws of dozens of jurisdictions present[s] a significant issue for *trial manageability*," but need not be considered in the settlement context. *Id.* (emphasis added).

Allocation of different amounts to subgroups of the class does not defeat predominance.  No class member has objected to IPPs' proposal to allocate payments differently as between *Illinois Brick* repealer and non-repealer states, nor to this Court's tentative recommendation to allocate the settlement in this way.

//

//

7

United States District Court
Northern District of California

### 3. *Superiority*

Resolution of Plaintiffs' claims through a class action is superior to alternative methods. For example, litigating every class member's claims separately would waste both judicial and party resources, given that the vast majority of evidence of liability would be identical.

### 4. *Conclusion*

The Court certifies the class for settlement purposes under Rule 23(e).  Pursuant to Rule 23(g), this Court appoints Hagens Berman Sobol Shapiro LLP, Lieff Cabraser Heimann & Bernstein, LLP, and Cotchett, Pitre & McCarthy, LLP as Class Counsel to represent the certified settlement class.  At the outset of this action, the Court appointed these firms as Interim Co-Lead Counsel for IPPs after a competitive application and in-court vetting process.  (Dkt. No. 194.) Considering counsel's work in this action, their collective expertise and experience in handling similar actions, and the resources they have committed to representing the class, they are appointed as class counsel for the settlement class under Rule 23(g)(1).

## B.      The Settlement is Fair, Reasonable, and Adequate

The proposed Settlement Agreements are fair, reasonable, and adequate under the Rule 23(e) factors and other relevant considerations identified by the Ninth Circuit.

### 1. *Adequately Represented the Class*

Class Representatives and Class Counsel had the information they needed to negotiate intelligently on behalf of the class and adequately represented the class.  IPPs litigated multiple rounds of dispositive motions and conducted extensive discovery.  They took and defended over eighty depositions, served voluminous discovery, reviewed millions of pages of documents (mostly in Japanese, Korean, and Chinese), and analyzed enormous electronic data files produced by defendants and third parties.  They engaged in extensive expert discovery and motion practice, and with the help of expert analyses, synthesized large amounts of evidence to show the conspiracy's substantial and universal impact on consumers.

### 2.     *Negotiated at Arm's Length*

Class counsel negotiated the settlements at arm's length among experienced and sophisticated counsel.  The largest settlement at issue in this motion, the $39.5 million settlement with SDI, followed multiple mediation sessions involving retired Judge Vaughn R. Walker. The smaller TOKIN, Toshiba, and Panasonic/Sanyo Settlements resulted from iterative negotiations directly between counsel.

### 3.     *The Relief Provided is Adequate*

The settlement relief provided is adequate and in the class's interest.  The recovery for the class here, taking into account the costs, risks, and delay of trial and appeal, is robust.  Rule 23(e)(2)(C).  Recovery of $49 million in settlements for the indirect purchaser class from the SDI, TOKIN, Toshiba, and Panasonic/Sanyo Defendants is a robust result given the tremendous risks, challenges, and costs faced.  IPPs reached settlements totaling $43.5 from the SDI, TOKIN, and Toshiba Defendants – representing 20.11 percent of the nationwide single damages attributable to these defendants.  There were significant risks along with related potential costs and delay.  The Court had denied IPPs' original motion for class certification when some settlements were reached, denied a renewed class certification motion before others were reached, and was on the eve of trial when a final settlement was reached.  Thus, recovery of $49 million is outstanding given the risk that the class might receive little to no recovery if the Ninth Circuit had upheld this Court's denials of class certification or granted summary judgment, or if a jury returned a verdict in favor of the defendants.  Antitrust cases are particularly risky and challenging.  Moreover, this case has always had unique risks and challenges due to its scale– a more than decade-long conspiracy centered in Asia with the evidence mostly in foreign language documents and obtained via translated depositions – and the complexity associated with proving the existence of overcharges.

