Clerk of the Court

U.S. District Court for the

Northern District of California

United States Courthouse

1301 Clay Street Suite 400S

Oakland California 94612



FILED

Oct 13 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE



**In re Lithium Ion Batteries Antitrust Litigation – All Indirect Purchaser Actions, MDL 4:13-md-02420-YGR,**

Sony Corporation, Sony Energy Devices Corporation, and Sony Electronics Inc. (collectively "Sony"); LG Chem, Ltd. and LG Chem America, Inc. ("LG Chem"); Hitachi Maxell Ltd. and Maxell Corporation of America ("Hitachi Maxell"); NEC Corporation ("NEC"); Samsung SDI Co., Ltd. and Samsung SDI America, Inc. ("SDI"); TOKIN Corporation ("TOKIN"); Toshiba Corporation ("Toshiba"); and Panasonic Corporation, Panasonic Corporation of North America, SANYO Electric Co., Ltd., and SANYO North America Corporation ("Panasonic") (collectively, the "Settling Defendants").

Judge Yvonne Gonzalez Rogers

**OBJECTION TO THE DISTRIBUTION PLAN**
**AND INTENT TO APPEAR AT THE HEARING**

Christopher Andrews, Pro Se Objector,
PO Box 530394
Livonia, MI 48153-0394
Telephone 248-635-3810
Email caaloa@gmail.com
Dated October 08, 2020

## Table Of Contents

Case Law……………………………………………………………………….3

Statutes Rules and Regulations……………………………………………..3

Other…………………………………………………………………………...3

Introduction……………………………………………………………………4

Objector Has Standing……………………………………………………………5

Ninth Circuit Standard……………………………………………………………5

Lack of Standing Voids Jurisdiction To Approve The Distribution Plan…………..6

The Proposed Sony Distribution Plan Requires Rejection…………………………7

Distribution Plan For The Balance Of The Settlements Requires Rejection……….7

Approving the Plan Changes The Fees, Expenses And Service Awards Made…...12

The Service Awards Already Approved And Appealed Would Probably Have Now

Have To Be Changed If The Distribution Plan is Approved………………………...12

Summary………………………………………………………………………..14

Certificate Of Service…………………………………………………………...16

## Case Law

Allen v. Bedolla, 787 F .3d 1218, 1222 (9th Cir. 2015)………………………...5

Allen v. Wright, 468 U.S. 737, 750 (1984)…………………………………..6

Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1034 (8th Cir. 2010)……………6

Central Railroad & Banking Co. v. Pettus, 113 U.S. 116 (1885)………………13

Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2d Cir. 2006)………………...6

Hansberry v. Lee, 311U.S. 32, 41–43 (1940)…………………………………6

HP Inkjet Printer Litig.,2011 U.S. Dist. LEXIS 65199, at *2 -3 (N.D. Cal. June 20, 2011)……………………………………………………………………4

Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977)………………..6,7,8.10,12,14

Johnson v. NPAS Solutions, Inc., No. 18-12344, F.3d 2020 WL 5553312 (11th Cir. Sept. 17, 2020)…………………………………………………………13

Leapfrog Enterprises, Inc. Securities Litig.,2008 U.S. Dist. LEXIS 97232, at *7 (N.D. Cal. Nov. 21, 2008)…………………………………………………4

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)…………………...6

Mazza v. Am. Honda Motor Co., 666 F.3d 581, 594 (9th Cir. 2012)…………...6

Spokeo v. Robins, 136 S. Ct. 1540, 1547 (2016)………………………………6

Taylor v. Sturgell,  553 U.S. 880, 900–01 (2008)……………………………5

Trustees v. Greenough, 105 U.S. 527 (1881)…………………………………13

## Statutes Rules and Regulations

Rule 23(e)……………………………………………………10,12,14

Rule 23(e)(2)………………………………………………………4,10,12,14

Rule 23(g)(4)……………………………………………………10,12,14

Rule 23(a)(4)……………………………………………………10,12,14

Rule 23(b)(3)……………………………………………………10,12,14

## Other

Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1785.1 (3d ed.)………………..5

## INTRODUCTION

This objection is made on his behalf and on behalf of approximately 100 million+ class members. The objector intends to appear at the fairness hearing and requests time to address the court and answer any of its questions or concerns.

Christopher Andrews is of legal age, a valid class member, objector and a citizen of the State of Michigan. This objection, like the other one's he has filed, is clearly not a frivolous, cut and paste or an unmeritorious objection. Hagens Berman should be on the hook for the additional costs to the class for this distribution notice program since it's their fault this notice was required.

