UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE LITHIUM ION BATTERIES ANTITRUST LITIGATION | Case No. 13-md-02420 YGR<br><br>MDL No. 2420 |
| This Documents Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS | **ORDER DENYING MOTION FOR SETTLEMENT**<br><br>Re: Dkt. No. 2728 |

Interim Class Counsel for the Indirect Purchaser Plaintiffs ("IPP") and objector Christopher Andrews seek approval of a motion for settlement pursuant to Federal Rules of Civil Procedure 23(e)(5)(B)(ii). Class Counsel for the IPP class and Andrews reached an agreement whereby Andrews would withdraw his objections and dismiss his appeal of the Round 2 Settlements in return for $25,000 to be paid directly by Class Counsel itself. Said differently, Class Counsel would make the payment from their own funds; no part of the payment would come from the settlement fund or Class Counsel's award of attorneys' fees in this action. Objectors Frank Bednarz and Shiyang Huang[1] have opposed the motion. All interested parties were heard.

Having carefully considered the papers and exhibits submitted in connection with each motion, the settlement agreement, the pleadings in this action, the objections raised, and upon

---

[1] Objector Huang filed an untimely objection in response to plaintiffs' reply paper. Pursuant to Civil Local Rule 7-3(a), any opposition needed to be filed not more than 14 days after the motion was filed. As explained below, these objectors lack standing to challenge the settlement on the facts presented. The flurry of supplemental filings from objectors challenging each other's conduct in various litigations adds irrelevant burden to the docket when the district is in a known judicial emergency.

1

further consideration after oral argument which occurred on March 1, 2022, the Court **ORDERS** that the motion is **DENIED WITHOUT PREJUDICE** for the reasons explained more fully below.

### I.   BACKGROUND

The Court assumes general familiarity with the arduous antitrust litigation against nine of the largest lithium-ion batteries manufactures for alleged price-fixing. This litigation has spanned nearly a decade. Over the course of the litigation, the Court has approved three rounds of settlements, which have and/or continue to be subject to appeal in varying respects. A brief chronology helps frame this order.

On May 26, 2016, the Court preliminarily approved a settlement agreement between plaintiffs and defendants Sony Corporation, Sony Energy Devices Corporation, and Sony Electronics, Inc. ("Round 1 Settlement"). (Dkt. No. 1292.) Several objections were raised. However, on March 20, 2017, the Court granted final approval of the Round 1 Settlement. (Dkt. No. 1712.) The Ninth Circuit affirmed this Court's approval order of the Round 1 Settlement on September 4, 2019. (Dkt. No. 2526.)

On March 20, 2017, the Court granted preliminary approval of a settlement agreement between plaintiffs and defendants Hitachi Maxell, Ltd., Maxell Corporation of America, NEC Corporation, LG Chem, Ltd., and LG Chem America, directing a notice of a proposed *pro rata* allocation of the settlement funds to the class ("Round 2 Settlements"). (Dkt. No. 1714.) After the notice period began, this Court denied certification of IPP's proposed nationwide litigation class. (Dkt. No. 1735.) On October 27, 2017, the Court granted final approval of the Round 2 Settlements, initially allocating the settlement funds on a straight *pro rata* basis regardless of class members' state of purchase. (Dkt. No. 2003.) Two objectors, including Andrews, filed appeals to the Class Counsel's fee award and the Round 2 Settlements. (Dkt. Nos. 2034, 2050.) On appeal, the Ninth Circuit vacated this Court's final approval order with emphasis on objections raised by Bednarz. *Indirect Purchaser Plaintiffs v. Bednarz*, 777 F. App'x 221 (9th Cir. 2019).

Pending the appeal of the Round 2 Settlements, the IPPs reached a settlement with the remaining defendants. The Court finally approved the agreement on August 16, 2019. This

agreement allocated 90% of the settlement proceeds to the *Illinois Brick* repealer states and 10% of the settlement proceeds to qualified class members in non-repealer states ("Round 3 Settlements"). (Dkt. No. 2516.) The Round 3 Settlements were appealed, including by Andrews, who maintained that the allocation was unfair to him and other claimants in repealer states. (Dkt. No. 2527.) On appeal, the Ninth Circuit overruled Andrews and affirmed the Round 3 Settlement's plan of allocation. (Dkt. Nos. 2527, 2721; *In re Lithium Ion Batteries Antitrust Litig., Indirect Purchaser Plaintiffs v. Andrews*, 853 F. App'x 56 (9th Cir. 2020)).

