Joseph J. Tabacco, Jr. (Bar No. 75484)
Todd A. Seaver (Bar No. 271067)
Carl N. Hammarskjold (Bar No. 280961)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile:  (415) 433-6382
Email: jtabacco@bermantabacco.com
         tseaver@bermantabacco.com
         chammarskjold@bermantabacco.com

R. Alexander Saveri (Bar No. 173102)
Geoffrey C. Rushing (Bar No. 126910)
Matthew D. Heaphy (Bar No. 227224)
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile:  (415) 217-6813
Email: rick@saveri.com
         geoff@saveri.com
         mheaphy@saveri.com

Bruce L. Simon (Bar No. 96241)
Benjamin E. Shiftan (Bar No. 265767)
**PEARSON, SIMON & WARSHAW, LLP**
555 Montgomery Street, Suite 1205
San Francisco, CA 94111
Telephone: (415) 433-9000
Facsimile:  (415) 433-9008
Email: bsimon@pswlaw.com
         bshiftan@pswlaw.com

*Co-Lead Counsel for Direct Purchaser Plaintiffs*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| IN RE: LITHIUM ION BATTERIES ANTITRUST LITIGATION | Case No. 13-md-02420-YGR<br>MDL No. 2420<br><br>**DIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING DISTRIBUTION OF REMAINING SETTLEMENT FUNDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| This Document Relates to:<br><br>*All Direct Purchaser Actions* | |
| | Date:         January 10, 2023<br>Time:        2:00 p.m.<br>Judge:       Hon. Yvonne Gonzalez Rogers<br>Courtroom:  1 |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 10, 2023, at 2:00 pm, or as soon thereafter as counsel can be heard, before the Honorable Yvonne Gonzalez Rogers, United States District Judge, at the United States Courthouse, 1301 Clay Street, Courtroom 1, Fourth Floor, Oakland, California, Direct Purchaser Plaintiffs ("Plaintiffs") will move this Court for an Order authorizing a supplemental distribution of the remaining settlement proceeds obtained in the Direct Purchaser Actions (the "Motion").

Specifically, Plaintiffs request that the Court enter an Order authorizing (1) additional *pro rata* payments from the remaining settlement funds to certain approved claimants, (2) distribution of any future remaining funds to a *cy pres* beneficiary, George Washington University Law School Competition Law Center ("CLC"), and (3) payment to Epiq Class Actions & Claims Solutions, Inc. ("Settlement Administrator") for additional claims administration costs for which sufficient funds were previously reserved in escrow.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of James Page, Esq. in Support of Direct Purchaser Plaintiffs' Motion for Order Authorizing Distribution of Remaining Settlement Funds ("Page Declaration" or "Page Decl."), the Declaration of William E. Kovacic, ("Kovacic Decl.") as well as the complete files and records in this case, and upon such argument at the hearing on this Motion and in further pleadings as may be presented to the Court.[1]

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether to authorize additional *pro rata* payments from the remaining settlement funds to the 114 previously approved claimants who (i) cashed their initial checks and (ii) would also be eligible to receive more than $10.00 in this proposed supplemental distribution, as set forth in **Exhibit C** to the Page Declaration.

---

[1] After Plaintiffs file this Motion, it will be posted, with all supporting materials, on the settlement website (www.BatteriesDirectPurchaserAntitrustSettlement.com).

2. Whether to distribute any future remaining settlement funds to a *cy pres* beneficiary, CLC.

3. Whether the Settlement Administrator shall be reimbursed $122,866.92 for additional costs and expenses incurred from the previously reserved amount of $136,968.96.

4. Whether the Settlement Administrator shall be paid the $14,102.04 remainder of the previously reserved amount of $136,968.96 for its remaining work.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs seek authorization to complete the settlement distribution process. The Court previously approved a *pro rata* distribution of $91,520,463.98 and the Settlement Administrator promptly issued settlement checks to 8,745 approved claimants. $91,509,111.49 of the distributed funds (more than 99.9% of the distributed funds) have been cashed by 7,898 approved claimants (more than 90% of approved claimants).

