Joseph J. Tabacco, Jr. (Bar No. 75484)
Todd A. Seaver (Bar No. 271067)
Carl N. Hammarskjold (Bar No. 280961)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: jtabacco@bermantabacco.com
　　　　tseaver@bermantabacco.com
　　　　chammarskjold@bermantabacco.com

R. Alexander Saveri (Bar No. 173102)
Geoffrey C. Rushing (Bar No. 126910)
Matthew D. Heaphy (Bar No. 227224)
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813
Email: rick@saveri.com
　　　　geoff@saveri.com
　　　　mheaphy@saveri.com

Bruce L. Simon (Bar No. 96241)
Benjamin E. Shiftan (Bar No. 265767)
**PEARSON, SIMON & WARSHAW, LLP**
555 Montgomery Street, Suite 1205
San Francisco, CA 94111
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
Email: bsimon@pswlaw.com
　　　　bshiftan@pswlaw.com

*Co-Lead Counsel for Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: LITHIUM ION BATTERIES ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>*All Direct Purchaser Actions* | Case No. 13-md-02420-YGR<br>MDL No. 2420<br><br>**DECLARATION OF JAMES PAGE, ESQ. IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR ORDER AUTHORIZING DISTRIBUTION OF REMAINING SETTLEMENT FUNDS**<br><br>Date:　　　　January 10, 2023<br>Time:　　　　2:00 p.m.<br>Judge:　　　Hon. Yvonne Gonzalez Rogers<br>Courtroom:　1 |

[13-MD-02420 (YGR)] DECL. OF JAMES PAGE, ESQ. ISO MOTION FOR ORDER AUTHORIZING DISTRIBUTION OF REMAINING SETTLEMENT FUNDS

I, James E. Page, hereby declare as follows:

1. I am a Manager of Client Services employed by Epiq Class Actions & Claims Solutions, Inc. ("Epiq"), the Settlement Administrator for the direct purchaser actions in the above-captioned case. Epiq began working on this matter in March of 2016. I have worked for Epiq and GCG, a company acquired by Epiq in 2018, since 2013. I am a licensed attorney in Washington. I received my Juris Doctor degree from the University of Oklahoma Law School in 2006 and my Bachelor of Arts degree from the University of Oklahoma in 2003. The following statements are based on my personal knowledge and information provided by other Epiq employees working under my supervision, and if called on to do so, I could and would testify competently thereto.

2. I submit this Declaration in support of Direct Purchaser Plaintiffs' Motion for Order Authorizing Distribution of Remaining Settlement Funds.

3. On January 28, 2021, Epiq mailed checks to 8,745 eligible Class Members. The 8,745 checks had a total value of $91,520,463.98. *See* ECF No. 2708-1, at ¶ 2.

4. On February 18, 2021, Epiq posted a copy of Direct Purchaser Plaintiffs' Post-Distribution Accounting filed that day (ECF No. 2708) to the settlement website, https://www.batteriesdirectpurchaserantitrustsettlement.com/.

5. The original void date of all checks was April 28, 2021. Epiq tracked uncashed checks, extended this void date on multiple occasions, and re-issued checks upon request as part of its effort to ensure that as many eligible Class Members as possible cashed their checks. Epiq has now placed a final void date on all outstanding checks. As of today's date, $91,509,111.49 worth of checks have been cashed by 7,898 claimants. These figures total more than 99.9% of the distributed funds and more than 90% of the approved claimants, respectively.

6. There is currently $11,352.49 in uncashed checks in the distribution account maintained by Epiq available for distribution. In addition, as of April 30, 2022, the settlement fund accounts contain $777,169.07, which includes the $250,000 reserve that the Court previously authorized to be set aside for potential tax liability and other issues (ECF No. 2684,

at ¶ 3) and the interest generated on the funds in the settlement accounts from December 31, 2019 (the date of the statements used to ascertain the funds available in the settlement accounts for the initial distribution) through April 30, 2022 (the date of the statements used to ascertain the funds available in the settlement accounts for this supplemental distribution). *See* ECF No. 2584, at 10 nn.10–11.

