Elizabeth J. Cabraser (083151)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
ecabraser@lchb.com

Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
steve@hbsslaw.com

Adam J. Zapala (245748)
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com

*Counsel for Indirect Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE LITHIUM ION BATTERIES ANTITRUST LITIGATION | Case No. 13-MD-02420 YGR (DMR) <br><br> MDL No. 2420 |
| This Documents Relates to: <br><br> ALL INDIRECT PURCHASER ACTIONS | INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO SUSSMAN OBJECTIONS <br><br> DATE ACTION FILED: Oct. 3, 2012 |

Indirect Purchaser Plaintiffs ("IPPs") respectfully submit this response regarding claimant Michael Sussman's January 17, 2024 Objections (ECF No. 2778) ("Obj."), in accordance with the Court's January 25, 2024 Order Requiring a Response (ECF Nos. 2779).  As reflected below, Phase I of the distribution process is now complete, with 961,396 claimants having successfully received settlement payments, totaling $66,934,816.64.  Approximately $3.2 million remains in the settlement fund.  In its January 25 Order, the Court directed IPPs to respond to each of the six main arguments raised by Mr. Sussman's Objections.  *See* ECF No. 2779.  IPPs accordingly address each argument in turn.

**Argument 1: This Court can vacate the above-referenced orders[1] and take control over the settlement distribution process currently underway.**

This Court has and has always had "control" of the settlement distribution process and, of course, has complete discretion to exercise that control as it sees fit.  As reflected repeatedly in its settlement approval orders and entries of judgment in this action, the Court has retained jurisdiction over implementation of the settlements and distribution of settlement proceeds to class members. *See, e.g.*, ECF No. 1715 (judgment as to Sony); ECF No. 2004 (judgment as to Hitachi Maxell, NEC, and LG Chem); ECF No. 2521 (judgment as to Panasonic/Sanyo); ECF No. 2522 (judgment as to SDI); ECF No. 2523 (judgment as to Toshiba); ECF No. 2521 (judgment as to Tokin). Accordingly, the Court may use its equitable and inherent powers to ensure "expedient settlement distribution" and "to protect unnamed, but interested persons."  *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 246 F.3d 315, 321 (3d Cir. 2001).  The Court has, as courts nearly always do, relied on Class Counsel and the Court-appointed claims administrators, Sipree, Inc., d/b/a DigitalPay ("DigitalPay") and Epiq Class Action & Claims Solutions, Inc. ("Epiq"), to implement the court-approved Plan of Distribution, while maintaining oversight of the process through periodic reports and updates.

---

[1] ECF No. 2767 (Order Approving IPPs' Plan and Schedule of Distribution); ECF No. 2772 (Order Granting IPPs' Administrative Motion to Modify Schedule); ECF No. 2777 (Order Continuing Deadlines).

1    Mr. Sussman seems to propose that either this Court itself must undertake the mechanics of
2    the settlement distribution process, or "appoint different Class Counsel to assure that payments are
3    made." *See* Obj. at 1.  He offers no evidence to support either of these extreme proposals.  As
4    explained below, in response to Argument 2, the claims administrators have diligently followed the
5    Court's orders approving the Plan of Distribution (ECF No. 2767) and subsequent orders
6    modifying the distribution schedule (ECF Nos. 2772, 2777).  Indeed, the claims administrators
7    have gone beyond what is required.  Although the deadline for accepting payments during Phase I
8    had passed, the claims administrators nevertheless sent "Last Chance" emails to approximately
9    20,294 claimants and reactivated those claimants' digital payments, resulting in 1,988 additional
10   claimants accepting their payments.  Neither a Court-administered distribution process nor the
11   appointment of new counsel would change the outcome of settlement distribution in a meaningful
12   way.

13   Furthermore, since receiving Mr. Sussman's Objections, DigitalPay has attempted to
14   contact Mr. Sussman at least three times to request additional information to facilitate a payment—
15   but it has not received a response to date.  Assuming it is able to establish contact with Mr.
16   Sussman, DigitalPay agrees to work cooperatively to ensure Mr. Sussman receives his payment,
17   whether in the form of payment he originally requested or by alternative means (*e.g.*, by check).

