FILED

FEB 23 2024

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

IN RE LITHIUM ION BATTERIES ) Case No. 13-MD-02420 YGR (DMR)
ANTITRUST LITIGATION ) MDL 2420
) 
) RE: 2786 and 2786-1

## OBJECTION TO PROPOSED ORDER AND DECLARATION OF CHRIS WHIPPS

Objector Michael Sussman ("Sussman") objects to the Declaration of Chris Whipps (really Christine Whipps) of DigitalPay (really Sipree Inc.):

1. None of this proposal is on the www.reversethecharge.com website. None of the claimants have been updated in any manner. This is all being done without notice to the class. This whole deadline thing and claims that only a bit over 1,000 people contacted Epiq is an underestimate because no information was provided on the website or elsewhere about the 90,000 undelivered emails due to the email validation service. As stated in Sussman's Reply document, which the Clerk received February 7, 2024, but failed to file for whatever reason and which was remailed to the court concurrently with this, there's a complete misunderstanding as to who falls into which categories— the 90,000, the 20,000, and now the 1,300 – the bottom line is it is over 110,000 people that were not paid due to Mr. Whipps' techniques that he chose to implement without court approval. Perhaps more people would have contacted the claims administrator if the website was updated.

2. None of the proposal at Paragraph 8 will work if Sipree a/k/a DigitalPay uses their $50 third-party non-court approved email validation service again. They will simply say the same thing they already said ("Oh, gee, there was a rejection for new domain because the $50 email validator service said so and it might somehow hurt our reputation if we tried"). It is perplexing that the undersigned receives emails from Epiq, the Court, and class counsel, but Mr. Whipps continues to provide this Court with vague information and not explaining why his system cannot send Sussman an email but everyone else can.

3. Worse, Mr. Whipps has still failed to identify which email validation service he used to arbitrarily deny 110,000 claimants their payment.

4. The hearsay from Mr. Whipps about Epiq is improper. Mr. Whipps is not an agent of Epiq and cannot testify to their facts, even in a loose proceeding. Problematic with Mr. Whipps saying what Epiq will do is the inability of Epiq to actually do it. Epiq most likely has no phone numbers or addresses of the claimants since this information was not asked for on the claim form.

5. Worse, it states that Epiq will only contact the claimants if they have the "alternative" email. However, Epiq had no problem communicating with the <u>original</u> email addresses, only SIPREE/DIGITALPAY had issues because Mr. Whipps chose to use a cheap third-party "email validation" service that knocked out claimants because it "flagged" emails for things such as new domain, catchall (which even the websites that sell these services state is not a basis for rejection), and whatever other unclear and unknown reasons Mr. Whipps has

arbitrarily decided to *per se* exclude, creating a denial of the claim without notice to the client.

6. The new claim of "suppression" and the reasons for it directly contradict Mr. Whipps' prior representations to this Court about new domains, SMTP errors, etc. It is unclear what Mr. Whipps means by "fraud." Mr. Whipps fails to explain why his emails are suppressed but Epiq's emails are not suppressed.

7. The only valid email rejections are so-called "bounces" for such as mailbox full, closed box, etc. These are things that are not the fault of Sipree. The rest fall clearly upon Sipree's apparent use of the third-party email validation service.

8. It makes zero sense to redistribute the money unless they first pay the people who were not paid before. How can Sipree determine what amount to pay people on Round 2 if they cannot determine how many Round 1 people are truly non-deliverable for valid reasons not Sipree-invented reasons.

9. In other words, fix Round 1, then do Round 2.

10. Finally, at paragraph 11 of Whipps' declaration, it appears they will force smaller claimants who refused a Mastercard and chose Target or Starbucks cards to receive a Blackhawk/Pathward Mastercard. This is problematic. First, the cards specifically prohibit business transactions and only allow consumer transactions. Yet, many claimants in this case were business based claims. Second, the agreements for these cards contain forced language that implies the consumer loses their money and cannot do anything if they do not agree to the terms. Third, the agreements have not been approved by this Court. Fourth, the

agreements charge $10 for a check if the consumer does not agree to the terms of the card yet Sipree wants to use the cards for $5 payments.  Fifth, the agreements allow Pathward/Blackhawk to stop/freeze the card for any reason, which the routinely do.  Then they charge dormancy fees that eat up the balance.

11. The Pathward Bank scam moreless goes like this:  a.  Virtual card issued valid for a few months; b.  If not used by expiry, a monthly fee is assessed; c. Monthly fee eats up card balance; d.  Arbitrary freezes on card when used at merchants Pathward believes are high risk including some Walmart locations, some grocery stores, and even paralegal services.  Once freeze is placed, Pathward charges dormancy fees even though it froze the card preventing its use.  Sipree knows that, hundreds of people are complaining about the freezing of their Pathward cards issued in other litigations where it acted as "claims administrator" and dumped the cards onto claimants, forcing some claimants into individual litigation.

12. Even if Sipree does not use Pathward for this round, the agreements the claimants will be forced into still have not been reviewed or approved by this Court.  (The Starbucks and Target cards have no fees and are not subject to the Pathward-type scam).

13. Class counsel appear to continue to represent Sipree instead of the class members instead of complying with California unclaimed property laws and

taking actions to make sure all 110,000 members who did not receive their payment are paid. This is objectionable.

14. Therefore, Sipree needs to breakdown the deliverability of all 110,000 claimants with clear data, not use a third-party email validation service or perhaps have Epiq send the emails since Mr. Whipps' company is not able to do so, and have this Court approve any virtual card agreement prior to distribution.

Respectfully submitted,

_____

M. Sussman
1730 S. Federal Hwy #151
Delray Beach FL  33483
drsuss@automatic-mail-server.net

        CLAIMANT