The Ninth Circuit has identified three related signs as troubling and potentially indicative that a proposed settlement is not in the class's interests: (a) disproportionate attorney fees compared to class recovery; (b) a "clear sailing" arrangement agreeing to pay attorney fees separate from the class fund; or (c) reversion to defendants of funds not distributed to the class.  *Hyundai*, 926 F.3d at

569; *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Here, none of these signs of collusive behavior are present. Specifically, (a) the funds will be used to cover costs and fees and compensate the class based on a *pro rata* formula, (b) there is no "clear sailing" provision, no payment of fees separate and apart from the class funds, and (c) the proposed settlement is a common fund, all-in settlement with no possibility of reversion, and no "kicker" provision which would allow unawarded fees to revert to the defendants. The class notice informed class members that class counsel would make a request for attorneys' fees up to 30 percent of the settlement fund.

Rule 23(e)(2)(C) also instructs the Court to take into account the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Plaintiffs' proposed distribution plan will maximize the effectiveness of the distribution of the settlement proceeds. Settlement administrators will send an email to all valid claimants. The email will provide instructions on how to receive payments electronically via PayPal, Google Wallet, Amazon Balance, and other popular methods. Epiq also will mail physical checks to Settlement Class Members who have requested to receive compensation in that manner.

A third factor to be considered under Rule 23(e)(2)(C) is "the terms of any proposed award of attorney's fees, including timing of payment." Here, while Settlement Agreements do not contemplate a specific award of attorney's fees, they do provide that any Court-awarded fees will be paid from the Gross Settlement Fund. IPPs have requested a total award of $34,035,000 in attorneys' fees plus interest, which represents 30 percent of the total recovery in this case, inclusive of the $4,495,000 already awarded. The Court finds that terms of the proposed attorneys' fees to be fair and reasonable.

The last factor of Rule 23(e)(2)(C) instructs courts to consider "any agreement required to be identified under Rule 23(e)(3)." IPPs have entered into no such agreements.

### 4. Class Members Are Treated Equitably Relative To Each Other

This Court finds that the settlements treat class members equitably relative to each other, consistent with Rule 23(e)(2)(D). The proposed Settlement Agreements do not contemplate any

unwarranted preferential treatment of class representatives or segments of the class, a consideration identified by Rule 23(e)(2)(D).

IPPs have recommended that this Court adopt the second of Judge Westerfield's recommended methods of allocation: allocating ninety percent of the settlement funds to class members from repealer states, and the remaining ten percent to class members from non-repealer states. The Court agrees with this recommendation and orders distribution using this method. It is appropriate for class members from non-repealer states to receive a limited recovery because they are still active litigants in the case, and their claims have been neither dismissed from nor amended out of the pleadings. Moreover, this Court's prior analysis of California choice-of-law rules would have been subject to an appeal had this case gone to judgment. Thus, in recognition of the fact that such releases themselves have some value, even if nominal, the Court allocates ten percent of the settlement funds for distribution to non-repealer state residents.

### C. IPPs Have Complied With All Additional Approval Factors

#### 1. Notice

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), and upon settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(l)(B). Rule 23(c)(2) prescribes the "best notice that is practicable under the circumstances, including individual notice [of particular information] to all members who can be identified through reasonable effort[.]" Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order. The notice administrator estimates that the notice program reached approximately 87 percent of adults who purchased portable computers, power tools, camcorders, or replacement batteries, and these class members were notified an average of 3.5 times each. As a result of Plaintiffs' notice efforts, in total, 1,025,449 class members have submitted claims. That includes 51,961 new claims, and 973,488 claims filed under the prior settlements, which will be applied to this round of settlements. The claims period for the settlement closed on July 19, 2019.

11

### 2. *CAFA Notice*

Defendants have complied with the Class Action Fairness Act's notice requirements. Defendants have provided notice under the Class Action Fairness Act's (CAFA) requirements. Here, the SDI, TOKIN, Toshiba, and Panasonic/Sanyo Defendants provided CAFA notices on February 27, 2019, February 1, 2019, January 31, 2019, and February 1, 2019, respectively. No Attorneys General have submitted statements of interest or objections in response to these notices.

### 3. *Reaction of Class Members*

Plaintiffs' notice program reached millions of consumers who purchased the consumer products involved in this case. Over one million class members have taken action to file claims. Only three objections and ten requests for exclusion were received out of millions of class members. The reaction of the class strongly favors approval of the settlement.