Now that the parties to this lawsuit have reached a settlement, none of the lawyers have an adversarial relationship anymore and thus this Court can look only to objectors to point out any potential issues with the settlement that the Court may be unaware of. See In re HP Inkjet Printer Litig.,2011 U.S. Dist. LEXIS 65199, at *2 - 3 (N.D. Cal. June 20, 2011) ("Objectors can play a valuable role in providing the court with information and perspective with respect to the fairness, adequacy, and reasonableness of a class action settlement."); In re Leapfrog Enterprises, Inc. Securities Litig.,2008 U.S. Dist. LEXIS 97232, at *7 (N.D. Cal. Nov. 21, 2008) (same); see also ("[O]bjectors play an essential role in judicial review of proposed settlements of class actions…).

## Objector Has Standing

During the class period, the objector purchased batteries and devices that contained the inflated lithium ion batteries. He also submitted two or three claims a few years back which are documented in the record. He therefore has standing to object to the distribution plan for all settlements, including Sony's.

## Ninth Circuit Standard

Under Federal Rule of Civil Procedure 23(e)(2), a district court may approve a class action settlement only after finding that the settlement is "fair, reasonable, and adequate." The decision to approve a class action settlement is reviewed for abuse of discretion. Allen v. Bedolla, 787 F .3d 1218, 1222 (9th Cir. 2015).

In the 9th Circuit the "abuse of discretion" test requires a consideration as to whether the district court identified the correct legal standard for decision of the issue before it. Second, the test then requires a determination whether the district court's findings of fact, and its application of those findings of fact to the correct legal standard, were illogical, implausible, or without support in inferences that may be drawn from facts in the record.

Most fundamentally, as mandated by due process (and enforced through Federal Rule of Civil Procedure 23), the named plaintiffs' interests must in fact be aligned with those of the class, and the named plaintiffs must adequately represent the interests of the class throughout the litigation. Taylor v. Sturgell,  553 U.S. 880,

900–01 (2008); Hansberry v. Lee, 311U.S. 32, 41–43 (1940).

**Lack of Standing Voids Jurisdiction To Approve The Distribution Plan**

40% of the class lacks standing due to the Illinois Brick issue so changes to the

distribution can't and should not be made on their behalf. The settlement requires a

rewrite by carving out the non-repealer claimants who lack standing or a dismissal.

Next, in Spokeo v. Robins, 136 S. Ct. 1540, 1547 (2016), the United States

Supreme Court held Article III standing required injury in fact, defined as the

invasion of "a legally protected interest which is (a) concrete and particularized, and

(b) actual or imminent, not conjectural or hypothetical." Id., citing Lujan v.

Defenders of Wildlife, 504 U.S. 555, 560 (1992).

In the Ninth Circuit "no class may be certified that contains members lacking

Article III standing." Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2d Cir.

2006); accord Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1034 (8th Cir. 2010);

Mazza v. Am. Honda Motor Co., 666 F.3d 581, 594 (9th Cir. 2012); see also

Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1785.1 (3d ed.) (explaining Article

III requirements in class action cases).

The filing of a suit as a class action does not relax Article III's jurisdictional

requirements.  Id. at 263, citing Allen v. Wright, 468 U.S. 737, 750 (1984).

The court can't make changes to benefit those who reside in the non-repealer states

because they lack standing.

### The Proposed Sony Distribution Plan Requires Rejection

The objector objects on behalf of class members who reside in the thirty or so repealer states, one of which he resides in, Michigan regarding the Sony settlement and that he filed a claim in. In the Sony settlement, it is illegal and unacceptable to give the class that resides in non-repealer states a full share of damages when they lack injuries and damages. This violates Supreme Court case law under Illinois Brick, Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977).

### Distribution Plan For The Balance Of The Settlements Requires Rejection

Next, the objector objects to the distribution plan for LG Chem, Hitachi Maxell, and NEC Settlements on behalf of those who reside and filed claims in the repealer states where he is a class member and where he filed a claim as well. The notice states: From 12-06-16 KCC-Gilardi Declaration ISO  LG Chem Notice Plan on the class webite, no Pacer information on document. Inside that document the DECLARATION OF ALAN VASQUEZ Case No. 13-MD-02420 YGR (DMR) Exhibit 3 pg 19 of 35

9.How Much Money Can I Get and How Do I Make A Claim? At this time, it is unknown how much each Class Member who submits a valid claim will receive. Payments will be based on a number of factors, including the number of valid claims filed by all Class Members and each Class Member's number of

purchase(s) of the following products which contained a lithium-ion cylindrical battery: (i) a portable computer; (ii) a power tool; (iii) a camcorder; or (iv) a replacement battery for any of these products, in proportion to the total claims filed and products purchased. No matter how many claims are filed, no money will be returned to the Settling Defendants once the Court finally approves the Settlement."