On remand of the Round 2 Settlements, and while the appeal of the Round 3 Settlements was pending, this Court approved preliminary settlement with a revised distribution plan that mirrored that of the Round 3 Settlements. (Dkt. No. 2571.) Without a final decision from the Ninth Circuit on the Round 3 Settlements, Andrews raised objections that mirrored his objections pending appeal. (Dkt. No. 2696.)[2] This Court proceeded to grant final approval of the revised plan on December 10, 2020. (Dkt. No. 2681.) Andrews then appealed the revised plan. (Dkt. No. 2696.) Other appeals were raised concerning the attorney's fees awards.

Now, in light of the foregoing, plaintiffs, through Class Counsel, and Andrews have reached an agreement whereby Andrews will withdraw his objections and dismiss his appeal in return of $25,000 to be paid directly from Class Counsel. As represented to the Court, the settlement was reached with the assistance of a mediator in the Ninth Circuit. Instead of seeking an interim ruling, Andrews and Class Counsel filed a stipulated motion for voluntary dismissal pending this Court's approval of the settlement. The Ninth Circuit granted the stipulated motion and issued a mandate. The pending motion for settlement followed.

**II.   STANDARD**

Rule 23(e)(5) permits class members to object to proposed class action settlements and requires court approval of any payment in connection with "forgoing, dismissing, or abandoning an

---

[2] Under the proposed Round 2 Settlements, the Round 2 settling defendants will pay a total of $44.95 million in cash. The settlement funds are non-reversionary to the defendants. Inclusive of the settlements previously approved between IPPs and other defendants in this case, IPPs have secured settlements of $113.45 million for the IPP class.

1    appeal from a judgment approving" a settlement. Fed. R. Civ. P. 23(e)(5)(A)-(B)(ii). If the parties

2    do not obtain such approval "before an appeal has been docketed in the court of appeals, the

3    procedure of Rule 62.1 applies while the appeal remains pending." Fed. R. Civ. P. 23(e)(5)(C).

4    Pursuant to Rule 62.1, the Court may make an indicative ruling when the court lacks authority to

5    grant a motion because an appeal has been taken. Fed. R. Civ. P. 62.1(a). Despite the fact that

6    Rule 23 contemplates that Rule 62.1 be followed, Class Counsel represented that the Ninth Circuit

7    issued a mandate given the parties' mediation. (Declaration of Adam J. Zapala ["Zapala

8    Declaration"], Dkt. No. 2740 at ¶¶ 5-6.) Accordingly, and based upon this representation, the

9    Court does not hold the parties to the requirements of Rule 62.1. This is immaterial given the

10   outcome of the pending motion.

11   **III.   DISCUSSION**

12   At the heart of the pending motion is the concept of "objector blackmail" and whether it

13   exists under the facts of this case. No authority provided in connection with the pending motion,

14   let alone any Ninth Circuit authority, definitively resolves the issue.[3] Nonetheless, objector

15   blackmail is a well-known class and derivative action phenomenon whereby objectors "use an

16   appeal [of a class action or derivative settlement] as a means of leveraging compensation for

17   themselves or their counsel." *In re Wells Fargo & Co. S'holder Derivative Litig.*, 523 F. Supp. 3d

18   1108, 1113 (N.D. Cal. 2021) (quoting *Vaughn v. Am. Honda Motor Co., Inc.*, 507 F.3d 295, 300

19   (5th Cir. 2007)); *In re Petrobras Sec. Litig.*, No. 14 Civ. 9662, 2018 U.S. Dist. LEXIS 161898,

20   2018 WL 4521211, at *1 (S.D.N.Y. Sept. 21, 2018), *aff'd*, No. 18-3351, 778 F. App'x 46 (2d Cir.

21   Oct. 1, 2019) ("In recent years . . . it has become obvious that some objectors seek to pervert the

22   process by filing frivolous objections and appeals, not for the purpose of improving the settlement

---

[3] Class Counsel primarily submitted cases where settlements were approved by stipulation or with essentially no analysis under the confines of Rule 23. Scholarship suggests that the number of motions to approve settlements after the Rule 23 amendments has been small. *See, e.g.*, Brian T. Fitzpatrick, *Objector Blackmail Update: What Have the 2018 Amendments Done?*, 89 FORDHAM L. REV. 437 (2020) (analyzing six cases as of 2020). The Court's independent analysis has confirmed that little case law has developed in reported forms.

for the class, but of extorting personal payments in exchange for voluntarily dismissing their appeals.").