Plaintiffs now request that the Court approve distribution of the remaining settlement funds. In particular, Plaintiffs (1) seek to distribute funds to the 114 previously approved claimants who cashed their initial checks and would also be eligible to receive more than $10.00 in this proposed supplemental distribution, (2) request that the Court designate CLC as a *cy pres* beneficiary to receive any funds remaining after this supplemental distribution, (3) request permission to reimburse the Settlement Administrator $122,866.92 for costs and expenses incurred from the previously reserved amount of $136,968.96, and (4) request permission to pay the Settlement Administrator the $14,102.04 remainder of the previously reserved amount of $136,968.96 for its remaining work, upon presentation of an invoice from the Settlement Administrator to Co-Lead Counsel.

### II.   STATEMENT OF RELEVANT FACTS

On December 14, 2020, the Court authorized the initial distribution of settlement funds. ECF No. 2684. On January 28, 2021, the Settlement Administrator mailed $91,520,463.98 worth of checks to 8,745 eligible Class Members. ECF No. 2708-1, at ¶ 2; Page Decl. ¶ 3.

Plaintiffs subsequently filed their Post-Distribution Accounting (ECF No. 2708) and the Settlement Administrator posted it on the settlement website. Page Decl. ¶ 4.

The original void date of all checks was April 28, 2021. ECF No. 2708-1, at ¶ 4; Page Decl. ¶ 5. The Settlement Administrator extended this void date on multiple occasions and re-issued checks upon request as part of its effort to ensure that that as many eligible Class Members as possible cashed their checks. Page Decl. ¶ 5. As of today's date, $91,509,111.49 worth of checks have been cashed by 7,898 claimants. *Id*. These figures total more than 99.9% of the distributed funds and more than 90% of the approved claimants. *Id*.

There is currently $11,352.49 in uncashed checks available for distribution. Page Decl. ¶ 6. In addition, the settlement fund accounts contain $777,169.07, which includes the $250,000 reserve that the Court previously authorized to be set aside for potential tax liability and other issues (ECF No. 2684, at ¶ 3) and the interest generated on the funds in the settlement accounts from December 31, 2019 (the date of the statements used to ascertain the funds available in the settlement accounts for the initial distribution) through April 30, 2022 (the date of the statements used to ascertain the funds available in the settlement accounts for this supplemental distribution). *See* ECF No. 2584, at 10 nn.10–11; Page Decl. ¶ 6.

III.   **ARGUMENT**

The Court previously approved a *pro rata* distribution resulting in the initial successful distribution of $91,509,111.49. Plaintiffs now seek an order (1) authorizing distribution of remaining settlement funds to certain previously approved claimants, (2) designating CLC as a *cy pres* beneficiary to receive any funds remaining after this distribution, (3) authorizing Plaintiffs to reimburse the Settlement Administrator for costs and expenses incurred in the amount of $122,866.92, and (4) authorizing Plaintiffs to pay the Settlement Administrator the $14,102.04 remainder of the previously reserved amount of $136,968.96 for its remaining work, upon presentation of an invoice from the Settlement Administrator to Co-Lead Counsel.

Now is an appropriate time to distribute from the $11,352.49 in uncashed checks because the void date of the previously issued checks has passed and those checks can no longer be cashed. Page Decl. ¶ 5. In addition, the Settlement Administrator completed

significant efforts attempting to ensure that approved claimants cashed their checks, including tracking check cashing and extending the void date of checks when asked. *Id*. Furthermore, now is the appropriate time for a supplemental distribution from the $777,169.07 remaining in the settlement fund accounts, as the Settlement Administrator has accounted for potential tax liability and reports no other issues. *Id*. ¶ 6. Moreover, Plaintiffs also request that the Court now authorize payment to the Settlement Administrator for costs and expenses incurred in the amount of $122,866.92 from the $136,968.96 that the Court previously authorized to be reserved for additional claims administration costs. *See* ECF No. 2684, at ¶ 3; Page Decl. ¶ 8. The balance of the reserve ($14,102.04) will be held for estimated future costs and expenses and will be paid to the Settlement Administrator upon incurring such future costs and expenses in an amount not to exceed that amount; any funds remaining at the end of administration will be distributed to the *cy pres* beneficiary. Page Decl. ¶ 8.