7. The void date of all previously issued checks has passed and those checks can no longer be cashed. Epiq completed significant efforts to try to ensure that approved claimants cashed their checks, including by tracking check cashing and extending the void date of checks when asked. Epiq has accounted for all potential tax liability and reports no other issues.

8. Epiq has incurred costs and expenses in the amount of $122,866.92 since January 1, 2020 that have not been paid. **Exhibit A** is a list of the outstanding invoices by date and amount due. Assuming that the Court approves this amount for payment, future costs and expenses (estimated in **Exhibit B**) will not exceed the $14,102.04 remainder of $136,968.96 that the Court previously authorized to be reserved for additional claims administration costs, *see* ECF No. 2684, at ¶ 3; any reserved funds remaining at the end of administration will be distributed to the *cy pres* beneficiary.

9. The following chart is an accounting of the remaining settlement funds:

| | |
|---|---:|
| Uncashed checks remaining after distribution to approved claimants | $11,352.49 |
| Funds remaining in settlement fund accounts as of April 30, 2022 (includes the $250,000 reserve [authorized by ECF No. 2684, at ¶ 3] + interest in settlement fund accounts [s*ee* ECF No. 2584, at 10 nn.10–11] + the $24.35 that could not originally be distributed due to fact that it is not possible for award values to be calculated at values less than a penny [*see* ECF No. 2584-1, at ¶ 30] | + $777,169.07 |
| **SUBTOTAL** | **= $778,521.56** |
| Unpaid and future administration costs (authorized by ECF No. 2684) | - $136,968.96 |
| **TOTAL REMAINING FOR PRO RATA DISTRIBUTION** | **= $651,552.60** |

10. Epiq recommends calculating supplemental award payments in the same manner as the previous Court-approved award calculations.

11. If the total remaining funds were to be distributed under a strict pro rata distribution (*i.e.*, without any minimum threshold), 7,784 Class Members would receive a supplemental payment of less than $10.00, most of which would likely go un-cashed. Most of these claimants have already received payments greater than the value of their claims because of the $10.00 minimum payments previously authorized by the Court (ECF No. 2684, at ¶ 1).

12. In contrast, if the total remaining funds were to be distributed pro rata to only those approved claimants who (1) participated in the initial settlement distribution by cashing their checks and (2) would be entitled to an additional pro rata payment of at least $10.00, then the volume of checks drastically decreases while the value of the checks issued increases. Epiq recommends adopting this approach.[1] Following this approach minimizes administrative costs and ensures that the previously reserved $136,968.96 for claims administration costs will cover all future administration costs.

13. Using this recommended pro rata supplemental distribution, 114 Class Members would receive a supplemental payment. The average (mean) proposed additional payment to the 114 Class Members would be $5,715.33 and the median payment would be $282.66. Attached hereto as **Exhibit C** is a schedule of all claimants recommended for a supplemental payment and each claimant's proposed payment.[2]

//
//
//

---

[1] Class Members who did not cash their initial checks have not been recommended for further payment since it is unlikely that they would cash their second, smaller checks.

[2] The sum of the proposed additional payments is $651,547.67, which is $4.93 less than the above-referenced amount available to distribute due to rounding.

14. In light of the success of the original distribution (more than 99.9% of distributed funds were cashed), Epiq expects a relatively nominal amount of money to remain after a second distribution to claimants. Epiq therefore anticipates that administration costs of additional future distributions to Class Members would exceed the monetary benefit to Class Members. Accordingly, Epiq believes it will be more economically feasible to distribute any remaining funds to a *cy pres* recipient.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 1, 2022 at Seattle, Washington.

By: _____
JAMES PAGE
Manager of Client Services
Epiq Class Action & Claims Solutions