18   **Argument 2: Class counsel failed to send "Last Chance" email outreach to approximately 20,500 claimants to whom digital payments were sent but who did not accept said payments.**
19

20   This assertion is simply wrong.  Consistent with IPPs' proposal, the claims administrators
21   undertook an extended Phase I distribution effort for those claimants who were initially sent digital
22   payments but who did not accept them.  This involved reactivating those claimants' payments and
23   sending a "Last Chance" email.  *See* ECF No. 2774 at 3–4.  From November 2, 2023, through
24   November 9, 2023, the claims administrators sent "Last Chance" emails to approximately 20,294
25   claimants, for claims representing an aggregate total of $1,125,955.18.  Those claimants had seven
26   days to accept their reactivated digital payments.  As of the conclusion of that effort, 1,988
27   claimants (or 9.8 percent of reactivated claimants) accepted their reactivated payments via this
28   "Last Chance" email notice, for claims totaling $108,249.72 (or 9.6 percent of the aggregate

1 amount of reactivated claims). In DigitalPay's experience, the acceptance rate here is in line with
2 what is typically observed for distribution efforts of this type. Moreover, IPPs consider this
3 supplemental distribution effort a success given that every additional email from the same sender's
4 domain (*i.e.*, DigitalPay) increases the risk that such email is flagged as spam, and that nearly two
5 thousand additional claimants accepted their payments despite these risks.

6 As to Mr. Sussman, DigitalPay confirms that Mr. Sussman was not sent a "Last Chance"
7 email because the email address he previously provided was deemed "undeliverable," as explained
8 further below. Thus, Mr. Sussman's claim was not affected by the extended Phase I distribution
9 effort.

10 **Argument 3: Contrary to representations made to this Court, technical difficulties with the distribution of settlement payments have affected more than a small portion of claimants.**
11

12 Technical difficulties with distribution have not affected more than a small portion of
13 claimants. At the conclusion of Phase I, approximately 18,401 digital payments remained
14 "unclaimed," meaning only 1.9 percent of the 966,520 claimants for whom digital payments were
15 successfully sent, had not accepted their payments. As IPPs previously reported, the initial Phase I
16 distribution effort resulted in approximately 20,399 "unclaimed" digital payments. *See* ECF No.
17 2774 at 2–3 & n.1 (noting that each claimant had been sent at least four separate communications
18 regarding their digital payment); ECF No. 2776 at 2 (describing "unclaimed" payments as those for
19 which the claims administrator believes their email communications "went through, but the
20 claimant for whatever reason has not clicked through to claim the funds"). Furthermore, following
21 those initial communications efforts, the claims administrator received emails from 1,768 class
22 members requesting to have their payments resent based on initial difficulties accessing their
23 payments. ECF No. 2774 at 2. And as described above, an additional 1,988 digital payments were
24 accepted as a result of the claims administrators' "Last Chance" email notice. Based on the claims
25 administrator's prior experience, and as this Court determined, no widespread technical issues were
26 present. *See* ECF No. 2777.

27 Mr. Sussman takes issue with the 99,351 digital payments that were deemed
28 "undeliverable," which he speculates resulted from "the claims administrator overwhelming

1   servers, being flagged for SPAM because of the bulk-nature of the emails, or using improper

2   handshake protocols." *See* Obj. at 5.  His speculation reflects a misunderstanding of why and how

3   payments are deemed "undeliverable."  DigitalPay defines "undeliverable" payments as those for

4   which an email was not successfully delivered, typically because the recipient's domain or email server

5   is nonexistent or flagged as high-risk (meaning it would damage DigitalPay's IP address and limit its

6   ability to send further payments).  *See* ECF No. 2776 at 2.  Common examples of errors (and error

7   messages) include: the recipient's mailbox is undeliverable or nonexistent (mailbox_does_not_exist), a

8   newly created domain (immature_domain), and an unknown mail exchange provider

9   (unknown_provider).  In Mr. Sussman's case, DigitalPay received an "smtp_connection_error"

10  message while performing an initial deliverability analysis for all claimants and consequently could not

11  successfully deliver a digital payment to him.  Such an error message could have been sent for a variety

12  of reasons, but it generally suggests that Mr. Sussman's email server was obsolete or defunct.  In any

13  event, the claims administrators' inability to send Mr. Sussman a digital payment (or any other

14  "undeliverable" payments) results from factors that are well beyond their control.

15          In contrast, payment notification emails that are sent to a claimant but caught by a spam

16  filter are by definition deliverable, with those payments that are not accepted deemed "unclaimed."