### D. Final Approval Is Granted

In summary, the Court finds that the proposed settlements are fair, reasonable, and adequate, and that they should be approved.

## VI. IPPS' REQUEST FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

IPPs move the Court for an award of attorneys' fees, expenses, and class representative awards as follows:

(1) an additional award of $29,540,000.00 in attorneys' fees (*i.e.,* $34,035,000.00 minus the $4,495,000.00 this Court already awarded as interim attorneys' fees)[3], which is equal to 30 percent of the common fund of all settlements reached in this case ($113.45 million);

(2) additional reimbursement for expenses incurred in connection with this litigation totaling $5,891,547.34 ($6,751,735.84 minus the $860,188.50 already awarded by the Court in the Interim Award); and

---

[3] *See* this Court's October 27, 2017 Order Granting In Part And Denying In Part, Without Prejudice, Motion For An Award Of Attorneys' Fees, Reimbursement Of Expenses, and Service Awards ("Interim Award"). (Dkt. No. 2005.)

(3) service awards for each of the class representatives—$10,000 for each of the twenty-one individual class representatives and $25,000 for each of two governmental entity class representatives; and

(4) additional class settlement administration costs up to $10,000.00

### A.    Attorneys' Fees

Inclusive of the Court's Interim Award of attorneys' fees, IPPs' request for attorneys' fees amounts to 30 percent of the common fund.  In the Ninth Circuit, the district court has discretion in a common fund case to choose either the "percentage-of-the-fund" or the "lodestar" method in calculating fees.  *Online DVD*, 779 F.3d at 949.  However, "the primary basis of the fee award remains the percentage method," with the lodestar used "as a cross-check on the reasonableness of a percentage figure."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 & n.5 (9th Cir. 2002).  In determining the reasonableness of a fee request, the Ninth Circuit has directed courts to consider: (1) the market rate for the particular field of law; (2) whether counsel achieved exceptional results for the class; (3) whether the case was risky for class counsel; (4) whether the case was handled on a contingency basis; and (5) the burdens class counsel experienced while litigating the case. *Online DVD*, 779 F.3d at 955.  The Ninth Circuit has held that a fair fee award must include consideration of the contingent nature of the fee and the risk counsel assumed.  *See, e.g.*, *id.* at 954-55 & n. 14; *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

The Court finds that total attorneys' fee award of $33,829,176.00[4] is a fair and reasonable award.  Here, IPPs' lodestar calculation was made using a blended rate of $467.10 per hour for attorneys which is well below the average blended billing rate of $528.11 per hour for forty approved class action settlements in the Northern District of California in 2016 and 2017. (*See* Joint Decl. [Dkt. No. 2487-2] at Exh. 2 at 16-18, Declaration of William B. Rubenstein submitted in *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Product Liability Litigation*, No. 3:15-md-02672-CRB (N.D. Cal. June 30, 2017).)  By IPPs' estimates, the common fund of the

---

[4] The Court has reduced the attorneys' fee award by $205,824.00, the fees incurred in IPPs' unauthorized third motion for class certification.  (*See* Dkt. No. 2513 at ¶ 1.)

13

1    settlement equates to 11.7 percent of the single damages a nationwide class would have incurred

2    during the eleven-and-a-half-year class period, which is an excellent result in light of the

3    circumstances.  The action was risky, and Class Counsel litigated the case on a contingency basis.

4    This litigation has been pending for 6.5 years, and Class Counsel also has devoted substantial time

5    to this litigation and foregone other work while litigating this case.  Thus, the *Online DVD* factors

6    weigh in favor of an award equal to 30 percent of the common fund.

7         Further, a 30-percent fee award is particularly appropriate where the lodestar cross-check

8    results in a negative multiplier.  Applying a lodestar cross-check, the fee award here would result in

9    a negative multiplier of approximately 0.82 of Class Counsel's $41,458,223.50 lodestar.