Response: There is no mention of a repealer and non-repealer states affecting the division of damages down the line meaning the class was misled in the long notice and on the claim form, a major harmful error. Those who reside in non-repealer states and filed a claim have no legal right to take monies from the class fund in this proposed 90-10 split distribution plan. The objector objects to being coerced into "donating" 10% of his damages to that class who don't have any claim and therefore don't have any damages violating Illinois Brick *Co.* v. Illinois, 431 U.S. 720 (1977).

An approval takes money out of all the of the repealer states claimants pockets through an illegal service award payment "donation" that flows into the non-repealers claimants pockets, a de facto illegal tax so we to collect our short changed portion. Claimants in these settlements should be given the opportunity to opt out if the distribution plan is approved.

From <u>01-24-17 KCC-Gilardi Supplemental Decl ISO Sony Hitachi-Maxell NEC Notice Plan</u>

" 9.How Much Money Can I Get and How Do I Make A Claim? At this time, it is unknown how much each Class Member who submits a valid claim will receive. Payments from the LG Chem, Hitachi Maxell, and NEC Settlements will be based on a number of factors, including the number of valid claims filed by all Class Members and each Class Member's number of purchase(s) of the following products which contained a lithium-ion cylindrical battery: (i) a portable computer; (ii) a power tool; (iii) a camcorder; or (iv) a replacement battery for any of these produc ts, in proportion to the total claims filed and products purchased. No matter how many claims are filed, no money will be returned to the Settling Defendants once the Court finally approves the Settlements." Doc 1672-4 Exhibit 1 pg 9 of 25.

Response: Objector objects to these settlements. There is no mention of a repealer and non-repealer states affecting the division of damages down the line meaning the class was misled in the notice and on the claim form, a major harmful error. Those who reside in non-repealer states and filed a claim have no legal right to take monies from the class fund in this proposed 90-10 split distribution plan. The objector objects to being coerced into "donating" 10% of his damages to that class who don't have any claim and therefore don't have any damages, violating

Illinois Brick *Co.* v. Illinois, 431 U.S. 720 (1977). Claimants in these settlements should be given the opportunity to opt out if the distribution plan is approved.

An approval illegally takes money out of all the of the repealer states claimants' pockets through an illegal service award payment "donation" that flows into the non-repealers claimants' pockets to be able to collect our short changed portion.

By approving this new distribution plan it would have changed the previous approval relating to the fees, expenses, service awards that were approved because the court was apparently unaware it was breaking the law under Illinois Brick. Had it known that it would have affected the decisions made regarding the authority and amounts applicable to those fees, expenses and service awards because the court failed did not take into account the repealer non-repealer factor when it made its decision.

Any new division also violates Rule 23(e), 23(e)(2) and (d), 23(a)(4) and 23(b)(3) for half of the settlements. The proposed distribution plan if approved would violate Rule 23(e) because it does not cure a defect that prevents certification under Rule 23(a)(4) and 23(g)(4) so the plan should be rejected.

From 01-24-19 Epiq Azari Declaration ISO Motion to Direct Notice re SDI et al Settlements Samsung SDI Co., Ltd. and Samsung SDI America, Inc. (collectively, "SDI"); TOKIN Corporation ("TOKIN"); Toshiba Corporation ("Toshiba"); and

Panasonic Corporation, Panasonic Corporation of North America, SANYO Electric Co., Ltd., and SANYO North America Corporation (collectively, "Panasonic") There are no remaining defendants.

8.How Much Money Can I Get And How Do I Make A Claim? Money from all settlements in this case will be distributed together on a per-claim basis, but the amount you receive from each settlement will depend on a Court-approved plan of allocation. SDI, TOKIN, Toshiba, and Panasonic Settlements: The claim form will allow class members to state the number of devices they had that are subject to the settlement. Every class member who files a valid claim against the Repealer or Non-Repealer fund will receive the same amount per device as other people who file claims with that fund. The amount available for distribution will be affected by any awards made by the Court against the funds for attorneys' fees, reimbursement of costs, or service awards for the class representatives. How much each class member receives will also depend on the number of claims made from Repealer and Non-Repealer states and a balancing of the cost of distribution with the amount to be distributed to each class member.Doc 2459-2 Exhibit 2 pg 54 of 61.