Rule 23(e)(5) seeks to partially address the concerns of frivolous objections and appeals. Rule 23(e)(5)(A) sets forth procedures that an objector must follow when raising objections to the approval of a proposed settlement class. As previously noted, Rule 23(e)(5)(B)(ii) requires court approval of a payment made in connection with an objection, including for "forgoing, dismissing, or abandoning an appeal from a judgment approving the proposal." Fed. R. Civ. P. 23(e)(5)(B)(ii). Notably, Rule 23(e)(5)(B) does not prohibit objector settlements outright. A *per se* prohibition would nullify the need for court approval in the first place. This begs the question of when an objector settlement is appropriate.

The Advisory Committee Notes to Rule 23(e)(5)(B) acknowledge that "[g]ood-faith objections" can assist a court in evaluating a proposed class action settlement, and that it is "legitimate for an objector to seek payment for providing such assistance." Fed. R. Civ. P. 23(e)(5), 2018 Advisory Committee Notes. However, not all objections warrant payment. The Advisory Committee Notes further provide:

> But some objectors may be seeking only personal gain, and using objections to obtain benefits for themselves rather than assisting in the settlement-review process. At least in some instances, it seems that objectors—or their counsel—have sought to obtain consideration for withdrawing their objections or dismissing appeals from judgments approving class settlements. **And class counsel sometimes may feel that avoiding the delay produced by an appeal justifies providing payment or other consideration to these objectors.** Although the payment may advance class interests *in a particular case*, **allowing payment perpetuates a system that can encourage objections advanced for improper purposes**.

*Id.* (emphasis supplied). Court approval exists to address this concern. *Id*. With respect to an objection on appeal, the Advisory Committee Notes acknowledge that "an appeal by a class-action objector may produce much longer delay than an objection before the district court[.]" *Id*. "The district court is best positioned to determine whether to approve such arrangements[.]" *Id*.

5

The foregoing offers little insight into how to draw the line in approving objector settlements. However, the Advisory Committee Notes highlight the Court's discretion, and procedural context is a relevant guide. In order to approve a class settlement, a district court must find "that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). "It is [also] critical that class members not be deterred from raising reasonable and good-faith objections to a class settlement." *Pearson v. Target Corp*., 968 F.3d 827, 838 (7th Cir. 2020). Fairness necessarily requires consideration and scrutiny of "whether the payoff comes from the Class benefit." *Rougvie v. Ascena Retail Grp., Inc*., No. 15-724, 2019 U.S. Dist. LEXIS 28229, at *56 (E.D. Pa. Feb. 21, 2019) (highlighting concerns with objector settlements prior to the 2018 amendments and declining disgorgement). This benefit may be in the form of money directly from the common fund. It may also be intangible, including safeguarding the interests of the class.

**Here, several factors favor approval of the settlement:**

*First*, the settlement agreement is being paid by Class Counsel separate and apart from the settlement fund and any fee award that Class Counsel may obtain. On its face, the agreement does not reduce the benefit to the class, which overwhelming approved the Round 2 Settlements.

*Second*, the settlement agreement is pending public scrutiny and approval before this Court and is not the prototypical private payment that rightfully elicits court scrutiny. *See, e.g*., *Pearson*, 968 F.3d at 829 (holding "that settling an objection that asserts the class's rights in return for a *private* payment to the objector is inequitable and that disgorgement is the most appropriate remedy" (emphasis supplied)).[4]

---

[4] Objectors Bednarz and Huang oppose the settlement on the grounds that payoffs are prohibited, the class is receiving no benefit, and that the $25,000 payment does not reflect the value of Andrews' work or that work's benefit to the class. However, Bednarz and Huang do not have standing absent a concrete injury, which is lacking on the factual record here. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021) ("No concrete harm, no standing. Central to assessing concreteness is whether the asserted harm has a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including (as relevant here) reputational harm."); *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019) ("Article III standing requires a concrete injury even in the context of a statutory violation." (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016))). Furthermore, Rule 23(e)(5)(B) does not permit an objector to oppose an individual settlement. Other provisions do permit objections. *See, e.g*., Fed. R. Civ. P. 23(e)(5)(A) (approval of class settlement); Fed. R. Civ. P. 23(h)(2) (approval of fee award). However, disgorgement, which has been discussed above, is an equitable remedy and a district court has "broad discretion"

1    ***Third***, the settlement agreement appears to have been reached at an arms-length. As
2    represented by Class Counsel, the agreement was reached with the assistance of a Ninth Circuit
3    mediator. (Zapala Decl. ¶ 3.) This is a significant factor for consideration.