The following chart is an accounting of the remaining settlement funds:

| | |
|---|---:|
| Uncashed checks remaining after distribution to approved claimants | $11,352.49 |
| Funds remaining in settlement fund accounts (includes the $250,000 reserve [authorized by ECF No. 2684] + interest in settlement fund accounts [*see* ECF No. 2584, at 10 nn.10−11] + the $24.35 that could not originally be distributed due to fact that it is not possible for award values to be calculated at values less than a penny [*see* ECF No. 2584-1, at ¶ 30]) | + $777,169.07 |
| **SUBTOTAL** | **= $778,521.56** |
| Unpaid and future administration costs (authorized by ECF No. 2684) | - $136,968.96 |
| **TOTAL REMAINING FOR *PRO RATA* DISTRIBUTION** | **= $651,552.60** |

Plaintiffs propose that the **$651,552.60** in remaining funds be distributed *pro rata* to the 114 approved claimants who (1) participated in the initial settlement distribution by cashing their checks and (2) would be entitled to an additional *pro rata* payment of at least $10.00. Page Decl. ¶ 12. Making payments to these claimants would provide a substantial benefit to those Class Members with the largest amount of approved purchases who were most injured by

the alleged conspiracy. The average (mean) proposed additional payment to these 114 Class Members would be $5,715.33. Page Decl. ¶ 13.[2]

This approach is consistent with cases in which courts have set minimum thresholds for payment, such that claimants who would be eligible for payments of less than the threshold amount would not receive any payment at all. *See, e.g.*, Order Granting Direct Purchaser Plaintiffs' Mot. for Order Authorizing Distribution of Remaining Settlement Funds, *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-02143 RS (N.D. Cal. Sept. 2, 2021), ECF No. 3061, at ¶ 9 (approving a supplemental distribution to "the 138 approved claimants who were authorized to be paid more than $10.00 from the initial distribution, participated in the initial settlement distribution by cashing their checks, and would be entitled to an additional *pro rata* payment of at least $10.00 from the remaining Net Settlement Funds"); *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017) (affirming "allocation plan, which set a minimum threshold of $10 to receive a distribution from the settlement fund"); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *11 (N.D. Cal. Dec. 18, 2018) (approving "$10 threshold" for distribution), *aff'd*, 802 Fed. App'x 285 (9th Cir. 2020).

This approach is also economically feasible given the relatively small number of recipients and consequential amounts of proposed payments. *See Camberis v. Ocwen Loan Servicing LLC*, No. 14-CV-02970-EMC, 2018 WL 6068999, at *2 (N.D. Cal. Nov. 20, 2018) (ordering a second distribution of funds because it was "practicable" to do so); *Perkins v. Linkedin Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255, at *10 (N.D. Cal. Feb. 16, 2016) (approving plan for a supplemental distribution so long as "economically feasible" to do so); *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 333 (N.D. Cal. 2018) (noting "the law's general preference for cy pres awards to be limited to scenarios where it is not feasible to make further distributions to class members"). Following this approach minimizes

---

[2] If the total remaining funds were to be distributed under a strict *pro rata* distribution (*i.e.*, without any minimum threshold), 7,784 Class Members would receive a supplemental payment of less than $10.00, most of which would likely go uncashed. Most of these claimants have already received payments greater than the value of their claims because of the $10.00 minimum payments previously authorized by the Court (ECF No. 2684, at ¶ 1). Page Decl. ¶ 11.

1   administrative costs and ensures that the previously reserved $136,968.96 for claims
2   administration costs will cover all future administration costs. Page Decl. ¶ 12.
3           Plaintiffs anticipate, however, that once the above-referenced supplemental checks are
4   issued to the 114 previously approved claimants, additional future distributions would be
5   economically impractical. In light of the success of the original distribution (more than 99.9%
6   of distributed funds were cashed), the Settlement Administrator expects a relatively nominal
7   amount of money to remain after a second distribution. Page Decl. ¶ 14. The Settlement
8   Administrator therefore anticipates that administration costs of additional future distributions
9   would exceed the monetary benefit to Class Members. *Id*. Plaintiffs therefore request that the
10  Court designate CLC as the *cy pres* beneficiary of any future remaining funds. *See In re Google*
11  *Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1115 (9th Cir. 2021) ("*cy pres* provisions
12  are tools for 'distribut[ing] unclaimed or non-distributable portions of a class action settlement
13  fund to the "next best" class of beneficiaries'" (alteration in original) (citing *Nachshin v. AOL,*
14  *LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011))), *cert. denied sub nom. Lowery v. Joffe*, No. 21-
15  1535, 2022 WL 4651933 (Oct. 3, 2022); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 3:10-CV-
16  01290-BEN-NLS, 2019 WL 1367814, at *1 (S.D. Cal. Mar. 25, 2019) ("A *cy pres* distribution
17  'is most useful when individual stakes are small, and the administrative costs of a second round
18  of distributions to class members might exceed the amount that ends up in class members'
19  pockets.'" (citing *Ira Holtzman, C.P.A., & Assocs. Ltd. v. Turza*, 728 F.3d 682, 689 (7th Cir.
20  2013))); *Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2020 WL 1139662, at *2
21  (S.D. Cal. Mar. 9, 2020) ("[I]t would be burdensome and inefficient to require a second
22  distribution of the residual settlement fund and a cy pres award is more appropriate.").
23          "*Cy pres* distributions must account for the nature of the plaintiffs' lawsuit, the
24  objectives of the underlying statutes, and the interests of the silent class members, including
25  their geographic diversity." *Nachshin*, 663 F.3d at 1036; *see also Google St. View Elec.*
26  *Commc'ns Litig.*, 21 F.4th at 1116 (noting that these are "the factors that guide judicial
27  oversight of *cy pres* settlement provisions" and "are designed to ensure that *cy pres* payments
28  particularly 'benefit the plaintiff class'" (citing *Nachshin*, 663 F.3d at 1036, 1040)).