17  Indeed, whether a payment notification email was marked as spam (a fact that the claims

18  administrators cannot determine as to any delivered email) does not ultimately determine whether

19  the claimant viewed the email and accepted the payment.  In any event, as IPPs previously

20  explained and as reflected in the record in this case, the claims administrators took great care to

21  ensure the maximum reach of email communications regarding digital payments.  Consistent with

22  best practices to minimize the risk of such communications being blocked or caught by internet

23  service providers and/or spam filters, the claims administrators sent payment notification emails (a)

24  that used an embedded HTML text format that was easy to read without graphics, tables, images,

25  attachments, and other elements that would increase the likelihood of being blocked; (b) using a server

26  known to major email providers as one not used to send bulk spam or junk emails; and (c) in small

27  groups to avoid being flagged as spam or junk.  ECF No. 2774 at 3 (citing ECF No. 2671-1 ¶ 14).

28

1      Mr. Sussman's speculation regarding purportedly widespread technical difficulties is

2 inconsistent with the record evidence.

3 **Argument 4: Settlement payments not received by claimants should be directed to the unclaimed property agencies of the claimants' respective states, provided they meet certain thresholds.**

4

5      Mr. Sussman's request that undistributed funds go to unclaimed property agencies of

6 claimants' respective states contradicts the class notice and this Court's order. *See, e.g.*, ECF No.

7 2613-7 (long-form notice stating that "if redistribution is too costly compared with the amount of

8 the remaining balance, such funds will escheat to federal or state governments"); ECF No. 2681 at

9 11, 28–29 (final approval order describing the same and finding that the notice provisions of Rule

10 23(c)(2) are satisfied). In accordance with the Court-approved Plan of Distribution, settlement

11 funds will be distributed in two phases. *See* ECF No. 2767 at 3–6. During Phase I, settlement

12 proceeds were distributed to all class members with valid claims, whether by check, wire transfer,

13 or digital payment. Thereafter, the claims administrator will undertake a final assessment of funds

14 remaining for distribution in a subsequent offering. *See* ECF No. 2777.

15      IPPs anticipate that, following a second round of distribution, insufficient funds will exist to

16 make further distribution to class members economically feasible. Consequently, IPPs proposed

17 and this Court ordered that any remaining funds will escheat to the Attorneys General for the class

18 jurisdictions for use in prosecuting consumer antitrust claims. No funds will be returned to the

19 defendants. If it appears that a third round of distribution would be economically feasible, Class

20 Counsel will notify the Court. ECF No. 2767 at 5–6. The proposed Plan of Distribution—

21 including the proposal that any remaining funds escheat to Attorneys General—is well within the

22 sound discretion of the Court and appropriate under governing case law. *See Six (6) Mexican*

23 *Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) ("Federal courts have

24 broad discretionary powers in shaping equitable decrees for distributing unclaimed class action

25 funds."). As the Ninth Circuit has held, residual class action settlement funds may (i) be

26 redistributed to class members who have already claimed funds, (ii) escheat to the government, (iii)

27 be distributed to third parties who bear a direct and substantial nexus to the interests of absent class

28 members under the *cy pres* doctrine, or (iv) revert to defendants. *In re Google Inc. St. View Elec.*

1   *Commc'ns Litig.*, 21 F.4th 1102, 1110–11 (9th Cir. 2021).  Given successful progress of

2   distribution efforts to date, IPPs see no reason to depart from that Court-approved plan at this time.

3   **Argument 5: Claimants should not have been required to execute contracts with Blackhawk/ Pathward Bank in order to receive digital settlement payments.**

4

5   Claimants are not "required" to do anything.  Claimants in this case have the option to

6   receive a physical check, which requires no agreement of any kind.  However, if they elect to

7   receive a convenient digital payment, claimants do need to execute a "cardholder agreement" with

8   the card issuer or manager in order to receive one of the payment card options available in this

9   case: a virtual Mastercard or a physical Mastercard, Amazon gift card, Target gift card, or

10  Starbucks gift card.[2]  A cardholder agreement is just a necessary feature of using payment card

11  networks to distribute the settlement funds—as countless other courts have allowed in consumer

12  class cases involving small individual claims.  Without contracts on all sides—the banks,

13  consumers, and the card network itself—the payments simply cannot happen.  In the case of Mr.