10        Courts in this district in similar antitrust litigation have awarded attorneys' fees constituting

11   similar percentages of the total fund as sought here.  *See, e.g.*, *In re Cathode Ray Tube (CRT)*

12   *Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) (30 percent for

13   IPP settlement); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL

14   1365900 (N.D. Cal. Apr. 3, 2013) (28.6 percent for IPP settlement); *In re Static Random Access*

15   *Memory (SRAM) Antitrust Litig.*, No. 07-md-1819-CW (N.D. Cal. Oct. 14, 2011), Dkt. No. 1407

16   (33 percent for IPP settlement).

17        The Court therefore awards Class Counsel the amount of **$29,334,176.00** in attorneys' fees

18   ($33,829,176.00 minus the $4,495,000.00 from the Interim Award), together with a proportional

19   share of interest earned on the Settlement Fund for the time period until dispersed to Class Counsel.

20   Co-Lead Class Counsel shall allocate the fees and reimbursement of expenses among themselves

21   and supporting counsel in a fair and equitable manner that, in Co-Lead Class Counsel's good-faith

22   judgment, reflects each firm's contribution to the institution, prosecution, and resolution of the

23   litigation.

24   **B.     Expenses**

25        IPPs request reimbursement of $5,891,547.34 in unreimbursed expenses. Previously, this

26   Court ordered reimbursement of $860,188.50 in expenses.  The bulk of the total consists of three

27   types of expenses – economic experts and consultants ($4,857,677.85), online document database

28

services ($951,168.46), and payment for translations and interpreters ($239,037.66).  The Court

finds that these expenses are fair and reasonable.  Class Counsel shall be reimbursed for their out-

of-pocket expenditures in the amount of **$5,891,547.34**.

       **C.**     **Service Awards**

       IPPs also request that the Court approve service awards for each of the class

representatives--$10,000 for each of the twenty-one individual class representatives and $25,000

for each of two governmental entity class representatives, to be deducted from the common

settlement fund.  The class representatives have spent a significant amount of time assisting in the

litigation of this case, including time spent in depositions and responding to discovery. The Court

finds the service awards appropriate in the circumstances of this long-running litigation.  The class

representatives were awarded $1,500.00 in the Interim Award.  Therefore, an additional

$225,500.00 ($8,500 for each of the twenty-one individual class representatives and $23,500 for

each of two governmental entity class representatives) shall be distributed from the common

settlement fund.

       **D.**     **Settlement Administrator Fees**

       This Court previously approved payment of taxes, tax expenses, notice, and administrative

costs as set forth in the Settlement Agreements. (Order Directing Notice to the Class, Dkt. No.

2475, ¶ 9.)  The Administrator has estimated that there will be a need for up to an additional

$10,000.00 to pay for future costs of distribution, including issuance of checks.  The Court approves

IPPs' request to pay up to $10,000.00 to pay these costs from the settlement fund.

**VII.**   **CONCLUSION**

       Based upon the foregoing, the Court **ORDERS**:

       (1) The proposed settlements are fair, reasonable, and adequate and are approved.

       (2) IPPs' counsel shall be paid an award of **$29,334,176.00**.  Together with the Interim

Award of $4,495,000.00, the total amount of $33,829,176.00 represents a fair and reasonable

attorneys' fee to be paid from the $113,450,000.00 settlement fund and constitutes just under 30%

of the total fund.

1       (3) IPPs shall be reimbursed expenses from the settlement fund in the amount of

2 **$5,891,547.34** ($6,751,735.84 minus the $860,188.50 already awarded by the Court in the Interim

3 Award).

4       (4) the class representatives shall be paid additional service awards of **$225,500.00**,

5 representing $8,500 for each of the twenty-one individual class representatives and $23,500 for

6 each of two governmental entity class representatives. Along with the Court's Interim Award, this

7 constitutes a service of award of $10,000 for each individual class representative and $25,000 for

8 each governmental entity class representative. (*See* Interim Award at 3.)

9       (5) the class administrator shall be paid additional administrative costs **up to $10,000.00**

10 from the settlement fund.

11       **IPPs are directed to submit a proposed form of judgment within five (5) days of entry**

12 **of this Order**.

13       **IT IS SO ORDERED**.

14 Date: August 16, 2019

15                          **YVONNE GONZALEZ ROGERS**

16                    **UNITED STATES DISTRICT COURT JUDGE**

17

18

19

20

21

22

23

24

25

26

27

28