Response: This is the first time on January 24, 2019 that the repealer, non repealer state issue and a 90-10 split was brought to the attention of the class.

**Approving the Plan Changes The Fees, Expenses And Service Awards Made**

By approving this new distribution plan it would have changed the previous approval relating to the fees, expenses, service awards that were approved because the court was apparently unaware it was breaking the law under Illinois Brick. Had it known that it would have affected the decisions made regarding the authority and amounts awarded and applicable to those fees, expenses and service awards because the court did not take into account the repeater non-repeater factor when it made its decision.

Any new division also violates Rule 23(e), 23(e)(2) and (d), 23(a)(4) and 23(b)(3) for half of the settlements. The proposed distribution plan if approved would violate Rule 23(e) because it does not cure a defect that prevents certification under Rule 23(a)(4) and 23(g)(4) so the plan should be rejected.

**The Service Awards Already Approved And Appealed Would Probably Have Now Have To Be Changed If The Distribution Plan is Approved**

As we know now, named plaintiffs in non-repeater states can't receive service awards because they are not part of the litigation and can't receive any settlement funds under Illinois Brick so changes in the proposed plan are prohibited.

Named plaintiffs in both repeater and non-repeater states again can't receive service awards because they are bounties which this objector has raised in all

settlements. They also violate Supreme Court precedent as well. The service awards illegally reduce the net settlement fund and the amounts available to the legal repealer state class claimants for reimbursement of their damages.

Three weeks ago, the Eleventh Circuit Court of Appeals found that the practice of awarding a class representative an "incentive" payment as part of a class action settlement is illegal. Johnson v. NPAS Solutions, Inc., No. 18-12344, F.3d 2020 WL 5553312 (11th Cir. Sept. 17, 2020). (The appellant states that the term "incentive award" is also known in the class action world as a "service award" they are used interchangeably.) The objector in that case claimed that the $6,000.00 incentive award was contrary to Trustees v. Greenough, 105 U.S. 527 (1881), and Central Railroad & Banking Co. v. Pettus, 113 U.S. 116 (1885), and created a conflict of interest between the class representative and other class members.

Class representatives should not receive "preferred treatment," and incentive awards are "part salary and part bounty" for bringing a class lawsuit: "Incentive awards are intended not only to compensate class representatives for their time (*i.e.*, as a salary), but also to promote litigation by providing a prize to be won (*i.e.*, as a bounty)."

"Although it's true that such awards are commonplace in modern class-action litigation, that doesn't make them lawful, and it doesn't free us to ignore Supreme Court precedent forbidding them." See decision pg's 35-38.

In this case while the class representatives may be reimbursed for the attorneys' fees and costs he or she incurred during the litigation, none of the named plaintiffs can receive a service award. These awards illegally reduce the net settlement fund and the amounts available to those claimants in the 30 repealer states for reimbursement of their damages illegally taking money out of all of our pockets through an illegal forced service award "donation" payment making the awards a violation of Rule 23(e)(2).

## Summary

The right thing to do is for the court to refuse to approve the proposed distribution plan in its present state under Illinois Brick, Rule 23(e), 23(e)(2), 23(a)(4) 23(g)(4) and 23(b)(3), because it would be clear error and abuse of discretion. The court should require a new settlement carving out the non-repealer states or just dismiss the whole thing. The Ninth Circuit has already stated its concerns in the record last time at oral argument regarding this proposed 90-10 plan being clear error violating Illinois Brick.

I certify that all of the above is true and accurate to the best of my knowledge.

Christopher Andrews

Pro se Appellant, non attorney PO Box 530394 Livonia, MI 48153-0394 Email:

caaloa@gmail.com Phone: 248-635-3810, Dated October 08, 2020

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this day October 08, 2020 the objector

mailed one copy of this objection per the Long Notice instructions to the Clerk of

the Court, US District Court for the Northern District of California, 1301 Clay

Street Suite 400S, Oakland CA 94612 via prepaid USPS Priority Mail.

Christopher Andrews, Pro Se Objector,
PO Box 530394
Livonia, MI 48153-0394
Telephone 248-635-3810
Email caaloa@gmail.com
Dated October 08, 2020