***Fourth***, while the $25,000 amount does not come from the $44.95 million in the common fund, it is a *de minimus* amount in comparison. Specifically, the settlement would be 0.00056%. Similarly, the amount is a *de minimus* 0.00074% compared to the $33,829,176.00 fee award. Again, the fact that it does not detract value from the actual fund or fee award is significant.

***Fifth***, this is not a circumstance where the class obtains zero benefit from the settlement. As plaintiffs highlight, the Ninth Circuit has already affirmed the distribution plan of the Round 3 Settlements, which mirrors that approved in the revised Round 2 Settlements. Andrews' appeal is the only one that concerns the distribution plan. This context is relevant and signals the null value of Andrews' appeal. The revised Round 2 Settlements presents the best deal for the class in light of the posture of this case and avoids the costs and delays of appeal. Even if the Andrews' appeal had any chance of success, the result would be a total loss for the class because the Court had denied certification of a litigation class.

***Sixth***, no one disputes that approval of the agreement and withdrawal of the appeal will result in the distribution of the funds after years of delay. However, the Advisory Committee Notes suggest that mitigating delay should not be outcome determinative.

***Seventh***, Andrews has been an active participant as a pro se objector in this case. If Andrews were represented by counsel, he would have been permitted to timely move for attorney's fees for any added benefit to the class consistent with Federal Rule of Civil Procedure 23(h). His

---

in deciding whether to employ it. *S.E.C. v. Clark*, 915 F.2d 439, 454 (9th Cir. 1990). Nevertheless, the Court has conducted its own independent analysis of the particular circumstances of this case and the denial of the motion moots the additional objections.

The agreement does not deplete the settlement fund. The Seventh Circuit decision in *Pearson* that is invoked by the objectors is not inapposite. *Pearson* recognized that "a class member has standing to defend the class, whose interest he shares, against sell-outs by the self-appointed representatives who control the interests of all." *Pearson*, 968 F.3d at 835. There, Theodore Frank, who is now counsel for Objector Bednarz, had standing to seek disgorgement of funds as an equitable remedy where the private side agreements at issue took money that had been earmarked for the class. *Id*. at 829, 831, 835-36.

ability to seek recovery for his objections is substantially limited compared to those who may be represented by counsel.[5]

**Despite the foregoing, there are countervailing factors for consideration:**

*First*, while Andrews and Class Counsel submit that Andrews has made significant contributions to these proceedings, the submission lacks factual support. Notably, Andrews did not submit a response to the motion for settlement to add any justification to the claim that he has expended over 600 hours working on this case. The 600 hours of work does not appear to be specific to the appeal that he seeks to profit from; but instead appears to be an effort to recover for his participation throughout this litigation. Indeed, the Ninth Circuit initially vacated the Round 2 Settlement based upon Bednarz's appeal, *see Indirect Purchaser Plaintiffs v. Bednarz*, 777 F. App'x 221 (9th Cir. 2019), and overruled Andrews on all objections to the Round 3 Settlement, *In re Lithium Ion Batteries Antitrust Litig., Indirect Purchaser Plaintiffs v. Andrews*, 853 F. App'x 56 (9th Cir. 2020). Ordinarily, an objector that is represented by counsel would have to follow the procedures set forth in Rule 23(h). In that context, a court may "deny fees to objectors whose work is duplicative, or who merely echo each others' arguments and confer no unique benefit to the class." *Rodriguez v. Disner*, 688 F.3d 645, 658-59 (9th Cir. 2012). This has occurred here.

*Second*, Andrews previously lost his appeal in connection with the Round 3 Settlement and added no benefit to the class from that appeal. His arguments in connection with the pending appeal are no different. Rather than withdraw his appeal under the new set of circumstances, Andrews is settling for a significant award that drastically exceeds the individual service awards authorized in this case.[6]

---

[5] *See, e.g.*, *UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp.*, 352 F. App'x 232, 237 (10th Cir. 2009) ("*UFCW*") ("A pro se objector's time and effort is not the same as an attorney fee incurred by an objector. In other contexts, courts have established that pro se litigants may not collect 'fees' that would be payable to their attorneys if they had been represented by counsel.").

[6] Andrews never moved for an incentive award and it is not clear that he would have been entitled to one. "[W]hile reasonable incentive awards are permitted, our cases have described such awards as being intended 'to compensate ***class representatives*** for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1057 (9th Cir. 2019) (emphasis supplied). Incentive awards have

***Third***, the $25,000 is not *de minimus* compared to the $10,000 service awards provided to the individual class representatives in this case who have participated at all stages of the litigation. Andrews would be paid 2.5x more than the class representatives. This is significant.