Distributing future remaining settlement funds to CLC would satisfy the above requirements. CLC is an organization with a nationwide footprint that is devoted to promoting competition that protects consumers, businesses, and society. *See* Declaration of Kovacic Decl. ¶¶ 2–5. CLC sponsors conferences, organizes writing awards, and takes other steps to advocate for the private enforcement of the antitrust laws, including Section 1 of the Sherman Act. *Id*. ¶¶ 5–16. CLC will use these funds to that same end, including research that examines how cartels function and the countermeasures that can serve to defeat them; conferences and workshops that convene academics, public officials, and practitioners to discuss issues crucial to the development of effective private and public enforcement initiatives; the engagement of students in projects to give them a superior grounding in antitrust law and its practical implementation, and the participation in events in the United the States and overseas that enables the CLC to share what it has learned from its own work and incorporate the experience of others into the CLC's work. *Id*. ¶¶ 17–18. (The CLC was established with a *cy pres* award authorized by the United States District Court for the District of Columbia. *Id*. ¶ 2; *see Diamond Chemical Co. v. Akzo Nobel Chemicals, et al.*, Case No. 1:01-cv-02118-CKK (D.D.C), ECF Nos. 76, 77 (July 10, 2007).)

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the [Proposed] Order Granting Direct Purchaser Plaintiffs' Motion for an Order Authorizing Distribution of Remaining Settlement Funds, submitted concurrently.

///

///

///

| | | |
|---|---|---|
| 1 | DATED: December 1, 2022 | Respectfully submitted, |
| 2 | */s/ Carl N. Hammarskjold* | */s/ R. Alexander Saveri* |
|   | Joseph J. Tabacco, Jr. | R. Alexander Saveri |
| 3 | Todd A. Seaver | Geoffrey C. Rushing |
|   | Carl N. Hammarskjold | Matthew D. Heaphy |
| 4 | **BERMAN TABACCO** | **SAVERI & SAVERI, INC.** |
|   | 425 California Street, Suite 2300 | 706 Sansome Street |
| 5 | San Francisco, CA 94104 | San Francisco, CA 94111 |
|   | Telephone: (415) 433-3200 | Telephone: (415) 217-6810 |
| 6 | Facsimile:  (415) 433-6382 | Facsimile:  (415) 217-6813 |
|   | jtabacco@bermantabacco.com | rick@saveri.com |
| 7 | tseaver@bermantabacco.com | geoff@saveri.com |
|   | chammarskjold@bermantabacco.com | mheaphy@saveri.com |

*Co-Lead Counsel for Direct Purchaser Plaintiffs*   *Co-Lead Counsel for Direct Purchaser Plaintiffs*

*/s/   Clifford H. Pearson*
Clifford H. Pearson
**PEARSON SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
cpearson@pswlaw.com

Bruce L. Simon
Benjamin E. Shiftan
**PEARSON SIMON & WARSHAW, LLP**
555 Montgomery Street, Suite 1205
San Francisco, CA 94111
Telephone: (415) 433-9000
Facsimile:  (415) 433-9008
bsimon@pswlaw.com
bshiftan@pswlaw.com

*Co-Lead Counsel for Direct Purchaser Plaintiffs*

**E-FILING ATTESTATION**

I, Carl N. Hammarskjold, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Carl N. Hammarskjold*
Carl N. Hammarskjold