14  Sussman, as noted above, the claims administrator will work cooperatively to ensure he receives a

15  payment through the means of his choosing, including, if he wishes, a physical check.

16  **Argument 6: Class Counsel has a fiduciary duty to the class and must make sure that claimants are paid.  If they cannot do so, the Court must appoint counsel.**

17

18  Class Counsel agree they owe a duty to the class to make distribution of the settlement fund

19  as successful as possible.  However, that duty does not require Class Counsel—or the Court—to

20  meet the impossible standard of guaranteeing that *every* claimant successfully accepts (or otherwise

21  receives) their settlement payment.  As the Plan of Distribution contemplates in proposing two

22  rounds of distribution, it is inevitable and expected that some of the over 1 million claimants in this

23  case will not accept payments.  In deciding how much of the settlement fund to invest in reaching

24  the last few claimants, the Court must ultimately balance the interests of all class members with

25  "the goals of expedient settlement distribution."  *See In re Orthopedic Bone Screw Prod. Liab.*

---

[2] To be clear, because Mr. Sussman never received a digital payment email notification (because it was deemed "undeliverable"), he was never presented with the option to accept the "cardholder agreement" applicable to this distribution process.

1  *Litig.*, 246 F.3d at 321.  It would not be efficient, fair, or in the interests of the class, for example, to pay claims administrator staff to rent cars and drive with physical checks to the home addresses of individual claimants who had neither accepted a digital payment nor requested a check, or to whom digital payment could not be made due to an incorrect email address.

Nor is the removal and/or reappointment of Class Counsel warranted here.  "The purpose of a disqualification order is prophylactic, not punitive. . . . That is, the issue is whether there is a genuine likelihood that allowing the attorney to remain on the case will affect the outcome of the proceedings before the court."  *In re HP Inkjet Printer Litig.*, No. 5:05-CV-03580-JF, 2014 WL 4949584, at *4 (N.D. Cal. Sept. 30, 2014).  Class Counsel have fulfilled their duties under the terms of the settlements and this Court's orders.  Apart from pointing to the fact that a small percentage of claimants have not accepted (or otherwise received) their payments, Mr. Sussman utterly fails to demonstrate that the Court's reasons for appointing Class Counsel have been invalidated, or that the appointment of new counsel would result in a different outcome.  *See, e.g.*, ECF No. 2681 at 21 (appointing Class Counsel based on "counsel's work in this action, their collective expertise and experience in handling similar actions, and the resources they have committed to representing the class").  Moreover, contrary to Mr. Sussman's suggestion, no conflict of interest exists.  That some claimants have not accepted their digital payments during Phase I does not place their legal interests in conflict with those who did.

* * *

For the reasons set forth above, IPPs respectfully request that the Court overrule Mr. Sussman's Objections and permit completion of the settlement distribution process.

| | | |
|---|---|---|
| 1 | Dated: February 1, 2024 | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |
| 2 | | By  *s/ Brendan P. Glackin* |
| 3 | | BRENDAN P. GLACKIN |
| | | Elizabeth J. Cabraser (SBN 083151) |
| 4 | | Brendan P. Glackin (199643) |
| | | Lin Y. Chan (SBN 255027) |
| 5 | | Michael K. Sheen (288284) |
| | | 275 Battery Street, 29th Floor |
| 6 | | San Francisco, CA 94111-3339 |
| | | Telephone: (415) 956-1000 |
| 7 | | Facsimile: (415) 956-1008 |
| | | ecabraser@lchb.com |
| 8 | | bglackin@lchb.com |
| | | lchan@lchb.com |
| 9 | | msheen@lchb.com |

Dated: February 1, 2024                HAGENS BERMAN SOBOL SHAPIRO LLP

By  *s/ Shana E. Scarlett*
SHANA E. SCARLETT
Steve W. Berman (*pro hac vice*)
Shana E. Scarlett (217895)
Benjamin J. Siegel (256260)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
steve@hbsslaw.com
shanas@hbsslaw.com
bens@hbsslaw.com

Dated: February 1, 2024                COTCHETT, PITRE & McCARTHY, LLP

By  *s/ Adam J. Zapala*
ADAM J. ZAPALA
Joseph W. Cotchett (SBN 36324)
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
jcotchett@cpmlegal.com
azapala@cpmlegal.com

*Counsel for Indirect Purchaser Plaintiffs*