***Fourth***, such a high award would set precedent that distribution could be tied up by appeals that are very likely to fail in exchange for consideration. As contemplated in the Advisory Committee Notes, "allowing payment perpetuates a system that can encourage objections advanced for improper purposes." Fed. R. Civ. P. 23(e)(5), 2018 Advisory Committee Notes. This is more pressing, where an objector, such as Andrews, has a history of challenging many class action proceedings, and one, with the court's reprimand.[7]

\*\*\*

In light of the foregoing, the totality of the circumstances weighs in favor of denying the motion. The Court is sympathetic to Class Counsel's efforts to reach quick and judicious resolution on appeal. However, substantial emphasis has been placed on the immediate distribution of the funds by settling the appeal. While an appeal would undeniably cause some delay and increase costs to defend against an appeal, the record also suggests that the appeal lacks merit. Andrews could abandon his appeal without consideration. Instead, he holds onto his appeal with the potential for payout to shoehorn in compensation for his *entire* participation in this litigation with little factual support. Given the substantial overlap with the Round 3 Settlements, defending the appeal should not require considerable time and expense. Endorsing a $25,000

---

been denied to pro se objectors where they have offered no benefit to the class. *See, e.g.*, *UFCW*, 352 F. App'x at 236-37 (affirming denial of incentive award to a pro se objector without "decid[ing] if a pro se objector can ever be entitled to an incentive award under appropriate circumstance" because no benefit was conferred to the class). Any motion seeking compensation for years of litigation would be untimely.

[7] *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, Nos. 17-3361, 17-3548, 2017 U.S. App. LEXIS 25352, *8 (6th Cir. Dec. 4, 2017) ("Andrews unreasonably and vexatiously multiplied the proceedings through his myriad of repetitive, meritless pleadings contesting the appeal bond and the original sanctions award, as well as through his efforts to impede IPC's collection of sanctions. Andrews knew or should have known that his arguments were frivolous because he continued to assert them after repeated rejections by the district court. Moreover, the arguments that Andrews raises on appeal are unpersuasive.'").

9

payout, especially where the class representatives have only received $10,000 as a service award, runs counter to the policies embodied in Rule 23(e)(5) to prevent objector blackmail.

Nevertheless, the Court cannot say that no amount would be fair or reasonable given the particular circumstances of this case concerning a pro se objector, who has contributed at varying degrees in multiple stages of the litigation. His appeal, when filed, was without the benefit of the affirmance of the Round 3 Settlements. To say that it lacked any good faith basis ignores the procedural posture of this case. The Ninth Circuit also did not deem Andrews' appeal as frivolous. Notably, Rule 23(e)(5) does not prohibit all settlements, however, approval must strike a balance of encouraging good faith objections while preventing the permeation of objector blackmail. An amount that satisfies this balance may be approved.[8] As presented, $25,000 simply does not convince that the appropriate balance has been met. Therefore, the motion for settlement is **DENIED WITHOUT PREJUDICE**.

///

///

///

///

///

///

///

---

[8] The supplementary record submitted to the Court demonstrates that counsel for Objector Bednarz initially found that it would be reasonable for Andrews to seek $6,250 if Andrews disgorged the entire $25,000 amount to the common fund. (Dkt. No. 2743 at 2.) This adds credence that some amount may warrant approval. However, the suggestion that the $25,000 needs to be disgorged is misplaced. The amount does not come from the fund in the first instance.

Furthermore, the Court requested that counsel for Objector Bednarz submit his retainer agreement in connection with these proceedings. Counsel for Bednarz submitted an undated agreement. (Dkt. No. 2739-1.) Ultimately, while not relevant to the disposition of the pending motion, the Court has reviewed the agreement and notes that the retainer raises significant questions about potential conflicts of interest. For instance, Bednarz is counsel's employee. The agreement goes to great lengths to suggest that any litigation would not be conducted in Bednarz's capacity as an employee to avoid firm resources being used in his personal capacity. Nevertheless, the agreement was sent to Bednarz at his place of employment and to his work email.

## IV. CONCLUSION

For the foregoing reasons, the motion for settlement is denied without prejudice. A renewed motion for settlement may be submitted within twenty-eight (28) days of this order. Otherwise, the appeal must be reinstated consistent with the Ninth Circuit's mandate.

This order terminates Docket Number 2728.

**IT IS SO ORDERED.**

Dated: March 24, 2022

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　YVONNE GONZALEZ ROGERS
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE